Stephen McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff Thrive
Natural Care, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2:20-cv-9091-PA-AS <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **1. FEDERAL TRADEMARK INFRINGEMENT** <br><br> **2. FEDERAL UNFAIR COMPETITION** <br><br> **3. COMMON LAW TRADEMARK INFRINGEMENT** <br><br> **4. COMMON LAW UNFAIR COMPETITION** <br><br> **5. VIOLATION OF CAL. BUS. & PROF. CODE § 17200** <br><br> **Demand for Jury Trial** |

Plaintiff Thrive Natural Care, Inc. ("Thrive"), for its Complaint against Thrive Causemetics, Inc. ("TCI"), states as follows:

**Introduction**

1.      This case arises from both federal and state claims, including trademark infringement in the form of forward and reverse confusion and unfair competition, all willfully and intentionally committed by TCI against Thrive.

2.      Thrive was founded in 2013 with the mission of making the best natural skincare products on the market using regenerative agriculture methods to produce unique botanical oil "hero ingredients" for its products, while also restoring degraded landscapes and improving livelihoods of rural farming communities. Thrive team of American and Costa Rican skincare experts, ethnobotanists, entrepreneurs, and rural farmers create and sell native plant-based skincare products utilizing premium organic resources, without any synthetic colors, fragrances, or ingredients. Though Thrive took steps to protect its "THRIVE" brand name early in its existence, it has seen its brand and business eroded and damaged by TCI—with TCI's full knowledge and intent.

3.      TCI's founder stated to Thrive in 2016 that TCI only sold "color cosmetics" (i.e., makeup) and would "always" use the full "Thrive Causemetics" name in relation to its products. TCI promised that it would never use "Thrive" alone. But neither proved true in the years to come. As TCI grew, it began referring to itself as "Thrive" alone, adopting taglines like "Thrive Tribe," a tagline already used by Thrive. TCI also began using advertising and logos that refer to itself as "THRIVE" without "Causemetics". Further, even though TCI knew that Thrive had senior rights to the THRIVE registered trademark for skincare products, TCI recently chose to expand into skincare, including products explicitly protected in Thrive's registration, in direct competition with Thrive. TCI's intentional disregard of Thrive's trademark rights has caused actual confusion among consumers as well as retailers such as Walmart.

4.      More recently, TCI has begun specifically targeting Thrive's business by purchasing Google adwords and Amazon keywords for "Thrive skincare", "Thrive lotion", "Thrive moisturizer", and, most blatantly, for Thrive's full company name "Thrive Natural Care", among others, such that TCI's products now appear at the top of online searches for Thrive's products. TCI's multi-million dollar per year growth has enabled it to flood the market with advertising for its own skincare products such that consumers have now come to believe that plaintiff Thrive is related to or affiliated with defendant TCI and that Thrive's goods originate from TCI. TCI's actions have created consumer and retailer confusion, have increased Thrive's cost of customer acquisition, and severely damaged Thrive's brand.

## Nature of the Action

5.      This is an action at law and in equity for trademark infringement and unfair competition under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*. ("Lanham Act"), common law trademark infringement and unfair competition, and violation of California Business and Professions Code § and 17200, *et seq*.

6.      Thrive brings this action to obtain injunctive relief to stop TCI's ongoing illegal trademark use, infringement, and unfair competition and to seek damages sustained by Thrive as a result of TCI's unlawful actions, plus attorneys' fees, costs, and other relief.

## The Parties

7.      Plaintiff Thrive Natural Care, Inc. is a Delaware corporation with its principal place of business at 42 Darrell Place, San Francisco, CA 94133.

8.      Defendant Thrive Causemetics, Inc. is a Delaware corporation. It has an executive office at 10900 NE 4th St., Suite 2300, Bellevue, WA 98004, and its principal business operations and headquarters are located in this District at 6100 Center Dr., Suite 900, Los Angeles, CA 90045.

## Jurisdiction and Venue

9.      This Court has subject matter jurisdiction under section 39 of the Lanham

Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Thrive's related California statutory and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

10.     This Court has personal jurisdiction over TCI, because TCI: (a) has headquarters in this State; (b) is qualified to do business in the State of California as per the California Secretary of State website; (c) regularly conducts and solicits business within this State and this District; (d) directly and through intermediaries ships, distributes, offers for sale, sells, and advertises its products and services to consumers and retailers in the State of California and this District; and (e) has committed acts of infringement and unfair competition in this State and this District.

11.     Confirming TCI's pattern of regularly conducting business in this State and this District, TCI maintains a Los Angeles headquarters and designs and tests its products its "Thrive Lab" located in Los Angeles. On information and belief, the majority of TCI's employees are based at its Los Angeles headquarters. In addition, TCI operates the website, www.thrivecausemetics.com, which sells products—including infringing products—directly to consumers, many of whom are located in California and in this District. TCI advertises directly to customers located in California and this District. Further, TCI representatives have physically attended events in this District to advertise, promote, and sell TCI's products.

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this District, and TCI is subject to personal jurisdiction in this District.

### Facts Underlying the Causes of Action

***Thrive Was Founded in 2013 to Create Premium Skincare Products
Through Regenerative Agricultural Practices***

13.     Thrive began selling skincare products to the public in late 2013. Today, Thrive sells a range of skincare and grooming products, including face washes and

scrubs, lotions, moisturizers, sunscreens, face balms, shaving lotions, and grooming oils. Made especially for people with sensitive or active-lifestyle skin, the new-to-market plant oils found in Thrive products contain skin-protecting antioxidants and raw ingredients that reduce inflammation and irritation better than conventional synthetic ingredients.

14.     Key to Thrive's appeal with customers is an understanding of and affinity for the company's mission and positive impact. Thrive sources natural ingredients for its line of skincare products from native plants grown by communities on the coasts of Costa Rica. Since 2014, Thrive has conducted extensive research and development in Costa Rican ecosystems to regeneratively cultivate and source premium botanical ingredients to provide its unique skincare benefits. Importantly, the company partners with women-led co-ops and smallholder farmers to cultivate native plants that improve soil and biodiversity on degraded lands, boost farmers' incomes and provide a high-quality supply of plant oils. Ultimately, Thrive hopes to serve as a commercially viable inspiration for regenerative practices in the agriculture, fisheries, and forestry sectors. This unique regenerative business model has positioned Thrive on the leading edge of healthy, natural, and sustainable.

15.     Thrive skincare products are sold online at www.thrivecare.co and through retail partnerships with Amazon and Walmart.com, as well as at Whole Foods Markets on the West Coast.

16.     Thrive's business is built on the THRIVE marks, which appear on all of Thrive's products. Thrive has used THRIVE marks on its products continuously since 2013. Examples of Thrive's use of the THRIVE marks is below.

/ / /

/ / /

/ / /

/ / /

/ / /




17.     Thrive has devoted substantial money, time, and resources to developing the THRIVE brand. Thrive advertises its skincare products extensively on the Amazon and Walmart marketplaces. The company conducts branding and promotional partnerships with existing retailers such as Amazon (including an Amazon-produced video about Thrive which Amazon shared with its 600,000-plus employees and over 100 million customers), Whole Foods, and others. Thrive has also built over the past seven years a robust network of partners via its regenerative business model operating in Costa Rica. Thrive has communicated its unique brand via marketing agencies, public relations firms, social media such as Instagram and Facebook, and through the company's website blog and online articles published on sites such as Medium.

18.     Thrive has received significant unsolicited media coverage, with its products, mission, and business model featured in publications such as *Esquire*, *Progressive Grocer*, *Travel + Leisure Magazine*, and *Natural Solutions Magazine*. As the creator of the first regenerative supply chain in the personal care industry, Alex McIntosh, the co-founder and CEO of Thrive, has been featured in numerous podcasts and delivered the opening keynote speech at *The Future of Sustainability*

*2017* conference, hosted by the New York Society of Cosmetic Chemists. In recognition of Thrive's innovative business model, the company was selected by Conservation International Ventures, the investment arm of one of the world's leading environmental organizations, for a five-year partnership and investment.

19.     Not later than December 2013, Thrive began referring to its customers and followers as the "Thrive Tribe." Since then, Thrive has consistently used the "Thrive Tribe" term in emails to customers (such as welcoming new customers to the "Thrive Tribe"), throughout its website, including prominently on its homepage, and in marketing campaigns. For example, in 2018 Thrive ran an Instagram-based photograph contest and directed followers to use the hash tag #THRIVETRIBE on their photographs to identify that they were related to Thrive.

20.     Thrive targets a unisex audience, selling items such as beard oil to men but also focusing on a female market for its products like sunscreen, cleansers, and moisturizers. As example of the company's appeal to the female demographic, Thrive published an article on the site Medium in November 2019 titled: I'm a Woman and I Use Thrive Natural Care. Here's Why." As Thrive notes in that article, "an active lifestyle has no gender."

### Thrive Registered THRIVE Trademarks Starting in January 2014

21.     On September 11, 2012, Plaintiff Thrive applied for a United States federal trademark application for the word THRIVE in standard characters. In January 2014, Thrive was awarded U.S. Trademark Reg. No. 4,467,942 for THRIVE in International Class 003 for "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams" (the "'942 Mark"). Thrive has used the '942 Mark continuously in interstate commerce for more than five years. On March 7, 2020, the United States Patent and Trademark Office issued a notice that the '942 Mark is "incontestable".

22.     In May 2016, Thrive filed for a second trademark application, U.S. Serial

No. 87/021,374 (the "'374 Application") which issued in September 2020 as U.S. Trademark Reg. No. 6,164,303 for THRIVE in International Class 003 for the additional products of "Body and non-medicated soaps and skin cleansing gels; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams" (the "'303 Mark") (the '942 and '303 Marks are collectively referred to as the "THRIVE Marks").

23.     On September 22, 2020, Thrive filed for a third trademark application, U.S. Serial No. 90/198,496, to officially register other skincare products that it already sells or are within the natural zone of expansion of its current registered and common law trademark rights.

24.     Thrive carefully secured its critical intellectual property early in its existence. Yet TCI knew of—and completely disregarded—Thrive's senior rights.

### TCI Experienced Rapid Growth After Founding in 2015

25.     In 2015, more than one year after Plaintiff Thrive received its registered trademark for THRIVE, Defendant Thrive Causemetics, Inc. ("TCI"), was founded by Karissa Bodnar.

26.     TCI's original focus was selling faux eyelashes and related lash adhesive for women undergoing cancer treatment.

27.     In or about late 2015, TCI began selling eyeliner and brow liner.

28.     In or about late 2016 or early 2017, TCI began selling additional color cosmetics, a category of products narrowly consisting of makeup for face, eyes, lips, cheeks, and nails.

29.     Ms. Bodnar and TCI have been covered by publications including *Forbes*, *Allure*, *Bloomberg News*, *People Magazine*, *Cosmopolitan*, and many others. Today, TCI has about 525,000 followers on Instagram and over 630,000 followers on Facebook.

### TCI's First Trademark Application Blocked by Thrive Registration

30.     In November 2015, the U.S. Patent & Trademark Office ("PTO") issued

an office action against TCI's application to register THRIVE CAUSEMETICS, citing a likelihood of confusion with Thrive's registered '942 Mark for THRIVE on skincare products.

31.     TCI eventually overcame the PTO's objection by arguing that (1) THRIVE CAUSEMETICS was a unitary mark as the words were always used together, and (2) that the claimed goods—false eyelashes and eyeliner—were not related to Thrive's claimed skincare products. TCI eventually abandoned this trademark application.

32.     Soon after the PTO's initial office action rejecting TCI's application, in April 2016, Ms. Bodnar contacted Thrive directly. Via email, Ms. Bodnar stated she was "reaching out to speak with [Thrive's] founder or someone on your team to discuss permission to use the word Thrive as part of our brand name." She referred to her company, TCI, as "a color cosmetics brand with a mission to help women going through cancer treatment look and feel better during their time of need." Ms. Bodnar then promised: "We will never use the word 'Thrive' without the word 'Causemetics' because the two words to use are our brand."

33.     Mr. McIntosh of Thrive responded to Ms. Bodnar, acknowledging Ms. Bodnar's stated purpose of helping cancer patients was a good one but denying authorization to use the "Thrive" name. Mr. McIntosh noted that Plaintiff Thrive had invested substantial time and effort in building its brand since 2013. Nevertheless, Thrive chose not to pursue this further because of (1) TCI's promise that "[TCI] will **never** use the word 'Thrive' without the word 'Causemetics'" (emphasis added), and (2) TCI's representation that it would stay in its narrow lane of women's color cosmetics "to help women going through cancer treatment look and feel better during their time of need."

34.     In or about 2017, TCI broke its first promise by frequently removing the word "Causemetics" from its branding, referring to itself as "Thrive" alone and using names such as "Thrive Lab" and Thrive Tribe" in its advertising. In or about

2018, TCI began moving into skincare products that directly overlapped with the goods listed in Thrive's registered trademark, breaking the second promise as well.

### *TCI Refuses to Change Name after Cease-and-Desist Letter*

35.     Despite having knowledge of Thrive and its preexisting skincare product line, knowledge of Thrive's registered trademark for THRIVE in relation to skincare products, and TCI's promise to Thrive to remain in its narrow lane of women's color cosmetics, TCI later began to encroach upon Thrive's marks and its skincare business.

36.     In response to TCI beginning to de-emphasize the term "Causemetics" in its branding, on March 3, 2017, Thrive sent a cease-and-desist letter to TCI, demanding that TCI stop using the mark THRIVE on its products.

37.     On April 12, 2017, TCI responded and refused Thrive's request. TCI based its refusal to change its name on two points: (1) "[t]he inclusion of this unique term [CAUSEMETICS] within TCI's trademark is significant, as it differentiates the appearance, sound and commercial impression of TCI's trademark from your client's THRIVE mark; and (2) the parties sold "different product lines." TCI also threatened that any legal action by Thrive to fight TCI's alleged infringement "is going to be time-consuming and expensive." According to TCI, the parties "would be better served by focusing on growing their respective businesses with clear boundaries as to each other's trademark." TCI also stated in its response to Thrive's cease-and-desist letter: "To the extent the same consumers would even encounter both the trademark of Thrive and that of TCI, those consumers would be able to discern between the two brands due to the inclusion of "causemetics" in TCI's trademark, the overall branding of the different goods by our respective clients, which is quite distinct, and the different product lines."

38.     As time passed however, TCI chipped away at any separation between the companies' products and brands. Ms. Bodnar's and TCI's assertions that TCI was only a color cosmetics company and would only use "Thrive" in conjunction

with "Causemetics" both proved untrue as TCI continued its growth.

### *TCI Begins Emphasizing the "Thrive" Portion of Its Mark*

39.     From 2018 onwards, TCI began frequently identifying itself as "Thrive" alone, without the "Causemetics" portion of the name. In online advertising, TCI adopted the tagline "Try Thrive," as shown on the screenshots below of 2018 and 2020 advertisements. While some of TCI's advertisements included a "Thrive Causemetics" logo, some did not.

<u>**2018 TCI Ad**</u>



<u>**2020 TCI Ad**</u>



40.     In 2017, TCI also began calling its headquarters the "Thrive Lab" in marketing materials and advertising. TCI's website at the time contained a "Thrive Lab" subpage, which stated its "[a]ll of our products are created at Thrive Lab in

Seattle" and directed followers to use the hash tag #THRIVELAB to identify TCI-related subject matter. After TCI moved its headquarters to Los Angeles, it continued in its marketing materials to state its products were "developed at Thrive Lab in Los Angeles." Ms. Bodnar, TCI's founder, has frequently used the hash tag #THRIVELAB on her TCI-related Instagram posts.

41.     In or about 2018, TCI and Ms. Bodnar began referring to TCI's followers as the "Thrive Tribe"—exactly the same name Thrive had been using for its followers since 2013. TCI made no effort to include the "Causemetics" portion of its mark in that moniker. Ms. Bodnar has frequently used the hash tag #THRIVETRIBE on her TCI-related Instagram posts.

42.     In media coverage of TCI, which increased significantly throughout 2018 and 2019, the company was frequently referred to by authors and by Ms. Bodnar herself as "Thrive" alone, without the "Causemetics" portion of the name. For example, in a 2019 piece by *Beauty Independent* featuring an interview with Ms. Bodnar, she is referred to as the "29-year-old founder of Thrive." Ms. Bodnar repeatedly calls her company "Thrive" and refers to TCI's followers as the "Thrive Tribe" several times.

43.     Similarly, in January 2020 coverage of TCI by InStyle magazine, the author and Ms. Bodnar use the sole name "Thrive" to describe TCI. The article contains content such as: "Thrive's loyal customers, called the Thrive Tribe, are completely involved in all aspects of the brand." Ms. Bodnar is quoted referring to her company as "Thrive" and referring repeatedly to the "Thrive Tribe."

44.     Clearly recognizing the value of the term "Thrive," TCI reneged on Ms. Bodnar's promise to only use "Thrive" together with "Causemetics" to describe the company. Both by reference and use of marks, TCI has begun broadly using "Thrive" to refer to itself and its products, with the word "Causemetics" either nonexistent or markedly deemphasized.

45.     Not all of the coverage of TCI that referred to it as "Thrive" was positive.

For example, a 2018 article on the news and beauty website *MirahMirah* described the class action lawsuit filed against TCI for allegedly misleading customers about its charitable donations. The author refers to TCI as "Thrive" numerous times and questions the company's motives and honesty. Similarly, online consumer reviews of TCI are often negative and frequently refer to TCI as "Thrive" alone. For example, TCI received a consumer rating of 2.7 out of five stars on https://bestcompany.com/makeup-stores/company/thrive-causemetics, with dozens of one-star reviews, including many from consumers who stated the products from "Thrive" and were "terrible," "horrible," and caused allergic reactions and eye infections.

### *PTO Rejects Second TCI Trademark Application Over Thrive Mark*

46.     In 2018, TCI tried again to register THRIVE CAUSEMETICS in relation to cosmetics and makeup, makeup brushes, and an online retail store featuring those products.

47.     This time, the PTO found TCI's mark created a likelihood of confusion with Thrive's previously-filed '374 Application for THRIVE in relation to skincare and suncare products.

48.     The PTO rejected TCI's argument that its products were not related to those claimed in Thrive's application.

49.     The trademark examiner supported the rejection with evidence showing "the goods and/or services listed [in Thrive's '374 Application], namely [Thrive's] lotions, creams and after shave lotions, and [TCI's] cosmetics, brushes and retail store services featuring these goods, are of a kind that may emanate from a single source under a single mark."

50.     In rejecting TCI's 2018 trademark application, the PTO also required TCI to file a disclaimer of the term CAUSEMETICS, finding the term was a misspelling of "cosmetics" and "merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or

services, and thus is an unregistrable component of the mark." The PTO rejected TCI's subsequent argument that CAUSEMETICS is not merely descriptive.

51.     TCI's 2018 application for THRIVE CAUSEMETICS is currently suspended due to the PTO's finding of a conflict with Thrive's '374 Application and the disclaimer requirement.

52.     As the PTO found, the term CAUSEMETICS is merely descriptive of TCI's goods and services. Thus, THRIVE is the only protectable portion of TCI's mark, which is identical to the THRIVE Marks claimed and registered by Thrive. By emphasizing "Thrive" in advertising and on its products, TCI is creating confusion and damaging Thrive.

***TCI Expands Into Skincare, Directly Competing Against Thrive and in Violation of the Boundaries Set by TCI's 2017 Letter***

53.     In the second half of 2018, TCI quietly expanded from color cosmetics into the skincare market by releasing a hybrid makeup-skincare product, putting itself into direct competition with Thrive.

54.     In 2019, TCI sold three different skincare products, Overnight Sensation Brightening Sleep Mask, Liquid Lip Balm Treatment, and Buildable Blur CC Cream Broad Spectrum SPF 35. However, TCI was already planning to substantially expand its skincare product offerings in 2020.

55.     Prior to that planned expansion, TCI's founder, Ms. Bodnar, again attempted to obtain Thrive's permission to use the THRIVE mark.

56.     On June 27, 2019, TCI's founder, Ms. Bodnar, called Thrive's co-founder, Mr. McIntosh. On the phone call, Ms. Bodnar begged Mr. McIntosh to allow TCI to use the THRIVE mark. Mr. McIntosh refused her request and told Ms. Bodnar to cease using "Thrive" for any of TCI's marketing, as it was confusing consumers and retailers. Mr. McIntosh reminded Ms. Bodnar about Thrive's trademark registration and trademark application. Mr. McIntosh stated that, at minimum, TCI must (1) alter its logo to deemphasize the word "THRIVE"

so it is once again equal and consistent to the word "CAUSEMETICS," and (2) agree to compensate Plaintiff Thrive with a significant licensing fee for TCI's past and future use of the THRIVE mark.

57.    During that 2019 call, Ms. Bodnar never disclosed that TCI was already selling skincare products or that it was planning to substantially expand its skincare product offerings within the next year.

58.    Instead of complying with Thrive's requests or working towards a solution, TCI *increased* its infringement of the THRIVE marks.

59.    In late 2019 and 2020, TCI released at least a dozen new skincare products onto the market.

60.    In 2020, TCI's website added a separate "skincare" section displaying various skincare products that TCI sells.

61.    TCI now sells numerous products that are protected by Thrive's registered trademarks, Thrive's common law trademark rights, and their natural zone of expansion—including skincare products, face and body cleansers, lotions and moisturizers, sunscreen, hand sanitizer, and face oils (collectively, the "Infringing Skincare Products").

62.    The Infringing Skincare Products consists of  TCI's entire skincare line, including the following products: Overnight Sensation Brightening Sleep Mask; Liquid Balm Lip Treatment; Gravity Defying Transforming Moisturizer; Bright Balance 3-in-1 Cleanser; Defying Gravity Eye Lifting Cream; Liquid Light Therapy All-in-One Face Serum; Moisture Flash Active Nutrient Toner; Deluxe Travel Defying Gravity Transforming Moisturizer; Defying Gravity Transforming Moisturizer; Deluxe Travel Bright Balance 3-in-1 Cleanser; Moisture-Enriched Hand Sanitizer; Overnight Sensation Gentle Resurfacing Peel; Pumpkin Spice Latte Liquid Lip Balm Treatment; Smart Microdermabrasion 2-in-1 Instant Facial; Defying Gravity Nourishing Hand + Nail Cream; Smart Microdermabrasion 2-in-1 Instant Facial; Buildable Blur CC Cream; Filtered Effects Blurring Primer; all

travel sized versions of these products; and all "sets" that include any of these products as part of the set.

63.     The Infringing Skincare Products sold by TCI fall squarely within the description of goods covered by the THRIVE Marks.

64.     TCI's move into skincare was directly contrary to the statement by Ms. Bodnar that TCI was a "color cosmetics company." Further, while the statement by TCI's attorney in 2017 that the parties sold "different product lines" was true at that time, TCI destroyed that separation between the parties by intentionally moving into skincare with knowledge of Thrive and Thrive's products and marks.

65.     Not only has TCI expanded into direct competition with Thrive, but TCI has begun purchasing Google adwords and Amazon keywords to intentionally place ads for TCI's skincare products at the top of search results seeking Thrive's skincare products. For example, the screenshots below were taken of Google searches for "Thrive natural care", "Thrive lotion", "Thrive skincare", and "Thrive moisturizer". In every instance, TCI's products were displayed in paid advertisements appearing at the top of the search list.





FIRST AMENDED COMPLAINT
Case No. 2:20-cv-9091-PA-AS



66.     As shown, consumers searching online for Thrive's products are likely to be confused and lured to Defendant TCI's website as a result of TCI's intentional purchase of search-based advertising relating to Thrive's products.

### *TCI's Actions Have Caused Actual Confusion*

67.     TCI knew of Thrive and the THRIVE Marks prior to TCI expanding from color cosmetics to selling Infringing Skincare Products.

68.     TCI also knew of Thrive and the THRIVE Marks prior to TCI: (1) beginning to refer to itself as "Thrive" without the "Causemetics" portion of its name; (2) referring to its followers as the "Thrive Tribe" and its headquarters as the "Thrive Lab"; and (3) purchasing and using advertising adwords and keywords containing the term "Thrive" without the "Causemetics" term.

69.     TCI's actions have caused actual confusion between Thrive and TCI and

FIRST AMENDED COMPLAINT
Case No. 2:20-cv-9091-PA-AS

the parties' products. Consumers have posted comments on Amazon and social media indicating that they believed Thrive was part of or affiliated with TCI. This includes a 2019 customer comment on an Amazon page for Thrive's skincare moisturizer stating, "Thrive is an up and comer in the cosmetics field. Their mascara[1] is phenomenal."

70.     TCI's actions have also created confusion among Thrive's retail partners. For example, Walmart listed Thrive's products on its online sales portal under the "Thrive Causemetics" label, such that all of Thrive's products appeared together with Thrive Causemetics' name, as shown in a screenshot below.



71.     TCI knew that its actions were likely to cause damage to Thrive.

72.     Thrive has been damaged by TCI's intentional actions described herein.

### Count 1

### **Federal Trademark Infringement**

73.     Thrive incorporates each paragraph above into this claim.

---

[1] Thrive does not sell mascara, but TCI does.

74.     TCI's use of confusingly similar imitations of Thrive's THRIVE Marks on the Infringing Skincare Products, including but not limited to the THRIVE CASEMETICS mark, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that TCI's Infringing Skincare Products are manufactured or distributed by Thrive, are associated or connected with Thrive, or have the sponsorship, endorsement, or approval of Thrive.

75.     TCI's use of confusingly similar imitations of Thrive's THRIVE Marks on the Infringing Skincare Products, in conjunction with significantly larger size and advertising scope and social media following, are likely to cause and have caused reverse confusion, deception, and mistake by creating the false and misleading impression that Thrive's goods are manufactured or distributed by TCI or are associated, sponsored by, or connected with TCI.

76.     Additionally, TCI's infringement combined with its aggressive digital marketing targeting Thrive's customers with keywords such as "Thrive Natural Care Amazon" or "Thrive skincare" harms Thrive's business by increasing the company's cost to acquire digital customers, and serves to siphon off Thrive's existing and prospective customers with misleading links that lead not to Thrive but to TCI's website.

77.     TCI's Infringing Skincare Products bear marks that are confusingly similar to Thrive's federally registered THRIVE Marks, in violation of 15 U.S.C. § 1114. TCI's activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Thrive's goodwill and reputation, for which Thrive has no adequate remedy at law.

78.     TCI's actions demonstrate it willfully adopted confusingly similar marks to describe its Infringing Skincare Products while knowing of Thrive's registered THRIVE Marks and the long-term use and significant goodwill Thrive had built in its THRIVE brand in relation to skincare products.

79.    TCI has caused and is likely to continue causing substantial injury to the public and to Thrive, and Thrive is entitled to injunctive relief and to recover TCI's profits attributable to sales of Infringing Skincare Products, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## Count 2

## **Federal Unfair Competition**

80.    Thrive incorporates each paragraph above into this claim.

81.    TCI's use of a confusingly similar imitations of the THRIVE Marks on the Infringing Skincare Products has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that: (a) TCI's Infringing Skincare Products are manufactured or distributed by Thrive, or are affiliated, connected, or associated with Thrive, or have the sponsorship, endorsement, or approval of Thrive; or (b) Thrive's goods are manufactured or distributed by TCI or Thrive or its goods are affiliated, connected, or associated with TCI.

82.    Additionally, TCI's infringement combined with its aggressive digital marketing targeting Thrive's customers with keywords such as "Thrive Natural Care Amazon" or "Thrive skincare" harms Thrive's business by increasing the company's cost to acquire digital customers, and serves to siphon off Thrive's existing and prospective customers with misleading links that lead not to Thrive but to TCI's website.

83.    TCI has made false representations, false descriptions, and false designations of origin on or in connection with its Infringing Skincare Products in violation of 15 U.S.C. § 1125(a). TCI's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Thrive's goodwill and reputation for which Thrive has no adequate remedy at law.

84.     TCI's actions demonstrate an intentional and willful intent to trade on the goodwill associated with Thrive's THRIVE Marks to the great and irreparable injury of Thrive.

85.     TCI's unauthorized and tortious conduct also has deprived and will continue to deprive Thrive of the ability to control the consumer perception of its goods offered for sale and sold under its THRIVE Marks, placing the valuable reputation and goodwill of Thrive in the hands of TCI.

86.     By engage in the referenced acts, TCI is unfairly competing with Thrive.

87.     TCI's conduct has caused, and is likely to continue causing, substantial injury to the public and to Thrive. Thrive is entitled to injunctive relief and to recover TCI's profits attributable to sales of Infringing Skincare Products, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count 3

## Common Law Trademark Infringement

88.     Thrive incorporates each paragraph above into this claim.

89.     As a result of Thrive's continuous use and promotion of the THRIVE Marks, as well as the distinctiveness of the marks, consumers associate and recognize the mark as representing a single source or sponsor of goods, and therefore the trademarks are protectable at common law.

90.     Thrive owns and enjoys trademark rights in the THRIVE Marks, which rights are superior to any rights that TCI may claim in and to its marks with respect to TCI's products. Thrive's marks are strong and inherently distinctive.

91.     TCI's actions described herein constitute common law trademark infringement and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Thrive. Thrive has no adequate remedy at law for this injury.

92.     TCI acted with full knowledge of Thrive's use of, and statutory and

common law rights to, the THRIVE Marks and without regard to the likelihood of confusion of the public created by TCI's activities.

93.     TCI's actions demonstrate an intentional and willful intent to trade on the goodwill associated with Thrive's THRIVE Marks to the great and irreparable injury of Thrive.

94.     As a result of TCI's acts, Thrive has been damaged in an amount not yet determined or ascertainable. At a minimum, however, Thrive is entitled to injunctive relief and an accounting of TCI's profits, damages, and costs.

**Count 4**

**<u>Common Law Unfair Competition</u>**

95.     Thrive incorporates each paragraph above into this claim.

96.     TCI's wrongful conduct, as described herein, is likely to create confusion, misrepresentation, mistake, or to deceive the public as to the affiliation, approval, sponsorship, or connection between TCI and Thrive, and constitute unfair competition at common law.

97.     As a result of the described wrongful conduct by TCI in connection with its advertising, offering to sell, and selling goods, Thrive has suffered, and will continue to suffer, irreparable injury to its rights, and has suffered, and will continue to suffer, substantial loss of goodwill and loss in value of its trademarks, unless and until TCI is enjoined from continuing its wrongful acts.

98.     TCI's actions have caused and, unless permanently enjoined by the Court under the common law of unfair competition, will continue to cause irreparable harm to Thrive and to its goods, including those offered for sale under the THRIVE Marks. Thrive has no adequate remedy at law. TCI's wrongful conduct, and the resulting damage to Thrive, is continuing and ongoing, since TCI is currently advertising, selling, and offering to sell Infringing Skincare Products.

99.     As a result of TCI's acts, Thrive has been damaged in an amount not yet determined or ascertainable. At a minimum, however, Thrive is entitled to

injunctive relief and an accounting of TCI's profits, damages, and costs.

**Count 5**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

100.   Thrive incorporates each paragraph above into this claim.

101.   As described herein, TCI has engaged in unlawful or fraudulent business acts or practices, constituting unfair competition in violation of California Business and Professions Code § 17200, *et seq*.

102.   By reason of the foregoing wrongful conduct, TCI has engaged in unlawful acts relating to its unauthorized adoption and use in U.S. commerce of marks that are confusingly to Thrive's THRIVE Marks in connection with the distribution, marketing, promotion, offering for sale and sale of TCI's goods, which have caused, and which will continue to cause, a likelihood of confusion or misunderstanding as to (a) the source and sponsorship of TCI's or Thrive's goods, or (b) the affiliation, connection or association, or certification by or between TCI and Thrive, in violation of California Business and Professions Code § 17200, *et seq*.

103.   TCI's actions have caused and, unless permanently enjoined by the Court under California Business and Professions Code § 17200, *et seq*., will continue to cause irreparable harm to Thrive and to its goods, including those offered for sale under the THRIVE Marks. Thrive has no adequate remedy at law. TCI's wrongful conduct, and the resulting damage to Thrive, is continuing and ongoing, since TCI is currently advertising, selling, and offering to sell Infringing Skincare Products.

104.   Upon information and belief, TCI intentionally, willfully, and knowingly undertook these actions and adopted marks which are confusingly similar to the THRIVE Marks and did so with blatant disregard for Thrive's trademark rights.

105.   Thrive is entitled to injunctive relief, restitution of TCI's ill-gotten gains stemming from its violations of law in an amount to be determined at trial, and to recover Thrive's attorneys' fees and costs incurred in connection with TCI's

unlawful or fraudulent business acts or practices pursuant to California Business and Professions Code § 17200, *et seq.*

## **Prayer for Relief**

WHEREFORE, Thrive prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award Thrive relief including but not limited to an Order:

1. Enjoining TCI and its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from TCI, or in concert or participation with TCI, and each of them, from:

a. advertising, marketing, promoting, offering for sale, distributing, or selling the Infringing Skincare Products and any other products that are protected by Thrive's registered and common law trademark rights or in their natural zone of expansion;

b. using the THRIVE Marks or any other copy, reproduction, colorable imitation, or simulation of the THRIVE Marks on or in connection with TCI's skincare products and TCI's advertising, promotion, and marketing thereof;

c. using any trademark, name, logo, design, or source designation of any kind on or in connection with TCI's skincare products or related services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Thrive's trademarks, names, or logos;

d. using any trademark, name, logo, design, or source designation of any kind on or in connection with TCI's goods that is likely to cause consumers to be confused, mistaken, or deceived into believing that goods or services originating from TCI are produced or provided by Thrive, or are sponsored or authorized by Thrive, or are in any way connected or related to Thrive, or in Thrive's natural zone of expansion;

e. using any trademark, name, logo, design, or source designation of any

kind on or in connection with TCI's goods that is likely to cause consumers to be confused, mistaken, or deceived into believing that the goods or services produced or provided by Thrive, or in Thrive's natural zone of expansion, are produced or provided by, connected with, or related to TCI;

f.   passing off, palming off, or assisting in passing off or palming off TCI's goods as those of Thrive, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

2.   Compelling TCI to account to Thrive for any and all profits derived by TCI from the sale or distribution of the Infringing Skincare Products, and any other products that are protected by Thrive's registered and common law trademark rights or in their natural zone of expansion.

3.   Awarding Thrive damages caused by the acts forming the basis of this Complaint in an amount to be ascertained at trial.

4.   Awarding Thrive damages for corrective advertising in an amount to be ascertained at trial.

5.   Awarding, based on TCI's knowing and intentional use of confusingly similar imitations of Thrive's THRIVE Marks, treble damages and enhancing the award of TCI's profits as provided for by 15 U.S.C. § 1117(a).

6.   Requiring TCI to pay to Thrive the costs of suit and reasonable attorneys' fees incurred by Thrive in this action pursuant to any applicable statutes or caselaw, including 15 U.S.C. § 1117(a) and Cal. Bus. & Prof. Code § 17200, *et seq*.

7.   Awarding Thrive prejudgment and post-judgment interest on all monetary awards.

8.   Granting such other and further relief as the Court may deem just.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38 and Central District of California L.R. 38-1, Thrive demands a trial by jury on all issues so triable.

1
2
3     DATED:  July 1, 2021                    THE MCARTHUR LAW FIRM, PC
4
5                                            By: */s/ Stephen C. McArthur*
                                                 STEPHEN C. MCARTHUR
6
                                             Stephen McArthur
7                                            stephen@smcarthurlaw.com
                                             Thomas Dietrich
8                                            tom@smcarthurlaw.com
                                             9465 Wilshire Blvd., Ste. 300
9                                            Beverly Hills, CA 90212
                                             Telephone: (323) 639-4455
10
                                             *Attorneys for Plaintiff Thrive Natural*
11                                           *Care, Inc.*
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT
Case No. 2:20-cv-9091-PA-AS

# CERTIFICATE OF SERVICE

Case Name: *Thrive Natural Care, Inc. v. Thrive Causemetics, Inc.*
Case No.: 2:20-cv-9091-PA-AS

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**FIRST AMENDED COMPLAINT**

on the following parties by electronically filing the foregoing on July 1, 2021, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rollin Ransom (SBN 196126)                    *Attorneys for Defendant*
rransom@sidley.com
Ryan Stasell (SBN 307431)
rstasell@sidley.com
Paula Salazar (SBN 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth St., Ste. 4000
Los Angeles, CA 90013

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Date:   7/1/2021                    By:   */s/ Thomas Dietrich*
                                          Thomas Dietrich

FIRST AMENDED COMPLAINT
Case No. 2:20-cv-9091-PA-AS