Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff*
*Thrive Natural Care, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:20-CV-9091-PA-AS |
| Plaintiff, | **PLAINTIFF'S OPENING BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| THRIVE CAUSEMETICS, INC., | Hon. Percy Anderson |
| Defendant. | **Hearing Date**: September 13, 2021<br>**Time:** 1:30 p.m.<br>**Courtroom:** 9A |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      Introduction ......................................................................................................... 1

II.     Background .......................................................................................................... 2

        A.      Thrive's THRIVE-Branded Skincare Business ...................................... 2

        B.      Thrive's Registered THRIVE Trademarks .............................................. 3

        C.      TCI Expands from Color Cosmetics to Skincare with Knowledge of Thrive
                and the THRIVE Registration ................................................................. 3

III.    Legal Standard .................................................................................................... 6

IV.     Summary Judgment on Infringement ................................................................. 6

        A.      Thrive's THRIVE Marks are Valid and Protectable............................... 7

        B.      The *Sleekcraft* Factors Demonstrate Likelihood of Confusion.............. 7

                1.      The two marks are functionally identical................................... 8

                2.      The parties' skincare products are identical............................. 10

                3.      Both parties are e-commerce companies................................... 11

                4.      Strength of mark factor favors likelihood of confusion ........... 12

                5.      There is substantial evidence of actual confusion.................... 14

                6.      Inexpensive goods and degree of consumer care favor Thrive ............... 15

                7.      TCI knew of THRIVE Marks before it launched skincare ...................... 16

                8.      Expansion of product lines favors Thrive ................................. 17

                9.      Totality of the factors strongly favors Thrive .......................... 17

V.      Summary Judgment on Willfulness is Warranted.............................................. 18

VI.     Disgorgement of TCI's Profits is Warranted ................................................... 21

        A.      TCI Has the Burden of Proving Deductible Expenses.......................... 22

        B.      Parties Agree on Revenues and Cost of Goods; TCI Failed to Meet Burden
                to Deduct Any Other Expenses ............................................................. 22

VII.    An Award of Corrective Advertising is Appropriate ........................................ 23

VIII.   The Court Should Grant a Permanent Injunction ............................................. 24

        Conclusion.......................................................................................................... 25

1

# **TABLE OF AUTHORITIES**

2

3

## **Cases**

4

*ACI Int'l. Inc. v. Adidas-Salomon AG*, 359 F. Supp. 2d 918 (C.D. Cal. 2005)................................. 9

*Adray v. Adry-Mart, Inc.*, 76 F.3d 984 (9th Cir. 1995)................................................................... 29

5

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ................................................. 9, 13, 19

6

*AOP Ventures, Inc. v. Steam Distribution, LLC*, No. 15-CV-1586-VAP-KKX, 2016 WL 7336730
(C.D. Cal. Oct. 11, 2016) ......................................................................................... 6, 12, 13, 22

7

*BDO Remit (USA), Inc. v. Stichting BDO*, No. 11-CV-04054-MMM-CWX, 2012 WL 12895658
(C.D. Cal. Sept. 19, 2012)............................................................................................................. 9

8

*Bellagio Jewelry, Inc. v. Croton Watch Co., No. CV 06-6672ODWRZX, 2008 WL 3905895 (C.D.
Cal. Aug. 20, 2008)*................................................................................................................... 25

9

*Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co*., 561 F.2d 1365 (10th Cir. 1977).......... 29

10

*Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036 (9th Cir. 1999). .................... 7, 20

11

*Brooklyn Brewery Corp. v. Black Ops Brewing, Inc*., 156 F. Supp. 3d 1173 (E.D. Cal. 2016) ... 20,
21

12

*Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, No. 03-CV-0992-AJW, 2007 WL 9662337
(C.D. Cal. Nov. 8, 2007)............................................................................................................... 8

13

*DC Comics v. Towle*, 989 F. Supp. 2d 948 (C.D. Cal. 2013) ........................................................... 7

14

*Drain v. Newsted*, 307 F. Supp. 2d 1116  (C.D. Cal. 2003)............................................................ 16

15

*Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998) ............................ 15

16

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 472 (N.D. Cal. 1992) ... 23, 24, 25

*E. & J. Gallo Winery v. Gallo Cattle Co*., 967 F.2d 1280 (9th Cir. 1992) ..................................... 15

17

*E.J. Gallo Winery v. Pasatiempos Gallo*, 905 F. Supp. 1403 (E.D. Cal. 1994)............................. 18

18

*Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125 (C.D. Cal. 2001) . 9, 10, 11, 13, 16, 19

*Fiji Water Co. v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165 (C.D. Cal. 2010) 18, 21, 31

19

*Folkens v. Wyland*, No. C-01-1241 EDL, 2002 WL 1677708 (N.D. Cal. July 22, 2002) ....... 27, 28

20

*Ford Motor Co. v. Summit Motor Products, Inc*., 930 F.2d 277 (3d Cir. 1991)............................... 7

21

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc*., 772 F.2d 505 (9th Cir. 1985)...................... 28

22

*Golden Door, Inc. v. Odisho*, 646 F.2d 347 (9th Cir. 1980)........................................................... 10

*GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199 (9th Cir. 2000)..................... 10, 13, 14, 19, 22

23

*Henderson v. Lindland*, No. 11-CV-01350-DDP-DTBX, 2013 WL 1181957 (C.D. Cal. Mar. 21,
2013) ...................................................................................................................................... 15, 16

24

*Intel Corp. v. Hartford Accident & Indem. Co*., 952 F.2d 1551 (9th Cir. 1991) ............................ 6

25

*JL Beverage Co., LLC v. Jim Beam Brands Co*., 828 F.3d 1098 (9th Cir. 2016)......................... 20

26

*Kamar Int'l, Inc. v. Russ Berrie & Co*., 752 F.2d 1326 (9th Cir. 1984) ................................. 27, 28

27

*Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400 (9th Cir. 1993). ...................................... 23, 27, 28

*Marketquest Grp., Inc. v. BIC Corp.*, No. 11-CV-618-BAS (JLB), 2018 WL 1756117 (S.D. Cal.
Apr. 12, 2018)............................................................................................................................. 29

28

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). ........................................ 8

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc*., 638 F.3d 1137 (9th Cir. 2011). ................. 7

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993) ................................................ 14

*Ossur hf v. Manamed Inc*., 331 F. Supp. 3d 1005 (C.D. Cal. 2017) ............................................... 30

*Perfumebay.com Inc. v. eBay, Inc*., 506 F.3d 1165 (9th Cir. 2007) ................. 9, 10, 11, 12, 13, 14

*Playboy Enters., Inc. v. Netscape Comm. Corp*., 354 F.3d 1020 (9th Cir. 2004) ........................ 18

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014). ................. 10, 12, 13, 14, 17, 19

*Razor USA LLC v. Vizio, Inc.*, No. 14-CV-01586S-JOJ-CGX, 2015 WL 12656941 (C.D. Cal. Oct. 19, 2015) ............................................................................................................................... 23

*Romag Fasteners, Inc v. Fossil, Inc*., 140 S. Ct. 1492 (2020). ...................................................... 26

*Starbucks Corp. v. Glass*, No. 2:16-CV-03937-ODW-PJW, 2016 WL 6126255 (C.D. Cal. Oct. 20, 2016) ............................................................................................................................... 15

*Stark v. Diageo Chateau & Estate Wines Co.,907 F.Supp.2d 1042 (N.D. Cal. 2012)* ........... 19, 22

*SunEarth, Inc. v. Sun Earth Solar Power Co*., 846 F. Supp. 2d 1063 (N.D. Cal. 2012) .............. 21

*Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625 (9th Cir. 2005). ................................... 6, 9

*Synoptek, LLC v. Synaptek Corp*., 309 F. Supp. 3d 825 (C.D. Cal. 2018). 11, 12, 17, 18, 20, 21, 22

*Synoptek, LLC v. Synaptek Corp*., No. SA-CV-1601838-CJC-JCGX, 2018 WL 3359017 ("*Synoptek II*") (C.D. Cal. June 4, 2018) ........................................................................... 23, 25

*Thane Int'l v. Trek Bicycle Corp*., 305 F.3d 894 (9th Cir. 2002) ................................................... 17

*Vineyard House, LLC v. Constellation Brands U.S. Ops., Inc*., No. 4:19-CV-01424-YGR, 2021 WL 254448 (N.D. Cal. Jan. 26, 2021) ...................................................................................... 30

*Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108 (9th Cir. 2010). .............................. 8

## **Statutes**

15 U.S.C. § 1115(b) ....................................................................................................................... 7

15 U.S.C. § 1116(a) ..................................................................................................................... 31

15 U.S.C. § 1117(a) ................................................................................................... 26, 27, 28, 29

PLAINTIFF'S MEMO ISO MTN.
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-CV-09091-PA-AS

# I.    <u>Introduction</u>

This is a straightforward case of trademark infringement.

 

***Plaintiff's skincare face cleanser on left; Defendant's skincare face cleanser on right.***

Plaintiff Thrive Natural Care, Inc. ("Thrive") sells THRIVE-branded skincare products. It has registered and incontestable trademarks for the word mark "THRIVE" for skincare lotions and cleansers with a priority date of 2012. Thrive has built a successful brand selling its skincare products via e-commerce on Amazon.com, Walmart.com, and its own website, as well as at Whole Foods stores.

Defendant Thrive Causemetics, Inc. ("TCI") was founded in 2014 to sell false eyelashes and color cosmetics (makeup) to women undergoing cancer treatment. TCI knew since 2015 of Thrive's senior trademark rights and knew Thrive's trademark blocked TCI from expanding into skincare. In 2016, TCI's founder asked permission from Thrive to use the THRIVE mark on color cosmetics, but Thrive denied her request.  In 2017, TCI told Thrive that there was no conflict between the two companies because TCI only sold makeup, not skincare products like Thrive. But just one year later, in 2018, TCI began selling its own THRIVE-branded skincare products in direct competition with Thrive. The goods

sold and brands used are virtually identical: Thrive's "THRIVE" skincare versus TCI's "THRIVE causemetics" skincare.

Knowing it was infringing, TCI tried yet again in 2019 to get Thrive's permission to use the THRIVE mark for TCI's business. The companies' CEOs even discussed a potential licensing arrangement. Instead of pursuing the license, TCI chose to keep infringing—broadly *expanding* its skincare line from one skincare product in 2018 to over a dozen in 2020. TCI has now, without any license, spent ██████ of dollars on misleading ads wrongfully tying the "THRIVE" mark to TCI's new skincare line and has sold over ███████ of infringing THRIVE-branded skincare products. TCI's intentional infringement has caused actual consumer confusion and damaged Thrive. There is no genuine dispute of material fact that would prevent summary judgment in Thrive's favor on (a) infringement liability, (b) willful infringement, (c) disgorgement of TCI's profits, (d) corrective advertising damages, and (e) a permanent injunction.

## II.   Background

### A.   Thrive's THRIVE-Branded Skincare Business

Thrive has used the brand name "THRIVE" (the "THRIVE Mark") on skincare products continuously since 2013. SUF ¶¶ 1-2.[1] Today, Thrive sells a range of skincare products, including lotions, creams, cleansers, moisturizers, and sunscreens—all under the THRIVE brand. SUF ¶¶ 3, 7. Thrive sells its products online at www.thrivecare.co and through retail partnerships with Amazon and Walmart.com, and at physical Whole Foods retail stores. SUF ¶ 6. Thrive targets a unisex audience, selling items such as beard oil to men but also focusing on the female market for items like sunscreen, cleansers, and moisturizers. SUF ¶ 10. Women have always formed a sizable part, and in recent years the majority, of Thrive's customer base. *Id*.

---

[1] Citations to "SUF" refer to Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law.

Thrive is known for selling high-quality organic skincare products and for sourcing ingredients from farmers in Costa Rica, who use regenerative agriculture methods to cultivate native plants while improving the livelihoods of farming communities. SUF ¶ 11. Thrive has gained a reputation for being on the leading edge of healthy, natural, sustainable skincare. SUF ¶¶ 11-13. Thrive has received substantial media coverage of its company and brand. *Id*.

**B.     Thrive's Registered THRIVE Trademarks**

Thrive holds two registered trademarks for "THRIVE" in standard characters in relation to skincare products in International Class 03. The first, Registration No. 4,467,942 (the '942 Registration"), was registered January 14, 2014, from an application filed September 11, 2012. SUF ¶ 14. The '942 Registration has been deemed "incontestable" by the U.S. Patent & Trademark Office ("PTO"). SUF ¶ 15. The second, Registration No. 6,164,303 (the "'303 Registration"; together with the '942 Registration, the "THRIVE Registrations"), was registered on September 29, 2020, from an application filed May 2, 2016. SUF ¶ 16.

**C.     TCI Expands from Color Cosmetics to Skincare with Knowledge of Thrive and the THRIVE Registration**

Karissa Bodnar founded TCI in or about August 2014, initially selling false eyelashes and later color cosmetics (makeup) under the THRIVE CAUSEMETICS brand. SUF ¶ 19. TCI knew of Thrive by ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████. SUF ¶ 20.

In November 2015, the PTO rejected an application by TCI to register THRIVE CAUSEMETICS, citing a likelihood of confusion with Thrive's senior '942 Registration. SUF ¶ 22. Attempting to sidestep this issue, in April 2016 Ms. Bodnar emailed Thrive and asked for permission to use the THRIVE Mark as part of TCI's brand name. SUF ¶ 26. Ms. Bodnar identified TCI as "a color cosmetics brand with a mission to help women going through cancer treatment look

1   and feel better during their time of need." *Id*. She promised never to "use the word

2   'Thrive' without the word 'Causemetics'. . . ." *Id*. She did not disclose the PTO's

3   rejection of TCI's trademark or that— ███████████████████

4   ████████████████████████████████████████. SUF ¶¶ 23, 26.

5          Thrive's co-founder, Alex McIntosh, denied Ms. Bodnar's request to use the

6   THRIVE Mark. SUF ¶ 27. Thrive chose not to pursue the issue further at that time

7   because it assumed that TCI would abide by Thrive's denial. *Id*. TCI then

8   convinced the PTO to withdraw its rejection on the basis of Thrive's '942

9   Registration by arguing that TCI's color cosmetics were "distinctly different types

10  of consumer goods" than Thrive's skincare products. SUF ¶¶ 24-25.

11         Thrive sent a cease-and-desist letter to TCI on March 3, 2017, in response to

12  Thrive learning that TCI had gone forward with its use of the THRIVE Mark

13  despite Thrive's 2016 denial and because TCI had begun to emphasize the term

14  "THRIVE" in TCI's branding. SUF ¶ 29. TCI rejected the demand to stop using the

15  name THRIVE on its products and argued again that the parties sold "different

16  product lines" (makeup vs. skincare products). *Id*. Thrive relied on this assertion by

17  TCI, concluding that as long as TCI stayed in its own lane of makeup and was not

18  in the skincare market, there was no dispute to litigate. *Id*. But in 2018, TCI erased

19  that distinction and moved into the skincare market. SUF ¶ 36. TCI quietly sold

20  three skincare products through 2019 without telling Thrive. SUF ¶ 37. In 2020,

21  Thrive learned of TCI's entrance into the skincare market when TCI dramatically

22  expanded its skincare line, releasing more than a dozen new products and officially

23  announcing its separate skincare line. *Id*.

24         That dramatic expansion came *after* a second attempt by TCI's founder, Ms.

25  Bodnar, to obtain permission from Thrive to use the THRIVE Mark. On June 27,

26  2019—following the PTO's rejection of TCI's second application to register

27  THRIVE CAUSEMETICS due to a likelihood of confusion with both THRIVE

28  Registrations—Ms. Bodnar called Thrive's co-founder, Mr. McIntosh. SUF ¶¶ 31-

35, 40. Ms. Bodnar begged Thrive to allow TCI to use the "THRIVE" name. SUF ¶ 40. Mr. McIntosh refused her request, pointed out that TCI's request would be confusing to consumers and retailers, and reminded Ms. Bodnar about Thrive's trademark registrations. *Id*. Mr. McIntosh stated that, for there to be any agreement, TCI must at a minimum (1) stop emphasizing the word "Thrive" as compared to "Causemetics," and (2) agree to compensate Thrive with a licensing fee for TCI's use of the THRIVE Mark. *Id*. TCI never responded. *Id*.

In 2020, TCI added a separate "skincare" section to its website which displays most of the skincare products TCI sells. SUF ¶ 42. These include face and body cleansers, lotions, creams, moisturizers, sunscreen, lip balm, and face oils (collectively, "Infringing Skincare Products") all of which directly overlap with Thrive's THRIVE Registrations and the actual products sold by Thrive. SUF ¶¶ 3, 43 (identifying product SKU numbers for the Infringing Skincare Products). TCI also purchases Google advertising keywords for terms including ████████ ████████████████████████████████████████████████████ ████████████—causing ads for TCI's skincare products to appear together with Thrive's skincare products in online search results. SUF ¶ 49. TCI has made other uses of "THRIVE" without "Causemetics" in ways that are likely to cause consumer confusion. In 2017, TCI began calling its headquarters the "Thrive Lab" in marketing and advertising. SUF ¶ 63. In 2018, TCI began referring to its followers as the "Thrive Tribe," which is exactly the same name Thrive had used for its followers and customers since 2013. SUF ¶ 62.

TCI's intentional infringement has caused numerous examples of actual consumer confusion—including consumer reviews lauding *TCI* for creating the products they purchased from *Thrive*. SUF ¶¶ 55-58. That finding is supported by two consumer surveys and expert analysis showing consumers are likely to believe that the parties' products come from the same source. SUF ¶ 59. Of 1,200 participants, well over 50% were actually confused and believed Thrive's and

1   TCI's products originated from the same source or affiliated sources. *Id*.

2   ## III.   Legal Standard

3        Thrive must first show there is no genuine issue of material fact in evidence.

4   Fed. R. Civ. P. 56(c). Once that burden is met, TCI "must present significant

5   probative evidence tending to support [its] claim or defense." *Intel Corp. v.*

6   *Hartford Accident & Indem. Co*., 952 F.2d 1551, 1558 (9th Cir. 1991). If TCI fails

7   to make this showing, Thrive is entitled to summary judgment. *See id*.

8   ## IV.   Summary Judgment on Infringement

9        There is no genuine dispute that would prevent summary judgment for

10   Thrive on its Lanham Act claims. "Although disfavored in trademark infringement

11   cases, summary judgment may be entered when no genuine issue of material fact

12   exists." *Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 630 (9th Cir. 2005).

13   For example, a Court in this District granted summary judgment of infringement

14   where the plaintiff held a mark for MILKMAN on e-cigarette products and the

15   defendant used THE MILK MAN mark on the same products, despite the parties

16   using different product packaging. *AOP Ventures, Inc. v. Steam Distribution, LLC*,

17   No. 15-CV-1586-VAP-KKX, 2016 WL 7336730, at *9 (C.D. Cal. Oct. 11, 2016)

18   (order modified solely on unrelated damages grounds in 2016 WL 10586307 (C.D.

19   Cal. Dec. 27, 2016)). Likelihood of confusion can be determined as a matter of law

20   on summary judgment. *DC Comics v. Towle*, 989 F. Supp. 2d 948, 956 (C.D. Cal.

21   2013) ("The legal conclusion that confusion is likely must rest on the particular

22   facts of the case, but when all of the material facts have been determined, the

23   ultimate determination of likelihood of confusion lies within the exclusive

24   jurisdiction of the court."). To prove trademark infringement, Thrive must show

25   "(1) that it has a protectable ownership interest in the mark; and (2) that the

26   defendant's use of the mark is likely to cause consumer confusion." *Network*

27   *Automation, Inc. v. Adv. Sys. Concepts, Inc*., 638 F.3d 1137, 1144 (9th Cir. 2011).

28   A claim for false designation of origin under § 1125(a), as well as related state law

1   claims, depend on the same facts and analysis. *Brookfield Comms., Inc. v. W. Coast*
2   *Ent. Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999).

3       **A.    Thrive's THRIVE Marks are Valid and Protectable**

4       An "incontestable" federal registration is "conclusive evidence of the validity
5   of the registered mark and of the registration of the mark, of the registrant's
6   ownership of the mark, and of the registrant's exclusive right to use the registered
7   mark in commerce." 15 U.S.C. § 1115(b). "If the mark at issue was federally
8   registered and had become 'incontestable' … validity, legal protectability, and
9   ownership are proved." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d
10  277, 291 (3d Cir. 1991). Even a non-incontestable registration "provides 'prima
11  facie evidence' of the mark's validity and entitles the plaintiff to a 'strong
12  presumption' that the mark is a protectable mark." *Zobmondo Entm't, LLC v. Falls
13  Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010).

14      It is undisputed that Thrive owns two federal registrations for THRIVE in
15  standard characters in connection with skincare products. *See* SUF ¶¶ 14-16.
16  The '942 Registration is incontestable, meaning the validity of the THRIVE Mark
17  and Thrive's ownership thereof must be "conclusively presumed." *Cyclone USA,*
18  *Inc. v. LL&C Dealer Servs., LLC*, No. 03-CV-0992-AJW, 2007 WL 9662337, at *2
19  (C.D. Cal. Nov. 8, 2007) (citing 15 U.S.C. § 1115(b)). Thrive also holds the '303
20  Registration, which creates the strong presumption of ownership. Those facts
21  satisfy the first step of the infringement analysis.

22      **B.    The *Sleekcraft* Factors Demonstrate Likelihood of Confusion**

23      The second step is to determine "whether use of the plaintiff's trademark by
24  the defendant is likely to cause confusion or to cause mistake, or to deceive as to
25  the affiliation, connection, or association of the two products." *Mattel, Inc. v.*
26  *Walking Mountain Prods.*, 353 F.3d 792, 806-07 (9th Cir. 2003). In the Ninth
27  Circuit, actionable forms of confusion include initial interest confusion, point of
28  sale confusion, and post-sale confusion. *Electropix v. Liberty Livewire Corp.*, 178

F. Supp. 2d 1125, 1130 (C.D. Cal. 2001); *ACI Int'l. Inc. v. Adidas-Salomon AG*, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005). The *Sleekcraft* factors guide this determination: (1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and the (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The likelihood of confusion test is "fluid," and it is not necessary to meet every factor. *Surfvivor*,406 F.3d at 631.

"In the internet context, the three most important *Sleekcraft* factors in evaluating a likelihood of confusion are (1) the similarity of the marks, (2) the relatedness of the goods and services, and (3) the parties' simultaneous use of the Web as a marketing channel." *Perfumebay.com Inc. v. eBay, Inc*., 506 F.3d 1165, 1173-74 (9th Cir. 2007); *BDO Remit (USA), Inc. v. Stichting BDO*, No. 11-CV-04054-MMM-CWX, 2012 WL 12895658, at *15 (C.D. Cal. Sept. 19, 2012) (these factors are most important "[i]n the context of parties that use the Internet to market their goods or services"). "When this controlling troika or internet trinity suggests confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Perfumebay.com*, 506 F.3d at 1173-74. Under the *Sleekcraft* factors, the likelihood of confusion between the parties' THRIVE-branded skincare products cannot reasonably be disputed.

### 1.    The two marks are functionally identical

"The greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1206 (9th Cir. 2000). In the Ninth Circuit, "[t]he following axioms define and delimit the similarity analysis: (1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences." *Pom*

*Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127-28 (9th Cir. 2014). The likelihood of confusion is high where a defendant's mark incorporates the entirety of plaintiff's mark and merely adds a suggestive or descriptive element to it. *See Electropix,* 178 F. Supp. 2d at 1129 ("When a junior user incorporates the entire arbitrary mark of another, addition of a suggestive or descriptive element is generally not sufficient to avoid confusion.") (citing MCCARTHY ON TRADEMARKS, § 23:50 ("[T]he general rule is that a subsequent user may not avoid likelihood of confusion by appropriating another's entire mark and adding descriptive or non-distinctive matter to it.")); *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 351 (9th Cir. 1980) (holding that where parties sold overlapping services in overlapping markets, defendant's addition of descriptive terms to "Golden Door" mark did not reduce the likelihood of confusion). For example, the *Electropix* court held the defendant's additions of descriptive terms such as "Hyper TV" and "Network Services" to the plaintiff's mark "Livewire" did not reduce likelihood of confusion. 178 F. Supp. 2d at 1129.

Here, TCI incorporated Thrive's entire THRIVE Mark, while adding only the element "Causemetics" to it. The PTO has already found the term "Causemetics" is merely descriptive, as a misspelling of "cosmetics," and required TCI to file a disclaimer of that portion of its mark. SUF ¶ 32. Otherwise, TCI's mark consists only of the term "THRIVE"—an arbitrary word that incorporates Thrive's entire protected THRIVE Mark. Moreover, TCI's domain name, thrivecausemetics.com, incorporates the entire THRIVE Mark, and online search results for "Thrive skincare," "Thrive lotion," and "Thrive moisturizer" display results for both TCI and Thrive—along with paid ads from TCI. SUF ¶¶ 5, 48-52. *See Perfumebay.com*, 506 F.3d at 1174 (finding factor strongly favored plaintiff where defendant's domain name incorporated plaintiff's entire mark and search engine results displayed links to both parties' sites). These facts weigh strongly in Thrive's favor in the *Sleekcraft* analysis. *See id*.; *Electropix*, 178 F.2d at 1129.

To the extent TCI argues the parties' product packaging looks different, that should be given minimal to no weight. Both THRIVE Registrations "are registered as word marks without any design elements, so *any differences in how the marks are displayed is of limited significance*." *Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 837 (C.D. Cal. 2018) (emphasis added); *see also Pom*, 775 F.3d at 1125 (reversing trial court's finding of no likelihood of confusion that had been based heavily on product packaging differences). As the Ninth Circuit explained in *Pom*, "Pom Wonderful's exclusive right to use the 'POM' mark covers all design variations of the word because 'POM' was registered as a standard character mark" making it "*extremely broad*, covering the word in all types of depictions." 775 F.3d at 1125 (emphasis added); *Perfumebay.com*, 506 F.3d at 1174 (disregarding defendant's logo where its mark incorporated plaintiff's entire mark).

The *Synoptek* Court in this District, granted summary judgment in the plaintiff's favor on likelihood of confusion, giving minimal weight to the parties' marks being depicted with contrasting colors and different logos because "[t]he striking similarity of appearance and sound in the parties' marks here outweighs differences in how the marks may be presented in the parties' advertising." 309 F. Supp. 3d at 837. Similarly, in *AOP Ventures*, the court relied on *Pom* and granted plaintiff summary judgment on infringement, disregarding distinct differences in the parties' packaging and holding visual and aural similarities between the marks strongly supported finding a likelihood of confusion. 2016 WL 7336730, at *7.

It is undisputed here that both parties' packaging prominently features the THRIVE Mark in large font on the front where it is easily visible to consumers. SUF ¶¶ 4, 47. TCI's packaging incorporates the entire THRIVE Mark, creating perfect aural and semantic similarity, and adds only the descriptive term "Causemetics". This factor thus weighs heavily in favor of Thrive.

### 2.      The parties' skincare products are identical

"Related goods are generally more likely than unrelated goods to confuse the

public as to the producers of the goods." *GoTo.com*, 202 F.3d at 1207. "[P]roducts which would be reasonably thought by the buying public to come from the same source if sold under the same mark" are considered related. *Sleekcraft*, 599 F.2d at 348 n.10. "Moreover, when goods . . . are sold to the same class of purchasers, or similar in use and function, less similarity between the marks is needed when analyzing this factor." *Electropix*, 178 F. Supp. 2d at 1129. Here, the parties' sell identical products: skincare lotions, moisturizers, and cleansers. SUF ¶¶ 3, 43. The parties are direct competitors. SUF ¶¶ 3-5, 43-52. This factor thus weighs heavily in favor of likelihood of confusion. *See Pom*, 775 F.3d at 1127; *AOP Ventures*, 2016 WL 7336730, at *7 (holding, where goods "are identical in kind and directly compete with one another," "[t]his factor . . . weighs heavily in favor of" plaintiff).

### 3.    Both parties are e-commerce companies

Where both parties "utilize the internet as a marketing and advertising facility, courts have consistently recognized [that] as exacerbating the likelihood of confusion." *Perfumebay.com*, 506 F.3d at 1174; *see also Sleekcraft*, 599 F.2d at 353 ("Convergent marketing channels increase the likelihood of confusion."). "[T]he Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since, as it did in this case, it allows for competing marks to be encountered at the same time, on the same screen." *Perfumebay.com*, 506 F.3d at 1174.

Both Thrive and TCI are e-commerce companies that advertise almost exclusively online and sell competing skincare products through their online stores. SUF ¶¶ 5-6, 45-54. Their products appear side-by-side in online searches and online marketplaces like Google Shopping, Amazon, and eBay. *Id*. The majority of Thrive's customers are women, and women comprise most of TCI's customer base, though TCI sells to men too. SUF ¶¶ 10, 39. Because the parties both advertise and sell THRIVE-branded skincare products to the same pool of consumers through the same channels, this factor weighs heavily in favor of likelihood of confusion. *See Perfumebay.com*, 506 F.3d at 1174; *Pom*, 775 F.3d at 1130.

The three most important factors for e-commerce-related confusion are in Thrive's favor, meaning "the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Perfumebay.com*, 506 F.3d at 1173. But the other, less important, factors also support a likelihood of confusion.

### 4.    Strength of mark factor favors likelihood of confusion

The "'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength." *GoTo.com, Inc*, 202 F.3d at 1206. "Marks can be conceptually classified along a spectrum of increasing inherent distinctiveness." *Id*. "From weakest to strongest, marks are categorized as generic, descriptive, suggestive, and arbitrary or fanciful." *Id*. The THRIVE Mark is arbitrary with relation to skincare products. "An arbitrary mark consists of common words arranged in an arbitrary way that is non-descriptive of any quality of the goods." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993). Arbitrary marks are considered strong and "awarded maximum protection." *E. & J. Gallo Winery v. Gallo Cattle Co*., 967 F.2d 1280, 1291 (9th Cir. 1992). "A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." *Starbucks Corp. v. Glass*, No. 2:16-CV-03937-ODW-PJW, 2016 WL 6126255, at *3 (C.D. Cal. Oct. 20, 2016) "The less obvious the connection, the stronger the mark, and vice versa." *Id*.

The word "thrive" means "to grow vigorously; to gain in wealth or possessions; to progress toward or realize a goal . . . ." SUF ¶ 17. "Thrive" is not descriptive of a particular quality of lotions or cleansers. Thrive's skincare products do not help users grow, gain wealth, or achieve goals. Rather, "thrive" has nothing but an extremely broad, general relationship to flourishing or growing. That is not an "obvious" connection to skincare that would render the mark descriptive of Thrive's goods. *See, e.g.*, *Henderson v. Lindland*, No. 11-CV-01350-DDP-DTBX, 2013 WL 1181957, at *4 (C.D. Cal. Mar. 21, 2013), aff'd, 602 F. App'x 391 (9th Cir. 2015) (holding, at summary judgment stage, that TEAM QUEST mark was

PLAINTIFF'S MEMO ISO MTN.
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-CV-09091-PA-AS

arbitrary for mixed martial arts gyms, despite services relating to groups of fighters); *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) (DREAMWORKS arbitrary with regard to movie production services although such services arguably brought dreams to life). Because the word "thrive" has no obvious connection to skincare products, there is no genuine dispute of material fact as to the THRIVE Mark being arbitrary and receiving maximum protection under the Lanham Act, favoring a likelihood of confusion. *See Henderson*, 2013 WL 1181957, at *4.

Further, "long and continuous use of a mark in the marketplace enhances its strength." *Electropix*, 178 F. Supp. 2d at 1128. Thrive continuously used its THRIVE Mark in commerce for many years. SUF ¶ 1. Thrive is the only entity with trademark registrations for a trademark starting with the word "Thrive" on skincare lotions or cleansers; similar marks have been refused by the PTO, cancelled, or surrendered. SUF ¶ 18. That also strongly weighs in Thrive's favor.

In addition to forward confusion, this case involves a likelihood of reverse confusion, i.e., that consumers will believe Thrive's products originate from TCI. In reverse confusion cases, courts analyze the commercial strength of the parties' marks and, in particular, "evaluate the strength of the junior user's mark so as to gauge its ability to overpower the senior user's mark." *Drain v. Newsted*, 307 F. Supp. 2d 1116, 1124-25 (C.D. Cal. 2003). That means considering: "(1) the commercial strength of the junior user as compared to the senior user; and (2) any advertising or marketing campaign by the junior user that has resulted in a saturation in the public awareness of the junior user's mark." *Id*. at 1125.

Here, TCI's 2020 revenue was ███████. SUF ¶ 65. The media has heavily covered TCI and its CEO, Ms. Bodnar. *Id*. As of July 2020, TCI was reportedly working with Goldman Sachs to assess an IPO or a sale to a larger company. *Id*. TCI spends █████ of dollars—over ███ of its revenue—on advertising connecting the term THRIVE to TCI's skincare products. SUF ¶ 64.

TCI frequently and regularly buys Google advertising keywords which contain ████████████████████. SUF ¶ 49. TCI's ads are widespread and include the THRIVE Mark in every ad. SUF ¶¶ 47-52. These facts also weigh heavily in favor of finding a likelihood of confusion.

### 5. There is substantial evidence of actual confusion

Evidence of confusion "constitutes persuasive proof that future confusion is likely." *Thane Int'l v. Trek Bicycle Corp*., 305 F.3d 894, 902 (9th Cir. 2002). However, "[f]ailing to prove instances of actual confusion is not dispositive . . . because difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Pom*, 775 F.3d at 1131. Indeed, "[e]vidence of actual consumer confusion *is not necessary* for a finding of likelihood of confusion . . . ." *Synoptek*, 309 F. Supp. 3d at 839 (emphasis added).

Thrive has evidence of actual consumer confusion between its products and TCI's. For example, a customer who purchased Thrive sunscreen on Amazon gave a laudatory review of Thrive's skincare products only to end it with: "Well done, Thrive Causemetics." SUF ¶ 55. Another Amazon customer left a positive review for Thrive's skincare moisturizer stating, "Thrive is an up and comer in the cosmetics field. Their mascara is phenomenal." *Id*. Thrive does not sell mascara, but TCI does. Moreover, the similarity between the parties' brands caused Walmart—a retail partner of Thrive—to erroneously list Thrive's products as originating from TCI. SUF ¶ 56. And a potential branding partnership between Thrive and two professional athletes broke down because of confusion between Thrive and TCI. SUF ¶ 58. This evidence is "particularly potent" support for finding a likelihood of confusion. *Synoptek*, 309 F. Supp. 3d at 839.

Moreover, courts regularly accept the results of consumer surveys as surrogate evidence of actual confusion. *See Playboy Enters., Inc. v. Netscape Comm. Corp*., 354 F.3d 1020, 1026 n.28 (9th Cir. 2004); *see also Fiji Water Co. v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1179 (C.D. Cal. 2010)

(granting a preliminary injunction where survey evidence from over 400 respondents showed a confusion level of 24.2%); 6 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 32:188 (confusion levels over 50% are "persuasive evidence" of likely confusion).

While it does not take an expert to determine that consumers are going to be confused between two skincare products both named THRIVE, Thrive's marketing expert conducted two 600-person surveys comparing skincare products by Thrive to products by TCI and control products from third parties. The survey that included Thrive's newer packaging design found a net 54.5% rate of confusion with TCI's skincare product, and the survey that included Thrive's older packaging design found a net 56.6% rate of confusion. SUF ¶ 59. That demonstrates actual confusion far exceeding the rates deemed "significant" by other courts, strongly supporting a likelihood of confusion. *See, e.g.*, *E.J. Gallo Winery v. Pasatiempos Gallo*, 905 F. Supp. 1403, 1409 (E.D. Cal. 1994) (confusion rate between 18-20 percent demonstrated "significant level" of confusion).

## 6. Inexpensive goods and degree of consumer care favor Thrive

"[T]he standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer." *Goto.com*, 202 F.3d at 1209. The reasonably prudent purchaser "standard includes the ignorant and the credulous." *Sleekcraft*, 599 F.2d at 353. "Unlike purchasers of expensive goods— whom we expect to be more discerning and less easily confused—purchasers of inexpensive goods are likely to exercise less care, thus making confusion more likely." *Pom*, 775 F.3d at 1127. Less care is exercised where products are fungible and not unique. *Electropix*, 178 F. Supp. 2d at 1131. And "virtually no amount of consumer care can prevent confusion where two entities have the same name." *Id*.

Here, the parties' brands are centered on the same name—THRIVE— meaning "[i]t is irrational to expect that even the most sophisticated consumer will exercise the kind of scrupulous examination" to discern the difference. *Id*. Further,

the skincare products at issue are inexpensive, ranging between $10 and $60. SUF ¶ 46. While consumers do exercise some care in choosing skincare products, the products are fungible and can be purchased off the shelf with no prior knowledge. *Cf. Electropix*, 178 F. Supp. 2d at 1131 (finding a high degree of care where parties offered "specialized, custom-tailored technical and creative services to sophisticated customers," but holding this factor still weighed in plaintiff's favor where names were nearly identical). These facts strongly support finding a likelihood of confusion. *See Stark v. Diageo Chateau & Estate Wines Co.,907 F.Supp.2d 1042, 1065 (N.D. Cal. 2012)* (finding wine purchasers exercised low degree of care, supporting likelihood of confusion).

### 7.    TCI knew of THRIVE Marks before it launched skincare

The "defendant's intent" factor favors the plaintiff where the alleged infringer used or adopted its mark with knowledge, actual or constructive, that it was another's trademark. *Brookfield*, 174 F.3d at 1059. Specific intent to confuse consumers is not required to find infringement. *JL Beverage Co., LLC v. Jim Beam Brands Co*., 828 F.3d 1098, 1112 (9th Cir. 2016) (holding "absence of malice is no defense to trademark infringement."). However, courts have inferred intent to confuse when a defendant begins using its infringing mark with prior knowledge of plaintiff's mark or continues using a mark after it became aware of the plaintiff's registered mark. *See Synoptek*, 309 F. Supp. 3d at 841 (finding this factor weighed in favor of likelihood of confusion where defendant's founders continued to use the accused mark after having "constructive or actual knowledge of the [plaintiff's] mark" from PTO office actions); *Brooklyn Brewery Corp. v. Black Ops Brewing, Inc*., 156 F. Supp. 3d 1173, 1184 (E.D. Cal. 2016) (factor favors plaintiff where "[e]ven though the injunctive record supports Defendant's assertion that it selected its mark in good faith, Defendant continued using its mark after it became aware of Plaintiff's registered mark.").

Whether TCI chose the name "Thrive" in 2014 for its false eyelashes product

without knowing of Thrive's mark is irrelevant. The question is whether TCI knew of Thrive and its THRIVE Mark in 2018, when TCI moved from color cosmetics into the same market as Thrive—skincare. *See SunEarth, Inc. v. Sun Earth Solar Power Co*., 846 F. Supp. 2d 1063, 1080 (N.D. Cal. 2012). At that time, there is no dispute that TCI knew of Thrive, its mark, and the THRIVE Registrations. SUF ¶¶ 20-22. Indeed, TCI had that knowledge no later than 2015. *Id*. When TCI sold only makeup, it argued to Thrive and the PTO that the parties' products were unrelated and thus there was no likelihood of consumer confusion. SUF ¶¶ 24, 29. There was no similar excuse—as TCI well knew—when TCI moved into the skincare market in 2018. TCI could have decided to sell skincare products under a different name, but it made the knowing choice to infringe instead. Because TCI knew of Thrive and its trademark registrations when TCI expanded into the relevant skincare market, this factor supports Thrive in finding a likelihood of confusion. *See Synoptek*, 309 F. Supp. 3d at 841; *Brooklyn Brewery*, 156 F. Supp. 3d at 1184.

### 8.      Expansion of product lines favors Thrive

Where "the parties already compete to a significant degree because they sell related products and use similar marketing channels, this factor is relatively unimportant to the likelihood of confusion analysis." *Fiji Water*, 741 F. Supp. 2d at 1183. Here, the parties already directly compete in the skincare market. Thrive has concrete plans to further expand its offerings in the personal grooming market, and TCI has continuously expanded its skincare line throughout 2020 and 2021. SUF ¶¶ 42-44. The parties will thus continue to be direct competitors and there is potential for more direct competition in the future, which weighs in favor of finding a likelihood of confusion. *See Stark*, 907 F. Supp. 2d at 1064.

### 9.      Totality of the factors strongly favors Thrive

In *AOP Ventures*, a Court in this District granted summary judgment of infringement where its "review of the *Sleekcraft* factors reveals six factors weigh in favor of a likelihood of consumer confusion and the remaining two factors are

neutral." 2016 WL 7336730, at *9. Similarly, in *Synoptek*, another Court in this District granted summary judgment for plaintiff on likelihood of confusion where "the factors of the similarity of the marks, the proximity of the goods, and the strength of [plaintiff's] mark, are particularly probative of a likelihood of confusion" and the PTO, like here, refused the defendant's attempt to register its accused mark due to a conflict with plaintiff's mark. 309 F. Supp. 3d at 842.

Moreover, the finding is strong on the three factors courts have found most important in e-commerce: similarity of the marks, relatedness of the goods, and use of similar marketing channels. *See GoTo.com*, 202 F.3d at 1205. Therefore, the Court should find there is no genuine dispute of material fact as to likelihood of confusion. And, explained above, Thrive holds an incontestable registration in the THRIVE Mark, which is conclusive evidence of the mark's validity and Thrive's ownership. Even putting the incontestable registration aside, Thrive has a *second* senior registration as well as superior common law rights to TCI. Accordingly, the Court should grant summary judgment in Thrive's favor on its trademark infringement claim, its federal unfair competition claim, and its related state law claims that rely on the same analysis. *See AOP Ventures*, 2016 WL 7336730, at *9.

## V.    Summary Judgment on Willfulness is Warranted

The undisputed facts show TCI's infringement of the THRIVE Registrations was willful. "Willfulness and bad faith require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993). "Use of an infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement." *Razor USA LLC v. Vizio, Inc.*, No. 14-CV-01586S-JOJ-CGX, 2015 WL 12656941, at *6 (C.D. Cal. Oct. 19, 2015) (quoting *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 472, 475 (N.D. Cal. 1992) (holding defendant "was on notice that there could be a likelihood of confusion" when Canadian trademark officials cited plaintiff's mark as a reason for

denying defendant's trademark application)); *see also Synoptek, LLC v. Synaptek Corp.*, No. SA-CV-1601838-CJC-JCGX, 2018 WL 3359017 ("*Synoptek II*"), at *9 (C.D. Cal. June 4, 2018) ("Synaptek's blatant use of the 'Synaptek' mark in spite of [multiple] PTO denials provides strong evidence of willful infringement.").

TCI knew of Thrive and the THRIVE Registration by 2015 when ███████████
████████████████████████████████████████████. SUF ¶ 20. TCI's founder attempted to get Thrive's permission to use the mark in 2016, while not revealing TCI's plans to expand into skincare. SUF ¶ 26. TCI even insisted in a 2017 letter that there was no legal conflict between Thrive and TCI because TCI sold makeup and *did not sell skincare products*. SUF ¶ 29. Based on that written statement, TCI actually *knew* that by moving into the skincare market, it would be infringing Thrive's trademarks. TCI tried again in 2019 to get Thrive's permission for TCI to use the THRIVE Mark for its upcoming major skincare line expansion the following year. SUF ¶ 40. There can be no dispute that TCI knew of its competitor Thrive's rights, that it knew it needed permission to use those rights, that it knew it didn't have that permission, and that it proceeded to use the THRIVE Mark on directly competitive goods.

Moreover, like the defendants in *Consorzio* and *Synoptek II*, TCI used the THRIVE Mark in the face of numerous warnings about infringement. The PTO rejected TCI's trademark application in 2015 on the ground that TCI's use of THRIVE CAUSEMETICS could cause a likelihood of confusion with the THRIVE Mark. SUF ¶ 22. When TCI tried again in a second application, the PTO rejected it for the same reason in August 2018. SUF ¶ 31. As recently as July 28, 2021, the PTO, for a *third time*, issued an Office Action rejecting TCI's THRIVE CAUSEMETICS application for a "likelihood of confusion" with exactly two trademarks on the trademark registry: Thrive's '942 Registration and Thrive's '303 Registration—the two THRIVE Registrations asserted by Thrive in this case. SUF ¶ 35. There is thus "no doubt but that [TCI] was on notice that there could be a

1   likelihood of confusion caused by its use of the "[THRIVE]" mark." *Consorzio*,

2   782 F.Supp. at 475.

3         Importantly, TCI overcame the 2015 PTO rejection by arguing that TCI's

4   color cosmetics were in a different category of goods from Thrive's skincare

5   products. SUF ¶¶ 24-25. That argument could no longer apply when TCI expanded

6   into skincare beginning in 2018. *See Synoptek II*, 2018 WL 3359017, at \*10

7   (holding defendant's belief it was not infringing was not reasonable "because . . .

8   the PTO's decision directly contradicted this belief."). Since TCI successfully

9   argued to the PTO in 2016, for its benefit, that there was no confusion because it

10  did not sell skincare products, TCI could not possibly have then moved into the

11  skincare market in 2018 believing there would be no likelihood of confusion.

12        Also, like the defendant in *Consorzio*, TCI received a cease-and-desist letter

13  in 2017 from Thrive asking it to stop use of the THRIVE name, a request that TCI

14  refused. SUF ¶ 29; *Consorzio*, 782 F.Supp. at 475. TCI responded to that letter

15  arguing its color cosmetics were an entirely different product line from Thrive's

16  skincare products. *Id*. Thrive relied on this assertion from TCI. *Id*. But again, that

17  argument no longer carried force when TCI started selling skincare products in

18  2018. While TCI may have had reason to believe it did not infringe when selling

19  color cosmetics, that belief could not have been reasonable when applied to its later

20  sale of skincare products. In *Synoptek II*, the court found willful infringement where

21  "Synaptek's continued use of 'Synaptek' demonstrates an indifference to

22  Synoptek's trademark rights and a willingness to determine unilaterally, in spite of

23  the PTO's denials, that Synoptek's rights in its marks should be ignored." *Synoptek*

24  *II*, 2018 WL 3359017, at \*10; *see also Bellagio Jewelry, Inc. v. Croton Watch Co.*,

25  *No. CV 06-6672ODWRZX, 2008 WL 3905895, at \*10 (C.D. Cal. Aug. 20, 2008)*.

26  TCI acted in an identical fashion—it ignored the PTO denials, ignored Thrive's

27  refusal to grant permission, ignored Thrive's cease-and-desist letter, and proceeded

28  to sell skincare products in direct competition with knowledge of Thrive, the

THRIVE Mark, and the THRIVE Registrations. Those facts are undisputed. There is thus no genuine dispute with regard to willful infringement, and Thrive is entitled to summary judgment on that issue.

## VI.    Disgorgement of TCI's Profits is Proper Under § 1117(a)

A plaintiff who proves trademark infringement is entitled "to recover [] defendant's profits . . . ." 15 U.S.C. § 1117(a). Recent Supreme Court precedent clarified that a finding of willful infringement is *not* a prerequisite to ordering disgorgement of a defendant's profits. *Romag Fasteners, Inc v. Fossil, Inc*., 140 S. Ct. 1492, 1497 (2020). "Fairness also supports disgorgement of profits so that Defendant does not profit from its unlawful infringement." *Monster Energy Co. v. Integrated Supply Network, LLC*, No. ED-CV-17548-CBM-RAOx, 2021 WL 1521981, at *2 (C.D. Cal. Apr. 12, 2021) (citing *Playboy Enters., Inc. v. Baccarat Clothing Co*., 692 F.2d 1272, 1275 (9th Cir. 1982) ("Any other remedy" besides disgorgement of profits earned from the infringing activity "results in the defendants being unjustly enriched.")).

As explained, the undisputed facts show that TCI intentionally expanded into the skincare market in direct competition with Thrive in 2018, with knowledge that that expansion was likely to infringe Thrive's registered trademarks. The evidence thus fully supports that TCI had *mens rea* to infringe, which remains "a highly important consideration in determining whether an award of profits is appropriate." *Romag*, 140 S. Ct. at 1497. Further, without an award of disgorgement, TCI would reap the benefits of knowingly infringing Thrive's trademark rights for years. Disgorgement is therefore proper. *See Playboy*, 692 F.2d at 1275 ("The practical reality of this decision may be summarized in one question: Would a profit seeking businessperson, not unwilling to violating federal law, pay ten cents to make one dollar? If the answer is "yes" then the trial court's decision did not follow this court's clear mandate . . . to make willful trademark infringement unprofitable."). For these reasons, there is no genuine dispute of material fact over Thrive's

1    entitlement to disgorgement of TCI's profits.

2        **A.    TCI Has the Burden of Proving Deductible Expenses**

3        "In assessing profits the plaintiff shall be required to prove defendant's sales

4    only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. §

5    1117(a). "Once the plaintiff demonstrates gross profits, they are presumed to be the

6    result of the infringing activity" and "[t]he defendant thereafter bears the burden of

7    showing which, if any, of its total sales are not attributable to the infringing

8    activity, and, additionally, any permissible deductions for overhead." *Lindy Pen*,

9    982 F.2d at 1408. In the Ninth Circuit, a defendant may only deduct costs if it

10   proves such costs were "of actual assistance" in the production, distribution, or sale

11   of the infringing product. *Kamar Int'l, Inc. v. Russ Berrie & Co*., 752 F.2d 1326,

12   1332 (9th Cir. 1984). A "pure allocation" of overhead costs based on percentage of

13   revenue is not permissible and indeed has been "specifically rejected" by the Ninth

14   Circuit. *See Folkens v. Wyland*, No. C-01-1241 EDL, 2002 WL 1677708, at *5

15   (N.D. Cal. July 22, 2002) (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer,*

16   *Inc*., 772 F.2d 505, 516 (9th Cir. 1985) (holding defendants had not met the burden

17   of proving deductible costs "when they introduced evidence of their total overhead

18   costs allocated on a reasonable basis" because "[t]hat is not the law of this

19   circuit.")). If the defendant fails to adequately prove such costs, the trademark

20   owner is entitled to all gross profits. *Lindy Pen*, 982 F.2d at 1408.

21       **B.    Parties Agree on Revenues and Cost of Goods; TCI Failed to Meet Burden to Deduct Any Other Expenses**

22

23       Here, there is no dispute as to gross revenues TCI earned on sales of

24   Infringing Skincare Products or direct expenses, including cost of goods sold,

25   relating to those products. SUF ¶ 66. Total profits, equaling revenue minus direct

26   expenses, are            . *Id*. With this evidence, Thrive has carried its burden of

27   proving TCI's profits on infringing sales. *See* 15 U.S.C. § 1117(a).

28       TCI has not come close to meeting its burden of showing any other expenses

are properly deducted. Rather than calculating actual overhead expenses attributable to each product, TCI has merely allocated a percentage of its total expenses to a product based on the percentage of revenue that product produced. SUF ¶¶ 68-70. That is exactly the type of "pure allocation" rejected in *Folkens* and *Frank*. *Folkens*, 2002 WL 1677708, at *5; *Frank*, 772 F.2d at 516 (explaining "defendants offered no evidence of what costs were included in general categories such as 'general and administrative expenses,' nor did they offer any evidence concerning how these costs contributed to the [infringing product].""). TCI has completely failed to prove its indirect costs were "of actual assistance" in the production, distribution, or sale of the Infringing Skincare Products. *See Kamar*, 752 F.2d at 1332. Indeed, TCI testified that grouped in the "Other Costs" category were clearly non-deductible costs such as ████████████████████ ██████████████████████████████████████████. SUF ¶ 69. Therefore, TCI has failed to create any genuine dispute as to deductible indirect costs, and the Court should grant summary judgment in Thrive's favor and order that TCI disgorge ██████████ in profits. *See* 15 U.S.C. § 1117(a).

## VII.   An Award of Corrective Advertising Damages is Appropriate

"An award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole . . . by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement." *Adray v. Adry-Mart, Inc*., 76 F.3d 984, 988 (9th Cir. 1995). "Recovery of both past and future corrective advertising costs is permitted." *Marketquest Grp., Inc. v. BIC Corp*., No. 11-CV-618-BAS (JLB), 2018 WL 1756117, at *5 (S.D. Cal. Apr. 12, 2018) (citing *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co*., 561 F.2d 1365, 1374-76 (10th Cir. 1977) (approving a corrective advertising damages reasonably equivalent to the infringing advertising campaign)). Corrective advertising damages are proper in forward and reverse confusion cases. *See Marketquest*, 2018 WL 1756117, at *5

(finding where defendant "knowingly used [plaintiff's] marks in a manner that saturated the market with a false impression of association, . . . compensatory corrective advertising damages would be conceivably appropriate to counteract [defendant's] infringing advertising campaigns . . . ."). The Ninth Circuit has approved corrective damages in the amount of 25% of a defendant's advertising budget, consistent with the Federal Trade Commission's "rule requiring businesses engaged in misleading advertising to spend 25% of their budget on corrective advertising . . . ." *Id.*; *Big O Tire*, 561 F.2d at 1375-76 (adopting 25% rule); *Ardray*, 76 F.3d at 989 (approving of 25% rule).

Here, Thrive has been particularly damaged by TCI's massive advertising spend. TCI has flooded the exact online channels that Thrive needs to use to advertise the THRIVE brand with TCI's advertisements for its own confusingly similar THRIVE skincare products. SUF ¶¶ 5, 48-54. This is especially salient with online searches, such as Google Shopping, where even a search for "Mens Thrive Natural Care"—the most targeted search a consumer could do for Thrive's company and product that should exclude any TCI results—instead returns results for *TCI's* THRIVE skincare products. SUF ¶¶ 5, 48-50. Thrive must spend an amount equivalent to TCI's advertising spend in the same channels in order to correct this saturation of the advertising channels knowingly caused by TCI.

Thrive's damages expert has analyzed TCI's relevant advertising spend on Infringing Skincare Products and calculated corrective advertising damages based on the approved 25% rule. Corrective advertising damages total ████████. SUF ¶ 71. Thrive is entitled to those damages as a matter of law, and the Court should award corrective advertising damages to Thrive in that amount.

## VIII.   The Court Should Grant a Permanent Injunction

Given the undisputed evidence, the Court can and should grant an injunction to permanently bar TCI from selling Infringing Skincare Products. 15 U.S.C. § 1116(a). Because Thrive has proven infringement, it is entitled a presumption of

irreparable harm pursuant to the recent Trademark Modernization Act of 2020 that changed the standard for permanent injunctions in the favor of trademark owners. *See id.* ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction"). The undisputed facts further establish that Thrive has suffered irreparable harm in the loss of control over its brand, goodwill, and reputation. "The loss of control over one's trademarks, reputation, and goodwill is 'a quintessentially irreparable injury'." *Vineyard House, LLC v. Constellation Brands U.S. Ops., Inc*., No. 4:19-CV-01424-YGR, 2021 WL 254448, at *14 (N.D. Cal. Jan. 26, 2021) (quoting McCarthy on Trademarks, § 30:47.70 ("A likelihood of damage to reputation is by its nature 'irreparable.' Like trying to un-ring a bell, trying to 'compensate' after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation.")); *see also Ossur hf v. Manamed Inc*., 331 F. Supp. 3d 1005, 1017 (C.D. Cal. 2017) ("By borrowing [plaintiff]'s mark, Defendants impair [plaintiff]'s control over its reputation"); *Fiji Water*, 741 F. Supp. 2d at 1183 ("If VITI continues to introduce its infringing product into the marketplace, FIJI will undoubtedly have great difficulty maintaining and restoring its reputation and goodwill with the public, many of whom are already confused."). The Court should therefore grant a permanent injunction in Thrive's favor.

## **Conclusion**

TCI blatantly used the THRIVE Mark in knowing disregard of Thrive's trademark rights, moving into skincare in direct competition with Thrive after two PTO refusals based on Thrive's registrations, a cease-and-desist letter, and Thrive's founder expressly denying a request for permission to use the mark in TCI's business. The undisputed evidence supports summary judgment on infringement, willfulness, disgorgement, corrective advertising, and a permanent injunction.

/ / /

1   DATED:  August 6, 2021                    Respectfully submitted,

2                                             THE MCARTHUR LAW FIRM, PC
                                              By: */s/ Stephen McArthur*
3                                                 Stephen McArthur
                                                  Thomas Dietrich
4                                                 *Attorneys for Plaintiff Thrive*
                                                  *Natural Care*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28