1  Stephen McArthur (SBN 277712)
   stephen@smcarthurlaw.com
2  Thomas Dietrich (SBN 254282)
   tom@smcarthurlaw.com
3  THE MCARTHUR LAW FIRM, P.C.
   9465 Wilshire Blvd., Ste. 300
4  Beverly Hills, CA 90212
   Telephone: (323) 639-4455
5
   *Attorneys for Plaintiff Thrive*
6  *Natural Care, Inc.*

7

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  THRIVE NATURAL CARE, INC.,        Case No. 2:20-CV-9091-PA-AS

13              Plaintiff,            **PLAINTIFF'S STATEMENT OF
                                      UNCONTROVERTED FACTS AND**
14         v.                         **CONCLUSIONS OF LAW IN
                                      SUPPORT OF MOTION FOR**
15  THRIVE CAUSEMETICS, INC.,         **PARTIAL SUMMARY JUDGMENT**

16              Defendant.            Hon. Percy Anderson

17                                    **Hearing Date**: September 13, 2021
                                      **Time:** 1:30 p.m.
18                                    **Courtroom:** 9A

19

20

21

22

23

24

25

26

27

28

## Index of Exhibits

**Declaration of Alex McIntosh ("McIntosh Decl.")**

Ex. A p.1[1] – Certificate for U.S. Trademark Reg. No. 4,467,942

Ex. B p.4 – Combined Declaration of Use and Incontestability and Acceptance of Combined Declaration for '942 Registration

Ex. C p.16 – Certificate for U.S. Trademark Reg. No. 6,164,303

Ex. D p.19 – 2016 Email Exchange with Ms. Bodnar and Mr. McIntosh

Ex. E p.21 – 2017 Cease-and-Desist Letter from Thrive to TCI

Ex. F p.24 – TCI's Response to Thrive's Cease-and-Desist Letter

Ex. G p.27 – Amazon Reviews Showing Actual Confusion

Ex. H p.32 – Walmart.com Listing Showing Actual Confusion

Ex. I p.35 – Poshmark Listing Showing Actual Confusion

Ex. J p.37 – Google Searches Showing Products Side-by-Side

Ex. K p.65 – Bing Searches Showing Products Side-by-Side

Ex. L p.74 – Online Marketplace Images Showing Products Side-by-Side

Ex. M p.84 – Email Exchange with L. Ertz Showing Actual Confusion

Ex. N p.86 – Thrive's Pending Trademark Application

Ex. O p.93 – Screenshots of TCI Advertising for Hybrid Products

**Declaration of Stephen McArthur ("McArthur Decl.")**

Ex. A p.1 – Excerpts of TCI 30(b)(6) Deposition of Karissa Bodnar and Deposition Exhibits ("Depo. Ex.") 10-12, 16-18, 20, 27, 28, 30, 32, 33, 35, 36 [filed under seal]

Ex. B p.179 – Excerpts of Deposition of Brendan Gardner-Young and Depo. Ex. 45 [filed under seal]

Ex. C p.217 – Excerpts of TCI 30(b)(6) Deposition of Ned Menninger and Depo. Ex. 2-4 [filed under seal]

---

[1] Pagination in index refers to bold page numbers in footer of exhibits to each declaration.

1   Ex. D p.260 – Excerpts of Deposition of Ned Menninger and Depo. Exs. 38,
2       39, 40, 41 [filed under seal]
3   Ex. E p.302 – November 30, 2015, Office Action on THRIVE
4       CAUSEMETICS trademark application
5   Ex. F p.314 – TCI's Response to 2015 PTO Office Action
6   Ex. G p.337 – June 22, 2016, Reply from PTO on Office Action
7   Ex. H p.344 – August 28, 2018, Office Action on second THRIVE
8       CAUSEMETICS trademark application
9   Ex. I p.360 – TCI's Response to 2018 PTO Office Action
10  Ex. J p.381 – November 23, 2018, PTO Suspension Letter
11  Ex. K p.385 – July 28, 2021, Office Action on second THRIVE
12      CAUSEMETICS trademark application
13  Ex. L p.394 – Dictionary Definitions of "thrive"
14  Ex. M p.400 – Examples of Media Coverage of TCI

**Declaration of Rob Wallace ("Wallace Decl.")**
   Ex. A p.1 – Expert Report of Rob Wallace and Attachments
   Ex. B p.208 – Screenshots of Parties' Products Appearing Together in Online
       Searches

**Declaration of David Drews ("Drews Decl.")**
   Ex. A p.1 – Supplemental Schedules of Damages [filed under seal]
   Ex. B p.5 – Expert Report of David Drews and Attachments [filed under
       seal]

Pursuant to FRCP 56 and L.R. 56-2, Plaintiff Thrive Natural Care, Inc. ("Thrive") submits the following Separate Statement of Undisputed Facts and Conclusions of Law in Support of its Motion for Summary Judgment.

## I.     Undisputed Facts

| No. | Undisputed Facts | Evidence |
|---|---|---|
| 1. | Thrive began using the mark "THRIVE" (the "THRIVE Mark") in relation to skincare products in August 2013. Those products consisted of Thrive Face Balm (a skin lotion/cream/moisturizer product), Thrive Face Wash (a cleanser), and Thrive Shave Oil (a shaving and skin moisturizing oil). | McIntosh Decl. ¶¶ 3-4 |
| 2. | Thrive began selling skincare products under the THRIVE Mark not later than 2014, at least four years before Defendant Thrive Causemetics, Inc. ("TCI") began selling skincare products under its THRIVE CAUSEMETICS brand. | McIntosh Decl. ¶¶ 3-4; McArthur Decl., Ex. A at 45:10-22, 91:10-16, Depo. Ex. 16 |
| 3. | Today, Thrive sells a range of skincare and grooming products, including face washes and scrubs, lotions and creams, moisturizers, sunscreens, face balms, shaving lotions, and grooming oils—all of which use the THRIVE Mark (collectively, "Thrive Products"). | McIntosh Decl. ¶ 5 |
| 4. | Plaintiff Thrive's skincare products and Defendant TCI's skincare products both prominently feature the THRIVE Mark on the product packaging. One example is below. | McIntosh Decl. ¶ 34; Wallace Decl. ¶¶ 10-11; McArthur Decl., Ex. A at 26:21-27:12, Depo. Ex. 10 |



| | | |
|---|---|---|
| 5. | Thrive's skincare products and TCI's skincare products are shown together in online search results extremely frequently. This includes searches on the most popular search engines, including Google, Google Shopping, Bing, Bing Shopping, and Duck Duck Go. One example is shown below from a Google Shopping search for "thrive natural care," the full name of Plaintiff Thrive's company. | McIntosh Decl. ¶¶ 41-43, Exs. J, K; Wallace Decl. ¶ 10, Ex. B |

| 6. | Thrive sells its Thrive Products online through its website, www.thrivecare.co, online through Amazon.com and Walmart.com via retail partnerships with Amazon and Walmart, and in physical brick-and-mortar retail stores at Whole Foods Markets. | McIntosh Decl. ¶ 6 |
|---|---|---|
| 7. | Thrive includes its THRIVE mark and branding on every product it sells, and it has done so since 2013. Each Thrive product bears THRIVE branding, including the word THRIVE in block or bold letters on the package front as well as additional references to THRIVE on the bottle or package. | McIntosh Decl. ¶ 7 |
| 8. | In addition to Thrive's product packaging, Thrive's marketing and advertising often uses the term "Thrive skincare" to refer to Thrive Products, as well as terms that include the word "thrive" and words describing the product at issue, such as "Thrive moisturizer," "Thrive cleanser," and "Thrive sunscreen." | McIntosh Decl. ¶ 8 |
| 9. | Prices for the Thrive Products range between $12.95 for a soap bar to $54.95 for a VIP Kit containing several Thrive Products. | McIntosh Decl. ¶ 9 |
| 10. | Thrive targets both men and women for its Thrive Products. While it sells items such as beard oil to men, Thrive targets female customers for items like sunscreen, cleansers, lotions, and moisturizers. Women have always formed a sizable part, and in recent years the majority, of Thrive's customer base. More than 60 percent of Thrive's purchasers on Amazon are women. That ratio is similar in brick-and-mortar stores such as Whole Foods. | McIntosh Decl. ¶ 10 |
| 11. | Thrive's mission is to sell the highest quality organic skincare products while using ingredients sourced through partnerships with women-led and smallholder farmers in Costa Rica. Those farmers use regenerative agriculture methods to cultivate native plants for Thrive while improving the local soil quality and the livelihoods of rural farming communities. Thrive has gained a reputation and following for being on the leading edge of healthy, natural, sustainable | McIntosh Decl. ¶¶ 11-18 |

| | | |
|---|---|---|
| | skincare. Thrive has received substantial media coverage of its company and its mission. | |
| 12. | Consumers who are interested in Thrive's skincare products are those seeking natural, toxin-free skincare products made with high-quality ingredients. | McIntosh Decl. ¶ 14 |
| 13. | Thrive has advertised widely on social media and received significant attention from the media and its retail partners such as Amazon for Thrive's high-quality products and business practices. | McIntosh Decl. ¶¶ 15-18 |
| 14. | Thrive owns all right, title, and interest in and to U.S. Trademark Registration No. 4,467,942 (the '942 Registration"), which was registered January 14, 2014, for the word mark "THRIVE" in relation to the following goods in International Class 003: "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams." The application which matured into the '942 Registration was filed September 11, 2012. | McIntosh Decl. ¶ 20, Ex. A |
| 15. | Thrive's '942 Registration has been deemed "incontestable" by the U.S. Patent & Trademark Office ("PTO"). On March 7, 2020, the PTO accepted the Combined Declaration of Use and Incontestability under Sections 8 & 15 filed by Thrive on January 13, 2020, in which Thrive attested that it had used its THRIVE Mark in commerce on the claimed goods continuously for more than five years since the registration date. | McIntosh Decl. ¶ 21, Ex. B |
| 16. | Thrive owns all right, title, and interest in and to U.S. Trademark Registration 6,164,303 (the "'303 Registration," and, together with the '942 Registration, the "THRIVE Registrations"), which was registered September 29, 2020, for the word mark "THRIVE" in relation to the following goods in International Class 003: "Body and non-medicated soaps and skin cleansing gels; non-medicated skin care preparations, namely, facial lotions, cleansers and creams, | McIntosh Decl. ¶ 22, Ex. C |

| | | |
|---|---|---|
| | oils for cosmetic use, skin moisturizers; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams." The application which matured into the '303 Registration was filed May 2, 2016. | |
| 17. | The Merriam Webster dictionary definition of "thrive" is "to grow vigorously; to gain in wealth or possessions; to progress toward or realize a goal despite or because of circumstances." Other dictionary definitions are similar, and none use "thrive" in a way that would define a particular quality about skincare products. | McArthur Decl., Ex. L |
| 18. | Thrive has strongly enforced its rights to the THRIVE Mark in relation to skincare products, including sending numerous cease-and-desist letters and pursuing litigation for trademark infringement. These efforts have been successful. Thrive is the only entity that owns a registration for the mark "THRIVE", either standing alone or as the first word in the trademark, in relation to skincare and grooming products. Other registrations or applications that were similar have been refused by the PTO, canceled, or abandoned. | McIntosh Decl. ¶¶ 23-24 |
| 19. | Karissa Bodnar founded Defendant TCI in 2014. TCI's first products on the market, beginning in September 2014, were false eyelashes for women undergoing cancer treatments and adhesive for false eyelashes. TCI sold those products under the THRIVE CAUSEMETICS brand. | McArthur Decl., Ex. A at 15:9-16:5 |
| 20. | ███████████████████████████████ | McArthur Decl., Ex. A at 183:16-187:13, Deposition Exhibit ("Depo. Ex.") 27 |
| 21. | TCI expanded into color cosmetics in 2015-16, when it began to sell eyeliner followed by browliner and a color stick. The term "color cosmetics" means makeup. | McArthur Decl., Ex. A at 22:18- |

| | | | |
|---|---|---|---|
| | | | 23:17, 24:21-25:23; Ex. B at 33:6-7 |
| 22. | In November 2015, the PTO issued an Office Action rejecting an application by TCI to register THRIVE CAUSEMETICS, citing a likelihood of confusion with Thrive's '942 Registration (the "2015 Office Action"). | | McArthur Decl., Ex. E at 4 |
| 23. | ███████████████████████████████████ ███ | | McArthur Decl., Ex. A at 114:3-119:18; Depo. Ex. 18 at TCI-00019101 |
| 24. | On May 26, 2016, TCI filed a response to the 2015 Office Action, arguing as follows:<br><br>"The specific goods in Applicant [TCI]'s application are not identical to those in the THRIVE registration, and the examining attorney does not attempt to argue that they are. Nor are Applicant's goods even in the *same category* as those in the THRIVE registration. The common category of Applicant's goods is cosmetics, while the common category of the goods in the THRIVE registration is skincare and shaving products. Such products are found in different aisles or departments than standard make-up cosmetics, such as eyeliner, and are distinctly different types of consumer goods. Given the dissimilarity in the marks, a higher nexus in the relatedness of the parties' goods is required to support a finding of likelihood of confusion."<br><br>TCI did not disclose the PTO that, by the time this response was filed, ████████████████████ | | McArthur Decl., Ex. F at 12 |

| 25. | TCI's argument to the PTO in response to the 2015 Office Action caused the PTO to withdraw its refusal with respect to Thrive's '942 Registration. | McArthur Decl., Ex. G at 2 |
|---|---|---|
| 26. | Before TCI responded to the PTO's 2015 Office Action, on April 22, 2016, Ms. Bodnar of TCI contacted Thrive via email and asked for permission to use the THRIVE Mark as part of TCI's brand name. Ms. Bodnar identified TCI as "a color cosmetics brand with a mission to help women going through cancer treatment look and feel better during their time of need." She promised "[w]e will never use the word 'Thrive' without the word 'Causemetics'. . . ." ███████████████████████████ | McArthur Decl., Ex. A at 196:7-202:2, Depo. Ex. 30 |
| 27. | Thrive's co-founder, Alex McIntosh, denied Ms. Bodnar's request for permission to use the THRIVE Mark. Thrive chose not to pursue the issue further at that time because it thought that TCI would abide by Thrive's decision not to allow use of the mark, because of Ms. Bodnar's statement that TCI would "never use the word 'Thrive' without the word 'Causemetics'", and because of Ms. Bodnar's implication that TCI would stay in its lane of women's color cosmetics. | McIntosh Decl. ¶ 25, Ex. D; McArthur Decl., Ex. A at Depo. Ex. 30 |
| 28. | ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ | McArthur Decl., Ex. A at 99:19-101:13, 109:14-112:24, Depo. Ex. 17 at TCI-00019155 |
| 29. | Thrive sent a cease-and-desist letter to TCI on March 3, 2017, in response to TCI beginning to de-emphasize the term "Causemetics" in TCI's branding. TCI rejected the demand | McIntosh Decl. ¶ 26, Exs. E, F |

| | | | |
|---|---|---|---|
| | | to stop using the name THRIVE on its color cosmetics products and argued again that there would be no consumer confusion between the parties' products because they sold "different product lines" (color cosmetics and skincare products). Thrive relied on the statement by TCI that its makeup products were entirely different "product lines" from Thrive's skincare products, with no overlap, and chose not to pursue the matter further. | |
| | 30. | In December 2017, ████████████████████████████████████████████ | McArthur Decl., Ex. A at 129:1-23, 190:8-191:11, Depo. Ex. 28 |
| | 31. | In April 2018, TCI made a second attempt to register its THRIVE CAUSEMETICS mark. On August 28, 2018, the PTO issued an Office Action ("2018 Office Action") rejecting TCI's application, citing a likelihood of confusion with Thrive's '942 Registration and Thrive's then-pending second application for the THRIVE Mark, which matured as the '303 Registration. | McArthur Decl., Ex. H at 2-4 |
| | 32. | In the 2018 Office Action, the PTO also stated that TCI "must disclaim the wording 'COSMETICS' in the mark because it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services, and thus is an unregistrable component of the mark." The PTO stated "CAUSEMETICS" is merely a misspelling of "COSMETICS" and as such, is merely descriptive and must be disclaimed. | McArthur Decl., Ex. H at 4 |
| | 33. | In TCI's response to the 2018 Office Action, TCI argued again that its cosmetics products and Thrive's skincare products were "found in different aisles or departments than standard make-up cosmetics, such as eyeliner, and are distinctly different types of consumer goods." TCI further argued that TCI's "Goods and Services are marketed toward and used to help women, whereas [Thrive's] Cited Goods are | McArthur Decl., Ex. I at 7-8 |

|  |  |  |  |
|---|---|---|---|
|  |  | marketed toward men." |  |
| | 34. | This time, the PTO disagreed with TCI's argument and suspended TCI's second application, maintaining the refusal to register the THRIVE CAUSEMETICS mark due to a likelihood of confusion with Thrive's '942 Registration and then-pending application that matured as the '303 Registration. | McArthur Decl., Ex. J |
| | 35. | Recently, on July 28, 2021, the PTO un-suspended TCI's second application for THRIVE CAUSEMETICS and issued an Office Action maintaining the refusal to register due to a likelihood of confusion with both THRIVE Registrations. | McArthur Decl., Ex. K |
| | 36. | In late 2018, after the PTO's rejection of TCI's second trademark application, TCI began selling skincare products under the THRIVE CAUSEMETICS brand. | McArthur Decl., Ex. A at 45:10-22, 91:10-16, Depo. Ex. 16 |
| | 37. | TCI sold three skincare products under the radar through 2019. In 2020, TCI significantly expanded and officially announced its skincare line, releasing more than a dozen new products. | McArthur Decl., Ex. A at 45:24-47:11, Depo. Ex. 16 |
| | 38. | TCI sells numerous skincare products under the THRIVE CAUSEMETICS brand. The term "skincare products," according to TCI, means products a person uses on their skin. | McArthur Decl., Ex. A at 26:1-4, 27:3-28:8 Depo. Exs. 10, 11 |
| | 39. | TCI sells a significant amount of its products to men, in addition to women. For example, ████████████████████████████████████████████████████████████████ | McArthur Decl. Ex. A at 142:1-145:24, Depo. Ex. 20 |
| | 40. | On June 27, 2019—following the PTO's rejection of TCI's | McIntosh |

| | | |
|---|---|---|
| | second application to register THRIVE CAUSEMETICS due to a likelihood of confusion with both THRIVE Registrations—Ms. Bodnar called Thrive's co-founder, Mr. McIntosh. Ms. Bodnar begged Thrive to allow TCI to use the "THRIVE" name. Mr. McIntosh refused her request, pointed out that TCI's actions were confusing consumers and retailers, and reminded Ms. Bodnar about Thrive's trademark registrations. Mr. McIntosh stated that, for there to be any agreement, TCI must at a minimum (1) alter its logo to deemphasize the word "Thrive" as compared to "Causemetics," and (2) agree to compensate Thrive with a significant licensing fee for TCI's past and potentially future use of the THRIVE Mark. | Decl. ¶ 29; McArthur Decl. Ex. A Depo. Exs. 32, 33 |
| 41. | TCI never responded to Thrive's request to propose a licensing fee or to stop using the THRIVE Mark. | McIntosh Decl. ¶ 29 |
| 42. | TCI's website now features a separate "skincare" navigation page, which displays many of the skincare products TCI sells. A portion of that page is shown below.  | McIntosh Decl. ¶ 31; McArthur Decl., Ex. A at 27:3-28:16, Depo. Exs. 10-11; Ex. B at 91:12-92:16, Depo. Ex. 44 |
| 43. | TCI now sells many skincare products under the THRIVE CAUSEMETICS brand. These include face and body cleansers, lotions, creams, moisturizers, sunscreen, lip balm, hand sanitizer, and face oils, all of which are within the scope of Thrive's THRIVE Registrations (collectively, "Infringing Skincare Products"). The Infringing Skincare Products consists of TCI's entire skincare line, including the following | McIntosh Decl. ¶ 32; McArthur Decl., Ex. A at 94:1-97:23, Depo. Ex. 16; Ex. |

| | | |
|---|---|---|
| | products: Overnight Sensation Brightening Sleep Mask; Liquid Balm Lip Treatment; Gravity Defying Transforming Moisturizer; Bright Balance 3-in-1 Cleanser; Defying Gravity Eye Lifting Cream; Liquid Light Therapy All-in-One Face Serum; Moisture Flash Active Nutrient Toner; Deluxe Travel Defying Gravity Transforming Moisturizer; Defying Gravity Transforming Moisturizer; Deluxe Travel Bright Balance 3-in-1 Cleanser; Moisture-Enriched Hand Sanitizer; Overnight Sensation Gentle Resurfacing Peel; Pumpkin Spice Latte Liquid Lip Balm Treatment; Smart Microdermabrasion 2-in-1 Instant Facial; Defying Gravity Nourishing Hand + Nail Cream; Smart Microdermabrasion 2-in-1 Instant Facial; Buildable Blur CC Cream; Filtered Effects Blurring Primer; all travel sized versions of these products; and all "sets" that include any of these products as part of the set.<br><br>These products include at least the following SKU numbers: TCC001-TCC019; TP001; TSC002; TSC003; TSC004; TSC005; TSC006; TSC007; TSC008; TSS002; TSS003; TSS004; TVG007; TVG070; TVG133; TVG134; TVG136; TVG137; TVG138; TVG141; TVG142. | C, Depo. Exs. 2, 3; Ex. D, Depo. Ex. 38 |
| 44. | TCI has continued to develop and release Infringing Skincare Products after Thrive filed this litigation. Thrive also has planned to expand by offering additional skincare and grooming products, as evidenced by its pending trademark application. | McArthur Decl., Ex. A Depo. Ex. 12; McIntosh Decl. ¶ 47, Ex. N |
| 45. | TCI has offered for sale, displayed, and sold all of the Infringing Skincare Products online through its website, www.thrivecausemetics.com. | McArthur Decl., Ex. A at 77:21-24, 81:3-10, 87:13-17, Depo. Ex. 16; Ex. B at 16:17-17:9, 39:20-24 |
| 46. | Both parties' skincare products are inexpensive, ranging | McIntosh |

| | | |
|---|---|---|
| | between approximately $10 and $60. | Decl. ¶ 9; McArthur Decl., Ex. A at 87:13-23, Depo. Ex. 16 |
| 47. | Both parties' products prominently feature the THRIVE Mark on goods that are identical in kind. This creates a significant likelihood that consumers would believe the products are related or come from the same source. For example, consumers would be likely to believe that TCI's Infringing Skincare Products are a women's line and Thrive's Thrive Products are a men's line that both come from the same company. | McIntosh Decl. ¶¶ 34-35, 43; Wallace Decl. ¶ 9; McArthur Decl., Ex. A at 26:21-27:12, Depo. Ex. 10 |
| 48. | In online searches of popular search engines including Google and Bing, and on Google Shopping and Bing Shopping searches, the parties' skincare products frequently appear together and side-by-side, including photographs of TCI's Infringing Skincare Products and of Thrive's Thrive Products, along with links to the purchase portals for each company. A consumer searching online for Thrive's skincare products is highly likely to be presented with images of and links to TCI's Infringing Skincare Products together with Thrive Products. | McIntosh Decl. ¶¶ 41-42, Exs. J, K; Wallace Decl. ¶¶ 10-11, Ex. B. |
| 49. | | McArthur Decl., Ex. B at 56:14-20, 68:5-7, 97:8-113:23, Depo. Ex. 45 |
| 50. | Advertisements for TCI's Infringing Skincare Products, images of those products, and links to TCI's webpages for those products, all frequently appear directly next to Google and Bing search results seeking Thrive's skincare products, | McIntosh Decl. ¶¶ 41-43, Exs. J, K; Wallace |

| | | |
|---|---|---|
| | including search results for "Thrive skincare," "Thrive natural care," "Thrive cleanser," "Thrive lotion," and "Thrive moisturizer". Online search results for "Thrive skincare," "Thrive lotion," and "Thrive moisturizer," for example, display results for both TCI and Thrive—along with paid ads from TCI. | Decl. ¶ 10, Ex. B |
| 51. | ███████████████████████████████ | McArthur Decl., Ex. B at 95:19-24 |
| 52. | Thrive's Thrive Products and TCI's Infringing Skincare Products also appear together in searches on online marketplaces, including Amazon, Walmart.com, eBay, and Mercari. | McIntosh Decl. ¶ 44, Ex. L |
| 53. | ███████████████████████████████ | McArthur Decl., Ex. A at 83:1-10 |
| 54. | Both Thrive and TCI advertise their skincare products on social media, including Facebook and Instagram. | McIntosh Decl. ¶ 15; McArthur Decl., Ex. A at 42:1-11, 137:6-9; Ex. B at 55:17-58:1, 68:5-20 |
| 55. | TCI's use of the THRIVE Mark has caused actual confusion. A customer who purchased Thrive sunscreen on Amazon gave a highly laudatory review only to end it with: "Well done, Thrive Causemetics." Another Amazon customer left a positive review for Thrive's moisturizer stating, "Thrive is an up and comer in the cosmetics field. Their mascara is phenomenal." Thrive does not sell mascara, but TCI does. | McIntosh Decl. ¶ 38, Ex. G |
| 56. | Walmart—a retail partner of Thrive—erroneously listed Thrive's products as originating from TCI on the Walmart.com webpage where consumers could purchase Thrive's products. | McIntosh Decl. ¶ 39, Ex. H |

| 57. | A consumer posting an online product listing for Thrive's products on the Poshmark online marketplace stated in the ad that Thrive's products originated from TCI. | McIntosh Decl. ¶ 40, Ex. I |
| --- | --- | --- |
| 58. | A potential branding partnership between Thrive and two professional athletes broke down because of confusion between Thrive and TCI. | McIntosh Decl. ¶¶ 45-46, Ex. M |
| 59. | Thrive's marketing expert conducted two 600-person surveys comparing skincare products by Thrive to products by TCI and control products from third parties. The survey that tested Thrive's newest packaging design found a net 54.5% rate of confusion between Thrive's product and TCI's skincare product. The survey that tested Thrive's older packaging design found a net 56.6% rate of confusion between Thrive's product and TCI's skincare product. | Wallace Decl. ¶ 9, Ex. A |
| 60. | TCI considers certain products to be hybrids that are both skincare products and color cosmetics. These hybrid products include TCI's Buildable Blur CC Cream and Filtered Effects Blurring Primer, which TCI has advertised as being skincare products that provide skin benefits, including acting as a moisturizer and a sunscreen. | McIntosh Decl. ¶ 48, Ex. O; McArthur Decl., Ex. A at 29:9-24 |
| 61. | TCI's hybrid skincare-cosmetic products appear together with Thrive Products in online searches for Thrive skincare products. | McIntosh Decl., Exs. J, K; Wallace Decl., Ex. B |
| 62. | Thrive used the term "Thrive Tribe" extensively as part of its brand messaging and advertising from December 2013 to 2020. TCI used the term "Thrive Tribe" in its own advertising from approximately 2018 to mid-2020. TCI even acquired and advertised using a vanity URL "thrivetribe". | McIntosh Decl. ¶ 19; McArthur Decl., Ex. A at 175:23-177:17, Depo. Exs. 35, 36; Ex. B at 124:17-125:12 |

| 63. | In or about 2017, TCI began calling its headquarters the "Thrive Lab" in marketing and advertising. TCI used the term "Thrive Lab" in its advertising without including the word "Causemetics" in that phrase. | McArthur Decl., Ex. A at 177:19-178:11; Ex. B at 125:24-126:9 |
|-----|---|---|
| 64. | TCI has spent ▮▮▮▮ of dollars on advertising for its Infringing Skincare Products. TCI spends approximately ▮▮ ▮▮ of its revenue from sales of Infringing Skincare Products on advertising for those products. | McArthur Decl., Ex. D at 41:3-42:13, Depo. Ex. 38 |
| 65. | TCI'S total revenue in 2020 was ▮▮▮▮▮ The media, both industry-specific and national, has heavily covered TCI and Ms. Bodnar. As of July 2020, TCI was reportedly working with Goldman Sachs to assess an IPO or a sale to a larger company. | McArthur Decl., Ex. C at 77:15-17; Ex. M |
| 66. | TCI's total profits from sales of all Infringing Skincare Products from 2018 through May 2021 are ▮▮▮▮▮. Total profits are calculated by subtracting TCI's cost of goods sold and direct expenses from gross revenue. | Drews Decl. ¶ 5, Ex. A at 1; Ex. B at 29 |
| 67. | TCI's total profits on sales of purely skincare products are ▮▮▮▮▮. TCI's total profits on sales of hybrid cosmetics-skincare products are ▮▮▮▮▮ | Drews Decl. ¶ 5, Ex. A at 1-2, Ex. B at 29 |
| 68. | In its calculations of profits, TCI deducted a variety of indirect costs, which TCI calculated by allocating a percentage of those costs to each product based on the percentage of revenue earned from that product. Those allocations had no relation to actual costs for production or sale of any particular product. | McArthur Decl., Ex. C at 55:8-58:7, 72:12-22; 76:4-77:9; Ex. D at 43:3-45:8, 49:19-22, 67:4-73:25, Depo. Ex. 39 |
| 69. | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | McArthur Decl., Ex. C |



| | | at 55:23-58:7, 63:17-66:20, 76:4-77:9; Ex. D at 49:23-50:23, Depo. Ex. 39 |
|---|---|---|
| 70. | ██████████████████████████ | McArthur Decl., Ex. D at 75:13-76:2 |
| 71. | Corrective advertising damages, as calculated by Thrive's damages expert, total ████ That amount was determined by taking 25% of TCI's stated advertising budget for the Infringing Skincare Products. | Drews Decl. ¶ 6, Ex. A at 1, 3 |
| 72. | Corrective advertising damages for purely skincare products total ████. Corrective advertising damages for hybrid cosmetics-skincare products total ████ | Drews Decl. ¶ 6, Ex. A at 1, 3 |
| 73. | Unless TCI is forced to stop using the THRIVE Mark on skincare products, the parties will continue to compete against each other in the same market selling the same types of goods, which will only continue to exacerbate the consumer confusion problem caused by TCI. | McIntosh Decl. ¶ 49 |

## II.   Conclusions of Law

| No. | Conclusions of Law |
|---|---|
| 1. | Plaintiff Thrive is entitled to summary judgment that Defendant TCI has infringed on Thrive's registered THRIVE Mark by offering to sell and selling skincare products under the THRIVE CAUSEMETICS brand ("Infringing Skincare Products"). There is no genuine dispute of material fact with regard to (1) Thrive's protectable ownership interest in the THRIVE Mark, or (2) TCI's use of the THRIVE Mark in a way that is likely to cause consumer confusion. *See Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). |

| | |
|---|---|
| 2. | Thrive's '942 Registration constitutes "conclusive evidence" of the validity of the THRIVE Mark, of the registration of the mark, of Thrive's ownership of the THRIVE Mark, and of Thrive's exclusive right to use the THRIVE Mark in commerce. 15 U.S.C. § 1115(b); *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006); *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) ("If the mark at issue was federally registered and had become 'incontestable', pursuant to 15 U.S.C. §§ 1058 and 1065, validity, legal protectability, and ownership are proved."). |
| 3. | Thrive's '303 Registration constitutes "'prima facie evidence' of the mark's validity and entitles [Thrive] to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010). |
| 4. | Court must conclusively find that Thrive—as the registrant of the incontestable '942 Registration—is the owner of the THRIVE Mark with exclusive rights to use that mark in commerce. *See* 15 U.S.C. § 1115(b). As additional evidence of ownership, TCI has not rebutted Thrive's ownership of the '303 Registration. Thrive therefore has a protectable ownership interest in the THRIVE Mark, satisfying the first step of the infringement test. *See Network Auto.*, 638 F.3d at 1144. |
| 5. | There is no genuine dispute of material fact that would prevent granting summary judgment in Thrive's favor on likelihood of confusion, the second step of the infringement test. This step considers "whether use of the plaintiff's trademark by the defendant is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of the two products." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 806-07 (9th Cir. 2003). ). In the Ninth Circuit, actionable forms of confusion include initial interest confusion, point of sale confusion, and post-sale confusion. *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1133 (C.D. Cal. 2001); *ACI Int'l Inc. v. Adidas-Salomon AG*, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005). The *Sleekcraft* factors guide this determination: (1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and the (8) likelihood of expansion of the product lines. *DC Comics v. Towle*, |

|   |   |
|---|---|
| | 989 F. Supp. 2d 948, 955 (C.D. Cal. 2013), aff'd, 802 F.3d 1012 (9th Cir. 2015) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). The likelihood of confusion test is "fluid," and it is not necessary to meet every factor. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). |
| 6. | "In the internet context, the three most important *Sleekcraft* factors in evaluating a likelihood of confusion are (1) the similarity of the marks, (2) the relatedness of the goods and services, and (3) the parties' simultaneous use of the Web as a marketing channel." *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1173-74 (9th Cir. 2007); *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002); *BDO Remit (USA), Inc. v. Stichting BDO*, No. 11-CV-04054-MMM-CWX, 2012 WL 12895658, at *15 (C.D. Cal. Sept. 19, 2012) (holding these factors were most important "[i]n the context of parties that use the Internet to market their goods or services"). "When this controlling troika or internet trinity suggests confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Perfumebay.com*, 506 F.3d at 1173-74. |
| 7. | The "similarity of marks" *Sleekcraft* factor weighs heavily in favor of Thrive. Thrive's THRIVE Mark and the mark used by TCI, THRIVE CAUSEMETICS, are virtually identical. TCI incorporated Thrive's entire mark while adding only the descriptive element "Causemetics" to it. The USPTO has found the term "Causemetics" is merely descriptive, as a misspelling of "cosmetics," and required TCI to file a disclaimer of that portion of its mark. These similarities weigh heavily in favor of finding a likelihood of confusion. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127-28 (9th Cir. 2014); *Electropix*, 178 F. Supp. 2d at 1129; *Perfumebay.com*, 506 F.3d at 1174. Further, the visual and aural similarities of the marks, coupled with the fact that Thrive's THRIVE Registrations are for standard character marks and entitled to a broad scope of coverage, outweigh the differences in the parties' product packaging. *See Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 837 (C.D. Cal. 2018); *Pom*, 775 F.3d at 1125; *AOP Ventures, Inc. v. Steam Distribution, LLC*, No. 15-CV-1586-VAP-KKX, 2016 WL 7336730, at *7 (C.D. Cal. Oct. 11, 2016) (order modified on other grounds in 2016 WL 10586307 (C.D. Cal. Dec. 27, 2016)). |

| 8. | The "relatedness of goods" *Sleekcraft* factor weighs heavily in favor of likelihood of confusion because the parties both sell skincare products that are identical in kind. *See Pom*, 775 F.3d at 1127; *AOP Ventures*, 2016 WL 7336730, at *7 (holding, where goods "are identical in kind and directly compete with one another," "[t]his factor . . . weighs heavily in favor of" plaintiff); *Perfumebay.com*, 506 F.3d at 1174 (parties "sell similar products on the internet—perfume," which weighed in favor of confusion). |
|---|---|
| 9. | The *Sleekcraft* factor relating to marketing channels and use of the internet for sales and marketing weighs heavily in favor of finding a likelihood of confusion because: (a) both Thrive and TCI sell competing skincare products through their online stores, which are both accessed through domain names beginning with "thrive" (www.thrivecare.co and www.thrivecausemetics.com); (b) both parties advertise almost exclusively online and on the same social media sites; (c) both parties' advertisements and products appear together in online searches on popular search engines such as Google and Bing, and their products appear together in other online marketplaces; and (d) the parties sell through overlapping marketing channels to the same customer base. *See Perfumebay.com*, 506 F.3d at 1174; *Pom*, 775 F.3d at 1130; *Sleekcraft*, 599 F.2d at 353. |
| 10. | The three most important factors relevant to products sold in e-commerce favor Thrive, meaning "the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Perfumebay.com*, 506 F.3d at 1173. |
| 11. | The "strength of the mark" *Sleekcraft* factor weighs in favor of finding a likelihood of confusion. *See See, e.g., Henderson v. Lindland*, No. 11-CV-01350-DDP-DTBX, 2013 WL 1181957, at *4 (C.D. Cal. Mar. 21, 2013), aff'd, 602 F. App'x 391 (9th Cir. 2015); *Electropix*, 178 F. Supp. 2d at 1128. The THRIVE Mark is arbitrary and receives maximum protection under the Lanham Act, as it is not descriptive of a particular quality of skincare products and has no "obvious" connection to skincare that would render the mark suggestive of Thrive's goods. *See Henderson*, 2013 WL 1181957, at *4 (holding, at summary judgment stage, that TEAM QUEST mark was arbitrary with regard to mixed martial arts gyms, despite services relating to groups of professional fighters); *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) (finding DREAMWORKS arbitrary with regard to movie production services although such services arguably brought dreams to life); *cf. Glow Ind., Inc.* |

|   | |
|---|---|
| | *v. Lopez*, 252 F. Supp. 2d 962, 980 (C.D. Cal. 2002) (finding GLOW to be suggestive of bath and body products because it implied the products left the skin "glowing"). Further, Thrive has used the mark in commerce continuously since 2013 and is the only holder of trademark registration for the mark "THRIVE" in relation to skincare products. *See Electropix*, 178 F. Supp. 2d at 1128 (explaining that "long and continuous use of a mark in the marketplace enhances its strength."). |
| 12. | The "strength of the mark" *Sleekcraft* factor also favors finding for Thrive with regard to its claim of reverse confusion. *See Drain v. Newsted*, 307 F. Supp. 2d 1116, 1124-25 (C.D. Cal. 2003) (on reverse confusion claim, under this factor courts "evaluate the strength of the junior user's mark so as to gauge its ability to overpower the senior user's mark."). TCI's THRIVE CAUSEMETICS mark has significant commercial strength, and that TCI has conducted advertising and marketing campaigns that have "resulted in a saturation in the public awareness of the junior user's mark." *Id*. at 1125. |
| 13. | The "actual confusion" factor therefore weighs heavily in favor of finding a likelihood of confusion because Thrive has offered evidence of actual confusion by consumers and retailers between the parties or their products. *See Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) (actual confusion evidence "constitutes persuasive proof that future confusion is likely."); *Synoptek*, 309 F. Supp. 3d at 839 ("Evidence of actual consumer confusion is not necessary for a finding of likelihood of confusion, but it bears on the inquiry and is particularly potent."). |
| 14. | Thrive's expert consumer surveys also strongly support finding a likelihood of confusion. *See Playboy Enters., Inc. v. Netscape Comm. Corp.*, 354 F.3d 1020, 1026 n.28 (9th Cir. 2004) (courts regularly accept the results of consumer surveys as surrogate evidence of actual confusion). Thrive's surveys found a net 54.5% rate of confusion between Thrive's newer packaging and a TCI skincare product, and a net 56.6% rate of confusion between Thrive's older packaging and a TCI skincare product. Those rates of confusion constitute "persuasive evidence" of likely confusion. 6 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 32:188 (confusion levels over 50 percent are "persuasive evidence" of likely confusion)); *Warner Bros. Ent. v. Glob. Asylum, Inc.*, No. CV 12-9547 PSG, 2012 WL 6951315, at *10 (C.D. Cal. Dec. 10, 2012) ("Generally, confusion levels of 25 to 50 percent provide 'solid support' for |

| | | |
|---|---|---|
| | | a finding of likelihood of confusion, while confusion rates below 20 percent support a finding of confusion only in connection with other corroborating evidence.") (citing *Fiji Water Co. v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1179 (C.D. Cal. 2010) (granting a preliminary injunction where survey evidence from over 400 respondents showed a confusion level of 24.2 percent); *E.J. Gallo Winery v. Pasatiempos Gallo*, 905 F. Supp. 1403, 1409 (E.D. Cal. 1994) (rate between 18-20 percent demonstrated "significant level" of confusion). |
| | 15. | The "degree of care" *Sleekcraft* factor favors finding a likelihood of confusion because the goods in question are relatively inexpensive and the parties' brands are centered on the same name—THRIVE. *See Electropix*, 178 F. Supp. 2d at 1131 (holding that less care is exercised where products are fungible and not unique, and "virtually no amount of consumer care can prevent confusion where two entities have the same name."); *Pom*, 775 F.3d at 1127 ("Unlike purchasers of expensive goods—whom we expect to be more discerning and less easily confused—purchasers of inexpensive goods are likely to exercise less care, thus making confusion more likely."). "[T]he standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer." *Goto.com*, 202 F.3d at 1209; *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1065 (N.D. Cal. 2012). "Although the wholly indifferent may be excluded, the standard includes the ignorant and the credulous." *Sleekcraft*, 599 F.2d at 353. "What is expected of this reasonably prudent consumer depends on the circumstances." *Id*. Under the circumstances here, including that TCI has incorporated the entire THRIVE Mark into TCI's brand, the goods are identical in kind, and the prices range between $10 and $65, consumers are likely to exercise a relatively low standard of care and are highly likely to be confused. *See Electropix*, 178 F. Supp. 2d at 1131 (finding a high degree of care where parties offered "specialized, custom-tailored technical and creative services to sophisticated customers," but holding this factor still weighed in plaintiff's favor where names were nearly identical); *Stark*, 907 F. Supp. 2d at 1065 (finding wine purchasers exercised low degree of care, thus supporting likelihood of confusion). |
| | 16. | The "defendant's intent" *Sleekcraft* factor favors finding a likelihood of confusion because TCI knew of Thrive's THRIVE Mark and Thrive's trademark registrations at the time when TCI expanded into the skincare market and began selling the Infringing Skincare Products. *See Brookfield*, 174 F.3d at 1059; *Synoptek*, 309 F. Supp. 3d at 841 (finding this factor weighed in favor of likelihood of confusion where defendant's founders |

were not aware of plaintiff at time they chose the accused mark, but they continued to use the accused mark after having "constructive or actual knowledge of the [plaintiff's] mark" from PTO office actions); *Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.*, 156 F. Supp. 3d 1173, 1184 (E.D. Cal. 2016) (factor favors plaintiff where "[e]ven though the injunctive record supports Defendant's assertion that it selected its mark in good faith, Defendant continued using its mark after it became aware of Plaintiff's registered mark."). The "appropriate inquiry" is whether TCI had actual knowledge of Thrive's existence and mark usage at the point when TCI began to use the infringing mark in the relevant skincare market. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1080 (N.D. Cal. 2012). By the time TCI expanded into skincare in 2018, TCI was in possession of ███████████████████████████████, and TCI had received two Office Actions from the PTO identifying the THRIVE Registrations as conflicts. TCI had also received a cease-and-desist letter from Thrive, and TCI's founder had received a rejection from Thrive of her request to use the THRIVE Mark for TCI's business. There is thus no doubt that TCI acted with knowledge and intentional disregard of Thrive's trademark rights. *See Bellagio Jewelry, Inc. v. Croton Watch Co.*, No. CV-06-6672-ODW-RZx, 2008 WL 3905895, at *10 (C.D. Cal. Aug. 20, 2008) ("[A]fter Plaintiffs' cease and desist letter . . . Croton continued to use the Bellagio mark to market its watches. While there is no evidence that Croton maliciously intended to deceive consumers, this factor still tips in favor of Plaintiffs."); *Synoptek*, 309 F. Supp. 3d at 841; *Brooklyn Brewery*, 156 F. Supp. 3d at 1184.

17. The "expansion of product lines" *Sleekcraft* factor weighs in favor of finding a likelihood of confusion, as the parties will continue to be direct competitors and there is "potential for even more direct competition between the two lines in the future." *Glow*, 252 F. Supp. 2d at 1001; *Stark*, 907 F. Supp. 2d at 1064. However, where "the parties already compete to a significant degree because they sell related products and use similar marketing channels, this factor is relatively unimportant to the likelihood of confusion analysis." *Fiji Water*, 741 F. Supp. 2d at 1183.

18. The three factors that courts have found most important in e-commerce infringement cases—similarity of the marks, relatedness of the goods, and use of similar marketing channels—strongly favor finding a likelihood of confusion. *See GoTo.com*, 202 F.3d at 1205; *Brookfield*, 174 F.3d at 1054. The remaining factors therefore would have to "weigh strongly against a

| | |
|---|---|
| | likelihood of confusion to avoid the finding of infringement." *Perfumebay.com*, 506 F.3d at 1173-74. But the other factors do not support TCI either. |
| 19. | In an analysis of the totality of the *Sleekcraft* factors, the Court finds that Thrive is entitled to summary judgment in its favor on trademark infringement. *See AOP Ventures*, 2016 WL 7336730, at *9 (granting summary judgment of infringement where the court's "review of the *Sleekcraft* factors reveals six factors weigh in favor of a likelihood of consumer confusion and the remaining two factors are neutral."); *Synoptek*, 309 F. Supp. 3d at 842 (granting summary judgment for plaintiff on likelihood of confusion where "the factors of the similarity of the marks, the proximity of the goods, and the strength of [plaintiff's] mark, are particularly probative of a likelihood of confusion" and the USPTO had refused the defendant's attempt to register its accused mark due to a conflict with plaintiff's mark.). The relevant factors here weigh strongly in favor of finding that a likelihood of confusion exists between Thrive's THRIVE skincare products and TCI's THRIVE CAUSEMETICS skincare products, and no factor favors TCI. |
| 20. | Because the Court grants summary judgment in Thrive's favor on federal trademark infringement, summary judgment in Thrive's favor is also warranted on its federal unfair competition claim and its state law claims, which all rely on the same analysis. *See AOP Ventures*, 2016 WL 7336730, at *9; *Brookfield*, 174 F.3d at 1046 n.6. |
| 21. | Thrive is entitled to summary judgment on its claim that TCI's infringement was willful. There is no dispute that TCI knew of its competitor Thrive's rights in 2018 when TCI began selling skincare products, and TCI proceeded to broadly use the THRIVE Mark on directly competitive skincare products at Thrive's expense. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993); *Razor USA LLC v. Vizio, Inc.*, No. 14-CV-01586S-JOJ-CGX, 2015 WL 12656941, at *6 (C.D. Cal. Oct. 19, 2015). |
| 22. | There is "strong evidence of willful infringement" in the undisputed facts that—prior to TCI expanding into the skincare market in competition with Thrive—TCI was in possession of ███████████████████ ███████████████████████████████, and TCI had received two PTO Office Actions recognizing TCI's use of the THRIVE |

CAUSEMETICS brand created a likelihood of confusion with the THRIVE Registrations. *Razor USA*, 2015 WL 12656941, at *6 ("Use of an infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement.") (quoting E. *& J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 472, 475 (N.D. Cal. 1992) (holding defendant "was on notice that there could be a likelihood of confusion" when Canadian trademark officials cited plaintiff's mark as a reason for denying defendant's trademark application)); *see also Synoptek, LLC v. Synaptek Corp.*, No. SA-CV-1601838-CJC-JCGX, 2018 WL 3359017 ("*Synoptek II*"), at *9 (C.D. Cal. June 4, 2018) ("Synaptek nevertheless continued to use the 'Synaptek' mark and to pursue federal registration of that mark despite multiple PTO denials on the same grounds. Synaptek's blatant use of the 'Synaptek' mark in spite of the PTO denials provides strong evidence of willful infringement."). There is "no doubt but that [TCI] was on notice that there could be a likelihood of confusion caused by its use of the "[THRIVE]" mark." *Consorzio*, 782 F.Supp. at 475. While TCI was able to overcome the PTO's 2015 rejection based on Thrive's '942 Registration, TCI did so by arguing that its color cosmetics were in a different category of goods from Thrive's skincare products. That argument could no longer apply when TCI expanded into skincare in 2018. *See Synoptek II*, 2018 WL 3359017, at *10 (holding defendant's belief it was not infringing was not reasonable "because . . . the PTO's decision directly contradicted this belief.").

23. The undisputed fact that TCI received a cease-and-desist letter from Thrive prior to expanding into the skincare market also strongly supports a finding of willful infringement. *See Consorzio*, 782 F.Supp. at 475. While TCI responded to that letter arguing its color cosmetics differed from Thrive's skincare products, that argument no longer carried force when TCI started selling skincare products in 2018. While TCI may have had reason to believe it did not infringe when selling color cosmetics, that belief could not have been reasonable when applied to its sale of skincare products. *See Synoptek II*, 2018 WL 3359017, at *10 (finding willful infringement where "Synaptek's continued use of 'Synaptek' demonstrates an indifference to Synoptek's trademark rights and a willingness to determine unilaterally, in spite of the PTO's denials, that Synaptek's rights in its marks should be ignored."); *Bellagio*, 2008 WL 3905895, at *10. It is undisputed that TCI entered the skincare market and began using the THRIVE Mark in direct competition with Thrive *after* TCI: (a) ███████████████████████ ███████████████████████████; (b) received two PTO Office Actions identifying Thrive's trademarks as conflicts; (c) received Thrive's

| | |
|---|---|
| | cease-and-desist letter; and (d) received Thrive's CEO's denial of TCI's founder's request for permission to use the THRIVE Mark. As such, there is thus no genuine dispute with regard to willful infringement, and Thrive is entitled to summary judgment on that issue. |
| 24. | Thrive is entitled to summary judgment on disgorgement of TCI's profits under 15 U.S.C. § 1117(a). While willful infringement is not required to receive disgorgement, Thrive has shown TCI possessed *mens rea* to infringe, which remains "a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Disgorgement is also a proper remedy because it ensures TCI does not profit from its infringement and serves to deter similarly-situated defendants. *See Monster Energy Co. v. Integrated Supply Network, LLC*, No. ED-CV-17548-CBM-RAOx, 2021 WL 1521981, at *2 (C.D. Cal. Apr. 12, 2021); *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982) ("Any other remedy" besides disgorgement of profits earned from the infringing activity "results in the defendants being unjustly enriched."). |
| 25. | Thrive is entitled to an award of disgorgement of TCI's profits from sales of Infringing Skincare Products in the amount of ████████, which constitutes TCI's gross revenues minus direct expenses, including cost of goods sold, relating to sale of those products. *See* 15 U.S.C. § 1117(a). |
| 26. | TCI has failed to meet its burden of proving claimed indirect expenses were "of actual assistance" in the production, distribution, or sale of the infringing products, and therefore such indirect expenses are not properly deductible from the award of total profits. *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984); *Folkens v. Wyland*, No. C-01-1241 EDL, 2002 WL 1677708, at *5 (N.D. Cal. July 22, 2002) (holding that a "pure allocation" of indirect expenses based on percentage of revenue is not permissible and has been "specifically rejected" by the Ninth Circuit); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985) (rejecting defendants' attempt to deduct indirect costs based on allocation by percentage of revenue, as "[t]hat is not the law of this circuit."); *Lindy Pen*, 982 F.2d at 1408. |
| 27. | Thrive is entitled to summary judgment on corrective advertising damages and an award of corrective advertising damages in the amount of ████████. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) |

| | |
|---|---|
| | (approving of recover of corrective advertising damages); *Marketquest Grp., Inc. v. BIC Corp.*, No. 11-CV-618-BAS (JLB), 2018 WL 1756117, at *5 (S.D. Cal. Apr. 12, 2018) ("Recovery of both past and future corrective advertising costs is permitted.") (citing *Adray*, 76 F.3d at 988-89; *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374-76 (10th Cir. 1977). This award of corrective advertising damages is properly based on the Ninth Circuit's approved standard of 25% of a defendant's advertising budget, consistent with the Federal Trade Commission's "rule requiring businesses engaged in misleading advertising to spend 25% of their budget on corrective advertising . . . ." *Marketquest*, 2018 WL 1756117, at *5; *Big O Tire*, 561 F.2d at 1375-76 (adopting 25% rule); *Ardray*, 76 F.3d at 989 (approving of 25% rule). |
| 28. | Given the undisputed evidence, the Court finds it proper to grant a permanent injunction barring TCI from making or selling Infringing Skincare Products or otherwise infringing Thrive's THRIVE Mark. *See* 15 U.S.C. § 1116(a). Because Thrive has proven infringement, it is entitled a presumption of irreparable harm pursuant to the recent Trademark Modernization Act of 2020. *See id*. The undisputed facts establish that Thrive has suffered irreparable harm in the loss of control over its brand, goodwill, and reputation. *See* Vineyard House, LLC v. Constellation Brands U.S. Ops., Inc., No. 4:19-CV-01424-YGR, 2021 WL 254448, at *14 (N.D. Cal. Jan. 26, 2021) ("The loss of control over one's trademarks, reputation, and goodwill is 'a quintessentially irreparable injury.") (quoting *Adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1249 (D. Or. 2016) and McCarthy on Trademarks, § 30:47.70 ("A likelihood of damage to reputation is by its nature 'irreparable.' Like trying to un-ring a bell, trying to 'compensate' after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation.")); *see also Ossur hf v. Manamed Inc.*, 331 F. Supp. 3d 1005, 1017 (C.D. Cal. 2017) ("By borrowing [plaintiff]'s mark, Defendants impair [plaintiff]'s control over its reputation" and finding irreparable harm where defendant used mark "Offloader One" for knee braces, which was substantially similar to plaintiff's "Unloader One" mark for the same products); *Fiji Water*, 741 F. Supp. 2d at 1183 ("If VITI continues to introduce its infringing product into the marketplace, FIJI will undoubtedly have great difficulty maintaining and restoring its reputation and goodwill with the public, many of whom are already confused."); *Starbucks Corp. v. Heller*, No. CV-14-01383-MMM-MRWx, 2014 WL 6685662, at *8 (C.D. Cal. Nov. 26, 2014) ("[T]he injury caused by the presence of infringing products in the market—such as lost profits and customers, as well as damage to goodwill |

and business reputation—will often constitute irreparable injury.").
Without an injunction, "[TCI] will continue to try and use the [THRIVE]
term for its own benefit and such use will not only be a violation of
[Thrive]'s trademark rights but will harm the public as it will suggest an
inference regarding the origin of the [accused goods] that is unsupported in
any credible manner. [TCI] will suffer no hardship as it has no right, or
credible basis, to use the term." *Vineyard House*, 2021 WL 254448, at *14.
The undisputed facts and the Court's findings therefore warrant granting a
permanent injunction as requested by Thrive.

DATED:  August 6, 2021

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Stephen McArthur*
    Stephen McArthur
    Thomas Dietrich
    *Attorneys for Plaintiff Thrive*
    *Natural Care, Inc.*