Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive*
*Causemetics, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:20-cv-9091-PA-AS |
| Plaintiff, | Hon. Percy Anderson |
| v. | **DEFENDANT THRIVE CAUSEMETICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| THRIVE CAUSEMETICS, INC., | |
| Defendant. | |
| | Date:    September 13, 2021 |
| | Time:    1:30 p.m. |
| | Place:   Courtroom 9A |
| | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

1

# TABLE OF CONTENTS

2
**PAGE**

3   INTRODUCTION ................................................................................................ 1

4   BACKGROUND ................................................................................................. 3

5   I.      TCI's Origins And Development Of Its Brand. ...................................... 3

6   II.     Plaintiff's Brand And Interactions With TCI. ....................................... 3

7   III.    The Instant Lawsuit. ............................................................................... 4

8   LEGAL STANDARD .......................................................................................... 5

9   ARGUMENT ....................................................................................................... 5

10  I.      No Genuine Issue Of Material Fact Exists As To Forward Confusion. .............. 5

11  II.     TCI Is Entitled to Summary Judgment On Plaintiff's Monetary Recovery
12          Theories. ................................................................................................. 7

13          A.      TCI's Profits Are Not Recoverable As A Matter of Law. ......................... 7

14          B.      Plaintiff Is Not Entitled To A Reasonable Royalty. ................................. 9

15          C.      Plaintiff Is Not Entitled To A Corrective Advertising Award. ................. 11

16  CONCLUSION .................................................................................................. 14

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adray v. Adry-Mart, Inc.*,
 76 F.3d 984 (9th Cir. 1995) ....................................................................11, 12, 13

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)............................................................................................5

*Binder v. Disability Group, Inc.*,
 772 F. Supp. 2d 1172 (C.D. Cal. 2011).........................................................12, 13

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac.
 Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir.
 1971) .......................................................................................................10, 11

*Lodestar Ansalt v. Bacardi & Co. Ltd.*,
 No. 2:16-cv-0641-CAS(FFMXx), 2019 WL 8105378 (C.D. Cal. July
 3, 2019) ...................................................................................................12, 14

*M2 Software Inc. v. Viacom Inc.*,
 223 F. App'x 653 (9th Cir. Feb. 27, 2007).........................................................9

*Marketquest Group, Inc. v. BIC Corp.*,
 316 F. Supp. 3d 1234 (S.D. Cal. 2018) ...................................................9, 10, 11

*Novadaq Technologies, Inc. v. Karl Storz GmbH & Co. K.G.*,
 No. 14-cv-04853-PSG, 2015 WL 9028123 (N.D. Cal. Dec. 16, 2015) ...........8, 9

*Oculu, LLC v. Oculus VR, Inc.*,
 No. 8:14-SACV-196-DOC, 2015 WL 3619204 (C.D. Cal. June 8,
 2015) ....................................................................................................5, 6, 7

*Quia Corp. v. Mattel, Inc.*,
 No. C 10-1902 JF (HRL), 2011 WL 2749576 (N.D. Cal. July 14,
 2011) ...................................................................................................10, 12, 14

*Scat Enter., Inc. v. FCA US LLC*,
 No. CV 14-7995-R, 2017 WL 5896182 (C.D. Cal. June 8, 2017).............*passim*

-ii-

*Spin Master, Ltd. v. Zobmondo Entm't, LLC,*
    944 F. Supp. 2d 830 (C.D. Cal. 2012) ................................................................ 8

*Surfvivor Media, Inc. v. Survivor Prods.,*
    406 F.3d 625 (9th Cir. 2005) ........................................................................ 5, 6

*Trovan, Ltd. v. Pfizer, Inc.,*
    No. CV-98-00094 LGB MXC., 2000 WL 709149 (C.D. Cal. May 24,
    2000) .............................................................................................................. 10

**Statutes**

15 U.S.C. § 1117(a) ..................................................................................... 7, 12

**Other Authorities**

Fed. R. Civ. P. 56(a) .......................................................................................... 5

DEFENDANT THRIVE CAUSEMETICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    Defendant Thrive Causemetics, Inc. ("TCI") respectfully submits this

3  memorandum of points and authorities in support of its motion for summary judgment

4  ("Motion") pursuant to Federal Rule of Civil Procedure 56 as to Plaintiff Thrive

5  Natural Care, Inc.'s ("Plaintiff") forward confusion and monetary recovery theories.

6

## INTRODUCTION

7    In this action, Plaintiff contends that TCI's use of the name and mark THRIVE

8  CAUSEMETICS in connection with skincare products is likely to cause confusion

9  with Plaintiff's claimed rights in the term THRIVE.  Plaintiff's theory is that TCI, the

10  junior user, flooded and overwhelmed the market for skincare products such that

11  Plaintiff, the senior user, cannot possibly compete.  Thus, if this case is anything at all,

12  it is one involving alleged "reverse" confusion – *i.e.*, "when the junior user's

13  advertising and promotion so swamps the senior user's reputation in the market that

14  customers are likely to be confused into thinking that the senior user's goods are those

15  of the junior user."  4 McCarthy on Trademarks and Unfair Competition

16  ("McCarthy") § 23:10 (5th ed.).  While Plaintiff has offered disputable evidence of

17  reverse confusion, it has not adduced *any* evidence of forward confusion.  As such,

18  summary judgment on Plaintiff's forward confusion infringement claim is

19  appropriate.[1]

20    For half a decade, and before the infringement by TCI alleged in the First

21  Amended Complaint began, Plaintiff's business struggled.  Although Plaintiff's sales

22  nominally increased during its first five years of existence, so did its operating and

23  other expenses such that Plaintiff incurred significant and increasing net losses each

24  year and was never profitable.  Indeed, in its *best* year before TCI's alleged

25  infringement with respect to skincare products began, Plaintiff had revenues of just

26  $███████, and suffered a net loss of over $██████.  Since TCI began selling skincare

27  ───────────────────────────

[1] The issue of liability has not been determined and is not conceded here – on the
contrary, at the appropriate stage of this litigation, TCI will demonstrate that there is
28  also no likelihood of reverse confusion between the parties.

-1-

products in 2018, Plaintiff has continued to perform poorly, with annual net losses in that same range.  Rather than face the reality that its business model and operations are neither economically viable nor profitable, Plaintiff seeks to lay the blame at TCI's feet.  But Plaintiff has offered *no* evidence that its losses are attributable to the alleged infringement; notably, Plaintiff's putative damages expert has not included *any* damages calculation based on Plaintiff's financial performance or alleged losses.

Instead, through the monetary recovery theories that it *has* advanced, Plaintiff seeks a windfall that is neither legally nor factually tenable.  First, Plaintiff's claim for disgorgement of TCI's profits is unavailable as a matter of law.  Given the principles of unjust enrichment underlying such awards, courts within the Ninth Circuit bar recovery of a defendant's profits in reverse confusion cases because the defendant is necessarily not trading on the plaintiff's goodwill or established mark.  Second, Plaintiff cannot recover a "reasonable royalty" as damages because there is no prior licensing history between the parties (or between either party and anyone else), and thus no legitimate and non-speculative basis for such an award.  Third, there is no evidence of the value or devaluation of Plaintiff's mark, and Plaintiff's proposed award of corrective advertising is thus unavailable as a matter of law.

At their core, Lanham Act damages are intended to compensate the plaintiff and make it whole, not to penalize the defendant and certainly not to give the plaintiff a windfall.  Accordingly, courts require that plaintiffs establish damages to a reasonable certainty.  Plaintiff has not done so, and cannot do so, here.  Instead, the trier of fact would have to guess as to the appropriate measure of damages, but the law does not permit guesswork as a method of calculation.  For these reasons, none of Plaintiff's proposed monetary recovery theories withstand legal scrutiny, and the Court should grant summary judgment as to each of them.

# BACKGROUND

## I.  TCI's Origins And Development Of Its Brand.

TCI was established and sold its first products in 2014.  Defendant's Statement of Uncontroverted Facts and Conclusions of Law ("DSUF") No. 1.  Its first product offerings were false eyelashes and eyelash adhesives, but it thereafter expanded its product offerings to include color cosmetics and, in October 2018, skincare products. DSUF No. 2.  TCI has been highly successful.  The company's success has been covered in numerous major media outlets including Forbes, Cosmopolitan, Allure, Good Morning America, TODAY Show and People Magazine, and the company's robust social media presence includes 529,000 followers on Instagram and over 615,000 followers on Facebook.  DSUF No. 3.  TCI's commercial success is also reflected in its financial performance:  TCI has achieved a total of $███████ in revenues since 2018, including $██████ attributable to the sale of skincare products, driven in part by substantial investments in advertising.  DSUF No. 4.

## II.  Plaintiff's Brand And Interactions With TCI.

Plaintiff sells products featuring ingredients ostensibly sourced from regenerative plants grown in Costa Rica.  DSUF No. 5.  Since its founding in late 2012, Plaintiff's commercial performance has been modest, at best.  DSUF No. 6.  Its annual net revenue has ranged from $████ to a high of $█████ in 2020, and it has incurred significant net losses every year.  DSUF No. 6.  As of early August of 2021, Plaintiff had just 7,242 followers on Instagram and 2,693 followers on Facebook. DSUF No. 7.

In June 2019, Ms. Bodnar reached out to Plaintiff's co-founder Alex McIntosh regarding the companies' respective marks and a potential "peaceful coexistence" agreement between the parties.  DSUF No. 11.  In that conversation, Mr. McIntosh made a generic reference to licensing, but did not propose a royalty amount.  DSUF No. 12.  To the contrary, Mr. McIntosh did not have a suggestion as to what an appropriate royalty would be.  DSUF No. 13.  In response to Mr. McIntosh's

-3-

1  comment, Ms. Bodnar suggested that TCI might consider a donation to Plaintiff's

2  preferred charity to resolve any dispute between the parties, but proposed no specific

3  terms.  DSUF No. 14.  The conversation concluded without the parties reaching any

4  agreement, and there was never any further discussion between the parties with

5  respect to anything having to do with licensing.  DSUF No. 15.

6  **III.   THE INSTANT LAWSUIT.**

7          After the June 2019 conversation, nearly sixteen more months elapsed without

8  any further communication between the parties.  DSUF No. 16.  Then, on October 2,

9  2020, Plaintiff filed the complaint in this action, alleging trademark infringement and

10  several related causes of action.  *See generally* ECF No. 1.  Plaintiff has since

11  amended its claims to remove nearly all allegations concerning TCI's color cosmetics

12  products.  *See* ECF No. 28 ¶ 62.  Common to both iterations of Plaintiff's pleading is

13  the proposition that TCI's liability is based on a theory of reverse confusion.[2]  ECF

14  No. 1 ¶ 4 ("TCI's multi-million dollar per year growth has enabled it to flood the

15  market with advertising for its own skincare products such that consumers have now

16  come to believe that plaintiff Thrive is related to or affiliated with defendant TCI and

17  that Thrive's goods originate from TCI."); ECF No. 28 ¶ 4 (same); *see also* DSUF No.

18  8 ("[W]hat I've read in the media and what Ms. Bodnar has said, is she's spending

19  between 100 and 1,000 times per month what my company typically spends on

20  marketing and advertising. . . . [T]he level of the spend is commensurate with the

21  challenge that she's creating by flooding the zone, by flooding the lane, as it were.").

22  Moreover, the handful of instances of alleged actual confusion of which Plaintiff is

23  aware and has offered evidence all involve the purported belief that Plaintiff or its

24  products came from or were affiliated with TCI, not the other way around.  ECF No.

25  28 ¶¶ 69-70; DSUF No. 9.  As relevant to the instant Motion, Plaintiff seeks

26  _____

27  [2] Although Plaintiff conclusorily alleges that its case involves both forward and
    reverse confusion, ECF No. 28 ¶ 1, the balance of the First Amended Complaint and
    Plaintiff's deposition testimony make clear that its claim is of reverse confusion, *see*

28  *infra* Argument § I.

-4-

1  disgorgement of TCI's profits, and damages in the form of corrective advertising and
2  a reasonable royalty.  ECF No. 28, Prayer for Relief ¶¶ 2-4; Declaration of Lauren M.
3  De Lilly ("De Lilly MSJ Decl.") Ex. I ("Drews Report") at 3.  Notably, Plaintiff does
4  *not* include any actual damages claim based on its own financial performance (*i.e.*, a
5  calculation of damages tied to Plaintiff's persistent net losses).  Drews Report at 3.

6  ### LEGAL STANDARD

7  Summary judgment must be granted when "there is no genuine dispute of any
8  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.
9  P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties
10  will not defeat an otherwise properly supported motion for summary judgment; the
11  requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty*
12  *Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

13  ### ARGUMENT

14  **I.   NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO FORWARD**
15  **CONFUSION.**

16  The Court should grant summary judgment as to Plaintiff's claim of forward
17  confusion trademark infringement (if Plaintiff still purports to assert such a theory)
18  because there is no evidence to support such a claim.

19  The likelihood of confusion test for trademark infringement evaluates "whether
20  a 'reasonably prudent consumer in the marketplace is likely to be confused as to the
21  origin of the good or service bearing one of the marks.'"  *Surfvivor Media, Inc. v.*
22  *Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005) (citations omitted).  Such claims
23  can take two distinct forms – forward confusion and reverse confusion.  *Id.*; *Oculu,*
24  *LLC v. Oculus VR, Inc.*, No. 8:14-SACV-196-DOC (JPRx), 2015 WL 3619204, *9
25  (C.D. Cal. June 8, 2015).  "Forward confusion occurs when consumers believe that
26  goods bearing the junior mark came from, or were sponsored by, the senior mark
27  holder."  *Surfvivor Media, Inc.*, 406 F.3d at 630.  In contrast, "reverse confusion
28  occurs when consumers dealing with the senior mark holder believe that they are

-5-

doing business with the junior one," *id.*, because the junior user "'saturates the market with a similar trademark and overwhelms'" the senior user, *Oculu, LLC*, 2015 WL 3619204, *9 (quoting *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1047 (C.D. Cal. 2013)); *see also* McCarthy § 23:10 ("[R]everse confusion occurs when the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user[.]").  To avoid summary judgment on its forward confusion claim, Plaintiff must adduce evidence raising a genuine issue of material fact in support of such a claim.  *See Surfvivor Media, Inc.*, 406 F.3d at 630; *Oculu*, 2015 WL 3619204, *10 (granting summary judgment on plaintiff's forward confusion theory).  There is no such evidence here.

The gravamen of Plaintiff's claims is that "TCI's multi-million dollar per year growth has enabled it to flood the market with advertising for its own skincare products such that consumers have now come to believe that Plaintiff is related to or affiliated with defendant TCI and that Thrive's goods originate from TCI."  ECF No. 28 ¶ 4; *see also id.* ¶ 75.  Such allegations reflect a theory of reverse, rather than forward, confusion.  *See, e.g.*, *Surfvivor Media, Inc.*, 406 F.3d at 630; *Oculu, LLC*, 2015 WL 3619204, at *9; McCarthy § 23:10.  Consistent with this theory, Plaintiff has repeatedly affirmed that TCI's success has overwhelmed and crowded Plaintiff out of the market.  ECF No. 28 ¶¶ 4, 69-70; DSUF No. 8.  Furthermore, the handful of instances of alleged actual confusion identified by Plaintiff reflect (if anything) reverse confusion, and Plaintiff has conceded that it is not aware of any other alleged instances of confusion.[3]  DSUF No. 9.  The Court should therefore grant summary judgment as to Plaintiff's claim of forward confusion trademark infringement.

---

[3] TCI disputes whether the alleged confusion identified by Plaintiff is, in fact, evidence of confusion.  For example, although Plaintiff claims that an entity called Volition Capital LLC used TCI's logo in an article and instead intended to use Plaintiff's logo, Plaintiff conceded that it has never communicated with anyone from Volition Capital, and further admitted that Volition Capital never advised Plaintiff that it intended to refer to Plaintiff.  *See* DSUF No. 9.  For present purposes, however,

1
2

## II. TCI IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MONETARY RECOVERY THEORIES.

3
4
5
6
7
8
9
10
11
12
13
14
15
16

Plaintiff seeks damages in the form of TCI's profits, a reasonable royalty, and corrective advertising, ECF No. 28, Prayer for Relief ¶¶ 2-4; Drews Report at 3, but these forms of relief are unavailable as a matter of law, lack evidentiary support, or both.  Plaintiff seeks equitable disgorgement of TCI's profits from the sale of its skincare products, but courts in the Ninth Circuit have barred recovery of profits in reverse confusion cases.  Plaintiff's claim for a reasonable royalty is unsupported in law or fact because there is no evidence of any prior licensing history by either party, rendering Plaintiff's proposed royalty rate unreasonable and speculative.  Finally, Plaintiff's request for "corrective advertising" damages (a figure that is *8.3 times* its total sales and marketing expenditures for the relevant period, and *3.7 times* its total net revenue for the same period (Drews Report at 3; DSUF No. 6)), is untethered to any quantification of alleged harm to Plaintiff's mark, and any such award is therefore unsupportable as a matter of law.  Summary judgment is thus appropriate as to all of Plaintiff's monetary recovery theories.

17

### A. TCI's Profits Are Not Recoverable As A Matter of Law.

18
19

For the reasons explained *supra* Argument § I, this case involves a claim of reverse confusion.  As such, TCI's profits are unavailable as a matter of law.

20
21
22
23
24
25
26

Subject to the principles of equity, the Lanham Act authorizes an award of defendant's profits, the purpose of which is to compensate the plaintiff for the unjust enrichment realized by the defendant, but not to penalize the defendant.  *See* 15 U.S.C. § 1117(a); *Oculu, LLC*, 2015 WL 3619204, *22 (explaining that disgorgement is an available remedy based in part on the rationale that a defendant "should not be unjustly enriched").  In reverse confusion cases, however, consumers do not associate the junior user with the senior user or the senior user's mark.  *See Scat Enter., Inc. v.*

27
28

what matters is that even if the Volition Capital example did reflect confusion, it would be reverse – not forward – confusion.

*FCA US LLC*, No. CV 14-7995-R, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017); McCarthy § 23:10.  A reverse confusion theory is thus inconsistent with the notion that the defendant was unjustly enriched through the infringement, *i.e.*, that it traded on or gained the value of the plaintiff's mark or goodwill.  *See Novadaq Technologies, Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 WL 9028123, at *2 (N.D. Cal. Dec. 16, 2015) ("An intent to exploit an existing mark 'is necessarily absent in a reverse confusion case.'"); *Scat Enter.*, 2017 WL 5896182, at *2 (same); McCarthy § 23:10 ("Because in a reverse confusion case the infringer is not seeking to take away the plaintiff's customers through confusion, awarding the plaintiff the profits of the infringer is not a proper basis for recovery.").  Without proof that the defendant is trading on the plaintiff's goodwill or mark, disgorging the defendant's profits "'amount[s] to a penalty to the infringer and a windfall to the trademark holder," rather than compensation for any purported harm "'even if the infringer's conduct was otherwise intentional.'"  *Novadaq Technologies*, 2015 WL 9028123, at *3 (quoting *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, at 848-49 (C.D. Cal. 2012)).

Courts within the Ninth Circuit have accordingly held that a defendant's profits are not recoverable in reverse confusion cases.  *See, e.g.*, *Scat Enter.*, 2017 WL 5896182, at *2 ("Plaintiff is barred as a matter of law from seeking disgorgement of Defendant's profits under its reverse confusion theory. . . . even if the defendant was willfully blind to the possibility of infringement.'"); *Novadaq Technologies*, 2015 WL 9028123, at *3 ("[T]his court's interpretation generally shields defendants in reverse confusion cases from having to disgorge their profits."); *Spin Master, Ltd.*, 944 F. Supp. 2d 830, at 848-49  ("Disgorging the infringer's significant profits without proof of trading off the mark holder's goodwill would still amount to a penalty to the infringer and a windfall to the trademark holder, . . . even if the infringer's conduct was otherwise intentional.").

This case is undoubtedly one of reverse confusion – Plaintiff concedes that TCI's success has overwhelmed and swamped the market such that Plaintiff cannot compete. *See supra* Argument § I. Damages in the form of TCI's profits are thus unavailable as a matter of law and summary judgment is appropriate. *See, e.g.*, *Scat Enter.*, 2017 WL 5896182, at *2 (granting motion for partial summary judgment as to plaintiff's claim for disgorgement of profits on reverse confusion theory); *Novadaq Technologies*, 2015 WL 9028123, at *3 (clarifying grant of summary judgment that defendant's profits were unavailable for reverse confusion claim).[4]

## B. <u>Plaintiff Is Not Entitled To A Reasonable Royalty.</u>

Plaintiff's request for a reasonable royalty is speculative, and should therefore be denied, because the parties have no prior licensing history and Plaintiff offers no valid basis on which to calculate such a royalty. Although the Ninth Circuit has not expressly authorized a reasonable royalty as a proper measure of trademark damages, *M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 655 (9th Cir. Feb. 27, 2007), courts within this circuit have found such an award appropriate only where the parties have a prior licensing history with each other that facilitates computation of a reasonable royalty and/or have routinely negotiated licenses with third parties, such that there is a legitimate basis on which to calculate it, *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234 at 1300 (S.D. Cal. 2018). Neither is present here.

There is no dispute that the parties have no prior licensing history. They have never negotiated or entered into a license with each other concerning the THRIVE mark. DSUF No. 17.[5] Nor is TCI unique; Plaintiff has never licensed its mark to *any*

---

[4] Although a plaintiff in a reverse confusion case may be able to recover damages caused by loss of business and damage to its goodwill and reputation, *see* McCarthy § 23.10, Plaintiff neither asserts nor has offered evidence of any actual lost or diverted sales, damage to its reputation, or any devaluation of its mark or goodwill attributable to TCI. *See infra* Argument § II.C.
[5] Although the parties had a single conversation in 2019 in which the concept of licensing was briefly raised, Plaintiff did not propose a royalty amount and had no suggestion as to what an appropriate royalty would be, and no further discussions regarding licensing ever took place. *See* DSUF Nos. 12-13.

third party.  DSUF No. 18.[6]  Similarly, TCI has never licensed its mark to any third parties, nor has it obtained a license for any other party's mark.  DSUF No. 20.  Under such circumstances, courts have concluded that a reasonable royalty is not available as a matter of law.  *See, e.g.*, *Marketquest*, 316 F. Supp. 3d at 1301 (granting summary judgment and finding that "any attempt to discern" a reasonable royalty "is completely speculative" where there was no evidence that parties had ever licensed their marks); *Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576 at *7 (N.D. Cal. July 14, 2011) (granting summary judgment where the record lacked "evidence of a prior license or  licensing negotiations between the parties, a prior license or negotiations with respect to Plaintiff's mark with a third party, or of a plan or timeline for licensing the mark"); *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094 LGB MXC., 2000 WL 709149, at *17-18 (C.D. Cal. May 24, 2000) (vacating jury's reasonable royalty award as having "no basis in reality, much less any basis in fact" where there was no evidence the plaintiff would have licensed its mark).

Plaintiff's sole support of its request for a reasonable royalty is the opinion of its putative damages expert, David Drews.  Mr. Drews opines that a reasonable royalty in this case would amount to $██████, a figure that he calculated by applying a royalty rate of 8% to TCI's allegedly infringing net sales, ostensibly based on an analysis of the factors set forth in *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971), which were adopted for use in patent cases (where a reasonable royalty is a statutorily-authorized measure of damages).  Notably, another court has previously rejected Mr. Drews' application of these factors in trademark litigation as "impermissibly speculative":

---

[6] That Plaintiff's counsel apparently made one offer to license Plaintiff's mark to a third party *after* Plaintiff filed this lawsuit does not alter this analysis.  *See* DSUF No. 19.  There is no evidence that the offer was ever the subject of negotiations with the third party, and in all events, it never actually resulted in a licensing agreement.  *Id.*

> The calculation of a reasonable royalty in patent litigation is typically measured based on the fifteen factors in *Georgia–Pacific Corp. v. U.S. Plywood–Champion Papers, Inc.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). Drews expressly relied on the *Georgia–Pacific* test to calculate a reasonable royalty here. (ECF No. 232 Ex. A. at ¶¶ 60–87.) While the *Georgia–Pacific* test may be appropriate in patent cases for statutorily-sanctioned reasonable royalty damages, the Court finds its application impermissibly speculative in this case given the absence of a prior licensing agreement, evidence of licensing negotiations between the parties, or evidence otherwise showing either side's intent to license.

*Marketquest Group, Inc.*, 316 F. Supp. 3d at 1301 n.34.  The same analysis and conclusion apply with equal force here.  In the absence of any evidence of meaningful prior licensing activity by either party (whether with each other or with third parties), any "reasonable royalty" award would be impermissibly speculative and unsupportable as a matter of law.  The Court should therefore grant summary judgment as to Plaintiff's request for a reasonable royalty.

## C.   <u>Plaintiff Is Not Entitled To A Corrective Advertising Award.</u>

Summary judgment is also appropriate on Plaintiff's theory for recovery of corrective advertising because there is no evidence of damage to the value of Plaintiff's mark, and therefore, the trier of fact cannot reasonably calculate any such award.  Although the Ninth Circuit has allowed corrective advertising awards, it has also expressly limited the propriety of such awards "only to the extent that the amount of money needed for corrective advertising does not exceed the damage to the value of the mark.  *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995).  This limitation is particularly apt when the plaintiff has not incurred any actual corrective advertising expenditures to restore the value of its mark, but instead seeks *prospective* corrective advertising – the amount that plaintiff contends would be required in the future to combat confusion caused by the defendant's infringement.  As the *Adray* Court acknowledged, "[p]rospective costs may be difficult to determine precisely and present a danger of overcompensation if they exceed the value of the mark."  *Id.*

1    (citing *Zazu Designs v. L'Oreal S.A.*, 979 F.2d 499, 506 (7th Cir. 1992)).  Like all

2    Lanham Act damages, an award of corrective advertising is compensatory in nature.

3    *See id.* at 988; 15 U.S.C. § 1117(a) ("Such sum in either of the above circumstances

4    shall constitute compensation and not a penalty.").  Thus, to recover corrective

5    advertising, the plaintiff bears "the burden of presenting evidence as to the

6    foundational *fact* that its mark lost value at all" and "must present non-speculative

7    evidence that goodwill and reputation—that is, the value of its mark—was damaged in

8    some way." *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *5-6 (granting

9    summary judgment as to corrective advertising where plaintiff's theory of

10   compensable harm was based entirely on conjecture) (emphasis in original).

11        Accordingly, courts have denied recovery of corrective advertising when the

12   plaintiff has presented no evidence of actual corrective advertising expenditures and

13   seeks a prospective award that is not tethered to correcting the harm to the value of the

14   mark.  *See, e.g.*, *Binder v. Disability Group, Inc.*, 772 F. Supp. 2d 1172, 1180-81

15   (C.D. Cal. 2011); *Lodestar Ansalt v. Bacardi & Co. Ltd.*, No. 2:16-cv-0641-

16   CAS(FFMXx), 2019 WL 8105378 at *15 (C.D. Cal. July 3, 2019) (granting summary

17   judgment and denying request for corrective advertising damages because plaintiff

18   failed to present evidence that its mark lost any value); *Scat Enterprises, Inc. v. FCA

19   US LLC*, 2017 WL 5896182, at *2 (granting motion for partial summary judgment and

20   denying request for corrective advertising because plaintiff failed to demonstrate that

21   its mark suffered "any *actual* lost value as a result of [d]efendant's alleged

22   infringement")

23        Here, Plaintiff's proposed methodology of applying 25% to TCI's total

24   advertising expenditures for the purported period of infringement to calculate a

25   prospective corrective advertising award is arbitrary and untethered to any *actual*

26   (alleged) harm to Plaintiff's mark.  Plaintiff's expert Mr. Drews ostensibly applied the

27   approach of a Federal Trade Commission guideline, in government enforcement

28   actions, requiring businesses who engage in misleading advertising to spend 25% of

-12-

their advertising budget on corrective advertising.  Drews Report at 23 (citing *Adray*, 76 F.3d at 989 n.2).  However, the Ninth Circuit in *Adray* did not determine how corrective advertising costs were to be calculated, because the lower court did not reach the issue.  *Adray*, 76 F.3d at 989 n.2.  Furthermore, TCI is unaware of any Ninth Circuit authority holding that a specific percentage of a defendant's advertising expenditures is the appropriate measure of a corrective advertising award.  Such a holding would in any event be irreconcilable with *Adray's* directive that corrective advertising awards are intended to restore the value of the infringed mark and therefore should not exceed the damage to the value of the mark.  *See id.* at 988-89.

Plaintiff has offered no evidence demonstrating that 25% of TCI's advertising expenditures is commensurate with correcting any purported harm to its mark.  *See* DSUF Nos. 21-22.  Indeed, Mr. Drews offers *no* opinion on the value of TNC's mark or the amount Plaintiff contends its mark has been devalued as a result of TCI's conduct.  *Id.*; *see also* De Lilly MSJ Decl., Ex. C at 14-15.  Plaintiff also has not made actual corrective advertising expenditures.  DSUF No. 22.  To the contrary, Plaintiff has indicated that doing so would *not* be a "good investment" for the company.  *Id.* Without such evidence, the trier of fact does not have a reasonably accurate measure from which to assess any appropriate corrective advertising award.  Under similar circumstances, this Court has rejected such requests as legally unavailable.  For example, in *Binder*, the plaintiffs "presented no evidence of any expenditures actually made to restore the value of their marks," and "request[ed] a prospective corrective advertising award of . . . 25% of Defendants' advertising budget."  772 F. Supp. 2d at 1180.  The Court declined to award this amount, finding a "lack of any reasonably accurate measure with which to assess an appropriate award," and that an award "based on an arbitrary percentage of Defendants' advertising budget is not sufficiently tethered to correcting the nature of the harm suffered in this case."  *Id.* at 1180-81.  So too here, Plaintiff seeks an award calculated through application of an arbitrary percentage to TCI's total advertising expenditures without connecting it to the value

-13-

1    of Plaintiff's mark or any purported devaluation of the mark.  This Court should

2    similarly deny that request.  *See, e.g.*, *Lodestar Ansalt*, 2019 WL 8105378 at *15; *Scat*

3    *Enterprises, Inc.*, 2017 WL 5896182 at *2; *Quia Corp.*, 2011 WL 2749576, at *5-6.

4                                **CONCLUSION**

5           For the foregoing reasons, TCI respectfully requests that the Court grant

6    summary judgment as to Plaintiff's forward confusion claim and monetary recovery

7    theories.

8

9

10    DATED:  August 6, 2021                    SIDLEY AUSTIN LLP

11

12                                              By: /s/ Rollin A. Ransom
                                                     Rollin A. Ransom

13                                              *Attorneys for Defendant*
                                                *Thrive Causemetics, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT THRIVE CAUSEMETICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT