1  Stephen McArthur (SBN 277712)
   stephen@smcarthurlaw.com
2  Thomas Dietrich (SBN 254282)
   tom@smcarthurlaw.com
3  THE MCARTHUR LAW FIRM, P.C.
   9465 Wilshire Blvd., Ste. 300
4  Beverly Hills, CA 90212
   Telephone: (323) 639-4455
5
   *Attorneys for Plaintiff Thrive*
6  *Natural Care, Inc.*

7

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  THRIVE NATURAL CARE, INC.,      Case No. 2:20-CV-9091-PA-AS

13              Plaintiff,           **DECLARATION OF STEPHEN
                                     MCARTHUR IN SUPPORT OF
14      v.                           PLAINTIFF'S OPPOSITION TO
                                     DEFENDANT'S MOTION FOR
15  THRIVE CAUSEMETICS, INC.,        SUMMARY JUDGMENT**

16              Defendant.           Hon. Percy Anderson

17                                   **Hearing Date**: September 13, 2021
                                     **Time:** 1:30 p.m.
18                                   **Courtroom:** 9A

19

20

21

22

23

24

25

26

27

28

I, STEPHEN MCARTHUR, declare as follows:

1.      I am an attorney at law, duly admitted into practice before the State of California and this Court. I am an attorney with The McArthur Law Firm, P.C., counsel for Plaintiff Thrive Natural Care, Inc. ("Thrive"). I make this Declaration in support of Thrive's Opposition to Defendant's Motion for Summary Judgment (the "Motion"). I am over 18 years of age and make this declaration of facts known to me and, if called upon, I could and would testify competently to the facts stated herein.

2.      Attached hereto as <u>Exhibit A</u> is a true and correct copy of excerpts of the transcript from the Rule 30(b)(6) deposition of TCI's designee, Karissa Bodnar.

3.      Attached hereto as <u>Exhibit B</u> is a true and correct copy of excerpts of the transcript from the deposition of Brendan Gardner-Young, TCI's Head of Technology.

4.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of excerpts of the transcript from the deposition of Ned Menninger, TCI's Chief Financial Officer.

5.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of an Office Action issued by the PTO on November 30, 2015 (the "2015 Office Action"), rejecting an application by TCI to register THRIVE CAUSEMETICS and citing a likelihood of confusion with Thrive's U.S. Trademark Registration No. 4,467,942 (the '942 Registration"). This record was obtained from the PTO's Trademark Search & Document Retrieval ("TSDR") website. Exhibits to the Office Action not relevant to this litigation have been removed.

6.      Attached hereto as <u>Exhibit E</u> is a true and correct copy of TCI's response to the 2015 Office Action dated May 26, 2016. This record was obtained from the PTO's TSDR website.

7.      Attached hereto as <u>Exhibit F</u> is a true and correct copy of PTO's June 22, 2016, reply to TCI's response to the 2015 Office Action, in which the PTO examiner stated the refusal based on Thrive's '942 Registration was being

1   withdrawn in response to TCI's arguments. This record was obtained from the
2   PTO's TSDR website.

3       8.      Attached hereto as <u>Exhibit G</u> is a true and correct copy of an Office
4   Action issued by the PTO on August 28, 2018 (the "2018 Office Action"), rejecting
5   a second application by TCI to register THRIVE CAUSEMETICS and citing a
6   likelihood of confusion with Thrive's '942 Registration and Thrive's then-pending
7   trademark application, which matured as U.S. Trademark Registration 6,164,303
8   (the "'303 Registration," and, together with the '942 Registration, the "THRIVE
9   Registrations"). This record was obtained from the PTO's TSDR website. Exhibits
10  to the Office Action not relevant to this litigation have been removed.

11      9.      Attached hereto as <u>Exhibit H</u> is a true and correct copy of TCI's
12  response to the 2018 Office Action dated October 30, 2018. This record was
13  obtained from the PTO's TSDR website. Exhibits to the response not relevant to
14  this litigation have been removed.

15      10.     The PTO maintained the refusal to register TCI's second application
16  for THRIVE CAUSEMETICS on the basis of a likelihood of confusion with the
17  THRIVE Registrations. Attached hereto as <u>Exhibit I</u> is a true and correct copy of
18  the PTO's Suspension Letter issued on TCI's application on November 23, 2018.
19  This record was obtained from the PTO's TSDR website.

20      11.     On July 28, 2021, the PTO un-suspended TCI's second application for
21  THRIVE CAUSEMETICS and issued another Office Action refusing to register
22  TCI's application on the basis of a likelihood of confusion with the THRIVE
23  Registrations. Attached hereto as <u>Exhibit J</u> is a true and correct copy of the PTO's
24  Office Action dated July 28, 2021. This record was obtained from the PTO's TSDR
25  website. Exhibits to the Office Action not relevant to this litigation have been
26  removed.

27      12.     Attached hereto as <u>Exhibit K</u> are true and correct copies of dictionary
28  definitions of the word "thrive".

1   I declare under penalty of perjury that the foregoing is true and correct.

2   Executed on August 23, 2021, at Los Angeles, California.

3

4   */s/ Stephen McArthur*
    Stephen McArthur

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>Exhibit D</u>**

**MCARTHUR OPP. 96**

| | |
|---|---|
| **To:** | Thrive Causemetics, Inc. (LorraineL.docketing@SeedIP.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 86721790 - THRIVE CAUSEMETICS - 900234.201 |
| **Sent:** | 11/30/2015 3:27:10 PM |
| **Sent As:** | ECOM110@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |
| | Attachment - 30 |
| | Attachment - 31 |
| | Attachment - 32 |
| | Attachment - 33 |
| | Attachment - 34 |
| | Attachment - 35 |
| | Attachment - 36 |
| | Attachment - 37 |
| | Attachment - 38 |
| | Attachment - 39 |
| | Attachment - 40 |
| | Attachment - 41 |
| | Attachment - 42 |
| | Attachment - 43 |
| | Attachment - 44 |

Attachment - 45
Attachment - 46
Attachment - 47

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.** 86721790

**MARK:** THRIVE CAUSEMETICS

# *86721790*

**CORRESPONDENT ADDRESS:**
 LORRAINE LINFORD
 Seed Ip Law Group Pllc
 701 5th Ave Ste 5400
 Seattle, WA 98104-7064

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Thrive Causemetics, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
 900234.201
**CORRESPONDENT E-MAIL ADDRESS:**
 LorraineL.docketing@SeedIP.com

# FIRST OFFICE ACTION

# STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 11/30/2015**

 **TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:** Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application. *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820. TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $50 per international class of goods and/or services. 37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04. However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone without incurring this additional fee.

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**Refusal Section 2(d) – Likelihood of Confusion**
Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 2938220 and 4467942. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the enclosed registrations.

The applicant has applied to register the mark THRIVE CAUSEMETICS (standard characters) for "False eyelashes; adhesives for affixing false eyelashes; eyeliner; and eyebrow cosmetics."

The mark in U.S. Registration No. 2938220 is CAUSE-METICS (standard characters) for "Cosmetics; Cosmetics, namely foundation and toners; blush; eye make-up; lip liners; lipsticks; nail polishers; creams, namely eye cream, lip cream and nail cream; skin lotions and suntan lotions; skin cleaners, deodorant soaps and skin soaps; perfume."

MCARTHUR OPP. 98

The mark in U.S. Registration No. 4467942 is THRIVE (standard characters) for "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams."

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant and registrant.  *See* 15 U.S.C. §1052(d). A determination of likelihood of confusion under Section 2(d) is made on a case-by case basis and the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) aid in this determination.  *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011) (citing *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed. Cir. 2000)).  Not all the *du Pont* factors, however, are necessarily relevant or of equal weight, and any one of the factors may control in a given case, depending upon the evidence of record.  *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d at 1355, 98 USPQ2d at 1260; *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont de Nemours & Co.*, 476 F.2d at 1361-62, 177 USPQ at 567.

In this case, the following factors are the most relevant:  similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services.  *See In re Viterra Inc.*, 671 F.3d 1358, 1361-62, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Dakin's Miniatures Inc.* , 59 USPQ2d 1593, 1595-96 (TTAB 1999); TMEP §§1207.01 *et seq.*

**Comparison of the Marks**
Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F. 3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."   *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014) (citing *In re 1st USA Realty Prof'ls , Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007)); *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988)); TMEP §1207.01(b).

Here the applicant's  mark is similar to the marks in the cited U.S. Registrations.  The applicant has merely added a term to each of the registered marks.  Adding a term to a registered mark generally does not obviate the similarity between the compared marks, as in the present case, nor does it overcome a likelihood of confusion under Section 2(d).  *See Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 557, 188 USPQ 105, 106 (C.C.P.A. 1975) (finding BENGAL and BENGAL LANCER and design confusingly similar); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1269 (TTAB 2009) (finding TITAN and VANTAGE TITAN confusingly similar); *In re El Torito Rests., Inc.*, 9 USPQ2d 2002, 2004 (TTAB 1988) (finding MACHO and MACHO COMBOS confusingly similar); TMEP §1207.01(b)(iii).  In the present case, the marks are identical in part.

The examining attorney must resolve any doubt as to the issue of likelihood of confusion in favor of the registrant and against the applicant who has a legal duty to select a mark which is totally dissimilar to trademarks already being used.  *Burroughs Wellcome Co. v. Warner-Lambert Co.*, 203 USPQ 191 (TTAB 1979).

**Comparison of the Goods and/or Services**
The goods and/or services of the parties need not be identical or even competitive to find a likelihood of confusion.  *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."); TMEP §1207.01(a)( i).

The respective goods and/or services need only be "related in some manner and/or if the circumstances surrounding their marketing [be] such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source."  *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

The applicant's goods are "False eyelashes; adhesives for affixing false eyelashes; eyeliner; and eyebrow cosmetics."

*U.S. Registration No. 2938220*
The goods in U.S. Registration No. 2938220 are "Cosmetics; Cosmetics, namely foundation and toners; blush; eye make-up; lip liners; lipsticks; nail polishers; creams, namely eye cream, lip cream and nail cream; skin lotions and suntan lotions; skin cleaners, deodorant soaps and skin soaps; perfume."

Here, the applicant's  goods are highly similar to the registrant's  goods.  With respect to applicant's  and registrant's  goods and/or services, the question of likelihood of confusion is determined based on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use.  *See Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1323, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting *Octocom Sys. Inc. v. Hous. Computers Servs. Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990)).

**MCARTHUR OPP. 99**

Absent restrictions in an application and/or registration, the identified goods and/or services are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)). Additionally, unrestricted and broad identifications are presumed to encompass all goods and/or services of the type described. *See In re Jump Designs, LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006) (citing *In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981)); *In re Linkvest S.A.*, 24 USPQ2d 1716, 1716 (TTAB 1992).

In this case, the identification set forth in the application and registration(s) has no restrictions as to nature, type, channels of trade, or classes of purchasers. Therefore, it is presumed that these goods travel in all normal channels of trade, and are available to the same class of purchasers. Further, the registration uses broad wording to describe the goods and this wording is presumed to encompass all goods of the type described, including those in applicant's more narrow identification. For example, the registrant's cosmetics and eye makeup could include eyeliner and eyebrow cosmetics.

### U.S. Registration no. 4467942

The goods in U.S. Registration No. 4467942 are "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams."

The attached Internet evidence consists of third party webpages. This evidence establishes that the same entity commonly manufactures or produces the relevant goods and markets the goods under the same mark. Therefore, applicant's and registrant's goods and/or services are considered related for likelihood of confusion purposes. *See, e.g.*, *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).

Evidence obtained from the Internet may be used to support a determination under Section 2(d) that goods and/or services are related. *See, e.g.*, *In re G.B.I. Tile & Stone, Inc.*, 92 USPQ2d 1366, 1371 (TTAB 2009); *In re Paper Doll Promotions, Inc.*, 84 USPQ2d 1660, 1668 (TTAB 2007). The Internet has become integral to daily life in the United States, with Census Bureau data showing approximately three-quarters of American households used the Internet in 2013 to engage in personal communications, to obtain news, information, and entertainment, and to do banking and shopping. *See In re Nieves & Nieves LLC*, 113 USPQ2d 1639, 1642 (TTAB 2015) (taking judicial notice of the following two official government publications: (1) Thom File & Camille Ryan, U.S. Census Bureau, Am. Cmty. Survey Reports ACS-28, *Computer & Internet Use in the United States: 2013* (2014), *available at* http://www.census.gov/content/dam/Census/library/publications/2014/acs/acs-28.pdf, and (2) The Nat'l Telecomms. & Info. Admin. & Econ. & Statistics Admin., *Exploring the Digital Nation: America's Emerging Online Experience* (2013), *available at* http://www.ntia.doc.gov/files/ntia/publications/exploring_the_digital_nation_-_americas_emerging_online_experience.pdf). Thus, the widespread use of the Internet in the United States suggests that Internet evidence may be probative of public perception in trademark examination.

For the foregoing reasons consumers and potential consumers would be likely to believe that applicant's goods and/or services emanate from the same source as those provided by the registrant. Accordingly, registration is refused under Section 2(d) of the Act.

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

### Prior Filed Application

The filing date of pending U.S. Application Serial No. 85726058 precedes applicant's filing date. See attached referenced application. If the mark in the referenced application registers, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion between the two marks. *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.* Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced application.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the mark in the referenced application. Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

Action on this application will be suspended pending the dispositions of Application Serial No. 85726058, upon receipt of applicant's response resolving the refusal(s) to register based on a likelihood of confusion and resolving the following requirements. **The applicant must respond to the refusal to register based on a likelihood of confusion discussed previously herein and the requirements discussed subsequently herein within 6 months of the date of this Office Action to avoid ABANDONMENT.**

### Additional Requirements

If applicant responds to the refusal(s), applicant must also respond to the requirement(s) set forth below.

### Disclaimer

Applicant must disclaim the wording "COSMETICS" in the mark because it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services, and thus is an unregistrable component of the mark. *See* 15 U.S.C. §§1052(e)(1), 1056(a); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012) (quoting *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004)); TMEP §§1213, 1213.03(a).

The attached dictionary definition shows this wording refers to substances that you use on your skin to make yourself look more attractive. The applicant indicates that it is providing makeup and eyebrow cosmetics. Therefore, the wording merely describes the applicant's goods.

An applicant may not claim exclusive rights to terms that others may need to use to describe their goods and/or services in the marketplace. *See Dena Corp. v. Belvedere Int'l, Inc.* , 950 F.2d 1555, 1560, 21 USPQ2d 1047, 1051 (Fed. Cir. 1991); *In re Aug. Storck KG*, 218 USPQ 823, 825 (TTAB 1983). A disclaimer of unregistrable matter does not affect the appearance of the mark; that is, a disclaimer does not physically remove the disclaimed matter from the mark. *See Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 978, 144 USPQ 433, 433 (C.C.P.A. 1965); TMEP §1213.

The wording "CAUSEMETCS" must appear in its correct spelling, i.e., "COSMETICS" in the disclaimer. *See In re Omaha Nat'l Corp.* , 819 F.2d 1117, 1119, 2 USPQ2d 1859, 1861 (Fed. Cir. 1987); *In re Carlson*, 91 USPQ2d 1198, 1203 (TTAB 2009); TMEP §1213.08(c).

If applicant does not provide the required disclaimer, the USPTO may refuse to register the entire mark. *See In re Stereotaxis Inc.*, 429 F.3d 1039, 1040-41, 77 USPQ2d 1087, 1088-89 (Fed. Cir. 2005); TMEP §1213.01(b).

Applicant should submit a disclaimer in the following standardized format:

**No claim is made to the exclusive right to use "COSMETICS" apart from the mark as shown.**

For an overview of disclaimers and instructions on how to satisfy this disclaimer requirement online using the Trademark Electronic Application System (TEAS) form, please go to http://www.uspto.gov/trademarks/law/disclaimer.jsp.

**Response**
For this application to proceed toward registration, applicant must explicitly address each refusal and/or requirement raised in this Office action. If the action includes a refusal, applicant may provide arguments and/or evidence as to why the refusal should be withdrawn and the mark should register. Applicant may also have other options for responding to a refusal and should consider such options carefully. To respond to requirements and certain refusal response options, applicant should set forth in writing the required changes or statements.

If applicant does not respond to this Office action within six months of the issue/mailing date, or responds by expressly abandoning the application, the application process will end, the trademark will fail to register, and the application fee will not be refunded. *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a), 2.209(a); TMEP §§405.04, 718.01, 718.02. Where the application has been abandoned for failure to respond to an Office action, applicant's only option would be to file a timely petition to revive the application, which, if granted, would allow the application to return to active status. *See* 37 C.F.R. §2.66; TMEP §1714. There is a $100 fee for such petitions. *See* 37 C.F.R. §§2.6, 2.66(b)(1).

/Ellen J.G. Perkins/
Ellen J.G. Perkins
Examining Attorney
U.S. Patent & Trademark Office
Law Office 110
571 272-9372
Ellen.Perkins@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the

response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

**MCARTHUR OPP. 102**

**Print: Nov 24, 2015**                    **85726058**

**DESIGN MARK**

**Serial Number**
85726058

**Status**
FIFTH EXTENSION - GRANTED

**Word Mark**
THRIVE

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
THRIVE NATURAL CARE, INC. CORPORATION DELAWARE 42 DARRELL PLACE SAN
FRANCISCO CALIFORNIA 94133

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Personal care products for cosmetic use, namely, hair shampoos and
conditioners, hair styling preparations; body and hand washes, soaps
and gels; non-medicated skin care preparations, namely, body lotions;
cosmetic sun care preparations and sunscreens; lip creams and balms;
antiperspirants and deodorants for personal use; shaving creams and
gels; non-medicated baby care products, namely, baby lotions, creams,
body cleansers, shampoos, gels and washes, diaper rash creams and
ointments.

**Filing Date**
2012/09/11

**Examining Attorney**
AGOSTO, GISELLE

**Attorney of Record**
John W. Crittenden

**-1-**

MCARTHUR OPP. 103

# THRIVE

MCARTHUR OPP. 104

**Print: Nov 24, 2015**                    **85980517**

**DESIGN MARK**

**Serial Number**
85980517

**Status**
REGISTERED

**Word Mark**
THRIVE

**Standard Character Mark**
Yes

**Registration Number**
4467942

**Date Registered**
2014/01/14

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
THRIVE NATURAL CARE, INC. CORPORATION DELAWARE 42 DARRELL PLACE SAN
FRANCISCO CALIFORNIA 94133

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Non-medicated skin care preparations, namely, facial lotions,
cleansers and creams, creams and oils for cosmetic use, skin
moisturizers; pre-shaving preparations; after shave lotions and
creams.  First Use: 2013/09/05.  First Use In Commerce: 2013/09/05.

**Filing Date**
2012/09/11

**Examining Attorney**
AGOSTO, GISELLE

**Attorney of Record**
John W. Crittenden

-1-

MCARTHUR OPP. 105

# THRIVE

MCARTHUR OPP. 106

| | |
|---|---|
| **To:** | Thrive Causemetics, Inc. (LorraineL.docketing@SeedIP.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 86721790 - THRIVE CAUSEMETICS - 900234.201 |
| **Sent:** | 11/30/2015 3:27:12 PM |
| **Sent As:** | ECOM110@USPTO.GOV |
| **Attachments:** | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## IMPORTANT NOTICE REGARDING YOUR
## U.S. TRADEMARK APPLICATION

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
ON **11/30/2015** FOR U.S. APPLICATION SERIAL NO. 86721790

Please follow the instructions below:

**(1)  TO READ THE LETTER:**  Click on this link or go to http://tsdr.uspto.gov, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2)  TIMELY RESPONSE IS REQUIRED:**  Please carefully review the Office action to determine (1) how to respond, and (2) the applicable response time period.  Your response deadline will be calculated from **11/30/2015** (*or sooner if specified in the Office action*).  For information regarding response time periods, see http://www.uspto.gov/trademarks/process/status/responsetime.jsp.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions.  Instead, the USPTO recommends that you respond online using the Trademark Electronic Application System (TEAS) response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.

**(3)  QUESTIONS:**  For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney.  For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## WARNING

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.**  For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp**.**

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:**  Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations.  These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document.  Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation.  All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov."  For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

**MCARTHUR OPP. 107**

# **Exhibit E**

MCARTHUR OPP. 108

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 07/31/2017)

# Response to Office Action

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 86721790 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 110 |
| **MARK SECTION** | |
| MARK | http://tmng-al.uspto.gov/resting2/api/img/86721790/large |
| LITERAL ELEMENT | THRIVE CAUSEMETICS |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **ARGUMENT(S)** | |
| Please see the actual argument text attached within the Evidence section. | |
| **EVIDENCE SECTION** | |
| EVIDENCE FILE NAME(S) | |
| ORIGINAL PDF FILE | evi_2-713739202-20160527181621868995_._ive_Causemetics_Response_to_Office_Action_-_Final_05.27.2016.pdf |
| CONVERTED PDF FILE(S) (18 pages) | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0002.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0003.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0004.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0005.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0006.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0007.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0008.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0009.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0010.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0011.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0012.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0013.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0014.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0015.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0016.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0017.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0018.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\867\217\86721790\xml5\ROA0019.JPG |
| **DESCRIPTION OF EVIDENCE FILE** | Argument and evidence in the form of records from the USPTO database and images of Applicant's website. |

## NEW ATTORNEY SECTION

| | |
|---|---|
| **NAME** | Sean M. McChesney |
| **FIRM NAME** | Focal PLLC |
| **OTHER APPOINTED ATTORNEY** | Joe Skocilich; Venkat Balasubramani |
| **STREET** | 900 1st Avenue S., Suite 203 |
| **CITY** | Seattle |
| **STATE** | Washington |
| **ZIP/POSTAL CODE** | 98134 |
| **COUNTRY** | United States |
| **PHONE** | 2066173040 |
| **FAX** | 2062603966 |
| **EMAIL** | sean@focallaw.com |
| **AUTHORIZED EMAIL COMMUNICATION** | Yes |

## NEW CORRESPONDENCE SECTION

| | |
|---|---|
| **NAME** | Sean M. McChesney |
| **FIRM NAME** | Focal PLLC |
| **STREET** | 900 1st Avenue S., Suite 203 |
| **CITY** | Seattle |
| **STATE** | Washington |
| **ZIP/POSTAL CODE** | 98134 |
| **COUNTRY** | United States |
| **PHONE** | 2066173040 |
| **FAX** | 2062603966 |
| **EMAIL** | sean@focallaw.com;trademark@focallaw.com |
| **AUTHORIZED EMAIL COMMUNICATION** | Yes |

## SIGNATURE SECTION

| | |
|---|---|
| **RESPONSE SIGNATURE** | /smm/ |
| **SIGNATORY'S NAME** | Sean M McChesney |
| **SIGNATORY'S POSITION** | Attorney of record, Washington bar member |
| **SIGNATORY'S PHONE NUMBER** | 2066173040 |
| **DATE SIGNED** | 05/27/2016 |
| **AUTHORIZED SIGNATORY** | YES |

## FILING INFORMATION SECTION

| | |
|---|---|
| **SUBMIT DATE** | Fri May 27 18:40:32 EDT 2016 |

| | |
|---|---|
| **TEAS STAMP** | USPTO/ROA-XX.XX.XX.XXX-20 160527184032546643-867217 90-550acf3e3a29955164d35c ce5f0e92f4c6c4b42ae25bacc be494b4655408ccefc12-N/A-N/A-20160527181621868995 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 07/31/2017)

## Response to Office Action

## To the Commissioner for Trademarks:

Application serial no. **86721790** THRIVE CAUSEMETICS(Standard Characters, see http://tmng-al.uspto.gov/resting2/api/img/86721790/large) has been amended as follows:

**ARGUMENT(S)**
**In response to the substantive refusal(s), please note the following:**

Please see the actual argument text attached within the Evidence section.

**EVIDENCE**
Evidence in the nature of Argument and evidence in the form of records from the USPTO database and images of Applicant's website. has been attached.
**Original PDF file:**
evi_2-713739202-20160527181621868995_._ive_Causemetics_Response_to_Office_Action_-_Final_05.27.2016.pdf
**Converted PDF file(s)** ( 18 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18

**ATTORNEY ADDRESS**
Applicant proposes to amend the following:
**Proposed:**
Sean M. McChesney of Focal PLLC, having an address of
900 1st Avenue S., Suite 203 Seattle, Washington 98134
United States
sean@focallaw.com
2066173040
2062603966

The Other Appointed Attorney(s): Joe Skocilich; Venkat Balasubramani.

**CORRESPONDENCE ADDRESS CHANGE**
Applicant proposes to amend the following:
**Proposed:**
Sean M. McChesney of Focal PLLC, having an address of
900 1st Avenue S., Suite 203 Seattle, Washington 98134
United States
sean@focallaw.com;trademark@focallaw.com
2066173040
2062603966

**SIGNATURE(S)**
**Response Signature**
Signature: /smm/    Date: 05/27/2016
Signatory's Name: Sean M McChesney
Signatory's Position: Attorney of record, Washington bar member

Signatory's Phone Number: 2066173040

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the owner/holder in this matter: (1) the owner/holder has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the owner/holder has filed a power of attorney appointing him/her in this matter; or (4) the owner's/holder's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.

Mailing Address:   Sean M. McChesney
  Focal PLLC
  900 1st Avenue S., Suite 203
  Seattle, Washington 98134

Serial Number: 86721790
Internet Transmission Date: Fri May 27 18:40:32 EDT 2016
TEAS Stamp: USPTO/ROA-XX.XX.XX.XXX-20160527184032546
643-86721790-550acf3e3a29955164d35cce5f0
e92f4c6c4b42ae25baccbe494b4655408ccefc12
-N/A-N/A-20160527181621868995

**MCARTHUR OPP. 112**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| **MARK:** | THRIVE CAUSEMETICS |
| **SERIAL NO:** | 86721790 |
| **FILED:** | August 11, 2015 |
| **APPLICANT:** | Thrive Causemetics, Inc. |
| **EXAMINING ATTORNEY:** | Ellen J. Perkins |
| **TRADEMARK LAW OFFICE:** | 110 |

<u>**RESPONSE TO OFFICE ACTION**</u>

Thrive Causemetics, Inc. ("Applicant") responds to the Office Action dated November 30, 2015, in connection with application Serial Number 86721790, as follows:

**I.    SECTION 2D REFUSAL**

In the Office Action, the examining attorney issued a Section 2(d) refusal of Applicant's mark THRIVE CAUSEMETICS, citing a likelihood of confusion with the marks in U.S. Registration No. 2938220, CAUSE-METICS, and U.S. Registration No. 4467942, THRIVE. Applicant respectfully submits that confusion is not likely because the additional words in Applicant's mark, which were not properly considered by the examining attorney, result in material differences in appearance, sound, connotation and commercial impression. There are also differences in the goods provided by Applicant, and when considered together with the differences between Applicant's mark and the cited marks, a finding of likelihood of confusion is unfounded.

**A.    The Office Action Fails to Properly Analyze Whether Applicant's Mark is Similar to the Cited Registered Marks.**

The examining attorney correctly cites *In re E.I. du Pont de Nemours & Co.* for the controlling rule in determining whether two marks are confusingly similar, and indicates that the

-1-

**MCARTHUR OPP. 113**

most relevant *du Pont* factors are the similarity or dissimilarity of the marks, similarity or dissimilarity of the goods and/or services, and similarity or dissimilarity of the channels of trade. However, the office action fails to apply the first *du Pont* factor, the similarity or dissimilarity of the marks. In the section of the office action titled "Comparison of the Marks," no actual comparison of Applicant's mark to the registered marks is made. The office action only states in conclusory fashion that "applicant's mark is similar to the marks in the cited U.S. Registrations," and that "the marks are identical in part." Absent from this section is any actual discussion or analysis regarding the similarities or dissimilarities of the marks in appearance, sound, connotation and commercial impression.

Under *du Pont*, when comparing two marks, one must examine the similarity or dissimilarity of the marks *in their entireties* as to appearance, sound, connotation and commercial impression. *In re E. I. Du Pont de Nemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973) (emphasis added). In simply concluding that Applicant's mark is "identical in part" to the registered marks, the office action fails to examine Applicant's mark in its entirety, in each case focusing only on that portion of Applicant's mark which is similar to the cited mark, and ignoring that portion of Applicant's mark which is dissimilar to the cited mark.

Although not stated in the office action, the examining attorney appears to have taken the position that, with respect to the cited THRIVE registration, the "THRIVE" portion of Applicant's THRIVE CAUSEMETICS mark is dominant, but with respect to the cited CAUSE-METICS registration, the "CAUSEMETICS" portion is the dominant element. But, as discussed in more detail below, there is no justification for doing so. THRIVE CAUSEMETICS is a compound, unitary word mark, consisting of two distinct terms which both contribute to create the overall commercial impression of Applicant's mark.

-2-

MCARTHUR OPP. 114

1.   <u>The Office Action Fails to Address Dissimilarities Between Applicant's THRIVE CAUSEMETICS Mark and the CAUSE-METICS Mark.</u>

Applicant's mark contains the word "THRIVE," a word that is absent from the cited CAUSE-METICS mark. Yet, in coming to the conclusion that Applicant's THRIVE CAUSEMETICS mark is similar to the CAUSE-METICS mark, the examining attorney fails to address the "THRIVE" portion of Applicant's mark. There can be no argument that the additional word "THRIVE" necessarily causes Applicant's mark to be different from the CAUSE-METICS mark in appearance, sound, connotation and commercial impression to some degree. But the office action contains no discussion at all of the "THRIVE" portion of Applicant's mark. The failure to consider the "THRIVE" portion of Applicant's mark when analyzing the similarity or dissimilarity of the marks violates the anti-dissection rule and is clearly erroneous:

> We agree with Packard that the Board improperly dissected the marks. In this case, the Board only considered the similar commercial impression of part of the marks - the shared word PACKARD - before concluding that the marks were similar …. However, the Board failed to make any findings at all as to the appearance or sound of the marks, and without any explanation, considered only the PACKARD portion of HEWLETT-PACKARD.

*Packard Press, Inc. v. Hewlett-Packard Co.,* 227 F.3d 1352, 1357-58 (Fed. Cir. 2000); *see also*

*In re Hearst,* 982 F.2d 493, 494 (Fed. Cir. 1992) (reversing TTAB's finding of likelihood of confusion where only "varga" portion of the marks was similar, because "[b]y stressing the portion 'varga' and diminishing the portion 'girl', the Board inappropriately changed the mark");

*In re Nat'l Data Corp.,* 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985) ("likelihood of confusion cannot be predicated on dissection of a mark, that is, on only part of a mark").

In determining whether two marks are similar, it may be appropriate in some instances to give more or less weight to one particular word in a mark, "*provided* the ultimate conclusion

-3-

**MCARTHUR OPP. 115**

rests on consideration of the marks *in their entireties.*" *In re Nat'l Data Corp.*, 753 F.2d at 1058 (emphasis added). Here, however, the office action articulates no reason for giving less weight to the word "THRIVE" in Applicant's mark, or more weight to the word "CAUSEMETICS." Indeed, the office action does not even address the word "THRIVE" in coming to the conclusion that Applicant's THRIVE CAUSEMETICS mark is confusingly similar to the THRIVE mark, and thereby gives "THRIVE" no weight at all. This is improper, as even in instances where a portion of a mark is generic, descriptive or has been disclaimed, that portion must be considered and afforded *some* weight. *See Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 851 (Fed. Cir. 1992) (Board erred by giving no weight to generic term); *see also Shen Mfg. Co. v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1243 (Fed. Cir. 2004) ("The disclaimed elements of a mark, however, are relevant to the assessment of similarity. This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases have been disclaimed.").

Moreover, even if the examining attorney were to have considered the word "THRIVE" in Applicant's mark, there would be no reason for giving less weight to "THRIVE." While generic or descriptive terms may properly be given less weight, *In re Nat'l Data Corp.*, 753 F.2d at 1058, the word "THRIVE" is neither generic nor descriptive as used in connection with the goods contained in Applicant's application, namely, false eyelashes, adhesives for affixing false eyelashes, eyeliner and eyebrow cosmetics.

The office action states that "adding a term to a registered mark generally does not obviate the similarity between the compared marks . . . nor does it overcome a likelihood of confusion under Section 2(d)." But this is an incorrect statement of the law. Rather, as set forth in TMEP § 1207.01(b)(iii), likelihood of confusion "is not *necessarily* avoided" by the addition

-4-

**MCARTHUR OPP. 116**

of another term, but an additional term "may be sufficient to avoid a likelihood of confusion if . . . the marks in their entireties convey significantly different commercial impressions." As discussed above, the examining attorney has failed to consider Applicant's mark in its entirety. Additionally, the cases cited in the office action addressing the significance of an additional term in a mark are inapposite, as discussed below.

The office action cites to *Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 188 USPQ 105 (C.C.P.A. 1975), in which the C.C.P.A. found that the additional word "LANCER" in the mark BENGAL LANCER and design did not overcome a likelihood of confusion with the mark BENGAL. But as the C.C.P.A. stated, the addition of the word "LANCER" and a design did not significantly change the commercial impression of the mark *because* both BENGAL and BENGAL LANCER with design related to, and reinforced the connection of the mark with, the country of India:

> the relationship between BENGAL LANCER and BENGAL is close. Appellant's description of the book forming the basis of its separate-meaning argument shows that a significant portion deals with India. Moreover, the soldier in the design portion of the mark, with his turban and beard, is clearly an Indian Sikh.

*Coca-Cola Bottling Co.*, 526 F.2d at 557-58, 188 USPQ at 106. Here, however, the additional word "THRIVE" in Applicant's mark does not act in a similar way to merely reinforce the significance of the "CAUSEMETICS" portion of the mark. Rather, it is an integral part of a unitary mark, and contributes to the commercial impression of healthy growth and progress as related to the goods which are provided under the mark.

The office action also cites to *In re El Torito Rests., Inc.*, 9 USPQ2d 2002 (TTAB 1988), in which the TTAB found that the additional word "COMBOS" in the mark MACHO COMBOS did not overcome a likelihood of confusion with the mark MACHO. However, that case is also distinguishable. There, the TTAB determined that there was no resulting difference in

-5-

commercial impression because the added word "COMBO" was merely a descriptive term: "The addition of the descriptive word "COMBO" does not alter the meaning of the word "MACHO", nor does it change the connotation of the mark from that of "MACHO" alone." *Id*. at 2004. The TTAB's decision also rested on a determination that the word "MACHO" was the dominant portion of both marks. *Id*. However, here, the additional word "THRIVE" is not a descriptive term, and as discussed above, there is no reason to accord less weight to the word "THRIVE" in Applicant's mark. Consequently, *In re El Torito* is also inapposite here.

2. <u>The Office Action Fails to Address Dissimilarities Between Applicant's THRIVE CAUSEMETICS Mark and the THRIVE Mark.</u>

Just as the office action failed to consider Applicant's mark in its entirety when determining whether Applicant's mark is similar to the CAUSE-METICS mark, the office action failed to consider Applicant's mark in its entirety in concluding that Applicant's mark is similar to the THRIVE mark. The office action contains no discussion of what effect the additional word CAUSEMETICS has on the appearance, sound, connotation or commercial impression when compared to the THRIVE mark. Rather, just as above, the examining attorney merely states that "applicant's mark is similar to the marks in the cited U.S. Registrations," and that "the marks are identical in part." Again, the additional word CAUSEMETICS in Applicant's mark necessarily results in differences in the appearance, sound, connotation and commercial impression between Applicant's mark and the THRIVE mark, and those differences are given no consideration in the office action.

Nor does the office action provide any reason why the term "CAUSEMETICS" should be given less weight than the word "THRIVE" when making a comparison of the two marks. And, again, even if the examining attorney were to examine whether the term "CAUSEMETICS" should be given less weight, there is no reason to do so. The term "CAUSEMETICS" is not

-6-

generic or descriptive. Rather, it is a distinct, coined term.

The cases cited in the office action, for the same reasons as discussed above, also do not support a finding of likelihood of confusion.

The conclusory statements in the office action are not enough to sustain the examining attorney's burden to demonstrate that Applicant's THRIVE CAUSEMETICS mark is confusingly similar to the registered THRIVE mark. When the respective marks are considered in their entireties, with due consideration to the differences in the marks, namely the additional word in Applicant's mark, a finding of likelihood of confusion is unfounded.

**B.     The Goods in Applicant's Application Are Different Than Those in the THRIVE Registration.**

While the examining attorney argues that Applicant's goods and those in the THRIVE registration are related, the relatedness of goods must be considered together with the similarity of the marks when making a determination of likelihood of confusion. The more similar the marks at issue are, the less similar the goods or services need to be to support a finding of likelihood of confusion. *In re Shell Oil Co.*, 992 F.2d 1204, 1207, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993); *Gen. Mills, Inc. v. Fage Dairy Processing Indus. S.A.*, 100 USPQ2d 1584, 1597 (TTAB 2011). If the marks of the respective parties are identical or virtually identical, the relationship between the goods and/or services need not be as close to support a finding of likelihood of confusion as would be required if there were differences between the marks. *Shell Oil*, 992 F.2d at 1207, 26 USPQ2d at 1689; *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202 (TTAB 2009).

Here, it is clear that Applicant's THRIVE CAUSEMETICS mark is neither identical nor virtually identical to the THRIVE mark. Applicant's mark contains an entirely new additional element, which is a distinctive coined term. Therefore, there is no lessened standard with respect

-7-

to the relatedness of the goods. The specific goods in Applicant's application are not identical to those in the THRIVE registration, and the examining attorney does not attempt to argue that they are. Nor are Applicant's goods even in the *same category* as those in the THRIVE registration. The common category of Applicant's goods is cosmetics, while the common category of the goods in the THRIVE registration is skincare and shaving products. Such products are found in different aisles or departments than standard make-up cosmetics, such as eyeliner, and are distinctly different types of consumer goods. Given the dissimilarity in the marks, a higher nexus in the relatedness of the parties' goods is required to support a finding of likelihood of confusion.

Lastly, there is at least one other current trademark registration approved for publication, THRIVE TREE (Serial No. 86701794), which uses the word "THRIVE" in connection within the broad classification of body, skin care and various types of cosmetics. *See* attached <u>Exhibit A</u>. Such use shows that "THRIVE" is commonly used in various market segments to connote a healthy lifestyle and that consumers would look to other indicators to differentiate the marks. Where a common element of a compound word mark with another mark is "weak," confusion is unlikely, particularly where there is no other commonality. *See In re Bed & Breakfast Registry*, 791 F.2d 157, 159, 229 USPQ 818, 819 (Fed. Cir. 1986).

## II.    PRIOR FILED APPLICATION SERIAL NO. 85726058

The examining attorney has stated that action on Applicant's registration will be suspended upon receipt of a response to the office action because of a possible likelihood of confusion between Applicant's mark and the mark in U.S. Application Serial No. 85726058 which has an earlier filing date. U.S. Application Serial No. 85726058 was abandoned on May 16, 2016, due to a failure to file a statement of use or an extension of time. Consequently, U.S. Application Serial No. 85726058 is no longer a proper basis on which to deny registration of

MCARTHUR OPP. 120

Applicant's mark.

## III.   REQUIREMENT TO DISCLAIM "COSMETICS"

### A.   "CAUSEMETICS" Need Not Be Disclaimed Because it is not Merely a Misspelling of the Descriptive Word "COSMETICS."

The office action states that Applicant must submit a disclaimer of the word "COSMETICS" because the word "COSMETICS" is merely descriptive. However, Applicant's mark does not contain the word "COSMETICS." Rather, Applicant's mark contains the word "CAUSEMETICS." The examining attorney's position seems to be that "CAUSEMETICS" is nothing more than a misspelling of "COSMETICS." However, this is not the case.

The word "CAUSEMETICS" (and in particular the "CAUSE" portion of the word) is suggestive of the charitable purpose of Applicant's business. *See* evidence submitted herewith as Exhibit B, consisting of portions of Applicant's website describing the charitable aspect of Applicant's business. In other words, "CAUSEMETICS" would not be perceived by consumers as "just a misspelling of a descriptive or generic word, but as having a dual meaning." *See In re Dean S. Carlson*, 91 USPQ2d 1198, 1201-1202 (TTAB 2009); *In re Grand Metro. Foodservice, Inc.*, 30 USPQ2d 1974, 1975-1976 (TTAB 1994) (finding "MUFFUNS" would be perceived as more than just a misspelling of "MUFFINS," thereby rendering a different commercial impression or connotation).

The issue presented here is nearly identical with that presented in *In re Tea & Sympathy, Inc.*, 88 USPQ2d 1062 (TTAB 2008). In that case, the applicant had applied for registration of the trademark THE FARMACY for "retail store services featuring natural herbs and organic products; and on-line retail store services featuring natural herbs and organic products" (in International Class 35), and "providing integrated health services at retail locations in the nature of dietary and nutritional guidance and providing information about dietary supplements and

-9-

nutrition." The trademark examining attorney refused registration in both classes on the ground that the designation THE FARMACY, when used in connection with applicant's services, was merely descriptive. On appeal to the TTAB, the Board reversed, finding that applicant's mark was more than just an alternate spelling of "the pharmacy":

> We find that the mark THE FARMACY, as used in connection with applicant's services, is more than simply a misspelling of "the pharmacy." Consumers are not likely to perceive that mark as just a misspelling, but rather as a play on the natural or farm-fresh characteristics of applicant's herbs and organic products used for medicinal purposes featured in applicant's services. Thus, the mark conveys a dual meaning, that of the natural aspect of the goods sold by applicant and of a pharmacy. Applicant's mark is inventive and just clever enough, being an obvious play on "the pharmacy" and "farm," so that the meaning or commercial impression of applicant's mark will be more than simply "the pharmacy." Accordingly, applicant's mark is not merely descriptive.

*Id.* at 1062.

Just as in the above case, the term CAUSEMETICS in Applicant's mark conveys a dual meaning. It is both suggestive of Applicant's products and suggestive of the charitable aspect of Applicant's business (i.e., the sale of products "for a cause"). The meaning or commercial impression of the term CAUSEMETICS to consumers is therefore different from that of the word "COSMETICS." As a result, the term "CAUSEMETICS" is not merely descriptive.

**B.     "CAUSEMETICS" Forms Part of a Unitary Mark and Therefore Need Not Be Disclaimed.**

Even if the term "CAUSEMETICS" was merely the functional equivalent of the word "COSMETICS," the term "CAUSEMETICS" forms part of a composite mark, which is unitary, and therefore "CAUSEMETICS" need not be disclaimed.

A composite mark is one which is comprised of, among other things, multiple words. TMEP §1213.02. Where a composite mark is unitary, an individual component of the mark that would otherwise be unregistrable need not be disclaimed. *See* TMEP §§1213.05–1213.05(g)(iv). A mark or portion of a mark is considered "unitary" when it creates a commercial impression

-10-

separate and apart from any unregistrable component. The presence of a verb in a mark is indicative of a unitary mark. TMEP §1213.05(b)(ii)(A).

Here, Applicant's mark is comprised of two terms, "THRIVE" and "CAUSEMETICS." Consequently, it is a composite mark. The word "THRIVE" is a verb, which forms a phrase when combined with the object of the phrase being "CAUSEMETICS." The subject of this unitary phrase is the consumer who is given the commercial impression that the Applicant's products are associated with healthy growth and progress. This indicates that Applicant's mark is a unitary mark. Consequently, the "CAUSEMETICS" term in Applicant's mark need not be disclaimed.

## IV.   CONCLUSION

Having addressed each of the issues raised in the office action, and for the reasons discussed above, Applicant respectfully requests that the refusal to register Applicant's THRIVE CAUSEMETICS mark be withdrawn, and that the mark be allowed to proceed to registration.

Dated: May 27, 2016.                    Respectfully Submitted,

                                        Focal PLLC

                                        By: *s/ Sean M. McChesney*
                                        Sean M. McChesney
                                        Joseph Skocilich
                                        900 1st Avenue S., Suite 203
                                        Seattle, WA 98134
                                        Email: sean@focallaw.com
                                        Phone: 206.617.3040
                                        Fax: 206.260.3966

-11-

# EXHIBIT A

MCARTHUR OPP. 124



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri May 27 03:21:44 EDT 2016*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At: [        ] OR  Jump  to record: [        ]   **Record 1 out of 2**

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# THRIVE TREE

**Word Mark**  THRIVE TREE

**Goods and Services**  IC 003. US 001 004 006 050 051 052. G & S: Essential oils; Beauty and skin care topical non-medicated treatment creams; Anti-aging solutions in the form of creams and moisturizers; cosmetic non-medicated lotions; skin care cream preparations; lotions, gels, and oils for skin care; body and foot scrubs

IC 005. US 006 018 044 046 051 052. G & S: Dietary supplements; Food supplements; Nutritional supplements; Acne treatment preparations

**Standard Characters Claimed**

**Mark Drawing Code**  (4) STANDARD CHARACTER MARK

**Serial Number**  86701794

**Filing Date**  July 22, 2015

**Current Basis**  1B

**Original Filing Basis**  1B

**Published for Opposition**  March 1, 2016

**Owner**  (APPLICANT) Thrive Tree L.L.C. LIMITED LIABILITY COMPANY WASHINGTON Suite I 1242 State Ave. Marysville WASHINGTON 98270

**Type of Mark**  TRADEMARK

MCARTHUR OPP. 125

5/27/2016                                   Trademark Electronic Search System (TESS)

**Register**     PRINCIPAL

**Live/Dead**    LIVE
**Indicator**

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
|---|---|---|---|---|---|---|---|---|---|---|
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC | | | | | | | |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**MCARTHUR OPP. 126**

# EXHIBIT B

MCARTHUR OPP. 127







# Exhibit F

MCARTHUR OPP. 131

| To: | Thrive Causemetics, Inc. (sean@focallaw.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 86721790 - THRIVE CAUSEMETICS - N/A |
| Sent: | 6/22/2016 7:47:14 AM |
| Sent As: | ECOM110@USPTO.GOV |
| Attachments: | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION SERIAL NO.** 86721790

**MARK:** THRIVE CAUSEMETICS

**CORRESPONDENT ADDRESS:**
    Sean M. McChesney

    Focal PLLC

    900 1st Avenue S., Suite 203

    Seattle WA 98134

# *86721790*

**CLICK HERE TO RESPOND TO THIS
LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp


VIEW YOUR APPLICATION FILE

**APPLICANT:** Thrive Causemetics, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET
NO:**
    N/A

**CORRESPONDENT E-MAIL ADDRESS:**
    sean@focallaw.com

## FINAL OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S
COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 6/22/2016**

**THIS IS A FINAL ACTION.**

 **TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL
REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:** Applicants who filed their application online
using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office
actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3)
agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application.  *See* 37 C.F.R. §§2.22(b), 2.23(b);
TMEP §§819, 820.  TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $50 per
international class of goods and/or services.  37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04.  However, in certain situations,

**MCARTHUR OPP. 132**

TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone without incurring this additional fee.

This Office action is in response to applicant's communication filed on May 27, 2016.   In the foregoing communication the applicant argued against the refusal to register and the requirement for a disclaimer. Based on a review of the Office records, the refusal with respect to U.S Registration No. 4467942 is withdrawn. Additionally, the requirement for a disclaimer is withdrawn.  The examining attorney remains of the opinion that the applicant's mark, when used in connection with the goods offered is confusingly similar to the mark in U.S. Registration No. 2938220.  Accordingly, the refusal under Section 2(d) is hereby maintained and made **FINAL.**

Although, the examining attorney has carefully reviewed the applicant's response, she is not persuaded by the applicant's arguments for the following reasons.

## Refusal Section 2(d) – Likelihood of Confusion

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 2938220.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the registration attached to the prior Office Action.

The applicant has applied to register the mark THRIVE CAUSEMETICS (standard characters) for "False eyelashes; adhesives for affixing false eyelashes; eyeliner; and eyebrow cosmetics."

The mark in U.S. Registration No. 2938220 is CAUSE-METICS (standard characters) for "Cosmetics; Cosmetics, namely foundation and toners; blush; eye make-up; lip liners; lipsticks; nail polishers; creams, namely eye cream, lip cream and nail cream; skin lotions and suntan lotions; skin cleaners, deodorant soaps and skin soaps; perfume."

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant and registrant.  *See* 15 U.S.C. §1052(d). A determination of likelihood of confusion under Section 2(d) is made on a case-by case basis and the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) aid in this determination. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011) (citing *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed. Cir. 2000)).  Not all the *du Pont* factors, however, are necessarily relevant or of equal weight, and any one of the factors may control in a given case, depending upon the evidence of record. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d at 1355, 98 USPQ2d at 1260; *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont de Nemours & Co.*, 476 F.2d at 1361-62, 177 USPQ at 567.

In this case, the following factors are the most relevant:  similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services. *See In re Viterra Inc.*, 671 F.3d 1358, 1361-62, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Dakin's Miniatures Inc.* , 59 USPQ2d 1593, 1595-96 (TTAB 1999); TMEP §§1207.01 *et seq.*

## Comparison of the Marks

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F. 3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."  *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014) (citing *In re 1st USA Realty Prof'ls , Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007)); *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988)); TMEP §1207.01(b).

The applicant argues that the marks are distinct because the term THRIVE distinguishes the applicant's mark from the mark in the cited U.S. Registration.  The examining attorney does not find this argument persuasive.

Both marks contain the term CAUSEMETICS.  Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom.  Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

**MCARTHUR OPP. 133**

The examining attorney notes that the registered mark contains a hyphen.  However, small changes in words (e.g. hyphenation or spacing changes, pluralization, phonetic substitution) are insufficient alone to distinguish marks.  *Thymo Borine Laboratory v. Winthrop Chemical Company, Inc.,* 69 USPQ 512 (CCPA 1946); *Steinway & Sons v. Robert Demars & Friends, et al.,* 210 USPQ 954 (C.D. Cal. 1981).

The examining attorney must resolve any doubt as to the issue of likelihood of confusion in favor of the registrant and against the applicant who has a legal duty to select a mark which is totally dissimilar to trademarks already being used.  *Burroughs Wellcome Co. v. Warner-Lambert Co.,* 203 USPQ 191 (TTAB 1979).

### Comparison of the Goods and/or Services

The goods and/or services of the parties need not be identical or even competitive to find a likelihood of confusion.  *See On-line Careline Inc. v. Am. Online Inc.,* 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton,* 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."); TMEP §1207.01(a)(i).

The respective goods and/or services need only be "related in some manner and/or if the circumstances surrounding their marketing [be] such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source."  *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler,* 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

The applicant's goods are "False eyelashes; adhesives for affixing false eyelashes; eyeliner; and eyebrow cosmetics."

### U.S. Registration No. 2938220

The goods in U.S. Registration No. 2938220 are "Cosmetics; Cosmetics, namely foundation and toners; blush; eye make-up; lip liners; lipsticks; nail polishers; creams, namely eye cream, lip cream and nail cream; skin lotions and suntan lotions; skin cleaners, deodorant soaps and skin soaps; perfume."

Here, the applicant's goods are highly similar to the registrant's goods.    With respect to applicant's and registrant's goods and/or services, the question of likelihood of confusion is determined based on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use.  *See Stone Lion Capital Partners, LP v. Lion Capital LLP,* 746 F.3d 1317, 1323, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting *Octocom Sys. Inc. v. Hous. Computers Servs. Inc.,* 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990)).

Absent restrictions in an application and/or registration, the identified goods and/or services are "presumed to travel in the same channels of trade to the same class of purchasers."  *In re Viterra Inc.,* 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.,* 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)).  Additionally, unrestricted and broad identifications are presumed to encompass all goods and/or services of the type described.  *See In re Jump Designs, LLC,* 80 USPQ2d 1370, 1374 (TTAB 2006) (citing *In re Elbaum,* 211 USPQ 639, 640 (TTAB 1981)); *In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992).

In this case, the identification set forth in the application and registration(s) has no restrictions as to nature, type, channels of trade, or classes of purchasers.  Therefore, it is presumed that these goods travel in all normal channels of trade, and are available to the same class of purchasers.  Further, the registration uses broad wording to describe the goods and this wording is presumed to encompass all goods of the type described, including those in applicant's more narrow identification.   For example, the registrant's cosmetics and eye makeup could include eyeliner and eyebrow cosmetics.

For the foregoing reasons consumers and potential consumers would be likely to believe that applicant's goods and/or services emanate from the same source as those provided by the registrant. Accordingly, registration is refused under Section 2(d) of the Act.

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

### Response

Applicant must respond within six months of the date of issuance of this final Office action or the application will be abandoned.  15 U.S.C. §1062(b); 37 C.F.R. §2.65(a).  Applicant may respond by providing one or both of the following:

    (1)       A response that fully satisfies all outstanding requirements and/or resolves all outstanding refusals.

    (2)       An appeal to the Trademark Trial and Appeal Board, with the appeal fee of $100 per class.

37 C.F.R. §2.63(b)(1)-(2); TMEP §714.04; *see* 37 C.F.R. §2.6(a)(18); TBMP ch. 1200.

In certain rare circumstances, an applicant may respond by filing a petition to the Director pursuant to 37 C.F.R. §2.63(b)(2) to review procedural issues.  TMEP §714.04; *see* 37 C.F.R. §2.146(b); TBMP §1201.05; TMEP §1704 (explaining petitionable matters).  The petition fee is $100.  37 C.F.R. §2.6(a)(15).

/Ellen J.G. Perkins/

Ellen J.G. Perkins

Examining Attorney, Law Office 110

U.S. Patent & Trademark Office

571 272-9372

Ellen.Perkins@uspto.gov

**TO RESPOND TO THIS LETTER:**  Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp.  Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application.  For *technical* assistance with online forms, e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned trademark examining attorney.  **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

**MCARTHUR OPP. 135**

| | |
|---|---|
| **To:** | Thrive Causemetics, Inc. (sean@focallaw.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 86721790 - THRIVE CAUSEMETICS - N/A |
| **Sent:** | 6/22/2016 7:47:16 AM |
| **Sent As:** | ECOM110@USPTO.GOV |
| **Attachments:** | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## <u>IMPORTANT NOTICE REGARDING YOUR</u><br><u>U.S. TRADEMARK APPLICATION</u>

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED

ON **6/22/2016** FOR U.S. APPLICATION SERIAL NO. 86721790

Please follow the instructions below:

**(1)  TO READ THE LETTER:**  Click on this link or go to http://tsdr.uspto.gov, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2)  TIMELY RESPONSE IS REQUIRED:**  Please carefully review the Office action to determine (1) how to respond, and (2) the applicable response time period.  Your response deadline will be calculated from **6/22/2016** (*or sooner if specified in the Office action*).  For information regarding response time periods, see http://www.uspto.gov/trademarks/process/status/responsetime.jsp.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions.  Instead, the USPTO recommends that you respond online using the Trademark Electronic Application System (TEAS) response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.

**(3)  QUESTIONS:**  For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney.  For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## WARNING

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.**  For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp.

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations.  These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document.  Many solicitations require that you pay

**MCARTHUR OPP. 136**

"fees."


Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation.  All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office"  in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov."   For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

# **Exhibit G**

**MCARTHUR OPP. 138**

| **To:** | Thrive Causemetics, Inc. (pctrademarks@perkinscoie.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87895130 - THRIVE CAUSEMETICS - 121715-4000 |
| **Sent:** | 8/28/2018 6:43:21 PM |
| **Sent As:** | ECOM110@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

#### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION
SERIAL NO.**  87895130

**MARK:** THRIVE
CAUSEMETICS

# *87895130*

**CORRESPONDENT
ADDRESS:**
    PATCHEN M.
HAGGERTY

    PERKINS COIE LLP

    1201 THIRD AVENUE,
SUITE 4900

    SEATTLE, WA 98101

**CLICK HERE TO RESPOND TO THIS
LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**MCARTHUR OPP. 139**

Causemetics, Inc.

**CORRESPONDENT'S
REFERENCE/DOCKET
NO:**

   121715-4000

**CORRESPONDENT E-
MAIL ADDRESS:**

pctrademarks@perkinscoie.com


# FIRST OFFICE ACTION


# STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.  A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.


**ISSUE/MAILING DATE: 8/28/2018**


**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:**  Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application.  *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820.  TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods and/or services.  37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04.  However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.


The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

SUMMARY OF ISSUES:

- Refusal Section 2(d) – Likelihood of Confusion
- *ADVISORY – Prior Filed Application*
- Disclaimer


**Refusal Section 2(d) – Likelihood of Confusion**

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 4467942.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the attached registration.


The applicant has applied to register the mark THRIVE CAUSEMETICS (standard characters) for "Cosmetics; makeup preparations; lip gloss; lipstick; eye shadow; mascara; eye liner; lip liner; eye brow makeup; eye brightening liner; false eyelashes; adhesives for affixing false eyelashes"; "Make-up brushes"; "Online retail store services featuring cosmetics, make-up, cosmetic bags, make-up brush holders and make-up brushes".


The mark in U.S. Registration No. 4467942 is THRIVE (standard characters) for "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams."


MCARTHUR OPP. 140

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely a consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant and registrant(s).  *See* 15 U.S.C. §1052(d). Determining likelihood of confusion is made on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973).  *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).  However, "[n]ot all of the [ *du Pont*] factors are relevant to every case, and only factors of significance to the particular mark need be considered."  *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1366, 101 USPQ2d 1713, 1719 (Fed. Cir. 2012) (quoting *In re Mighty Leaf Tea*, 601. F.3d 1342, 1346, 94 USPQ2d 1257, 1259 (Fed. Cir 2010)).  The USPTO may focus its analysis "on dispositive factors, such as similarity of the marks and relatedness of the goods [and/or services]."  *In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *see* TMEP §1207.01.


### Comparison of the Marks

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."  *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014) (citing *In re 1st USA Realty Prof'ls, Inc.* , 84 USPQ2d 1581, 1586 (TTAB 2007)); *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988)); TMEP §1207.01(b).


Here, the mark is highly similar to the mark in the cited U.S. Registration.  The applicant has merely added the term CAUSEMETICS to the registered mark.  Adding a term to a registered mark generally does not obviate the similarity between the compared marks, as in the present case, nor does it overcome a likelihood of confusion under Section 2(d).  *See Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 557, 188 USPQ 105, 106 (C.C.P.A. 1975) (finding BENGAL and BENGAL LANCER and design confusingly similar); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1269 (TTAB 2009) (finding TITAN and VANTAGE TITAN confusingly similar); *In re El Torito Rests., Inc.*, 9 USPQ2d 2002, 2004 (TTAB 1988) (finding MACHO and MACHO COMBOS confusingly similar); TMEP §1207.01(b)(iii).  In the present case, the marks are identical in part.


The examining attorney must resolve any doubt as to the issue of likelihood of confusion in favor of the registrant and against the applicant who has a legal duty to select a mark which is totally dissimilar to trademarks already being used.  *Burroughs Wellcome Co. v. Warner-Lambert Co.*, 203 USPQ 191 (TTAB 1979).


### Comparison of the Goods and/or Services

The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion.  *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i).  They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source."  *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).


The applicant's goods and/or services are "Cosmetics; makeup preparations; lip gloss; lipstick; eye shadow; mascara; eye liner; lip liner; eye brow makeup; eye brightening liner; false eyelashes; adhesives for affixing false eyelashes"; "Make-up brushes"; "Online retail store services featuring cosmetics, make-up, cosmetic bags, make-up brush holders and make-up brushes".


The goods in U.S. Registration No. 4467942 are "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams."


The trademark examining attorney has attached evidence from the USPTO's  X-Search database consisting of a number of third-party marks registered for use in connection with the same or similar goods and/or services as those of both applicant and registrant in this case.  This evidence shows that the goods and/or services listed therein, namely lotions, creams and after shave lotions, and cosmetics, brushes and retail store services featuring these goods, are of a kind that may emanate from a single source under a single mark.  *See In re Aquamar, Inc.*, 115 USPQ2d 1122, 1126 n.5 (TTAB 2015) (citing *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988)); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); TMEP §1207.01(d)(iii).


For the foregoing reasons consumers and potential consumers would be likely to believe that applicant's goods and/or services emanate from the same source as those provided by the registrant. Accordingly, registration is refused under Section 2(d) of the Act.


**MCARTHUR OPP. 141**

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.


**Prior Filed Application**

The filing date of pending U.S. Application Serial No. 87021374 precedes applicant's filing date.  See attached referenced application.  If the mark in the referenced application registers, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion between the two marks.  *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.*  Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced application.


In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the mark in the referenced application.  Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.


Action on this application will be suspended pending the dispositions of Application Serial No. 87021374, upon receipt of applicant's response resolving the refusal(s) to register based on a likelihood of confusion.  **The applicant must respond to the refusal to register based on a likelihood of confusion discussed previously herein within 6 months of the date of this Office Action to avoid ABANDONMENT.**


**Disclaimer**

Applicant must disclaim the wording " COSMETICS"  in the mark because it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's  goods and/or services, and thus is an unregistrable component of the mark.  *See* 15 U.S.C. §§1052(e)(1), 1056(a); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012) (quoting *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004)); TMEP §§1213, 1213.03(a).


The attached dictionary definition shows this wording refers to substances that you use on your skin to make yourself look more attractive.  *See* attached.  The applicant indicates that it is providing cosmetics, brushes for cosmetics and retail store services featuring cosmetics.  Therefore, the wording merely describes the goods and the subject matter of the store services.


The wording "CAUSEMETICS" must appear in its correct spelling, i.e., "COSMETICS" in the disclaimer.   *See In re Omaha Nat'l Corp.* , 819 F.2d 1117, 1119, 2 USPQ2d 1859, 1861 (Fed. Cir. 1987); *In re Carlson*, 91 USPQ2d 1198, 1203 (TTAB 2009); TMEP §1213.08(c).


An applicant may not claim exclusive rights to terms that others may need to use to describe their goods and/or services in the marketplace.  *See Dena Corp. v. Belvedere Int'l,  Inc.*, 950 F.2d 1555, 1560, 21 USPQ2d 1047, 1051 (Fed. Cir. 1991); *In re Aug. Storck KG*, 218 USPQ 823, 825 (TTAB 1983).  A disclaimer of unregistrable matter does not affect the appearance of the mark; that is, a disclaimer does not physically remove the disclaimed matter from the mark.  *See Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 978, 144 USPQ 433, 433 (C.C.P.A. 1965); TMEP §1213.


If applicant does not provide the required disclaimer, the USPTO may refuse to register the entire mark.  *See In re Stereotaxis Inc.*, 429 F.3d 1039, 1040-41, 77 USPQ2d 1087, 1088-89 (Fed. Cir. 2005); TMEP §1213.01(b).


Applicant should submit a disclaimer in the following standardized format:


   **No claim is made to the exclusive right to use "COSMETICS" apart from the mark as shown.**


For an overview of disclaimers and instructions on how to satisfy this disclaimer requirement online using the Trademark Electronic Application System (TEAS) form, please go to http://www.uspto.gov/trademarks/law/disclaimer.jsp.


**Response**

For this application to proceed further, applicant must explicitly address each refusal and/or requirement raised in this Office action.  If the action includes a refusal, applicant may provide arguments and/or evidence as to why the refusal should be withdrawn and the mark should register.  Applicant may also have other options specified in this Office action for responding to a refusal and should consider those options carefully.  To

respond to requirements and certain refusal response options, applicant should set forth in writing the required changes or statements.  For more information and general tips on responding to USPTO Office actions, response options, and how to file a response online, see "Responding to Office Actions" on the USPTO's website.

If applicant does not respond to this Office action within six months of the issue/mailing date, or responds by expressly abandoning the application, the application process will end and the trademark will fail to register.  *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a); TMEP §§718.01, 718.02.  Additionally, the USPTO will not refund the application filing fee, which is a required processing fee.  *See* 37 C.F.R. §§2.6(a)(1)(i)-(iv), 2.209(a); TMEP §405.04.

When an application has abandoned for failure to respond to an Office action, an applicant may timely file a petition to revive the application, which, if granted, would allow the application to return to active status.  *See* 37 C.F.R. §2.66; TMEP §1714.  The petition must be filed within two months of the date of issuance of the notice of abandonment and may be filed online via the Trademark Electronic Application System (TEAS) with a $100 fee.  *See* 37 C.F.R. §§2.6(a)(15)(ii), 2.66(a)(1), (b)(1).


/Ellen J.G. Perkins/

Ellen J.G. Perkins

Trademark Examining Attorney, Law Office 110

U.S. Patent & Trademark Office

571 272-9372

Ellen.Perkins@uspto.gov


**TO RESPOND TO THIS LETTER:**  Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp.  Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application.  For *technical* assistance with online forms, e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned trademark examining attorney.  **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

**Print: Aug 23, 2018**                                   **85980517**

**DESIGN MARK**

**Serial Number**
85980517

**Status**
REGISTERED

**Word Mark**
THRIVE

**Standard Character Mark**
Yes

**Registration Number**
4467942

**Date Registered**
2014/01/14

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
THRIVE NATURAL CARE, INC. CORPORATION DELAWARE 42 DARRELL PLACE SAN
FRANCISCO CALIFORNIA 94133

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Non-medicated skin care preparations, namely, facial lotions,
cleansers and creams, creams and oils for cosmetic use, skin
moisturizers; pre-shaving preparations; after shave lotions and
creams.  First Use: 2013/09/05.  First Use In Commerce: 2013/09/05.

**Filing Date**
2012/09/11

**Examining Attorney**
AGOSTO, GISELLE

**Attorney of Record**
Tsan Abrahamson

MCARTHUR OPP. 144

# THRIVE

**MCARTHUR OPP. 145**

**Print: Aug 23, 2018**                              **87021374**

**DESIGN MARK**

**Serial Number**
87021374

**Status**
FIRST EXTENSION - GRANTED

**Word Mark**
THRIVE

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Thrive Natural Care, Inc. CORPORATION DELAWARE 42 Darrell Place San
Francisco CALIFORNIA 94133

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Personal care products for cosmetic use, namely, hair shampoos and
conditioners, hair styling preparations; body and non-medicated hand
washes, soaps and skin cleansing gels; non-medicated skin care
preparations, namely, facial lotions, cleansers and creams, body
lotions, creams and oils for cosmetic use, skin moisturizers; cosmetic
sun care preparations and sunscreens; lip creams and balms;
antiperspirants and deodorants for personal use; shaving creams and
gels; pre-shaving preparations; after shave lotions and creams;
non-medicated baby care products, namely, baby lotions, skincare
creams, body cleansers, shampoos, skin cleansing gels and skin
cleansing washes, diaper rash creams and ointments.

**Goods/Services**
Class Status -- ACTIVE.  IC 005.  US  006 018 044 046 051 052.  G & S:
Medicated skin care products, namely, creams, lotions and oils;
medicated hair care, namely, shampoos and creams; medicated facial
cleansers, hand and body washes; medicated sunscreens and sunburn
lotions; medicated lip creams and balms.

**Filing Date**
2016/05/02

-1-

MCARTHUR OPP. 146

**Print: Aug 23, 2018**               **87021374**

**Examining Attorney**
IM,JEAN

**Attorney of Record**
Tsan Abrahamson

-2-

# THRIVE

**MCARTHUR OPP. 148**

https://www.macmillandictionary.com/dictionary/american/cosmetics          08/28/2018 05:42:41 PM



What is binge-watching?

Is it 'suffragette' or 'suffragist'?

'Black and white' is a surprisingly colourful expres...

Common grammatical errors and how to avoid making them

Trending words quiz

**Did you know?**

Click any word in a definition or example to find the entry for that word



SYB
Information on:
- Politics & Economics
- World cultures
- Migration & population



BROADEN YOUR HORIZONS
with our Mind competition



EMPLOYABILITY SKILLS
Essential skills for work


Powered by feedwind

learn English          live English          love English

## BuzzWord

**bronze ceiling**

the fact that most public statues represent men rather than women

BuzzWord Article

## Open Dictionary

**performative friendship**

a friendship that is all about making the person professing friendship look good, especially on social media. A performative friend is someone who does this.

add a word

https://www.macmillandictionary.com/dictionary/american/cosmetics          08/28/2018 05:42:41 PM

**More BuzzWords**

| | | |
|---|---|---|
| rainbow | framily | third gender |
| Mx | motherism | quintastic |
| omega male | YIMBY | humblebrag |

BuzzWord archive

**More submissions**

| | | |
|---|---|---|
| SOHO | transpontine | airsoft |
| napery | foofy | thaumaturgy |
| shelly | trigeminal | eir |

view entries

**Blog**

A must for anyone with an interest in the changing face of language. The Macmillan Dictionary blog explores English as it is spoken around the world today.

global English and language change from our blog



American definition and synonyms of **cosmetics** from the online English dictionary from Macmillan Education.

    



© Springer Nature Limited 2009–2018    Index    Privacy    Cookies Policy    Contact    Terms and Conditions

| To: | Thrive Causemetics, Inc. (pctrademarks@perkinscoie.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 87895130 - THRIVE CAUSEMETICS - 121715-4000 |
| Sent: | 8/28/2018 6:43:24 PM |
| Sent As: | ECOM110@USPTO.GOV |
| Attachments: | |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## <u>IMPORTANT NOTICE REGARDING YOUR<br>U.S. TRADEMARK APPLICATION</u>

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
ON **8/28/2018** FOR U.S. APPLICATION SERIAL NO. 87895130

Please follow the instructions below:

**(1)  TO READ THE LETTER:**  Click on this link or go to http://tsdr.uspto.gov, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2)  TIMELY RESPONSE IS REQUIRED:**  Please carefully review the Office action to determine (1) how to respond, and (2) the applicable response time period.  Your response deadline will be calculated from **8/28/2018** (*or sooner if specified in the Office action*).  A response transmitted through the Trademark Electronic Application System (TEAS) must be received before midnight **Eastern Time** of the last day of the response period.  For information regarding response time periods, see http://www.uspto.gov/trademarks/process/status/responsetime.jsp.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions.  Instead, the USPTO recommends that you respond online using the TEAS response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.

**(3)  QUESTIONS:**  For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney.  For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## <u>WARNING</u>

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.**  For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp**.**

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:**  Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations.  These companies often use names that

**MCARTHUR OPP. 152**

closely resemble the USPTO and their solicitations may look like an official government document.  Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation.  All <u>official</u> USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov."   For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

# Exhibit H

MCARTHUR OPP. 154

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

# Response to Office Action

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 87895130 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 110 |
| **MARK SECTION** | |
| MARK | https://tmng-al.uspto.gov/resting2/api/img/87895130/large |
| LITERAL ELEMENT | THRIVE CAUSEMETICS |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **ARGUMENT(S)** | |
| Please see the actual argument text attached within the Evidence section. | |
| **EVIDENCE SECTION** | |
| EVIDENCE FILE NAME(S) | |
| ORIGINAL PDF FILE | evi_19822100222-20181030195038968410_._Argument_Text_-_THRIVE_CAUSEMETICS_Office_Action_Response.pdf |
| CONVERTED PDF FILE(S) (8 pages) | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0002.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0003.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0004.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0005.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0006.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0007.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0008.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0009.JPG |
| ORIGINAL PDF FILE | evi_19822100222-20181030195038968410_._Exhibits_A-D_-_THRIVE_CAUSEMETICS_Office_Action_Response.pdf |
| CONVERTED PDF FILE(S) (31 pages) | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0010.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0011.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0012.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0013.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0014.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0015.JPG |

| | |
|---|---|
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0016.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0017.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0018.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0019.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0020.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0021.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0022.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0023.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0024.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0025.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0026.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0027.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0028.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0029.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0030.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0031.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0032.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0033.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0034.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0035.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0036.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0037.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0038.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0039.JPG](#) |
| | [\\TICRS\EXPORT17\IMAGEOUT17\878\951\87895130\xml5\ROA0040.JPG](#) |
| **DESCRIPTION OF EVIDENCE FILE** | Argument Text and Exhibits A-D |

## SIGNATURE SECTION

| | |
|---|---|
| **RESPONSE SIGNATURE** | /Patchen M Haggerty/ |
| **SIGNATORY'S NAME** | Patchen M. Haggerty |
| **SIGNATORY'S POSITION** | Attorney of record, OR and WA bar member |
| **SIGNATORY'S PHONE NUMBER** | (206) 359-8000 |
| **DATE SIGNED** | 10/30/2018 |
| **AUTHORIZED SIGNATORY** | YES |

## FILING INFORMATION SECTION

| | |
|---|---|
| **SUBMIT DATE** | Tue Oct 30 20:22:25 EDT 2018 |
| | USPTO/ROA-XXX.XX.XXX.XXX-<br>20181030202225105129-8789 |

**MCARTHUR OPP. 156**

| | |
|---|---|
| **TEAS STAMP** | 5130-6107cfe86a9bb43c3187 e428c39a995cf2b178221e51 5e01cb81c56e88b1083d9-N/A -N/A-20181030195038968410 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

## Response to Office Action

## To the Commissioner for Trademarks:

Application serial no. **87895130** THRIVE CAUSEMETICS(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/87895130/large) has been amended as follows:

**ARGUMENT(S)**
**In response to the substantive refusal(s), please note the following:**

Please see the actual argument text attached within the Evidence section.

**EVIDENCE**
Evidence in the nature of Argument Text and Exhibits A-D has been attached.
**Original PDF file:**
evi_19822100222-20181030195038968410_._Argument_Text_-_THRIVE_CAUSEMETICS_Office_Action_Response.pdf
**Converted PDF file(s)** ( 8 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
**Original PDF file:**
evi_19822100222-20181030195038968410_._Exhibits_A-D_-_THRIVE_CAUSEMETICS_Office_Action_Response.pdf
**Converted PDF file(s)** ( 31 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20

Evidence-21
Evidence-22
Evidence-23
Evidence-24
Evidence-25
Evidence-26
Evidence-27
Evidence-28
Evidence-29
Evidence-30
Evidence-31

**SIGNATURE(S)**
**Response Signature**
Signature: /Patchen M Haggerty/     Date: 10/30/2018
Signatory's Name: Patchen M. Haggerty
Signatory's Position: Attorney of record, OR and WA bar member

Signatory's Phone Number: (206) 359-8000

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the owner/holder in this matter: (1) the owner/holder has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the owner/holder has filed a power of attorney appointing him/her in this matter; or (4) the owner's/holder's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.

Serial Number: 87895130
Internet Transmission Date: Tue Oct 30 20:22:25 EDT 2018
TEAS Stamp: USPTO/ROA-XXX.XX.XXX.XXX-201810302022251
05129-87895130-6107cfe86a9bb43c3187e428d
c39a995cf2b178221e515e01cb81c56e88b1083d
9-N/A-N/A-20181030195038968410

MCARTHUR OPP. 158

Applicant responds as follows to the Office Action issued on August 28, 2018.  In the Office Action, the Examining Attorney refused registration of Applicant's mark THRIVE CAUSEMETICS ("Applicant's Mark") under Trademark Act Section 2(d), based on a likelihood of confusion with Registration No. 4467942 for the mark THRIVE ("Cited Mark").  The Examining Attorney also requested a disclaimer of the word "COSMETICS." For the reasons stated herein, Applicant respectfully requests withdrawal of the likelihood of confusion citation and the disclaimer requirement, and formal notification that the Application will proceed to publication.

I.    **Discussion**

When evaluating likelihood of confusion, *In re E.I. DuPont de Nemours & Co.* provides a non-exclusive list of thirteen factors, which, when of record, must be considered.  476 F.2d. 1357, 1361; 177 U.S.P.Q. 563, 567 (C.C.P.A. 1973).  However, not all of the *DuPont* factors are relevant in every case. *Id.*  The relevant *DuPont* factors in this case include:

(1) The similarity or dissimilarity between the parties' respective marks;

(2) The similarity or dissimilarity and nature of the goods as described in an application or registration or in connection with which a prior mark is in use; and

(3) The number and nature of similar marks in use on similar goods.

*Id.*  Each of these factors is considered below.

A.    Background

This is Applicant's second application for Applicant's Mark.  Applicant first applied for registration of Applicant's Mark on August 11, 2015 under Serial No. 86721790 (the "'790 Application").  In an Office Action dated November 30, 2015, the Examining Attorney initially refused registration of the '790 Application under Trademark Act Section 2(d) based on a likelihood of confusion with both the Cited Mark and now cancelled Registration No. 2938220 for the mark CAUSE-METICS (the "'220 Registration").  The Examining Attorney also initially requested a disclaimer of the word "COSMETICS."  Applicant responded to the Office Action on May 26, 2016 arguing against a likelihood of confusion with both the Cited Mark and the '220 Registration and against the disclaimer requirement. In a second Office Action issued June 22, 2016, the Examining Attorney withdrew the refusal with respect to the Cited Mark and the disclaimer requirement.  **See Exhibit A**.

Given that the subject Application covers cosmetics, makeup brushes and retail store services featuring these goods and that Applicant's '790 Application covered cosmetics, and given that the Examiner withdrew the refusal of registration of the '790 Application as to the Cited Mark finding no likelihood of confusion, it follows that the there is no likelihood of confusion between the subject Application (which covers goods and services that are the same or highly related to the goods covered by the '790 Application) and the Cited Mark.  Further, given that the Examiner withdrew the disclaimer requirement for the '790 Application, it follows that Applicant need not disclaim the word "COSMETICS" in the subject Application.

Accordingly, Applicant similarly requests withdrawal of the refusal of registration of the subject Application based on the Cited Mark and the disclaimer requirement.

B.   <u>Comparison of the Marks.</u>

Applicant's Mark, THRIVE CAUSEMETICS, creates a distinct commercial impression from the Cited Mark, THRIVE. When evaluating marks consisting of multiple words, each mark must be considered as a whole.  *See* TMEP § 1207.01(b) ("The basic principle in determining confusion between marks is that marks must be compared in their entireties . . . . It follows from that principle that likelihood of confusion cannot be predicated on dissection of a mark, that is, on only part of a mark." (quoting *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985))).

In the Office Action, the Examining Attorney asserts that Applicant "has merely added the term CAUSEMETICS to the registered mark" which "does not obviate the similarity between the compared marks."  Applicant respectfully disagrees with this assertion given that Applicant's Mark, viewed in its entirety, conveys an entirely different commercial impression from the Cited Mark.

To start, the marks look completely different. THRIVE CAUSEMETICS is a compound, unitary word mark, consisting of two distinct terms which both contribute to the overall commercial impression of Applicant's Mark. The Cited Mark, on the other hand, consists only of the word THRIVE, which is diluted and entitled to a narrow scope of protection, as discussed further below.

Further, the marks sound completely different when spoken aloud. THRIVE CAUSEMETICS is two separate words comprised of four syllables, thus creating a memorable impression of the mark as a cohesive whole, without special focus on the "THRIVE" aspect of the mark.

-2-

Finally, the marks convey entirely distinct meanings and commercial impressions. When considering the meaning of Applicant's Mark as used on Applicant's Goods and Services (as defined below), Applicant's Mark suggests that the cosmetic and make-up application related products and services offered under Applicant's Mark are intended to support a "cause," or to promote Applicant's stated charitable purpose of helping women to "thrive." Applicant describes its offerings as "Beauty with a Purpose." For every product purchased, Applicant donates a product to "help a woman thrive." **See Exhibit B**. Accordingly, Applicant's composite mark creates a distinct commercial impression.

In contrast, the Cited Mark (THRIVE) simply suggests that the skin care preparations offered under the mark are intended to promote healthy, or "thriving," skin. This is consistent with the Registrant's description of the products offered under the Cited Mark, which Registrant describes on its website as "high-performance nature skincare for men, powered by regenerative plants from Costa Rica." **See Exhibit C**.

Given the differences in sight, sound, meaning and commercial impression from the Cited Mark when Applicant's Mark, THRIVE CAUSEMETICS, is properly viewed as a whole, this factor favors Applicant.

C.     Comparison of the Goods

"The nature and scope of a party's goods or services must be determined on the basis of the goods or services recited in the application or registration." TMEP § 1207.01(a)(iii). Here, Applicant's Mark covers: "Cosmetics; makeup preparations; lip gloss; lipstick; eye shadow; mascara; eye liner; lip liner; eye brow makeup; eye brightening liner; false eyelashes; adhesives for affixing false eyelashes" in Class 3; "Make-up brushes" in Class 21; and "Online retail store services featuring cosmetics, make-up, cosmetic bags, make-up brush holders and make-up brushes" in Class 35 ("Applicant's Goods and Services").

In contrast, the Cited Mark covers: "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams" in Class 3 (the "Cited Goods").

Applicant's Goods and Services are not identical to the Cited Goods, and the Examining Attorney does not attempt to argue that they are. While Applicant's Mark and the Cited Mark are used in

-3-

connection with goods in Class 3, Applicant's Class 3 goods are cosmetics, while the Cited Mark's Class 3 goods are skincare and shaving products. Such products are found in different aisles or departments than standard make-up cosmetics, such as eyeliner, and are distinctly different types of consumer goods. Further, Applicant's Goods and Services are marketed toward and used to help women (**see Exhibit B**), whereas the Cited Goods are marketed toward men (**see Exhibit C**).

Given the dissimilarity in the marks as discussed above, a higher nexus in the relatedness of the parties' goods is required to support a finding of likelihood of confusion. *In re Shell Oil Co., 992 F.2d 1204, 1207, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993); Gen. Mills, Inc. v. Fage Dairy Processing Indus. S.A.,* 100 USPQ2d 1584, 1597 (TTAB 2011). Thus, confusion is unlikely when considering the differences in the goods offered under the respective marks and the resulting commercial impression.

Further, as discussed above and in more detail below as to the next factor, mere common use of the diluted term THRIVE in connection with such goods is not sufficient to establish a likelihood of confusion when the marks, as a whole, are so different.

D.    The Cited Mark Coexists, and Has Historically Coexisted, with Other Third-Party THRIVE Marks.

As noted above, the Examiner's only support for the conclusion that the there is a likelihood of confusion between Applicant's Mark and the Cited Mark is common use of the term THRIVE in connection with non-identical products in Class 3, without factoring distinguishing aspects of the Applicant's Mark into the analysis. However, "[i]f the evidence establishes that the consuming public is exposed to third-party use of similar marks on similar goods, it 'is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.'" TMEP § 1207.01 (citing *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1373-74 (Fed. Cir. 2005).

Here, Applicant has identified third-party registrations, allowed and published applications for THRIVE-formative marks that are at least as similar to each other, and which cover various goods for products closely related to those covered by the Cited Mark and Applicant's Mark. This suggests that consumers are capable of looking beyond mere common use of THRIVE to create an association as to source for such products. Accordingly, Applicant's Mark and the Cited Mark can coexist on the Principal Register without a likelihood of confusion, just as the Cited Mark already coexists with the identified marks. Consider the following marks:

-4-

MCARTHUR OPP. 162

| Mark | Req./App. No. | Goods/Services, in pertinent part |
|---|---|---|
| THRIVE IN THE SUN. | 5395792 | Class 3: Sun screen preparations |
| ENTHRIVE | 4841662 | Class 3: Beauty creams for body care; Cosmetic creams; Cosmetic creams for skin care; Cosmetic nourishing creams; Cosmetic preparations for skin care; Cosmetic preparations for skin renewal; Face creams for cosmetic use; Moisturizing preparations for the skin; Non-medicated skin care preparations; Skin conditioning creams for cosmetic purposes; Skin moisturizer |
| ITHRIVEX | 4744731 | Class 3: Body cream; Hand cream; Non-medicated skin care creams and lotions; Skin creams |
| EAT. DRINK. THRIVE. | 4696755 | Class 3: Apothecary products, namely, non-medicated sea salt for use as bath salts; non-medicated skin preparations, namely, sea salt exfoliator for skin and body |
| SIMPLYTHRIVE | 87264323 (Allowed July 11, 2017) | Class 3: Fragranced body creams, bath and body gels and body lotions; body cleansers and body washes; Perfumes; cologne; eau de toilette; Bath powders; Makeup, namely, lipstick, lip liner, lip gloss, eyeliner, eyeshadow, foundation, skin bronzer, body powder; Haircare products, namely, hair care creams; hair colorants; hair coloring preparations; hair creams; hair gel; hair gels; hair lotions; hair mousse; hair mousses; hair pomades; hair relaxers; hair relaxing preparations; hair spray; hair styling gel; hair styling spray; styling gels; Incense; scented room sprays; Non-medicated skin care preparations, namely, creams, lotions, cleansers, masks and oils; eye cream; facial masks; non-medicated exfoliating preparations for the skin; facial cream; facial cleansers; face oil; facial moisturizers; soaps; scented water for cosmetic use; essential oils; cosmetics; hair lotions; oils for toiletry purposes; oils for cosmetic use; oils for perfumes and scents; almond oils for cosmetic use; shampoos, shower gels, bath foams, bubble baths; lotions and gels for cosmetic use; beauty masks; cosmetic preparations for baths; non-medical skin care preparations, namely, creams, face, eyes, hands, body, legs and feet gels and lotions; toners and moisturizers, namely, skin toners and skin moisturizers for the face and body; serums, namely, beauty serums for the face and eyes; cosmetic creams; make-up and make-up removing preparations; skin cleansing scrubs, namely, body scrubs for the face and skin; shaving preparations; after-shave lotions; non-medicated lip balms and lipsticks; deodorants for personal use; cosmetic preparations for slimming; sun screening preparations; tissues impregnated with cosmetic lotions; air fragrances; preparations for perfuming linen, namely, scented linen sprays and linen water; potpourris |
| THRIVECEUTICALS | 87869941 (Published for Opposition September 04, 2018) | Class 3: Non-medicated anti-aging products, namely, moisturizer, toner, serums, and creams; non-medicated skin care products, namely, lotions, skin creams, facial skin cleansers, eye gels, moisturizers, body scrubs, and body butters |

-5-

MCARTHUR OPP. 163

**See Exhibit D.**  This evidence establishes that the consuming public is exposed to third-party use of THRIVE-formative marks on similar goods in Class 3 such that the wording THRIVE is weak and entitled to only a narrow scope of protection. See *Palm Bay Imps.*, 396 F.3d at 1373-74.  Thus, this factor favors Applicant and demonstrates that there is no likelihood of confusion as between Applicant's Mark and the Cited Mark.

E. <u>COSMETICS Need Not Be Disclaimed</u>.

In the Office Action, the Examiner states that "Applicant must disclaim the wording 'COSMETICS' in the mark because it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services, and thus is an unregistrable component of the mark … the wording 'CAUSEMETICS' must appear in its correct spelling, i.e., 'COSMETICS' in the disclaimer."  The word "CAUSEMETICS" (and in particular the "CAUSE" portion of the word) is suggestive of the charitable purpose of Applicant's business. See evidence submitted herewith as **Exhibit B**, consisting of portions of Applicant's website describing the charitable aspect of Applicant's business (*e.g.*, for every product purchased, Applicant donates a product to "help a woman thrive."). In other words, "CAUSEMETICS" would not be perceived by consumers as "just a misspelling of a descriptive or generic word, but as having a dual meaning." *See In re Dean S. Carlson*, 91 USPQ2d 1198, 1201-1202 (TTAB 2009); *In re Grand Metro. Foodservice, Inc.*, 30 USPQ2d 1974, 1975-1976 (TTAB 1994) (finding "MUFFUNS" would be perceived as more than just a misspelling of "MUFFINS," thereby rendering a different commercial impression or connotation).

The issue presented here is nearly identical with that presented in *In re Tea & Sympathy, Inc.*, 88 USPQ2d 1062 (TTAB 2008). In that case, the applicant had applied for registration of the trademark THE FARMACY for "retail store services featuring natural herbs and organic products; and on-line retail store services featuring natural herbs and organic products" (in International Class 35), and "providing integrated health services at retail locations in the nature of dietary and nutritional guidance and providing information about dietary supplements and nutrition." The trademark examining attorney refused registration in both classes on the ground that the designation THE FARMACY, when used in connection with applicant's services, was merely descriptive. On appeal to the TTAB, the Board reversed, finding that applicant's mark was more than just an alternate spelling of "the pharmacy":

-6-

> We find that the mark THE FARMACY, as used in connection with applicant's services, is more than simply a misspelling of "the pharmacy." Consumers are not likely to perceive that mark as just a misspelling, but rather as a play on the natural or farm-fresh characteristics of applicant's herbs and organic products used for medicinal purposes featured in applicant's services. Thus, the mark conveys a dual meaning, that of the natural aspect of the goods sold by applicant and of a pharmacy. Applicant's mark is inventive and just clever enough, being an obvious play on "the pharmacy" and "farm," so that the meaning or commercial impression of applicant's mark will be more than simply "the pharmacy." Accordingly, applicant's mark is not merely descriptive.

Id. at 1062.

Just as in the above case, the term CAUSEMETICS in Applicant's Mark conveys a dual meaning. It is both suggestive of Applicant's Goods and Services and suggestive of the charitable aspect of Applicant's business (i.e., the sale of products "for a cause" to help women "thrive"). The meaning or commercial impression of the term CAUSEMETICS to consumers, as used in Applicant's Mark, is therefore different from the word "COSMETICS."  As a result, the term "CAUSEMETICS" is not merely a misspelling of the descriptive term "COSMETICS."

Even if the term "CAUSEMETICS" was merely the functional equivalent of the word "COSMETICS," the term "CAUSEMETICS" forms part of a composite mark (THRIVE CAUSEMETICS), which is unitary such that "COSMETICS" need not be disclaimed.

A composite mark is one which is comprised of, among other things, multiple words. *See* TMEP §1213.02.  Where a composite mark is unitary, an individual component of the mark that would otherwise be unregistrable need not be disclaimed. *See* TMEP §§1213.05–1213.05(g)(iv). A mark or portion of a mark is considered "unitary" when it creates a commercial impression separate and apart from any unregistrable component. The presence of a verb in a mark is indicative of a unitary mark. *See* TMEP §1213.05(b)(ii)(A).

Here, Applicant's mark is comprised of two terms, "THRIVE" and "CAUSEMETICS." Consequently, it is a composite mark. The word "THRIVE" is a verb, which forms a phrase when combined with the object of the phrase being "CAUSEMETICS." The subject of this unitary phrase is the consumer who is given the commercial impression that Applicant's Mark, when used in connection with Applicant's Goods and Services, connotes "beauty with a purpose" that "helps women to thrive." **See Exhibit B**.  This indicates that Applicant's mark is a unitary mark. Consequently, Applicant need not disclaim the wording "COSMETICS."

MCARTHUR OPP. 165

II.     __Conclusion__

For the foregoing reasons, there is no likelihood of confusion between Applicant's Mark and the Cited Mark in connection with Applicant's Goods and Services.  Further, Applicant need not disclaim the wording "COSMETICS."  Accordingly, the refusal should be withdrawn and Applicant's Mark should proceed to publication.

141201869.1

MCARTHUR OPP. 166

EXHIBIT B

**MCARTHUR OPP. 167**

https://thrivecausemetics.com/pages/our-story  |  Retrieved 9/6/2018

FREE SHIPPING ON ORDERS $35+ AND EASY RETURNS!


thrive
causemetics

# Our Story



**We're Changing the Beauty Industry for Good**

Thrive Causemetics was born out of a friendship. Makeup artist and product developer, Karissa Bodnar, lost her dear friend Kristy to cancer at just 24 years old. Kristy's compassionate and vivacious spirit inspired Karissa to establish Thrive Causemetics, a beauty brand and philosophy that goes beyond skin deep by empowering women.

Thrive Causemetics is *Beauty with a Purpose*: for every product you purchase, one is donated to help a woman thrive. We believe changing the world starts with a single ingredient, and that's why we create vegan, 100% cruelty-free formulas containing proven ingredients without the use of parabens or sulfates. All of our high-performance cosmetics are developed at Thrive Lab in Los Angeles—we control every step of the product development process, and a large part of it involves you. From selecting shades for our Glossy Lip Mark to testing our new formulations, your voice is heard in every step of our product creation process.

With over a decade of experience as a makeup artist, beauty product designer, and formulator, Karissa has traveled the world sourcing powerful ingredients to create clean formulas with skin-loving properties. Her passion for empowering women of all walks of life through the gift of beauty has taken her from backstage at Fashion Week to working with an impressive roster of high-profile clients.

Thrive Causemetics is a movement that anyone can join. Thanks to you, we've been able to empower and inspire countless women's lives.

**MCARTHUR OPP. 168**



MCARTHUR OPP. 169

EXHIBIT C

**MCARTHUR OPP. 170**



PRODUCTS ∨   OUR MISSION   POWERFUL PLANTS   OWN THE DAY   CONTACT US        SIGN IN   🔍   🛒 0



## A POSITIVE FOOTPRINT

---

Our business model is as unique as our products. A farm to face approach for the best natural skincare, good for your skin and for the planet



MCARTHUR OPP. 171



PRODUCTS    OUR MISSION    POWERFUL PLANTS    OWN THE DAY    CONTACT US                    SIGN IN    🔍    🛒 0



**ENERGY SCRUB - 3.38FL.OZ.(100ML)**

125 reviews

$ 13.95

| Product Description | Our Commitments |

Whether you need to scrub off the day's adventure or are preparing your skin for a smooth shave, Thrive's Energy Scrub harnesses the power of plant-based exfoliants and natural cleansers to provide a powerful cleansing scrub without the harsh abrasives or cleansers that can do more harm than good. Our natural formula is made with exclusive, high-quality plant extracts from Costa Rica that invigorate your skin for an energetic start to your day.

**ADD TO CART**

## YOUR MORNING ROUTINE FOR THE SMOOTHEST SHAVE

**Been shaving for years? Gearing up for your first shave? Either way, a complete shave goes beyond a good razor. And we've got you covered!**

MCARTHUR OPP. 172



PRODUCTS ∨    OUR MISSION    POWERFUL PLANTS    OWN THE DAY    CONTACT US            SIGN IN    🔍    🛒 0

OUR NO COMPROMISE COMMITMENTS TO
YOU, YOUR SKIN, AND THE PEOPLE AND
THE PLANET THAT MAKE IT POSSIBLE

SEE ALL PRODUCTS

#THRIVEOWNTHEDAY

MCARTHUR OPP. 173

Thrive Natural Care | High-Performance Natural Skincare for Men                                        4



PRODUCTS ∨    OUR MISSION    POWERFUL PLANTS    OWN THE DAY    CONTACT US                    SIGN IN    🔍    🛒 0



FOLLOW

HOME   PRODUCTS   OWN THE DAY BLOG   CONTACT US / FAQS

Sign up to get the latest on sales, new releases and more …

Enter your email address…        SIGN UP

25 Taylors St. San Francisco, CA. 94102

© 2018 Thrive Natural Care · Privacy Policy

https://thrivecare.co/                                                                  9/6/2018

MCARTHUR OPP. 174

# Exhibit I

**MCARTHUR OPP. 175**

| To: | Thrive Causemetics, Inc. (pctrademarks@perkinscoie.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 87895130 - THRIVE CAUSEMETICS - 121715-4000 |
| Sent: | 11/23/2018 9:15:38 AM |
| Sent As: | ECOM110@USPTO.GOV |
| Attachments: | |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**

**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION
SERIAL NO.** 87895130

**MARK:** THRIVE
CAUSEMETICS

# *87895130*

**CORRESPONDENT
ADDRESS:**
    PATCHEN M.
HAGGERTY

    PERKINS COIE LLP

    1201 THIRD AVENUE,
SUITE 4900

    SEATTLE, WA 98101

**GENERAL TRADEMARK
INFORMATION:**
http://www.uspto.gov/trademarks/index.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Thrive
Causemetics, Inc.

**CORRESPONDENT'S
REFERENCE/DOCKET
NO:**
    121715-4000

**CORRESPONDENT E-
MAIL ADDRESS:**

    pctrademarks@perkinscoie.com

**SUSPENSION NOTICE: NO RESPONSE NEEDED**

**ISSUE/MAILING DATE: 11/23/2018**

The trademark examining attorney is suspending action on the application for the reason(s) stated below.  *See* 37 C.F.R. §2.67; TMEP §§716 *et seq.*

The effective filing date of the pending application(s) identified below precedes the filing date of applicant's application.   If the mark in the referenced application(s) registers, applicant's mark may be refused registration under Section 2(d) because of a likelihood of confusion with that registered mark(s).  *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.*  Therefore, action on this application is suspended until the earlier-filed referenced application(s) is either registered or abandoned.  37 C.F.R. §2.83(c).  A copy of information relevant to this referenced application(s) was sent previously.

**MCARTHUR OPP. 176**

- **Application Serial No(s). 87021374**

**REFUSAL(S)/REQUIREMENT(S) CONTINUED AND MAINTAINED:**  The following refusal(s)/requirement(s) is/are continued and maintained: **Refusal Section 2(d) – Likelihood of Confusion; Disclaimer.**

The USPTO will periodically conduct a status check of the application to determine whether suspension remains appropriate, and the trademark examining attorney will issue as needed an inquiry letter to applicant regarding the status of the matter on which suspension is based.  TMEP §§716.04, 716.05.  Applicant will be notified when suspension is no longer appropriate.  *See* TMEP §716.04.

No response to this notice is necessary; however, if applicant wants to respond, applicant should use the "Response to Suspension Inquiry or Letter of Suspension" form online at  http://teasroa.uspto.gov/rsi/rsi.

/Ellen J.G. Perkins/

Ellen J.G. Perkins

Trademark Examining Attorney, Law Office 110

U.S. Patent & Trademark Office

571 272-9372

Ellen.Perkins@uspto.gov

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the Trademark Electronic Application System (TEAS) form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

| | |
|---|---|
| **To:** | Thrive Causemetics, Inc. (pctrademarks@perkinscoie.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87895130 - THRIVE CAUSEMETICS - 121715-4000 |
| **Sent:** | 11/23/2018 9:15:39 AM |
| **Sent As:** | ECOM110@USPTO.GOV |
| **Attachments:** | |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## <u>IMPORTANT NOTICE REGARDING YOUR</u>
## <u>U.S. TRADEMARK APPLICATION</u>

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED

ON <span style="color:red">11/23/2018</span> FOR U.S. APPLICATION SERIAL NO.87895130

Please follow the instructions below:

**(1)  TO READ THE LETTER:**  Click on this link or go to http://tsdr.uspto.gov/, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2)  QUESTIONS:**  For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney. For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## <u>WARNING</u>

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations. These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document. Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation. All <u>official</u> USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov."  For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

# **Exhibit J**

MCARTHUR OPP. 179

| To: | Thrive Causemetics, Inc. (trademarks@cooley.com) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 87895130 - THRIVE CAUSEMETICS - N/A |
| **Sent:** | July 28, 2021 04:13:18 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |
| | Attachment - 30 |
| | Attachment - 31 |
| | Attachment - 32 |
| | Attachment - 33 |
| | Attachment - 34 |
| | Attachment - 35 |
| | Attachment - 36 |
| | Attachment - 37 |
| | Attachment - 38 |
| | Attachment - 39 |
| | Attachment - 40 |

**United States Patent and Trademark Office (USPTO)**

**Office Action (Official Letter) About Applicant's Trademark Application**

**MCARTHUR OPP. 180**

**U.S. Application
Serial No.** 87895130


**Mark:** THRIVE
CAUSEMETICS


**Correspondence
Address:**
Anne H. Peck

Cooley LLP

1299 Pennsylvania
Avenue NW, STE 700

Washington DC 20004


**Applicant:** Thrive
Causemetics, Inc.


**Reference/Docket No.**
N/A


**Correspondence
Email Address:**

trademarks@cooley.com


## NONFINAL OFFICE ACTION


The USPTO must receive applicant's response to this letter within  six months  of the issue date below or the application will be **abandoned**. Respond using the Trademark Electronic Application System (TEAS).  A link to the appropriate TEAS response form appears at the end of this Office action.


**Issue date:** July 28, 2021


This application was suspended pending the disposition of a prior filed application.  The prior filed application has matured to U.S. Registration No. 6164303.  The refusal to register the mark based on U.S. Registration No. 4467942 is maintained and continued.  The arguments presented in applicant's response will be addressed together with any response to this Office Action.   Accordingly, the examining attorney issues the following:


### Refusal Section 2(d) – Likelihood of Confusion

 Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 6164303.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the attached registration.


The applicant has applied to register the mark THRIVE CAUSEMETICS (standard characters) for " Cosmetics; makeup preparations; lip gloss; lipstick; eye shadow; mascara; eye liner; lip liner; eye brow makeup; eye brightening liner; false eyelashes; adhesives for affixing false eyelashes"; Make-up brushes"; and "Online retail store services featuring cosmetics, make-up, cosmetic bags, make-up brush holders and make-up brushes."


The mark in U.S. Registration No. 6164303 is THRIVE (standard characters) for "Body and non-medicated soaps and skin cleansing gels; non-medicated skin care preparations, namely, facial lotions, cleansers and creams, oils for cosmetic use, skin moisturizers; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams."

**MCARTHUR OPP. 181**

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties.  *See* 15 U.S.C. §1052(d).  Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors").   *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).  Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case."   *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis:  (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services.  *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

## Comparison of the Marks

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v).  "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."   *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam* , 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

Here, both marks contain the term THRIVE.  Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression.  *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom.  Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

The examining attorney must resolve any doubt as to the issue of likelihood of confusion in favor of the registrant and against the applicant who has a legal duty to select a mark which is totally dissimilar to trademarks already being used.  *Burroughs Wellcome Co. v. Warner-Lambert Co.*, 203 USPQ 191 (TTAB 1979).

## Comparison of the Goods and/or Services

The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion.  *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i).  They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source."  *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

The applicant's goods and/or services are "  Cosmetics; makeup preparations; lip gloss; lipstick; eye shadow; mascara; eye liner; lip liner; eye brow makeup; eye brightening liner; false eyelashes; adhesives for affixing false eyelashes"; Make-up brushes"; and "Online retail store services featuring cosmetics, make-up, cosmetic bags, make-up brush holders and make-up brushes."

The goods in U.S. Registration No. 6164303 are "Body and non-medicated soaps and skin cleansing gels; non-medicated skin care preparations, namely, facial lotions, cleansers and creams, oils for cosmetic use, skin moisturizers; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams."

The attached Internet evidence, consisting of third party cosmetics and personal care webpages, establishes that the same entity commonly manufactures, produces, or provides the relevant goods and/or services and markets the goods and/or services under the same mark.  Specifically, cosmetics, cosmetics brushes and retail store services featuring these goods, as well as providing skincare preparations such as moisturizers and skin cleansers.  Thus, applicant's  and registrant's  goods and/or services are considered related for likelihood of confusion purposes.  *See, e.g., In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB

2009).

For the foregoing reasons consumers and potential consumers would be likely to believe that applicant's goods and/or services emanate from the same source as those provided by the registrant. Accordingly, registration is refused under Section 2(d) of the Act.

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

Response

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action.  For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above.  For a requirement, applicant should set forth the changes or statements.  Please see "Responding to Office Actions" and the informational  video "Response to Office Action" for more information and tips on responding.

**How to respond.  Click to file a response to this nonfinal Office action.**

/Ellen J.G. Perkins/

Ellen J.G. Perkins

Examining Attorney - Law Office 110

U.S. Patent & Trademark Office

571 272-9372

Ellen.Perkins@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.**  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.**  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

**MCARTHUR OPP. 183**

**Print: Jul 27, 2021**                                **87021374**

**DESIGN MARK**

**Serial Number**
87021374

**Status**
CANCELLATION PENDING

**Word Mark**
THRIVE

**Standard Character Mark**
Yes

**Registration Number**
6164303

**Date Registered**
2020/09/29

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Thrive Natural Care, Inc. CORPORATION DELAWARE 42 Darrell Place San
Francisco CALIFORNIA 94133

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Body and non-medicated soaps and skin cleansing gels; non-medicated
skin care preparations, namely, facial lotions, cleansers and creams,
oils for cosmetic use, skin moisturizers; cosmetic sun care
preparations and sunscreens; shaving creams and gels; pre-shaving
preparations; after shave lotions and creams.  First Use: 2013/09/05.
First Use In Commerce: 2013/09/05.

**Filing Date**
2016/05/02

**Examining Attorney**
IM,JEAN

**-1-**

MCARTHUR OPP. 184

# THRIVE

MCARTHUR OPP. 185

| To: | Thrive Causemetics, Inc. (trademarks@cooley.com) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 87895130 - THRIVE CAUSEMETICS - N/A |
| **Sent:** | July 28, 2021 04:13:21 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | |

## United States Patent and Trademark Office (USPTO)

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued

on **July 28, 2021** for

## U.S. Trademark Application Serial No. 87895130

Your trademark application has been reviewed by a trademark examining attorney. As part of that review, the assigned attorney has issued an official letter that you must respond to by the specified deadline or your application will be abandoned. Please follow the steps below.

**(1)  Read the official letter.**

**(2)  Direct questions** about the contents of the Office action to the assigned attorney below.

/Ellen J.G. Perkins/

Ellen J.G. Perkins

Examining Attorney - Law Office 110

U.S. Patent & Trademark Office

571 272-9372

Ellen.Perkins@uspto.gov

Direct questions about navigating USPTO electronic forms, the USPTO website, the application process, the status of your application, and/or whether there are outstanding deadlines or documents related to your file to the Trademark Assistance Center (TAC).

**(3)  Respond within 6 months** (or earlier, if required in the Office action) from **July 28, 2021**, using the Trademark Electronic Application System (TEAS). The response must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. See the Office action for more information about how to respond

# GENERAL GUIDANCE

·  **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

·  **Update your correspondence email address**, if needed, to ensure you receive important USPTO notices about your application.

**MCARTHUR OPP. 186**

_____

· **Beware of misleading notices sent by private companies about your application.** Private companies not associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices – most of which require fees. All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**

# **<u>Exhibit K</u>**

**MCARTHUR OPP. 188**



| | | | |
|---|---|---|---|
| GAMES & QUIZZES | THESAURUS | WORD OF THE DAY | FEATURES | SHOP ⌄ | | LOG IN | REGISTER | 🔖 MY WORDS |

Merriam-Webster **SINCE 1828**

thrive ✕ 🔍

**Dictionary** | **Thesaurus**





# thrive *verb*

🔖 Save Word

\ ˈthrīv 🔊 \

**thrived** *or* **throve** \ ˈthrōv 🔊 \; **thrived** *also* **thriven** \ ˈthri-vən 🔊 \; **thriving** \ ˈthrī-viŋ 🔊 \

## Definition of *thrive*

*intransitive verb*

1  : to grow vigorously : <u>FLOURISH</u>

2  : to gain in wealth or possessions : <u>PROSPER</u>

3  : to progress toward or realize a goal despite or because of circumstances — often used with *on*
    // *thrives* on conflict



**WORD OF THE DAY**

flexuous 🔊

<u>See Definitions and Examples</u> »

Get Word of the Day daily email!



macmillan dictionary

Search Macmillan Dictionary →

# thrive   DEFINITIONS AND SYNONYMS   ⭐

VERB  INTRANSITIVE    US 🔊 /θraɪv/

**OTHER ENTRIES FOR THIS WORD**    +

**WORD FORMS**    +

**DEFINITIONS**   1

1   **to become very successful, happy, or healthy**

*Children thrive when given plenty of love and attention.*
*This type of plant thrives in cool conditions.*

**Collocations and examples**    +

**Collocations and examples**    +

**Collocations and examples**    +

**Synonyms and related words**    +

**Do Not Sell My Personal Information**

This website uses cookies to enhance user experience and to analyze performance and traffic on our website. We also share information about your use of our site with our social media, advertising and analytics partners.

**Accept Cookies**

MCARTHUR DRPL3190



  

*Meaning of **thrive** in English*

# thrive

### *verb* [ I ]

US   /θraɪv/   UK   /θraɪv/

**thrived** or US also **throve**  |  **thrived** or US also **thriven**

＋ ☰

C1

## to grow, develop, or be successful:

• *His business thrived in the years before the war.*

• *She seems to thrive **on** stress.*

**Synonyms**

burgeon literary

prosper

— SMART Vocabulary: related words and phrases

**Succeeding, achieving and fulfilling**

A game

accomplish

**Do Not Sell My
Personal Information**

This website uses cookies to enhance user experience and to analyze
performance and traffic on our website. We also share information about your
use of our site with our social media, advertising and analytics
partners. **Privacy and Cookies Policy**

Accept Cookies

MCARTHUR DEP 0194

  

thrive | BUSINESS ENGLISH

# thrive

*verb* [ I ]

UK 🔊  /θraɪv/  US 🔊

**thrived**  |  **thrived**  |  US also **throve**  |  **thriven**

**to grow, develop, and become successful:**

- *Industries such as water, telecoms, and insurance have been thriving.*

- **thrive on sth** *Some employees thrive on the challenge of intense workloads.*

*(Definition of **thrive** from the [Cambridge Business English Dictionary](#) © Cambridge University Press)*

EXAMPLES of **thrive**

# thrive

In the end, the kids are thriving and the adults are more or less fine.

*From [The Atlantic](#)*                                                        💬

For example, women who got divorced often thrived.

*From [The Atlantic](#)*                                                        💬

**More examples**

These examples are from corpora and from sources on the web. Any opinions in the examples do not represent the opinion of the Cambridge Dictionary editors or of Cambridge University Press or its licensors.

**Do Not Sell My
Personal Information**

This website uses cookies to enhance user experience and to analyze
performance and traffic on our website. We also share information about your
use of our site with our social media, advertising and analytics
partners. **Privacy and Cookies Policy**

Accept Cookies

MCARTHUR DECL. 192

DICTIONARY.COM

THESAURUS.COM



DEFINITIONS ∨ | thrive

MEANINGS    GAMES    LEARN    WRITING    WORD OF THE DAY

**Top Definitions**    **Synonyms**    **Quizzes**    **Related Content**

**Vocab Builder**    **Examples**    **British**

# thrive


Save This Word!

[ thrahyv ]   **SHOW IPA**   🔊   ☆

**See synonyms for:** thrive / thrived / thrives / thriving on Thesaurus.com

*verb (used without object),* **thrived** or **throve** 🔊 [throhv], **thrived** or **thriv·en** 🔊 [**thriv**-*uh*n], **thriv·ing.**

1   to prosper; be fortunate or successful.

2   to grow or develop vigorously; flourish:
    *The children thrived in the country.*

**OTHER WORDS FOR THRIVE**

1    advance.

**See synonyms for** *thrive* **on Thesaurus.com**

**QUIZ**

# SPRINT TO THE FINISH WITH THIS OLYMPICS QUIZ!

MCARTHUR DRP_1093