1  Rollin A. Ransom (State Bar No. 196126)
   rransom@sidley.com
2  Lauren M. De Lilly (State Bar No. 301503)
   ldelilly@sidley.com
3  Paula C. Salazar (State Bar No. 327349)
   psalazar@sidley.com
4  SIDLEY AUSTIN LLP
   555 West Fifth Street
5  Los Angeles, CA 90013
   Telephone: (213) 896-6000
6  Facsimile: (213) 896-6600

7  *Attorneys for Defendant Thrive*
   *Causemetics, Inc.*

8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

11  THRIVE NATURAL CARE, INC.,          Case No. 2:20-cv-9091-PA-AS

12            Plaintiff,                 Hon. Percy Anderson

13       v.                             **DEFENDANT THRIVE
                                        CAUSEMETICS, INC.'S
14  THRIVE CAUSEMETICS, INC.,           STATEMENT OF GENUINE
                                        DISPUTES OF MATERIAL FACT
15            Defendant.                 AND ADDITIONAL MATERIAL
                                        FACTS**
16
                                        Date:   September 13, 2021
17                                      Time:   1:30 p.m.
                                        Place:  Courtroom 9A
18

19

20

21

22

23

24

25

26

27

28

---

1    Pursuant to Local Rule 7 and § II.A.5 of the Civil Trial Scheduling Order in this
2    action (ECF No. 19) ("CTS Order"), Defendant Thrive Causemetics, Inc. ("TCI" or
3    "Defendant") respectfully submits this Statement of Genuine Issues and Additional
4    Material Facts in opposition to the Motion for Partial Summary Judgment filed by
5    Plaintiff Thrive Natural Care, Inc. ("TNC" or "Plaintiff") (ECF No. 40).  Consistent
6    with § II.A.5 of the CTS Order, if TCI disputes a fact based in whole or in part on an
7    evidentiary objection, the ground of the objection is stated below, and further
8    addressed in TCI's Memorandum in Support of Evidentiary Objections in Opposition
9    to Plaintiff's Motion for Partial Summary Judgment, filed concurrently herewith.  To
10   the extent TCI identifies controverting evidence to any of Plaintiff's allegedly
11   undisputed facts, such controverting evidence is proffered subject to TCI's evidentiary
12   objections (*i.e.*, TCI's citation to evidence that is the subject of an evidentiary
13   objection is not intended to waive the objection, and is instead provided in the event
14   TCI's evidentiary objection is overruled and the Court considers the challenged
15   evidence).

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
| --- | --- |
| 1. Thrive began using the mark "THRIVE" (the "THRIVEMark") in relation to skincare products in August 2013.Those products consisted of Thrive Face Balm (a skin lotion/cream/moisturizer product), Thrive Face Wash (a cleanser), and Thrive Shave Oil (a shaving and skin moisturizing oil). | Undisputed. |
| 2. Thrive began selling skincare products under the THRIVE Mark not later than 2014, at least four years before DefendantThrive Causemetics, Inc. ("TCI") began selling skincare products under its THRIVE CAUSEMETICS brand. | Undisputed. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND
ADDITIONAL MATERIAL FACTS

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 3. Today, Thrive sells a range of skincare and grooming products, including face washes and scrubs, lotions and creams, moisturizers, sunscreens, face balms, shaving lotions, and grooming oils—all of which use the THRIVE Mark (collectively, "Thrive Products"). | Disputed that the list of product types (*e.g.*, "face balms," "lotions and creams," and "moisturizers") actually represents different products.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 5.<br><br>Def.'s Controverting Evidence:<br>Declaration of Lauren M. De Lilly in support of Def.'s Opp. to Pl.'s Mot. for Partial Summ. J. ("De Lilly Decl."), Ex. 1 at 64:8-65:4, 67:24-68:3 (using "lotion," "cream," "face balm," and "moisturizer" interchangeably for same product). |
| 4. Plaintiff Thrive's skincare products and Defendant TCI's skincare products both prominently feature the THRIVE Mark on the product packaging. One example is below.<br><br> | Disputed that TCI's products feature the "THRIVE Mark."<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 34; Wallace Decl. ¶¶ 10-11; McArthur Decl., Ex. A at 26:21-27:12, Depo. Ex. 10.<br><br>Def.'s Controverting Evidence<br>Declaration of Karissa Bodnar in support of Def.'s Opp. to Pl.'s Mot. for Partial Summ. J. ("Bodnar Decl.") ¶¶ 3-4. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 5. Thrive's skincare products and TCI's skincare products are shown together in online search results extremely frequently. This includes searches on the most popular search engines, including Google, Google Shopping, Bing, Bing Shopping, and Duck Duck Go. One example is shown below from a Google Shopping search for "thrive natural care," the full name of Plaintiff Thrive's company.<br><br> | Disputed.<br><br><u>Pl.'s Cited Evidence:</u><br>McIntosh Decl. ¶¶ 41- 43, Exs. J, K; Wallace Decl. ¶ 10, Ex. B.<br><br><u>Def.'s Evidentiary Objections</u>:<br>Foundation (Fed. R. Evid. 602); Authentication (Fed. R. Evid. 901); Best Evidence Rule (Fed. R. Evid. 1002). |
| 6. Thrive sells its Thrive Products online through its website, www.thrivecare.co, online through Amazon.com andWalmart.com via retail partnerships with Amazon and Walmart, and in physical brick-and-mortar retail stores at Whole Foods Markets. | Undisputed. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 7. Thrive includes its THRIVE mark and branding on every product it sells, and it has done so since 2013. Each Thrive product bears THRIVE branding, including the word THRIVE in block or bold letters on the package front as well as additional references to THRIVE on the bottle or package. | Disputed that each product sold by TNC includes "additional references to THRIVE on the bottle or package." <br><br> Pl.'s Cited Evidence: <br> McIntosh Decl. ¶ 7. <br><br> Def.'s Evidentiary Objections: <br> Best Evidence Rule (Fed. R. Evid. 1002). |
| 8. In addition to Thrive's product packaging, Thrive's marketing and advertising often uses the term "Thrive skincare" to refer to Thrive Products, as well as terms that include the word "thrive" and words describing the product at issue, such as "Thrive moisturizer," "Thrive cleanser," and "Thrive sunscreen." | Disputed. <br><br> Pl.'s Cited Evidence: <br> McIntosh Decl. ¶ 7. <br><br> Def.'s Evidentiary Objections: <br> Best Evidence Rule (Fed. R. Evid. 1002). <br><br> Def.'s Controverting Evidence <br> De Lilly Decl., Ex. 2, Ex. 3 at 107:20-108:17 (Plaintiff's deposition testimony authenticating Ex. 2). |
| 9. Prices for the Thrive Products range between $12.95 for a soap bar to $54.95 for a VIP Kit containing several Thrive Products. | Undisputed. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 10. Thrive targets both men and women for its Thrive Products. While it sells items such as beard oil to men, Thrive targets female customers for items like sunscreen, cleansers, lotions, and moisturizers. Women have always formed a sizable part, and in recent years the majority, of Thrive's customer base. More than 60 percent of Thrive's purchasers on Amazon are women. That ratio is similar in brick-and-mortar stores such as Whole Foods. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 10.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Hearsay (Fed. R. Evid. 802).<br><br>Def.'s Controverting Evidence:<br>De Lilly Decl., Ex. 2 ("We think guys can do better than the stuff that dominates the market for men's grooming."), Ex. 3 at 136:1-137:3, 155:24-156:14, Ex. 4 at TNC00399 ("                    "), Ex. 5 at TNC00570, TNC00586 (                        ), Ex. 6 ("BRAND NEW LINE – MEN'S FACIAL CARE"), Ex. 7 ("The company's experienced team has created its inaugural line of three distinctive natural care products for men" and "Thrive's first product line fills a significant market gap by offering men uniquely modern, authentic shave/facial grooming products . . . in tastefully masculine packaging"), Ex. 8 at TNC01399 ("Thrive will sell a lot more product for WFM, particularly as a new brand, if it is placed in your Men's Bodycare or Shave sections such as indicated in your planograms."), Ex. 3 at 107:20-108:17, 120:6-121:1, 126:23-127:16, 145:18-146:19, 151:20-152:9, 158:5-22 (Plaintiff's |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
|  | deposition testimony authenticating Exs. 2, 4-8), Exs. 31-33; Declaration of Alex McIntosh in Support of Pl.'s Mot. for Partial Summ. J. (ECF No. 41) ("McIntosh Decl.") ¶ 10 (no reference to ratio of women purchasers "in brick-and-mortar stores such as Whole Foods"). |
| 11. Thrive's mission is to sell the highest quality organic skincare products while using ingredients sourced through partnerships with women-led and smallholder farmers in Costa Rica. Those farmers use regenerative agriculture methods to cultivate native plants for Thrive while improvingthe local soil quality and the livelihoods of rural farming communities. Thrive has gained a reputation and following for being on the leading edge of healthy, natural, sustainable skincare. Thrive has received substantial media coverage of its company and its mission. | Disputed as to Defendant's alleged "reputation and following" and as to "substantial media coverage."<br><br>Pl.'s Cited Evidence: McIntosh Decl. ¶¶ 11-18.<br><br>Def.'s Evidentiary Objections: Foundation (Fed. R. Evid. 602); Hearsay (Fed. R. Evid. 802); Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Def.'s Controverting Evidence De Lilly Decl., Ex. 23 (2,725 Facebook followers), Ex. 24 (7,237 Instagram followers), Ex. 9 (sales and marketing expenditures), Ex. 3 at 196:4-197:4 (Plaintiff's deposition testimony authenticating Ex. 9). |
| 12. Consumers who are interested in Thrive's skincare products are those seeking natural, toxin-free skincare products made with high-quality ingredients. | Disputed.<br><br>Pl.'s Cited Evidence: McIntosh Decl. ¶ 14.<br><br>Def.'s Evidentiary Objections: Foundation (Fed. R. Evid. 602); Hearsay (Fed. R. Evid. 802). |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 13. Thrive has advertised widely on social media and received significant attention from the media and its retail partners such as Amazon for Thrive's high-quality products and business practices. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶¶ 15-18.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Hearsay (Fed. R. Evid. 802).<br><br>Def.'s Controverting Evidence<br>De Lilly Decl., Ex. 23 (2,725 Facebook followers), Ex. 24 (7,237 Instagram followers), Ex. 9 (sales and marketing expenditures), Ex. 3 at 196:4-197:4 (Plaintiff's deposition testimony authenticating Ex. 9). |
| 14. Thrive owns all right, title, and interest in and to U.S. Trademark Registration No. 4,467,942 (the '942 Registration"), which was registered January 14, 2014, for the word mark "THRIVE" in relation to the following goods in International Class 003: "Non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams." The application which matured into the '942 Registration was filed September 11, 2012. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 20, Ex. A.<br><br>Def.'s Controverting Evidence<br>McIntosh Decl. Exs. A, B; De Lilly Decl., Exs. 10-12, Ex. 13 at 46:15-17, 49:23-25; 51:15-52:5, 59:18-60:12; Ex. 1 at 59:19-60:10 (Alex McIntosh's deposition testimony authenticating Ex. 10), Ex. 13 at 19:3-17, 40:10-41:4 (Ecomundi's deposition testimony authenticating Exs. 11, 12), Ex. 14, Ex. 16. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND
ADDITIONAL MATERIAL FACTS

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 15. Thrive's '942 Registration has been deemed "incontestable" by the U.S. Patent & Trademark Office ("PTO"). On March 7, 2020, the PTO accepted the Combined Declaration of Use and Incontestability under Sections 8 & 15 filed by Thrive on January 13, 2020, in which Thrive attested that it had used its THRIVE Mark in commerce on the claimed goods continuously for more than five years since the registration date. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 21, Ex. B.<br><br>Def.'s Controverting Evidence<br>*See supra* Defendant's Response and controverting evidence to No. 14. |
| 16. Thrive owns all right, title, and interest in and to U.S. Trademark Registration 6,164,303 (the "'303 Registration," and, together with the '942 Registration, the "THRIVE Registrations"), which was registered September 29, 2020, for the word mark "THRIVE" in relation to the following goods in International Class 003: "Body and non-medicated soaps and skin cleansing gels; non-medicated skin care preparations, namely, facial lotions, cleansers and creams, oils for cosmetic use, skin moisturizers; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams." The application which matured into the '303 Registration was filed May 2, 2016. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 22, Ex. C.<br><br>Def.'s Controverting Evidence<br>*See supra* Defendant's Response and controverting evidence to No. 14. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 17. The Merriam Webster dictionary definition of "thrive" is "to grow vigorously; to gain in wealth or possessions; to progress toward or realize a goal despite or because of circumstances." Other dictionary definitions are similar, and none use "thrive" in a way that would define a particular quality about skincare products. | Disputed as to other dictionary definitions, and as to connection between "thrive" and a quality of skincare products.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. L.<br><br>Def.'s Controverting Evidence<br>De Lilly Decl., Ex. 15; Declaration of Itamar Simonson in support of Def.'s Opp. to Pl.'s Mot. for Partial Sum. J. ("Simonson Decl.") ¶¶ 22-25; Declaration of Stephen McArthur in Support of Pl.'s Mot. for Partial Summ. J. (ECF No. 33) ("McArthur Decl."), Ex. L (ECF No. 33-2) (including definitions of "thrive" as "to become . . . healthy" and to "flourish"). |
| 18. Thrive has strongly enforced its rights to the THRIVE Mark in relation to skincare products, including sending numerous cease-and-desist letters and pursuing litigation for trademark infringement. These efforts have been successful. Thrive is the only entity that owns a registration for the mark "THRIVE", either standing alone or as the first word in the trademark, in relation to skincare and grooming products. Other registrations or applications that were similar have been refused by the PTO, canceled, or abandoned. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶¶ 23-24.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Def.'s Controverting Evidence<br>De Lilly Decl., ¶ 28, Exs. 34-43, Exs. 17-19, 44, Ex. 1 at 44:10-45:3, 47:3-20, 49:6-50:5, 54:21-55:10 (Alex McIntosh's deposition testimony authenticating Exs. 17-19, 44); Simonson Decl. ¶ 23; Bodnar Decl. ¶¶ 15-18; McIntosh Decl. ¶¶ 23-29, Exs. D, E. F. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 19. Karissa Bodnar founded Defendant TCI in 2014. TCI's first products on the market, beginning in September 2014, were false eyelashes for women undergoing cancer treatments and adhesive for false eyelashes. TCI sold those products under the THRIVE CAUSEMETICS brand. | Undisputed. |
| 20. In August 2015, TCI became aware of Thrive and Thrive's '942 Registration, when TCI received a trademark search report identifying Thrive's '942 Registration as a potential conflict with TCI's THRIVE CAUSEMETICS mark. | Disputed as to "potential conflict with TCI's THRIVE CAUSEMETICS mark." <br><br> Pl.'s Cited Evidence: <br> McArthur Decl., Ex. A at 183:16-187:13, Deposition Exhibit ("Depo. Ex.") 27. <br><br> Def.'s Controverting Evidence <br> McArthur Decl. Depo. Ex. 27 (ECF No. 34-1 at 150) ("Chart of Tagged Records"; no reference to "potential conflict"). |
| 21. TCI expanded into color cosmetics in 2015-16, when it began to sell eyeliner followed by browliner and a color stick. The term "color cosmetics" means makeup. | Undisputed. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 22. In November 2015, the PTO issued an Office Action rejecting an application by TCI to register THRIVE CAUSEMETICS, citing a likelihood of confusion with Thrive's '942 Registration (the "2015 Office Action"). | Disputed both generally and as to claim that Plaintiff owns the '942 Registration, in light of Defendant's abandonment defense.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. E at 4.<br><br>Def.'s Evidentiary Objections:<br>Hearsay (Fed. R. Evid. 802).<br><br>Def.'s Controverting Evidence<br>*See supra* Defendant's Response and controverting evidence to No. 14. |
| 23. By January 8, 2016, Ms. Bodnar of TCI had developed plans for TCI to release at least three different skincare products in 2017. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. A at 114:3-119:18; Depo. Ex. 18 at TCI-00019101.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Ex. A (ECF No. 34-1 at 1) at 114:24-115:4, 118:20-119:8 (no recollection of Depo. Ex. 18 or of plans to release skincare products in 2017). |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 24. On May 26, 2016, TCI filed a response to the 2015 Office Action, arguing as follows:<br><br>"The specific goods in Applicant [TCI]'s application are not identical to those in the THRIVE registration, and the examining attorney does not attempt to argue that they are. Nor are Applicant's goods even in the same category as those in the THRIVE registration. The common category of Applicant's goods is cosmetics, while the common category of the goods in the THRIVE registration is skincare and shaving products. Such products are found in different aisles or departments than standard make-up cosmetics, such as eyeliner, and are distinctly different types of consumer goods. Given the dissimilarity in the marks, a higher nexus in the relatedness of the parties' goods is required to support a finding of likelihood of confusion."<br><br>TCI did not disclose the PTO that, by the time this response was filed, Ms. Bodnar had already developed plans to release skincare products through TCI. | Disputed as to the extent of and arguments in Defendant's response to the 2015 Office Action, and as to alleged 2016 "plans to release skincare products."<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. F at 12.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Ex. F (ECF. No. 33-2 at 25) at 6 (citing inclusion of term "CAUSEMETICS" in mark Plaintiff was seeking to register as basis for distinction), at 8 (citing weakness of "THRIVE" element of mark); *see also supra* Defendant's Response and controverting evidence to No. 23 as to alleged "plans" to release skincare. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 25. TCI's argument to the PTO in response to the 2015 Office Action caused the PTO to withdraw its refusal with respect to Thrive's '942 Registration. | Disputed as to claim that Plaintiff owns the '942 Registration, in light of Defendant's abandonment defense, and as to what "caused" the PTO to withdraw its refusal.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. G at 2.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Ex. G (ECF. No. 33-2 at 48) at MACARTHUR 339 (withdrawing refusal to register with respect to '942 Registration "[b]ased on a review of the Office records"); *see also supra* Defendant's Response and controverting evidence to No. 14. |
| 26. Before TCI responded to the PTO's 2015 Office Action, on April 22, 2016, Ms. Bodnar of TCI contacted Thrive via email and asked for permission to use the THRIVE Mark as part of TCI's brand name. Ms. Bodnar identified TCI as "a color cosmetics brand with a mission to help women going through cancer treatment look and feel better during their time of need." She promised "[w]e will never use the word 'Thrive' without the word 'Causemetics'. . . ." Ms. Bodnar never disclosed to Thrive that, by this time she had developed plans to release skincare products through TCI in 2017. | Disputed that requested referred to "THRIVE Mark" (as opposed to merely "the word Thrive"), that statement regarding use of "Thrive" and "Causemetics" extended beyond description of Defendant's "brand name" or that it was phrased as a promise, and as to "plans to release skincare products through TCI in 2017."<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. A at 196:7-202:2, Depo. Ex. 30.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Depo. Ex. 30 (ECF No. 34-1 at 166); *see also supra* Defendant's Response and controverting evidence to No. 23 as to alleged "plans" to release skincare. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 27. Thrive's co-founder, Alex McIntosh, denied Ms. Bodnar's request for permission to use the THRIVE Mark. Thrive chose not to pursue the issue further at that time because it thought that TCI would abide by Thrive's decision not to allow use of the mark, because of Ms. Bodnar's statement that TCI would "never use the word 'Thrive' without the word 'Causemetics'", and because of Ms. Bodnar's implication that TCI would stay in its lane of women's color cosmetics. | Disputed as to "stay in its lane" and that Defendant's statement regarding use of "Thrive" and "Causemetics" extended beyond description of Defendant's "brand name." <br><br> Pl.'s Cited Evidence: <br> McIntosh Decl. ¶ 25, Ex. D; McArthur Decl., Ex. A at Depo. Ex. 30. <br><br> Def.'s Evidentiary Objections: <br> Best Evidence Rule (Fed. R. Evid. 1002). <br><br> Def.'s Controverting Evidence <br> McArthur Decl., Depo. Ex. 30 (ECF No. 34-1 at 166). |
| 28. In July 2016—shortly after Ms. Bodnar contacted Thrive and represented that TCI would only sell color cosmetics, and shortly after TCI argued to the PTO that TCI's color cosmetics and Thrive's skincare products fell into entirely different categories—Ms. Bodnar sent a pitch presentation to Sephora, a large beauty product retailer. In that presentation, Ms. Bodnar stated TCI had plans to expand from color cosmetics into skincare products in 2017 by launching one skincare product in the third quarter of 2017 and five more skincare products in the fourth quarter of 2017. | Disputed. <br><br> Pl.'s Cited Evidence: <br> McArthur Decl., Ex. A at 99:19-101:13, 109:14-112:24, Depo. Ex. 17 at TCI-00019155. <br><br> Def.'s Controverting Evidence <br> McArthur Decl., Ex. A at 111:5-18; *see also supra* Defendant's Response and controverting evidence to No. 26 as to alleged "represent[ation]" to TNC, and Defendant's Response and controverting evidence to No. 24 as to Defendant's arguments to the PTO. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 29. Thrive sent a cease-and-desist letter to TCI on March 3, 2017, in response to TCI beginning to de-emphasize the term "Causemetics" in TCI's branding. TCI rejected the demand to stop using the name THRIVE on its color cosmeticsproducts and argued again that there would be no consumer confusion between the parties' products because they sold "different product lines" (color cosmetics and skincare products). Thrive relied on the statement by TCI that its makeup products were entirely different "product lines" from Thrive's skincare products, with no overlap, and chose not to pursue the matter further. | Disputed as to reason for Plaintiff's cease and desist letter, the extent of and arguments in Defendant's response to Plaintiff's cease and desist letter, and Thrive's claimed "reliance" on that response.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 26, Exs. E, F.<br><br>Def.'s Controverting Evidence<br>McIntosh Decl. Ex. E (no reference to "TCI beginning to de-emphasize the term 'Causemetics'"), Ex. F; De Lilly Decl., Ex. 19 at TNC00830.00001 ("  ."), Ex. 17 at TNC00831.00001 (" "), Ex. 18 ( ), Ex. 1 at 44:10-45:3, 47:3-20, 49:6-50:5 (Alex McIntosh's deposition testimony authenticating Exs. 17-19). |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 30. In December 2017, an investor in and advisor to TCI, Blythe Jack, notified Ms. Bodnar about Thrive because Ms. Jack had received a communication about Thrive and believed Thrive was similar to TCI. | Disputed as to statement regarding Ms. Jack's "belie[f]." <br><br> Pl.'s Cited Evidence: <br> McArthur Decl., Ex. A at 129:1-23, 190:8-191:11, Depo. Ex. 28. <br><br> Def.'s Controverting Evidence <br> McArthur Decl., Depo. Ex. 28 (ECF No. 34-1 at 162) (no reference to "belie[f]" or "similar[ity]"); Bodnar Decl. ¶ 19. |
| 31. In April 2018, TCI made a second attempt to register its THRIVE CAUSEMETICS mark. On August 28, 2018, the PTO issued an Office Action ("2018 Office Action") rejecting TCI's application, citing a likelihood of confusion with Thrive's '942 Registration and Thrive's then-pending second application for the THRIVE Mark, which matured as the '303 Registration. | Disputed both generally and as to claim that Plaintiff owns the '942 Registration, in light of Defendant's abandonment defense. <br><br> Pl.'s Cited Evidence: <br> McArthur Decl., Ex. H at 2-4. <br><br> Def.'s Evidentiary Objections: <br> Hearsay (Fed. R. Evid. 802). <br><br> Def.'s Controverting Evidence <br> *See supra* Defendant's Response and controverting evidence to No. 14. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND
ADDITIONAL MATERIAL FACTS

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 32. In the 2018 Office Action, the PTO also stated that TCI "must disclaim the wording 'COSMETICS' in the mark because it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services, and thus is an unregistrable component of the mark." The PTO stated "CAUSEMETICS" is merely a misspelling of "COSMETICS" and as such, is merely descriptive and must be disclaimed. | Disputed.<br><br>Pl.'s Cited Evidence: McArthur Decl., Ex. H at 4.<br><br>Def.'s Evidentiary Objections: Hearsay (Fed. R. Evid. 802).<br><br>Def.'s Controverting Evidence McArthur Decl., Ex. H (ECF No. 33-2 at 55) at 4 (no "merely a misspelling" statement or descriptiveness finding as to "CAUSEMETICS" spelling); Bodnar Decl. ¶ 3 (TCI owns U.S. Registration No. 2,938,220 for the mark CAUSE-METICS). |
| 33. In TCI's response to the 2018 Office Action, TCI argued again that its cosmetics products and Thrive's skincare products were "found in different aisles or departments than standard make-up cosmetics, such as eyeliner, and are distinctly different types of consumer goods." TCI further argued that TCI's "Goods and Services are marketed toward and used to help women, whereas [Thrive's] Cited Goods are marketed toward men." | Disputed as to the extent of and arguments in Defendant's response to the 2018 Office Action.<br><br>Pl.'s Cited Evidence: McArthur Decl., Ex. I at 7-8.<br><br>Def.'s Controverting Evidence McArthur Decl., Ex. I (ECF No. 33-2 at 71) at MACARTHUR 366-67 (citing inclusion of term "CAUSEMETICS" in mark Plaintiff was seeking to register as basis for distinction), 368-70 (citing weakness of "THRIVE" element of mark). |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 34. This time, the PTO disagreed with TCI's argument and suspended TCI's second application, maintaining the refusal to register the THRIVE CAUSEMETICS mark due to a likelihood of confusion with Thrive's '942 Registration and then-pending application that matured as the '303 Registration. | Disputed both generally and as to claim that Plaintiff owns the '942 Registration and application that matured as the '303 Registration, in light of Defendant's abandonment defense.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. J.<br><br>Def.'s Evidentiary Objections:<br>Hearsay (Fed. R. Evid. 802).<br><br>Def.'s Controverting Evidence<br>*See supra* Defendant's Response and controverting evidence to Nos. 14 and 16 as to the '942 Registration and '303 Registration, respectively. |
| 35. Recently, on July 28, 2021, the PTO un-suspended TCI's second application for THRIVE CAUSEMETICS and issued an Office Action maintaining the refusal to register due to a likelihood of confusion with both THRIVE Registrations. | Disputed both generally and as to claim that Plaintiff owns the "THRIVE Registrations," in light of Defendant's abandonment defense.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. K.<br><br>Def.'s Evidentiary Objections:<br>Hearsay (Fed. R. Evid. 802).<br><br>Def.'s Controverting Evidence<br>*See supra* Defendant's Response and controverting evidence to Nos. 14 and 16 as to the "THRIVE Registrations." |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 36. In late 2018, after the PTO's rejection of TCI's second trademark application, TCI began selling skincare products under the THRIVE CAUSEMETICS brand. | Disputed that PTO's review of TCI's second trademark application or alleged "rejection" is final.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. A at 45:10-22, 91:10-16, Depo. Ex. 16.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Ex. K (ECF No. 33-2 at 96) at MACARTHUR 387 ("NONFINAL OFFICE ACTION"), MACARTHUR 389 (inviting further response from TCI). |
| 37. TCI sold three skincare products under the radar through 2019. In 2020, TCI significantly expanded and officially announced its skincare line, releasing more than a dozen new products. | Disputed that any products were sold "under the radar."<br><br>Pl.'s Cited Evidence:<br> McArthur Decl., Ex. A at 45:24-47:11, Depo. Ex. 16.<br><br>Def.'s Controverting Evidence<br>Declaration of Ned A. Menninger in support of Def.'s Opp. to Pl.'s Mot. for Partial Summ. J. ("Menninger Decl.") ¶¶ 2-3 (TCI's skincare revenue and advertising expenditures for 2018 and 2019). |
| 38. TCI sells numerous skincare products under the THRIVE CAUSEMETICS brand. The term "skincare products," according to TCI, means products a person uses on their skin. | Undisputed. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND
ADDITIONAL MATERIAL FACTS

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 39. TCI sells a significant amount of its products to men, in addition to women. For example, one of TCI's online advertising campaigns over four months, from November 7, 2019, to February 4, 2020, tracked that $▇▇▇ in sales directly from the campaign were made to customers identified as men, and $▇▇▇ in sales were made to customers of unknown gender. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl. Ex. A at 142:1-145:24, Depo. Ex. 20.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Depo. Ex. 20 (ECF No. 34-1 at 144) at MACARTHUR 147 (sales to men is less than 10% of those to women); McIntosh Decl. ¶ 35 (recognizing that TCI's products appear to be a "women's line," while TNC's products appear to be a "men's line"); Menninger Decl. ¶ 2 (TCI's skincare revenue for 2019 was $▇▇▇ and for 2020 was $▇▇▇); De Lilly Decl. Exs. 31-33. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 40. On June 27, 2019—following the PTO's rejection of TCI's second application to register THRIVE CAUSEMETICS due to a likelihood of confusion with both THRIVE Registrations—Ms. Bodnar called Thrive's co-founder, Mr. McIntosh. Ms. Bodnar begged Thrive to allow TCI to use the"THRIVE" name.  Mr. McIntosh refused her request, pointed out that TCI's actions were confusing consumers and retailers, and reminded Ms. Bodnar about Thrive's trademark registrations. Mr. McIntosh stated that, for there to be any agreement, TCI must at a minimum (1) alter its logo to deemphasize the word "Thrive" as compared to "Causemetics," and (2) agree to compensate Thrive with a significant licensing fee for TCI's past and potentially future use of the THRIVE Mark. | Disputed that PTO's review of TCI's second trademark application or alleged "rejection" is final, that Plaintiff owns the "THRIVE Registrations," in light of Defendant's abandonment defense, that Ms. Bodnar "begged" Mr. McIntosh to do anything, or that Mr. McIntosh requested a "significant" licensing fee.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 29; McArthur Decl. Ex. A Depo. Exs. 32, 33.<br><br>Def.'s Evidentiary Objections:<br>Hearsay (Fed. R. Evid. 802).<br><br>Def.'s Controverting Evidence<br>Bodnar Decl. ¶¶ 17-18; McArthur Decl. Ex. A Depo. Ex. 33 (ECF No. 34-1 at 171) at MACARTHUR 173 (no demand for "significant" license fee); *see also supra* Defendant's Response and controverting evidence to No. 36 as to alleged "rejection" of TCI's second application, and Defendant's Response and controverting evidence to Nos. 14 and 16 as to facts supporting Defendant's abandonment defense as to the "THRIVE Registrations." |
| 41. TCI never responded to Thrive's request to propose a licensing fee or to stop using the THRIVE Mark. | Undisputed. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 42. TCI's website now features a separate "skincare" navigation page, which displays many of the skincare products TCI sells. A portion of that page is shown below.  | Undisputed. |

| | |
|---|---|
| 43. TCI now sells many skincare products under the THRIVE CAUSEMETICS brand. These include face and body cleansers, lotions, creams, moisturizers, sunscreen, lip balm, hand sanitizer, and face oils, all of which are within the scope of Thrive's THRIVE Registrations (collectively, "Infringing Skincare Products"). The Infringing Skincare Products consists of TCI's entire skincare line, including the following products: Overnight Sensation Brightening Sleep Mask; Liquid Balm Lip Treatment; Gravity Defying Transforming Moisturizer; Bright Balance 3-in-1 Cleanser; Defying Gravity Eye Lifting Cream; Liquid Light Therapy All-in-OneFace Serum; Moisture Flash Active Nutrient Toner; Deluxe Travel Defying Gravity Transforming Moisturizer; Defying Gravity Transforming Moisturizer; Deluxe Travel Bright Balance 3-in-1 Cleanser; Moisture-Enriched Hand Sanitizer; Overnight Sensation Gentle Resurfacing Peel; Pumpkin Spice Latte Liquid Lip Balm Treatment; Smart Microdermabrasion 2-in-1 Instant Facial; Defying Gravity Nourishing Hand + Nail Cream; Smart Microdermabrasion 2-in-1 Instant Facial; Buildable Blur CC Cream; Filtered Effects Blurring Primer; all travel sized versions of these products; and all "sets" that include any of these products aspart of the set.<br><br>These products include at least the following SKU numbers:TCC001-TCC019; TP001; TSC002; TSC003; | Disputed that all of the listed products are "skincare" products, that all of the listed products are within the scope of the "THRIVE Registrations," that Plaintiff owns the "THRIVE Registrations," in light of Defendant's abandonment defense, and that any of the products are "[i]nfringing."[1]<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 32; McArthur Decl., Ex. A at 94:1-97:23, Depo. Ex. 16; Ex. C, Depo. Exs. 2, 3; Ex. D, Depo. Ex. 38.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Opinion Testimony by Lay Witness (Fed. R. Evid. 701).<br><br>Def.'s Controverting Evidence<br>Bodnar Decl. ¶ 9 (Buildable Blur CC Cream and Filtered Effects Blurring Primer are makeup products, not included in "Skincare" section of TCI website); Declaration of TNC Expert David Drews (ECF No. 34-5) ("Drews Decl.") at DREWS 30 (acknowledging that Buildable Blur CC Cream and Filtered Effects Blurring Primer may be excluded from infringing products); McIntosh Decl. Exs. A, C (scope of "THRIVE Registrations" does not extend to sleep masks, lip balms, hand sanitizers, peels, concealing creams, or blurring primers); *see also supra* Defendant's Response and controverting evidence to Nos. 14 and 16 as to the "THRIVE Registrations." |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| TSC004; TSC005; TSC006; TSC007; TSC008; TSS002; TSS003; TSS004; TVG007; TVG070; TVG133; TVG134; TVG136; TVG137; TVG138; TVG141; TVG142. | |
| 44. TCI has continued to develop and release Infringing Skincare Products after Thrive filed this litigation. Thrive also has planned to expand by offering additional skincare and grooming products, as evidenced by its pending trademark application. | Disputed as to the phrase "Infringing Skincare Products" (*see supra* n. 1) and as to TNC's expansion plans.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. A Depo. Ex. 12; McIntosh Decl. ¶ 47, Ex. N.<br><br>Def.'s Evidentiary Objections: Hearsay (Fed. R. Evid. 802). |
| 45. TCI has offered for sale, displayed, and sold all of the Infringing Skincare Products online through its website, www.thrivecausemetics.com. | Undisputed except as to the phrase "Infringing Skincare Products" (*see infra* n. 1). |

---

[1] Defendant generally objects to Plaintiff's use of the term "Infringing Skincare Products" on the ground that the question of infringement is the ultimate issue in this action, and none of Plaintiff's individual allegedly undisputed facts that use that term purports to provide comprehensive evidence in support of the ultimate determination of infringement. By failing to object to Plaintiff's use of that term each time it appears, Defendant does not intend to waive this objection; instead, Defendant incorporates its opposition to Plaintiff's motion for partial summary judgment and the evidence cited by Defendant in this Statement of Genuine Disputes of Material Fact and Additional Material Facts in response to Plaintiff's improper and unsupported use of that defined term.

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 46. Both parties' skincare products are inexpensive, ranging between approximately $10 and $60. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 9; McArthur Decl., Ex. A at 87:13-23, Depo. Ex.16<br><br>Def.'s Controverting Evidence<br>Bodnar Decl. ¶ 12 (TCI individual skincare products range from $18 to $68). |
| 47. Both parties' products prominently feature the THRIVE Mark on goods that are identical in kind. This creates a significant likelihood that consumers would believe the products are related or come from the same source. For example, consumers would be likely to believe that TCI's Infringing Skincare Products are a women's line and Thrive's Thrive Products are a men's line that both come from the same company. | Undisputed that TCI's products appear to be (and are) a women's line, and that TNC's products appear to be (and are) a men's line.  Otherwise disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶¶ 34-35, 43; Wallace Decl. ¶ 9; McArthur Decl., Ex. A at 26:21-27:12, Depo. Ex. 10.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602);<br>Opinion Testimony by Lay Witness (Fed. R. Evid. 701);<br>Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Def.'s Controverting Evidence<br>Bodnar Decl. ¶¶ 3-4, 6-7, 11-12; Simonson Decl. ¶¶ 26-28; De Lilly Decl., Ex. 20 (describing Costa Rican plants used in Plaintiff's products and sustainability business model), Ex. 21, Ex. 22, Ex. 3 at 62:1-20, 64:7-20, 98:15-99:9 (Plaintiff's deposition testimony authenticating Exs. 20-22); McIntosh Decl. ¶¶ 34, 35. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 48. In online searches of popular search engines including Google and Bing, and on Google Shopping and Bing Shopping searches, the parties' skincare products frequently appear together and side-by-side, including photographs of TCI's Infringing Skincare Products and of Thrive's Thrive Products, along with links to the purchase portals for each company. A consumer searching online for Thrive's skincare products is highly likely to be presented with images of and links to TCI's Infringing Skincare Products together with Thrive Products. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶¶ 41-42, Exs. J, K; Wallace Decl. ¶¶ 10-11, Ex. B.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Authentication (Fed. R. Evid. 901); Best Evidence Rule (Fed. R. Evid. 1002). |
| 49. TCI has purchased many Google advertising keywords for terms that included the word "thrive" but did not include the word "causemetics". These included the following keywords purchased by TCI: "thrive" (used repeatedly by TCI), "thrive cleanser," "thrive moisturizer," "+thrive +lip +balm," "thrive liquid balm," "thrive promo code," "+thrive +holiday +set," and "thrive lip treatment," among others. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. B at 56:14-20, 68:5-7, 97:8-113:23, Depo. Ex. 45.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Ex. B at 101:7-105:16. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 50. Advertisements for TCI's Infringing Skincare Products, images of those products, and links to TCI's webpages for those products, all frequently appear directly next to Google and Bing search results seeking Thrive's skincare products, including search results for "Thrive skincare," "Thrive natural care," "Thrive cleanser," "Thrive lotion," and "Thrive moisturizer". Online search results for "Thrive skincare," "Thrive lotion," and "Thrive moisturizer," for example, display results for both TCI and Thrive—along with paid ads from TCI. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶¶ 41-43, Exs. J, K; Wallace Decl. ¶ 10, Ex. B.<br><br>Def.'s Evidentiary Objections: Foundation (Fed. R. Evid. 602); Authentication (Fed. R. Evid. 901); Best Evidence Rule (Fed. R. Evid. 1002). |
| 51. TCI has paid to advertise its products on Amazon, which is a major online retail partner of Thrive. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. B at 95:19-24.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Ex. B at 95:19-96:4 ("I don't know the ad platform on Amazon at all so I can't answer what we did or what happened.") |
| 52. Thrive's Thrive Products and TCI's Infringing Skincare Products also appear together in searches on online marketplaces, including Amazon, Walmart.com, eBay, and Mercari. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 44, Ex. L<br><br>Def.'s Evidentiary Objections: Foundation (Fed. R. Evid. 602); Authentication (Fed. R. Evid. 901).<br><br>Def.'s Controverting Evidence<br>Bodnar Decl. ¶¶ 6-7; McArthur Decl., Ex. A at 79:10-85:11. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 53. TCI is aware that people purchase TCI products and resell those products on other website, including Amazon.com. | Undisputed. |
| 54. Both Thrive and TCI advertise their skincare products on social media, including Facebook and Instagram. | Undisputed. |
| 55. TCI's use of the THRIVE Mark has caused actual confusion. A customer who purchased Thrive sunscreen on Amazon gave a highly laudatory review only to end it with: "Well done, Thrive Causemetics." Another Amazon customer left a positive review for Thrive's moisturizer stating, "Thrive is an up and comer in the cosmetics field. Their mascara is phenomenal." Thrive does not sell mascara, but TCI does. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 38, Ex. G.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Authentication (Fed. R. Evid. 901); Best Evidence Rule (Fed. R. Evid. 1002). |
| 56. Walmart—a retail partner of Thrive—erroneously listed Thrive's products as originating from TCI on the Walmart.com webpage where consumers could purchase Thrive's products. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 39, Ex. H.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Authentication (Fed. R. Evid. 901); Best Evidence Rule (Fed. R. Evid. 1002). |
| 57. A consumer posting an online product listing for Thrive's products on the Poshmark online marketplace stated in the ad that Thrive's products originated from TCI. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 40, Ex. I.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Authentication (Fed. R. Evid. 901). |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 58. A potential branding partnership between Thrive and two professional athletes broke down because of confusion between Thrive and TCI. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶¶ 45-46, Ex. M.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Hearsay (Fed. R. Evid. 802).<br><br>Def.'s Controverting Evidence<br>Declaration of Lisa Ertz ("Ertz Decl.") ¶¶ 4-5. |
| 59. Thrive's marketing expert conducted two 600-person surveys comparing skincare products by Thrive to products by TCI and control products from third parties. The survey that tested Thrive's newest packaging design found a net 54.5% rate of confusion between Thrive's product and TCI's skincare product. The survey that tested Thrive's older packaging design found a net 56.6% rate of confusion between Thrive's product and TCI's skincare product. | Disputed.<br><br>Pl.'s Cited Evidence:<br>Wallace Decl. ¶ 9, Ex. A.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602).<br><br>Def.'s Controverting Evidence<br>Simonson Decl. ¶¶ 10-21, 26-33, Ex. A at 16-24, 30-34. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 60. TCI considers certain products to be hybrids that are both skincare products and color cosmetics. These hybrid products include TCI's Buildable Blur CC Cream and Filtered Effects Blurring Primer, which TCI has advertised as being skincare products that provide skin benefits, including acting as a moisturizer and a sunscreen. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 48, Ex. O; McArthur Decl., Ex. A at 29:9-24.<br><br>Def.'s Controverting Evidence<br>Bodnar Decl. ¶ 9 (Buildable Blur CC Cream and Filtered Effects Blurring Primer are makeup products, not included in "Skincare" section of TCI website); Drews Decl. at DREWS 30 (acknowledging that Buildable Blur CC Cream and Filtered Effects Blurring Primer may be excluded from skincare products). |
| 61. TCI's hybrid skincare-cosmetic products appear together with Thrive Products in online searches for Thrive skincare products. | Disputed as to characterization of "hybrid skincare-cosmetic products."<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl., Exs. J, K; Wallace Decl., Ex. B.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Authentication (Fed. R. Evid. 901); Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Def.'s Controverting Evidence<br>*See supra* Defendant's Response and controverting evidence to No. 60. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 62. Thrive used the term "Thrive Tribe" extensively as part of its brand messaging and advertising from December 2013 to 2020. TCI used the term "Thrive Tribe" in its own advertising from approximately 2018 to mid-2020. TCI even acquired and advertised using a vanity URL "thrivetribe". | Disputed as to TNC's "exensive[]" use of the term "Thrive Tribe."<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 19; McArthur Decl., Ex. A at 175:23-177:17, Depo. Exs. 35, 36; Ex. B at 124:17-125:12.<br><br>Def.'s Evidentiary Objections:<br>Best Evidence Rule (Fed. R. Evid. 1002). |
| 63. In or about 2017, TCI began calling its headquarters the "Thrive Lab" in marketing and advertising. TCI used the term "Thrive Lab" in its advertising without including the word "Causemetics" in that phrase. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. A at 177:19-178:11; Ex. B at 125:24-126:9.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Ex A at 177:19-178:4; Bodnar Decl. ¶ 5. |
| 64. TCI has spent millions of dollars on advertising for its Infringing Skincare Products. TCI spends approximately ██% of its revenue from sales of Infringing Skincare Products on advertising for those products. | Disputed as to percentage of skincare revenue spent on advertising, and as to the phrase "Infringing Skincare Products" (see supra n. 1).<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. D at 41:3-42:13, Depo. Ex. 38.<br><br>Def.'s Controverting Evidence<br>McArthur Decl., Depo Ex. 38 (reflecting advertising expenditures less than ██% of TCI skincare revenue). |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 65. TCI'S total revenue in 2020 was $█████. The media, both industry-specific and national, has heavily covered TCI and Ms. Bodnar. As of July 2020, TCI was reportedly working with Goldman Sachs to assess an IPO or a sale to a larger company. | Disputed as to nature of work with Goldman Sachs.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. C at 77:15-17; Ex. M.<br><br>Def.'s Controverting Evidence<br>Menninger Decl. ¶ 8. |
| 66. TCI's total profits from sales of all Infringing Skincare Products from 2018 through May 2021 are $█████. Total profits are calculated by subtracting TCI's cost of goods sold and direct expenses from gross revenue. | Disputed.<br><br>Pl.'s Cited Evidence:<br>Drews Decl. ¶ 5, Ex. A at 1; Ex. B at 29.<br><br>Def.'s Controverting Evidence<br>Declaration of Karl Schulze in support of Def's Opp. to Pl.'s Mot. for Summ. J. ("Schulze Decl.") ¶¶ 8-9, Ex. A at 6; Menninger Decl. ¶¶ 5-7; *see supra* Defendant's Response and controverting evidence to No. 60. |
| 67. TCI's total profits on sales of purely skincare products are $█████. TCI's total profits on sales of hybrid cosmetics- skincare products are █████. | Disputed.<br><br>Pl.'s Cited Evidence:<br>Drews Decl. ¶ 5, Ex. A at 1-2, Ex. B at 29.<br><br>Def.'s Controverting Evidence:<br>Schulze Decl. ¶¶ 8-9, Ex. A at 6; Menninger Decl. ¶¶ 5-7; *see supra* Defendant's Response and controverting evidence to No. 60. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 68. In its calculations of profits, TCI deducted a variety of indirect costs, which TCI calculated by allocating a percentage of those costs to each product based on the percentage of revenue earned from that product. Those allocations had no relation to actual costs for production or sale of any particular product. | Disputed<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. C at 55:8-58:7, 72:12-22; 76:4-77:9; Ex. D at 43:3-45:8, 49:19-22, 67:4-73:25, Depo. Ex. 39.<br><br>Def.'s Controverting Evidence<br>Schulze Decl. ¶¶ 8-9, Ex. A at 6; Menninger Decl. ¶¶ 5-7. |
| 69. TCI sought to deduct overhead expenses that include a wide variety of items such as rent, travel, employee costs, public relations, donations, bank or consulting fees, legal fees, and taxes. Those overhead expenses had no relation to the production or sale of any particular product but were merely allocated on a percentage basis based on the revenue produced by each product. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. C at 55:23-58:7, 63:17-66:20, 76:4-77:9; Ex. D at 49:23-50:23, Depo. Ex. 39.<br><br>Def.'s Controverting Evidence<br>*See supra* Defendant's Response and controverting evidence to No. 68. |
| 70. TCI's pure allocation of costs was created solely for litigation and is not how TCI allocates costs as part of its business. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McArthur Decl., Ex. D at 75:13-76:2.<br><br>Def.'s Controverting Evidence<br>Menninger Decl. ¶¶ 6-7. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND
ADDITIONAL MATERIAL FACTS

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 71. Corrective advertising damages, as calculated by Thrive's damages expert, total $5█████. That amount was determined by taking 25% of TCI's stated advertising budget for the Infringing Skincare Products. | Disputed.<br><br>Pl.'s Cited Evidence:<br>Drews Decl. ¶ 6, Ex. A at 1, 3.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602).<br><br>Def.'s Controverting Evidence<br>Drews Decl. ¶ 6 (no opinion on value or devaluation of Plaintiff's mark), Ex. A at DREWS 10 (no opinion on value or devaluation of Plaintiff's mark), DREWS 30 (acknowledging that Buildable Blur CC Cream and Filtered Effects Blurring Primer may be excluded from skincare products); Bodnar Decl. ¶ 9 (Buildable Blur CC Cream and Filtered Effects Blurring Primer are makeup products, not included in "Skincare" section of TCI website); De Lilly Decl., Ex. 1 at 15:19-21, 20:16-21:9. |
| 72. Corrective advertising damages for purely skincare products total $█████. Corrective advertising damages for hybrid cosmetics-skincare products total $█████. | Disputed.<br><br>Pl.'s Cited Evidence:<br>Drews Decl. ¶ 6, Ex. A at 1, 3.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602).<br><br>Def.'s Controverting Evidence<br>*See supra* Defendant's Response and controverting evidence to No. 71. |

| Plaintiff's Alleged Undisputed Facts | Defendant's Response |
|---|---|
| 73. Unless TCI is forced to stop using the THRIVE Mark on skincare products, the parties will continue to compete against each other in the same market selling the same types of goods, which will only continue to exacerbate the consumer confusion problem caused by TCI. | Disputed.<br><br>Pl.'s Cited Evidence:<br>McIntosh Decl. ¶ 49.<br><br>Def.'s Evidentiary Objections:<br>Foundation (Fed. R. Evid. 602); Opinion Testimony by Lay Witness (Fed. R. Evid. 701).<br><br>Def.'s Controverting Evidence<br>De Lilly Decl., Ex. 3 at 136:1-137:3, 155:-156:14, Exs. 2, 4-8, 15, 20-22, Ex. 3 at 62:1-20, 64:7-20, 98:15-99:9, 107:20-108:17, 120:6-121:1, 126:23-127:16, 145:18-146:19, 151:20-152:9, 158:5-22 (Plaintiff's deposition testimony authenticating Exs. 2, 4-8, 20-22), Exs. 34-43; Bodnar Decl. ¶¶ 3-4, 6-7, 10-14, 19; Simonson Dec. ¶¶ 26-33; McArthur Decl., Ex. A at 79:10-85:11; McIntosh Decl. ¶¶ 34, 35. |

## II.    TCI'S ADDITIONAL MATERIAL FACTS

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
| --- | --- |
| 74.    TCI was established by its founder and Chief Executive Officer Karissa Bodnar in 2014. | Bodnar Decl. ¶ 2. |
| 75.    Ms. Bodnar envisioned a beauty company that sells high-end luxury products and makes a difference in women's lives. To that end, TCI makes significant charitable donations in support of issues important to women, such as fighting breast cancer, surviving domestic abuse, emerging from homelessness, and adjusting to life outside of military service. | Bodnar Decl. ¶ 2. |
| 76.    Ms. Bodnar coined the word "Causemetics" to reflect TCI's deep commitment to supporting charitable causes critical to women's well being. | Bodnar Decl. ¶ 3. |
| 77.    In 2014, TCI sold its first products of false eyelashes and eyelash adhesive.  By 2015, TCI was also selling color cosmetics, and in 2018, added skincare to its existing product line. | Bodnar Decl. ¶ 4. |
| 78.    TCI achieved remarkable success almost from inception. | Bodnar Decl. ¶ 5, Ex. A (over 637,000 followers on Facebook), Ex. B (over 531,000 followers on Instagram); Menninger Decl. ¶¶ 2-3. |
| 79.    TCI has expended substantial resources in developing its brand and gaining commercial recognition of the THRIVE CAUSEMETICS mark. | Menninger Decl. ¶ 3. |
| 80.    Plaintiff was established in late 2012 by its co-founder and Chief Executive Officer Alex McIntosh. | De Lilly Decl., Ex. 3 at 32:12-19; 41:5-24; 47:5-8. |
| 81.    Under the mark THRIVE, Plaintiff sells skincare and grooming | De Lilly Decl., Ex. 3 at 41:5-24; 47:5-8, Exs. 2, 4-8, 20, 25, 31-33, Ex. 3 at |

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| products principally targeted at men and featuring ingredients ostensibly sourced from regenerative Costa Rican "super-plants." | 98:15-99:9, 107:20-108:17, 120:6-121:1, 126:23-127:16, 145:18-146:19, 151:20-152:9, 158:5-22 (Plaintiff's deposition testimony authenticating Exs. 2, 4-8, 20). |
| 82.    Plaintiff's business model is focused on sustainability and environmentally conscious product development. | De Lilly Decl., Ex. 3 at 41:5-24, 47:5-8, Exs. 7, 26, 31-33, Ex. 3 at 151:20-152:9 (Plaintiff's deposition testimony authenticating Ex. 7); McIntosh Decl. ¶¶ 11-12. |
| 83.    Since its founding, Plaintiff's commercial performance has been modest, at best.  Its annual net revenue has ranged from $██████ in 2014 to a high of $██████ in 2020, and it has incurred significant net losses every year. | De Lilly Decl., Exs. 9, 3 at 196:4-197:4 (Plaintiff's deposition testimony authenticating Ex. 9). |
| 84.    Plaintiff's "sales and marketing" expenditures have also been modest, ranging from $██████ in 2013 to a high of $██████ in 2019. | De Lilly Decl., Exs. 9, 3 at 196:4-197:4 (Plaintiff's deposition testimony authenticating Ex. 9). |
| 85.    As of mid-August 2021, Plaintiff had just 7,237 followers on Instagram and 2,725 followers on Facebook. | De Lilly Decl., Exs. 23, 24. |
| 86.    Plaintiff learned about TCI and THRIVE CAUSEMETICS in April of 2016 when Ms. Bodnar contacted Plaintiff by e-mail. | Bodnar Decl. ¶ 15; McIntosh Decl., Ex. D. |
| 87.    During that exchange, Mr. McIntosh declined Ms. Bodnar's request to use the word "thrive" as part of TCI's brand name and stated that Plaintiff "already sell[s] female cosmetic products," and that Plaintiff was ostensibly entitled to "protection of the thrive mark across the gamut of personal care products that fall within | Bodnar Decl. ¶ 15; McIntosh Decl., Ex. D. |

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| our owned mark," but did not demand that TCI cease use of of its mark. | |
| 88.     Plaintiff believed there was overlap in the parties' products and that TCI was infringing Plaintiff's claimed trademark rights as early as April of 2016. | McIntosh Decl., Ex. D. |
| 89.     Nearly a year later, on March 3, 2017, Plaintiff sent TCI a cease-and-desist letter alleging trademark infringement. | Bodnar Decl. ¶ 16; McIntosh Decl., Ex. E. |
| 90.     In the March 3, 2017 letter, Plaintiff's counsel asserted that TCI's "use of the identical term [THRIVE] for highly related products infringes Thrive's trademark rights." | McIntosh Decl., Ex. E. |
| 91.     TCI promptly responded on April 12, 2017, and explained its position that confusion was unlikely because (1) TCI's coined phrase "Causemetics," coupled with differences in the parties' overall branding and product lines, differentiated the parties' marks to consumers, (2) the term "thrive" is a commonly used term in personal care, health, and beauty spaces, and (3) Plaintiff had not created sufficient market awareness of its brand. | Bodnar Decl. ¶ 16; McIntosh Decl., Ex. F. |
| 92.     Plaintiff never responded to this letter. | Bodnar Decl. ¶ 16. |
| 93.     Over two years later in June 2019, Ms. Bodnar reached out to Mr. McIntosh by phone regarding the companies' respective marks and a potential "peaceful coexistence" agreement. | Bodnar Decl. ¶ 17. |

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| 94.     The parties did not reach any agreement during that conservation and had no further communication. | Bodnar Decl. ¶¶ 17-18. |
| 95.     TCI is unaware of any instance of actual confusion between the parties or their respective marks or products. | Bodnar Decl. ¶ 19. |
| 96.     Since 2016, Plaintiff has believed that the parties' products overlapped and that TCI was infringing Plaintiff's mark. | McIntosh Decl., Exs. D, E; De Lilly Decl., Exs. 17-19, 44, Ex. 1 at 44:10-45:3, 47:3-20, 49:6-50:5, 54:21-55:10 (Alex McIntosh's deposition testimony authenticating Exs. 17-19). |
| 97.     Ecomundi Ventures LLC ("Ecomundi") owned Application Serial No. 85726058 (the "'058 Application") for the mark THRIVE. | De Lilly Decl., Ex. 11, Ex. 13 at 19:3-20:2 (Ecomundi's deposition testimony authenticating Ex. 11). |
| 98.     Ecomundi entered into an agreement with Plaintiff, effective May 23, 2013, to purportedly assign all right, title, interest, and goodwill in the '058 Application to Plaintiff. | De Lilly Decl., Ex. 12, Ex. 13 at 40:10-41:12 (Ecomundi's deposition testimony authenticating Ex. 12). |
| 99.     Although Ecomundi claimed to have worked on product packaging and marketing materials with the THRIVE mark prior to May 2013, there is no evidence that these materials were even shown to consumers or retailers, and Ecomundi never sold a product bearing the THRIVE mark. | De Lilly Decl., Ex. 13 at 46:15-17, 49:16-25, 51:15-52:5. |
| 100.   The '058 Application matured into U.S. Registration Nos. 4,467,942 and 6,164,303 (the "'942" and "'303" Registrations). | De Lilly Decl., Exs. 14, 16. |
| 101.   The few instances of alleged actual confusion identified by Plaintiff reflect (if anything) reverse confusion, and Plaintiff conceded that it is not aware of any other instances of confusion. | McIntosh Decl., Exs. G, H, I M; De Lilly Decl., Ex. 3 at 265:12-266:1. |

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| 102.   The ordinary dictionary definition of the word "thrive" is "prosper or flourish" or to "grow vigorously or luxuriantly; improve physically." | De Lilly Decl., Ex. 15; Simonson Decl. ¶¶ 22-25 |
| 103.   Plaintiff has represented to the public that its skincare products are "regenerative," "empower your skin," and "'go under the hood' to work with your body to help skin be healthy and resilient from the inside out." | De Lilly Decl., Ex. 20, Ex. 25, Ex. 3 at 98:15-99:9 (Plaintiff's deposition testimony authenticating Ex. 20). |
| 104.   The mark THRIVE thus *describes* the characteristics of the Plaintiff's products – they (ostensibly) help consumers' skin physically improve, or thrive. | De Lilly Decl., Ex. 20, Ex. 25, Ex. 3 at 98:15-99:9 (Plaintiff's deposition testimony authenticating Ex. 20), Ex. 3 at 54:7-16, 55:8-10. |
| 105.   At best, the mark THRIVE is suggestive of these benefits, and of Plaintiff's business model that ostensibly helps the environment and communities to thrive. | De Lilly Decl., Ex. 20, Ex. 3 at 98:15-99:9 (Plaintiff's deposition testimony authenticating Ex. 20), Ex. 3 at 51:12-54:6. |
| 106.   There are currently 1074 active registrations and applications with the United States Patent and Trademark Office ("PTO") that include the word "thrive," alone or in combination with other words, and hundreds more than include variations on the word.  Many of these are for personal care products or services that are the same or related to those offered by Plaintiff. | De Lilly Decl. ¶ 28, Exs. 34-43. |
| 107.   Prior to 2018, the year Plaintiff alleges the infringement began, Plaintiff's commercial performance was modest:  its "sales and marketing" expenses ranged from $███ at the lowest in 2013 to $███ at the highest in 2017, and its revenues in the same period ranged from $███ at the | De Lilly Decl., Ex. 9, Ex. 3 at 196:4-197:4 (Plaintiff's deposition testimony authenticating Ex. 9). |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| lowest in 2014 to $█████ at the highest in 2018. | |
| 108. Since 2018, Plaintiff's commercial strength has continued to be mediocre as evidenced by its yearly revenues and net losses, and minor social media presence. | De Lilly Decl., Ex. 9, Ex. 3 at 196:4-197:4 (Plaintiff's deposition testimony authenticating Ex. 9), Ex. 23, Ex. 24. |
| 109. Plaintiff's mission focuses primarily on sustainability, and conveys the impression of earthiness, manliness, and active, outdoor living. | De Lilly Decl., Ex. 3 at 47:5-8, Exs. 2, 4-8, 20, 25, 26, Ex. 3 at 98:15-99:9, 107:20-108:17, 120:6-121:1, 126:23-127:16, 145:18-146:19, 151:20-152:9, 158:5-22 (Plaintiff's deposition testimony authenticating Exs. 2, 4-8, 20). |
| 110. Consistent with that mission, Plaintiff's products are made from regenerative Costa Rican "super-plants" marketed as having natural, "unique" properties that protect the skin from the outer elements, remove the effects of an active, outdoor lifestyle or facilitate shaving. | De Lilly Decl., Ex. 3 at 47:5-8, Exs. 6, 7, 20, 25, 26-30, Ex. 3 at 98:15-99:9, 145:18-146:19, 151:20-152:9 (Plaintiff's deposition testimony authenticating Exs. 6, 7, 20). |
| 111. One or more of these "super-plants" are in all of Plaintiff's products and tied to Plaintiff's sustainability mission. | De Lilly Decl., Ex. 3 at 47:5-8, 52:7-54:6, Exs. 6, 7, 20, 25-30, Ex. 3 at 98:15-99:9, 145:18-146:19, 151:20-152:9 (Plaintiff's deposition testimony authenticating Exs. 6, 7, 20). |
| 112. Plaintiff's target consumer is men; its first three products were for male grooming with earthy and masculine scents, its product packaging was modeled after male shoulders, Plaintiff's fictional target consumer was described by Plaintiff's branding agency as an "urban woodsman" named "Adam," and third-party articles | De Lilly Decl., Ex. 3 at 136:1-137:3, 155:-156:14, Exs. 2, 4-8, 20, 31-33, Ex. 3 at 98:15-99:9, 107:20-108:17, 120:6-121:1, 126:23-127:16, 145:18-146:19, 151:20-152:9, 158:5-22 (Plaintiff's deposition testimony authenticating Exs. 2, 4-8, 20). __ |

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| regarding Plaintiff (and featuring Mr. McIntosh) have routinely characterized Plaintiff as a "men's skin care company. | |
| 113.   Plaintiff's individual products are priced in the range of $12.95 to $24.95, with kits priced from $25.95 to $54.95. | De Lilly Decl., Ex. 22, Ex. 3 at 64:7-23(Plaintiff's deposition testimony authenticating Ex. 22). |
| 114.   TCI has a mission of charitable giving primarily focused on women empowerment. | Bodnar Decl. ¶ 2. |
| 115.   TCI's mark THRIVE CAUSEMETICS merges the company's philanthropic purpose with its products. | Bodnar Decl. ¶ 3. |
| 116.   TCI primarily sells high-end luxury color cosmetics and some high-end skincare products, both principally marketed to women. | Bodnar Decl. ¶¶ 8-13. |
| 117.   TCI markets its skincare as having the ability to beautify or improve the appearance of skin or to cleanse the skin after a makeup routine. | Bodnar Decl. ¶ 11. |
| 118.   TCI's skincare products are individually priced in the range of $18 to $68, with skincare sets priced from $35 to $73. | Bodnar Decl. ¶ 12. |
| 119.   Plaintiff's mark is the word THRIVE, and TCI's mark is THRIVE CAUSEMETICS. | Bodnar Decl. ¶ 3; McIntosh ¶¶ 2-3. |
| 120.   Every TCI product includes the entire THRIVE CAUSEMETICS mark | Bodnar Decl. ¶ 4. |
| 121.   TCI owns a federal trademark registration for the stand-alone term CAUSE-METICS with respect to cosmetics. | Bodnar Decl. ¶ 3. |
| 122.   The overall color scheme of Plaintiff's packaging is consistently in brown, tan, black, and red tones with the "Thrive" mark in bold, chunky font. | De Lilly Decl., Exs. 21, 22, 27-30, Ex. 3 at 62:1-20, 64:7-20 (Plaintiff's deposition testimony authenticating Exs. 21, 22). |

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| 123.   TCI's packaging consistently uses white or teal tones, and the mark is in slim, all lower-case black, white, teal, or silver font. | Bodnar Decl. ¶ 4. |
| 124.   The parties have coexisted since 2014 – nearly seven years – and Plaintiff has offered at most five instances of alleged actual confusion:  three statements by online customers, a mistaken reference on Walmart.com, and a passing comment by the parent of an athlete. | McIntosh Decl., Exs. G, H, I M; De Lilly Decl., Ex. 3 at 265:12-266:1; Bodnar Decl. ¶ 19; Ertz Decl. ¶¶ 4-5. |
| 125.   Plaintiff's survey methodology suffers from multiple fatal flaws, including as to its overall design, the use of suggestive and leading questions, and the failure to replicate actual marketplace conditions. | Simonson Decl. ¶¶ 6-21, Ex. A at 16-25. |
| 126.   TCI's expert conducted a survey based on widely accepted survey principles and found *zero* confusion between the parties and their respective products. | Simonson Decl. ¶¶ 26-33, Ex. A at 25-34. |
| 127.   Plaintiff's products are available at brick-and-mortar retailers like Whole Foods, on Plaintiff's website, and on Amazon.com and Walmart.com. | De Lilly Decl., Ex. 3 at 157:2-159:2, 170:11-24, Exs. 8, 21, 22, Ex. 3 at 62:1-20, 64:7-20, 158:5-22 (Plaintiff's deposition testimony authenticating Ex. 8, 21-22), Ex. 45 at 15-21. |
| 128.   TCI does not sell its products through *any* of the locations at which Plaintiff sells its products; instead, TCI sells its products *only* through its website thrivecausemetics.com. Although unauthorized third parties resell TCI products online through other websites, the occurrence of such unauthorized resales is infrequent. | Bodnar Decl. ¶¶ 6-7; Menninger Decl. ¶ 4. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| 129. Although TCI's color cosmetics (not skincare products) were once sold at certain Ulta locations through a limited-time partnership and at small beauty boutiques, Plaintiff has never sold its products at Ulta or at any of these boutiques. | Bodnar Decl. ¶ 7. |
| 130. Purchasers of TCI's products are sophisticated and care about the personal products they use; indeed, TCI's customers provide extensive and regular feedback to TCI concerning product development and naming. TCI's decision to sell skincare was a direct result of customer demand, feedback, and support. | Bodnar Decl. ¶¶ 13-14. |
| 131. TCI does not presently have concrete expansion plans, and certainly no plans to offer products made from regenerative Costa Rican "super-plants." | Bodnar ¶ 10. |
| 132. Plaintiff's figure improperly includes revenue associated with two of TCI's color cosmetics, Buildable Blur CC Cream and Filtered Effects Blurring Primer, which are not within the scope of Plaintiff's claims. | Bodnar Decl. ¶ 9; Drews Decl. ¶ 6, DREWS 30 (acknowledging that Buildable Blur CC Cream and Filtered Effects Blurring Primer may be excluded from skincare products). |
| 133. TCI's overhead costs consist of rent, employee salaries and benefits, legal fees, charitable donations, travel, entertainment, non-legal professional fees, insurance, and income tax. | Menninger Decl. ¶¶ 5-7. |
| 134. TCI's sales are driven by multiple factors other than the "THRIVE" element of its name. | Bodnar Decl. ¶¶ 13-14; Schulze Decl. ¶¶ 11-12. |
| 135. Plaintiff has offered no evidence of the value or devaluation of the THRIVE mark. | Drews Decl. ¶ 6, Ex. A at DREWS 10; De Lilly Decl., Ex. 1 at 15:19-21, 20:16-21:9; Schulze Decl. ¶ 14, Ex. A at 14. |

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS

| Defendant's Additional Undisputed Material Fact | Supporting Evidence |
|---|---|
| 136.   Plaintiff has not made actual corrective advertising expenditures and has instead indicated that such expenditures would *not* be a "good investment." | De Lilly Decl., Ex. 3 at 269:3-270:4; Drews Decl., Ex. A at DREWS 29; Schulze Decl. ¶ 15, Ex. A at 13-16. |
| 137.   Plaintiff's proposed figure corrective advertising figure would be equal to *8.7 times* Plaintiff's total sales and marketing expenditures, and *3.8 times* Plaintiff's total net revenue for the same period of alleged infringement. | Schulze Decl. ¶ 15, Ex. A at 13-16. |

DATED:  August 23, 2021                  SIDLEY AUSTIN LLP

By: */s/ Rollin A. Ransom*
       Rollin A. Ransom

*Attorneys for Defendant*
*Thrive Causemetics, Inc.*

DEFENDANT THRIVE CAUSEMETICS, INC.'S STATEMENT OF GENUINE DISPUTES AND
ADDITIONAL MATERIAL FACTS