Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:20-cv-9091-PA-AS |
| Plaintiff, | Hon. Percy Anderson |
| v. | **TABLE OF CONTENTS TO THE DECLARATION OF LAUREN DE LILLY IN SUPPORT OF DEFENDANT THRIVE CAUSEMETICS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| THRIVE CAUSEMETICS, INC., | |
| Defendant. | Date:   September 13, 2021 |
| | Time:   1:30 p.m. |
| | Place:  Courtroom 9A |

# TABLE OF CONTENTS

| Ex. | Description | Page |
|-----|-------------|------|
| 1 | Excerpts from the certified reporter's transcript of the deposition of Alexander McIntosh taken on July 30, 2021. | 010 |
| 2 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00143-TNC00144. | 035 |
| 3 | Excerpts from the certified reporter's transcript of the deposition of Plaintiff Thrive Natural Care, Inc. taken on July 23, 2021. | 038 |
| 4 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00391-TNC00399. | 084 |
| 5 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00556-TNC00597. | 094 |
| 6 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00294-U-TNC00295-U. | 137 |
| 7 | a true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00130-U-TNC00131-U. | 140 |
| 8 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC01398-TNC01400. | 144 |
| 9 | A true and correct copy of excerpts of a document produced by Plaintiff in this action and Bates numbered TNC01282-TNC01299. | 147 |
| 10 | A true and correct copy of the Statement of Use filed by Plaintiff with the United States Patent and Trademark Office on October 4, 2013 regarding U.S. Application Serial No. 85726058. | 156 |
| 11 | A true and correct copy of U.S. Trademark Application Serial No. 85726058 for the THRIVE mark, dated September 11, 2012. | 164 |
| 12 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC01196-TNC01197. | 171 |
| 13 | A true and correct copy of excerpts from the certified reporter's transcript of the deposition of Ecomundi Ventures, LLC taken on July 30, 2021. | 174 |
| 14 | A true and correct copy of the United States Patent and Trademark Office's November 5, 2013 Office Action completing Plaintiff's Request to Divide U.S. Trademark Application Serial No. 85726058. | 191 |

| Ex. | Description | Page |
|-----|-------------|------|
| 15 | A true and correct copy of the Collins English Dictionary's definition and meaning of "Thrive." | 195 |
| 16 | A true and correct copy of Plaintiff's Request to Divide U.S. Trademark Application Serial No. 85726058. | 205 |
| 17 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00831. | 211 |
| 18 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00819. | 214 |
| 19 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00830. | 216 |
| 20 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC01208. | 222 |
| 21 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC01160-TNC01161. | 224 |
| 22 | A true and correct copy of true and correct copy of Exhibit 54 to the deposition of Plaintiff, taken on July 23, 2021. | 227 |
| 23 | A true and correct copy of a printout of Plaintiff's official Facebook account homepage. | 231 |
| 24 | A true and correct copy of a printout of Plaintiff's official Instagram account homepage. | 233 |
| 25 | A true and correct copy of the "Superplant Skincare" webpage from Plaintiff's official website thrivecare.co. | 235 |
| 26 | A true and correct copy of the "Regenerative Mission" webpage from Plaintiff's official website thrivecare.co. | 243 |
| 27 | A true and correct copy of the product detail webpage for the product Daily Defense Sunscreen Balm (Mineral SPF 30) from Plaintiff's official website thrivecare.co. | 250 |
| 28 | A true and correct copy of the product detail webpage for the product Face Wash from Plaintiff's official website thrivecare.co. | 259 |
| 29 | A true and correct copy of the product detail webpage for the product Energy Scrub from Plaintiff's official website thrivecare.co. | 267 |
| 30 | A true and correct copy of the product detail webpage for the product Shave Oil from Plaintiff's official website thrivecare.co. | 275 |
| 31 | A true and correct copy of an article published in the San Francisco Busines Times, *Can Amazon lift sales at this S.F. skincare business by $1 million?* | 284 |

| Ex. | Description | Page |
|---|---|---|
| 32 | A true and correct copy of an article published in Reuters, *Support the Evolution of Men's Shave and Skin Care.* | 288 |
| 33 | a true and correct copy of an article published in the San Francisco Business Times, *S.F. skincare startup to get bump from Amazon.* | 293 |
| 34 | USPTO's query results for the search term "thrive*." | 297 |
| 35 | A true and correct copy of a webpage for Wakaya Perfection Fijian Kosher Sea Salt. | 341 |
| 36 | A true and correct copy of an Amazon.com webpage for Thrive therapeutic cold therapy packs, therapeutic hot therapy packs, and first aid kits from Ashford Point LLC. | 345 |
| 37 | A true and correct copy of the home webpage from the website of third party Naked + Thriving LLC. | 350 |
| 38 | A true and correct copy of the ithriveX performance collections webpage from the website of third party I25X, LLC. | 359 |
| 39 | A true and correct copy of the home webpage from the website of third party Surthrival LLC. | 377 |
| 40 | A true and correct copy of the skincare webpage from the website of third party Thrive Market, Inc. | 384 |
| 41 | A true and correct copy of the Thrive skin products webpage from the website of third party Le-Vel Brands, LLC. | 399 |
| 42 | A true and correct copy of the archived home webpage of Thrive Wellness Kitchen. | 402 |
| 43 | A true and correct copy of the home webpage from the website of third party Simplythrive, LLC. | 406 |
| 44 | A true and correct copy of a document produced by Plaintiff in this action and Bates numbered TNC00822. | 414 |
| 45 | A true and correct copy of excerpts from Plaintiff's Supplemental Responses to TCI's First Set of Interrogatories, dated June 28, 2021. | 417 |

TABLE OF CONTENTS TO THE DE LILLY DECLARATION IN SUPPORT OF DEFENDANT THRIVE CAUSEMETICS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# EXHIBIT 1

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THRIVE NATURAL CARE, INC.,          )
                                    )
                Plaintiff,          )
                                    )
        VS.                         ) CASE NO.:
                                    ) 2:20-cv-9091-PA-AS
                                    )
THRIVE CAUSEMETICS, INC.,           )
                                    )
                Defendants.         )
_____)

VIDEOTAPED REMOTE DEPOSITION OF ALEXANDER MCINTOSH

Irvine, California

Friday, July 30, 2021

MAGNA LEGAL SERVICES

(866) 624-6221

www.MagnaLS.com

Job No.:  737849

Reported by:

Shirley R. Lynn, C.S.R. NO. 13784



Page 2

```
 1                UNITED STATES DISTRICT COURT
 2               CENTRAL DISTRICT OF CALIFORNIA
 3
 4   THRIVE NATURAL CARE, INC.,          )
                                         )
 5                      Plaintiff,       )
                                         )
 6        VS.                            ) CASE NO.:
                                         )  2:20-cv-9091-PA-AS
 7                                       )
     THRIVE CAUSEMETICS, INC.,           )
 8                                       )
                        Defendants.      )
 9   _____)
10
11           REMOTE VIDEOTAPED DEPOSITION OF ALEXNDER MCINTOSH,
12   taken on behalf of the Defendant, at Irvine, California,
13   commencing at 9:38 a.m., Friday, July 30, 2021, before
14   Shirley R. Lynn, Certified Shorthand Reporter, License No.
15   13784, for the State of California, pursuant to Notice.
16
17
18
19
20
21
22
23
24
25
```



Page 3

```
 1   APPEARANCES (All parties appearing remotely):

 2

 3   For the Plaintiff:

 4        THE MCARTHUR LAW FIRM, P.C.
          BY:  STEPHEN MCARTHUR, ESQ.

 5        9465 Wilshire Boulevard, Suite 300
          Beverly Hills, California 90212

 6        Phone:  (323) 639-4455
          E-mail:  stephen@smcarthurlaw.com

 7

     For the Defendants:

 8
          SIDLEY AUSTIN LLP

 9        BY:  ROLLIN A. RANSOM, ESQ.
          555 West Fifth Street, Suite 4000

10        Los Angeles, California 90013
          Phone:  (213) 896-6000

11        E-mail:  rransom@sidley.com

12   Also Present:

13        Videographer/Brianna Diaz

14

15

16

17

18

19

20

21

22

23

24

25
```



Page 6

1          IRVINE, CALIFORNIA; FRIDAY, JULY 30, 2021

2                    AT 9:38 A.M.

3                      -oOo-

4                      ***

5          THE VIDEOGRAPHER:  Good morning.  We are

6    now on the record.  This begins Videotape No. 1 in

7    the deposition of Alex McIntosh in the matter of

8    Thrive Natural Care, Inc. vs. Thrive Causemetics,

9    Inc., in the United States District Court, Central

10   District of California.

11         Today is July 30th, 2021, and the time is

12   9:39 a.m.  This deposition is being taken remotely via

13   web conferencing at the request of Sidley Austin, LLP.

14         The videographer today is Brianna Diaz of Magna

15   Legal Services, and the court reporter is Shirley Lynn

16   of Magna Legal Services.

17         Will counsel and all parties present state

18   their appearances and whom they represent at this time.

19         MR. MCARTHUR:  Steven McArthur for Thrive

20   Natural Care, the plaintiff.

21         MR. RANSOM:  Rollin Ransom.

22         MR. MCARTHUR:  And here as attorney also

23   for Ecomundi Ventures, Inc., and Mr. Alex McIntosh.

24         THE VIDEOGRAPHER:  Thank you.  Will the court

25   reporter please swear in the --



1          THE COURT REPORTER:  Just a second.  Just a
2    second.  I didn't hear Mr. Ransom.  I am sorry.
3          MR. RANSOM:  I didn't come in yet.  Sorry.
4          Rollin Ransom for the defendant Thrive
5    Causemetics, Inc.
6          THE VIDEOGRAPHER:  Thank you.  Will the
7    court reporter please swear in the witness.
8
9                    ALEXANDER MCINTOSH,
10         having first been duly sworn, was
11         examined and testified as follows:
12         THE WITNESS:  I do.
13                    EXAMINATION
14   BY MR. RANSOM:
15      Q    Could you please state your full name.
16      A    Alexander McIntosh.
17      Q    Mr. McIntosh, you were deposed last Friday
18   and I, at the start of that deposition, went over
19   some ground rules or understandings governing the
20   deposition.  You understand those same ground rules
21   apply to the deposition today?
22      A    I do.
23      Q    Do you have any questions about the
24   process?
25      A    I do not.



Page 15

1      Q     But it also could be more than 50 percent?

2      A     I don't know.

3      Q     Have you ever attempted to value your

4   ownership interest in Thrive Natural Care?

5      A     By "value," what do you mean, Mr. Ransom?

6      Q     I mean attribute a monetary value to your

7   ownership interest in Thrive Natural Care.

8      A     I don't believe so.

9      Q     Do you know whether anyone else has ever

10  valued the Thrive Natural Care business?

11     A     I'm not sure I understand.  Anyone in the

12  world has valued our business?  I -- I have no idea.

13  Maybe someone has.  I have no -- I have -- there's

14  no way for me to know that.

15     Q     To your knowledge, has anyone done that?

16           MR. MCARTHUR:  Objection, form.

17           THE WITNESS:  I don't know.

18   BY MR. RANSOM:

19     Q     Have you ever attempted to value the Thrive

20  Natural Care business?

21     A     I have not.

22     Q     Has -- to your knowledge, has anyone else

23  associated with Thrive Natural Care ever attempted

24  to value the Thrive Natural Care business?

25     A     I'm not sure.  So this is my personal



Page 20

1  back then.

2      Q    Do you know whether it was more than

3  $100,000?

4      A    I don't recall the number that we discussed

5  back then.

6      Q    But you know that it was more than $10,000,

7  though; is that correct?

8      A    It would have been more than $10,000.

9      Q    Was it more than $20,000?

10     A    I don't recall, Mr. Ransom.

11     Q    Okay.  But more than ten.  Okay.  All

12  right.

13          Do -- did -- is that amount reflected in

14  writing anywhere?

15     A    Not to my knowledge, no.

16     Q    A few minutes ago you mentioned a -- I

17  believe a priced fundraising round.  Did I get that

18  phrase correct?

19     A    Yes.

20     Q    What is a priced fundraising round?

21     A    Typically, when a company does a

22  409 valuation.

23     Q    What's a 409 valuation?

24     A    I don't know the exact term.  It's just

25  when you pay some people to do a formal valuation of



Page 21

1    your company.

2         Q     Has TNC ever done a 409 valuation?

3         A     No.

4         Q     Has TNC raised money from investors?

5         A     It has.

6         Q     In its efforts to raise money from

7    investors, has TNC ever expressed a valuation of the

8    TNC business?

9         A     No, not to my knowledge.

10        Q     Since the discussion in or around 2018

11   where you talked about a valuation of the business,

12   have you had any other discussion with your COO

13   where either of you has expressed a monetary amount

14   that you believe reflects the value of Thrive

15   Natural Care?

16        A     Yes.

17        Q     When was that?

18        A     I don't recall.

19        Q     Was it after 2018?

20        A     Yes.

21        Q     And was that on one occasion or more than

22   one occasion?

23        A     I don't recall.

24        Q     And what do you recall was said in that

25   discussion about the value of TNC?



Page 44

1     A    Can I close document 87, Mr. Ransom?

2     Q    Yes.

3          (Exhibit 88 was marked for

4          identification.)

5          THE WITNESS:  Okay.  I've opened it up.  I

6     am going to review it now.

7     BY MR. RANSOM:

8     Q    Okay.

9     A    I reviewed the document, Mr. Ransom.

10         MR. RANSOM:  I dropped a document in the

11    chat that I'll ask the court reporter to mark as

12    Exhibit 88.  It was produced by Thrive Natural Care

13    in this lawsuit and was a native file bearing Bates

14    No. TNC 831.  We have printed it out and added

15    extensions to show the pagination.

16    BY MR. RANSOM:

17    Q    Mr. McIntosh, do you represent what's been

18    marked as Exhibit 88?

19    A    I don't understand your question.  Do I

20    represent that?  What does that mean?

21    Q    Do you recognize what has been marked as

22    Exhibit 88?

23    A    I do.

24    Q    What is it?

25    A    An e-mail exchange.



Page 45

```
 1      Q    All right.  And it's an e-mail exchange
 2    between you and Ellen Bruss; correct?
 3      A    That's correct.
 4      Q    Is Ms. Bruss a contractor that had been
 5    retained by Thrive Natural Care in connection with
 6    product or package design?
 7      A    Yes.
 8      Q    And if you go to the first e-mail, the
 9    oldest e-mail, which is on the page marked
10    831.00002, it's an e-mail from Ms. Bruss to you;
11    correct?
12      A    I believe so, yes.
13      Q    And she's asking you if you know of
14    Thrive Causemetics; correct?
15      A    Correct.
16      Q    Then if you go to the bottom of the first
17    page of Exhibit 88, you responded; correct?
18      A    That's correct.
19      Q    And could you read the first line of your
20    response?
21      A    "Yes, they're on our radar."
22      Q    What did you mean by that?
23      A    That Ms. Bodnar had -- the CEO of
24    Causemetics, Thrive Causemetics, had sent us an
25    e-mail asking for permission to use our trademark,
```



Page 47

1    seemed to change from what they had been doing

2    before.

3        Q    I dropped another document in the chat.

4    Please open it and tell me when you're ready.  You

5    can close 88, if you'd like.

6              (Exhibit 89 was marked for

7              identification.)

8              THE WITNESS:  Okay.  I've got the document.

9    I am going to open it up now, and review it.

10             Okay.  I've reviewed the document.

11             MR. RANSOM:  I've dropped a document in the

12   chat that I'll ask the court reporter mark as

13   Exhibit 89.  It was produced by Thrive Natural Care

14   in this action and bears Bates No. TNC 00819.

15    BY MR. RANSOM:

16       Q    Mr. McIntosh, do you recognize Exhibit 89?

17       A    I do.

18       Q    Is this an e-mail exchange between you and

19   Mr. Boothe?

20       A    It is.

21       Q    And is Mr. Boothe the current chief

22   operating officer of Thrive Natural Care?

23       A    Yes.

24       Q    Was he in -- did he hold that position in

25   November 2017?



Page 49

1        A    I do.

2        Q    Is that an accurate statement in

3   November 2017, that Thrive Causemetics was on your

4   radar?

5        A    I was aware of Thrive Causemetics.

6        Q    I'm dropping another document into the

7   chat.  You can close Exhibit 89.  If you'd open the

8   next one, and tell me when you're ready.

9        A    Okay.  I've got the document.  I am going

10  to review it now.

11            (Exhibit 90 was marked for

12            identification.)

13            THE WITNESS:  Okay.  I've reviewed the

14  document.

15            MR. RANSOM:  I've dropped a document into

16  the chat that I'll ask the court reporter to mark as

17  Exhibit 90.  It was produced by Thrive Natural Care

18  in this action, and it's a native file bearing Bates

19  No. TNC 830.  We've printed it out with extensions

20  after the Bates number to reflect the pagination.

21   BY MR. RANSOM:

22       Q    You recognize -- do you recognize

23  Exhibit 90, Mr. McIntosh?

24       A    Yes.

25       Q    It's an e-mail exchange between you and



Page 50

1   Chris Kelley.

2        A    Is that a question?

3        Q    Is this an e-mail exchange between you and

4   Chris Kelley?

5        A    Yes.

6        Q    Mr. Kelley -- is Mr. Kelley currently an

7   investor in Thrive Natural Care?

8        A    Yes.

9        Q    And at the time of this e-mail exchange,

10  Mr. Kelley was an investor in Thrive Natural Care;

11  correct?

12       A    I believe so.

13       Q    And this e-mail exchange relates to

14  Thrive Causemetics, correct, at least in part?

15       A    In part.

16       Q    Okay.  And if you look at your e-mail on

17  May 23rd, 2018, at 10:46 p.m, do you see where I'm

18  looking?

19       A    I am.

20       Q    And you note that you are aware of

21  Thrive Causemetics; correct?

22       A    Correct.

23       Q    If you go down to the -- near the bottom of

24  that e-mail from you, a line that starts "Hoping."

25            Do you see that?



1     Q    Do you know if he has any experience with

2    respect to branding or consumer -- consumer

3    products?

4     A    I don't know.

5     Q    I've dropped another document in the chat.

6    Please tell me when you're ready.  You can close

7    Exhibit 90.

8     A    Okay.  I received the document.  I am going

9    to open it up.

10          (Exhibit 90 was marked for

11          identification.)

12          THE WITNESS:  And just, Mr. Ransom, when

13    it's convenient for you, maybe in the next

14    five minutes or so, take a little bio break?

15          MR. RANSOM:  No problem.  I just have a

16    couple questions about this document, then we can

17    break.

18          THE WITNESS:  Sure.

19          Okay.  I'm opening the document up.

20          Okay.  I've reviewed the document.

21          MR. RANSOM:  I've dropped a document in the

22    chat that I'll ask the court reporter to mark as

23    Exhibit 91.  It was produced by Thrive Natural Care

24    in this action as a native file bearing Bates

25    No. TNC 822.  We have added extensions after that



Page 55

```
 1   number to show the pagination as printed.
 2            (Exhibit 91 was marked for
 3            identification.)
 4    BY MR. RANSOM:
 5       Q    Mr. McIntosh, do you recognize -- do you
 6   recognize Exhibit 91?
 7       A    I do.
 8       Q    Is this an e-mail exchange between you and
 9   Phil Segal?
10       A    It is.
11       Q    And you're discussing Thrive Causemetics;
12   correct?
13       A    Yes, in part, yes.
14       Q    Okay.  And this is dated September of 2019;
15   correct?
16       A    It is.
17       Q    Now, in September of 2019, did you visit
18   Thrive Causemetics' website?
19       A    Oh, I don't recall.
20       Q    Okay.  If you go down to the very bottom of
21   your e-mail, you say:
22            "My hunch is that, A, our ads
23            need to help differentiate us from
24            TC."
25            Do you see that?
```



Page 58

1    while out.  So maybe, I don't know, just -- say,

2    ten minutes?

3              MR. RANSOM:  Ten minutes is fine.

4              THE WITNESS:  Okay.  Thank you.

5              THE VIDEOGRAPHER:  We are going off the

6    record at 11:07 a.m.

7              (Brief break taken.)

8              THE VIDEOGRAPHER:  We are back on the

9    record at 11:20 a.m.

10    BY MR. RANSOM:

11       Q    Mr. McIntosh, your counsel has engaged with

12    other parties that Thrive Natural Care has accused

13    of infringement with respect to its Thrive mark;

14    correct?

15       A    Yes.

16       Q    And you have resolved some of those claims

17    by way of settlement agreements; correct?

18       A    Yes.

19       Q    In any of those settlements, has any third

20    party agreed to pay Thrive Natural Care any money in

21    connection with its use of the Thrive mark?

22       A    I don't know.  My counsel has handled both

23    the communications as well as the negotiation.

24       Q    But you signed the settlement agreements;

25    correct?



Page 59

1       A    I'm sorry?

2       Q    You signed the settlement agreements on

3    behalf of Thrive Natural Care; correct?

4       A    I'm not sure what you're asking me.

5       Q    Do you recall signing any settlement

6    agreements with third parties resolving claims out

7    of use of the mark "Thrive"?

8       A    I believe so.  I believe I signed some.

9       Q    Do you recall any instance in which a party

10   with whom Thrive Natural Care has settled has agreed

11   to pay money to Thrive Natural Care in connection

12   with its use of the mark "Thrive"?

13      A    I do not recall.

14      Q    Okay.  I've dropped a document into the

15   chat.  Please open it and tell me when you've had a

16   chance to review.

17      A    Is this document 92?  Is that what this is?

18      Q    Correct.

19           MR. RANSOM:  So for the court reporter,

20   I've dropped a document into the chat, which I will

21   ask the court reporter to mark as Exhibit 92.

22           (Exhibit 92 was marked for

23           identification.)

24           THE WITNESS:  Okay.  I am going to read

25   through this.



Page 60

1    BY MR. RANSOM:

2        Q    Okay.

3        A    Okay.  I've reviewed the document.

4        Q    Do you recognize Exhibit 92?

5        A    I do not.

6        Q    Do you recall signing or authorizing the

7    signing of a Statement of Use in connection with

8    Thrive Natural Cares' effort to obtain a trademark

9    registration for the term "Thrive"?

10       A    I believe so, yes.

11       Q    Okay.  And could you turn, please, to the

12   fourth page of Exhibit 92?

13       A    Okay.

14       Q    And do you see the heading on this as

15   "Trademark/Service Mark Statement of Use"?

16       A    I was on the wrong page.  Let me look at

17   this.

18            Okay.  What -- what am I looking for now?

19       Q    Up at the top in bold type, the heading

20   "Trademark/Service Mark Statement of Use."

21            Do you see that?

22       A    I do.

23       Q    And if you go to the next page and you see

24   at the top of that there's a heading that says

25   "Declaration."



Page 64

1    time?  I'm just -- I'm just -- this is a new

2    document with a lot of things in it, so I'm just

3    trying to make sure I'm following you.

4        Q    As of October 3rd, 2013, what products, if

5    any, was Thrive Natural Care selling in connection

6    with the mark "Thrive" that constitutes facial

7    lotions?

8        A    Thrive was selling a product called Face

9    Balm, which is -- it's a lotion or a cream for the

10   face.

11       Q    Is there a difference, in your view,

12   between a lotion and a cream?

13       A    No, not really.

14       Q    Is there any difference at all?

15       A    No.

16       Q    Okay.  What products, as of October 3rd,

17   2013, was TNC selling in connection with the mark

18   "Thrive" that constituted a cleanser?

19       A    That would have been our face wash.

20       Q    What product was TNC selling in connection

21   with the mark "Thrive" as of October 3rd, 2013, that

22   constituted a cream for cosmetic use?

23       A    That would have been our face lotion, the

24   Face Balm or the face moisturizer.

25       Q    And what, in your view, qualifies the



Page 65

1    Face Balm as a cream for cosmetic use?

2        A    Our design of the product was to have it be

3    a cream or a lotion for the face.  That was our

4    intent with the design of the product.

5        Q    And what about the cosmetic-use portion of

6    my question?  What made that product qualify as --

7    for cosmetic use?

8        A    I'm not sure.  I'm not sure.

9        Q    As of October 3rd, 2013, what product was

10   TNC selling in connection with the mark "Thrive"

11   that constituted an oil for cosmetic use, if any?

12       A    That would be our shaving oil.

13       Q    And what was it about your shaving oil that

14   qualifies it as an oil for cosmetic --

15            MR. MCARTHUR:  Hello?  Can you --

16   objection.  Sorry.  I think my mic wasn't working

17   earlier.  I was making objections, and I -- it seems

18   like my mic was not working, even though I was

19   unmuted.  I'm trying to object as it calls for a

20   legal conclusion as to these questions about what

21   constitutes it, cosmetic formula.  I'm sorry for

22   interrupting you.  I just had to make sure my mic

23   now works.

24            MR. RANSOM:  Okay.  Now we can hear you.

25            MR. MCARTHUR:  Good.  Good.



Page 67

1   oil that qualifies it as an oil for cosmetic use?

2          MR. MCARTHUR:  Same objection.

3          THE WITNESS:  We designed this shave oil

4   for shaving and for facial moisturizing.

5    BY MR. RANSOM:

6      Q    And -- and what about that makes it for

7   cosmetic use, in your view, if you know?

8          MR. MCARTHUR:  Objection.  Calls for a

9   legal conclusion as to the definition of "cosmetic

10  use."

11         MR. RANSOM:  Objection to your objection,

12  Mr. McArthur.

13   BY MR. RANSOM:

14     Q    Mr. McIntosh, you can answer.  What makes

15  it for cosmetic use, if you know?

16     A    We designed the product for shaving and for

17  facial moisturizing.

18     Q    And -- and how does that make the product

19  an oil for cosmetic use, if you know?

20         MR. MCARTHUR:  Same objection.

21         THE WITNESS:  I'm -- I'm not a lawyer.  I

22  don't know the -- the -- I don't know the answer.

23   BY MR. RANSOM:

24     Q    As of October 3rd, 2013, what product was

25  TNC selling in connection with the mark "Thrive"



Page 68

1    that constituted a skin moisturizer?

2         A    That would be our facial lotion or the

3    Face Balm, face cream.

4         Q    And as of October 3rd, 2013, what product

5    was TNC selling in connection with the mark "Thrive"

6    that constituted a pre-shaving preparation?

7         A    That could be two products, both the face

8    wash, as well as the shave oil.

9         Q    And as of October 3rd, 2013, what product

10   was TNC selling in connection with the mark "Thrive"

11   that constituted an aftershave lotion?

12        A    That would be the product that we called

13   the Face Balm, which is a cream or moisturizing

14   lotion.

15        Q    Just a yes-or-no question.  I'm not asking

16   about the content of any communication.

17             Did you discuss with any lawyer in or around

18   2013 the -- whether Thrive Natural Care was using the

19   mark "Thrive" in connection with the products described

20   in any trademarked application that was pending at that

21   time?

22             MR. MCARTHUR:  Objection.  It seems like

23   you're asking him to tell you what questions he

24   asked a lawyer.  So I'll direct my client not to

25   answer to the extent it's seeking to disclose what



Page 98

1  is in one store and we're in another store.  When you

2  Google "Thrive Skincare," their products are ubiquitous

3  all over the screen, even though I have the trademark.

4         MR. MCARTHUR:  Sorry.  Let me -- just give

5  me a few seconds.  I'm just looking at my notes.

6  There's -- there's no pending question.

7         I have no -- I have no other questions.

8         MR. RANSOM:  I have one followup.

9                     EXAMINATION

10  BY MR. RANSOM:

11     Q    Mr. McIntosh, what is the basis for your

12  understanding of the amount of Thrive Causemetics'

13  spend on keywords?

14     A    I believe it's from two things.  I believe

15  it's from an interview that I may have seen with

16  Thrive Causemetics' CEO mentioning that.

17         And I also recall the digital marketing

18  agency -- I don't remember the name -- that

19  Thrive Causemetics hired when they were very small,

20  telling me that -- that Thrive Causemetics had gone from

21  a very small five-digit-a-month spend into the millions

22  of dollars per month by the time they had finished their

23  work together.

24     Q    Do you recall anything about the timing of

25  that discussion?



Page 99

```
 1      A    I don't, sir.
 2           MR. RANSOM:  Okay.  Subject to my earlier
 3   reservation, I don't have further questions of
 4   Mr. McIntosh in his individual capacity at this
 5   time.
 6           MR. MCARTHUR:  Great.  We'll --
 7           MR. RANSOM:  Do you need a -- do you want a
 8   break before we flip over and maybe -- well, we'll
 9   need to.  Why don't we go off the record of this
10   deposition and close it.
11           THE REPORTER:  I just need to ask
12   Mr. McArthur if he's ordering a copy of the
13   deposition.
14           MR. MCARTHUR:  Yes, I would like a copy of
15   the deposition.
16           THE REPORTER:  Okay.  Go ahead.
17           MR. MCARTHUR:  Just e-mail is fine.  I
18   don't need a physical copy and I don't need the
19   original, just -- just a digital copy.
20           THE VIDEOGRAPHER:  Will either of you be
21   ordering a video today?
22           MR. MCARTHUR:  No.
23           MR. RANSOM:  Not today.
24           THE VIDEOGRAPHER:  Okay.  Thank you, guys,
25   very much.  We are going off the record at 1:24 p.m.
```



Page 102

```
 1                      CERTIFICATE

 2                          OF

 3                  SHORTHAND REPORTER

 4                    *   *   *   *

 5

 6          I, Shirley Lynn, CSR No. 13784, a Certified

 7   Shorthand Reporter in and for the State of California,

 8   do hereby certify:

 9          That prior to being examined, the witness

10   named in the foregoing proceedings declared under

11   penalty of perjury to testify to the truth, the whole

12   truth, and nothing but the truth;

13          That said proceedings were taken by me in

14   shorthand at the time and place herein named and were

15   thereafter transcribed into typewriting under my

16   direction, said transcript being a true and correct

17   transcription of my shorthand notes;

18          Pursuant to Federal Rule 30(e), transcript

19   review was requested.

20          I further certify that I have no interest in

21   the outcome of this action.

22   _____

23                          SHIRLEY LYNN

                             CSR NO. 13784

24

25
```



034
De Lilly Decl. Ex. 1