# EXHIBIT 13

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) CASE NO.: |
| | ) 2:20-cv-9091-PA-AS |
| | ) |
| THRIVE CAUSEMETICS, INC., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

VIDEOTAPED REMOTE DEPOSITION OF ALEX MCINTOSH, ON BEHALF
OF ECOMUNDI VENTURES, LLC
Irvine, California
Friday, July 30, 2021
MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com

Job No.: 737849
Reported by:
Shirley R. Lynn, C.S.R. NO. 13784



Page 2

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3
 4   THRIVE NATURAL CARE, INC.,         )
                                        )
 5                  Plaintiff,          )
                                        )
 6       VS.                            ) CASE NO.:
                                        ) 2:20-cv-9091-PA-AS
 7                                      )
     THRIVE CAUSEMETICS, INC.,          )
 8                                      )
                    Defendants.         )
 9   _____)
10
11           REMOTE VIDEOTAPED DEPOSITION OF ALEX MCINTOSH ON
12   BEHALF OF ECOMUNDI VENTURES, LLC, taken on behalf of the
13   Defendant, at Irvine, California, commencing at 1:43 p.m.,
14   Friday, July 30, 2021, before Shirley R. Lynn, Certified
15   Shorthand Reporter, License No. 13784, for the State of
16   California, pursuant to Notice.
17
18
19
20
21
22
23
24
25
```



176
De Lilly Decl. Ex. 13

```
                                                          Page 3
 1   APPEARANCES (All parties appearing remotely):
 2
 3   For the Plaintiff:
 4        THE MCARTHUR LAW FIRM, P.C.
          BY:  STEPHEN MCARTHUR, ESQ.
 5        9465 Wilshire Boulevard, Suite 300
          Beverly Hills, California 90212
 6        Phone:  (323) 639-4455
          E-mail:  stephen@smcarthurlaw.com
 7
     For the Defendants:
 8
          SIDLEY AUSTIN LLP
 9        BY:  ROLLIN A. RANSOM, ESQ.
          555 West Fifth Street, Suite 4000
10        Los Angeles, California 90013
          Phone:  (213) 896-6000
11        E-mail:  rransom@sidley.com
12   Also Present:
13        Videographer/Brianna Diaz
14
15
16
17
18
19
20
21
22
23
24
25
```



Page 5

```
 1        IRVINE, CALIFORNIA; FRIDAY, JULY 30, 2021
 2                    AT 1:43 P.M.
 3                       -oOo-
 4                        ***
 5        THE VIDEOGRAPHER:  We are now on the
 6   record.  This begins Videotape No. 1 in the
 7   deposition of Ecomundi Ventures, LLC, representative
 8   in the matter of Thrive Natural Care, Inc., versus
 9   Thrive Causemetics, Inc., the United States District
10   Court, Central District of California.
11        Today is July 30th, 2021, and the time is
12   1:43 p.m.  This deposition is being taken remotely via
13   web conferencing at the request of Sidley Austin, LLP.
14        The videographer is Brianna Diaz of Magna Legal
15   Services, and the court reporter is Shirley Lynn of
16   Magna Legal Services.
17        Counsel and all parties present state their
18   appearances and whom they represent at this time,
19   please.
20        MR. MCARTHUR:  Steven McArthur for Ecomundi
21   Ventures, LLC.
22        MR. RANSOM:  Rollin Ransom for Defendant
23   Thrive Causemetics, Inc.
24        THE VIDEOGRAPHER:  Thank you.
25        Would the court reporter please swear in the
```



Page 6

```
 1   witness.
 2                    ALEXANDER MCINTOSH,
 3           having first been duly sworn, was
 4           examined and testified as follows:
 5           THE WITNESS:  I do.
 6                       EXAMINATION
 7   BY MR. RANSOM:
 8       Q   Would you please state your name.
 9       A   Alexander McIntosh.
10       Q   Mr. McIntosh, we've been through this a
11   couple times, so I know you know how the process
12   works as a result of either your testimony earlier
13   today or last Friday.
14           Do you have any questions about what we're
15   doing here today or how it's going to go?
16       A   I do not.
17       Q   Okay.  Mr. McIntosh, I have loaded a
18   document into chat that has been marked as
19   Exhibit 94.  Can you please open it and tell me when
20   you've had a chance to review?
21           (Exhibit 94 was marked for
22           identification.)
23           THE WITNESS:  I've scanned through it,
24   Mr. Ransom.
25   BY MR. RANSOM:
```



Page 20

```
 1   "Thrive" for various goods?
 2        A    Yes.
 3        Q    And you'll see at the top of the first page
 4   of Exhibit 95, there's a Serial No. 85726058.
 5             Do you see that?
 6        A    I do.
 7        Q    And then below that, there's a filing date
 8   September 9th, 2012.
 9             Do you see that?
10        A    Where is that?
11        Q    Immediately below the serial number at the
12   very top of the first page of Exhibit 95.
13        A    Oh, yes, I see at the top.  Okay.  Yes, I
14   see that.
15        Q    Is that the date on which Ecomundi Ventures
16   filed or had filed on its behalf this trademark
17   application?
18        A    I don't recall.  The document speaks for
19   itself.  I don't -- I don't recall the activity of
20   that day.
21        Q    You don't have any reason to question that
22   that's the date on which this application was filed,
23   do you?
24        A    I do not.
25        Q    Why did Ecomundi file the application
```



180

De Lilly Decl. Ex. 13

Page 19

```
 1      A    Okay.  Let me open that up and just go
 2   through it.
 3              (Exhibit 95 was marked for
 4              identification.)
 5              MR. RANSOM:  Okay.
 6              THE WITNESS:  Okay.  I've scanned through
 7   it, Mr. Ransom.
 8   BY MR. RANSOM:
 9      Q    Do you recognize -- well, strike that.
10              MR. RANSOM:  I dropped a document in the
11   chat that I'll ask the court reporter to mark as
12   Exhibit 95.
13   BY MR. RANSOM:
14      Q    Mr. McIntosh, do you recognize Exhibit 95?
15      A    It looks like a printout of -- I don't
16   recognize the format, but it looks like a printout
17   of the -- the trademark application.
18      Q    And when you say "the trademark
19   application," what do you mean?
20      A    A trademark application.  I'm actually -- I
21   can't tell, but it looks like a trademark
22   application for -- for Thrive.
23      Q    Do you recognize Exhibit 95, if not in
24   form, in content, as the trademark application that
25   Ecomundi Ventures filed to register the mark
```



Page 40

```
 1   separately incorporated in the products offered
 2   through Thrive Natural Care?
 3       A    Yes.  Because I was spending a lot of my
 4   money to build all of the -- do all the activity
 5   that we talked about earlier, the hiring of
 6   consultants and building the formulas and so forth.
 7            And because I was also, at the time, doing some
 8   consulting, it made sense to split it out and have it be
 9   its own entity.
10            MR. RANSOM:  I have dropped a document into
11   the chat that I'll ask the court reporter to mark as
12   Exhibit 96.  This was produced by Thrive Natural
13   Care in this action and bears Bates Nos. TNC 1196
14   through 97.
15            (Exhibit 96 was marked for
16            identification.)
17    BY MR. RANSOM:
18       Q    Mr. McIntosh, could you open Exhibit 96 and
19   tell me when you're ready.
20       A    Should I close 94 and 95, Mr. Ransom?
21       Q    Yes, you may close those for now.
22       A    All right.  Those are closed.
23            Okay.  I've got it open.  Let me read through
24   it.
25            I've scanned through the document, Mr. Ransom.
```



Page 41

```
 1     Q    Do you recognize Exhibit 96?
 2     A    I do.
 3     Q    What is it?
 4     A    It's a trademark assignment.
 5     Q    And is it a trademarks assignment that
 6  relates to the mark "Thrive"?
 7     A    Yes.
 8     Q    And is this an assignment by which Ecomundi
 9  Ventures assigned its rights with respect to the
10  trademark "Thrive" to Thrive Natural Care?
11     A    That's my understanding of what this
12  document is.
13     Q    Okay.  Why did Ecomundi Ventures sign
14  Exhibit 96?
15     A    I'm sorry.  Why did it sign this?
16     Q    Why did it enter into this -- or sign this
17  trademark assignment?
18          MR. MCARTHUR:  Objection.  Vague.
19          THE WITNESS:  Yeah.  Could you be more
20  specific, sir?  I'm happy to answer.  I just don't
21  know exactly what you're asking.
22   BY MR. RANSOM:
23     Q    What was the reason that Ecomundi Ventures
24  assigned its trademark interest in the "Thrive" mark
25  to Thrive Natural Care?
```



Page 46

```
 1   was signed several months after the effective date?
 2        A    I don't.
 3        Q    Okay.  Do you know what is meant by a "Nunc
 4   Pro Tunc Trademark Assignment," that phrase?
 5        A    No, I don't.
 6        Q    Did you take Latin at all --
 7        A    Unfortunately, not.
 8        Q    -- in your education?
 9             Okay.  No longer a required class at Yale.
10   Yeah, no, it's not a common phrase, I'll give you that.
11             Okay.  As of May 23rd, 2013, had Ecomundi sold
12   any products bearing the "Thrive" trademark?
13        A    As of -- as of the date you said, had
14   Ecomundi done what?
15        Q    As of May 23rd, 2013, had Ecomundi sold any
16   products bearing the "Thrive" trademark?
17        A    No.
18        Q    As of May 23rd, 2013, had Ecomundi
19   advertised any products bearing the "Thrive"
20   trademark?
21        A    Can you define "advertised"?
22        Q    Do you have an understanding of what's
23   meant by that term?
24        A    Well, I -- then I'll answer your question
25   this way and maybe you can refine it if you choose
```



Page 49

```
 1   addition to that.
 2       Q   Okay.  And which partners are in addition
 3   to supply and manufacturing?
 4       A   Sales.
 5       Q   And would those be -- sorry.
 6       A   Rural -- rural farmers.
 7       Q   Are rural farmers part of the supply chain
 8   for Thrive products?
 9       A   They're part of the regenerative business
10   model.
11       Q   Okay.  They're the source of some of the
12   ingredients in the product; correct?
13       A   In part.  They're also the partners in
14   restoring the land and coming up with a model to
15   boost rural farmer livelihoods.
16       Q   Do you recall any consumer-facing use of
17   the term "Thrive" by Ecomundi on or before May 23rd,
18   2013?
19       A   Yes.  Working with our branding group to
20   develop all of the packaging for the first skincare
21   line.  That was done in, I think, late 2012 or early
22   2013.
23       Q   And was any of that packaging presented to
24   consumers on or before May 23rd, 2013?
25       A   I don't recall at this point.
```



185

De Lilly Decl. Ex. 13

Page 51

1   Q   I understand.  Thank you.  That -- that's
2   helpful.
3         (Court Reporter clarification.)
4         THE WITNESS:  By -- I think I said "by
5   Ecomundi."
6    BY MR. RANSOM:
7   Q   When is the first time a product package
8   that featured the name Thrive, when is the first
9   time such a product package was generated?
10  A   I don't recall, but I'm going to say 2012
11  in -- in some of the marketing material, some of the
12  presentations.  But I -- yeah, I'm thinking some of
13  the -- the early communications.  I'm thinking we
14  had mockups of -- of Thrive packaging back in 2012.
15  Q   Was any of that marketing material
16  presented to retailers, to your knowledge, prior to
17  May 23rd, 2013?
18  A   I don't recall.  I was definitely talking
19  to sales brokers, and I -- I don't recall if they
20  spoke with -- with retailers.
21  Q   Was any of that marketing material
22  presented to consumers prior to May 23rd, 2013?
23  A   I don't recall, but I would -- I would --
24  I'm guessing that the -- the branding agency did
25  show it to consumers for feedback.  They typically



```
 1   do things like that.
 2       Q    I hear you word -- say the word "guessing."
 3   Do you -- do you have firsthand knowledge of that,
 4   one way or the other, or is that your supposition?
 5       A    That's my supposition.
 6       Q    Okay.
 7            Okay.  Turning back to Exhibit 96.  If you look
 8   in the -- to the fourth paragraph, that -- it's the
 9   third paragraph that starts "Whereas," you see there's a
10   reference to a "TECHNOLOGY ASSIGNMENT AGREEMENT"?
11            Do you see that?
12       A    I do.
13       Q    Do you know what that's a reference to?
14       A    I don't.
15            MR. RANSOM:  I've dropped a document into
16   the chat.  I am going to ask that the court reporter
17   mark it as Exhibit 97.  It was produced by Thrive
18   Natural Care in this action and bears Bates
19   Nos. 1408 through 1422.
20            (Exhibit 97 was marked for
21             identification.)
22    BY MR. RANSOM:
23       Q    Mr. McIntosh, please open it, take a look
24   at it, and let me know when you're ready.
25       A    Okay.  I think this is one of the larger
```



```
 1     A    Correct.
 2     Q    And it states that "Purchaser" -- that's
 3  Ecomundi; correct?
 4          Ecomundi is the purchaser in this agreement?
 5     A    Yes.
 6     Q    "Purchaser agrees to purchase from the
 7  Company" -- that's Thrive Natural Care; correct?
 8     A    Correct.
 9     Q    So Ecomundi agreed to purchase from Thrive
10  Natural Care an aggregate of 50 million shares of
11  the common stock of Thrive Natural Care; correct?
12          MR. MCARTHUR:  Objection.  The document
13  speaks for itself.
14          You can answer.
15          THE WITNESS:  That's what the document
16  says.
17   BY MR. RANSOM:
18     Q    Okay.  And do you recall this transaction?
19     A    I don't.
20     Q    Okay.  But you understand you've been
21  designated to testify on -- on behalf of Ecomundi
22  with respect to the assignment of trademark rights
23  from Ecomundi to Thrive Natural Care; correct?
24     A    Correct.
25     Q    Okay.  What was the dollar value attributed
```



Page 60

```
 1   to the transfer of intellectual property rights
 2   pursuant to the Technology Assignment Agreement?
 3       A    I -- I don't know how to answer your
 4   question, sir.
 5       Q    Is it correct that this agreement reflects
 6   a payment or -- strike that.
 7            Is it correct that this agreement reflects a
 8   dollar value for the transfer of intellectual property
 9   rights pursuant to the Technology Assignment Agreement?
10       A    I'm -- I'm -- say your question one more
11   time, sir.  I'm just trying to make sure I -- I
12   answer it correctly.
13       Q    Sure.
14            Is it correct that Exhibit 97 reflects the
15   value attributable to the transfer of intellectual
16   property rights from Ecomundi to Thrive Natural Care
17   pursuant to the Technology Assignment Agreement?
18       A    I believe that's what is in here.  I'm not
19   following your words.  But I think -- I believe the
20   answer is "yes."
21       Q    Is it correct that Exhibit 97 attributes
22   the value of the -- of the intellectual property
23   rights transferred as $25?
24       A    I don't know.  Can you show me where you
25   are with that?
```



Page 85

1              CERTIFICATE

2                  OF

3           SHORTHAND REPORTER

4              *  *  *  *

5

6           I, Shirley Lynn, CSR No. 13784, a Certified
7    Shorthand Reporter in and for the State of California,
8    do hereby certify:
9           That prior to being examined, the witness
10   named in the foregoing proceedings declared under
11   penalty of perjury to testify to the truth, the whole
12   truth, and nothing but the truth;
13          That said proceedings were taken by me in
14   shorthand at the time and place herein named and were
15   thereafter transcribed into typewriting under my
16   direction, said transcript being a true and correct
17   transcription of my shorthand notes;
18          Pursuant to Federal Rule 30(e), transcript
19   review was requested.
20          I further certify that I have no interest in
21   the outcome of this action.
22                              _____
23                                    SHIRLEY LYNN
                                      CSR NO. 13784
24

25



190
De Lilly Decl. Ex. 13