1  Rollin A. Ransom (State Bar No. 196126)
   rransom@sidley.com
2  Lauren M. De Lilly (State Bar No. 301503)
   ldelilly@sidley.com
3  Paula C. Salazar (State Bar No. 327349)
   psalazar@sidley.com
4  SIDLEY AUSTIN LLP
   555 West Fifth Street
5  Los Angeles, CA 90013
   Telephone: (213) 896-6000
6  Facsimile: (213) 896-6600

7  *Attorneys for Defendant Thrive
   Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| THRIVE NATURAL CARE, INC., | Case No. 2:20-cv-9091-PA-AS |
|---|---|
| Plaintiff, | Hon. Percy Anderson |
| v. | **DEFENDANT THRIVE CAUSEMETICS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| THRIVE CAUSEMETICS, INC., | |
| Defendant. | Date: September 13, 2021<br>Time: 1:30 p.m.<br>Place: Courtroom 9A |

**Table of Contents**

I. There Is No Plausible Claim of Forward Confusion. ............................................. 1

II. Plaintiff's Monetary Recovery Theories Fail As A Matter of Law. .................... 6

    A. Profits Are Unavailable in Reverse Confusion Cases. ............................. 6

    B. There Is No Basis On Which To Calculate A Reasonable Royalty. ......... 9

    C. Plaintiff Fails To Make The Threshold Showing That Its Mark Lost Value, As Required For A Corrective Advertising Award. ...................... 11

# Table of Authorities

**Cases**                                                                                                                    **Page(s)**

*Adray v. Adry-Mart, Inc.*,
    76 F.3d 984 (9th Cir. 1995) ............................................................................... 11

*Adidas America, Inc. v. Payless Shoesource, Inc.*,
    2008 WL 4279812 (D. Or. Sept. 12, 2008) ........................................................ 10

*Binder v. Disability Group, Inc.*,
    772 F. Supp. 2d 1172 (C.D. Cal. 2011) .............................................................. 11

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) ................................................................................ 3

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
    741 F. Supp. 2d 1165 (C.D. Cal. 2010) .............................................................. 12

*Herbalife Int'l, Inc. v. Lumene N. Am., LLC*,
    2007 WL 4225776 (C.D. Cal. Oct. 15, 2007) ....................................................... 4

*International Oddities v. Record*,
    2013 WL 3864050 (C.D. Cal. July 22, 2013) .................................................... 12

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
    828 F.3d 1098 (9th Cir. 2016) .............................................................................. 5

*Lodestar Ansalt v. Bacardi & Co. Ltd.*,
    2019 WL 8105378 (C.D. Cal. July 3, 2019) ................................................. 10, 11

*M2 Software Inc. v. Viacom, Inc.*,
    223 F. App'x 653 (9th Cir. 2007) ......................................................................... 9

*Marketquest Group, Inc. v. BIC Corp.*
    862 F.3d 927, 933 (9th Cir. 2017) ............................................................. 2, 3, 11

*Marketquest Group, Inc. v. BIC Corp.*
    316 F. Supp. 3d 1234 (S.D. Cal. 2018) .............................................................. 11

*Monster Energy Co. v. Integrated Support Network, LLC*,
    2021 WL 1521981 (C.D. Cal. Apr. 12, 2021) ...................................................... 8

*Novadaq Technologies, Inc. v. Karl Storz GmbH & Co. K.G.*,
    2015 WL 9028123 (N.D. Cal. Dec. 16, 2015) ............................................. 6, 7, 8

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
　809 F.2d 601 (9th Cir. 1987) .......................................................................................... 4

*Oculu, LLC v. Oculus VR, Inc.*,
　2015 WL 3619204 (C.D. Cal. June 8, 2015) ............................................................. 3, 6

*Ossur hf v. Manamed Inc.*,
　331 F. Supp. 3d 1005, 1017 (2017) ............................................................................ 12

*Pac. Packaging Concepts, Inc. v. Nutrisystem, Inc.*,
　2021 WL 3130041 (C.D. Cal. July 23, 2021) ........................................................ 10, 11

*Playboy Enters. Inc. v. Baccarat Clothing Co.*,
　692 F.2d 1272 (9th Cir. 1982) ...................................................................................... 8

*QS Wholesale Inc. v. World Marketing, Inc.*,
　2013 WL 1953719 (C.D. Cal. May 9, 2013) .............................................................. 10

*Quia Corp. v. Mattel, Inc.*,
　2011 WL 2749576 (N.D. Cal. July 14, 2011) ........................................................ 10, 11

*Romag Fasteners, Inc v. Fossil, Inc.*,
　140 S. Ct. 1492 (2020) .............................................................................................. 6, 7

*Scat Enterp., Inc. v. FCA US LLC*,
　2017 WL 5896182 (C.D. Cal. June 8, 2017) .......................................................... 6, 11

*Surfvivor Media, Inc. v. Survivor Prods.*,
　406 F.3d 625 (9th Cir. 2005) ..................................................................................... 2, 3

*TrafficSchool.com, Inc. v. Edriver Inc.*,
　653 F.3d 820 (9th Cir. 2011) ........................................................................................ 9

*Vineyard House, LLC v. Constellation Brands U.S*,
　515 F. Supp. 3d 1061 (N.D. Cal. 2021) ...................................................................... 12

**Statutes**

15 U.S.C. 1117(a) ................................................................................................................ 8

**Other Authorities**

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair
　Competition (5th ed. 2021) ........................................................................................... 6

In its motion, TCI established that Plaintiff's forward confusion and monetary recovery theories lack legal and factual support. Rather than addressing those issues, Plaintiff's opposition is an exercise in misdirection, responding to arguments that TCI did not make, and invoking facts and cases that are irrelevant to the matters at hand. None of that misdirection, however, changes the outcome of TCI's motion: Plaintiff has no plausible claim of forward confusion, and all of Plaintiff's monetary theories fail as a matter of law. TCI's motion for summary judgment should be granted.

## I. THERE IS NO PLAUSIBLE CLAIM OF FORWARD CONFUSION.

In its opposition, Plaintiff confuses *likelihood* of confusion with the *direction* of confusion. TCI's motion concerns the latter, not the former. Specifically, TCI's motion demonstrates that the *only* plausible theory of liability in this case is reverse confusion, rather than forward confusion. Plaintiff fails to respond to that showing, relying instead on a discussion of the *Sleekcraft* factors. While those factors may address whether there is a likelihood of confusion, they provide no insight into (or support for) a claim that any such confusion is *forward*, rather than reverse.

The answer to *that* question is apparent from both Plaintiff's pleadings and statements made elsewhere in its opposition, all of which confirm that summary judgment should be granted on any forward confusion theory. Although Plaintiff's First Amended Complaint ("FAC") asserts in conclusory fashion that this case "include[es] trademark infringement in the form of forward and reverse confusion," ECF No. 28 ¶ 1, its only factual allegations concern reverse confusion, *see, e.g.*, *id.* ¶ 4 ("TCI's multi-million dollar per year growth has enabled it to flood the market with advertising for its own skincare products such that consumers have now come to believe that plaintiff Thrive is related to or affiliated with defendant TCI and that Thrive's goods originate from TCI."); *id.* ¶ 75 ("TCI's use of confusingly similar imitations of Thrive's THRIVE Marks on the Infringing Skincare Products, in conjunction with significantly larger size and advertising scope and social media following, are likely to cause and have caused reverse confusion, deception, and

-1-

mistake by creating the false and misleading impression that Thrive's goods are manufactured or distributed by TCI"); *id.* ¶ 69 (alleging instance in which customer believed Plaintiff "was part of or affiliated with TCI"); *id.* ¶ 70 (alleging instance in which Walmart listed Plaintiff's products under TCI's brand name).

Plaintiff's opposition filings also confirm this theory – Plaintiff does not dispute that its contention in this case is "that TCI has flooded the market with advertising for TCI and its products" (Pl.'s Statement of Genuine Disputes (ECF No. 54-2) ("PSGD") No. 7), which is fatal to a forward confusion theory. Moreover, Plaintiff's opposition is riddled with arguments that TCI's strong market presence and advertising have enabled it to saturate the market. *See, e.g.*, ECF No. 54-1 at 16 ("Thrive agrees that TCI has a strong market presence."); *id.* at 27 ("TCI has spent millions to advertise its Infringing Skincare Products online."); *id.* at 28 ("TCI's huge advertising budget has enabled it to saturate marketing channels with ads . . . . Thrive's advertising budget is much smaller than TCI's."). All of these arguments reflect a claim of reverse, rather than forward, confusion. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005) (describing forward versus reverse confusion).

Plaintiff criticizes TCI's reliance on *Surfvivor*, arguing that the plaintiff there did not plead forward confusion. However, Plaintiff misapprehends the import of *Surfvivor*, and its critical relevance to this action and Plaintiff's motion. As the Ninth Circuit aptly explained in *Marketquest Group, Inc. v. BIC Corp.* (cited by Plaintiff):

> *Surfvivor* therefore stands for the proposition that when (1) a plaintiff's trademark infringement claim is based on a reverse confusion theory, (2) the plaintiff did not plead examples of forward confusion, and (3) only reverse confusion is plausible based on the allegations in the complaint, a plaintiff does not allege a cognizable trademark infringement claim based on forward confusion.

862 F.3d 927, 933 (9th Cir. 2017). This is precisely the situation here: (1) Plaintiff's infringement claim expressly references a reverse confusion theory, *see* ECF No. 28 ¶¶ 1, 4, 69, 70, 75; (2) the FAC pleads no examples of forward confusion, *see id.* ¶¶ 67-72; and (3) only reverse confusion is plausible based on the allegations in the FAC,

-2-

and in particular, the allegations that TCI's "significantly larger size and advertising scope and social media following" is likely to lead consumers to believe that Plaintiff's goods originate from TCI, *see id.* ¶¶ 4, 29, 75.

Ignoring both *Surfvivor* and the issues *actually* presented by TCI's motion, Plaintiff's opposition devotes nearly seven pages to the *Sleekcraft* factors, in an attempt to overcome the absence of allegations or evidence regarding forward confusion. These arguments miss the mark. While the *Sleekcraft* factors assess *likelihood* of confusion, they generally do not assess the *direction* of the alleged confusion at issue.[1] Instead, the direction of confusion is a threshold inquiry that courts evaluate *before* turning to the *Sleekcraft* factors, and the *Sleekcraft* factors are then used to evaluate whether that forward or reverse confusion is likely. *See, e.g., Surfvivor*, 406 F.3d at 631 (affirming grant of summary judgment of no forward confusion based on complaint's allegations, then turning to *Sleekcraft* factors to evaluate summary judgment on reverse confusion claim); *Marketquest*, 862 F.3d at 932-933 (confirming reverse confusion claim based on allegations that defendant was "clearly the larger, more-widely known entity," and then evaluating likelihood of confusion based on *Sleekcraft* factors); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 841 (9th Cir. 2002) (finding that plaintiff that "sought to protect its business identity from being overwhelmed by a larger junior user who has saturated the market with publicity" advanced a claim of reverse confusion, and then applying *Sleekcraft* factors to evaluate likelihood of confusion); *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, *10 (C.D. Cal. June 8, 2015) (granting summary judgment on forward confusion claim where "[p]laintiff has not presented any evidence in support of a forward confusion theory of liability"; applying *Sleekcraft* factors solely to evaluate likelihood of confusion as to remaining reverse confusion claim).

---

[1] For example, the fact that two parties' marks or channels of trade are allegedly similar, or that their goods are related, may inform the analysis as to whether confusion is likely; however, it provides no insight as to the direction of that confusion (*i.e.*, whether consumers are likely to believe that the junior user's products come from the senior user, or vice versa).

-3-

Framed correctly, the only arguments in Plaintiff's opposition that even arguably relate to the issue of forward versus reverse confusion are the alleged strength of Plaintiff's mark and evidence of actual confusion. However, Plaintiff fails to raise a *genuine* dispute as to the evidence offered by TCI, which shows that Plaintiff's mark is both conceptually and commercially weak (and thus consistent with a theory of *reverse*, rather than forward, confusion). As to conceptual weakness, although Plaintiff contends that its mark is ostensibly unrelated to its skincare products and thus "arbitrary" (ECF No. 54-1 at 15-16), Plaintiff's representations of its products' benefits refute this claim. The ordinary dictionary definition of the word "thrive" is "prosper or flourish" or to "grow vigorously or luxuriantly; improve physically." Def.'s Reply to Pl's Stmt. of Additional Facts ("Reply Stmt.") No. 33; Def's Stmt. of Genuine Disputes in Opp. to Pl.'s Mot. for Partial Summ. J. (ECF No. 60-2) ("Opp. SGD") No. 102. Plaintiff advertises that its products are "regenerative," "empower your skin," and "'go under the hood' to work with your body to help skin be healthy and resilient from the inside out." Opp. SGD No. 103. The mark THRIVE thus describes the characteristics of Plaintiff's products, which help skin to physically improve, or *thrive*. *Id.* No. 104. At best, Plaintiff's mark is suggestive of these benefits, and of Plaintiff's business model that helps the environment and communities to thrive. *Id.* No. 105; *see Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987) (noting that "descriptive or suggestive marks are 'weak'," and affirming district court's conclusion that plaintiff's mark was suggestive and weak, notwithstanding plaintiff's claim that it was arbitrary and strong).

As to commercial weakness, Plaintiff's mark is weak now and has been throughout its existence. *Herbalife Int'l, Inc. v. Lumene N. Am., LLC*, 2007 WL 4225776, *5 (C.D. Cal. Oct. 15, 2007) (noting that the "commercial strength" of a mark refers to its degree of recognition in the minds of consumers). Indeed, one need look no further than the above-quoted allegations from Plaintiff's own complaint as dispositive evidence of this fact: "TCI's multi-million dollar per year growth has

-4-

enabled it to flood the market with advertising for its own skincare products such that consumers have now come to believe that plaintiff Thrive is related to or affiliated with defendant TCI and that Thrive's goods originate from TCI." ECF No. 28 ¶ 4; *see also id.* ¶¶ 69, 75. These admissions are squarely inconsistent with, and thus effectively preclude, any claim that Plaintiff's mark is commercially strong.[2]

Nor does Plaintiff's evidence of alleged actual confusion create a genuine dispute of material fact as to the existence of a forward confusion claim. Plaintiff relies primarily on the results of a consumer survey that its expert conducted, but as *Plaintiff's own expert conceded*, that survey evidence does not demonstrate the *direction* of any confusion. Reply Stmt. No. 44. Specifically, during his recent deposition, Plaintiff's survey expert acknowledged that his survey was designed to test solely whether participants believe the parties' products come from the same source or are affiliated; it did *not* test, and the results do *not* show, whether any such alleged confusion was forward or reverse confusion (*i.e.*, participants were simply asked whether Plaintiff and TCI's respective products came from the same source, not to identify whether the source was Plaintiff or TCI). *See id.*[3]

Equally meritless is Plaintiff's assertion that a single customer review on Amazon.com reflects forward confusion; on the contrary, if it is admissible at all

---

[2] While Plaintiff seeks to introduce evidence regarding alleged commercial strength, *e.g.*, the parties' respective advertising spend, this evidence (even if taken as true) actually *confirms* that the only plausible theory is one of reverse confusion – Plaintiff contends that TCI has spent *over twenty times* the amount that Plaintiff has spent advertising skincare products. *See* PSGD Nos. 4, 30, 43. Plaintiff also effectively concedes that consumer recognition, as reflected in social media followings, shows the commercial weakness of Plaintiff's mark: TCI has *seventy-three* times more followers on Instagram, and *two hundred twenty eight* times more followers on Facebook, than Plaintiff, even though Plaintiff has been in existence longer. *See* PSGD Nos. 3, 6. These facts, coupled with the admissions in Plaintiff's complaint, render the authorities cited by Plaintiff inapposite. *Cf. JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1109 (9th Cir. 2016) (no admission by plaintiff that the defendant had "flood[ed] the market," plus evidence – unlike here – from which a jury could find that plaintiff had "robust commercial strength").
[3] TCI disputes the validity of Plaintiff's survey and reserves all arguments in that regard. What is relevant for purposes of this motion is that even Plaintiff's own expert concedes that – whatever the survey results show – the survey does not reflect whether any confusion is forward confusion or reverse confusion.

-5-

(which TCI does not concede), it is evidence of reverse confusion. In that review, the customer left a comment on Plaintiff's Amazon webpage stating "I like Thrive products and have bought eye liner and mascara from them as well as moisturizer. [sic] My dermatologist told me to get sunscreen to wear everyday, so I bought this." Reply Stmt. Nos. 35, 47. If anything, this reflects that the customer believed Plaintiff was affiliated with TCI (which sells eyeliner and mascara) and purchased Plaintiff's sunscreen believing that it originated from TCI, which is classic reverse confusion. *Id.* Nos. 35, 47; 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (5th ed. 2021) ("McCarthy") § 23:10 ("[R]everse confusion occurs when . . . customers are likely to be confused into thinking that the senior user's goods are those of the junior user[.]"). None of the evidence offered by Plaintiff raises a genuine dispute of material fact concerning forward confusion.

TCI's motion as to Plaintiff's forward confusion claim should thus be granted.

**II. PLAINTIFF'S MONETARY RECOVERY THEORIES FAIL AS A MATTER OF LAW.**

**A. Profits Are Unavailable in Reverse Confusion Cases.**

Plaintiff seeks disgorgement of TCI's profits on a theory of unjust enrichment, namely, that TCI benefitted from the goodwill associated with Plaintiff's THRIVE mark and should not be permitted to retain it. ECF No. 54-1 at 22. However, as a matter of law, disgorgement of profits is not available in reverse confusion cases because, by their very nature, reverse confusion cases involve a junior user who is not trading on the mark or goodwill of the smaller senior user, but instead, displaces it. *Oculu, LLC*, 2015 WL 3619204, at *9; McCarthy § 23:10. As such, the junior user does not obtain a benefit from the senior user. *See Novadaq Technologies, Inc. v. Karl Storz GmbH & Co. K.G.*, 2015 WL 9028123, at *2-3 (N.D. Cal. Dec. 16, 2015); *Scat Enterp., Inc. v. FCA US LLC*, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017).

Here, it is undisputed that TCI is not trading on Plaintiff's goodwill. Instead, Plaintiff asserts that the foregoing authorities have effectively been overruled by the Supreme Court's decision in *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492

-6-

(2020), which addressed an entirely separate issue, namely, whether *willfulness* is required for a Lanham Act plaintiff to recover a defendant's profits, *id.* at 1494. Plaintiff's argument reflects a fundamental misunderstanding and conflation of two distinct issues – (1) whether profits are available even in the absence of willful infringement, and (2) whether profits are available in reverse confusion cases, given the absence of unjust enrichment (*i.e.*, trading on the senior user's goodwill) in such cases. The only issue addressed in *Romag* was the first – the Supreme Court held that while willfulness remains a critical consideration in evaluating an award of the defendant's profits, willfulness is not a precondition to such an award. *Romag*, 140 S. Ct. at 1497. The Court neither considered nor addressed the separate, distinct rule precluding an award of the defendant's profits in reverse confusion cases.[4]

Nor is that rule affected by *Romag*. On the contrary, as the authorities cited in TCI's motion reflect, the unavailability of a profits award in reverse confusion cases is *not* tied to willfulness (*i.e.*, the issue in *Romag*). Instead, profits are – and have long been – unavailable in reverse confusion cases *regardless* of whether the defendant's infringement is willful, given that the defendant in such cases is not "attempting to gain the value of an established name of another," (*i.e.*, is not unjustly enriched). *Novadaq*, 2015 WL 9028123, at *2 (internal quotations and citations omitted).

In *Novadaq*, for example, the court allowed the question of willfulness on the plaintiff's reverse confusion theory to go to the jury, but nonetheless precluded the plaintiff from seeking an award of the defendant's profits:

> [N]o evidence in the record could lead a reasonable jury to find that [the defendant] deliberately set out to take advantage of [the plaintiff]'s mark. . . . [A] reasonable jury could find willful infringement, but not intent to infringe. That intent is a precondition for unjust enrichment or disgorgement damages.

*Novadaq*, 2015 WL 9028123 at *2. Although *Novadaq* pre-dates *Romag*, its holding is consistent with that authority. *Novadaq* recognized that a defendant's conduct in a reverse confusion case could be willful, but that profits are nonetheless inappropriate

---

[4] Notably, *Romag* was a forward confusion case. *See Romag*, 140 S. Ct. at 1494-95.

because the purpose of disgorgement – *i.e.*, to prevent unjust enrichment – is not served where there is no intent to exploit the value of an existing mark. *Id.* On the contrary, in such circumstances, an award of profits would constitute an impermissible penalty to the infringer and a windfall to the trademark holder. *Id.* at *3 ("Disgorging the infringer's significant profits without proof of trading off the mark holder's goodwill would still amount to a penalty to the infringer and a windfall to the trademark holder, . . . even if the infringer's conduct was otherwise intentional.") (internal quotations and citation omitted). Conspicuously absent from Plaintiff's opposition brief is *any* reference to, much less effort to distinguish, *Novadaq*.

Plaintiff alternatively argues that an award of profits would be "equitable." *See* ECF No. 54-1 at 22. In support, Plaintiff relies on *forward* confusion cases where there was clear evidence that the defendant was trading on the goodwill established by the senior user. *See, e.g.*, *Monster Energy Co. v. Integrated Support Network, LLC*, 2021 WL 1521981, at * 2 (C.D. Cal. Apr. 12, 2021) (reciting evidence that defendant's executive stated that plaintiff Monster Energy's sponsorship of NASCAR "could be good for [defendant's] Monster brand" and "certainly creates awareness!"); *Playboy Enters. Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (claim involving misappropriation of goodwill associated with famous PLAYBOY trademark through use of counterfeit Playboy labels in jeans manufactured and sold by defendants). No such evidence exists here. Notably, Plaintiff does not argue that TCI intended to, or in fact did, misappropriate or otherwise trade on *any* goodwill associated with Plaintiff's mark. Nor has Plaintiff offered any evidence of actual harm – there is no evidence of lost profits, diverted sales, actual damage to its goodwill or reputation, or actual damage to the value of the THRIVE mark (and Plaintiff's damages expert conceded that he never performed any such calculations). Reply Stmt. Nos. 58-60. Under these facts, an award of TCI's profits would be highly *in*equitable – it would constitute a massive windfall to Plaintiff, in violation of the strictures of the Lanham Act. *See* 15 U.S.C. 1117(a) (profits award "shall constitute

-8-

compensation and not a penalty"); *cf. TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) (affirming this Court's rejection of profits award in Lanham Act false advertising suit, even where defendant engaged in willful deception; given absence of actual harm or appropriation of plaintiff's goodwill, this Court "had no way to determine with any degree of certainty what award would be compensatory").

In sum, even if the Court were to find TCI's conduct willful (which it is not, *see* ECF No. 60-1 at 24-25, 26-27), there is no evidence that TCI sought to trade on the value of Plaintiff's mark. *See* Opp. SGD Nos. 74-79; Reply Stmt. Nos. 58-60. Plaintiff's claim for disgorgement of profits therefore cannot proceed.

### B. There Is No Basis On Which To Calculate A Reasonable Royalty.

The parties agree that to recover a reasonable royalty, a plaintiff must show "a legitimate proposed basis on which to *calculate* a royalty." *M2 Software Inc. v. Viacom, Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007) (emphasis added). Plaintiff fails to make that showing here. After conceding that the parties have never entered into a license agreement with each other or with any third party (*see* PSGD Nos. 17, 19), Plaintiff argues that a royalty award is nonetheless appropriate because the parties ostensibly "began to negotiate" a license, and further points to the opinion of its expert. ECF No. 54-1 at 24, 26. Neither provides "a *legitimate* . . . basis on which to *calculate* a royalty." *M2 Software*, 223 F. App'x at 655 (emphasis added).

It is true that the parties had a single conversation in June 2019 during which Mr. McIntosh generally referenced, among other topics, licensing. Def.'s Statement of Uncontroverted Facts ("DSUF") (ECF No. 37-2) Nos. 11-13. Regardless of whether this discussion reflects an "intent" to license – which is the sole significance Plaintiff attributes to the conversation – Plaintiff cites no authority for the proposition that such a non-specific conversation provides a legitimate basis on which to *calculate* a royalty with reasonable certainty, which is the relevant legal standard. To the contrary, the cases cited by Plaintiff involve *protracted* and *detailed* negotiations during which actual terms and amounts were discussed and/or agreements reflecting

-9-

such terms that were actually signed. For example, in *QS Wholesale Inc. v. World Marketing, Inc.*, 2013 WL 1953719 (C.D. Cal. May 9, 2013), the court found a reasonable royalty would not be speculative because there was "a detailed record" of "nearly two years of negotiations," e-mails between the parties reflected specific monetary offers and counteroffers, and the royalty estimate from the defendant's expert provided a range that "track[ed] the offers and counteroffers made" during those negotiations. *Id.* at *5. Similarly in *adidas America, Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812 (D. Or. Sept. 12, 2008) although the parties had no prior licensing agreement with each other, they *both* had license agreements with third parties, and the royalty award was "consistent with royalties" between the parties and third parties. *Id.* at * 12.

No such evidence is present here. As between themselves, TCI and Plaintiff had a single conversation during which no specific licensing or royalty terms were discussed, much less negotiated, much less negotiated over a period of years, or even months, weeks, or days. DSUF Nos. 11-13. And as for third parties, it is undisputed that neither party has ever licensed its mark to others. PSGD Nos. 17, 19. Under such circumstances, a reasonable royalty is unavailable. *See, e.g.*, *Pac. Packaging Concepts, Inc. v. Nutrisystem, Inc.*, 2021 WL 3130041, at *3 (C.D. Cal. July 23, 2021); *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576 at *7 (N.D. Cal. July 14, 2011).[5]

Given these facts, Plaintiff's reliance on its damages expert, David Drews, and his discussion of the so-called *Georgia- Pacific* factors provides it no aid. As noted in TCI's motion – and ignored by Plaintiff in its opposition – another court has already rejected as "impermissibly speculative" Mr. Drews' attempt to rely on the *Georgia-*

---

[5] Plaintiff's putative evidence of its offers to license its mark to other parties accused of infringement is irrelevant, both because those instances occurred *after* this litigation commenced and because none of Plaintiff's offers have culminated in an actual licensing agreement. *See Lodestar Ansalt v. Bacardi & Co. Ltd.*, 2019 WL 8105378 at *13 (C.D. Cal. July 3, 2019) (granting summary judgment of no reasonable royalty where only evidence of licensing was a single, unexecuted agreement negotiated after the litigation was commenced; such a royalty rate is "not a fair representation of what an unaffiliated third party would have agreed to pay to use the" mark).

-10-

*Pacific* factors in similar circumstances. *See Marketquest Group, Inc. v. Bic Corp.*, 316 F. Supp. 3d 1234, 1301 n.34 (S.D. Cal. 2018). Similarly, in *Pacific Packaging*, a court rejected a plaintiff's attempt to rely on expert opinions speculating as to the royalty rate the parties might have agreed to in a hypothetical negotiation, explaining that "such 'opinions do not cure [the plaintiff's] failure to provide any evidence of a prior license or negotiations with a third party to license'" its mark. *Pac. Packaging Concepts*, 2021 WL 3130041, at *3 (*quoting Lodestar Ansalt v. Bacardi & Co. Ltd.*, 2019 WL 8105378 at *14 (C.D. Cal. July 3, 2019)). Simply put, Plaintiff cannot rely on speculation – its own or its expert's – as a basis to calculate a reasonable royalty.

In sum, Plaintiff has failed to present a genuine dispute of material fact supporting its request for a reasonable royalty. TCI's motion should be granted.

### C. Plaintiff Fails To Make The Threshold Showing That Its Mark Lost Value, As Required For A Corrective Advertising Award.

Plaintiff's opposition does not even address its failure to meet the threshold requirement for obtaining a corrective advertising award – namely, non-speculative evidence of the amount of damage to the *value* of its mark. *See, e.g.*, *Lodestar*, 2019 WL 8105378 at *15; *Scat Enter.*, 2017 WL 5896182, at *2; *Binder v. Disability Group, Inc.*, 772 F. Supp. 2d 1172, 1180-81 (C.D. Cal. 2011); *Quia Corp*, 2011 WL 2749576, at *5-6; *see also Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995) (corrective advertising award may "not exceed the damage to the value of [the] mark"). Here, Plaintiff's damages expert has confirmed that he did not calculate the value of Plaintiff's THRIVE mark at *any* time, nor has he attempted to calculate the amount of any lost or diverted sales, or the cost of an advertising campaign to correct any alleged misimpressions caused by TCI's conduct. Reply Stmt. Nos. 58-60. These facts doom Plaintiff's corrective advertising claim under the well-established authority cited above.

In response, Plaintiff attempts to distinguish *Binder* and *Lodestar* on the grounds that those cases involved a shorter alleged period of infringement and

different marketing channels, ECF No. 54-1 at 27, but those "distinctions" are irrelevant: the length and nature of the infringement does not dispense with the legal requirement that a mark have actually lost value for a corrective advertising award. Equally unhelpful to Plaintiff are the cases that it affirmatively cites. Certain of Plaintiff's authorities involve preliminary injunctions or cases in which the plaintiff withdrew its damages claim, and in all events, none discusses corrective advertising or related legal requirements. *See, e.g.*, *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1183 (C.D. Cal. 2010) (preliminary injunction decision; no discussion of corrective advertising); *Ossur hf v. Manamed Inc.*, 331 F. Supp. 3d 1005, 1017 (2017) (same); *Vineyard House, LLC v. Constellation Brands U.S*, 515 F. Supp. 3d 1061, 1081 (N.D. Cal. 2021) (damages claim withdrawn). The sole case that actually addresses corrective advertising, *International Oddities v. Record*, 2013 WL 3864050 (C.D. Cal. July 22, 2013), actually supports *TCI*. The court denied corrective advertising because, like Plaintiff here, the "plaintiff [] offered only speculative evidence as to the potential loss of goodwill or business reputation that it has suffered." *Id*. at * 14. Finally, Plaintiff's quasi-expert opinion as to the "effectiveness" of corrective advertising is inconsistent with its deposition testimony, *see* Reply Stmt. No. 60 (reflecting Plaintiff's testimony that corrective advertising would not be "a good investment"), and in all events fails to address the fatal deficiency in Plaintiff's claim – namely, that there is no evidence of *actual loss* to the *value* of the THRIVE mark. *See id.* Nos. 58-60, DSUF Nos. 21-22.

For these reasons, Plaintiff has failed to demonstrate a genuine dispute of material fact as to its corrective advertising theory. TCI's motion should be granted.

DATED: August 30, 2021

SIDLEY AUSTIN LLP

By: */s/ Rollin A. Ransom*
Rollin A. Ransom

*Attorneys for Defendant
Thrive Causemetics, Inc.*

-12-