Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone:  (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive
Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:20-cv-9091-PA-AS |
| Plaintiff, | Hon. Percy Anderson |
| v. | **DEFENDANT THRIVE CAUSEMETICS, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| THRIVE CAUSEMETICS, INC., | |
| Defendant. | Trial Date:  November 9, 2021<br>Time:        9:00 a.m.<br>Place:       Courtroom 9A |

# TABLE OF CONTENTS

**PAGE**

I.   CLAIMS AND DEFENSES (L.R. 16-4.1) ............................................................ 1

   A.   Plaintiff's Claim For Federal Trademark Infringement
      (15 U.S.C. § 1114) .................................................................................... 1

      1.   Summary Statement of Plaintiff's Claim for Federal
         Trademark Infringement............................................................. 1

      2.   Elements Required to Establish Plaintiff's Claim for Federal
         Trademark Infringement............................................................. 1

      3.   Key Evidence Relied On By Defendant In Opposition to
         Plaintiff's Claim for Federal Trademark Infringement ........ 1

   B.   Plaintiff's Claim For Federal False Designation Of Origin (15 U.S.C. §
      1125(a)) .................................................................................................... 4

      1.   Summary Statement of Plaintiff's Claim for Federal False
         Designation of Origin ............................................................... 4

      2.   Elements Required to Establish Plaintiff's Claim for Federal
         False Designation of Origin ...................................................... 4

      3.   Key Evidence Relied On By Defendant In Opposition to
         Plaintiff's Claim for Federal False Designation of Origin.... 5

   C.   Plaintiff's Claim For Common Law Trademark Infringement................. 5

      1.   Summary Statement of Plaintiff's Claim for Common Law
         Trademark Infringement............................................................. 5

      2.   Elements Required to Establish Plaintiff's Claim for
         Common Law Trademark Infringement ................................... 5

      3.   Key Evidence Relied On By Defendant In Opposition to
         Plaintiff's Claim for Common Law Trademark
         Infringement .............................................................................. 6

   D.   Plaintiff's Claim For Common Law Unfair Competition......................... 6

      1.   Summary Statement of Plaintiff's Claim for Common Law
         Unfair Competition................................................................... 6

      2.   Elements Required to Establish Plaintiff's Claim for
         Common Law Unfair Competition ........................................... 7

      3.   Key Evidence Relied On By Defendant In Opposition to
         Plaintiff's Claim for Common Law Unfair Competition...... 7

   E.   Plaintiff's Claim For Unfair Competition Under Cal.
      Bus. & Prof. Code § 17200 ...................................................................... 7

1.   Summary Statement of Plaintiff's Claim for Unfair Competition Under Cal. Bus. & Prof. Code § 17200............ 7

2.   Elements Required to Establish Plaintiff's Claim for Unfair Competition Under Cal. Bus. & Prof. Code § 17200............ 7

3.   Key Evidence Relied On By Defendant In Opposition to Plaintiff's Claim for Unfair Competition Under Cal. Bus. & Prof. Code § 17200 ............................................. 8

F.   TCI's Affirmative Defense Of Laches ................................................ 8

1.   Summary Statement of TCI's Affirmative Defense of Laches ...................................................................... 8

2.   Elements Required to Establish TCI's Defense of Laches ... 8

3.   Key Evidence Relied On By Defendant In Support Of Its Affirmative Defense of Laches ........................... 9

G.   TCI's Affirmative Defense Of Abandonment ........................................ 10

1.   Summary Statement of TCI's Affirmative Defense of Abandonment ...................................................... 10

2.   Elements Required to Establish TCI's Defense of Abandonment ...................................................... 10

3.   Key Evidence Relied On By Defendant In Support Of Its Affirmative Defense of Abandonment ................................. 11

II.   IDENTIFICATION OF ANTICIPATED EVIDENTIARY ISSUES  (L.R. 16-4.1(h)) ......................................................................... 12

III.   IDENTIFICATION OF ANTICIPATED ISSUES OF LAW (L.R. 16.4-1(i)) ............................................................... 13

A.   Burden of Proof For Abandonment Defense ...................................... 13

B.   Impact of Incontestability on Abandonment Defense ............................ 13

C.   Availability of Disgorgement of Profits in Reverse Confusion Cases .... 14

D.   Availability of Reasonable Royalty Damages ...................................... 15

E.   Availability of Corrective Advertising Damages ................................... 16

IV.   BIFURCATION OF ISSUES (L.R. 16-4.3) ...................................................... 17

V.   JURY TRIAL (L.R. 16-4.4) ...................................................................... 17

VI.   ATTORNEYS' FEES (L.R. 16-4.5) ............................................................ 18

VII.   ABANDONMENT OF ISSUES (L.R. 16-4.6) ................................................ 19

-ii-

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5
*Adray v. Adry-Mart, Inc.*,
    76 F.3d 984 (9th Cir. 1995) ...................................................................16

6

7
*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    135 S. Ct. 1293 (2015).........................................................................18

8

9
*Binder v. Disability Group, Inc.*,
    772 F. Supp. 2d 1172 (C.D. Cal. 2011).................................................16

10

11
*CG Roxane LLC v. Fiji Water Co. LLC*,
    569 F. Supp. 2d 1019 (N.D. Cal. 2008)..................................................6

12

13
*Chronicle Pub. Co. v. Legrand*,
    24 U.S.P.Q.2d 1881, 1992 WL 420808 (N.D. Cal. 1992)...................19

14

15
*Credit One Corp. v. Credit One Fin., Inc.*,
    661 F. Supp. 2d 1134 (C.D. Cal. 2009) .................................................6

16
*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962)...............................................................................18

17

18
*Danjaq LLC v. Sony Corp.*,
    263 F.3d 942 (9th Cir. 2001) .......................................................17, 18

19

20
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)...............................................................................12

21

22
*DeLuna v. Navarro*,
    2019 WL 6139920 (C.D. Cal. Sept. 6, 2019) ........................................6

23
*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A, Inc.*,
    778 F.3d 1059 (9th Cir. 2015) .......................................................17, 18

24

25
*Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*,
    772 F. Supp. 2d 1155 (C.D. Cal. 2009).................................................7

26

27

28

-iii-

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac.*
    *Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir.
    1971) .................................................................................................15

*Globefill Inc. v. Elements Spirits, Inc.*,
    2017 WL 6520589 (C.D. Cal. 2017), *aff'd,* 756 Fed. App'x 764 (9th
    Cir. 2019).........................................................................................19

*Green Crush LLC v. Paradise Splash I, Inc.*,
    2018 WL 4940825 (C.D. Cal. May 3, 2018).........................................6

*Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*,
    2011 WL 13176098 (C.D. Cal. 2011) ................................................13

*interState Net Bank v. NetB@nk Inc.*,
    348 F. Supp. 2d 340 (D.N.J. 2004)....................................................14

*Kleven v. Hereford*,
    No. CV 13-02783-AB, 2015 WL 4977185 (C.D. Cal. Aug. 21, 2015) .............13

*Lodestar Ansalt v. Bacardi & Co. Ltd.*,
    No. 2:16-cv-0641-CAS(FFMXx), 2019 WL 8105378 (C.D. Cal. July
    3, 2019) ...........................................................................................16

*M2 Software Inc. v. Viacom Inc.*,
    223 F. App'x 653 (9th Cir. 2007).......................................................15

*Marketquest Group, Inc. v. BIC Corp.*,
    316 F. Supp. 3d 1234 (S.D. Cal. 2018) ..............................................15

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ..............................................................8

*Mister Donut of Am., Inc. v. Mr. Donut, Inc.*,
    418 F.2d 838 (9th Cir. 1969) ............................................................10

*Nationwide Biweekly Administration Inc. v. Sup. Court of Alameda Cnty.*,
    9 Cal. 5th 279 (2020)..................................................................17, 18

*New West Corp. v. NYM Co. of Cal., Inc.*,
    595 F.2d 1194 (9th Cir. 1979) ............................................................7

-iv-

*Novadaq Technologies, Inc. v. Karl Storz GmbH & Co. K.G.*,
   No. 14-cv-04853-PSG, 2015 WL 9028123 (N.D. Cal. Dec. 16, 2015) ............. 14

*Philip Morris USA Inc. v. Liu*,
   489 F. Supp. 2d 1119 (C.D. Cal. 2007) ................................................................. 7

*Quia Corp. v. Mattel, Inc.*,
   No. C 10-1902 JF (HRL), 2011 WL 2749576 (N.D. Cal. July 14,
   2011) ................................................................................................................ 15, 16

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ............................................................................... 6

*Robinson v. Hunger Free America, Inc.*,
   2018 WL 2563809 (E.D. Cal. June 4, 2018) ......................................................... 6

*Scat Enter., Inc. v. FCA US LLC*,
   2017 WL 5896182 (C.D. Cal. June 8, 2017) ................................................ 14, 16

*Societe de Developments et D'Innovations Des Marches Agricoles et
   Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt
   Co.*,
   662 F. Supp. 839 (D. Or. 1987) ........................................................................... 13

*Solar Sun Rings, Inc. v. Pools*,
   2016 WL 6139615 (C.D. Cal. Jan. 13, 2016) ....................................................... 8

*Toho Co. v. Sears, Roebuck & Co.*,
   645 F.2d 788 (9th Cir. 1981) ................................................................................. 6

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ............................................................................. 18

*Trovan, Ltd. v. Pfizer, Inc.*,
   No. CV-98-00094 LGB MXC., 2000 WL 709149 (C.D. Cal. May 24,
   2000) ..................................................................................................................... 15

*Two Pesos, Inc. v. Taco Cabana, Int'l Inc.*,
   505 U.S. 763 (1992) ............................................................................................. 13

**Statutes and Rules**

15 U.S.C. § 1065 .................................................................................................... 13

-v-

15 U.S.C. § 1114 .................................................................................1, 10, 17

15 U.S.C. § 1115(b) .........................................................................................13

15 U.S.C. § 1115(b)(2) ...................................................................................13

15 U.S.C. § 1117(a) ......................................................................14, 17, 18, 19

15 U.S.C. § 1125(A) .............................................................................4, 5, 17

15 U.S.C. § 1127..............................................................................................13

CAL. BUS. & PROF. CODE § 17200.............................................7, 8, 17, 18

Federal Rule of Evidence 403.................................................................12, 13

Federal Rule of Evidence 602.................................................................12, 13

Federal Rule of Evidence 802........................................................................12

Federal Rules of Evidence 702 .....................................................................12

**Other Authorities**

J. Thomas McCarthy, Trademarks and Unfair Competition
(5th ed. 2021).....................................................................10, 14, 17, 18

DEFENDANT THRIVE CAUSEMETICS, INC.'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Pursuant to Local Rule 16-4, Defendant Thrive Causemetics, Inc. ("Defendant" or "TCI") respectfully submits the following Memorandum of Contentions of Fact and Law.

## I.    CLAIMS AND DEFENSES (L.R. 16-4.1)

### A.    PLAINTIFF'S CLAIM FOR FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

1.    Summary Statement of Plaintiff's Claim for Federal Trademark Infringement

Claim 1:  Plaintiff claims that it is the owner of U.S. Trademark Reg. No. 4,467,942 and U.S. Trademark Reg. No. 6,164,303 for the THRIVE mark, and that TCI's use of the mark THRIVE CAUSEMETICS in connection with TCI's goods is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the goods, in violation of 15 U.S.C. § 1114.

2.    Elements Required to Establish Plaintiff's Claim for Federal Trademark Infringement

      a.    THRIVE is a valid and protectable trademark;

      b.    Plaintiff owns THRIVE as a trademark; and

      c.    TCI used the trademark THRIVE CAUSEMETICS without the consent of Plaintiff in a manner that is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the goods.

*See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* (2017 Edition), Inst. No. 15.6; *id.*, Inst. No. 15.8.

3.    Key Evidence Relied On By Defendant In Opposition to Plaintiff's Claim for Federal Trademark Infringement

The following is a representative (but not exhaustive) list of key evidence that TCI intends to rely upon to oppose Plaintiff's claim for federal trademark infringement.  TCI also anticipates introducing testimony (live witnesses) to oppose Plaintiff's federal trademark infringement claim.

- Ecomundi Ventures LLC's ("Ecomundi") Application Serial No. 85726058 for the mark THRIVE (the "'058 Application");
- Documents regarding Ecomundi's ownership and purported assignment of the '058 Application to Plaintiff, including the Nunc Pro Tunc Trademark Assignment dated Sept. 27, 2013 and Restricted Stock Purchase Agreement dated May 23, 2013;
- Documents and communications regarding Ecomundi's business activities and purported use of the THRIVE mark prior to purportedly assigning the '058 Application to Plaintiff;
- Documents regarding Plaintiff's use of the THRIVE mark and Ecomundi's discontinued use after the purported assignment of the '058 Application to Plaintiff;
- Records from the United States Patent and Trademark Office and other documents regarding the '058 Application and its eventual maturity into U.S. Trademark Reg. No. 4,467,942 (the "'942 Registration") for the THRIVE mark;
- The '942 Registration and U.S. Trademark Reg. No. 6,164,303;
- Documents and communications between the parties in April 2016, March 2017, April 2017, and June 2019 regarding Plaintiff's infringement claim and the parties' continued coexistence;
- Documents and communications between Plaintiff and third parties reflecting Plaintiff's belief that TCI's use of the mark THRIVE CAUSEMETICS infringed Plaintiff's purported rights in the mark THRIVE;
- Documents and communications regarding the reasons Plaintiff's delay in filing the instant lawsuit;
- Plaintiff's Complaint, filed in this action on October 2, 2020;

-2-

- Documents regarding TCI's substantial investments in development of its brand identity during Plaintiff's delay in filing the instant lawsuit;
- Documents and communications regarding Plaintiff's origins, selection and adoption of the THRIVE mark, sustainability mission and business model, and Costa Rican plant ingredients for its products;
- Plaintiff's business entity information, such as ownership structure and percentages
- Documents and communications regarding Plaintiff's first sales and initial product offerings in men's skincare and grooming;
- Plaintiff's summary financial statements and other financial information, including sales volume, revenues, losses, and advertising expenditures from 2013 through 2020;
- Documents regarding the conceptual and commercial weakness of the mark THRIVE, including the dictionary definition of the term "thrive," marketplace recognition of the mark THRIVE amongst consumers, Plaintiff's size, financial performance, and social media following, and third-party use of the mark THRIVE in connection with goods and services similar to those offered by Plaintiff;
- Documents regarding Plaintiff's masculine brand identity, product packaging, marketing and advertising collateral, representations to consumers regarding the nature and characteristics of its products, and principally male target customer base;
- Documents regarding the physical and online locations through which consumers can purchase Plaintiff's products;
- Surveys and related results conducted by the parties' expert witnesses;
- Documents and communications regarding TCI's origins, selection and adoption of the THRIVE CAUSEMETICS mark, charitable giving

-3-

mission supporting women empowerment, and direct-to-consumer business model;

- Documents and communications regarding TCI's first sales and product offerings in color cosmetics and high-end luxury skincare;
- TCI's detailed financial information, including sales volume, revenues, expenses attributable to the production and sale of TCI's skincare products, and advertising expenditures from 2014 through mid-2021;
- Documents regarding TCI's brand identity, product packaging, marketing, advertising, representations to consumers, and principally female target customer base;
- Documents regarding the authorized locations through which consumers can purchase TCI's products;
- Documents regarding the driving factors of TCI's sales and success;
- Search engine and third-party marketplace search results;
- Physical product specimens of the parties' respective products; and
- Testimony of TCI's and Plaintiff's respective percipient witnesses and expert witnesses.

**B.  PLAINTIFF'S CLAIM FOR FEDERAL FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))**

1.  Summary Statement of Plaintiff's Claim for Federal False Designation of Origin

Claim 2:  Plaintiff claims that TCI's use of the mark THRIVE CAUSEMETICS in connection with TCI's goods constitutes false representations, false descriptions, false designations of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

2.  Elements Required to Establish Plaintiff's Claim for Federal False Designation of Origin

a.  THRIVE is a valid and protectable trademark;

-4-

b.      Plaintiff owns THRIVE as a trademark; and

c.      TCI used the trademark THRIVE CAUSEMETICS without the consent of Plaintiff in a manner that is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the goods.

*See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* (2017 Edition), Inst. No. 15.6; *id.*, Inst. No. 15.9; *id.*, Inst. No. 15.10; *id.*, Inst. No. 15.11.

3.      Key Evidence Relied On By Defendant In Opposition to Plaintiff's Claim for Federal False Designation of Origin

See *supra* Section I.A.3 for a representative (but not exhaustive) list of key evidence that TCI intends to rely upon to oppose Plaintiff's claim for federal false designation of origin.  TCI also anticipates introducing testimony (live witnesses) to oppose Plaintiff's federal false designation of origin claim.

**C.      PLAINTIFF'S CLAIM FOR COMMON LAW TRADEMARK INFRINGEMENT**

1.      Summary Statement of Plaintiff's Claim for Common Law Trademark Infringement

Claim 3:  Plaintiff claims that it has continuously used and promoted the THRIVE mark in connection with Plaintiff's goods such that consumers associate and recognize the THRIVE mark as representing a single source or sponsor of Plaintiff's goods, and that TCI's use of the mark THRIVE CAUSEMETICS in connection with TCI's goods infringes Plaintiff's common law trademark rights.

2.      Elements Required to Establish Plaintiff's Claim for Common Law Trademark Infringement

To prevail on a claim for common law trademark infringement, Plaintiff must make the same showing as with its federal trademark infringement claim, that:

a.      THRIVE is a valid and protectable trademark;

b.      Plaintiff owns THRIVE as a trademark; and

-5-

c.    TCI used the trademark THRIVE CAUSEMETICS without the consent of Plaintiff in a manner that is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the goods.

*See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* (2017 Edition), Inst. No. 15.6; *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012); *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940825, at * 6 (C.D. Cal. May 3, 2018); *Robinson v. Hunger Free America, Inc.*, 2018 WL 2563809, at * 3 (E.D. Cal. June 4, 2018); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1034 (N.D. Cal. 2008); *DeLuna v. Navarro*, 2019 WL 6139920, at * 5 (C.D. Cal. Sept. 6, 2019); *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009).

3.    <u>Key Evidence Relied On By Defendant In Opposition to Plaintiff's Claim for Common Law Trademark Infringement</u>

See *supra* Section I.A.3 for a representative (but not exhaustive) list of key evidence that TCI intends to rely upon to oppose Plaintiff's claim for common law trademark infringement.  TCI also anticipates introducing testimony (live witnesses) to oppose Plaintiff's common law trademark infringement claim.

**D.    PLAINTIFF'S CLAIM FOR COMMON LAW UNFAIR COMPETITION**

1.    <u>Summary Statement of Plaintiff's Claim for Common Law Unfair Competition</u>

Claim 4:  Plaintiff claims that TCI's use of the mark THRIVE CAUSEMETICS in connection with TCI's goods is likely to create confusion, misrepresentation, mistake, or to deceive the public as to the affiliation, approval, sponsorship, or connection between TCI and Plaintiff, and constitutes unfair competition at common law.

2.     Elements Required to Establish Plaintiff's Claim for Common Law Unfair Competition

Plaintiff must prove by a preponderance of the evidence that TCI committed either federal trademark infringement or federal unfair competition.  *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* (2017 Edition), Inst. No. 15.6; *Fleischer Studios, Inc. v. A.V.E.L.A. Inc*., 772 F. Supp. 2d 1155, 1167 (C.D. Cal. 2009); *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007); *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

3.     Key Evidence Relied On By Defendant In Opposition to Plaintiff's Claim for Common Law Unfair Competition

See *supra* Section I.A.3 for a representative (but not exhaustive) list of key evidence that TCI intends to rely upon to oppose Plaintiff's claim for common law unfair competition.  TCI also anticipates introducing testimony (live witnesses) to oppose Plaintiff's common law unfair competition claim.

E.     **PLAINTIFF'S CLAIM FOR UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200**

1.     Summary Statement of Plaintiff's Claim for Unfair Competition Under Cal. Bus. & Prof. Code § 17200

Claim 5:  Plaintiff claims that TCI's use of the mark THRIVE CAUSEMETICS in connection with TCI's skincare products is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the goods, and constitutes unfair, unlawful, or fraudulent conduct in violation of Cal. Bus. & Prof. Code § 17200.

2.     Elements Required to Establish Plaintiff's Claim for Unfair Competition Under Cal. Bus. & Prof. Code § 17200

a.     TCI engaged in an unlawful, unfair, or fraudulent business act or practice by using the trademark THRIVE CAUSEMETICS without the consent of

-7-

1  Plaintiff in a manner that is likely to cause confusion among consumers as to the

2  source, sponsorship, affiliation, or approval of the goods; and

3            b.     Plaintiff suffered an injury in fact and lost money or property as a

4  result of TCI's conduct.

5       *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth*

6  *Circuit* (2017 Edition), Inst. No. 15.6; *Solar Sun Rings, Inc. v. Pools*, 2016 WL

7  6139615, at *6 (C.D. Cal. Jan. 13, 2016).

8       3.    <u>Key Evidence Relied On By Defendant In Opposition to Plaintiff's Claim</u>

9  <u>for Unfair Competition Under Cal. Bus. & Prof. Code § 17200</u>

10       See *supra* Section I.A.3 for a representative (but not exhaustive) list of key

11  evidence that TCI intends to rely upon to oppose Plaintiff's claim for unfair

12  competition under Cal. Bus. & Prof. Code § 17200.  TCI also anticipates introducing

13  testimony (live witnesses) to oppose Plaintiff's statutory unfair competition claim.

14  **F.    TCI'S AFFIRMATIVE DEFENSE OF LACHES**

15       1.    <u>Summary Statement of TCI's Affirmative Defense of Laches</u>

16       First Affirmative Defense:  Plaintiff's claims against TCI are barred by the

17  equitable doctrine of laches because Plaintiff learned of TCI's use of the THRIVE

18  CAUSEMETICS mark and believed TCI's use constituted infringement as early as

19  April 2016, but did not file the instant lawsuit until October 2, 2020, nearly four and

20  one-half years later.  TCI has been prejudiced because, during Plaintiff's unreasonable

21  delay, TCI continued to make substantial investments in building its brand identity

22  with the THRIVE CAUSEMETICS mark.

23       2.    <u>Elements Required to Establish TCI's Defense of Laches</u>

24            a.     Unreasonable delay by Plaintiff in bringing the instant lawsuit; and

25            b.     Prejudice to TCI.

26  *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).

27

28

3.   <u>Key Evidence Relied On By Defendant In Support Of Its Affirmative Defense of Laches</u>

The following is a representative (but not exhaustive) list of key evidence that TCI intends to rely upon in support of its affirmative defense of laches.  TCI also anticipates introducing testimony (live witnesses) to support this affirmative defense.

Evidence supporting the first element of TCI's laches defense—unreasonable delay by Plaintiff in bringing the instant lawsuit:

- Documents and communications regarding Plaintiff's origins, selection and adoption of the THRIVE mark, sustainability mission and business model, and Costa Rican plant ingredients for its products;

- Documents and communications regarding Plaintiff's first sales and initial product offerings in men's skincare and grooming;

- Documents and communications regarding TCI's origins, and selection and adoption of the THRIVE CAUSEMETICS mark, charitable giving mission supporting women empowerment, and direct-to-consumer business model;

- Documents and communications regarding TCI's first sales and product offerings in color cosmetics and high-end luxury skincare;

- Documents and communications between the parties in April 2016, March 2017, April 2017, and June 2019 regarding Plaintiff's infringement claim and the parties' continued coexistence;

- Documents and communications between Plaintiff and third parties reflecting Plaintiff's belief that TCI's use of the mark THRIVE CAUSEMETICS infringed Plaintiff's purported rights in the mark THRIVE;

- Documents and communications regarding the reasons Plaintiff's delay in filing the instant lawsuit;

- Plaintiff's Complaint, filed in this action on October 2, 2020; and

-9-

1           •       Testimony of TCI's and Plaintiff's respective percipient witnesses.

2           Evidence supporting the second element of TCI's laches defense—prejudice to

3    TCI:

4           •       Documents regarding TCI's substantial investment in development of its

5                   brand identity during Plaintiff's delay in filing the instant lawsuit;

6           •       TCI's financial information, including expenses attributable to the

7                   production and sale of TCI's skincare products and advertising

8                   expenditures from 2014 through mid-2021; and

9           •       Testimony of TCI's and Plaintiff's respective percipient witnesses.

10   **G.    TCI's Affirmative Defense Of Abandonment**

11          1.      Summary Statement of TCI's Affirmative Defense of Abandonment

12          Second Affirmative Defense:  Plaintiff's claim for federal trademark

13   infringement under 15 U.S.C. § 1114 is barred because Ecomundi has abandoned the

14   mark within the meaning of Section 45 of the Trademark Act, 15 U.S.C § 1127.

15   Ecomundi is the prior owner of the '058 Application, which ultimately matured into

16   the '942 Registration for the THRIVE mark.  Ecomundi failed to properly assign the

17   '058 Application to Plaintiff, thereby retaining ownership of the '058 Application and

18   the '942 Registration, and has never utilized the mark THRIVE in commerce or in

19   connection with any ongoing or existing business.

20          2.      Elements Required to Establish TCI's Defense of Abandonment

21          a.      Ecomundi is the owner of the '058 Application, and consequently, the

22   '942 Registration; and

23          b.      Ecomundi discontinued its use of the THRIVE mark in the ordinary

24   course of trade, intending not to resume using it.

25          *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth*

26   *Circuit (2017 Edition)*, Inst. No. 15.5; *id.*, Inst. No. 15.22; J. Thomas McCarthy,

27   Trademarks and Unfair Competition ("McCarthy") §§ 2:15, 2:16 (5th ed. 2021);

28   *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969).

-10-

3.    Key Evidence Relied On By Defendant In Support Of Its Affirmative Defense of Abandonment

The following is a representative (but not exhaustive) list of key evidence that TCI intends to rely upon to support its affirmative defense of abandonment. TCI also anticipates introducing testimony (live witnesses) to support this affirmative defense.

Evidence supporting the first element of TCI's abandonment defense—that Ecomundi is the owner of the '058 Application, and consequently, the '942 Registration:

- Ecomundi's '058 Application for the mark THRIVE;
- Documents regarding Ecomundi's ownership and purported assignment of the '058 Application to Plaintiff, including the Nunc Pro Tunc Trademark Assignment dated Sept. 27, 2013 and Restricted Stock Purchase Agreement dated May 23, 2013;
- Records from the United States Patent and Trademark Office and other documents regarding the '058 Application and its eventual maturity into the '942 Registration for the THRIVE mark;
- The '942 Registration; and
- Testimony of Plaintiff's percipient witnesses.

Evidence supporting the second element of TCI's abandonment defense—that Ecomundi discontinued its use of the THRIVE mark in the ordinary course of trade, intending not to resume using it:

- Documents and communications regarding Ecomundi's business activities and purported use of the THRIVE mark prior to purportedly assigning the '058 Application to Plaintiff;
- Documents regarding Plaintiff's use of the THRIVE mark and Ecomundi's discontinued use after the purported assignment of the '058 Application to Plaintiff; and
- Testimony of Plaintiff's percipient witnesses.

-11-

## II.     IDENTIFICATION OF ANTICIPATED EVIDENTIARY ISSUES
## (L.R. 16-4.1(H))

The parties' joint pretrial exhibit stipulation is being filed concurrently herewith under separate cover as required by the Court's Civil Trial Scheduling Order and Local Rule 16-6.1.  TCI will continue to meet and confer with Plaintiff to discuss objections to proposed exhibits, including objections to authenticity and admissibility, in advance of the Final Pretrial Conference and through trial.

In accordance with Local Rule 16-2.6, the parties met and conferred regarding evidentiary issues and were unable to reach a resolution as to certain issues.  On October 1, 2021, TCI exchanged with Plaintiff four motions *in limine* that TCI will file on October 15, 2021, to be heard on November 1, 2021, raising certain unresolved evidentiary issues.  TCI's motions *in limine* include:

- Motion *in Limine* No. 1 to exclude testimony and evidence of Plaintiff's purported expert witness Rob Wallace as prejudicial, lacking foundation, and unreliable pursuant to Federal Rules of Evidence 403, 602, 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*");

- Motion *in Limine* No. 2 to preclude testimony and argument regarding any claim of harm to the value of Plaintiff's trademark as lacking foundation under Federal Rule of Evidence 602 and to exclude the report and testimony of Plaintiff's purported expert witness David Drews regarding corrective advertising damages as unreliable pursuant to Federal Rule of Evidence 702 and *Daubert*.

- Motion *in Limine* No. 3 to exclude testimony or statements regarding certain alleged instances of actual confusion as prejudicial, lacking foundation, and hearsay to which no exception applies pursuant to Federal Rules of Evidence 403, 602, and 802.

- Motion *in Limine* No. 4 to exclude testimony or statements concerning the alleged contents and impact of online search engine results as prejudicial and

-12-

lacking foundation and authentication pursuant to Federal Rules of Evidence 403, 602, and 901.

## III.    IDENTIFICATION OF ANTICIPATED ISSUES OF LAW (L.R. 16.4-1(I))

### A.    BURDEN OF PROOF FOR ABANDONMENT DEFENSE

The parties disagree regarding the appropriate burden of proof for a defendant asserting an abandonment defense to a trademark infringement claim. *See* 15 U.S.C. § 1127.

TCI's position is that the burden of proof is preponderance of the evidence. *See Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL 13176098, at *6 (C.D. Cal. 2011); *Societe de Developments et D'Innovations Des Marches Agricoles et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987).

Plaintiff's position is that the burden of proof for an abandonment defense is clear and convincing evidence.

### B.    IMPACT OF INCONTESTABILITY ON ABANDONMENT DEFENSE

The parties disagree as to whether incontestability of a trademark registration bars a defendant from challenging the validity and ownership of the plaintiff's trademark. *See* 15 U.S.C. §§ 1065, 1115(b), 1127.

TCI's position is that a defendant may challenge the incontestability of a registered mark utilizing any of the grounds set forth in 15 U.S.C. § 1115(b) (such as abandonment), and if such a defense is successful, may challenge the validity of the trademark as neither inherently distinctive nor having acquired secondary meaning and the plaintiff's ownership claim. *See* 15 U.S.C. §§ 1115(b)(2), 1127; *Two Pesos, Inc. v. Taco Cabana, Int'l Inc.*, 505 U.S. 763, 769 (1992) (explaining that a trademark is valid only if it is inherently distinctive or if it became distinctive through development of secondary meaning); *Kleven v. Hereford*, No. CV 13-02783-AB (AGRx), 2015 WL 4977185, at *22-23 (C.D. Cal. Aug. 21, 2015) (ordering cancellation of incontestable registration where assignee acquired only the naked

-13-

1  trademark registration and did not acquire any goodwill in the assignor's existing
2  business at the time of the assignment, and assignor subsequently ceased commercial
3  use of the mark); *interState Net Bank v. NetB@nk Inc.*, 348 F. Supp. 2d 340, 349, 352
4  (D.N.J. 2004) (granting summary judgment on federal trademark infringement claim
5  and finding cancellation of incontestable registration appropriate after invalid
6  assignment resulted in reversion of trademark rights back to the assignor, and the
7  assignor had ceased use of the mark for a period longer than three years).

8        Plaintiff's position is that a defendant may not challenge the validity or
9  ownership of a mark with an incontestable trademark registration.  *See* ECF No. 32-1
10  at 4-7.

11  **C.   AVAILABILITY OF DISGORGEMENT OF PROFITS IN REVERSE CONFUSION**
12       **CASES**

13        The parties disagree regarding the availability of disgorgement of profits in
14  reverse confusion cases.  *See* 15 U.S.C. § 1117(a).

15        TCI's position is that a claim for disgorgement of profits is unavailable as a
16  matter of law in reverse confusion cases because a reverse confusion theory is
17  inconsistent with the notion that the defendant was unjustly enriched through the
18  infringement, *i.e.*, that it traded on or gained the value of the plaintiff's mark or
19  goodwill.  *See Novadaq Technologies, Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-
20  cv-04853-PSG, 2015 WL 9028123, at *2 (N.D. Cal. Dec. 16, 2015) ("An intent to
21  exploit an existing mark 'is necessarily absent in a reverse confusion case.'"); *Scat*
22  *Enter., Inc. v. FCA US LLC*, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017);
23  (same); McCarthy § 23:10 ("Because in a reverse confusion case the infringer is not
24  seeking to take away the plaintiff's customers through confusion, awarding the
25  plaintiff the profits of the infringer is not a proper basis for recovery.").

26        Plaintiff's position is that disgorgement of profits is available in trademark
27  infringement actions regardless of the direction of confusion.  *See* ECF No. 89 at 20-
28  24.

**D.     AVAILABILITY OF REASONABLE ROYALTY DAMAGES**

The parties disagree regarding the legal standard for recovery of damages in the form of a reasonable royalty.  *See M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007).

TCI's position is that a reasonable royalty is available only where the parties have a prior licensing history with each other that facilitates computation of a reasonable royalty and/or have routinely negotiated licenses with third parties, such that there is a sufficiently reliable basis on which to calculate it.  *See, e.g.*, *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1300-1301 n.34 (S.D. Cal. 2018) (finding a reasonable royalty would be "impermissibly speculative . . . given the absence of a prior licensing agreement, evidence of licensing negotiations between the parties, or evidence otherwise showing either side's intent to license"); *Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576 at *7 (N.D. Cal. July 14, 2011) (granting summary judgment where record lacked "evidence of a prior license or licensing negotiations between the parties, a prior license or negotiations with respect to Plaintiff's mark with a third party, or of a plan or timeline for licensing the mark"); *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094 LGB MXC., 2000 WL 709149, at *17-18 (C.D. Cal. May 24, 2000) (vacating jury's reasonable royalty award as having "no basis in reality, much less any basis in fact" where there was no evidence plaintiff would have licensed its mark).  Furthermore, TCI's position is that a hypothetical licensing negotiation analysis based on the factors set forth in *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) is inapplicable in the trademark context and would amount to impermissible speculation.  *Marketquest*, 316 F. Supp. 3d at 1301 n.34.

Plaintiff's position is that even in the absence of any licensing history, application of the *Georgia-Pacific* factors to a hypothetical negotiation between the

1  parties provides a legitimate proposed basis on which to calculate a reasonable
2  royalty.  *See* ECF No. 89 at 24-26.

3  **E.   AVAILABILITY OF CORRECTIVE ADVERTISING DAMAGES**

4       The parties disagree regarding the legal standard for recovery of prospective
5  corrective advertising damages.  *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th
6  Cir. 1995)

7       TCI's position is that corrective advertising awards are available "only to the
8  extent that the amount of money needed for corrective advertising does not exceed the
9  damage to the value of the mark," *id.*, and that the plaintiff bears "the burden of
10 presenting evidence as to the foundational *fact* that its mark lost value at all" and
11 "must present non-speculative evidence that goodwill and reputation—that is, the
12 value of its mark—was damaged in some way," *Quia Corp.*, 2011 WL 2749576, at
13 *5-6 (granting summary judgment as to corrective advertising where plaintiff's theory
14 of compensable harm was based entirely on conjecture) (emphasis in original).  TCI's
15 position is that without proving the foundational facts of the existence and extent of
16 damage to the value of the plaintiff's mark, corrective advertising damages are
17 unavailable.  *See, e.g.*, *Binder v. Disability Group, Inc.*, 772 F. Supp. 2d 1172, 1180-
18 81 (C.D. Cal. 2011); *Lodestar Ansalt v. Bacardi & Co. Ltd.*, No. 2:16-cv-0641-
19 CAS(FFMXx), 2019 WL 8105378 at *15 (C.D. Cal. July 3, 2019) (granting summary
20 judgment and denying request for corrective advertising damages because plaintiff
21 failed to present evidence that its mark lost any value); *Scat Enterprises*, 2017 WL
22 5896182, at *2 (granting motion for partial summary judgment and denying request
23 for corrective advertising because plaintiff failed to demonstrate that its mark suffered
24 "any actual lost value as a result of [d]efendant's alleged infringement").

25       Plaintiff's position is that a plaintiff may recover prospective corrective
26 advertising costs equal to 25% of the defendant's advertising budget pursuant to a
27 Federal Trade Commission guideline requiring businesses who engage in misleading

28

-16-

advertising to spend 25% of their advertising budget on corrective advertising.  *See* ECF No. 89 at 26-29.

### IV.    BIFURCATION OF ISSUES (L.R. 16-4.3)

Defendant does not request bifurcation except with respect to issues that are triable to the Court.  Defendant requests bifurcation of its affirmative defense of laches from the issues of liability and damages.  Laches is an equitable defense for which there is no right to a jury trial.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("[T]here is no right to a jury on the equitable defense of laches."); McCarthy § 32:127.

Assuming Plaintiff's claims survive Defendant's laches defense, Defendant requests bifurcation of Plaintiff's claim for statutory unfair competition under Cal. Bus. & Prof. Code § 17200 *et. seq.* from Plaintiff's claims that are tried to the jury.  California statutory unfair competition is an equitable claim for which there is no right to a jury trial.  *See Nationwide Biweekly Administration Inc. v. Sup. Court of Alameda Cnty.*, 9 Cal. 5th 279, 292 (2020).

Defendant further requests bifurcation of Plaintiff's requests for disgorgement of Defendant's profits.  Disgorgement of profits is equitable in nature and thus triable to the Court.  *See* 15 U.S.C. § 1117(a); *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A, Inc.*, 778 F.3d 1059, 1074-76 (9th Cir. 2015) ("[a] claim for disgorgement of profits under [Sec.] 1117(a) is equitable, not legal" and thus does not "invoke[] [the] right" to a jury trial).

### V.    JURY TRIAL (L.R. 16-4.4)

Plaintiff made a timely request for a jury trial in its Complaint and First Amended Complaint ("FAC").  *See generally* ECF No. 1, ECF No. 28.  TCI also made a timely request for a jury trial as to its affirmative defenses in its Answer to the Complaint and its Answer to the FAC.  *See generally* ECF No. 12, ECF No. 31.

Plaintiff's claims for federal trademark infringement under 15 U.S.C. § 1114, federal false designation of origin under 15 U.S.C. § 1125(a), common law trademark

-17-

infringement, and common law unfair competition, and TCI's affirmative defense of abandonment, are triable to a jury.  *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1304 (2015) ("[T]he Seventh Amendment creates a jury trial right in suits for trademark damages[.]"); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-79 (1962) ("[A]s an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law. . . . [T]he legal claims involved in the action must be determined [by a jury] prior to any final court determination of respondents' equitable claims.").

Plaintiff's claims for statutory unfair competition under California Business & Professions Code § 17200 *et seq.*, disgorgement of profits, enhanced damages, attorneys' fees and costs, and pre- and post-judgment interest are equitable in nature and thus triable to the Court.  *See* 15 U.S.C. § 1117(a); *Nationwide*, 9 Cal. 5th at 292; *Fifty-Six Hope*, 778 F.3d at 1074-76; McCarthy § 32:125.  TCI's affirmative defense of laches is also equitable in nature and triable to the Court.  *Danjaq*, 263 F.3d 942 at 962.

If the Court grants TCI's motion for summary judgment (ECF No. 36) such that there are no surviving damages issues triable to the jury, TCI requests that the entire action be tried to the Court.  *See, e.g.*, *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (holding that "[b]ecause [plaintiff] only sought an injunction, the district court did not err by resolving its claims in a bench trial . . . [n]or were the [defendants] entitled to a jury trial on their equitable defenses to those claims"); McCarthy § 32:127 ("It is clear that in a trademark infringement case, when only an injunction is in issue, the case is purely equitable and there is no right to trial by jury.").

## VI.   ATTORNEYS' FEES (L.R. 16-4.5)

Plaintiff included a request for reasonable attorneys' fees and costs in its Prayer for Relief.  ECF No. 28, Prayer for Relief ¶ 6.  TCI disputes that there is a legal or factual basis for an award of attorneys' fees and costs in this action because there is no

-18-

1   evidence that TCI deliberately or fraudulently intended to infringe Plaintiff's

2   purported rights in the THRIVE mark or that this is otherwise an "exceptional case"

3   warranting an award of attorneys' fees.  *See* 15 U.S.C. § 1117(a); *Globefill Inc. v.*

4   *Elements Spirits, Inc.*, 2017 WL 6520589 (C.D. Cal. 2017), *aff'd,* 756 Fed. App'x 764

5   (9th Cir. 2019) (no award of attorneys' fees where "totality of circumstances"

6   demonstrated that it was not an "exceptional case," notwithstanding jury finding that

7   defendants' infringement was "intentional or willful"); *Chronicle Pub. Co. v.*

8   *Legrand*, 24 U.S.P.Q.2d 1881, 1992 WL 420808, *9-10 (N.D. Cal. 1992) (denying

9   motion for attorney fees where the infringer's conduct was "willful," but not "marked

10  by a blatantly fraudulent intent").

## VII.   ABANDONMENT OF ISSUES (L.R. 16-4.6)

12          When Plaintiff filed its First Amended Complaint, Plaintiff abandoned all of its

13  claims concerning TCI's color cosmetics products.  ECF No. 28 ¶ 62.

14          TCI abandons the following affirmative defenses that were included in its

15  Answer to the FAC:  unclean hands, fair use, and fraud on the United States Patent

16  and Trademark Office.

17          TCI is not pursuing its affirmative defenses of waiver, estoppel, consent, and

18  failure to mitigate independent of TCI's laches defense, which is addressed *supra*

19  Section I.F.

20          TCI is not pursuing its statute of limitations affirmative defense with the

21  understanding that Plaintiff is not seeking monetary relief for any period prior to four

22  years before the filing of Plaintiff's Complaint on October 2, 2020.  If Plaintiff is

23  seeking damages for the period prior to four years before the filing of the Complaint,

24  TCI expressly reserves the right to assert its statute of limitations defense.

25          TCI's position is that innocent infringement is not an affirmative defense.

26  Rather, it is TCI's response to Plaintiff's allegation that TCI willfully infringed the

27  THRIVE mark, as to which Plaintiff bears the burden of proof.

28

DEFENDANT THRIVE CAUSEMETICS, INC.'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    TCI's position is that adequate remedy at law is also not an affirmative defense.

2    Rather, it is TCI's response to Plaintiff's claim for equitable relief, as to which

3    Plaintiff bears the burden of proving that damages would be inadequate compensation

4    for any alleged injury it has suffered.

5

6

7    DATED:  October 1, 2021          SIDLEY AUSTIN LLP

8                                     By:  */s/ Rollin A. Ransom*
9                                          Rollin A. Ransom

10                                   *Attorneys for Defendant*
                                     *Thrive Causemetics, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-