1 | Stephen McArthur (State Bar No. 277712)
2 | stephen@smcarthurlaw.com
3 | Thomas Dietrich (State Bar No. 254282)
4 | tom@smcarthurlaw.com
5 | THE MCARTHUR LAW FIRM, P.C.
6 | 9465 Wilshire Blvd., Ste. 300
7 | Beverly Hills, CA 90212
8 | Telephone: (323) 639-4455

Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone:  (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Plaintiff Thrive
Natural Care, Inc.*

*Attorneys for Defendant Thrive
Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THRIVE NATURAL CARE, INC.,

    Plaintiff,

  vs.

THRIVE CAUSEMETICS, INC.,

    Defendant.

Case No.  2:20-cv-9091-PA-AS

Hon. Percy Anderson

**DISPUTED JURY INSTRUCTIONS**

Trial Date: November 9, 2021
Time:         9:00 a.m.
Place:        Courtroom 9A

DISPUTED JURY INSTRUCTIONS

**INDEX**

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Plaintiff No. 1 | Infringement— Elements— Presumed Validity and Ownership— Registered Trademark | Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed.) – No. 15.8; *eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010); *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir.1982); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.); *Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006); *Winnebago* | 1 |

i

DISPUTED JURY INSTRUCTIONS

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | *Indus., Inc.*, 207 USPQ ¶ 335 (TTAB June 30, 1980) | |
| Plaintiff No. 2 | Strength of Mark—Reverse Confusion | The Ninth Circuit's Comment on Model Jury Instruction No. 15.18; *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021) | 6 |
| Plaintiff No. 3 | Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof | Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed.) – No. 15.22; *eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010); *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir. 1982); 3 McCarthy on Trademarks and Unfair | 10 |

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | Competition § 17:12 (5th ed.); *Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006); *Winnebago Indus., Inc.*, 207 USPQ ¶ 335 (TTAB June 30, 1980) | |
| Plaintiff No. 4 | Willful Infringement | *Hydramedia Corp. v. Hydra Media Grp., Inc.*, No. CV-06-05293-DDP-JTLX, 2008 WL 11336118, at *3 (C.D. Cal. Dec. 29, 2008), aff'd, 392 F. App'x 522 (9th Cir. 2010); *Coach, Inc. v. Celco Customs Servs. Co.*, No. CV-1110787-MMM-FMOX, 2012 WL 12883972, at *6 (C.D. Cal. Oct. 31, 2012); *Capbran Holdings, LLC v. Firemall LLC*, No. CV-16-02980-DSFA-FMX, 2017 WL 4769434, at *6 (C.D. Cal. Aug. 23, 2017); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. | 14 |

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | Supp. 2d 1038, 1050 (N.D. Cal. 2010); *Razor USA LLC v. Vizio, Inc.*, No. 14-CV-01586S-JOJ-CGX, 2015 WL 12656941, at *6 (C.D. Cal. Oct. 19, 2015); *Synoptek, LLC v. Synaptek Corp.*, No. SA-CV-1601838-CJC-JCGX, 2018 WL 3359017, at *9 (C.D. Cal. June 4, 2018); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 472, 475 (N.D. Cal. 1992); *Bellagio Jewelry, Inc. v. Croton Watch Co.*, No. CV-06-6672-ODW-RZx, 2008 WL 3905895, at *13 (C.D. Cal. Aug. 20, 2008) | |
| Plaintiff No. 5 | Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method | AIPLA Model Patent Jury Instructions (2020) – No. 10.2.5.2; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 | 19 |

DISPUTED JURY INSTRUCTIONS

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | (Fed. Cir. 2011); Fujifilm Corp. v. Benun, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109–10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993)) | |
| Plaintiff No. 6 | Reasonable Royalty—Possible Factors | AIPLA Model Patent Jury Instructions (2020) – No. 10.2.5.3; *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108–10 (Fed. Cir. 1996*); TWM Mfg. Co. v. Dura* | 22 |

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | *Corp.*, 789 F.2d 895, 898–900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) | |
| Plaintiff No. 7 | Reasonable Royalty—Use of Comparable License Agreements | AIPLA Model Patent Jury Instructions (2020) – No. 10.2.5.9; *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1325–26 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77–81 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–70 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, 1336 (Fed. Cir. 2009) | 26 |
| Plaintiff No. 8 | California Common Law Trademark Infringement | *Juan Pollo Fran., Inc. v. B & K Pollo Enterprises, Inc.,* ED-CV-13-2010J-GBSPX, 2015 | 29 |

DISPUTED JURY INSTRUCTIONS

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015); *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 3:17-CV-00466-LAB-NLS, 2018 WL 2328471, at *7 n.4 (S.D. Cal. May 23, 2018); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947–48 (N.D. Cal. 2005); *All Cities Realty, Inc. v. Brunet*, No. B241999, 2013 WL 4017121, at *4 (Cal. Ct. App. Aug. 6, 2013) | |
| Plaintiff No. 9 | Damages—California Common Law Unfair Competition and Common Law Trademark Infringement | *See Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1265 (1992); *Ackerman v. Ferry*, No. B143751, 2002 WL 31506931, at *13 (Cal. Ct. App. Nov. 12, 2002); *Indus. Indem. Co. v. Apple Computer, Inc.*, 79 Cal. App. 4th 817, 831 (1999); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012) | 32 |

DISPUTED JURY INSTRUCTIONS

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Plaintiff No. 10 | Trademark Ownership—Assignee (15 U.S.C. § 1060) | *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.15 | 35 |
| Defendant No. 1 | Preliminary Instruction-Trademark | *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.1 | 40 |
| Defendant No. 2 | Infringement-Elements-Presumed Validity and Ownership-Registered Trademark (15 U.S.C. §§ 1057, 1065 and 1115) | *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.8 | 46 |
| Defendant No. 3 | Trademark Ownership-Assignee (15 U.S.C. § 1060) | *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.15; J. Thomas McCarthy, Trademarks and Unfair Competition §§ 2:15, 2:16 (5th ed. 2021); *Sebastian Brown* | 51 |

DISPUTED JURY INSTRUCTIONS

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | *Productions LLC v. Muzooka, Inc.*, 2016 WL 5910817, *9 (N.D. Cal. Oct. 11, 2016); *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969) | |
| Defendant No. 4 | Defenses-Abandonment-Affirmative Defense-Defendant's Burden of Proof (15 U.S.C. § 1127) | *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.2 | 57 |
| Defendant No. 5 | Infringement-Elements-Validity | *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.9 | 61 |
| Defendant No. 6 | Infringement-Likelihood of Confusion-Factors-*Sleekcraft* Test | *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.18; Comment to *Model Civil Jury Instruction* Inst. No. | 65 |

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | (15 U.S.C. §§ 1114(1) and 1125(a)) | 15.19; *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 994 F.3d 1107, 1118 (9th Cir. 2021) | |
| Defendant No. 7 | Willful Infringement | *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *abrogated on other grounds in SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015); *Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *7-8 (C.D. Cal. Sept. 5, 2019) | 70 |
| Defendant No. 8 | Common Law Trademark Infringement and Unfair Competition | *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981); *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979); *DeLuna v. Navarro*, 2019 WL 6139920, at * 5 (C.D. Cal. Sept. 6, 2019); | 74 |

| DISPUTED JURY INSTRUCTION NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | *Robinson v. Hunger Free America, Inc.*, 2018 WL 2563809, at * 3 (E.D. Cal. June 4, 2018); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1034 (N.D. Cal. 2008); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) | |

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 1**

**(INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND**

**OWNERSHIP—REGISTERED TRADEMARK)**

I gave you Instruction No. 35 that requires Thrive Natural Care to prove by a preponderance of the evidence that the trademark is valid and protectable and that Thrive Natural Care owns the trademark.

One way for Thrive Natural Care to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits _____ and _____ are certificates of registration from the United States Patent and Trademark Office. These registrations are as follows:

| Exhibit No. | Registration No. | Registration Date |
|---|---|---|
| | 4,467,942 | January 14, 2014 |
| | 6,164,303 | September 29, 2020 |

These registration certificates were submitted by Thrive Natural Care as proof of the validity of the Thrive trademarks and that Thrive Natural Care owns the Thrive trademarks.

The facts recited in each of these registration certificates are that Thrive Natural Care owns valid trademark rights in the word "Thrive" for skincare products as listed in each registration.

[IF TNC MOTION TO STRIKE GRANTED] In this case, there is no dispute that Exhibit \_\_\_\_\_ for U.S. Registration No. 4,467,942 for the trademark "Thrive" is "incontestable" under the trademark laws. This means that Thrive Natural Care's registration of the trademark is conclusive evidence of its ownership of the Thrive

trademark and also conclusive evidence that the trademark is valid and protectable. I instruct you that for purposes of Instruction No. 38 that you must find that Thrive Natural Care owned the trademark "Thrive" and that the trademark was valid and protectable.

[IF ABANDONMENT DEFENSE SURVIVES] Thrive Causemetics submitted evidence to dispute these recitals as to one of the trademark registrations, Exhibit ____ for U.S. Registration No. 4,467,942. Thrive Causemetics alleges that this certificate cannot be considered proof ownership of the trademark because the trademark had been abandoned. Unless Thrive Causemetics proves by clear and convincing evidence that the trademark was abandoned, you must consider the trademark to be conclusively proved as valid and owned by the plaintiff, Thrive Natural Care. However, if Thrive Causemetics shows that the trademark was abandoned by clear and convincing evidence, then the facts stated in the certificate that Thrive Natural Care owns valid trademark rights for the term "Thrive" are no longer conclusively presumed to be correct. You should then consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence that the trademark is valid and owned by Thrive Natural Care, as I explain in instruction number 38

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed.) – No. 15.8 (modified). Regarding standard of clear and convincing evidence to show abandonment, see *eMachines, Inc. v. Ready Access Memory, Inc*., No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Because a trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark, the burden of proof is on the party seeking to show abandonment, and *abandonment must be shown by clear and convincing evidence*."); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010) ("The burden of proof is on the

-2-

DISPUTED JURY INSTRUCTIONS

party seeking to show abandonment, which must be shown by clear and convincing evidence."). *See also Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir.1982) (holding abandonment must be "strictly proved"); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("The majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."); *Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ( "While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing."); *Winnebago Indus., Inc.*, 207 USPQ ¶ 335 (TTAB June 30, 1980) ("[I]t is also well settled that insofar as the question of abandonment of a mark is concerned, the burden is on petitioner to establish as a fact by clear and convincing proofs the abandonment of such mark by respondent.").

DISPUTED JURY INSTRUCTIONS

1

2

## DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED
## JURY INSTRUCTION NO. 1

TCI objects to Plaintiff's Disputed Jury Instruction No. 1 on the grounds that it improperly states the burden of proof for an abandonment defense as "clear and convincing evidence."  The appropriate burden of proof for an abandonment defense is "preponderance of the evidence."  *See Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL 13176098, at *6 (C.D. Cal. 2011) ("The requirement of 'strict proof' merely recognizes the difficult task a challenger faces in proving the absence of intent to resume, even by a preponderance of the evidence.") (citations omitted); *Societe De Developments Et D'Innovations Des Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) ("Caution and care are required in every case, but this does not alter the standard of evidence, which is that of a preponderance.") (citation omitted).  TCI refers the Court to Defendant's Disputed Jury Instruction No. 2, which includes the appropriate burden of proof.  *See* Def.'s Disputed Jury Instruction No. 2.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 1**

The parties fundamentally disagree on the standard for proving abandonment. Thrive Natural Care believes the burden of proof is clear and convincing evidence. The Ninth Circuit has held that abandonment must be "strictly proved." *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir. 1982). According to McCarthy on Trademarks, "[t]he majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing." 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.); *see also Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ("While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing.").

1

2

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 2
## (STRENGTH OF MARK—REVERSE CONFUSION)

3    A company that used a trademark first is known as the "senior" mark user.

4  Here, Thrive Natural Care is the senior mark user. A "junior" mark user is a company

5  that later began using the same or similar trademark after the senior user. The junior

6  user here is Thrive Causemetics. The law recognizes that trademark infringement also

7  occurs when consumers dealing with the senior mark user believe that they are doing

8  business with the junior mark user. This is called reverse confusion.

9    Reverse confusion occurs when a person who knows only of the well-known

10  junior user of a mark comes into contact with the lesser-known senior user of a similar

11  mark, and because of the similarity of the marks, mistakenly thinks that the senior user

12  is the same as or is affiliated with the junior user. Thrive Natural Care contends that

13  Thrive Causemetics' use of the terms "Thrive" and "Thrive Causemetics" in

14  connection with Thrive Causemetics' skincare products also infringes Thrive Natural

15  Care's trademark because it is likely to cause reverse confusion. In other words,

16  Thrive Natural Care contends that when a consumer sees its skincare products, the

17  consumer is likely to believe that Thrive Natural Care's products come from or are

18  affiliated with Thrive Causemetics.

19    For evaluating the strength of a mark in reverse confusion cases, the questions

20  are whether consumers doing business with the senior user might mistakenly believe

21  that they are dealing with the junior user and what the conceptual strength of the

22  senior mark is compared to the commercial strength of the junior mark. When

23  considering reverse confusion, you should consider whether the defendant Thrive

24  Causemetics' advertising and promotion of the "Thrive Causemetics" mark so

25  swamped Thrive Natural Care's reputation in the market that customers were likely to

26  be confused into thinking that Thrive Natural Care's goods were those of Thrive

27  Causemetics. If that has occurred, such a finding weighs in favor of a finding that

28

DISPUTED JURY INSTRUCTIONS

Thrive Causemetics' use of the "Thrive Causemetics" mark has created a likelihood of confusion.

**Authority:**

A special instruction is required to explain the concept of reverse confusion, because the Ninth Circuit Model Jury Instruction No. 15.18 does not describe how the strength of the mark factor is to be applied in reverse confusion cases. The language of this jury instruction is taken directly from two sources: (1) the Ninth Circuit's Comment on Model Jury Instruction No. 15.18, stating "[f]or evaluating the strength of a mark in reverse confusion cases, the questions are 'whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user' and what the conceptual strength of the senior mark is compared to the commercial strength of the junior mark; and (2) the Ninth Circuit's most recent case involving reverse confusion, *Ironhawk Techs., Inc. v. Dropbox, Inc*., 2 F.4th 1150, 1160 (9th Cir. 2021) ("By contrast, reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one."). In *Ironhawk*, the Ninth Circuit stated:

> We have explained that reverse confusion occurs when a person who knows only of the well-known junior user comes into contact with the lesser-known senior user, and because of the similarity of the marks, mistakenly thinks that the senior user is the same as or is affiliated with the junior user. *See Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). This can occur when "the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user[.]" 4 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed. 2020) (citations and footnotes omitted); see Dreamwerks, 142 F.3d at 1130 n.5.

2 F.4th at 1160. The language of this jury instruction exactly tracks the explanation of reverse confusion in *Ironhawk* and its predecessor, *Dreamworks*.

1
2

## DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED
## JURY INSTRUCTION NO. 2

3   TCI objects to Plaintiff's Disputed Jury Instruction No. 2 on the ground that it
4   mischaracterizes the law regarding reverse confusion and improperly includes
5   Plaintiff's contentions and disputed issues of fact and law, both of which are
6   prejudicial to TCI.  Among other things, the "swamped" language from *Ironhawk*
7   upon which Plaintiff relies is not the legal test for reverse confusion; the Ninth Circuit
8   merely indicated that reverse confusion "can occur" in those circumstances, not that it
9   *will* occur in those circumstances, or even that they necessarily support a finding of
10   reverse confusion (as the proposed instruction suggests).  As Plaintiff effectively
11   concedes, its proposed instruction goes well beyond the language respecting reverse
12   confusion in the Ninth Circuit's Comment on Model Jury Instruction No. 15.18.  The
13   correct and complete legal description of reverse confusion (which tracks closely that
14   Comment) is reflected in Agreed Jury Instruction No. _.  *See also Surfvivor Media,*
15   *Inc. v. Survivor Productions,* 406 F.3d 625, 630 (9th Cir. 2005); *Marketquest Group,*
16   *Inc. v. BIC Corp.*, 862 F.3d 927, 932, 937 (9th Cir. 2017); J. Thomas McCarthy,
17   Trademarks and Unfair Competition § 23.10. (5th ed. 2021).

18   TCI further objects to Plaintiff's Disputed Instruction on the ground that it
19   improperly and confusingly conflates the definition of reverse confusion trademark
20   infringement and the legal standard for analyzing the strength of the mark likelihood
21   of confusion factor in a reverse confusion case.  TCI disagrees that a separate
22   instruction for evaluating the strength of a mark in a reverse confusion case is
23   necessary beyond the language included in factor (1) in Defendant's Disputed Jury
24   Instruction No. 6, which tracks the relevant language regarding strength of the mark in
25   reverse confusion cases from Ninth Circuit Manual of Model Civil Jury Instruction
26   15.18 and 15.19 and applicable Ninth Circuit authority.

27
28

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO**

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 2**

As noted, the language of this instruction is taken directly from the Ninth Circuit's most recent and most substantive analysis of reverse confusion, *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021). The instruction is therefore properly supported by law and should be given. *See Minass v. HHC TRS Portsmouth LLC*, No. ED-CV-13-1209-JGB-DTBX, 2014 WL 11398483, at *1 (C.D. Cal. Dec. 19, 2014) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 3
## (DEFENSES—ABANDONMENT—AFFIRMATIVE DEFENSE—
## DEFENDANT'S BURDEN OF PROOF)

The owner of a trademark cannot exclude others from using the trademark if it has been abandoned.

Thrive Causemetics contends that one of Thrive's two "Thrive" trademark registrations, U.S. Registration No. 4,467,942 (Exhibit _____), has become unenforceable because the owner abandoned it. Thrive Causemetics has the burden of proving abandonment by clear and convincing evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner discontinues its use in the ordinary course of trade, intending not to resume using it.

Thrive Causemetics is not alleging that Thrive Natural Care abandoned its second Thrive trademark registration, U.S. Registration No. 6,164,303 (Exhibit _____).

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed.) – No. 15.22 (modified). Regarding standard of clear and convincing evidence to show abandonment, see *eMachines, Inc. v. Ready Access Memory, Inc*., No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Because a trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark, the burden of proof is on the party seeking to show abandonment, and *abandonment must be shown by clear and convincing evidence*."); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010) ("The burden of proof is on the party seeking to show abandonment, which must be shown by clear and convincing evidence."). *See also Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif*., 694 F.2d 1150, 1156 (9th Cir.1982) (holding abandonment must be "strictly proved"); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("The majority

-10-

of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."); *Cash Processing Servs. v. Ambient Entm't, Inc*., 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ( "While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing."); *Winnebago Indus., Inc*., 207 USPQ ¶ 335 (TTAB June 30, 1980) ("[I]t is also well settled that insofar as the question of abandonment of a mark is concerned, the burden is on petitioner to establish as a fact by clear and convincing proofs the abandonment of such mark by respondent.").

DISPUTED JURY INSTRUCTIONS

## DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED
## JURY INSTRUCTION NO. 3

TCI objects to Plaintiff's Disputed Jury Instruction No. 3 on the ground that it improperly states the burden of proof for an abandonment defense as clear and convincing evidence.  The appropriate burden of proof for an abandonment defense is preponderance of the evidence.  *See Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL 13176098, at *6 (C.D. Cal. 2011) ("The requirement of 'strict proof' merely recognizes the difficult task a challenger faces in proving the absence of intent to resume, even by a preponderance of the evidence.") (citations omitted); *Societe De Developments Et D'Innovations Des Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) ("Caution and care are required in every case, but this does not alter the standard of evidence, which is that of a preponderance.") (citation omitted).  TCI refers to Defendant's Disputed Jury Instruction No. 4, which includes the appropriate burden of proof.  *See* Def.'s Disputed Jury Instruction No. 4.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO**

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 3**

The parties fundamentally disagree on the standard for proving abandonment. Thrive Natural Care believes the burden of proof is clear and convincing evidence. The Ninth Circuit has held that abandonment must be "strictly proved." *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir. 1982). According to McCarthy on Trademarks, "[t]he majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing." 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.); *see also Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ("While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing.").

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 4
## (WILLFUL INFRINGEMENT)

If you find that Thrive Causemetics infringed any of Thrive Natural Care's trademarks, you must also determine whether Thrive Causemetics acted willfully. Trademark infringement is considered willful if Thrive Natural Care shows that Thrive Causemetics recklessly disregarded Thrive Natural Care's trademark rights. Willfulness can be established by evidence of a defendant's knowing conduct or by evidence that the defendant acted with an indifference to plaintiff's rights—in other words, that the defendant willfully blinded itself to facts that would put it on notice that it was infringing another's trademarks, having cause to suspect it. Thrive Natural Care has the burden of proving willfulness by a preponderance of the evidence.

Facts that can be evidence of willful infringement include a defendant's continued use of a mark:

1) in the face of warnings about potential infringement;

2) after receiving a cease-and-desist letter from the plaintiff;

3) after the U.S. Patent & Trademark Office has denied registration of defendant's mark due to a finding of a likelihood of confusion with the plaintiff's previously registered mark.

**Authority:**

A special instruction is necessary because the Ninth Circuit Model Jury Instructions do not contain an instruction concerning willful infringement. The language for the first paragraph of this instruction was taken directly from the following cases: *Hydramedia Corp. v. Hydra Media Grp., Inc*., No. CV-06-05293-DDP-JTLX, 2008 WL 11336118, at *3 (C.D. Cal. Dec. 29, 2008), aff'd, 392 F. App'x 522 (9th Cir. 2010) (holding "the Court finds that a showing of 'objective recklessness' is sufficient to demonstrate willful infringement" and noting that standard is consistent with Ninth Circuit decisions "which permit circumstantial evidence of reckless behavior even where the infringing party ignores objective

-14-

evidence of infringement.") (citing *Earthquake Sound Corp. v. Bumper Indus*., 352 F.3d 1210, 1219 (9th Cir. 2003) (finding willful trademark infringement where the defendant "utilized a mark that was similar to that of its competitor, was informed of actual confusion, and deliberately chose not to make a reasonable effort to ascertain whether it might actually be infringing.")); *Coach, Inc. v. Celco Customs Servs. Co*., No. CV-1110787-MMM-FMOX, 2012 WL 12883972, at *6 (C.D. Cal. Oct. 31, 2012) ("Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with 'an indifference to plaintiff's rights'—in other words, that defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it."); *Capbran Holdings, LLC v. Firemall LLC*, No. CV-16-02980-DSFA-FMX, 2017 WL 4769434, at *6 (C.D. Cal. Aug. 23, 2017) ("A defendant may be liable for willful trademark . . . infringement for knowing conduct or willful blindness."); *Dr. JKL Ltd. v. HPC IT Educ. Ctr*., 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) ("Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark.").

With regard to the factors specified in the second paragraph, see *Razor USA LLC v. Vizio, Inc.*, No. 14-CV-01586S-JOJ-CGX, 2015 WL 12656941, at *6 (C.D. Cal. Oct. 19, 2015) ("Use of an infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement."); *Synoptek, LLC v. Synaptek Corp*., No. SA-CV-1601838-CJC-JCGX, 2018 WL 3359017, at *9 (C.D. Cal. June 4, 2018) ("Synaptek's blatant use of the 'Synaptek' mark in spite of [multiple] PTO denials provides strong evidence of willful infringement."); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 472, 475 (N.D. Cal. 1992) (defendant "was on notice that there could be a likelihood of confusion" when Canadian trademark officials cited plaintiff's mark as a reason for denying defendant's trademark application); *Bellagio Jewelry, Inc. v. Croton Watch Co*., No. CV-06-6672-ODW-RZx, 2008 WL 3905895, at *13 (C.D. Cal. Aug. 20, 2008) ("After receiving the cease and desist letter, [defendant] was put on actual notice,

-15-

1   which logically demonstrates that any infringing conduct thereafter was done

2   willfully.").

DISPUTED JURY INSTRUCTIONS

## DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED
## JURY INSTRUCTION NO. 4

TCI objects to Plaintiff's Disputed Jury Instruction No. 4 on the ground that it is both one-sided and represents a misstatement of the law.  Under well-established Ninth Circuit authority, "[w]illful infringement carries a connotation of deliberate intent to deceive," *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *abrogated on other grounds in SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016), a standard that is not remotely reflected in Plaintiff's proposal.  Moreover, Plaintiff's recitation of factors that it claims "can be" indicia of willfulness ignore a critical qualifier:  use of an allegedly infringing mark does not constitute willful infringement where the defendant had a good faith belief that there is no likelihood of confusion and had no wrongful intent to capitalize on any goodwill the plaintiff may have.  *Id.*; *see also Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015); *Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *7-8 (C.D. Cal. Sept. 5, 2019).  Adopting Plaintiff's inaccurate and biased instruction would be reversable error.  To the extent the Court believes a willfulness instruction is necessary, it should adopt Defendant's Disputed Jury Instruction No. 7.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO
PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 4**

As noted, the language of this instruction is taken directly from Ninth Circuit case law and cases from this District holding that willful infringement can be found based on a defendant's willful blindness or reckless disregard of a plaintiff's trademark rights. The parties fundamentally disagree on this issue, with Thrive Causemetics arguing for a much narrower scope of willfulness than is supported by law. This instruction is properly supported by law and evidence and should be given. *See Minass v. HHC TRS Portsmouth LLC*, No. ED-CV-13-1209-JGB-DTBX, 2014 WL 11398483, at *1 (C.D. Cal. Dec. 19, 2014) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

1
2
3

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 5
## (REASONABLE ROYALTY DEFINITION—USING THE "HYPOTHETICAL NEGOTIATION" METHOD)

4
5
6
7
8
9
10
11
12
13

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Thrive Natural Care and Thrive Causemetics. Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the "Thrive" trademark was valid and infringed and both were willing to enter into a license. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

14

**Authority:**

15
16
17
18
19
20
21
22
23

AIPLA Model Patent Jury Instructions (2020) – No. 10.2.5.2 (revised to apply to trademark context) (citing *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); Fujifilm Corp. v. Benun, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109–10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993)).

24
25
26
27
28

**DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED**

**JURY INSTRUCTION NO. 5**

TCI objects to Plaintiff's Disputed Jury Instruction No. 5 on the grounds that it improperly relies on model instructions expressly intended for the patent, rather than trademark, context.  Moreover, it improperly instructs the jury to make several assumptions that are hotly disputed issues of fact, and that are likely to confuse the jury in manner that could only prejudice TCI (*i.e.*, "You should assume that the parties did negotiate a license just before the infringement began."  "You should assume that both parties…understood that the 'Thrive' trademark was valid and infringed and both were willing to enter into a license.")

TCI refers the Court to Agreed Instruction No. 42, which TCI submits reflects a correct and complete instruction respecting the "reasonable royalty" calculation.  *See* Agreed Instruction No. 42; *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018); *M2 Software Inc. v. Viacom Inc.*, 223 Fed. App'x 653, 655 (9th Cir. 2007).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 5**

This instruction is taken without modification, except to apply to a trademark context, from the AIPLA rules for reasonable royalty. Thrive Causemetics' single proposed instruction on a reasonable royalty fails to provide any instruction to the jury as to how to calculate a reasonable royalty. This instruction, in addition to Thrive Natural Care's other related proposed instructions, forms the basis for the jury to understand and conduct its calculation. It is well established that the factors for analyzing a reasonable royalty in a patent context can be adapted to the trademark context. *See adidas Am., Inc. v. Payless Shoesource*, Inc., No. CV 01-1655-KI, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008). The instruction is therefore properly supported by law and should be given. *See Minass v. HHC TRS Portsmouth LLC*, No. ED-CV-13-1209-JGB-DTBX, 2014 WL 11398483, at *1 (C.D. Cal. Dec. 19, 2014) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 6**
**(REASONABLE ROYALTY—POSSIBLE FACTORS)**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

2.      The licensor's established policy and marketing program to maintain its right to exclude others from using the trademark by not licensing others to use trademark, or by granting licenses under special conditions designed to preserve that exclusivity.

3.      The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

4.      The effect of selling products bearing the trademark in promoting other sales of the licensee; the existing value of the trademark to the licensor as a generator of sales of its non-trademarked items; and the extent of such collateral sales.

5.      The term of the license.

6.      The established profitability of the products bearing the trademark; their commercial success; and their popularity.

7.      The nature of the trademark, and the benefits to those who have used the trademark.

8.      The extent to which Thrive Causemetics has made use of the trademark; and any evidence that shows the value of that use.

9.      The portion of the profit that arises from the trademark itself as opposed to profit arising from non-trademarked features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

-22-
DISPUTED JURY INSTRUCTIONS

10.     The opinion testimony of qualified experts.

11.     The amount that a licensor and a licensee (such as Thrive Causemetics) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to obtain a license to use the trademark—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a trademark owner who was willing to grant a license.

12.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Authority:**

AIPLA Model Patent Jury Instructions (2020) – No. 10.2.5.3 (revised to apply to trademark context) (citing *LaserDynamics*, 694 F.3d at 75*; Wordtech Sys., Inc. v. Integrated Networks Sols., Inc*., 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 869–73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1108–10 (Fed. Cir. 1996*); TWM Mfg. Co. v. Dura Corp*., 789 F.2d 895, 898–900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. U.S. Plywood Corp*., 318 F. Supp. 1116 (S.D.N.Y. 1970).

1

**DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED**

2

**JURY INSTRUCTION NO. 6**

3

TCI objects to Plaintiff's Disputed Jury Instruction No. 6 on the grounds that it

4

improperly relies on model instructions expressly intended for the patent, rather than

5

trademark, context, and improperly relies on *Georgia-Pacific Corp. v. U.S. Plywood*

6

*Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), which has been rejected in the trademark

7

context (*see Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1301 n.34

8

(S.D. Cal. 2018)).

9

TCI refers the Court to Agreed Instruction No. 42, which TCI submits reflects a

10

correct and complete instruction respecting the "reasonable royalty" calculation.   *See*

11

Agreed Instruction No. 42; *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d

12

1234, 1300 (S.D. Cal. 2018); *M2 Software Inc. v. Viacom Inc.*, 223 Fed. App'x 653,

13

655 (9th Cir. 2007).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED JURY INSTRUCTIONS

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO**
**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 6**

This instruction is taken without modification, except to apply to a trademark context, from the AIPLA rules for reasonable royalty. Thrive Causemetics' single proposed instruction on a reasonable royalty fails to provide any instruction to the jury as to how to calculate a reasonable royalty. This instruction, in addition to Thrive Natural Care's other related proposed instructions, forms the basis for the jury to understand and conduct its calculation. It is well established that the factors for analyzing a reasonable royalty in a patent context can be adapted to the trademark context. *See adidas Am., Inc. v. Payless Shoesource*, Inc., No. CV 01-1655-KI, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008). The instruction is therefore properly supported by law and should be given. *See Minass v. HHC TRS Portsmouth LLC*, No. ED-CV-13-1209-JGB-DTBX, 2014 WL 11398483, at *1 (C.D. Cal. Dec. 19, 2014) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 7
## (REASONABLE ROYALTY—USE OF COMPARABLE LICENSE
## AGREEMENTS)

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to other trademarks for similar goods. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Thrive Natural Care and Thrive Causemetics in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Thrive Natural Care and Thrive Causemetics, in terms of the trademarked products and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

**Authority:**

AIPLA Model Patent Jury Instructions (2020) – No. 10.2.5.9 (revised to apply to trademark context) (citing *Ericsson, Inc. v. D-Link Sys., Inc*., 773 F.3d 1201, 1227–28 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc*., 757 F.3d 1286, 1325–26 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 77–81 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 869–70 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1329, 1336 (Fed. Cir. 2009).

**DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED**

**JURY INSTRUCTION NO. 7**

TCI objects to Plaintiff's Disputed Jury Instruction No. 7 on the grounds that it improperly relies on model instructions expressly intended for the patent, rather than trademark, context.

TCI refers the Court to Agreed Instruction No. 42, which TCI submits reflects a correct and complete instruction respecting the "reasonable royalty" calculation.   *See* Agreed Instruction No. 42; *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018); *M2 Software Inc. v. Viacom Inc.*, 223 Fed. App'x 653, 655 (9th Cir. 2007).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO**

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 7**

This instruction is taken without modification, except to apply to a trademark context, from the AIPLA rules for reasonable royalty. Thrive Causemetics' single proposed instruction on a reasonable royalty fails to provide any instruction to the jury as to how to calculate a reasonable royalty. This instruction, in addition to Thrive Natural Care's other related proposed instructions, forms the basis for the jury to understand and conduct its calculation. It is well established that the factors for analyzing a reasonable royalty in a patent context can be adapted to the trademark context. *See adidas Am., Inc. v. Payless Shoesource*, Inc., No. CV 01-1655-KI, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008). The instruction is therefore properly supported by law and should be given. *See Minass v. HHC TRS Portsmouth LLC*, No. ED-CV-13-1209-JGB-DTBX, 2014 WL 11398483, at *1 (C.D. Cal. Dec. 19, 2014) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

1

2

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 8
## (CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT)

3

4

Thrive Natural Care also contends that Thrive Causemetics has engaged in trademark infringement in violation of California common law.

5

6

7

8

9

10

To prove infringement under California Common law, Thrive Natural Care has the burden of proving by a preponderance of evidence: (1) Thrive Natural Care's began using the "Thrive" mark on skincare products before Thrive Causemetics began using the "Thrive Causemetics" mark on skincare products; and (2) there is a likelihood that the "Thrive Causemetics" mark would be confused with Thrive Natural Care's "Thrive" mark.

11

**Authority:**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A special instruction is required to explain Thrive Natural Care's California common law trademark infringement claim because there is no Ninth Circuit model instruction. "To state a claim of trademark infringement under California common law, a plaintiff need allege only 1) their prior use of the trademark and 2) the likelihood of the infringing mark being confused with their mark." *Juan Pollo Fran., Inc. v. B & K Pollo Enterprises, Inc.,* ED-CV-13-2010J-GBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015); *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 3:17-CV-00466-LAB-NLS, 2018 WL 2328471, at *7 n.4 (S.D. Cal. May 23, 2018); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947–48 (N.D. Cal. 2005); *see also All Cities Realty, Inc. v. Brunet*, No. B241999, 2013 WL 4017121, at *4 (Cal. Ct. App. Aug. 6, 2013) ("To prove liability for [common law] trademark infringement, plaintiff need only prove defendants used the mark plaintiff used first and continuously.") (citing *Sunset House Distrib. Corp. v. Coffee Dan's, Inc.*, 240 Cal. App. 2d 748, 754 (Ct. App. 1966)).

26

27

28

**DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED**

**JURY INSTRUCTION NO. 8**

TCI objects to Plaintiff's Disputed Jury Instruction No. 8 on the ground that it suggests that the standard for liability on Plaintiff's common law trademark infringement claim is different than on its Lanham Act claims. That is incorrect. To prevail on a California common law trademark infringement claim, Thrive Natural Care must make the same showing as with its federal trademark infringement claim. *See DeLuna v. Navarro*, 2019 WL 6139920, at * 5 (C.D. Cal. Sept. 6, 2019) ("Courts analyze claims for trademark-related unfair competition, federal trademark infringement, and state common-law trademark infringement using the same test. To prevail on these claims, a plaintiff must show that: (1) he has a protectable ownership interest in a valid mark, and (2) the defendant's use of the mark is likely to cause consumer confusion.") (internal citations omitted); *Robinson v. Hunger Free America, Inc.*, 2018 WL 2563809, at * 3 (E.D. Cal. June 4, 2018) ("To state a claim for trademark infringement under either the Lanham Act or for common law trademark infringement, a plaintiff must allege that (1) he has a valid, protectable trademark right; (2) that was used by defendant; (3) in a way that is likely to cause consumer confusion and thus infringe upon the trademark right."); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1034 (N.D. Cal. 2008) ("State and federal trademark infringement, unfair competition and dilution claims follow essentially the same test. . . . Simply put, plaintiff must prove that it has a valid mark. . . ."); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) ("It is undisputed that Appellants' state law trademark infringement claim (as well as their claim under the UCL to the extent it is based on infringement grounds) is subject to the same legal standards as their Lanham Act trademark claim."). TCI further objects to Plaintiff's Disputed Jury Instruction No. 8 on the ground that it improperly includes Plaintiff's contentions, which is prejudicial to TCI. TCI refers to Defendant's Disputed Jury Instruction No. 8 for the correct legal standard.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO**

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 8**

While Thrive Natural Care agrees the likelihood of confusion element of common law trademark infringement is the same as federal law, it is not correct that the initial element of ownership is identical. Case law from this District and from California courts demonstrates that to satisfy the "ownership" element, the plaintiff need only prove that it used the disputed mark "first and continuously." *All Cities Realty, Inc. v. Brunet*, No. B241999, 2013 WL 4017121, at *4 (Cal. Ct. App. Aug. 6, 2013); *see also Juan Pollo Fran., Inc. v. B & K Pollo Enterprises, Inc.*, ED-CV-13-2010J-GBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015); *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 3:17-CV-00466-LAB-NLS, 2018 WL 2328471, at *7 n.4 (S.D. Cal. May 23, 2018); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947–48 (N.D. Cal. 2005); *Sunset House Distrib. Corp. v. Coffee Dan's, Inc*., 240 Cal. App. 2d 748, 754 (Ct. App. 1966)).

DISPUTED JURY INSTRUCTIONS

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 9**

**(DAMAGES—CALIFORNIA COMMON LAW UNFAIR COMPETITION**

**AND COMMON LAW TRADEMARK INFRINGEMENT)**

Thrive Natural Care is entitled to any reasonably foreseeable damages caused Thrive Causemetics' unfair competition or trademark infringement in violation of California common law. Thrive Natural Care has the burden of proving such damages by a preponderance of the evidence.

**Authority:**

A special instruction is required to explain damages relating to Thrive Natural Care's California common law unfair competition and trademark infringement claims. *See Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1265 (1992) (holding "[d]amages are available for common law unfair competition"); *Ackerman v. Ferry*, No. B143751, 2002 WL 31506931, at *13 (Cal. Ct. App. Nov. 12, 2002) ("Damages for the infringement of an unregistered trademark may be recovered in a common-law tort action for unfair competition under state law . . . ."); *Indus. Indem. Co. v. Apple Computer, Inc.*, 79 Cal. App. 4th 817, 831 (1999) ("The policy term 'unfair competition' clearly includes both passing off and the narrower tort of trademark infringement."). With regard to recoverable damages, see *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012) (tort damages constitute "the reasonably foreseeable harms caused by the wrong.").

## DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED
## JURY INSTRUCTION NO. 9

TCI objects to Plaintiff's Disputed Jury Instruction No. 9 on the ground that it improperly suggests that a plaintiff may recover damages under California common law separate and apart from damages under the Lanham Act for the same trademark infringement claim.  That is incorrect.  *See* J. Thomas McCarthy, Trademarks and Unfair Competition §§ 30:89 (5th ed. 2021) ("Where a plaintiff is successful in proving trademark infringement or false advertising in violation of both federal and state law, a double award based on the same loss would be an excessive recovery."). Indeed, the only federal authority that Plaintiff cites in support of its instruction is a Lanham Act case that did not even include a California common law trademark infringement or unfair competition claim.  *See Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1109 (9th Cir. 2012).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 9**

Thrive Natural Care is not seeking double recovery. Rather, if the jury determines that Thrive Natural Care suffered damages from infringement of its common law rights *over and above* the damages it awards in relation any federal infringement or unfair competition, Thrive Natural Care is entitled to such additional damages. The stated standard has been approved by the Ninth Circuit as the standard for recovery of damages on a common law tort, which is what common law infringement is. *See ckerman v. Ferry*, No. B143751, 2002 WL 31506931, at *13 (Cal. Ct. App. Nov. 12, 2002) ("Damages for the infringement of an unregistered trademark may be recovered in a common-law tort action for unfair competition under state law . . . .").

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 10
## (TRADEMARK OWNERSHIP—ASSIGNEE
## (15 U.S.C. § 1060))

The owner of a trademark may transfer to another the owner's interest in the trademark, that is, the right to exclude others from using the mark. This transfer is called an assignment, and the person to whom this right is assigned is called an assignee and becomes the owner of the trademark.

The assignment must be in writing and signed. To be enforceable, the assignment must include the goodwill of the business connected with the mark.

An assignee may enforce this right to exclude others in an action for infringement or unfair competition.

**Authority:**

9th Cir. CJI 15.15 (unmodified). Thrive Natural Care believes this instruction is appropriate to give rather than Thrive Causemetics' proposed instruction, which modifies CJI 15.15 to include an overly restrictive definition of goodwill.

**DEFENDANT'S OBJECTION TO PLAINTIFF'S DISPUTED**

**JURY INSTRUCTION NO. 10**

TCI objects to Plaintiff's Disputed Jury Instruction No. 10 on the ground that it fails to provide instruction regarding the critical concept of goodwill and is therefore incomplete. Although the Ninth Circuit's Model Jury Instruction No. 15.15 provides instruction concerning how an assignee may succeed to the ownership rights in a trademark, it does not provide any explanation as to what goodwill means or how it relates to trademarks. The Lanham Act only permits assignment of a trademark "with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark." 15 U.S.C. § 1060(a)(1); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992) ("'[T]he law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated.'") (citation omitted). Without actual use of the mark in connection with a business, and thus, no goodwill, there are simply no trademark rights to assign. *See, e.g., Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196 DOC(JPRx)., 2015 WL 3619204, at *7 (C.D. Cal. June 8, 2015); *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1107 (C.D. Cal. 2003). A purported assignment of a trademark without any goodwill is invalid and confers no rights on the assignee. *See, e.g.*, *interState Net Bank v. NetB@nk Inc.*, 348 F. Supp. 2d 340, 349 (D.N.J. 2004) (citing Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999); *Glow Industries, Inc.*, 273 F. Supp. 2d at 1107-08 ("A 'naked' or 'in gross' transfer of a mark, i.e., without the associated goodwill, is invalid.") (citations omitted); *Patagonia, Inc. v. Anheuser-Busch, LLC*, 2020 WL 8514835, at *7 (C.D. Cal. Sept. 3, 2020) ("[O]nly after a valid assignment of trademarks does an assignee succeed to the rights of the assignor.").

The jury must make a determination as to whether the assignment pursuant to which Plaintiff claims to have acquired ownership rights in the THRIVE mark was

-36-

1    valid, which necessarily requires the jury to consider whether there existed any

2    goodwill in the THRIVE mark at the time of the assignment.  To do so, the jury must

3    be instructed regarding the legal standard for goodwill.  TCI's instruction accurately

4    states the Ninth Circuit's interpretation, namely that goodwill is the aspect of a

5    business that attracts and maintains customers, is acquired over time, and requires

6    more than minimal exposure to the public to establish.  *See, e.g., Sebastian Brown*

7    *Productions LLC v. Muzooka, Inc.*, 2016 WL 5910817, *9 (N.D. Cal. Oct. 11, 2016)

8    (citing *E. & J. Gallo Winery. Gallo Cattle Co.*, 1989 WL 159628, at *3 (E.D. Cal.

9    June 19, 1989), *aff'd E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th

10   Cir. 1992)).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED JURY INSTRUCTIONS

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO**

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 10**

Thrive Causemetics' alternative instruction has defined goodwill as something that can only be built through use in commerce of a mark, meaning an intent-to-use application could only be assigned if the claimed mark was already in use in commerce. That is an unduly narrow definition. For an assignment of an intent-to-use trademark application to be valid, 15 U.S.C. § 1060(a)(1) requires that the assignee be a successor of an "ongoing and existing business" to which the mark pertains and that the assignment include goodwill in the mark. The Trademark Trial & Appeals Board and other courts have held that this statute "must allow for the transfer of an intent to use application claiming a bona fide intention to use the mark for goods which are not yet in production or which may be in the planning stage . . . ." *Exel Oyj v. D'Ascoli*, Opposition No. 91160397, 2008 WL 4354180, at *7 (T.T.A.B. Sept. 19, 2008)); *Vacation Rental Partners, LLC v. VacayStay Connect, LLC*, No. 15 CV 10656, 2017 WL 1150806, at *6 (N.D. Ill. Mar. 28, 2017) (quoting *Exel Oyj*). "Prior to filing a statement of use, an applicant may not have actually used the mark in commerce yet, but it may have goodwill or existing business tied to the mark (e.g., relationships based on planned use of the mark)—that is enough to ensure that a trademark has no existence separate from the product or service it symbolizes." *VacayStay*, 2017 WL 1150806, at *7 (citing § 1060 legislative history). Therefore, "Section 1060(a)(1) was designed to allow assignment of intent-to-use applications before actual use." *Id*.

Neither of the cases Thrive Causemetics cites state the "Ninth Circuit's interpretation" regarding goodwill. If a further definition of goodwill is required beyond what is provided in the Ninth Circuit Model Instruction, Thrive Natural Care believes it should not be the overly narrow definition proffered by Thrive Causemetics. Rather, Thrive Natural Care offers the following definition:

"Goodwill can be built through relationships based on the planned use of a mark, even if the mark is not being used to sell goods yet."

1   That definition is in accordance with the law cited above and is enough to ensure that

2   a trademark has no existence separate from the product or service it symbolizes.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED JURY INSTRUCTIONS

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 1
## PRELIMINARY INSTRUCTION-TRADEMARK

Thrive Natural Care seeks damages against Thrive Causemetics for trademark infringement and unfair competition. Thrive Causemetics denies infringing the trademark and unfairly competing, and contends the trademark is invalid. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

## DEFINITION AND FUNCTION OF A TRADEMARK

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner or assignee of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

## HOW A TRADEMARK IS OBTAINED

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.

## TRADEMARK INTERESTS

The owner of a trademark may transfer, give, or sell to another person the owner's interest in the trademark. This type of agreement is called an assignment, and the person who receives the owner's interest is called an assignee and becomes the owner of the mark. An assignee has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace. To be enforceable, the assignment must be in writing and signed. It must also include the goodwill of the business connected with the trademark.

DISPUTED JURY INSTRUCTIONS

A trademark owner or assignee may enforce the right to exclude others in an action for infringement or unfair competition.

## TRADEMARK REGISTRATION

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.

## LIKELIHOOD OF CONFUSION

To prove infringement, Thrive Natural Care must prove, by a preponderance of the evidence, that Thrive Causemetics, without Thrive Natural Care's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of Thrive Natural Care's mark in connection with the distribution or advertisement of goods, such that Thrive Causemetics' use of the mark is likely to cause confusion as to the source of the goods. It is not necessary that the mark used by Thrive Causemetics be an exact copy of Thrive Natural Care's mark. Rather, Thrive Natural Care must demonstrate that, viewed in its entirety, the mark used by Thrive Causemetics is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

## THRIVE NATURAL CARE'S BURDEN OF PROOF

In this case, the plaintiff, Thrive Natural Care, contends that the defendant, Thrive Causemetics, has infringed the trademark THRIVE. Thrive Natural Care has the burden of proving by a preponderance of the evidence that Thrive Natural Care is the owner of a valid trademark and that Thrive Causemetics infringed that trademark.

DISPUTED JURY INSTRUCTIONS

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that Thrive Causemetics infringed Thrive Natural Care's trademark.

### THRIVE CAUSEMETICS' BURDEN OF PROOF

Thrive Causemetics contends that Thrive Natural Care's trademark is invalid. Thrive Causemetics contends that Thrive Natural Care obtained one of its trademark registrations through an improper and invalid assignment and that the trademark THRIVE as reflected in that registration has been subsequently abandoned by the rightful owner, and that the trademark THRIVE as reflected in Thrive Natural Care's other registration is merely descriptive and not protectable. Thrive Causemetics has the burden of proving by a preponderance of the evidence that the trademark THRIVE is invalid. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the registered trademark is invalid.

*Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.1 (as modified for this case).

DISPUTED JURY INSTRUCTIONS

**PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED**

**JURY INSTRUCTION NO. 1**

The last paragraph erroneously states the burden of Thrive Causemetics to prove abandonment of trademark rights is preponderance of evidence. Rather, abandonment must be proven by clear and convincing evidence. *See eMachines, Inc. v. Ready Access Memory, Inc*., No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Because a trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark, the burden of proof is on the party seeking to show abandonment, and *abandonment must be shown by clear and convincing evidence*."); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010) ("The burden of proof is on the party seeking to show abandonment, which must be shown by clear and convincing evidence."). *See also Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif*., 694 F.2d 1150, 1156 (9th Cir. 1982) (holding abandonment must be "strictly proved"); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("The majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."); *Cash Processing Servs. v. Ambient Entm't, Inc*., 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ("While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing."); *Winnebago Indus., Inc*., 207 USPQ ¶ 335 (TTAB June 30, 1980) ("[I]t is also well settled that insofar as the question of abandonment of a mark is concerned, the burden is on petitioner to establish as a fact by clear and convincing proofs the abandonment of such mark by respondent.").

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO**

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 1**

TCI is required to prove its abandonment defense by a preponderance of the evidence. *See, e.g.*, *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL 13176098, at *6 (C.D. Cal. 2011) ("The requirement of 'strict proof' merely recognizes the difficult task a challenger faces in proving the absence of intent to resume, even by a preponderance of the evidence.") (citations omitted); *Societe De Developments Et D'Innovations Des Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) ("Caution and care are required in every case, but this does not alter the standard of evidence, which is that of a preponderance.") (citation omitted).  Although the Ninth Circuit has declined to decide the appropriate burden of proof in this Circuit, Judge McKeown's concurrence in *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 953-54 (9th Cir. 2007), correctly argues abandonment must be proved by a preponderance of the evidence.  Judge McKeown found no evidence in the legislative history of the Lanham Act that justifies raising the standard above the typical standard of a preponderance of the evidence applicable in civil matters.  *Id.*  She further explained that other circuits that *have* explicitly ruled on the issue apply a preponderance of the evidence standard predicated on the statutory language of the Lanham Act, "not on the common law or some judicially-created hybrid standard." *Id.* (citing *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (applying preponderance of the evidence standard); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 938 (7th Cir. 1989) (same); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023-24 (Fed. Cir. 1989) (same, in appeal from trademark cancellation proceeding before Trademark Trial and Appeal Board)).

The cases cited by Plaintiff purportedly supporting a "clear and convincing" burden of proof rely on *Cerveceria Centroamericana* for the legal standard, which actually supports TCI's position.  892 F.2d at 1023 ("[T]he petitioner's burden is to

-44-

1  establish the case for cancellation [for abandonment] by a preponderance of the
2  evidence.").  Both *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL
3  13176098, at *6 (C.D. Cal. 2011) and *Societe De Developments Et D'Innovations Des*
4  *Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l*
5  *Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) properly state the burden of proof for
6  abandonment.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISPUTED JURY INSTRUCTIONS

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 2**
**INFRINGEMENT-ELEMENTS-PRESUMED VALIDITY AND**
**OWNERSHIP-REGISTERED TRADEMARK**
**(15 U.S.C. §§ 1057, 1065 and 1115)**

I gave you Instruction 35 that requires Thrive Natural Care to prove by a preponderance of the evidence that the trademark is valid and protectable and that Thrive Natural Care owns the trademark. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others.  A trademark becomes protectable after it is used in commerce.

One way for Thrive Natural Care to prove trademark validity is to show that the trademark is registered.  An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits __ and __ are certificates of registration from the United States Patent and Trademark Office.  They were submitted by Thrive Natural Care as proof of the validity of the trademark and that Thrive Natural Care owns the trademark.

The facts recited in the certificate labeled as Exhibit __ are:  Thrive Natural Care, Inc. is the registrant of U.S. Trademark Reg. No. 4,467,942, for non-medicated skin care preparations, namely, facial lotions, cleansers and creams, creams and oils for cosmetic use, skin moisturizers; pre-shaving preparations; after shave lotions and creams, in Class 3.  With respect to the '942 Registration, unless Thrive Causemetics proves by a preponderance of the evidence that that the application that resulted in the '942 Registration was not validly assigned to Thrive Natural Care and that the trademark THRIVE as reflected in that registration has been abandoned by its rightful owner, you must consider the trademark to be conclusively proved as valid and owned by Thrive Natural Care.

However, if Thrive Causemetics shows by a preponderance of the evidence that the mark as reflected in the '942 Registration was not validly assigned to Thrive Natural Care and has been abandoned by its rightful owner, then the facts stated in the '942 Registration are no longer conclusively presumed to be correct. You should then consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence that the mark is valid and owned by Thrive Natural Care, as I explain in Instructions 36, 37, and 38.

The facts recited in the certificate labeled as Exhibit __ are:  Thrive Natural Care, Inc. is the registrant of U.S. Trademark Reg. No. 6,164,303 for body and non-medicated soaps and skin cleansing gels; non-medicated skin care preparations, namely, facial lotions, cleansers and creams, oils for cosmetic use, skin moisturizers; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams.

With respect to the '303 Registration, the law presumes that the facts noted in the certificate are true, that is that Thrive Natural Care, Inc. is the registrant of U.S. Trademark Reg. No. 6,164,303 for body and non-medicated soaps and skin cleansing gels; non-medicated skin care preparations, namely, facial lotions, cleansers and creams, oils for cosmetic use, skin moisturizers; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams. But this presumption can be overcome by sufficient evidence to the contrary. Here, Thrive Causemetics contends that the THRIVE mark is merely descriptive and has not acquired secondary meaning, and is therefore not valid.  If Thrive Causemetics is able to show this by a preponderance of the evidence, then you cannot rely on the registration as stating the truth of the matters contained therein.

*Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.8 (as modified for this case).

-47-

DISPUTED JURY INSTRUCTIONS

**PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED**

**JURY INSTRUCTION NO. 2**

Throughout, this instruction erroneously states the burden of Thrive Causemetics to prove abandonment of trademark rights is preponderance of evidence. Rather, abandonment must be proven by clear and convincing evidence. *See eMachines, Inc. v. Ready Access Memory, Inc*., No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Because a trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark, the burden of proof is on the party seeking to show abandonment, and *abandonment must be shown by clear and convincing evidence*."); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010) ("The burden of proof is on the party seeking to show abandonment, which must be shown by clear and convincing evidence."). *See also Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif*., 694 F.2d 1150, 1156 (9th Cir.1982) (holding abandonment must be "strictly proved"); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("The majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."); *Cash Processing Servs. v. Ambient Entm't, Inc*., 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ( "While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing."); *Winnebago Indus., Inc*., 207 USPQ ¶ 335 (TTAB June 30, 1980) ("[I]t is also well settled that insofar as the question of abandonment of a mark is concerned, the burden is on petitioner to establish as a fact by clear and convincing proofs the abandonment of such mark by respondent.").

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO**

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 2**

TCI is required to prove its abandonment defense by a preponderance of the evidence.  *See, e.g.*, *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL 13176098, at *6 (C.D. Cal. 2011) ("The requirement of 'strict proof' merely recognizes the difficult task a challenger faces in proving the absence of intent to resume, even by a preponderance of the evidence.") (citations omitted); *Societe De Developments Et D'Innovations Des Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) ("Caution and care are required in every case, but this does not alter the standard of evidence, which is that of a preponderance.") (citation omitted). Although the Ninth Circuit has declined to decide the appropriate burden of proof in this Circuit, Judge McKeown's concurrence in *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 953-54 (9th Cir. 2007), correctly argues abandonment must be proved by a preponderance of the evidence.  Judge McKeown found no evidence in the legislative history of the Lanham Act that justifies raising the standard above the typical standard of a preponderance of the evidence applicable in civil matters.  *Id.* She further explained that other circuits that *have* explicitly ruled on the issue apply a preponderance of the evidence standard predicated on the statutory language of the Lanham Act, "not on the common law or some judicially-created hybrid standard." *Id.* (citing *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (applying preponderance of the evidence standard); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 938 (7th Cir. 1989) (same); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023-24 (Fed. Cir. 1989) (same, in appeal from trademark cancellation proceeding before Trademark Trial and Appeal Board)).

The cases cited by Plaintiff purportedly supporting a "clear and convincing" burden of proof rely on *Cerveceria Centroamericana* for the legal standard, which actually supports TCI's position.  892 F.2d at 1023 ("[T]he petitioner's burden is to

1    establish the case for cancellation [for abandonment] by a preponderance of the

2    evidence.").  Both *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL

3    13176098, at \*6 (C.D. Cal. 2011) and *Societe De Developments Et D'Innovations Des*

4    *Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l*

5    *Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) properly state the burden of proof for

6    abandonment.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED JURY INSTRUCTIONS

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 3
## TRADEMARK OWNERSHIP-ASSIGNEE
### (15 U.S.C. § 1060)

The owner of a trademark may transfer to another the owner's interest in the trademark, that is, the right to exclude others from using the mark. This transfer is called an assignment, and the person to whom this right is assigned is called an assignee and becomes the owner of the trademark.  An assignee may enforce this right to exclude others in an action for infringement or unfair competition.

To be enforceable, the assignment must include the goodwill of the business connected with the mark.  The goodwill of a business attracts and maintains customers and is acquired over time.  No goodwill is created when a mark is seen by the consuming public in only very limited quantity.  Such minimal exposure is insufficient for the public to associate the mark with a product.

Thrive Natural Care contends that it is an assignee of the THRIVE mark and obtained an enforceable ownership right in the mark pursuant to an assignment from Ecomundi Ventures, LLC.  Thrive Causemetics disputes this, and contends that the THRIVE mark as reflected in the '942 Registration was not properly assigned to Thrive Natural Care because there was no goodwill associated with the THRIVE mark at the time of the assignment, and that the plaintiff did not receive a valid ownership interest in the THRIVE mark.

---

*Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.15 (as modified for this case and to clarify the meaning of "goodwill" and its relationship to the validity of an assignment); J. Thomas McCarthy, Trademarks and Unfair Competition §§ 2:15, 2:16 (5th ed. 2021); *Sebastian Brown Productions LLC v. Muzooka, Inc.*, 2016 WL 5910817, *9 (N.D. Cal. Oct. 11, 2016) (citing *E. & J. Gallo Winery. Gallo Cattle Co.*, 1989 WL 159628,

1   at *3 (E.D. Cal. June 19, 1989), *aff'd E. & J. Gallo Winery v. Gallo Cattle Co.*, 967

2   F.2d 1280 (9th Cir. 1992)); *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d

3   838, 842 (9th Cir. 1969).

1

2

**PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED**

**JURY INSTRUCTION NO. 3**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The second paragraph's explanation of goodwill is not included in 9th Cir. CJI No. 15.5 and is a special definition prepared by Thrive Causemetics. It does not accurately describe goodwill or what must be transferred to create a valid assignment under 15 U.S.C. § 1060(a)(1). That section requires that the assignee be a successor of an "ongoing and existing business" to which the mark pertains. *See* 15 U.S.C. § 1060(a)(1). Other courts and the Trademark Trial & Appeals Board have found that this statute "must allow for the transfer of an intent to use application claiming a bona fide intention to use the mark for goods which are not yet in production or which may be in the planning stage . . . ." *Vacation Rental Partners, LLC v. VacayStay Connect, LLC*, No. 15 CV 10656, 2017 WL 1150806, at *6 (N.D. Ill. Mar. 28, 2017) (quoting *Exel Oyj v. D'Ascoli*, Opposition No. 91160397, 2008 WL 4354180, at *7 (T.T.A.B. Sept. 19, 2008)). "Prior to filing a statement of use, an applicant may not have actually used the mark in commerce yet, but it may have goodwill or existing business tied to the mark (e.g., relationships based on planned use of the mark)—that is enough to ensure that a trademark has no existence separate from the product or service it symbolizes." *VacayStay*, 2017 WL 1150806, at *7 (citing § 1060 legislative history). Therefore, "Section 1060(a)(1) was designed to allow assignment of intent-to-use applications before actual use." *Id*. It is undisputed that Ecomundi engaged in substantial business planning relating to the "Thrive" mark and Thrive-branded skincare products in 2012 and early 2013, including hiring a R&D Director, developing branding and packaging, creating product recipes, and building business relationships. It is also undisputed that Thrive Natural Care received from Ecomundi an assignment of all goodwill in the "Thrive" trademark that had been built through these business planning activities and all of the business relating to the "Thrive" mark. In this instruction, by stating that goodwill is only relevant to "attract[ing] and maintain[ing] customers," Thrive Causemetics is intentionally using an overly limited,

-53-

narrow definition of "goodwill" that is not in alignment with case law or § 1060. Rather than confusing the jury with this instruction, the Court should give 9th Cir. CJI No. 15.15 without modification.

DISPUTED JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 3

Although the Ninth Circuit's Model Jury Instruction No. 15.15 provides instruction concerning how an assignee may succeed to the ownership rights in a trademark, it does not provide instruction regarding the critical concept of goodwill.  The Lanham Act only permits assignment of a trademark "with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark." 15 U.S.C. § 1060(a)(1); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992) ("'[T]he law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated.'") (citation omitted). Without actual use of the mark in connection with a business, and thus, no goodwill, there are simply no trademark rights to assign. *See, e.g., Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196 DOC(JPRx)., 2015 WL 3619204, at *7 (C.D. Cal. June 8, 2015); *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1107 (C.D. Cal. 2003). A purported assignment of a trademark without any goodwill is invalid and confers no rights on the assignee.  *See, e.g.*, *interState Net Bank v. NetB@nk Inc.*, 348 F. Supp. 2d 340, 349 (D.N.J. 2004) (citing Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999); *Glow Industries, Inc.*, 273 F. Supp. 2d at 1107-08 ("A 'naked' or 'in gross' transfer of a mark, i.e., without the associated goodwill, is invalid.") (citations omitted); *Patagonia, Inc. v. Anheuser-Busch, LLC*, 2020 WL 8514835, at *7 (C.D. Cal. Sept. 3, 2020) ("[O]nly after a valid assignment of trademarks does an assignee succeed to the rights of the assignor."). The jury must therefore make a determination as to whether the assignment pursuant to which Plaintiff claims to have acquired ownership rights in the THRIVE mark was valid, which necessarily requires the jury to consider whether there existed any

goodwill in the THRIVE mark at the time of the assignment.  To do so, the jury must be instructed regarding the legal standard for goodwill.

Unlike the "authority" cited by Plaintiff (which consists of a single, non-precedential opinion from the TTAB and an Illinois case that cites it), TCI's instruction accurately states the standard for goodwill within the Ninth Circuit, namely that goodwill is the aspect of a business that attracts and maintains customers, is acquired over time, and requires more than minimal exposure to the public to establish.  *See, e.g., Sebastian Brown Productions LLC v. Muzooka, Inc.*, 2016 WL 5910817, *9 (N.D. Cal. Oct. 11, 2016) (citing *E. & J. Gallo Winery. Gallo Cattle Co.*, 1989 WL 159628, at *3 (E.D. Cal. June 19, 1989), *aff'd E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992)).

DISPUTED JURY INSTRUCTIONS

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 4**

**DEFENSES-ABANDONMENT-AFFIRMATIVE DEFENSE-DEFENDANT'S**

**BURDEN OF PROOF**

**(15 U.S.C. § 1127)**

The owner or assignee of a trademark cannot exclude others from using the trademark if it has been abandoned.

Thrive Causemetics contends that the '942 Registration has become unenforceable because the owner abandoned it.  Thrive Causemetics has the burden of proving abandonment by a preponderance of the evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner discontinues its use of the trademark in the ordinary course of trade, intending not to resume using it.

---

*Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.22 (as modified for this case and to reflect burden of proof).

-57-

DISPUTED JURY INSTRUCTIONS

## PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED
## JURY INSTRUCTION NO. 4

Thrive Natural Care objects that this instruction erroneously states the burden of Thrive Causemetics to prove abandonment of trademark rights is preponderance of evidence. Rather, abandonment must be proven by clear and convincing evidence. *See eMachines, Inc. v. Ready Access Memory, Inc*., No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Because a trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark, the burden of proof is on the party seeking to show abandonment, and *abandonment must be shown by clear and convincing evidence*."); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010) ("The burden of proof is on the party seeking to show abandonment, which must be shown by clear and convincing evidence."). *See also Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif*., 694 F.2d 1150, 1156 (9th Cir.1982) (holding abandonment must be "strictly proved"); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("The majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."); *Cash Processing Servs. v. Ambient Entm't, Inc*., 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ( "While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing."); *Winnebago Indus., Inc*., 207 USPQ ¶ 335 (TTAB June 30, 1980) ("[I]t is also well settled that insofar as the question of abandonment of a mark is concerned, the burden is on petitioner to establish as a fact by clear and convincing proofs the abandonment of such mark by respondent.").

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO**

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 4**

TCI is required to prove its abandonment defense by a preponderance of the evidence.  *See, e.g.*, *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL 13176098, at *6 (C.D. Cal. 2011) ("The requirement of 'strict proof' merely recognizes the difficult task a challenger faces in proving the absence of intent to resume, even by a preponderance of the evidence.") (citations omitted); *Societe De Developments Et D'Innovations Des Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) ("Caution and care are required in every case, but this does not alter the standard of evidence, which is that of a preponderance.") (citation omitted). Although the Ninth Circuit has declined to decide the appropriate burden of proof in this Circuit, Judge McKeown's concurrence in *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 953-54 (9th Cir. 2007), correctly argues abandonment must be proved by a preponderance of the evidence.  Judge McKeown found no evidence in the legislative history of the Lanham Act that justifies raising the standard above the typical standard of a preponderance of the evidence applicable in civil matters.  *Id.* She further explained that other circuits that *have* explicitly ruled on the issue apply a preponderance of the evidence standard predicated on the statutory language of the Lanham Act, "not on the common law or some judicially-created hybrid standard." *Id.* (citing *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (applying preponderance of the evidence standard); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 938 (7th Cir. 1989) (same); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023-24 (Fed. Cir. 1989) (same, in appeal from trademark cancellation proceeding before Trademark Trial and Appeal Board)).

The cases cited by Plaintiff purportedly supporting a "clear and convincing" burden of proof rely on *Cerveceria Centroamericana* for the legal standard, which actually supports TCI's position.  892 F.2d at 1023 ("[T]he petitioner's burden is to

1   establish the case for cancellation [for abandonment] by a preponderance of the
2   evidence.").  Both *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL
3   13176098, at *6 (C.D. Cal. 2011) and *Societe De Developments Et D'Innovations Des*
4   *Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l*
5   *Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) properly state the burden of proof for
6   abandonment.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISPUTED JURY INSTRUCTIONS

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 5
## INFRINGEMENT-ELEMENTS-VALIDITY

If you find that Thrive Causemetics has proven by a preponderance of the evidence that Thrive Natural Care obtained the trademark as reflected in the '942 Registration through an invalid assignment and that the trademark was subsequently abandoned, then the '942 Registration  is not evidence of the validity of the trademark THRIVE.

Thrive Natural Care has also submitted the '303 Registration as evidence of the validity of the trademark THRIVE and that Thrive Natural Care owns the trademark.  As I explained to you in Instruction **[TBD]**, the law presumes that the facts stated in the '303 Registration are true, but this presumption can be overcome if Thrive Causemetics establishes by a preponderance of the evidence to the contrary. Thrive Causemetics contends that the trademark THRIVE as reflected in the '303 Registration is invalid.

A valid trademark is a word, name, symbol, device, or any combination of these items that is either:

1. inherently distinctive; or

2. descriptive, but has acquired a secondary meaning.

Only if you determine both that Thrive Causemetics has proven its abandonment defense as to the '942 Registration and that the THRIVE mark is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction 37.

*Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.9 (as modified for this case).

DISPUTED JURY INSTRUCTIONS

## PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED
## JURY INSTRUCTION NO. 5

The first paragraph of this instruction erroneously states the burden of Thrive Causemetics to prove abandonment of trademark rights is preponderance of evidence. Rather, abandonment must be proven by clear and convincing evidence. *See eMachines, Inc. v. Ready Access Memory, Inc*., No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Because a trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark, the burden of proof is on the party seeking to show abandonment, and *abandonment must be shown by clear and convincing evidence*."); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010) ("The burden of proof is on the party seeking to show abandonment, which must be shown by clear and convincing evidence."). *See also Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif*., 694 F.2d 1150, 1156 (9th Cir.1982) (holding abandonment must be "strictly proved"); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("The majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."); *Cash Processing Servs. v. Ambient Entm't, Inc*., 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ( "While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing."); *Winnebago Indus., Inc*., 207 USPQ ¶ 335 (TTAB June 30, 1980) ("[I]t is also well settled that insofar as the question of abandonment of a mark is concerned, the burden is on petitioner to establish as a fact by clear and convincing proofs the abandonment of such mark by respondent.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO**

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 5**

TCI is required to prove its abandonment defense by a preponderance of the evidence.  *See, e.g.*, *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL 13176098, at *6 (C.D. Cal. 2011) ("The requirement of 'strict proof' merely recognizes the difficult task a challenger faces in proving the absence of intent to resume, even by a preponderance of the evidence.") (citations omitted); *Societe De Developments Et D'Innovations Des Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) ("Caution and care are required in every case, but this does not alter the standard of evidence, which is that of a preponderance.") (citation omitted).  Although the Ninth Circuit has declined to decide the appropriate burden of proof in this Circuit, Judge McKeown's concurrence in *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 953-54 (9th Cir. 2007), correctly argues abandonment must be proved by a preponderance of the evidence.  Judge McKeown found no evidence in the legislative history of the Lanham Act that justifies raising the standard above the typical standard of a preponderance of the evidence applicable in civil matters.  *Id.*  She further explained that other circuits that *have* explicitly ruled on the issue apply a preponderance of the evidence standard predicated on the statutory language of the Lanham Act, "not on the common law or some judicially-created hybrid standard." *Id.* (citing *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (applying preponderance of the evidence standard); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 938 (7th Cir. 1989) (same); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023-24 (Fed. Cir. 1989) (same, in appeal from trademark cancellation proceeding before Trademark Trial and Appeal Board)).

The cases cited by Plaintiff purportedly supporting a "clear and convincing" burden of proof rely on *Cerveceria Centroamericana* for the legal standard, which actually supports TCI's position.  892 F.2d at 1023 ("[T]he petitioner's burden is to

-63-

1  establish the case for cancellation [for abandonment] by a preponderance of the

2  evidence.").  Both *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL

3  13176098, at *6 (C.D. Cal. 2011) and *Societe De Developments Et D'Innovations Des*

4  *Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l*

5  *Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987) properly state the burden of proof for

6  abandonment.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED JURY INSTRUCTIONS

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 6**

**INFRINGEMENT-LIKELIHOOD OF CONFUSION-FACTORS-**

***SLEEKCRAFT* TEST**

**(15 U.S.C. §§ 1114(1) and 1125(a))**

Once you have determined the direction of confusion, you must then consider whether Thrive Causemetics' use of the trademark is likely to cause confusion about the source of Thrive Natural Care's or Thrive Causemetics' goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)     Strength or Weakness of the Plaintiff's Mark. The more the consuming public recognizes Thrive Natural Care's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of Thrive Causemetics' goods if Thrive Causemetics uses a similar mark.  For evaluating the strength of a mark in reverse confusion cases, the questions are whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user and what the conceptual strength of the senior mark is compared to the commercial strength of the junior mark.

(2)     Defendant's Use of the Mark. If Thrive Causemetics and Thrive Natural Care use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3)     Similarity of Plaintiff's and Defendant's Marks. If the overall impression created by Thrive Natural Care' trademark in the marketplace is similar to that created by Thrive Causemetics' trademark in appearance, sound,

-65-

DISPUTED JURY INSTRUCTIONS

or meaning, there is a greater chance of likelihood of confusion. Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.

(4)   Actual Confusion. If use by Thrive Causemetics of Thrive Natural Care's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, Thrive Causemetics' use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by Thrive Causemetics creates for consumers a likelihood of confusion with Thrive Natural Care's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5)   Defendant's Intent. Knowing use by Thrive Causemetics of Thrive Natural Care's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that Thrive Causemetics acted knowingly, the use of Thrive Natural Care's trademark to identify similar goods may indicate a likelihood of confusion.

(6)   Marketing/Advertising Channels. If Thrive Natural Care's and Thrive Causemetics' goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

DISPUTED JURY INSTRUCTIONS

(7)    Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in Thrive Natural Care's and Thrive Causemetics' trademarks.

(8)    Product Line Expansion. When the parties' products differ, you may consider how likely Thrive Natural Care is to begin selling the products for which Thrive Causemetics is using the Thrive Natural Care's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

*Authority: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition)*, Inst. No. 15.18 (as modified for this case and to accommodate strength of the mark in a reverse confusion case); Comment to *Model Civil Jury Instruction* Inst. No. 15.19; *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 994 F.3d 1107, 1118 (9th Cir. 2021) (quoting *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016)).

DISPUTED JURY INSTRUCTIONS

1

**PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED**

2

**JURY INSTRUCTION NO. 6**

3

Thrive Natural Care believes the description of the strength of the mark factor

4

as applicable to reverse confusion is insufficient and contains legal terminology

5

without enough explanation. Rather than including incomplete information in this

6

instruction, Thrive Natural Care has proposed that a more detailed separate instruction

7

on the strength of the mark factor as analyzed for reverse confusion should be given,

8

attached here as Plaintiff's Disputed Jury Instruction No. 2.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED JURY INSTRUCTIONS

## DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 6

TCI's explanation of the evaluation of strength of the mark at issue in a reverse confusion case comes directly from the recent Ninth Circuit decision *Ironhawk Techs., Inc. v. Dropbox, Inc.* "Because the question in reverse confusion cases is 'whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user' we evaluate the conceptual strength of [the senior user's] mark and compare it to the commercial strength of [the junior user's] mark." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 994 F.3d 1107, 1118 (9th Cir. 2021) (quoting *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016)). TCI's instruction exactly tracks how the Ninth Circuit characterizes the inquiry.

Plaintiff's Disputed Instruction No. 2 includes the same language regarding evaluating the strength of the mark in a reverse confusion case, but improperly includes Plaintiff's contentions and disputed issues of fact and law, both of which are prejudicial to TCI. Plaintiff's Disputed Instruction No. 2 also improperly and confusingly conflates the definition of reverse confusion trademark infringement and the legal standard for analyzing the strength of the mark likelihood of confusion factor in a reverse confusion case. TCI disagrees that a separate instruction for evaluating the strength of a mark in a reverse confusion case is necessary beyond the language included in factor (1) in Defendant's Disputed Jury Instruction No. 6, which tracks the relevant language regarding strength of the mark in reverse confusion cases from Ninth Circuit Manual of Model Civil Jury Instruction 15.18 and 15.19 and applicable Ninth Circuit authority.

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 7**

**WILLFUL INFRINGEMENT**

Willful infringement means the defendant calculated to exploit the advantage of an established mark with a deliberate intent to deceive.  Knowing use of an allegedly infringing mark does not constitute willful infringement where the defendant had a good faith belief that there is no likelihood of confusion and had no wrongful intent to capitalize on any goodwill the plaintiff may have.

*Authority:  Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *abrogated on other grounds in SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015); *Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *7-8 (C.D. Cal. Sept. 5, 2019).

DISPUTED JURY INSTRUCTIONS

## PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED
## JURY INSTRUCTION NO. 7

This instruction erroneously applies an overly narrow definition of willful infringement. As noted above, willful blindness and knowing or reckless disregard of a plaintiff's trademark rights can support a finding of willfulness. *See Hydramedia Corp. v. Hydra Media Grp., Inc*., No. CV-06-05293-DDP-JTLX, 2008 WL 11336118, at *3 (C.D. Cal. Dec. 29, 2008), aff'd, 392 F. App'x 522 (9th Cir. 2010) (holding "the Court finds that a showing of 'objective recklessness' is sufficient to demonstrate willful infringement" and noting that standard is consistent with Ninth Circuit decisions "which permit circumstantial evidence of reckless behavior even where the infringing party ignores objective evidence of infringement.") (citing *Earthquake Sound Corp. v. Bumper Indus*., 352 F.3d 1210, 1219 (9th Cir. 2003) (finding willful trademark infringement where the defendant "utilized a mark that was similar to that of its competitor, was informed of actual confusion, and deliberately chose not to make a reasonable effort to ascertain whether it might actually be infringing.")); *Coach, Inc. v. Celco Customs Servs. Co*., No. CV-1110787-MMM-FMOX, 2012 WL 12883972, at *6 (C.D. Cal. Oct. 31, 2012) ("Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with 'an indifference to plaintiff's rights'—in other words, that defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it."); *Capbran Holdings, LLC v. Firemall LLC*, No. CV-16-02980-DSFA-FMX, 2017 WL 4769434, at *6 (C.D. Cal. Aug. 23, 2017) ("A defendant may be liable for willful trademark . . . infringement for knowing conduct or willful blindness."); *Dr. JKL Ltd. v. HPC IT Educ. Ctr*., 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) ("Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark."); *Synoptek, LLC v. Synaptek Corp*., No. SA-CV-1601838-CJC-JCGX, 2018 WL 3359017, at *9 (C.D. Cal. June 4, 2018) ("Synaptek's blatant use of the 'Synaptek' mark in spite of [multiple] PTO

-71-

denials provides strong evidence of willful infringement.”); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 472, 475 (N.D. Cal. 1992) (defendant “was on notice that there could be a likelihood of confusion” when Canadian trademark officials cited plaintiff’s mark as a reason for denying defendant’s trademark application); *Bellagio Jewelry, Inc. v. Croton Watch Co*., No. CV-06-6672-ODW-RZx, 2008 WL 3905895, at *13 (C.D. Cal. Aug. 20, 2008) (“After receiving the cease and desist letter, [defendant] was put on actual notice, which logically demonstrates that any infringing conduct thereafter was done willfully.”).

DISPUTED JURY INSTRUCTIONS

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO**
**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 7**

TCI's instruction regarding willfulness follows well-established Ninth Circuit authority stating that "[w]illful infringement carries a connotation of deliberate intent to deceive," *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *abrogated on other grounds in SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016).  Plaintiff's objections do not address the fact that the Ninth Circuit authority on which TCI's instruction is based includes a critical qualifier: use of an allegedly infringing mark does not constitute willful infringement where the defendant had a good faith belief that there is no likelihood of confusion and had no wrongful intent to capitalize on any goodwill the plaintiff may have.  *Id.*; *see also Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015); *Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *7-8 (C.D. Cal. Sept. 5, 2019).  Failure to include this key aspect of the willfulness inquiry would be reversible error.

1
2
3

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 8
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR
## COMPETITION

4   Under California common law, to prevail on common law trademark

5   infringement and unfair competition claims, Thrive Natural Care must make the same

6   showing as with its federal trademark infringement claim.

7

8   *Authority: Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981); *New*

9   *West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979); *DeLuna v.*

10  *Navarro*, 2019 WL 6139920, at * 5 (C.D. Cal. Sept. 6, 2019) ("Courts analyze claims

11  for trademark-related unfair competition, federal trademark infringement, and state

12  common-law trademark infringement using the same test.  To prevail on these claims,

13  a plaintiff must show that: (1) he has a protectable ownership interest in a valid mark,

14  and (2) the defendant's use of the mark is likely to cause consumer confusion.")

15  (internal citations omitted); *Robinson v. Hunger Free America, Inc.*, 2018 WL

16  2563809, at * 3 (E.D. Cal. June 4, 2018) ("To state a claim for trademark infringement

17  under either the Lanham Act or for common law trademark infringement, a plaintiff

18  must allege that (1) he has a valid, protectable trademark right; (2) that was used by

19  defendant; (3) in a way that is likely to cause consumer confusion and thus infringe

20  upon the trademark right."); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d

21  1019, 1034 (N.D. Cal. 2008) ("State and federal trademark infringement, unfair

22  competition and dilution claims follow essentially the same test. . . . Simply put,

23  plaintiff must prove that it has a valid mark. . . ."); *Rearden LLC v. Rearden*

24  *Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) ("It is undisputed that

25  Appellants' state law trademark infringement claim (as well as their claim under the

26  UCL to the extent it is based on infringement grounds) is subject to the same legal

27  standards as their Lanham Act trademark claim.").

28

## PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED
## JURY INSTRUCTION NO. 8

While Thrive Natural Care agrees the likelihood of confusion element of common law trademark infringement is the same as federal law, it is not correct that the initial element of ownership is identical. Case law from this District and from California courts demonstrates that to satisfy the "ownership" element, the plaintiff need only prove that it used the disputed mark "first and continuously." *All Cities Realty, Inc. v. Brunet*, No. B241999, 2013 WL 4017121, at *4 (Cal. Ct. App. Aug. 6, 2013); *see also Juan Pollo Fran., Inc. v. B & K Pollo Enterprises, Inc.,* ED-CV-13-2010J-GBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015); *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 3:17-CV-00466-LAB-NLS, 2018 WL 2328471, at *7 n.4 (S.D. Cal. May 23, 2018); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947–48 (N.D. Cal. 2005); *Sunset House Distrib. Corp. v. Coffee Dan's, Inc*., 240 Cal. App. 2d 748, 754 (Ct. App. 1966)). Therefore, a separate instruction setting out the standard for common law trademark infringement is appropriate.

DISPUTED JURY INSTRUCTIONS

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 8**

Plaintiff's objection regarding the elements for common law trademark infringement is contrary to the clear weight of authority in the Ninth Circuit that the inquiry is the same as under the Lanham Act, including Plaintiff's burden to prove ownership and validity. *See, e.g.*, *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) ("It is undisputed that Appellants' state law trademark infringement claim (as well as their claim under the UCL to the extent it is based on infringement grounds) is subject to the same legal standards as their Lanham Act trademark claim."); *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940825, at * 6 (C.D. Cal. May 3, 2018) (failure to prove protectability of trade dress required dismissal of both federal and common law trademark infringement claim); *Robinson v. Hunger Free America, Inc.*, 2018 WL 2563809, at * 3 (E.D. Cal. June 4, 2018) ("To state a claim for trademark infringement under either the Lanham Act or for common law trademark infringement, a plaintiff must allege that (1) he has a valid, protectable trademark right; (2) that was used by defendant; (3) in a way that is likely to cause consumer confusion and thus infringe upon the trademark right."); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1034 (N.D. Cal. 2008) ("State and federal trademark infringement, unfair competition and dilution claims follow essentially the same test.... Simply put, plaintiff must prove that it has a valid mark...."); *DeLuna v Navarro*, 2019 WL 6139920, at * 5 (C.D. Cal. Sept. 6, 2019) ("Courts analyze claims for trademark-related unfair competition, federal trademark infringement, and state common-law trademark infringement using the same test.  To prevail on these claims, a plaintiff must show that: (1) he has a protectable ownership interest in a valid mark, and (2) the defendant's use of the mark is likely to cause consumer confusion.") (internal citations omitted).

DATED:  October 1, 2021

THE MCARTHUR LAW FIRM, PC

By: */s/ Stephen McArthur*

Stephen McArthur

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

DATED:  October 1, 2021

SIDLEY AUSTIN LLP

By: */s/ Rollin A. Ransom*

Rollin A. Ransom

*Attorneys for Defendant Thrive Causemetics, Inc.*

## **SIGNATURE ATTESTATION**

I am the CM/ECF filer whose identification and password are being used to file the foregoing Disputed Jury Instructions.  In compliance with Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that every signatory has concurred in this filing.

DATED:  October 1, 2021

By: */s/ Rollin A. Ransom*

Rollin A. Ransom