Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive
Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| THRIVE NATURAL CARE, INC., | Case No. 2:20-cv-9091-PA-AS |
|---|---|
| Plaintiff, | Hon. Percy Anderson |
| v. | **DEFENDANT THRIVE CAUSEMETICS, INC.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| THRIVE CAUSEMETICS, INC., | |
| Defendant. | Trial Date: November 9, 2021<br>Time: 9:00 a.m.<br>Place: Courtroom 9A |

# TABLE OF CONTENTS

**PAGE**

I.  PROPOSED FINDINGS OF FACT...............................................................1

    A.  Ecomundi and the Original Trademark Application for THRIVE ...........1

    B.  Thrive Natural Care's Origins and History...............................................2

    C.  Thrive Natural Care's USPTO Filings......................................................4

    D.  Thrive Causemetics' Origins and History.................................................5

    E.  Thrive Causemetics' USPTO Filings........................................................7

    F.  Communications Between Thrive Natural Care and Thrive Causemetics 9

    G.  Thrive Natural Care's Other Communications Regarding Thrive
        Causemetics.............................................................................................10

    H.  Thrive Natural Care's Financial Performance and Lack of Commercial
        Recognition..............................................................................................11

    I.  Alleged Actual Confusion.......................................................................11

    J.  Third-Party Use of "Thrive"-Related Marks ..........................................12

    K.  The Instant Lawsuit.................................................................................12

II. PROPOSED CONCLUSIONS OF LAW ........................................................13

    A.  Abandonment ..........................................................................................13

    B.  Federal Trademark Infringement (15 U.S.C. § 1114)..............................15

    C.  False Designation of Origin (15 U.S.C. § 1125(a)) .................................34

    D.  Common Law Trademark Infringement and Unfair Competition...........34

    E.  Common Law Unfair Competition ..........................................................35

    F.  Unfair Competition (Cal. Bus. &. Prof. Code § 17200 *et seq.*)...............36

    G.  Willfulness ..............................................................................................36

    H.  Laches......................................................................................................38

    I.  Disgorgement of Profits and Enhanced Damages ...................................40

    J.  Permanent Injunction ..............................................................................42

    K.  Attorneys' Fees and Costs.......................................................................42

    L.  Pre-Judgment Interest..............................................................................43

M.     Post-Judgment Interest ..................................................................44

III.   CONCLUSION ...........................................................................................44

DEFENDANT THRIVE CAUSEMETICS, INC.'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                        **Page(s)**

*Americana Trading, Inc. v. Russ Berrie & Co.*,
  966 F.2d 1284 (9th Cir. 1992) ....................................................................18

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979), *abrogated in part on other grounds by
  Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)....*passim*

*Barnard v. Theobald*,
  721 F.3d 1069 (9th Cir. 2013) ...............................................................43, 44

*Binder v. Disability Group, Inc.*,
  2009 WL 10672976 (C.D. Cal. Feb. 3, 2009) .....................................................42

*CG Roxane LLC v. Fiji Water Co. LLC*,
  569 F. Supp. 2d 1019 (N.D. Cal. 2008)..........................................................35

*Chronicle Pub. Co. v. Legrand*,
  24 U.S.P.Q.2d 1881, 1992 WL 420808 (N.D. Cal. 1992)...........................36, 43

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) ...................................................................36

*Clinique Labs., Inc. v. Dep Corp.*,
  945 F. Supp. 547 (S.D.N.Y. 1996) ...............................................................31

*Credit One Corp. v. Credit One Fin., Inc.*,
  661 F. Supp. 2d 1134 (C.D. Cal. 2009).........................................................35

*DeLuna v. Navarro*,
  2019 WL 6139920 (C.D. Cal. Sept. 6, 2019)....................................................35

*E & J Gallo v. Proximo Spirits, Inc.*,
  2012 WL 273076 (E.D. Cal. Jan. 30, 2012), *aff'd sub nom.*, 583 F.
  App'x 632 (9th Cir. 2014) ......................................................................29

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
  1989 WL 159628 (E.D. Cal. June 19, 1989), *aff'd*, 967 F.2d 1280 (9th
  Cir. 1992) ......................................................................................14

-iii-

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280 (9th Cir. 1992) ........................................................... 13

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A, Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ....................................................... 1, 34

*Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*,
  198 F.3d 1143 (9th Cir. 1999) ........................................................... 19

*Fitbug Ltd. v. Fitbit, Inc.*,
  78 F. Supp. 3d 1180 (N.D. Cal. 2015) ....................................... 36, 39, 40

*Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*,
  772 F. Supp. 2d 1155 (C.D. Cal. 2009) ..................................... 34, 35, 36

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  618 F.3d 1025 (9th Cir. 2010) ..................................................... 18, 23

*Globefill Inc. v. Elements Spirits, Inc.*,
  2017 WL 6520589 (C.D. Cal. 2017), *aff'd*, 756 Fed. App'x 764 (9th
  Cir. 2019) ................................................................................. 42, 43

*Glow Indus., Inc. v. Lopez*,
  273 F. Supp. 2d 1095 (C.D. Cal. 2003) ................................. 13, 14, 27

*Glow Indus. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002) ......................................... *passim*

*Grupo Gigante SA De CV v. Dallo & Co., Inc.*,
  391 F. 3d 1088 (9th Cir. 2004) ........................................................... 39

*Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*,
  2011 WL 13176098 (C.D. Cal. 2011) ................................................. 15

*Herbalife Int'l, Inc. v. Lumene N. Am., Inc.*,
  2007 WL 4225776 (C.D. Cal. Oct. 15, 2007) ....................... 24, 30, 31

*Hi-Tech Pharmaceuticals Inc. v. Dynamic Sports Nutrition, LLC*,
  2021 WL 2185699 (N.D. Ga. May 28, 2021) ..................................... 29

*Icebreaker Ltd. v. Gilmar S.P.A.*,
  911 F. Supp. 2d 1099 (D. Or. 2012) ................................................. 25

-iv-

*interState Net Bank v. NetB@nk Inc.*,
    348 F. Supp. 2d 340 (D.N.J. 2004) ...................................................................14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ......................................................................38, 39

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
    815 Fed. App'x 110 (9th Cir. 2020) .................................................................1

*Kargo Glob., Inc. v. Advance Magazine Publishers, Inc.*,
    No. 06 Cv. 550(JFK), 2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007) ................29

*Kleven v. Hereford*,
    No. CV 13-02783-AB, 2015 WL 4977185 (C.D. Cal. Aug. 21, 2015) .............14

*Lahoti v. Vericheck, Inc.*,
    636 F.3d 501 (9th Cir. 2011) ..........................................................................23

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) .............................................................36, 37, 40

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ...........................................................................38

*Mister Donut of Am., Inc. v. Mr. Donut, Inc.*,
    418 F.2d 838 (9th Cir. 1969) ...........................................................................15

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
    331 F. Supp. 2d 1214 (C.D. Cal. 2004), *aff'd*, 114 F. App'x 921 (9th
    Cir. 2004) ...............................................................................................23, 24, 25

*Moroccanoil, Inc. v. Groupon, Inc.*,
    278 F. Supp. 3d 1157 (C.D. Cal. 2017) ..................................................34, 35, 36

*Move Press, LLC v. Peloton Interactive, Inc.*,
    2019 WL 4570018 (C.D. Cal. Sept. 5, 2019) ...................................................36

*New Milani Grp., Inc. v. J.T. Bella, LLC*,
    2013 WL 12116579 (C.D. Cal. July 22, 2013) ................................................27

*New West Corp. v. NYM Co. of Cal., Inc.*,
    595 F.2d 1194 (9th Cir. 1979) ...................................................................35, 36

-v-

*Novadaq Technologies, Inc. v. Karl Storz GmbH & Co. K.G.*,
 No. 14-cv-04853-PSG, 2015 WL 9028123 (N.D. Cal. Dec. 16, 2015) .............41

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
 809 F.2d 601 (9th Cir. 1987) ...................................................................24

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
 572 U.S. 545 (2014)...................................................................42, 43

*Oculu, LLC v. Oculus VR, Inc.*,
 2015 WL 3619204 (C.D. Cal. June 8, 2015)..............................................*passim*

*Oracle USA, Inc. v. Rimini Street, Inc.*,
 879 F. 3d 948 (9th Cir. 2018) ....................................................43, 44

*Parks LLC v. Tyson Foods, Inc.*,
 863 F.3d 220 (3d Cir. 2017) .............................................................30

*Patagonia, Inc. v. Anheuser-Busch, LLC*,
 No. 2:19-cv-02702-CAP-JEMx, 2020 WL 8514835 (C.D. Cal. Sept.
 3, 2020) ............................................................................................14, 15

*Philip Morris USA Inc. v. Liu*,
 489 F. Supp. 2d 1119 (C.D. Cal. 2007)..............................................35

*Pinnacle Advertising & Mkt. Grp., Inc. v. Pinnacle Advertising & Mkt.
 Grp. Inc.*,
 2019 WL 7376782 (S.D. Fla. Sept. 26, 2019)....................................30

*Rearden LLC v. Rearden Commerce, Inc.*,
 683 F.3d 1190 (9th Cir. 2012)...................................................16, 35

*Reno Air Racing Ass'n., Inc. v. McCord*,
 452 F.3d 1126 (9th Cir. 2006) ..........................................................38

*Robinson v. Hunger Free America, Inc.*,
 2018 WL 2563809 (E.D. Cal. June 4, 2018).....................................35

*Rodan & Fields, LLC v. Estee Lauder Co., Inc.*,
 2010 WL 3910178 (N.D. Cal. Oct. 5, 2010).......................................31

*S. Cal. Darts Ass'n v. Zaffina*,
 762 F.3d 921 (9th Cir. 2014) ............................................................34

-vi-

*S&B Filters Inc. v. R2C Performance Prods., LLC*,
   2016 WL 8928314 (C.D. Cal. Aug. 18, 2016) ....................................................26

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
   251 F. Supp. 3d 1288 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th
   Cir. 2019) ........................................................................................................19

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
   265 F. Supp. 3d 1013 (N.D. Cal. 2017), aff'd, 786 F. App'x 662 (9th
   Cir. 2019) ........................................................................................................29

*Scat Enter., Inc. v. FCA US LLC*,
   2017 WL 5896182 (C.D. Cal. June 8, 2017) ....................................................41

*Sebastian Brown Prods. LLC v. Muzooka Inc.*,
   No. 15-CV-01720-LHK, 2016 WL 5910817 (N.D. Cal. Oct. 11, 2016)13, 14, 15

*Societe De Developments Et D'Innovations Des Marches Agricoles Et
   Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt
   Co.*, 662 F. Supp. 839 (D. Or. 1987) ................................................................15

*Spin Master, Ltd. v. Zobmondo Entertainment, LLC*,
   944 F. Supp. 2d 830 (C.D. Cal. 2012) ..............................................................41

*SquirtCo v. Seven-Up Co.*,
   628 F.2d 1086 (8th Cir. 1980) ..........................................................................28

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
   839 F.3d 1179 (9th Cir. 2016) (en banc) ..........................................................43

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ....................................................................*passim*

*THOIP v. Walt Disney Co.*,
   690 F. Supp. 2d 218 (S.D.N.Y. 2010) ...............................................................29

*Thrive Natural Care, Inc. v. Le-vel Brands, LLC*,
   Case No. SA CV 21-02022-DOC-KES (C.D. Cal.)...........................................20

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
   465 F.3d 1102 (9th Cir. 2006) ..........................................................................39

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ............................................................................1

DEFENDANT THRIVE CAUSEMETICS, INC.'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) ...............................................................................41

*Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*,
    964 F. Supp. 733 (S.D.N.Y. 1997) ...............................................................39, 40

*Union Carbide Corp. v. Ever-Ready, Inc.*,
    531 F.2d 366 (7th Cir. 1976) ...............................................................................28

*Wecosign, Inc. v. IFG Holdings, Inc.*,
    845 F. Supp. 2d 1072 (C.D. Cal. 2012)...............................................................42

*Winterland Concessions Co. v. Fenton*,
    835 F. Supp. 529 (N.D. Cal. 1993)......................................................................41

*World Wide Sales, Inc. v. Church & Dwight Co., Inc.*,
    No. 08 C 1198, 2009 WL 3765881 (N.D. Ill. Nov. 9, 2009) .......................18, 23

*Zobmondo Entertainment, LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010) .....................................................16, 17, 18, 23

**Statutes**

15 U.S.C. § 1060................................................................................................13

15 U.S.C. § 1114................................................................................15, 16, 35

15 U.S.C. § 1115................................................................................................14

15 U.S.C. § 1117.......................................................................................*passim*

15 U.S.C. § 1125................................................................................................34

15 U.S.C. § 1127........................................................................................14, 15

28 U.S.C. § 1961........................................................................................43, 44

Cal. Bus. & Prof. Code § 17200 ...................................................................36, 39

Cal. Bus. & Prof. Code § 17208 .........................................................................39

**Other Authorities**

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair
    Competition* § 23:10 (5th ed. 2021)...................................................................21

1      Pursuant to Local Rule 52 and the Court's Civil Trial Scheduling Order (ECF

2 No. 19) ¶ III.B.1, Defendant Thrive Causemetics, Inc. ("Thrive Causemetics")

3 respectfully submits the following Proposed Findings of Fact and Conclusions of

4 Law.[1]

## I.    PROPOSED FINDINGS OF FACT

### A.    <u>Ecomundi and the Original Trademark Application for THRIVE</u>

    1.    On September 11, 2012, Ecomundi Ventures, LLC ("Ecomundi") filed

with the United States Trademark and Patent Office ("USPTO") an intent-to-use

trademark application, Application Serial No. 85726058, for the mark THRIVE in

connection with "Personal care products for cosmetic use, namely, hair shampoos and

conditioners, hair styling preparations; body and hand washes, soaps and gels; non-

medicated skin care preparations, namely, body lotions; cosmetic sun care

preparations and sunscreens; lip creams and balms; antiperspirants and deodorants for

personal use; shaving creams and gels; non-medicated baby care products, namely,

baby lotions, creams, body cleansers, shampoos, gels and washes, diaper rash creams

and ointments" (the "'058 Application").  The '058 Application was signed on behalf

of Ecomundi by Alex McIntosh, who is also the co-founder and Chief Executive

Office of Plaintiff Thrive Natural Care, Inc. ("Thrive Natural Care").  (ECF No. 106-

---

[1] Thrive Causemetics' proposed findings of fact and conclusions of law address all of Plaintiff's claims in light of the Court's October 6, 2021 Order granting in part and denying in part Thrive Causemetics' motion for summary judgment.  ECF No. 114. The Order eliminated Thrive Natural Care's claims for a reasonable royalty and corrective advertising damages, leaving only Plaintiff's claims for disgorgement of Thrive Causemetics' profits and injunctive relief.  As there is no Seventh Amendment right to a jury trial for disgorgement of profits or an injunction under the Lanham Act, this action should now be tried to the Court.  *See Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A, Inc.*, 778 F.3d 1059, 1074-76 (9th Cir. 2015) (explaining that "[a] claim for disgorgement of profits under § 1117(a) is equitable, not legal" and thus does not invoke the right to a jury trial); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (holding that "[b]ecause [plaintiff] only sought an injunction, the district court did not err by resolving its claims in a bench trial . . . [n]or were the [defendants] entitled to a jury trial on their equitable defenses to those claims"); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 815 Fed. App'x 110, 112 (9th Cir. 2020) (holding that the district court did not err in striking the plaintiff's demand for a jury trial in Lanham Act case where the plaintiff's only remaining claim was for disgorgement of profits).

3, Ex. No. 95).

2.      In the '058 Application, Ecomundi claimed that it had a bona fide intent to use the THRIVE mark in commerce in connection with the above-listed goods. (ECF No. 106-3, Ex. No. 95).

3.      Plaintiff claims that Ecomundi undertook various activities related to the THRIVE mark, including researching and developing skincare products, releasing a request for proposal regarding branding and advertising for the products, interviewing potential manufacturers and sales representatives, and registering the thrivenaturalcare.com website and email domains.

4.      However, there is no evidence that Ecomundi showed its product packaging or designs to consumers or retailers, and it is undisputed that Ecomundi has never sold any product bearing the THRIVE mark.

5.      On September 27, 2013, Ecomundi entered into an agreement with Thrive Natural Care, effective May 23, 2013, to assign all right, title, interest, and goodwill in the '058 Application to Thrive Natural Care.  (ECF No. 106-3, Ex. Nos. 96 & 97).

6.      Ecomundi has made no use of the mark THRIVE since at least May 23, 2013.

7.      On January 14, 2014, the '058 Application matured into U.S. Registration No. 4,467,942 (the "'942 Registration"), which is registered in the name of Thrive Natural Care.  (ECF No. 106-3, Ex. No. 305).

8.      Plaintiff claims that on January 14, 2019, the '942 Registration became incontestable.

**B.      Thrive Natural Care's Origins and History**

9.      Thrive Natural Care, Inc. was founded in 2012.  Its co-founder and Chief Executive Officer is Alex McIntosh.

10.      Thrive Natural Care began selling skincare products featuring ingredients sourced from regenerative plants grown in Costa Rica under the THRIVE mark in

-2-

March 2014.  (ECF No. 106-3, Ex. Nos. 58, 277, 355, 356).

11.    Thrive Natural Care's first product offerings were three men's skincare and grooming products.

12.    Thrive Natural Care's business model is ostensibly focused on sustainability and environmentally conscious product development, and all of Plaintiff's products are made from regenerative Costa Rican "super-plants" marketed as having natural, "unique" properties that protect the skin from the outer elements, remove the effects of an active, outdoor lifestyle, or facilitate shaving.  Thrive Natural Care's business model, marketing, and products convey the impression of earthiness, manliness, and active, outdoor living.  (ECF No. 106-3, Ex. Nos. 58, 355, 356, 357, 358, 359, 360, 387, 388, 389, 390, 391, 392, 393).

13.    Over the years, Thrive Natural Care has added other products to its product line, including face washes, moisturizers, scrubs, and sunscreens, all of which include Thrive Natural Care's signature Costa Rican "super-plants" as among their ingredients.

14.    Thrive Natural Care has represented to the public that its skincare products are "regenerative," "empower your skin," and "'go under the hood' to work with your body to help skin be healthy and resilient from the inside out."  (ECF No. 106-3, Ex. Nos. 58, 356).

15.    Thrive Natural Care's target consumer is men; its first three products were for male grooming with earthy and masculine scents, its product packaging was modeled after male shoulders, Thrive Natural Care's fictional target consumer was described by Thrive Natural Care's branding agency as an "urban woodsman" named "Adam," and third-party articles regarding Thrive Natural Care (and featuring Mr. McIntosh) have routinely characterized Thrive Natural Care as a "men's skin care company."  (ECF No. 106-3, Ex. Nos. 59, 60, 61, 62, 63, 64, 65, 66, 79, 361, 362, 363).

16.    Thrive Natural Care's individual products are priced in the range of

$12.95 to $24.95, with kits priced from $25.95 to $54.95.

17.   The overall color scheme of Thrive Natural Care's product packaging is consistently in brown, tan, black, and red tones with the "Thrive" mark in bold, chunky font.  (ECF No. 106-3, Ex. Nos. 395-404).

18.   Thrive Natural Care sells its products online through its website thrivecare.co, Walmart.com, and Amazon.com, and at certain brick-and-mortar Whole Foods stores.

## C.   Thrive Natural Care's USPTO Filings

19.   On May 2, 2016, Thrive Natural Care filed with the USPTO Application Serial No. 7021374 for the mark THRIVE in connection with "body and non-medicated soaps and skin cleansing gels; non-medicated skin care preparations, namely, facial lotions, cleansers and creams, oils for cosmetic use, skin moisturizers; cosmetic sun care preparations and sunscreens; shaving creams and gels; pre-shaving preparations; after shave lotions and creams" (the "'374 Application").

20.   On September 29, 2020, Thrive Natural Care's '374 Application matured into U.S. Trademark Registration No. 6,164,303 (the "'303 Registration").  (ECF No. 106-3, Ex. No. 304).

21.   On September 22, 2020, Thrive Natural Care filed Application Serial No. 90198496 to register the mark THRIVE in connection with "After-sun care lotion; After-sun cream; After-sun treatment, namely, non-medicated skin treatment creams for after sun; Lip cream; Lip balm; Face wipes impregnated with a skin cleanser; Beauty Mask for faces; non-medicated skin serums; Fragranced body care preparations, namely, body scrubs, and shower gels; Exfoliant creams; Non-medicated exfoliating preparations for skin and body; Body wash; Non-medicated liquid soap; Hand sanitizer; Skin cleanser; Body wipes impregnated with a skin cleanser; Anti-aging cream; Anti-aging cleanser; Anti-aging toner; Anti-aging moisturizer; Non-medicated anti-aging serum; Facial cleaning preparation, namely, salicylic acne cleanser not for medical purposes; Hair shampoos and conditioners; Hair styling

-4-

1    preparations; Hair gel; Shower gel; Hair cream; Dry shampoos; Hair pomades;

2    Shaving soap; Shaving lotions; Mustache wax; Non-medicated beard care

3    preparations, namely, balm, cream, wax, lotion, oil, cleaner; Deodorant for personal

4    use; Antiperspirant; Perfume; Cologne; Fragranced facial moisturizer; Body spray

5    used as a personal deodorant and as fragrance; Fragrances for personal use; Aromatic

6    essential oils; Baby lotion; Baby oil; Baby powder; Baby shampoo; Baby hair

7    conditioner; Baby hand soap; Non-medicated soaps for babies; Non-medicated

8    cleansers, namely, skin cleansers for babies; Baby suncream; Non-medicated diaper

9    rash cream; Non-medicated diaper rash ointments and lotions; Baby wipes

10   impregnated with cleaning preparations" (the "'496 Application").

11        22.    There is no evidence that Thrive Natural Care has developed new

12   products, sample advertising or branding for new products, or sample product

13   packaging for new products since the filing of the '496 Application.

14        **D.    Thrive Causemetics' Origins and History**

15        23.    In October of 2013, Karissa Bodnar, founder and Chief Executive Officer

16   of Thrive Causemetics, selected the company's name after watching a segment called

17   "GMA Goes Pink" on Good Morning America regarding breast cancer survivors, and

18   Good Morning America co-anchor Robin Roberts commented that these women were

19   not just survivors, but "thrivers."

20        24.    Ms. Bodnar was inspired by the Good Morning America segment and by

21   Ms. Roberts' reference to breast cancer survivors as "thrivers."  She developed a

22   vision for a company that would help the community, and specifically, that would

23   help women going through cancer treatment thrive.

24        25.    Ms. Bodnar also coined the term "Causemetics" in the company's name

25   to reflect her, and the company's, deep commitment to supporting charitable causes

26   critical to women's well-being.

27        26.    Thrive Causemetics was established in 2014, and sold its first products of

28   false eyelashes and eyelash adhesive using the THRIVE CAUSEMETICS brand name

1   in September 2014.

2       27.   Thrive Causemetics began selling high-end luxury color cosmetics using

3   the THRIVE CAUSEMETICS brand name in 2015.

4       28.   Every product sold by Thrive Causemetics is labeled with the company's

5   brand name THRIVE CAUSEMETICS on its packaging.  (ECF No. 106-3, Ex. Nos.

6   405-419).

7       29.   Thrive Causemetics' product packaging consistently uses white or teal

8   tones, and the mark is in slim, all lower-case black, white, teal, or silver font.  (ECF

9   No. 106-3, Ex. Nos. 405-419).

10      30.   Thrive Causemetics sells its products directly to consumers through its

11  website, thrivecausemetics.com.

12      31.   Thrive Causemetics has never authorized any third-party online seller to

13  sell its products.

14      32.   Thrive Causemetics generally does not sell its products through brick-

15  and-mortar retail locations.  In late 2019 through early 2020, Thrive Causemetics

16  participated in a one-time limited partnership for the sale of its color cosmetics

17  products at certain Ulta locations, which did not include any skincare products.

18      33.   Thrive Causemetics' principal mission is to empower and support

19  women, and consistent with that mission, the company primarily targets women in its

20  product development and advertising.

21      34.   In October 2018, Thrive Causemetics sold its first skincare product.

22      35.   Thrive Causemetics' decision to sell skincare was a direct result of

23  customer demand, feedback, and support.  Specifically, Thrive Causemetics (and Ms.

24  Bodnar in particular) had received input from its customers that they wanted

25  additional products, such as skincare, to compliment Thrive Causemetics' color

26  cosmetics products. This feedback and support from Thrive Causemetics' customers is

27  what ultimately led to the company add skincare products to its product line.

28      36.   Since 2018, Thrive Causemetics has periodically added skincare

-6-

products to its offerings.

37.    Thrive Causemetics' skincare products are designed and intended to provide consumers with a luxury beauty experience, and are marketed to consumers as having the ability to beautify or improve the appearance of skin or to cleanse the skin after a makeup routine.

38.    Thrive Causemetics' skincare products are principally marketed to women.

39.    The prices for Thrive Causemetics' individual skincare products range from $18 to $68, and its skincare sets range in price from $35 to $73.

40.    Thrive Causemetics has expended substantial resources in developing its brand and gaining commercial recognition of the THRIVE CAUSEMETICS mark; among other things, from 2016 through May of 2021, Thrive Causemetics has spent multiple millions in advertising for its products.  That is, Thrive Causemetics continued to build a valuable business around its trademark from 2016 through the present.

41.    Thrive Causemetics does not currently have specific plans to expand its product line beyond color cosmetics and related tools and skincare products.

**E.    Thrive Causemetics' USPTO Filings**

42.    On August 11, 2015, Thrive Causemetics filed Application Serial No. 86721790 with the USPTO to register the mark THRIVE CAUSEMETICS in connection with "False eyelashes; adhesives for affixing false eyelashes; eyeliner; and eyebrow cosmetics" (the "'790 Application").

43.    On November 30, 2015, the USPTO issued a non-final office action refusing registration of the THRIVE CAUSEMETICS mark in the '790 Application, ostensibly on the grounds of likelihood of confusion with Thrive Natural Care's '942 Registration and U.S. Registration No. 2938220, which at the time was owned by a third party.  (ECF No. 106-3, Ex. No. 134).

44.    On May 27, 2016, Thrive Causemetics filed a response to the USPTO's

-7-

November 30, 2015 non-final office action, and argued, in part, that the examining attorney failed to take into account Thrive Causemetics' full mark THRIVE CAUSEMETICS and failed to address dissimilarities between the marks and goods at issue.  (ECF No. 106-3, Ex. No. 135).

45.     On June 22, 2016, the USPTO issued a final office action refusing registration of the THRIVE CAUSEMETICS mark due to likelihood of confusion with U.S. Registration No. 2938220.  However, the USPTO withdrew its refusal to register the THRIVE CAUSEMTICS mark on the grounds of likelihood of confusion with Thrive Natural Care's '942 Registration.  (ECF No. 106-3, Ex. No. 136).

46.     On April 27, 2018, Thrive Causemetics filed Application Serial No. 87895130 with the USPTO to register the mark THRIVE CAUSEMETICS in connection with "cosmetics; makeup preparations; lip gloss; lipstick; eye shadow; mascara; eye liner; lip liner; eye brow makeup; eye brightening liner; false eyelashes; adhesives for affixing false eyelashes; make-up brushes; online retail store services featuring cosmetics, make-up, cosmetic bags, make-up brush holders and make-up brushes" (the "'130 Application").

47.     On August 28, 2018, the USPTO issued a non-final office refusing registration of the THRIVE CAUSEMETICS mark in the '130 Application, ostensibly on the grounds of likelihood of confusion with Thrive Natural Care's '942 Registration.  (ECF No. 106-3, Ex. No. 137).

48.     On October 30, 2018, Thrive Causemetics filed a response to the USPTO's August 28, 2018 office action, and argued, in part, that dissimilarities in the parties' marks, goods, and third-party use of the term "thrive" with which both parties have coexisted demonstrated that there was no likelihood of confusion between the parties' respective marks.  (ECF No. 106-3, Ex. No. 138).

49.     On November 23, 2018, the USPTO suspended Thrive Causemetic's '130 Application due to likelihood of confusion with Thrive Natural Care's '374 Application.  ECF No. 106-3, Ex. No. 139).

50.     On April 30, 2019, Thrive Causemetics became the owner of U.S. Registration No. 2,938,220 for the mark CAUSE-METICS.

51.     On July 28, 2021, the USPTO issued a non-final office action refusing registration of the THRIVE CAUSEMETICS mark in the '130 Application on the grounds of ostensible likelihood of confusion with the '942 Registration and the '303 Registration.  (ECF No. 106-3, Ex. No. 140).

### F.     Communications Between Thrive Natural Care and Thrive Causemetics

52.     On April 22, 2016, Ms. Bodnar reached out to Thrive Natural Care regarding Thrive Causemetics' use of the term "thrive" as part of its brand name THRIVE CAUSEMETICS.  (ECF No. 106-3, Ex. No. 72).

53.     In his April 23, 2016 response to Ms. Bodnar's e-mail, Mr. McIntosh stated:  "We already sell female cosmetic products."  Mr. McIntosh also expressed his belief that Thrive Natural Care was entitled to "protection of the thrive mark across the gamut of personal care products that fall within our owned mark."  Thrive Natural Care thus first learned of Thrive Causemetics' use of the brand name THRIVE CAUSEMETICS on women's cosmetics no later than April 23, 2016.  (ECF No. 106-3, Ex. No. 72).

54.     On March 3, 2017, Thrive Natural Care's attorney sent a cease-and-desist letter to Thrive Causemetics, demanding that Thrive Causemetics cease use of the term "thrive" and asserting that Thrive Causemetics' "use of the identical term for highly related products infringers Thrive [Natural Care]'s trademark rights" and that "[t]here is no question that your use of a mark that merely adds a term and is used in connection with related products is likely to cause consumer confusion between the marks."  (ECF No. 106-3, Ex. No. 31).

55.     On April 12, 2017, Thrive Causemetics' attorney sent a response to Thrive Natural Care's March 2017 cease-and-desist letter, denying any potential confusion between the parties' marks on multiple grounds, including "due to the

-9-

inclusion of 'causemetics' in TCI's trademark, the overall branding of the different goods . . . and the different product lines," the fact that Thrive Natural care had not created meaningful market awareness of its brand, and in light of extensive third-party use of the term "thrive."  (ECF No. 106-3, Ex. No. 381).

56.    Thrive Natural Care did not respond to Thrive Causemetics' April 12, 2017 letter.

57.    On June 27, 2019, Ms. Bodnar called Mr. McIntosh to discuss the parties' respective marks and a potential coexistence agreement.  The parties' conversation concluded without the parties reaching any agreement.  After the June 2019 telephone call, the parties had no further communication.

### G.    Thrive Natural Care's Other Communications Regarding Thrive Causemetics

58.    On May 3, 2017, Thrive Natural Care's third party marketing company inquired whether Mr. McIntosh was aware of Thrive Causemetics.  Mr. McIntosh responded:  "Yes, they're on our radar. I personally think they have an interesting approach. But from a trademark standpoint, they're infringing on our registered mark, both in name and in design, with the category."  (ECF No. 106-3, Ex. No. 88).

59.    On November 11, 2017, a Thrive Natural care employee e-mailed Mr. McIntosh regarding Thrive Causemetics.  Mr. McIntosh responded:  "Thrive Causemetics is on my/legal's radar."  (ECF No. 106-3, Ex. No. 89).

60.    On May 23, 2018, a Thrive Natural Care investor reached out to Mr. McIntosh regarding Thrive Causemetics.  Mr. McIntosh wrote back, stating:  "Yes, aware of Thrive Causemetics. They sell women's markup. Thrive Natural Care (your investment/our company) has the legal mark for 'THRIVE' in the category of personal care, specifically in washes, shaving, lotion etc. Causemetics came onto my radar 2 years ago. I had legal draft up a cease & desist. Sent to them. . . . But they kept using the mark and I haven't had enough money to pursue. Had to channel precious $ to growth and not more than necessary to legal! Hoping that when I finish this round we

-10-

1  will take another swing at those guys. Common use over time can provide ability for a
2  brand like them to keep going. Don't want that."  (ECF No. 106-3, Ex. No. 90).

3  **H.  Thrive Natural Care's Financial Performance and Lack of**
4  **Commercial Recognition**

5  61.  Since its founding, Thrive Natural Care's financial performance has been
6  modest: its annual net revenue has ranged from $16,255 in 2014 to a high of $700,910
7  in 2020, and it has incurred significant net losses every year.  (ECF No. 106-3, Ex. Nos.
8  69, 70).

9  62.  Plaintiff's "sales and marketing" expenditures have also been modest,
10  ranging from $15,477 in 2013 to a high of $258,493 in 2019.  (ECF No. 106-3, Ex. Nos.
11  69, 70).

12  63.  Prior to 2018, Plaintiff's commercial performance was also modest: its
13  "sales and marketing" expenses ranged from $15,477 at the lowest in 2013 to $159,464
14  at the highest in 2017, and its revenues in the same period ranged from $16,255 at the
15  lowest in 2014 to $302,591 at the highest in 2018.  (ECF No. 106-3, Ex. Nos. 69, 70).

16  64.  As of August 2021, Thrive Natural Care had 7,237 followers on Instagram
17  and 2,725 followers on Facebook.  (ECF No. 106-3, Ex. Nos. 353, 354).  In contrast,
18  Thrive Causemetics had over 531,000 followers on Instagram and over 637,000
19  followers on Facebook.

20  **I.  Alleged Actual Confusion**

21  65.  Although Thrive Natural Care contends there have been six instances of
22  alleged actual confusion (four statements by online customers, a mistaken reference
23  on Walmart.com, and a passing comment by the parent of an athlete, *see* ECF No.
24  106-3, Ex. Nos. 120, 121, 122, 126, 150, 151, two of these relate solely to Thrive
25  Causemetics' cosmetics products (Exs. 120 and 150), and are thus not evidence of
26  infringement-related confusion, leaving at most four instances of alleged actual
27  confusion in the over three years the parties have both sold skincare products.

28

**J.**    <u>**Third-Party Use of "Thrive"-Related Marks**</u>

66.    There is evidence of third-party use of the term "thrive" in connection with personal care products, for example:

- THRIVE, Reg. Nos. 5,954,818 and 5,583,803, owned by Ashford Point LLC, for therapeutic cold therapy packs; therapeutic hot therapy packs; first aid kits;

- THRIVE MARKET, Reg. No. 6,039,529, owned by ThriveMarket, Inc., for online retail store services featuring bath, beauty and body products;

- ITHRIVEX, Reg. No. 4,744,731, owned by I25X, LLC for body cream; hand cream; non−medicated skin care creams and lotions; skin creams;

- THRIVE and Design, Reg. No. 5,772,374, owned by Le-Vel Brands, LLC for topical patches featuring vitamin, mineral, plant extract, antioxidant, enzyme, probiotic, and amino acid preparations used for general health and wellness;

- SURTHRIVAL, Reg. No. 4,532,116, owned by Surthrival LLC for essential oils for personal use; natural essential oils; non-medicated serums for use on skin, gums, and lips;

- NAKED + THRIVING, Reg. No. 5,285,889, owned by Naked + Thriving LLC for face oils; facial oils; body and beauty care cosmetics; and

- SIMPLYTHRIVE, Reg. No. 5,562,806 Simplythrive LLC for online ordering services featuring toiletries and fragrances. (ECF No. 106-3, Ex. Nos. 365, 366, 367, 368, 369, 370, 371).

67.    There is also evidence of over 1000 federal trademark registrations or applications that feature the term "thrive" or some variation of it, across multiple industries. (ECF No. 106-3, Ex. No. 364).

**K.**    <u>**The Instant Lawsuit**</u>

68.    On October 2, 2020, Plaintiff filed the instant lawsuit against Thrive Causemetics, alleging federal, common law, and statutory trademark infringement and unfair competition.

-12-

69.     On July 1, 2021, Plaintiff filed a First Amended Complaint removing nearly all of its allegations concerning Thrive Causemetics' color cosmetics products. As a result of the revisions reflected in the First Amended Complaint, Plaintiff no longer contends that Thrive Causemetics' use of the mark THRIVE CAUSEMETICS in connection with cosmetics infringes any rights that Plaintiff has.

## II.     PROPOSED CONCLUSIONS OF LAW

### A.     <u>Abandonment</u>

1.     The owner of a trademark may transfer to another the owner's interest in the trademark, that is, the right to exclude others from using the mark. This transfer is called an assignment, and the person to whom this right is assigned is called an assignee and becomes the owner of the trademark.  15 U.S.C. § 1060.

2.     The assignment must be in writing and signed.  15 U.S.C. § 1060.

3.     To be enforceable, the assignment must include the goodwill of the business connected with the mark.  15 U.S.C. § 1060(a)(1); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992).

4.     Without goodwill, there are no trademark rights to assign.  *Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196 DOC(JPRx), 2015 WL 3619204, at *7 (C.D. Cal. June 8, 2015); *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1107 (C.D. Cal. 2003).

5.     "The purpose behind requiring that goodwill accompany the assigned mark is to maintain the continuity of the product or service symbolized by the mark and thereby avoid deceiving or confusing consumers." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992).

*6.*     Goodwill exists where there is "use of a mark that is 'sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.'" *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 5910817, at *7 (N.D. Cal. Oct. 11, 2016) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124

-13-

(9th Cir. 2006)).  In contrast, no goodwill is created when a mark is "seen by the consuming public only in very limited quantity." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 1989 WL 159628, at *3 (E.D. Cal. June 19, 1989), *aff'd*, 967 F.2d 1280 (9th Cir. 1992). "[M]inimal consumer exposure . . . d[oes] not create a brand identity or consumer goodwill." *Id.*

7.     A purported assignment of a trademark without any goodwill is invalid. *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 5910817, at *7 (N.D. Cal. Oct. 11, 2016); *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1107-08  (C.D. Cal. 2003); *interState Net Bank v. NetB@nk Inc.*, 348 F. Supp. 2d 340, 349 (D.N.J. 2004).

8.     An invalid assignment confers no rights on the assignee.  *Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 2:19-cv-02702-CAP-JEMx, 2020 WL 8514835, at *7 (C.D. Cal. Sept. 3, 2020); *interState Net Bank v. NetB@nk Inc.*, 348 F. Supp. 2d 340, 349-52 (D.N.J. 2004).

9.     Abandonment is a defense to trademark infringement, including as to incontestable marks.  15 U.S.C. §§ 1115(b)(2), 1127.

10.     A mark "shall be deemed 'abandoned' if . . . its use has been discontinued with intent not to resume such use" and "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127.

11.     An incontestable registration can be cancelled when an invalid assignment fails to transfer rights to the assignee, and the assignor ceases use of the mark for a prolonged period. *Kleven v. Hereford*, No. CV 13-02783-AB (AGRx), 2015 WL 4977185, at *22-23 (C.D. Cal. Aug. 21, 2015); *interState Net Bank v. NetB@nk Inc.*, 348 F. Supp. 2d 340, 352 (D.N.J. 2004).

12.     To prove its abandonment defense, Thrive Causemetics must prove by a preponderance of the evidence that (1) Ecomundi is the owner of the '058 Application, and consequently, the '942 Registration for the mark THRIVE, as a result of an invalid assignment in gross to Thrive Natural Care; and (2) Ecomundi

-14-

discontinued its use of the THRIVE mark in the ordinary course of trade, intending not to resume using it. *See Mister Donut of Am., Inc. v. Mr. Donut, Inc.,* 418 F.2d 838, 842 (9th Cir. 1969); *Hallmark Hardwoods, Inc. v. Omni Wood Product, LLC*, 2011 WL 13176098, at *6 (C.D. Cal. 2011); *Societe De Developments Et D'Innovations Des Marches Agricoles Et Alimentaires-Sodima-Union De Cooperatives Agricoles v. Int'l Yogurt Co.*, 662 F. Supp. 839, 845 (D. Or. 1987).

13.    None of Ecomundi's activity regarding the THRIVE mark prior to its putative assignment to Thrive Natural Care was sufficiently public, *i.e.*, consumer-facing, to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.  There is also no dispute that Ecomundi has never sold a product using the THRIVE mark.  *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 5910817, at *7 (N.D. Cal. Oct. 11, 2016)

14.    For these reasons there was no goodwill in the THRIVE mark at the time of Ecomundi's putative assignment of the '058 Application to Thrive Natural Care.

15.    Because there was no goodwill in the THRIVE mark at the time of the assignment, Thrive Natural Care did not succeed to any rights in the '058 Application and Ecomundi remained the owner and therefore true registrant of the '942 Registration.  *Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 2:19-cv-02702-CAP-JEMx, 2020 WL 8514835, at *7 (C.D. Cal. Sept. 3, 2020).

16.    There is no dispute that Ecomundi did not use the THRIVE mark after May 23, 2013.

17.    Given that over eight years have elapsed since May 23, 2013 without Ecomundi using the THRIVE mark, Ecomundi has abandoned the '942 Registration without any intent to resume use.  15 U.S.C. § 1127.

**B.    Federal Trademark Infringement (15 U.S.C. § 1114)**

18.    To prevail on a claim for federal trademark infringement claim, a plaintiff must prove that (1) the plaintiff has a valid, protectable trademark; and (2)

-15-

that the plaintiff's trademark was used by defendant in a way that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.  15 U.S.C. § 1114; *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 630 (9th Cir. 2005).

19.   The first element of a trademark infringement claim "is comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark." *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *5 (C.D. Cal. June 8, 2015) (*citing S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014)).

20.   With regard to protectability, there are three ways in which a plaintiff can establish that it has a protectable interest: "(1) it has a federally registered trademark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable."  *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *5 (C.D. Cal. June 8, 2015) (citing *Applied Info. Sciences Corp. v. eBAY, Inc.,* 511 F.3d 966, 969–70 (9th Cir. 2007)).

21.   "Federal registration of a mark constitutes prima facie evidence of the validity of the mark" entitling the plaintiff to a presumption that the mark is protectable.  *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *5 (C.D. Cal. June 8, 2015) (citing *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,* 419 F.3d 925, 928 (9th Cir. 2005)).

22.   To be valid and protectable, a trademark mark must be "distinctive." *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).

23.   "Distinctiveness measures 'the primary significance of the mark to the purchasing public.'" *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (quoting *Quiksilver, Inc. v. Kymsta Corp.,* 466 F.3d 749, 760 (9th Cir. 2006)).

-16-

24.     "Marks are generally classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful."  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992)).

25.     "Suggestive, arbitrary, and fanciful marks are considered 'inherently distinctive' and are automatically entitled to federal trademark protection because 'their intrinsic nature serves to identify a particular source of a product.'"  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992)).

26.     Generic marks are not eligible for trademark protection.  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).

27.     "Merely descriptive marks are somewhere in-between; although they are not inherently distinctive and are therefore not entitled to automatic trademark protection, a merely descriptive mark can become protectable if it has acquired distinctiveness 'as used on or in connection with the applicant's goods in commerce.'"  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (quoting 15 U.S.C. § 1052(f)).

28.     This acquired distinctiveness is referred to as "secondary meaning."  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992)).

29.     "Although the plaintiff in a trademark action bears the ultimate burden of proof that his or her mark is valid, federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark."  *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010) (citations omitted)

30.     The burden is then on the defendant to prove, by a preponderance of the

-17-

1  evidence, that secondary meaning has not attached if the defendant wishes to argue
2  that the plaintiff's mark is not entitled to trademark protection.  *Zobmondo Entmt.,*
3  *LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010); *Americana Trading,*
4  *Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992).

5      31.    Because Thrive Natural Care owns the '303 Registration, it is entitled to
6  a presumption that the THRIVE mark is distinctive, and thus valid and protectable.
7  Thrive Causemetics has the burden of demonstrating by a preponderance of the
8  evidence that the THRIVE mark is descriptive and has not acquired secondary
9  meaning to overcome the presumption of validity.

10     32.    A mark is descriptive if it describes some aspect of the product, including
11  the end effect of the product upon the user.  *Zobmondo Entmt., LLC v. Falls Media,*
12  *LLC*, 602 F.3d 1108, 1116 (9th Cir. 2010); *Fortune Dynamic, Inc. v. Victoria's Secret*
13  *Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1034 (9th Cir. 2010); *World Wide Sales,*
14  *Inc. v. Church & Dwight Co., Inc.*, No. 08 C 1198, 2009 WL 3765881, at *6 (N.D. Ill.
15  Nov. 9, 2009); J. Thomas McCarthy, McCarthy on Trademark & Unfair Competition,
16  § 11:16 (5th ed. 2021).

17     33.    The term "thrive" is descriptive of Thrive Natural Care's skincare
18  products.  The ordinary dictionary definition of the term "thrive" includes include to
19  "prosper or flourish" and to "improve physically."  There is evidence that Thrive
20  Natural Care has represented to consumers that its products help to improve skin.  On
21  its website, Thrive Natural Care states that its skincare products are "regenerative,"
22  "empower your skin," and "'go under the hood' to work with your body to help skin
23  be healthy and resilient from the inside out," all of which are apparent characteristics
24  of Thrive Natural care's products that would help skin "thrive."

25     34.    As such, consumers will associate the term "thrive" with the result they
26  may expect from use of Thrive Natural Care's skincare products, namely, that those
27  products will help the user's skin to regenerate, be healthy – *i.e.*, to *thrive*.

28     35.    "Secondary meaning can be established in many ways, including (but not

-18-

1  limited to) direct consumer testimony; survey evidence; exclusivity, manner, and

2  length of use of a mark; amount and manner of advertising; amount of sales and

3  number of customers; established place in the market; and proof of intentional

4  copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*,

5  198 F.3d 1143, 1151 (9th Cir. 1999).

6       36.    Although Thrive Natural Care has used its mark in connection with its

7  skincare products since at least 2014, there is no evidence that the consuming public

8  associates products bearing the THRIVE mark as coming from Thrive Natural Care.

9  The mark THRIVE therefore has not acquired secondary meaning.

10       37.    Thrive Natural Care has not had meaningful commercial success.  Its net

11  revenues have ranged from $16,255 in 2014 to a high of $700,910 in 2020, and it has

12  incurred significant net losses every year.  It likewise has not spent significant

13  amounts on advertising throughout the years.

14       38.    Thrive Natural Care's social media following, another indicator of

15  commercial recognition and success, is also modest at best.  As of August 2021,

16  Thrive Natural Care had 7,237 followers on Instagram and 2,725 followers on

17  Facebook.  *Cf. Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 251 F. Supp. 3d 1288, 1304

18  (N.D. Cal. 2017), *aff'd,* 786 F. App'x 662 (9th Cir. 2019) (noting party's large social

19  media following indicative of success that may have led consumers to associate the

20  party's mark with a single source).

21       39.    Furthermore, although Thrive Natural Care has offered evidence of

22  limited media coverage and support from Amazon.com, most of this evidence has

23  come in the form of testimony from Thrive Natural Care's CEO Alex McIntosh, who

24  is not an impartial witness.  "Evidence of secondary meaning from a partial source

25  possesses very limited probative value." *Filipino Yellow Pages, Inc. v. Asian J.*

26  *Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

27       40.    There is also evidence in the record of third-party use of the term

28  "thrive," which undermines any secondary meaning the mark THRIVE may have

-19-

acquired.  For example, USPTO records reflect at least half a dozen third parties that have registered marks including the term "thrive" or some variation alone on in combination with other terms in connection with personal care products.  In the year since this litigation was commenced, Thrive Natural Care has also sent at least a dozen cease-and-desist letters to third parties that are currently using the term "thrive" or some variation alone on in combination with other terms in connection with personal care products, or that had plans to do so.  Thrive Natural Care is also involved in separate ongoing litigation with another company that has been in business since 2012 and utilizes the term "thrive" in connection with its personal care products. *See Thrive Natural Care, Inc. v. Le-vel Brands, LLC*, Case No. SA CV 21-02022-DOC-KES (C.D. Cal.).

41.    There is no dispute that Thrive Causemetics was unaware of Thrive Natural Care or the THRIVE mark when Thrive Causemetics adopted its brand name THRIVE CAUSEMETICS, and there is otherwise no evidence that Thrive Causemetics intentionally copied Thrive Natural Care.

42.    Moreover, Thrive Natural Care's own allegations in the Second Amended Complaint are inconsistent with any finding that Thrive Natural Care has achieved secondary meaning.  Thrive Natural Care alleges:  "TCI's multi-million dollar per year growth has enabled it to flood the market with advertising for its own skincare products such that consumers have now come to believe that plaintiff Thrive is related to or affiliated with defendant TCI and that Thrive's goods originate from TCI."  ECF No. 28 ¶ 4.  Because Thrive Natural Care claims that the consuming public associates products bearing a THRIVE mark not with Thrive Natural Care, but with Thrive Causemetics, Thrive Natural Care has effectively admitted that its mark does not have secondary meaning.

43.    Considering all of these circumstances, the Court concludes that the mark THRIVE has not acquired secondary meaning, and therefore, it is not a valid or protectable mark.  For this reason alone, Thrive Natural Care's federal trademark

infringement claim fails (as do its remaining claims, all of which require ownership of a valid mark, *see infra*).

44.     While the Court has concluded that the '942 Registration has been abandoned and that the THRIVE mark as reflected in the '303 Registration and at common law is not valid and protectable, even if it were to conclude otherwise, the Court finds that there is no likelihood of confusion, the second required element of Thrive Natural Care's trademark infringement claim.

45.     The "likelihood of confusion" analysis considers "whether a 'reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.'"  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 630 (9th Cir. 2005) (citations omitted).

46.     The Ninth Circuit has recognized two distinct forms of trademark infringement – forward confusion and reverse confusion.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 630 (9th Cir. 2005); *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *9 (C.D. Cal. June 8, 2015).

47.     "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 630 (9th Cir. 2005).

48.     In contrast, "reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 630 (9th Cir. 2005); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:10 (5th ed. 2021).

49.     Thrive Natural Care contends that this case involves both forward and reverse confusion.  However, there is no dispute that Thrive Causemetics is the junior user with respect to skincare products, and that its has substantial size, revenues, advertising expenditures, and social media following.  There is also no dispute that Thrive Natural Care is the senior user with respect to skincare products, and that it has

1   a far smaller presence than Thrive Causemetics in terms of size, revenues, advertising

2   expenditures, and social media following.

3       50.    Thrive Natural Care also claims that Thrive Causemetics has flooded and

4   swamped the market with advertising for Thrive Causemetics' products such that

5   Thrive Natural Care cannot possibly compete and consumers are likely to believe that

6   Thrive Natural Care's products originate from Thrive Causemetics.  ECF No. 28 ¶ 4.

7   Such allegations are consistent with a reverse confusion theory of the case.

8       51.    Furthermore, the handful of alleged instances of actual confusion

9   proffered by Thrive Natural Care reflect a belief that Thrive Natural Care's products

10   originate from or are sponsored by Thrive Causemetics, which is reverse confusion.

11   Although the Court previously referenced one instance of alleged actual confusion (in

12   which a consumer on Thrive Natural Care's Amazon.com webpage commented that

13   she had purchased mascara and eyeliner from "Thrive" before) as *possible* evidence of

14   forward confusion, *see* ECF No. 114 at 6, the Court has concluded that this statement

15   reflects, if anything, reverse conclusion.  Based upon the Court's reading, it appears

16   that the consumer had previously purchased products from Thrive Causemetics, and

17   believed that the products on Thrive Natural Care's Amazon.com page likewise came

18   from Thrive Causemetics.  That is evidence of reverse confusion.  *See Surfvivor*

19   *Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 630 (9th Cir. 2005) (noting that

20   "reverse confusion occurs when consumers dealing with the senior mark holder

21   believe that they are doing business with the junior one").

22       52.    Accordingly, based upon its review of the evidence, the Court finds that

23   the only plausible theory of liability in this case is of reverse confusion.

24       53.    To evaluate likelihood of confusion, courts in the Ninth Circuit consider

25   the eight factors in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.

26   1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain*

27   *Prods.*, 353 F.3d 792 (9th Cir. 2003), namely: (1) the strength of the mark; (2) the

28   proximity of the goods; (3) the similarity of the marks; (4) evidence of actual

confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines.

54.     The first *Sleekcraft* factor – strength of the mark – is determined with a two-part test concerning the mark's: (1) conceptual strength or distinctiveness, and (2) the "commercial strength, or marketplace recognition value." *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011).

55.     In a reverse confusion case, although "a strong junior mark may overwhelm the senior mark . . . the strength of the senior use's mark is still relevant, as the senior user must still show that its mark deserves protection." *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *11 (C.D. Cal. June 8, 2015); *see also Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1226 (C.D. Cal. 2004), *aff'd,* 114 F. App'x 921 (9th Cir. 2004); *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 992 (C.D. Cal. 2002).

56.     The conceptual strength of a mark is considered on a spectrum from weak to strong: descriptive (describes the associated product, and is protectable only upon a showing that consumers associate the term with a single source); suggestive (some imagination is required to associate the mark with the product); arbitrary (common term that has no commonly-known connection with the associated product); and fanciful (coined word or phrase that has no commonly-known meaning). *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 631 (9th Cir. 2005).

57.     A mark is descriptive if it describes some aspect of the product, including the end effect of the product upon the user. *Zobmondo Entmt., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1116 (9th Cir. 2010); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1034 (9th Cir. 2010); *World Wide Sales, Inc. v. Church & Dwight Co., Inc.*, No. 08 C 1198, 2009 WL 3765881, at *6 (N.D. Ill. Nov. 9, 2009); J. Thomas McCarthy, McCarthy on Trademark & Unfair Competition, § 11:16 (5th ed. 2021).

-23-

58.     The conceptual strength of a mark also takes into account the frequency of third-party use of the same or similar marks in connection with similar goods or services. *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224-25 (C.D. Cal. 2004), *aff'd*, 114 F. App'x 921 (9th Cir. 2004).

59.     "[E]ven 'an arbitrary mark may be classified as weak where there has been extensive third party use of similar marks on similar goods.'" *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224-25 (C.D. Cal. 2004), *aff'd*, 114 F. App'x 921 (9th Cir. 2004) (*quoting Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003)).

60.     As discussed above, the Court concludes that the term "thrive" is descriptive of Thrive Natural Care's skincare products; at most, however, it is suggestive, and therefore inherently weak.  *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987) (noting that "descriptive or suggestive marks are 'weak'," and affirming district court's conclusion that plaintiff's mark was suggestive and weak, notwithstanding plaintiff's claim that it was arbitrary and strong).

61.     The commercial strength of a mark "refers to its degree of recognition in the minds of the relevant customer class, and it is measured by advertising expenditures, length of exclusive use, and other indicia of actual marketplace recognition."  *Herbalife Int'l, Inc. v. Lumene N. Am., Inc.*, 2007 WL 4225776, at *5 (C.D. Cal. Oct. 15, 2007).

62.     Thrive Natural Care contends that its mark is commercially strong because the company was founded in 2012 and has made long and continuous use of the mark.  Although Thrive Natural Care has used the THRIVE mark for a long, continuous period, that use has not achieved much commercial success.  Thrive Natural Care's revenues and advertising expenditures have consistently remained low, and its net losses have continued to grow. Thrive Natural Care's social media following is also modest, with only 7,237 followers on Instagram and 2,725 followers on Facebook, and the third-party use of the term "thrive" previously discussed further

-24-

1   undermine the notion that the THRIVE mark has achieved meaningful marketplace

2   recognition.

3       63.    Although typically a strong junior user's ability to overwhelm the senior

4   user weighs in favor of the likelihood of confusion, when the senior user's mark is

5   conceptually weak, this factor actually weighs against confusion. *Moose Creek, Inc.*

6   *v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1226 (C.D. Cal. 2004), *aff'd,* 114

7   F. App'x 921 (9th Cir. 2004); *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 992 (C.D.

8   Cal. 2002).

9       64.    Thus, although Thrive Causemetics is a strong junior user, the

10  descriptiveness of the THRIVE mark, third-party use of the term "thrive" in

11  connection with similar goods, and Thrive Natural Care's modest marketplace

12  recognition render the THRIVE mark weak.  This factor weighs against the likelihood

13  of confusion.

14      65.    The second *Sleekcraft* factor – the proximity of the goods – considers

15  "whether customers are likely to associate the two product lines," including "whether

16  the buying public could reasonably conclude that the products came from the same

17  source." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 633 (9th Cir. 2005)

18  (internal quotations and citations omitted).

19      66.    "[T]he mere fact that two products or services fall within the same

20  general field . . . does not mean that the two products or services are sufficiently

21  similar to create a likelihood of confusion." *Icebreaker Ltd. v. Gilmar S.P.A.*, 911 F.

22  Supp. 2d 1099, 1104 (D. Or. 2012).

23      67.    The parties products do fall into the same general field of skincare.

24  However, products existing in the same general field is not sufficient, on its own, to

25  create a likelihood of confusion.

26      68.    On the contrary, the parties' products have significant differences.

27  Thrive Natural Care's products are made from regenerative Costa Rican "super-

28  plants" and are marketed having natural, "unique" properties that ameliorate the

-25-

effects of an active, outdoor lifestyle or facilitate shaving. These "super-plants" are also directly tied to Thrive Natural Care's sustainability mission and regenerative farming business model.  Although Thrive Natural Care does sell its products to women, its target consumers have historically been men:  its first three products were specifically for male grooming and skincare with earthy and masculine scents; its product packaging was expressly modeled as "male shoulders; and third-party articles featuring Mr. McIntosh have characterized Thrive Natural Care as a "men's skincare company."

69.    Thrive Causemetics primarily sells high-end luxury color cosmetics and some high-end skincare products, both principally marketed to women.  Thrive Causemetics also has a charitable giving mission primarily focused on female empowerment, and its brand name THRIVE CAUSEMETICS is intended to merge the company's philanthropic purpose with its products.  Thrive Causemetics markets its skincare as having the ability to beautify or improve the appearance of skin or to cleanse the skin after a makeup routine.

70.    There is meaningful distinction between the parties' respective products and target consumer that would render any confusion unlikely.  The parties' fundamental differences in target consumer along gender lines, as well the purpose of their respective products, would appeal to different groups of consumers.  Thus, this factor weighs against a likelihood of confusion.

71.    The third *Sleekcraft* factor – the similarity of the marks – "compares the two marks in terms of sight, sound, and meaning, considering the marks 'as a whole, as [they] appear in the marketplace.'" *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *12 (C.D. Cal. June 8, 2015) (citations omitted); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 633 (9th Cir. 2005); *S&B Filters Inc. v. R2C Performance Prods., LLC*, 2016 WL 8928314, *8 (C.D. Cal. Aug. 18, 2016).

72.    Presentation of the marks in starkly different typefaces and styles, and differences in shape, dimensions, and color patterns of packaging gives rise to

1    distinctly different commercial impressions. *Glow Indus., Inc. v. Lopez*, 273 F. Supp.

2    2d 1095, 1124 (C.D. Cal. 2003); *New Milani Grp., Inc. v. J.T. Bella, LLC*, 2013 WL

3    12116579,*10 (C.D. Cal. July 22, 2013).

4         73.    The parties' marks are not similar in sight, sound, or meaning.  Although

5    Thrive Causemetics' brand name includes the word "thrive," the parties' respective

6    marks must be considered as a whole.  Thrive Natural Care's mark is the word

7    THRIVE, and Thrive Causemetics' mark is THRIVE CAUSEMETICS – which are

8    distinct in sight and sound.  The meaning of the parties' respective marks is also

9    different.  The mark THRIVE is intended by Thrive Natural Care to refer to its

10   sustainability mission and regenerative farming model.  Thrive Causemetics' intends

11   its mark, which includes the coined term "Causemetics," to refer to its products and

12   core philosophy of charitable giving.

13        74.    Furthermore, the overall commercial impression of the parties' marks is

14   distinct. The overall color scheme of Thrive Natural care's packaging is brown, tan,

15   black, and red tones, with the "Thrive" mark in bold, chunky font.  In contrast, Thrive

16   Causemetics' packaging consistently uses white or teal tones, and the mark is in slim,

17   all lower-case black, white, teal, or silver font.

18        75.    The differences in sight, sound, meaning, and overall commercial

19   impression of the parties' respective marks indicates that the marks are not similar.

20   This factor weighs against a likelihood of confusion.

21        76.    The fourth *Sleekcraft* factor – actual confusion – considers the existence

22   and extent of evidence that the parties' marks have led to confusion.  *Oculu, LLC v.*

23   *Oculus VR, Inc.*, 2015 WL 3619204, at *12 (C.D. Cal. June 8, 2015).

24        77.    *De minimis* evidence of actual confusion is insufficient to demonstrate a

25   likelihood of confusion. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 633

26   (9th Cir. 2005); *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 999 (C.D. Cal. 2002).

27        78.    Thrive Natural Care contends that there is substantial evidence of actual

28   confusion, both in the form of individual instances in which consumers have confused

the parties, and in the form of survey evidence from Thrive Natural Care's expert Rob Wallace.

79.     Thrive Natural Care's expert Rob Wallace conducted two surveys using the format set forth in *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980).  In his surveys, Mr. Wallace showed participants a side-by-side array of four websites, one of which was Thrive Natural Care's and one of which was Thrive Causemetics', and asked participants whether any of the websites were put out by the same company.  Mr. Wallace selected the *Squirt* format for his survey design because consumers who are online shopping could have two web browsers open at the same time and view the parties' respective websites simultaneously, and because the parties' products allegedly appear side-by-side in the same online search engine results.

80.     Thrive Causemetics offered the survey of its expert Dr. Itamar Simonson, which showed minimal confusion as to the source, approval, affiliation, or sponsorship of Thrive Natural Care's products.  Dr. Simonson's survey focused on reverse confusion and utilized the format set forth in *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976).  In his survey, Dr. Simonson showed participants Thrive Natural Care's website, and asked the standard *Eveready* questions as to whether participants believed that the goods on the website had any association with any other company, and if so, to identify that company.  Dr. Simonson selected his survey format because the parties do not sell their products to consumers in the same online locations.

81.     With respect to the individual alleged instances of actual confusion, the Court agrees with Thrive Causemetics that alleged actual confusion stemming from Thrive Causemetics' color cosmetics products, which Thrive Natural Care does not challenge in this case, is irrelevant to the issue of whether consumers are actually confused between the parties' respective skincare products.  As such, the Court does not consider these alleged instances of actual confusion in its analysis.

-28-

82.     The remaining alleged instances of actual confusion are *de minimis* and not indicative of a likelihood of confusion.  The parties have coexisted since 2014, and there is evidence of less than a handful of instances of actual confusion, which is insufficient to demonstrate a likelihood of confusion.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 633 (9th Cir. 2005); *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 999 (C.D. Cal. 2002).

83.     Turning to the parties' survey evidence, the Court finds the survey conducted by Thrive Causemetics' expert Dr. Simonson more closely approximates market conditions in which consumers actually purchase the parties' products and that it properly focused on reverse confusion, and thus its results are highly probative of the absence of any likelihood of confusion.  *E & J Gallo v. Proximo Spirits, Inc.*, 2012 WL 273076, at *17 (E.D. Cal. Jan. 30, 2012), *aff'd sub nom.*, 583 F. App'x 632 (9th Cir. 2014); *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1028 (N.D. Cal. 2017), aff'd, 786 F. App'x 662 (9th Cir. 2019); *Kargo Glob., Inc. v. Advance Magazine Publishers, Inc.*, No. 06 Cv. 550(JFK), 2007 WL 2258688, at *8 (S.D.N.Y. Aug. 6, 2007)

84.     The survey conducted by Thrive Natural Care's expert Mr. Wallace, however, did not replicate the conditions in which consumers can purchase the parties' products.  Instead, it artificially made survey participants aware of both parties' marks by simultaneously showing participants the parties' respective websites, and then asked closed-ended questions about a potential affiliation between those websites.  Such an approach is not probative of the likelihood of confusion, as consumers could simply identify that the two websites use the term "thrive," which does not indicate that they are confused about the source, sponsorship, association, or affiliation of the parties' respective products.  *Hi-Tech Pharmaceuticals Inc. v. Dynamic Sports Nutrition, LLC*, 2021 WL 2185699, at *18-19 (N.D. Ga. May 28, 2021); *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 235-239, 241 (S.D.N.Y. 2010); *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 233 (3d Cir. 2017); *Pinnacle*

-29-

*Advertising & Mkt. Grp., Inc. v. Pinnacle Advertising & Mkt. Grp. Inc.*, 2019 WL 7376782, at * 3 (S.D. Fla. Sept. 26, 2019). Notably, Mr. Wallace has previously been criticized, and his testimony excluded, for using a *Squirt* survey in a manner – like here – that did not remotely replicate market conditions. *See Pinnacle*, 2019 WL 7376782, at *3-*7.

85.     Thrive Natural Care's evidence of actual confusion is either *de minimis* or unpersuasive, and thus this factor weighs against the likelihood of confusion.

86.     The fifth *Sleekcraft* factor – the marketing channels used – considers the location of where the goods or services are sold as well as the sales and marketing methods employed." *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *17 (C.D. Cal. June 8, 2015).

87.     When both parties advertise online, however, this factor is less relevant because "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *17 (C.D. Cal. June 8, 2015); *see also Herbalife Int'l, Inc. v. Lumene N. Am., Inc.*, 2007 WL 4225776, at *10-11 (C.D. Cal. Oct. 15, 2007).

88.     Even when both parties' products appear in the same online search engine results, this factor weighs against confusion where the parties do not sell their respective products through the same websites or the same brick-and-mortar stores. *Herbalife Int'l, Inc. v. Lumene N. Am., Inc.*, 2007 WL 4225776, at *9-10 (C.D. Cal. Oct. 15, 2007).

89.     Thrive Natural Care has proffered evidence that the parties' products appear together in online search engine results. However, there is no evidence of consumer confusion stemming from online search engine results – Mr. Wallace's (improper) survey did not rely upon search engine results as stimuli, and Thrive Natural Care has not otherwise offered evidence as to whether search engine results otherwise are likely to cause confusion. Moreover, Thrive Natural Care has offered

-30-

1  *no* evidence as to whether or how frequently consumers have searched for its products

2  using the search terms depicted in its search engine results.  As a result, the Court has

3  no basis to determine whether the results depicted occur with any appreciable

4  frequency (outside of the context in which they are manufactured for litigation).

5  Accordingly, the fact that the parties' products may appear together in online search

6  engine results is not probative of the likelihood of confusion question.

7       90.    Furthermore, the parties sell their products to consumers in distinct

8  channels.  Thrive Natural Care sells its products at brick-and-mortar retailers like

9  Whole Foods, and on Plaintiff's website thrivecare.co, and on Amazon.com and

10  Walmart.com.  Thrive Causemetics' does not sell its products in any of these

11  locations; instead, Thrive Causemetics sells its products only through its website

12  thrivecausemetics.com.

13       91.    Because the parties do not sell their respective products through the same

14  websites or the same brick-and-mortar stores, this factor weighs against the likelihood

15  of confusion.

16       92.    The sixth *Sleekcraft* factor – the type of goods and the degree of care

17  likely to be exercised by the purchaser – considers "the type of good or service offered

18  and the degree of care one would expect from "the average buyer exercising ordinary

19  caution." *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *16 (C.D. Cal. June 8,

20  2015) (citations omitted).

21       93.    Courts have routinely recognized that consumers exercise substantial care

22  with respect to skincare products.  *See, e.g.*, *Glow Indus. v. Lopez*, 252 F. Supp. 2d

23  962, 1001 (C.D. Cal. 2002); *Rodan & Fields, LLC v. Estee Lauder Co., Inc.*, 2010 WL

24  3910178, at *4 (N.D. Cal. Oct. 5, 2010); *Herbalife Int'l, Inc. v. Lumene N. Am., Inc.*,

25  2007 WL 4225776, at *10-11 (C.D. Cal. Oct. 15, 2007); *Clinique Labs., Inc. v. Dep*

26  *Corp.*, 945 F. Supp. 547, 556 (S.D.N.Y. 1996).  This factor therefore weighs against a

27  likelihood of confusion.

28       94.    The seventh *Sleekcraft* factor considers the defendant's intent in selecting

1  the mark. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 634 (9th Cir.

2  2005).

3      95.    "[W]here the alleged infringer adopted his mark with knowledge, actual

4  or constructive, that it was another's trademark," this factor favors a likelihood of

5  confusion. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 634 (9th Cir.

6  2005); *see also Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *18 (C.D. Cal.

7  June 8, 2015).

8      96.    An intent to confuse is not required; however, "intent to deceive is strong

9  evidence of a likelihood of confusion." *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL

10  3619204, at *18 (C.D. Cal. June 8, 2015) (citations omitted).

11      97.    "In a reverse confusion case, the intent inquiry must . . . focus on whether

12  the defendant was aware of the senior user's use of the mark in question, or whether

13  the defendant conducted an adequate name search for other companies marketing

14  similar goods or services under that mark." *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL

15  3619204, at *18 (C.D. Cal. June 8, 2015) (citation omitted).

16      98.    Thrive Natural Care contends that evidence of Thrive Causemetics'

17  intent includes that the USPTO refused Thrive Causemetics' attempts to register its

18  brand name as a trademark multiple times due to likelihood of confusion with the '942

19  Registration, and that Thrive Causemetics continued to utilize the THRIVE

20  CAUSEMETICS brand name after learning of the '942 Registration in a 2015

21  trademark clearance search report, after the parties April 2016 e-mail exchange, and

22  after receiving Thrive Natural Care's cease-and-desist letter in March of 2017.

23      99.    There is no dispute that Thrive Causemetics did not know about Thrive

24  Natural Care or the THRIVE mark when Thrive Causemetics' selected its brand

25  name.  Instead, the evidence demonstrates that Ms. Bodnar adopted THRIVE

26  CAUSEMETICS as the company's name after viewing a television program regarding

27  breast cancer survivors.  There is also no evidence that Thrive Causemetics selected

28  the THRIVE CAUSEMETICS brand name or continued its business operations with

1   the intent to infringe the THRIVE mark or to capitalize on Thrive Natural Care's

2   goodwill.

3       100.   Additionally, notwithstanding the arguments made by Thrive Natural

4   Care, Thrive Causemetics had several good faith reasons to believe that its use of the

5   brand name THRIVE CAUSEMETICS would not cause confusion, including (1) that

6   Thrive Causemetics' brand name includes the coined term "causemetics," for which

7   Thrive Causemetics owns a registered trademark; (2) distinctions in the parties'

8   branding of their respective goods; (3) distinctions in the parties' product offerings,

9   including that color cosmetics are Thrive Causemetics' primary product line; (4)

10  distinctions in the parties' target consumers in that Thrive Causemetics principally

11  targets female consumers whereas Thrive Natural Care principally targets male

12  consumers; (5) that Thrive Natural Care had not created meaningful market awareness

13  of its brand; and (6) extensive third-party use of the term "thrive."

14      101.   The parties had also coexisted since 2014, and there is no evidence that

15  Thrive Causemetics was aware of any actual confusion between them.

16      102.   This factor therefore does not support a likelihood of confusion.

17      103.   The eighth *Sleekcraft* factor – the likelihood of expansion of the product

18  lines – considers whether the "existence of the allegedly infringing mark is hindering

19  the plaintiff's expansion plans." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d

20  625, 634 (9th Cir. 2005)

21      104.   A plaintiff's "complete inability to adduce any concrete evidence of

22  expansion plans tilts this factor in favor of [the defendant]." *Surfvivor Media, Inc. v.*

23  *Survivor Prods.*, 406 F. 3d 625, 634 (9th Cir. 2005); *see also Oculu, LLC v. Oculus*

24  *VR, Inc.*, 2015 WL 3619204, at *15 (C.D. Cal. June 8, 2015) (citations omitted).

25      105.   Thrive Natural Care has not offered any concrete evidence of expansion

26  plans.  Its USPTO application to register the THRIVE mark for additional goods is

27  insufficient.  Thrive Causemetics also has no present plans to expand its product

28  offerings beyond high-end luxury color cosmetics or skincare.  This factor therefore

-33-

1    also weighs against a likelihood of confusion.

2         106.   In weighing the *Sleekcraft* factors, courts consider the totality of the

3    factors and their appropriate weight in light of the context of the case.  *Oculu, LLC v.*

4    *Oculus VR, Inc.*, 2015 WL 3619204, at *9 (C.D. Cal. June 8, 2015).

5         107.   The Court's review of the *Sleekcraft* factors has found that all of the

6    factors either weigh against the likelihood of confusion or are neutral.  Accordingly,

7    the Court finds that Thrive Natural Care has failed to prove that Thrive Causemetics'

8    use of its brand name is likely to cause confusion.

9         108.   As the Court finds that the THRIVE mark is not valid and protectable

10   and that there is no likelihood of confusion between the parties' respective marks and

11   products, Plaintiff has failed to prove its claim for federal trademark infringement.

12   **C.    False Designation of Origin (15 U.S.C. § 1125(a))**

13        109.   To prevail on a claim for false designation of origin, a plaintiff must

14   make the same showing as with its federal trademark infringement claim, namely that

15   (1) the plaintiff has a valid, protectable trademark; (2) that the plaintiff's trademark

16   was used by defendant; (3) in a way that is likely to cause confusion among ordinary

17   consumers as to the source, sponsorship, affiliation, or approval of the goods.  *See* 15

18   U.S.C. § 1125(a)(1)(A); *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th

19   Cir. 2014).

20        110.   For the same reasons that the Court has determined that Thrive Natural

21   Care failed to demonstrate federal trademark infringement, Thrive Natural Care has

22   also failed to prove its claim for false designation of origin.

23   **D.    Common Law Trademark Infringement and Unfair Competition**

24        111.   When trademark and unfair competition claims are based on the same

25   infringing conduct, courts apply the same analysis to both claims.  *Moroccanoil, Inc.*

26   *v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1161 (C.D. Cal. 2017); *Fleischer Studios, Inc.*

27   *v. A.V.E.L.A. Inc.*, 772 F. Supp. 2d 1155, 1167 (C.D. Cal. 2009).

28        112.   To prevail on a California common law trademark infringement claim, a

-34-

plaintiff must make the same showing as with its federal trademark infringement claim – that (1) the plaintiff has a valid, protectable trademark; (2) that the plaintiff's trademark was used by defendant; (3) in a way that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. *See* 15 U.S.C. § 1114; *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012); *Robinson v. Hunger Free America, Inc.*, 2018 WL 2563809, at * 3 (E.D. Cal. June 4, 2018); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1034 (N.D. Cal. 2008); *DeLuna v. Navarro*, 2019 WL 6139920, at * 5 (C.D. Cal. Sept. 6, 2019); *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009).

113.    For the same reasons that the Court has determined that Thrive Natural Care failed to demonstrate federal trademark infringement or false designation of origin, Thrive Natural Care has also failed to prove its claim for common law trademark infringement.  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012); *DeLuna v. Navarro*, 2019 WL 6139920, at * 5 (C.D. Cal. Sept. 6, 2019).

### E.    **Common Law Unfair Competition**

114.    When trademark and unfair competition claims are based on the same infringing conduct, courts apply the same analysis to both claims.  *Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1161 (C.D. Cal. 2017); *Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*, 772 F. Supp. 2d 1155, 1167 (C.D. Cal. 2009).

115.    To prevail on a claim of common law unfair competition, a plaintiff must prove by a preponderance of the evidence that the defendant committed either federal trademark infringement or federal unfair competition.  *Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*, 772 F. Supp. 2d 1155, 1167 (C.D. Cal. 2009); *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007); *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

116.    For the same reasons that the Court has determined that Thrive Natural

-35-

Care failed to demonstrate federal trademark infringement or false designation of origin, Thrive Natural Care has also failed to prove its claim for common law unfair competition. *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

### F.   Unfair Competition (Cal. Bus. &. Prof. Code § 17200 *et seq.*)

117.   When trademark and unfair competition claims are based on the same infringing conduct, courts apply the same analysis to both claims. *Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1161 (C.D. Cal. 2017); *Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*, 772 F. Supp. 2d 1155, 1167 (C.D. Cal. 2009).

118.   To prevail on a claim of statutory unfair competition under California Business & professions Code § 17200 *et seq.*, a plaintiff must prove by a preponderance of the evidence that the defendant committed either federal trademark infringement or federal unfair competition. *See Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1161 (C.D. Cal. 2017); *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994).

119.   For the same reasons that the Court has determined that Thrive Natural Care failed to demonstrate federal trademark infringement or false designation of origin, Thrive Natural Care has also failed to prove its claim for statutory unfair competition. *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994).

### G.   Willfulness

120.   To establish willful infringement, a plaintiff must prove by a preponderance of the evidence that the defendant acted with a deliberate intent to exploit the advantage of an established mark or to capitalize on the plaintiff's goodwill. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015); *Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *7-8 (C.D. Cal. Sept. 5, 2019).

121.   "Willful infringement carries a connotation of deliberate intent to deceive. . . . Willfulness and bad faith require a connection between a defendant's

1  awareness of its competitors and its actions at those competitors' expense." *Lindy Pen*

2  *Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (citations omitted).

3      122.   Accordingly, a knowing use in the belief that there is no confusion does

4  not constitute bad faith. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406

5  (9th Cir. 1993).

6      123.   There is no dispute that Thrive Causemetics did not know about Thrive

7  Natural Care when Thrive Causemetics' selected its brand name.  Instead, the

8  evidence demonstrates that Ms. Bodnar adopted THRIVE CAUSEMETICS as the

9  company's name after viewing a television program regarding breast cancer survivors.

10     124.   Thrive Natural Care claims that even though Thrive Causemetics did not

11 know of Thrive Natural Care when Thrive Causemetics adopted its brand name,

12 Thrive Causemetics nonetheless willfully infringed when it added skincare products to

13 its product line in October 2018, when Thrive Causemetics did know of Thrive

14 Natural Care and the THRIVE mark.  Thrive Natural Care further claims that evidence

15 of Thrive Causemetics' willfulness includes that the USPTO refused Thrive

16 Causemetics' attempts to register its brand name as a trademark multiple times due to

17 likelihood of confusion with the '942 Registration, and that Thrive Causemetics

18 continued to utilize the THRIVE CAUSEMETICS brand name after learning of the

19 '942 Registration in a 2015 trademark clearance search report, after the parties April

20 2016 e-mail exchange, and after receiving Thrive Natural Care's cease-and-desist

21 letter in March of 2017.

22     125.   There is no evidence, however, that Thrive Causemetics selected the

23 THRIVE CAUSEMETICS brand name or continued its business operations with the

24 deliberate intent to deceive or to capitalize on Thrive Natural Care's goodwill.

25     126.   Additionally, Thrive Causemetics had several good faith reasons to

26 believe that its use of the brand name THRIVE CAUSEMETICS would not cause

27 confusion, including (1) that Thrive Causemetics' brand name includes the coined

28 term "causemetics," for which Thrive Causemetics owns a registered trademark; (2)

-37-

distinctions in the parties' branding of their respective goods; (3) distinctions in the parties' product offerings, including that color cosmetics are Thrive Causemetics' primary product line; (4) distinctions in the parties' target consumers in that Thrive Causemetics principally targets female consumers whereas Thrive Natural Care principally targets male consumers; (5) that Thrive Natural Care had not created meaningful market awareness of its brand; and (6) extensive third-party use of the term "thrive."

127.   The parties had also coexisted since 2014, and there is no evidence that Thrive Causemetics was aware of any actual confusion between them.

128.   As the Court has determined that Thrive Natural Care failed to demonstrate federal trademark infringement or false designation of origin, it need not reach Thrive Natural Care's claim that any infringement was willful.  Even if it did, however, because there is no evidence of deliberate intent to deceive or trade on Thrive Natural Care's goodwill, and in light of Thrive Causemetics' good faith belief that its brand name would not cause confusion, Plaintiff has failed to prove willful infringement.

## H.   Laches

129.   Laches is a defense to both Lanham Act claims and related state law claims.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).

130.   To establish a laches defense, the defendant must prove by a preponderance of the evidence: (1) unreasonable delay by the plaintiff in bringing suit, and (2) prejudice to the defendant. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).

131.   The Lanham Act contains no explicit statute of limitations; thus, courts borrow the analogous state time period to evaluate a laches defense.  *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1139 (9th Cir. 2006).

132.    The analogous state time period here is the four-year statute of limitations for statutory unfair competition under California Business & Professions Code § 17200.  Cal. Bus. & Prof. Code § 17208.

133.    The limitations period runs from the time the plaintiff knew or should have known about his cause of action.  If the plaintiff files suit outside this analogous period, courts have often presumed that laches is applicable.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836, 838 (9th Cir. 2002).

134.    Courts have found periods of three years and four and one-half years to constitute unreasonable delay.  *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1190 (N.D. Cal. 2015); *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 751-53 (S.D.N.Y. 1997).

135.    Courts have recognized "economic prejudice," meaning the investment of time and resources in promoting a mark and corresponding brand identity, as sufficient to meet the "prejudice" requirement for laches.  *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1194 (N.D. Cal. 2015); *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 753 (S.D.N.Y. 1997).

136.    "[A] defendant can make the required showing of prejudice by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights*." Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F. 3d 1088, 1105 (9th Cir. 2004).

137.    Under the doctrine of "progressive encroachment," a trademark owner need not sue in the face of *de minimis* infringement by the junior user. The owner may wait until there is direct competition between the parties and their products, through the same channels, and causing actual market confusion.  *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1110, 80 (9th Cir. 2006)

138.    Normal growth of a company, however, is not progressive encroachment. *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1190 (N.D. Cal. 2015).

-39-

139.   Thrive Natural Care's delay of four and one-half years to initiate the instant lawsuit was unreasonable and the doctrine of progressive encroachment does not apply.

140.   Although Thrive Causemetics did not begin selling skincare until October 2018, Thrive Natural Care knew of Thrive Causemetics' use of the THRIVE CAUSEMETICS brand name in April 2016 in connection with "female cosmetics," which Thrive Natural Care believed overlapped with its existing products such that Thrive Causemetic' use of the term "thrive" was infringing.

141.   Since April 2016, Thrive Natural Care has repeatedly expressed its belief that Thrive Causemetics' use of the term "thrive" in connection with Thrive Causemetics' goods was infringing, including in communications with third parties, internal communications, and by sending Thrive Causemetics a cease-and-desist letter in March 2017.  Thrive Natural Care also appeared to believe that confusion was already occurring and that Thrive Causemetics was negatively impacting Thrive Natural Care's ability to market its products.  Thrive Natural Care also appeared to appreciate the consequences of failing to promptly act against potential infringers, but still took no action against Thrive Causemetics until October 2020.

142.   Thrive Causemetics suffered economic prejudice as a result of Thrive Natural Care's delay.  During the delay, Thrive Causemetics made substantial investments in its brand and products, including millions in advertising expenditures and development of new products, which constitutes economic prejudice.  *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1194 (N.D. Cal. 2015); *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 753 (S.D.N.Y. 1997).

I.   **Disgorgement of Profits and Enhanced Damages**

143.   The Lanham Act "provides for an award, subject to equitable principles, of 'any damages sustained by the plaintiff . . . .' A plaintiff must prove both the fact and the amount of damage." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *see also* 15 U.S.C. § 1117(a).

144.   The plaintiff shall be required to prove defendant's gross revenues from infringing sales by a preponderance of evidence.  15 U.S.C. § 1117(a).

145.   The defendant has the burden of proving any deductible costs, including overhead expenses, that are of actual assistance in the production, distribution, or sale of the infringing products.  15 U.S.C. § 1117(a); *Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993).

146.   If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. 15 U.S.C. § 1117(a).

147.   An award of the defendant's profits shall constitute compensation and not a penalty. 15 U.S.C. § 1117(a).

148.   "Disgorging the infringer's significant profits without proof of trading off the mark holder's goodwill would still amount to a penalty to the infringer and a windfall to the trademark holder, who has only a 'relatively obscure name' to appropriate, even if the infringer's conduct was otherwise intentional." *Spin Master, Ltd. v. Zobmondo Entertainment, LLC*, 944 F. Supp. 2d 830, 848-49 (C.D. Cal. 2012); *see also Novadaq Technologies, Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 WL 9028123, at *2 (N.D. Cal. Dec. 16, 2015); *Scat Enter., Inc. v. FCA US LLC*, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017).

149.   Moreover, although a plaintiff need not demonstrate actual harm to obtain an award of profits, where a plaintiff does not produce "any proof of past injury or causation, [a] district court ha[s] no way to determine with any certainty what award would be compensatory."  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011).

150.   As the Court has determined that Thrive Natural Care failed to demonstrate federal trademark infringement or false designation of origin, Thrive Natural Care is not entitled to disgorgement of Thrive Causemetics' profits or

enhanced damages.  15 U.S.C. § 1117(a).  In any event, there is no evidence that Thrive Causemetics intended to trade off on Thrive Natural Care's goodwill, and Thrive Natural Care has further failed to present any proof of past injury or causation in a manner that would allow the Court to determine with any certainty what award would be compensatory.  In light of Thrive Natural Care's relatively obscure name and minimal market recognition, and the absence of evidence of past injury or causation, disgorgement of profits or enhanced damages in this case would constitute a windfall rather than compensation.

## J.   Permanent Injunction

151.   To obtain a permanent injunction, a plaintiff must prove by a preponderance of evidence "(1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) that an injunction will advance the public interest." *Wecosign, Inc. v. IFG Holdings, Inc*., 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012).

152.   As the Court has determined that Thrive Natural Care failed to demonstrate federal, common law, or statutory trademark infringement or unfair competition, Thrive Natural Care is also not entitled to a permanent injunction. *Binder v. Disability Group, Inc.*, 2009 WL 10672976, at *3 (C.D. Cal. Feb. 3, 2009).

## K.   Attorneys' Fees and Costs

153.   The Lanham Act authorizes an award of reasonable attorneys' fees to the prevailing party "in exceptional cases."  15 U.S.C. § 1117(a).

154.   An "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

155.   Courts must consider the totality of circumstances when deciding whether a case is exceptional.  *Globefill Inc. v. Elements Spirits, Inc.*, 2017 WL

6520589 (C.D. Cal. 2017), *aff'd,* 756 Fed. App'x 764 (9th Cir. 2019); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc).

156.   A non–exhaustive list of factors that may be considered under the totality of the circumstances approach includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014) (internal quotations and citation omitted).

157.   A finding of intentional or willful infringement alone is insufficient to make a case exceptional. *See Globefill Inc. v. Elements Spirits, Inc.*, 2017 WL 6520589 (C.D. Cal. 2017), *aff'd,* 756 Fed. App'x 764 (9th Cir. 2019); *Chronicle Pub. Co. v. Legrand*, 24 U.S.P.Q.2d 1881, 1992 WL 420808, *9-10 (N.D. Cal. 1992).

158.   Having considered the totality of this case, there are no circumstances that render it exceptional, and thus, attorneys' fees are unavailable.  15 U.S.C. § 1117(a).

159.   Additionally, as the Court has determined that Thrive Natural Care failed to demonstrate federal, common law, or statutory trademark infringement or unfair competition, Thrive Natural Care is not the prevailing party and therefore not entitled to an award of attorneys' fees.  15 U.S.C. § 1117(a).

**L.   Pre-Judgment Interest**

160.   To obtain pre-judgment interest, the prevailing party has the burden or proving by a preponderance of the evidence that the balance of equities favors awarding pre-judgment interest. *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013); *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F. 3d 948, 963 (9th Cir. 2018).

161.   The interest rate pre-judgment interest is generally the same as post-judgment interest under 28 U.S.C. § 1961, unless the court finds, on substantial evidence, that the equities of that particular case require a different rate. *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F. 3d 948, 963 (9th Cir. 2018).

-43-

162.   Pre-judgment interest is an element of compensation, and not a penalty. *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013).

163.   As the Court has determined that Thrive Natural Care failed to demonstrate federal, common law, or statutory trademark infringement or unfair competition, and is therefore not entitled to any monetary relief, there is no basis for pre-judgment interest.  *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F. 3d 948, 963 (9th Cir. 2018).

## M.   Post-Judgment Interest

164.   The award of post-judgment interest on a district court judgment is mandatory.  28 U.S.C. § 1961; *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013).

165.   As the Court has determined that Thrive Natural Care failed to demonstrate federal, common law, or statutory trademark infringement or unfair competition, and is therefore not entitled to any monetary relief, there is no basis for post-judgment interest.  28 U.S.C. § 1961.

## III.   CONCLUSION

Thrive Natural Care failed to prove its claims for federal, common law, and statutory trademark infringement and unfair competition against Thrive Causemetics. Additionally, Thrive Natural Care's claims are barred in whole by the equitable doctrine of laches.  Accordingly, judgment shall be entered in favor of Thrive Causemetics and against Thrive Natural Care.

DATED:  October 8, 2021          SIDLEY AUSTIN LLP

By: */s/ Rollin A. Ransom*
Rollin A. Ransom

*Attorneys for Defendant*
*Thrive Causemetics, Inc.*

-44-