Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff*
*Thrive Natural Care, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THRIVE NATURAL CARE, INC.,

Plaintiff,

v.

THRIVE CAUSEMETICS, INC.,

Defendant.

Case No. 2:20-CV-9091-PA-AS

**PLAINTIFF THRIVE NATURAL CARE, INC.'S AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]**

**Judge:** Hon. Percy Anderson
**Trial Date**: November 9, 2021
**Final Pretrial Conf.:** October 15, 2021
**Courtroom:** 9A

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. CLAIMS AND DEFENSES ........ 1

A. Summary Statement of Claims Thrive Natural Care Has Pleaded and Plans to Pursue ........ 2

B. Elements Required to Establish Thrive Natural Care's Claims ........ 2

C. Brief Description of Key Evidence in Support of Thrive Natural Care's Claims ........ 7

1. Claim 1: Federal Trademark Infringement ........ 7

2. Claim 2: Federal Unfair Competition ........ 10

3. Claim 3: Common Law Trademark Infringement ........ 10

4. Claim 4: Common Law Unfair Competition ........ 10

5. Claim 5: Unfair Competition Under Cal. Bus. & Prof. Code § 17200 ........ 10

6. Willful Infringement ........ 10

7. Relief: Disgorgement of Defendant's Profits ........ 11

8. Relief: Permanent Injunction ........ 11

9. Relief: Enhanced Damages ........ 11

10. Relief: Attorneys' Fees and Costs ........ 12

11. Relief: Attorneys' Fees and Costs ........ 12

12. Relief: Pre- and Post-Judgment Interest ........ 12

D. Summary Statement of Affirmative Defenses Thrive Causemetics Has Pleaded and Plans to Pursue ........ 12

E. Elements Required to Establish Thrive Causemetics' Affirmative Defenses ........ 12

F. Brief Description of Key Evidence in Support of Thrive Natural Care's Opposition to Affirmative Defenses ........ 14

The key evidence that Thrive Natural Care will introduce in support of its opposition to Thrive Causemetics' affirmative defenses is identified below. ........ 14

1. Laches ........ 14

2. Abandonment ........ 14

G. Similar Statements for Third Parties ........ 15

H. Anticipated Evidentiary Issues and Thrive Natural Care's Position ........ 15

I. Identification of Issues of Law and Thrive Natural Care's Position ........ 16

1. Whether "Thrive" is merely descriptive of skincare products ........ 16

2. Facts that permit a finding of willful infringement ........ 17

3. When the clock starts on laches defense ........ 18

4. Standard of proof for abandonment ........ 20

**5. Validity of Ecomundi assignment and goodwill definition** .......... 21

**III. BIFURCATION OF ISSUES .......... 22**

**IV. JURY TRIAL OR BENCH TRIAL .......... 22**

**V. ATTORNEYS' FEES .......... 23**

**VI. ABANDONMENT OF ISSUES .......... 24**

# TABLE OF AUTHORITIES

Cases

*Am. Tire Distributors, Inc. v. Am. Tire Corp.*, No. CV-08-02971-MMM-JTLX, 2009 WL 10672268 (C.D. Cal. June 10, 2009) ........ 16

*Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013) ........ 7

*Bellagio Jewelry, Inc. v. Croton Watch Co., Inc.*, No. CV 06–6672, 2008 WL 3905895 (C.D. Cal. Aug. 20, 2008) ........ 5, 18

*Binder v. Disability Group, Inc.*, 772 F.Supp. 2d 1172 (C.D. Cal. 2011) ........ 6

*Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036 (9th Cir. 1999) ... 17

*Capbran Holdings, LLC v. Firemall LLC*, No. CV-16-02980-DSFA-FMX, 2017 WL 4769434 (C.D. Cal. Aug. 23, 2017) ........ 5, 18

*Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F.Supp.2d 1227 (D. Nev. 2006) ........ 14, 20

*Cities Realty, Inc. v. Brunet*, No. B241999, 2013 WL 4017121 (Cal. Ct. App. Aug. 6, 2013) ........ 3

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) ........ 4

*Coach, Inc. v. Celco Customs Servs. Co.*, No. CV1110787MMMFMOX, 2012 WL 12883972 (C.D. Cal. Oct. 31, 2012) ........ 17

*Coach, Inc. v. Celco Customs Servs. Co.*, No. CV-1110787-MMM-FMOX, 2012 WL 12883972 (C.D. Cal. Oct. 31, 2012) ........ 4

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038 (N.D. Cal. 2010) ...... 5, 18

*Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210 (9th Cir. 2003).. 4, 16, 17

*eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV00-00374-VAP-EEX, 2001 WL 456404 (C.D. Cal. Mar. 5, 2001) ........ 13, 20

*Fin. Exp. LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160 (C.D. Cal. 2008) ........ 16

*Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*, 772 F. Supp. 2d 1155 (C.D. Cal. 2009)... 4

*Hydramedia Corp. v. Hydra Media Grp., Inc.*, No. CV-06-05293-DDP-JTLX, 2008 WL 11336118 (C.D. Cal. Dec. 29, 2008), aff'd, 392 F. App'x 522 (9th Cir. 2010) ........ 5, 17

*Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866 (9th Cir. 2002) ........ 16

*Juan Pollo Fran., Inc. v. B & K Pollo Enterprises, Inc.*, ED-CV-13-2010J-GBSPX, 2015 WL 10695881 (C.D. Cal. Aug. 6, 2015) ........ 3

*Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326 (9th Cir. 1984) ........ 15

*Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278 (C.D. Cal. 1992) ........ 3

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042 n.8 (9th Cir. 1988) ........ 16

*Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, No. SA-CV-171552DOC-JDEX, 2018 WL 5099277 (C.D. Cal. July 10, 2018) ........ 19

*M2 Software, Inc. v. Madacy Ent.*, No. CV 00-2853 AHM RZX, 2003 WL 25667610 (C.D. Cal. Jan. 23, 2003) ........ 18

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 n.11 (9th Cir. 2006) ........ 13, 18

*Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157 (C.D. Cal. 2017)............4
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014).............7
*Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F. 3d 948 (9th Cir. 2018) .....................7
*Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564 (C.D. Cal. Sept. 13, 2010) ..................................13, 20
*PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431,(C.D. Cal. 1999)...............................6
*Philip Morris v. Liu*, 489 F. Supp. 2d 1119 (C.D. Cal. 2007)....................................4
*Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272 (9th Cir. 1982) ........................................................................................................................6
*Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150 (9th Cir.1982) ........................................................................................14, 20
*S. California Darts Ass'n v. Zaffina*, 762 F.3d 921 (9th Cir. 2014) ...........................3
*Taco Cabana Int., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113 (5th Cir. 1991) ...............6
*Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102 (9th Cir. 2006)..........................................................................13, 19, 20
*Vacation Rental Partners, LLC v. VacayStay Connect, LLC*, No. 15 CV 10656, 2017 WL 1150806 (N.D. Ill. Mar. 28, 2017).......................................................21
*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072 (C.D. Cal. 2012)...........6

**Statutes**

15 U.S.C. § 1117(a) ........................................................................................6, 7
15 U.S.C. § 1125(a)(1)(A)...................................................................................3
15 U.S.C. §§ 1060(a)(1) ...................................................................................15
28 U.S.C. § 1961..................................................................................................8

**Other Authorities**

*Winnebago Indus., Inc.*, 207 USPQ ¶ 335 (TTAB June 30, 1980) ..........................23

## I. INTRODUCTION

Pursuant to the Court's Order dated October 7, 2021 (Dkt. 115), and the preceding Order on Summary Judgment (Dkt. 114), Plaintiff Thrive Natural Care, Inc. ("Thrive Natural Care") files this amended Memorandum of Contentions of Fact and Law.

Defendant Thrive Causemetics, Inc. ("Thrive Causemetics") made the cold calculation in 2018 to expand into the skincare market with knowledge that doing so would infringe Plaintiff Thrive Natural Care's registered trademarks. Thrive Causemetics knew its expansion put it into direct competition with Thrive Natural Care using an almost identical brand: "THRIVE" for skincare versus "THRIVE causemetics" for skincare.

While Thrive Causemetics attempted twice to get permission to use Thrive Natural Care's "Thrive" mark for makeup products, those requests were denied. But Thrive Causemetics wanted to use the "Thrive" mark, and it wanted to do so without paying anything. When the parties' CEOs discussed a license in 2019, Thrive Natural Care asked Thrive Causemetics to propose a royalty percentage. Thrive Causemetics broke off the negotiation and never responded, deciding to keep infringing and in fact broadly *expanding* its skincare line from one skincare product in 2018 to over a dozen in 2020. Thrive Causemetics has now spent millions of dollars on misleading ads wrongfully tying the "THRIVE" mark to Thrive Causemetics' new skincare line and has sold over $20 million of infringing THRIVE-branded skincare products. Thrive Natural Care was left with no choice but to bring this lawsuit to stop Thrive Causemetics' knowing, intentional infringement and the continued expansion of its skincare line.

## II. CLAIMS AND DEFENSES

Thrive Natural Care has pleaded and will pursue the following claims supported by the evidence identified below.

/ / /

**A. <u>Summary Statement of Claims Thrive Natural Care Has Pleaded and Plans to Pursue</u>**

Thrive has pleaded and plans to pursue at trial the following claims, each against Thrive Causemetics:

1. <u>Claim 1:</u> Thrive Causemetics' use of the name "Thrive Causemetics" on skincare products has infringed either or both of Thrive Natural Care's federally registered trademarks for the term "Thrive" on skincare products in violation of the Lanham Act.
2. <u>Claim 2:</u> Thrive Causemetics' use of the "Thrive Causemetics" brand on skincare products constitutes a false designation of origin and is unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).
3. <u>Claim 3:</u> Thrive Causemetics' use of the term "Thrive Causemetics" on skincare products violates Thrive Natural Care's trademark rights established by senior use under California common law.
4. <u>Claim 4:</u> Thrive Causemetics' infringement constitutes unfair competition under California common law.
5. <u>Claim 5:</u> Thrive Causemetics' infringement constitutes unfair competition in violation of Cal. Bus. & Prof. Code § 17200.

**B. <u>Elements Required to Establish Thrive Natural Care's Claims</u>**

<u>Claim 1:</u> The elements required to establish Thrive Natural Care's claim for infringement of its registered Thrive trademarks are:

1. The term "Thrive" is a valid, protectable trademark for skincare products;
2. Thrive Natural Care owns the "Thrive" trademark for skincare products; and
3. Thrive Causemetics use of the term "Thrive Causemetics" on skincare products is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

*See* Ninth Circuit Manual of Model Civil Jury Instructions ("9th Cir. CJI) No. 15.6.

Claim 2: The elements required to establish Thrive Natural Care's claim for false designation of origin in violation of 15 U.S.C. § 1125(a) are:

1. The term "Thrive" is a valid, protectable trademark for skincare products;
2. Thrive Natural Care owns the "Thrive" trademark for skincare products; and
3. Thrive Causemetics use of the term "Thrive Causemetics" on skincare products is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

*See* 15 U.S.C. § 1125(a)(1)(A); *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014).

Claim 3: The elements required to establish Thrive Natural Care's claim for infringement of the Thrive mark under California common law are:

1. Thrive Natural Care began using the "Thrive" mark on skincare products before Thrive Causemetics began using the "Thrive Causemetics" mark on skincare products; and
2. There is a likelihood that the "Thrive Causemetics" mark would be confused with Thrive Natural Care's "Thrive" mark.

*See Juan Pollo Fran., Inc. v. B & K Pollo Enterprises, Inc.*, ED-CV-13-2010J-GBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015) ("To state a claim of trademark infringement under California common law, a plaintiff need allege only 1) their prior use of the trademark and 2) the likelihood of the infringing mark being confused with their mark."); *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 289 (C.D. Cal. 1992) ("California common law also provides that 'whosoever first adopts and uses a trade name, either within or without the state, is its original owner.'"); *Cities Realty, Inc. v. Brunet*, No. B241999, 2013 WL 4017121, at *4 (Cal. Ct. App. Aug. 6, 2013) ("To prove liability for [common law] trademark

infringement, plaintiff need only prove defendants used the mark plaintiff used first and continuously.”).

Claim 4: The element required to establish Thrive Natural Care’s claim for unfair competition under California common law is:

1. Thrive Natural Care must prove by a preponderance of the evidence that Thrive Causemetics engaged in either federal trademark infringement or federal unfair competition.

*See Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*, 772 F. Supp. 2d 1155, 1167 (C.D. Cal. 2009); *Philip Morris v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007).

Claim 5: The element required to establish Thrive Natural Care’s claim for unfair competition under California Bus. & Prof. Code § 17200 is:

1. Thrive Natural Care must prove by a preponderance of the evidence that Thrive Causemetics engaged in either federal trademark infringement or federal unfair competition.

*See Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1161 (C.D. Cal. 2017); *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994).

Willful Infringement: The element required to establish that Thrive Causemetics’ infringement or unfair competition was willful is:

1. Thrive Causemetics knowingly or recklessly disregarded Thrive Natural Care’s trademark rights.

*See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1219 (9th Cir. 2003) (finding found willful trademark infringement where the defendant “utilized a mark that was similar to that of its competitor, was informed of actual confusion, and deliberately chose not to make a reasonable effort to ascertain whether it might actually be infringing.”); *Coach, Inc. v. Celco Customs Servs. Co.*, No. CV-1110787-MMM-FMOX, 2012 WL 12883972, at *6 (C.D. Cal. Oct. 31, 2012) (“Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with ‘an indifference to plaintiff’s rights’—in other words,

that defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it."); *Bellagio Jewelry, Inc. v. Croton Watch Co., Inc.*, No. CV 06–6672, 2008 WL 3905895, at *13 (C.D. Cal. Aug. 20, 2008) ("After receiving the cease and desist letter, [defendant] was put on actual notice, which logically demonstrates that any infringing conduct thereafter was done willfully."); *Hydramedia Corp. v. Hydra Media Grp., Inc.*, No. CV-06-05293-DDP-JTLX, 2008 WL 11336118, at *3 (C.D. Cal. Dec. 29, 2008), aff'd, 392 F. App'x 522 (9th Cir. 2010) (holding "the Court finds that a showing of 'objective recklessness' is sufficient to demonstrate willful infringement" and noting that standard is consistent with Ninth Circuit decisions "which permit circumstantial evidence of reckless behavior even where the infringing party ignores objective evidence of infringement."); *Capbran Holdings, LLC v. Firemall LLC*, No. CV-16-02980-DSFA-FMX, 2017 WL 4769434, at *6 (C.D. Cal. Aug. 23, 2017) ("A defendant may be liable for willful trademark . . . infringement for knowing conduct or willful blindness."); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) ("Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark.").

Relief of Disgorgement of Profits: The element required to establish that Thrive Natural Care is entitled to disgorgement of Thrive Causemetics' profits on sales of infringing skincare products is:

1. Thrive Causemetics' gross revenues from sales of skincare products. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").

Relief of Permanent Injunction: The elements required to establish that Thrive Natural Care is entitled to a permanent injunction are:

1. Actual success on the merits;
2. A likelihood of irreparable injury if injunctive relief is not granted;

3. A balance of hardships favoring Thrive Natural Care; and

4. That an injunction will advance the public interest.

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1084 (C.D. Cal. 2012).

Relief of Enhanced Damages Under 15 U.S.C. § 1117(a): The elements required to establish that Thrive Natural Care is entitled to an award of up to treble damages are:

1. An enhancement provides proper redress where Thrive Natural Care was otherwise undercompensated by awarded damages, such as where there is a potential harm from lingering misimpressions that is unlikely to be fully captured by lost profits; *or*

2. Enhancing damages would advance the cause of deterring the defendant and others similarly situated from repeating the type of unfair and deceptive behavior.

*See* 15 U.S.C. § 1117(a); *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) ("15 U.S.C. § 1117(a) confers authority on the court to treble defendant's profits in the event that compensatory damages are inadequate to deter future infringing conduct."); *Binder v. Disability Group, Inc.*, 772 F.Supp. 2d 1172, 1182-83 (C.D. Cal. 2011) (holding "when a defendant acts willfully in its infringement, the Court may award up to treble damages to the plaintiff if it finds that lost profits are inadequate" and awarding double damages); *Taco Cabana Int., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991) (damages enhancement provides "proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct."); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274-75 (9th Cir. 1982) (explaining the Ninth Circuit has issued a "mandate . . . to make willful trademark infringement unprofitable" and noting deterrence value of enhanced award).

Relief of Award of Attorneys' Fees and Costs: The element required to

establish that Thrive Natural Care is entitled to an award of attorneys' fees and costs is:

1. This is an "exceptional case," meaning one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.

*See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180-81 (9th Cir. 2016).

Relief of Pre- and Post-Judgment Interest on Damages Awards: The elements required to establish entitlement to an award of interest are:

1. The award of post judgment interest on a district court judgment is mandatory.
2. For prejudgment interest, the element that must be established is that the balance of the equities favors awarding prejudgment interest.

*See* 28 U.S.C. § 1961; *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013); *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F. 3d 948, 963 (9th Cir. 2018).

### C. Brief Description of Key Evidence in Support of Thrive Natural Care's Claims

The key evidence that Thrive Natural Care will introduce in support of its claims is identified below.

#### 1. Claim 1: Federal Trademark Infringement

- Evidence, including emails, correspondence, documents, and testimony demonstrating the process in creating the "Thrive" brand name for Thrive Natural Care's products and relation of Thrive name to skincare products.
- Trademark applications and registration certificates for each of the Thrive Registrations and the statement concerning incontestability of the '942 Registration from the USPTO.

- Evidence, including emails, correspondence, documents, and testimony demonstrating the history of Thrive Natural Care and its Thrive-branded skincare products, including but not limited to the historical and current sales, marketing and sales channels, and customers of Thrive Natural Care.
- Evidence, including emails, correspondence, documents, and testimony showing Thrive Natural Care has marketed and sold its Thrive skincare products under the Thrive trademark continuously since 2013.
- Evidence, including emails, correspondence, documents, and testimony demonstrating that Thrive Natural Care applied for and received two federal trademark registrations for the Thrive mark.
- Evidence, including emails, correspondence, documents, and testimony demonstrating that Ecomundi Ventures, LLC undertook substantial planning activities relating to the Thrive products and Thrive mark through 2012 and into 2013, and that Ecomundi transferred all goodwill and the entire business relating to the Thrive mark to Thrive Natural Care in a May 2013 assignment.
- Evidence, including emails, documents, and testimony demonstrating the value of the Thrive mark.
- Samples and photographs of both parties' skincare products.
- Evidence, including emails, correspondence, documents, and testimony showing there is significant overlap between the parties' marketing channels for skincare products.
- Evidence, including emails, documents, and testimony showing Thrive Natural Care regularly acquires customers through its website and online advertising, both parties advertise on the same online and social media sources, both parties' products are appear together online on the same sites and are depicted together on the same search engine results, and both parties' products are purchased primarily online through websites with URLS that

both begin with the word "Thrive".

- Evidence, including emails, documents, and testimony showing that both parties target the same types of consumers.
- Evidence, including emails, documents, and testimony showing that both parties' products are priced similarly and fall in mid-market range, not in the high-end luxury skincare market or low-end value market.
- Evidence, including emails, correspondence, documents, and testimony demonstrating Thrive Causemetics' prior knowledge of Thrive Natural Care, the Thrive products, and the Thrive trademark registration before Thrive Causemetics began selling the infringing skincare products, including but not limited to that Thrive Causemetics was in possession of a trademark clearance report identifying the Thrive '942 Registration in 2015, Thrive Causemetics contacted Thrive Natural Care for permission to use the Thrive mark in 2016, which request was rejected, subsequent cease-and-desist communications between the parties, and a call between the parties' CEOs in 2019 during which a reasonable royalty was discussed.
- Evidence, including emails, correspondence, documents, and testimony demonstrating the nature and extent of Thrive Causemetics' advertising and marketing of its Thrive Causemetics skincare products, including but not limited to search engine optimization and search engine marketing and other online marketing and advertising.
- Evidence, including emails, documents, and testimony demonstrating the strength of the parties' marks and the strength of the association between "Thrive" and each of the parties.
- Evidence, including emails, correspondence, documents, and testimony concerning instances of actual confusion between Thrive Natural Care's "Thrive" mark and Thrive Causemetics' "Thrive Causemetics" mark and confusion as to the origin of the parties' products.

- Evidence, including emails, documents, and testimony showing that Thrive Causemetics' use of the Thrive Causemetics mark has damaged the value of Thrive Natural Care's Thrive mark.
- Rob Wallace's expert report, rebuttal report, and testimony that consumer survey respondents demonstrated a high level of confusion between the parties' skincare products, the online presence of the parties' products and advertising, and the exposure of Thrive Causemetics' products and advertising to consumers searching online for "Thrive" and related terms in connection with skincare products.
- David Drews' expert report and testimony concerning the reasonable royalty amount, amount of disgorged profits, and corrective advertising damages required to compensate Thrive Natural Care for the injury caused by Thrive Causemetics' actions.

**2. Claim 2: Federal Unfair Competition**

- The key evidence that Thrive Natural Care will introduce in support of Claim 2 is the same as the evidence it will introduce in support of Claim 1.

**3. Claim 3: Common Law Trademark Infringement**

- The key evidence that Thrive Natural Care will introduce in support of Claim 3 is the same as the evidence it will introduce in support of Claim 1.

**4. Claim 4: Common Law Unfair Competition**

- The key evidence that Thrive Natural Care will introduce in support of Claim 4 is the same as the evidence it will introduce in support of Claim 1.

**5. Claim 5: Unfair Competition Under Cal. Bus. & Prof. Code § 17200**

- The key evidence that Thrive Natural Care will introduce in support of Claim 5 is the same as the evidence it will introduce in support of Claim 1.

**6. Willful Infringement**

- The key evidence that Thrive Natural Care will introduce in support of its

allegation that Thrive Causemetics' infringement and unfair competition was willful is the same as the evidence it will introduce in support of Claim 1, and in particular evidence demonstrating Thrive Causemetics' prior knowledge of the Thrive trademark registrations via a trademark clearance report, USPTO office actions, cease-and-desist letter, and party-to-party communications.

- Evidence, including documents and testimony concerning Thrive Causemetics' arguments to the USPTO and communications to Thrive Natural Care demonstrating that Thrive Causemetics knew it would be infringing if it expanded into the skincare market.

**7. Relief: Disgorgement of Defendant's Profits**

- Evidence, including documents, testimony, and expert testimony concerning Thrive Causemetics' revenues and profits on sales of infringing skincare products.
- Evidence, including documents, testimony, and expert testimony concerning Thrive Causemetics' claimed deductible expenses demonstrating they are not tied directly to production or sale of any infringing product.
- David Drews' expert report and testimony concerning revenue and profit figures for Thrive Causemetics and the amount of disgorged profits.

**8. Relief: Permanent Injunction**

- The key evidence that Thrive Natural Care will introduce in support of issuance of a permanent injunction is the same as the evidence it will introduce in support of Claim 1 with the addition of the evidence identified below.
- Evidence, including emails, correspondence, documents, and testimony showing that Thrive Natural Care has suffered irreparable harm in the loss of control over its brand, goodwill, and reputation.

**9. Relief: Enhanced Damages**

- The key evidence that Thrive Natural Care will introduce in support an award

of enhanced damages is the same as the evidence it will introduce in support of Claim 1 and willful infringement.

**10. Relief: Attorneys' Fees and Costs**

- The key evidence that Thrive Natural Care will introduce in support an award of attorneys' fees and costs is the same as the evidence it will introduce in support of Claim 1 and willful infringement.

**11. Relief: Attorneys' Fees and Costs**

- The key evidence that Thrive Natural Care will introduce in support an award of attorneys' fees and costs is the same as the evidence it will introduce in support of Claim 1 and willful infringement.

**12. Relief: Pre- and Post-Judgment Interest**

- The key evidence that Thrive Natural Care will introduce in support an award of pre-judgment interest is the same as the evidence it will introduce in support of Claim 1 and its damages requests. An award of post-judgment interest is mandatory.

**D. <u>Summary Statement of Affirmative Defenses Thrive Causemetics Has Pleaded and Plans to Pursue</u>**

Thrive Causemetics has pleaded and plans to pursue at trial the following affirmative defenses:

1. <u>Laches:</u> Each of Thrive Natural Care's claims is barred by laches.
2. <u>Abandonment:</u> One of Thrive Natural Care's two federal trademark registrations, the '942 Registration, is invalid because the underlying application was improperly assigned from the original applicant to Thrive Natural Care.

**E. <u>Elements Required to Establish Thrive Causemetics' Affirmative Defenses</u>**

<u>Laches:</u> The elements required to establish Thrive Causemetics' affirmative defense of laches are:

1. Thrive Natural Care knew or should have known it had a provable infringement claim against Thrive Causemetics and delayed filing suit for more than four years; and

2. Thrive Causemetics suffered prejudice from Thrive Natural Care's unreasonable delay.

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) (limitations period for laches on trademark claims is four years in California); *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) (explaining that a "plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known that it had a provable infringement claim against defendant").

Abandonment: The elements required to establish Thrive Causemetics' affirmative defense of abandonment of the '942 Registration, which must be proven by clear and convincing evidence, are:

1. The assignment of the Thrive mark and trademark application from Ecomundi Ventures, LLC ("Ecomundi") to Thrive Natural Care in May 2013 failed to include any goodwill in the Thrive mark;

2. Thrive Natural Care was not the successor to Ecomundi's ongoing and existing business as related to the Thrive mark; and

3. The owner of the Thrive mark discontinued use of the mark with intent not to resume such use.

*See* 15 U.S.C. §§ 1060(a)(1), 1127; *eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Because a trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark, the burden of proof is on the party seeking to show abandonment, and *abandonment must be shown by clear and convincing evidence*."); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010)

("The burden of proof is on the party seeking to show abandonment, which must be shown by clear and convincing evidence."); *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir.1982) (holding abandonment must be "strictly proved"); 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.) ("The majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."); *Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) (same).

### F. Brief Description of Key Evidence in Support of Thrive Natural Care's Opposition to Affirmative Defenses

The key evidence that Thrive Natural Care will introduce in support of its opposition to Thrive Causemetics' affirmative defenses is identified below.

#### 1. Laches

- Evidence, including emails, documents, and testimony demonstrating that Thrive Causemetics' move from color cosmetics into the skincare market in 2018 constitutes progressive encroachment into a new market, such that laches clock only begins in late 2018 at the earliest.
- Evidence, including emails, correspondence, documents, and testimony demonstrating that Thrive Causemetics repeatedly asserted both to Thrive Natural Care and to the USPTO that the parties sold different types of products to different markets during the period when Thrive Causemetics only sold color cosmetics, and there thus was allegedly no likelihood of confusion between those products.
- Evidence, including emails, documents, and testimony demonstrating that Thrive Natural Care did not believe it had a provable infringement claim until Thrive Causemetics moved into the skincare market.

#### 2. Abandonment

- Evidence, including emails, correspondence, documents, and testimony

demonstrating that Ecomundi engaged in substantial business planning relating to the "Thrive" mark and Thrive-branded skincare products in 2012 and early 2013 which built goodwill in the Thrive mark, including hiring a R&D Director, developing branding and packaging, creating product recipes, and forming and building business relationships.

- Evidence, including emails, correspondence, documents, and testimony demonstrating Thrive Natural Care received from Ecomundi an assignment of all goodwill in the "Thrive" trademark that had been built through these business planning activities and all of the business relating to the "Thrive" mark.

**G. Similar Statements for Third Parties**

There are no third parties in this matter.

**H. Anticipated Evidentiary Issues and Thrive Natural Care's Position**

Anticipated evidentiary issues will be briefed in the parties' motions in limine, which have yet to be filed and which will be exchanged as of the day of filing this memorandum. A brief summary of known issues is below.

1. Thrive Causemetics seeks to introduce USPTO search results for marks containing the word "thrive" or any variants of that word, plus purported evidence of third-party use of the name "thrive" without any indication of the extent of such use. Thrive Natural Care asserts such evidence is irrelevant and prejudicial and should be excluded.

2. Thrive Causemetics' damages expert, Karl Schulz, failed to conduct any independent investigation whatsoever concerning whether Thrive Causemetics' allegedly deductible costs were "of actual assistance" in the production, distribution, or sale of the infringing products. *See Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) (setting standard to prove deductible expenses). Mr. Schulz merely parroted the information he received from the CFO of Thrive Causemetics, without conducting any verification. Mr. Schulz' opinions

therefore are not proper expert testimony and should be excluded.

## I. Identification of Issues of Law and Thrive Natural Care's Position

### 1. Whether "Thrive" is merely descriptive of skincare products

Because Thrive Causemetics' abandonment defense only pertains to *one* of Thrive Natural Care's *two* registered trademarks, Thrive Causemetics is alleging the second registration is invalid because "Thrive" is merely descriptive. There is no legal basis to draw that conclusion. "The strength of a mark is determined through the 'imagination test,' in which a court asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies, the more imagination required, the stronger the mark is; and the 'need test,' which asks to what extent a mark is actually needed by competitors to identify their goods or services." *Earthquake Sound Corp. v. Bumper Indus*., 352 F.3d 1210, 1221 (9th Cir. 2003). "Descriptive marks define qualities or characteristics of a product in a straightforward way that requires *no exercise of the imagination* to be understood." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1988). In other words, descriptive marks "tend to consist of common words that *might be the only way* to describe a category of goods." *Japan Telecom, Inc. v. Japan Telecom America Inc*., 287 F.3d 866, 872 (9th Cir. 2002) (emphasis added). "Thus, 'Honey Baked Ham' is a descriptive term for a ham that has been baked with honey, and 'Honey Roast' is a descriptive term for nuts that have been roasted with honey." *Kendall-Jackson*, 150 F.3d at 1047 n.8; *see also Am. Tire Distributors, Inc. v. Am. Tire Corp*., No. CV-08-02971-MMM-JTLX, 2009 WL 10672268, at *7 (C.D. Cal. June 10, 2009) (finding "American Tire Distributors" descriptive of a tire distributor). There is zero evidence to demonstrate that the mark "Thrive" is descriptive of skincare products. Rather, at the very least, "Thrive" is suggestive of skincare products because it is not immediately apparent from the name what product is at issue. *See Fin. Exp. LLC v. Nowcom Corp*., 564 F. Supp. 2d 1160, 1169 (C.D. Cal. 2008) ("Although the term 'DealTrace' is

suggestive of its purpose—to trace deals—it is not immediately apparent what product is at issue or to whom the product is directed.”). Rather, consumers “must use some imagination to understand the significance of the mark.” *Id*. Even if “Thrive” were defined as Thrive Causemetics argues, a consumer must make a “mental leap” from “prosper or flourish” or “improve physically” to skin lotion. *See Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999). Therefore, Thrive Causemetics' only attack on the validity of the '303 Registration should fail.

**2. Facts that permit a finding of willful infringement**

Thrive Natural Care asserts the jury can find willful infringement if it determines Thrive Causemetics intentionally or recklessly disregarded the known trademark rights of Thrive Natural Care. Thrive Causemetics is arguing for a much narrower definition that permits a finding of willfulness only if the defendant intentionally traded on the goodwill in a known mark—a standard which leaves smaller trademark owners helpless to the intentional use of their marks by larger companies. Thrive Natural Care's proposed standard aligns with the Ninth Circuit finding willful infringement where the defendant “utilized a mark that was similar to that of its competitor, was informed of actual confusion, and deliberately chose not to make a reasonable effort to ascertain whether it might actually be infringing.” *Earthquake Sound*, 352 F.3d at 1219. “Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with ‘an indifference to plaintiff's rights’—in other words, that defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it.” *Coach, Inc. v. Celco Customs Servs. Co.*, No. CV-11-10787-MMM-FMOX, 2012 WL 12883972, at *6 (C.D. Cal. Oct. 31, 2012); *see also Hydramedia Corp. v. Hydra Media Grp., Inc.*, No. CV-06-05293-DDP-JTLX, 2008 WL 11336118, at *3 (C.D. Cal. Dec. 29, 2008), aff'd, 392 F. App'x 522 (9th Cir. 2010) (holding “the Court finds that a showing of ‘objective recklessness’ is

sufficient to demonstrate willful infringement"); *Capbran Holdings, LLC v. Firemall LLC*, No. CV-16-02980-DSFA-FMX, 2017 WL 4769434, at *6 (C.D. Cal. Aug. 23, 2017) ("A defendant may be liable for willful trademark . . . infringement for knowing conduct or willful blindness."); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) ("Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark.").

Thrive Natural Care will show that Thrive Causemetics knew of the Thrive mark and Thrive registrations, knew that mark was for skincare products, and intentionally expanded into the same market in willful disregard of Thrive Natural Care's rights. Those facts prove willful infringement. *See, e.g.*, *See Bellagio Jewelry, Inc. v. Croton Watch Co., Inc.*, No. CV 06–6672, 2008 WL 3905895, at *13 (C.D. Cal. Aug. 20, 2008) ("After receiving the cease and desist letter, [defendant] was put on actual notice, which logically demonstrates that any infringing conduct thereafter was done willfully."); *M2 Software, Inc. v. Madacy Ent.*, No. CV 00-2853 AHM RZX, 2003 WL 25667610, at *1 (C.D. Cal. Jan. 23, 2003) (defendant's discovery of plaintiff's mark during trademark search was a basis for willful infringement).

**3. When the clock starts on laches defense**

Thrive Causemetics asserts Thrive Natural Care knew it had a provable infringement claim against Thrive Causemetics in 2016, so Thrive Natural Care's claims are barred by laches. That contention is contradicted by applicable case law and the evidence. The limitations period for laches is four years. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 n.11 (9th Cir. 2006). "If a plaintiff files suit within the applicable period of limitations for his claim, there is a strong presumption that laches does not bar the claims." *Id*. at 997. A plaintiff is not "obligated to sue until its right to protection has ripened such that plaintiff knew or should have known that it *had a provable infringement claim* against defendant." *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102,

1108 (9th Cir. 2006) (emphasis added). In other words, "the trademark owner need not sue until the likelihood of confusion looms large[.]" *Id*. That is *not* the same as the plaintiff knowing the defendant is using the potentially infringing mark. *See id*. A trademark holder is "not required to . . . fire both barrels of [its] shotgun instantly upon spotting a possible infringer." *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, No. SA-CV-171552DOC-JDEX, 2018 WL 5099277, at *6 (C.D. Cal. July 10, 2018). Further, the doctrine of progressive encroachment holds "the trademark owner need not sue in the face of *de minimis* infringement by the junior user" but "may wait until the junior user of a mark moves into direct competition selling the same 'product' through the same channels and causing actual market confusion." *Tillamook*, 465 F.3d at 1110 (question is whether "the [junior user], after beginning its use of the mark, redirected its business so that it more squarely competed with plaintiff and thereby increased the likelihood of public confusion of the marks"). A common method of encroachment is "the junior user's expansion of its business . . . into different markets." *Id*.

Thrive filed suit on October 2, 2020, meaning TCI has the burden of proving Thrive knew it had a valid infringement claim before October 2, ***2016***. TCI cannot meet that burden for two reasons. *First*, Thrive Natural Care's infringement claims are based on TCI selling *skincare* products, not makeup, and Thrive Causemetics did not move into the skincare market until 2018. That is an expansion into a "different market," which competes with Thrive Natural Care. *See Tillamook*, 465 F.3d at 1110. The clock for laches on Thrive's claims thus could only *possibly* have started in 2018, with TCI's business expansion. Thrive filed suit in 2020, the year it learned that TCI was selling skincare products. Thus, TCI has no laches defense.

*Second*, the parties had just one interaction outside the four-year laches period: Ms. Bodnar's 2016 email stating Thrive Causemetics only sold color cosmetics to help women with cancer and requesting permission to use the "Thrive" name, which Thrive Natural Care denied. Thrive Natural Care expected Ms. Bodnar

to abide by that response and believed Thrive Causemetics would remain in its lane of color cosmetics. There were no other contacts outside the laches period. It would be unreasonable to find Thrive Natural Care should have known that infringement "loomed large" from the parties' one interaction in 2016. The laches defense should therefore be rejected. *Tillamook*, 465 F.3d at 1108.

**4. Standard of proof for abandonment**

The parties dispute the standard of proof for Thrive Causemetics' abandonment defense pertaining to the '942 Registration. The Ninth Circuit has held that abandonment must be "strictly proved." *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir.1982). According to McCarthy on Trademarks, "[t]he majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing." 3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.); *see also Cash Processing Servs. v. Ambient Entm't, Inc.*, 418 F.Supp.2d 1227, 1231-1232 (D. Nev. 2006) ( "While the Ninth Circuit has not defined 'strictly proved' further, the majority of courts applying that standard have found that evidence of abandonment must be clear and convincing."). Courts in this District have agreed that clear and convincing evidence is the proper standard. *See eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV00-00374-VAP-EEX, 2001 WL 456404, at *5 (C.D. Cal. Mar. 5, 2001) ("Because a trademark owner's certificate of registration is prima facie evidence of the registration and continued use of the mark, the burden of proof is on the party seeking to show abandonment, and *abandonment must be shown by clear and convincing evidence*."); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV-09-07849-CBM-RZX, 2010 WL 11549564, at *3 (C.D. Cal. Sept. 13, 2010) ("The burden of proof is on the party seeking to show abandonment, which must be shown by clear and convincing evidence."). The TTAB also agrees that abandonment must be proven by clear and convincing evidence. *See Winnebago Indus., Inc.*, 207 USPQ ¶ 335 (TTAB June

30, 1980) ("[I]t is also well settled that insofar as the question of abandonment of a mark is concerned, the burden is on petitioner to establish as a fact by clear and convincing proofs the abandonment of such mark by respondent."). Thrive Natural Care therefore asserts that Thrive Causemetics must prove abandonment of the '942 Registration by clear and convincing evidence, not by a preponderance of evidence.

**5. Validity of Ecomundi assignment and goodwill definition**

For an assignment of an intent-to-use trademark application to be valid, 15 U.S.C. § 1060(a)(1) requires that the assignee be a successor of an "ongoing and existing business" to which the mark pertains and that the assignment include goodwill in the mark. The Trademark Trial & Appeals Board and other courts have held that this statute "must allow for the transfer of an intent to use application claiming a bona fide intention to use the mark for goods which are not yet in production or which may be in the planning stage . . . ." *Exel Oyj v. D'Ascoli*, Opposition No. 91160397, 2008 WL 4354180, at *7 (T.T.A.B. Sept. 19, 2008)); *Vacation Rental Partners, LLC v. VacayStay Connect, LLC*, No. 15 CV 10656, 2017 WL 1150806, at *6 (N.D. Ill. Mar. 28, 2017) (quoting *Exel Oyj*). "Prior to filing a statement of use, an applicant may not have actually used the mark in commerce yet, but it may have goodwill or existing business tied to the mark (e.g., relationships based on planned use of the mark)—that is enough to ensure that a trademark has no existence separate from the product or service it symbolizes." *VacayStay*, 2017 WL 1150806, at *7 (citing § 1060 legislative history). Therefore, "Section 1060(a)(1) was designed to allow assignment of intent-to-use applications before actual use." *Id*.

Thrive Causemetics asserts that goodwill can only be built through use in commerce of a mark and that the phrase "ongoing and existing business" in § 1061(a)(1) requires use in commerce, meaning an intent-to-use application could only be assigned if the claimed mark was already in use in commerce. Thrive Natural Care believes that this is too narrow a view, as explained in the TTAB

rulings and *VacayStay*. It is undisputed that Ecomundi engaged in substantial business planning relating to the "Thrive" mark and Thrive-branded skincare products in 2012 and early 2013, which built goodwill in the Thrive mark. It is also undisputed that Thrive Natural Care received from Ecomundi an assignment of all goodwill in the "Thrive" trademark that had been built through these business planning activities and all of the business relating to the "Thrive" mark. The assignment thus satisfied the requirements of 15 U.S.C. § 1060(a)(1) and is valid.

## III. BIFURCATION OF ISSUES

Neither party has requested bifurcation.

## IV. JURY TRIAL OR BENCH TRIAL

Pursuant to the Court's Summary Judgment Order granting summary judgment in Thrive Causemetics' favor on Thrive Natural Care's claims for a reasonable royalty and corrective advertising damages, there are no further issues that are triable to a jury. The remaining claims and defenses are equitable and should be tried to the Court. These issues include the following:

1. Federal trademark infringement in violation of 15 U.S.C. § 1114.
2. Federal unfair competition in violation of 15 U.S.C. § 1125(a).
3. Willfulness, if infringement or unfair competition is found.
4. Common law trademark infringement under California law.
5. Common law unfair competition under California law.
6. Affirmative defense of laches.
7. Statutory unfair competition in violation of Cal. Bus. & Prof. Code § 17200.
8. Disgorgement of profits under 15 U.S.C. § 1117(a).
9. A permanent injunction under 15 U.S.C. § 1115(a).
10. Enhanced damages under 15 U.S.C. § 1117(a).
11. Attorneys' fees and costs of suit under 15 U.S.C. § 1117(a) or Cal. Bus. & Prof. Code 17200.

12. An award of prejudgment and post-judgment interest on all monetary awards.

## V. ATTORNEYS' FEES

Thrive Natural Care believes that this is an "exceptional case" under the Lanham Act, which entitles Thrive Natural Care to an award of attorneys' fees. *See* 15 U.S.C. § 1117(a). An "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014). "While 'exceptional' is not defined in the statute, 'generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate, or willful.'" *Zynga Game Network, Inc. v. Goh*, No. C-09-05297-SBA (DMR), 2011 WL 13376996, at *17 (N.D. Cal. Feb. 14, 2011), report and recommendation adopted, No. C 09-05297 SBA, 2011 WL 13376997 (N.D. Cal. Mar. 1, 2011). "Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark." *Id*. "Egregious conduct is not required" for a plaintiff to be awarded fees and costs. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc*., 778 F.3d 1059, 1078 (9th Cir. 2015).

Thrive Causemetics knowingly and intentionally infringed the THRIVE mark when it began selling skincare products under the "Thrive Causemetics" brand in 2018. Thrive Causemetics knew that was likely to be infringing but made the calculation to continue with its skincare launch and expansion anyway, in violation of Thrive Natural Care's rights. Thrive Natural Care is an innocent actor who was forced to file suit and litigate through trial to protect its brand from Thrive Causemetics' knowing infringements. These facts support that this is an "exceptional case" under the Lanham Act, and the Court therefore awards Thrive Natural Care its attorneys' fees and costs incurred in this action. *See Earthquake*

*Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1218 (9th Cir. 2003).

## VI. ABANDONMENT OF ISSUES

Thrive Natural Care has not abandoned any claims that it pled in the First Amended Complaint (Dkt. 28), though pursuant to the Court's Order on Summary Judgment (Dkt. 114), Thrive Natural Care can no longer pursue actual damages in the forms of a reasonable royalty or corrective advertising damages.

Thrive Causemetics will not be pursuing the following affirmative defenses that it pled in its Answer (Dkt. 31): unclean hands; fair use; fraud on the USPTO; waiver, estoppel, or failure to mitigate (except as facts are relevant to the affirmative defense of laches); and statute of limitations.

DATED: October 15, 2021

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Stephen McArthur*
Stephen McArthur
Thomas Dietrich
*Attorneys for Plaintiff Thrive Natural Care*

**CERTIFICATE OF SERVICE**

Case Name: *Thrive Natural Care, Inc. v. Thrive Causemetics, Inc.*
Case No.: 2:20-cv-9091-PA-AS

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFF THRIVE NATURAL CARE, INC.'S AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]**

on the following parties by electronically filing the foregoing on October 15, 2021, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rollin Ransom (SBN 196126)
rransom@sidley.com
Ryan Stasell (SBN 307431)
rstasell@sidley.com
Paula Salazar (SBN 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth St., Ste. 4000
Los Angeles, CA 90013

*Attorneys for Defendant*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 10/15/2021 By: */s/ Thomas Dietrich*
Thomas Dietrich