Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff Thrive
Natural Care, Inc.*

Rollin Ransom (SBN 196126)
rransom@sidley.com
Lauren De Lilly (SBN 301503)
ldelilly@sidley.com
Paula Salazar (SBN 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth St., Ste. 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000

*Attorneys for Defendant Thrive
Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2:20-CV-9091-PA-AS <br><br> **AMENDED DEPOSITION DESIGNATIONS** <br><br> Hon. Percy Anderson <br> United States District Court Judge <br> **Trial Date**: November 9, 2021 <br> **Time**: 9:00 a.m. <br> **Courtroom**: 9A, 350 W. 1st Street, 9th Floor, Los Angeles, California 90012 |

Pursuant to the Court's Civil Trial Scheduling Order (ECF No. 19) and the Court's October 7, 2021, Minute Order (ECF No. 115), Plaintiff Thrive Natural Care, Inc. and Defendant Thrive Causemetics, Inc. submit the attached Amended Deposition Designations.

Dated: October 15, 2021

Respectfully submitted,

**THE MCARTHUR LAW FIRM, PC**

By */s/ Stephen McArthur*

Stephen C. McArthur
Thomas E. Dietrich

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

Dated: October 15, 2021

Respectfully submitted,

**SIDLEY AUSTIN LLP**

By */s/ Rollin Ransom*

Rollin Ransom

*Attorneys for Defendant Thrive Causemetics, Inc.*

1

**ATTESTATION UNDER LOCAL RULE 5-4.3.4**

2

I, Thomas Dietrich, am the ECF User whose ID and password are being used

3

to file this document. In compliance with Local Rule 5-4.3.4(a)(2), I hereby attest

4

that Rollin Ransom has concurred in this filing.

5

6

Dated: October 15, 2021

7

*/s/ Thomas Dietrich*
Thomas Dietrich

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED DEPO. DESIGNATIONS
CASE NO. 2:20-CV-09091-PA-AS

AMENDED DEPOSITION DESIGNATIONS TABLE

CASE:2:20-cv-09091-PA-AS              TRIAL DATE: Nov. 9, 2021, 9:00 a.m.

| Deposition Designation | Objection & Response |
|---|---|
| ***Plaintiff's Designation of Karissa Bodnar Rule 30(b)(6) Deposition*** | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (8:12-14)<br><br>Page 8<br>12  Q.  Good morning. Could you please state<br>13     your full name for the record.<br>14  A.  Karissa Elizabeth Bodnar. | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (15:8-20)<br><br>Page 15<br>8  Q.  Let's talk a little bit about<br>9     your background with TCI. What is your<br>10    position within TCI?<br>11  A.  I am the founder and CEO.<br>12  Q.  Have you always had that<br>13    position?<br>14  A.  Yes.<br>15  Q.  Did you start TCI?<br>16  A.  Yes.<br>17  Q.  When?<br>18  A.  2015. I apologize. 2014.<br>19  Q.  When in 2014?<br>20  A.  I don't recall. | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (15:24-16:5)<br><br>Page 15<br>24  Q.  Did TCI sell products in 2014? | |

1

| | | | |
|---|---|---|---|
| 25 | A. | I believe we sold products | |
| Page 16 | | | |
| 1 | | beginning in September of 2014. | |
| 2 | Q. | What products did you start | |
| 3 | | selling in 2014? | |
| 4 | A. | False lashes and lash | |
| 5 | | adhesive. | |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (22:16-20) | | | |
| Page 22 | | | |
| 16 | Q. | Does TCI sell color cosmetics? | |
| 17 | A. | Yes. | |
| 18 | Q. | What does the term "color | |
| 19 | | cosmetics" mean? | |
| 20 | A. | Makeup. | |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (23:15-20) | | | |
| Page 23 | | | |
| 15 | Q. | When did TCI start selling color | |
| 16 | | cosmetics? | |
| 17 | A. | 2015. | |
| 18 | Q. | Who made the decision to expand | |
| 19 | | from false eyelashes to color cosmetics? | |
| 20 | A. | Me. | |

| | | | |
|---|---|---|---|
| Defendant's Counter-Designation of Karissa Bodnar (23:21-24): | | | |
| Page 23 | | | |
| 21 | Q. | And why did you make that | |
| 22 | | decision? | |
| 23 | A. | Because our customers and | |
| 24 | | giving partners asked for them. | |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (23:25-24:2) | | | |

| | |
|---|---|
| <u>Page 23</u><br>25    Q.     And what color cosmetics did TCI<br><u>Page 24</u><br>1           start with?<br>2    A.     Eyeliner. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (24:21-<br>25:7</u><br><br><u>Page 24</u><br>21    Q.     You said that in 2015 TCI started<br>22          selling eyeliner; is that right?<br>23    A.     Yes.<br>24    Q.     And did TCI at some point start<br>25          selling other color cosmetics?<br><u>Page 25</u><br>1    A.     Yes.<br>2    Q.     When did it expand from eyeliner<br>3          to something else?<br>4    A.     I believe it was July of 2015.<br>5    Q.     And what did TCI start selling<br>6          then?<br>7    A.     Browliner. | |
| <u>Defendant's Counter-Designation of Karissa Bodnar<br>(25:14-23)</u>:<br><br><u>Page 25</u><br>14    Q.     What came next after browliner in<br>15          the color cosmetics category?<br>16    A.     To the best of my<br>17          recollection, it was Triple Threat Color<br>18          Stick.<br>19    Q.     And when was that released?<br>20    A.     I don't recall the specific<br>21          date.<br>22    Q.     Do you recall the year?<br>23    A.     It was either 2015 or 2016. | |

3

| | |
|---|---|
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (25:24-26:15)</u><br><br><u>Page 25</u><br>24   Q.     Does TCI sell skincare products?<br>25   A.     Yes.<br><u>Page 26</u><br>1    Q.     What does the term "skincare<br>2           products" mean?<br>3    A.     Products that you use on your<br>4           skin.<br>5    Q.     And on TCI's website, there's a<br>6           tab labeled Skincare, right?<br>7    A.     To the best of my knowledge, I<br>8           believe so.<br>9    Q.     And are the products listed under<br>10          that tab Skincare Products?<br>11   A.     I don't know.<br>. . .<br>14    (Exhibit No. 10 marked for<br>15    identification.) | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (26:25-27:16)</u><br><br><u>Page 26</u><br>25   Q.     Do you recognize had the URL<br><u>Page 27</u><br>1           thrivecausemetics.com?<br>2    A.     Yes.<br>3    Q.     Does Thrive Causemetics have an<br>4           All Skincare page?<br>5    A.     From this, yes.<br>6    Q.     Do you recognize these products?<br>7    A.     Yes.<br>8    Q.     Are these products that TCI has<br>9           sold?<br>10   A.     Yes.<br>11   Q.     Are these skincare products? | |

4

| | | |
|---|---|---|
| 12 | A. | Yes. |
| . . . | | |
| 15 | | (Exhibit No. 11 marked for |
| 16 | | identification.) |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (27:24-28:16) | | |
| | | |
| Page 27 | | |
| 24 | Q. | Are you familiar with the Thrive |
| 25 | | Causemetics website? |
| Page 28 | | |
| 1 | A. | Yes. |
| 2 | Q. | Are these the skincare products |
| 3 | | for sale on Thrive Causemetics's website? |
| 4 | A. | Some of them, yes. |
| 5 | Q. | Would these have been products |
| 6 | | for sale as of September 21st, 2020? |
| 7 | A. | To the best of my knowledge, |
| 8 | | yes. |
| 9 | Q. | And do you see at the top, these |
| 10 | | are listed under All Skincare Products? |
| 11 | A. | I see that it says All |
| 12 | | Skincare Products. |
| 13 | Q. | Is that something that was added |
| 14 | | to TCI's website by TCI? |
| 15 | A. | To the best of my knowledge, |
| 16 | | yes. |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (29:9-30:15) | | |
| | | |
| Page 29 | | |
| 9 | Q. | Are any of the products on this |
| 10 | | page in Exhibit 11 considered color cosmetics? |
| 11 | A. | Yes. |
| 12 | Q. | Which ones? |
| 13 | A. | On page 1, Pumpkin Spice Latte |

| | | |
|---|---|---|
| 14 | | Liquid Balm Lip Treatment, and then it |
| 15 | | looks like the product name is cut off, |
| 16 | | but it's also -- the product right below |
| 17 | | the Pumpkin Spice Latte, which is called |
| 18 | | Liquid Balm. |
| 19 | Q. | So those would be considered |
| 20 | | color cosmetics? |
| 21 | A. | They could be, yes. |
| 22 | Q. | Could they be considered skincare |
| 23 | | products? |
| 24 | A. | Yes. |
| 25 | Q. | How about the other products on |

Page 30

| | | |
|---|---|---|
| 1 | | Exhibit 11? Would those be considered |
| 2 | | skincare products? |
| 3 | A. | They could be. The one that |
| 4 | | would not be is hand sanitizer. |
| 5 | Q. | What category would that fall |
| 6 | | into? |
| 7 | A. | I don't know. |
| 8 | Q. | Is it listed on TCI's website as |
| 9 | | a skincare product? |
| 10 | A. | Yes. |
| 11 | Q. | And the two lip balms on the |
| 12 | | first page, are those listed on Thrive |
| 13 | | Causemetics' website as skincare products? |
| 14 | A. | To the best of my knowledge, |
| 15 | | yes. |

Defendant's Counter-Designation of Karissa Bodnar (30:16-20):

Page 30

| | | |
|---|---|---|
| 16 | Q. | Why do you say that those two |
| 17 | | could be considered color cosmetics? |
| 18 | A. | Because they enhance your -- |
| 19 | | the appearance of your lips the same way |
| 20 | | that a lip gloss would. |

| Plaintiff's Designation of K. Bodnar 30(b)(6) (33:3-35:14) | | | Defendant's Objections: |
|---|---|---|---|
| | | | Page 34:3-4, 11-12: Asked and answered, Fed. R. Evid. 611(a) |
| **Page 33** | | | |
| 3 | Q. | Is lotion a skincare product? | |
| . . . | | | Plaintiff's Response: |
| 7 | A. | Yes. | |
| . . . | | | Question does not waste |
| 9 | Q. | Is moisturizer a skincare | time or harass or unduly |
| 10 | | product? | embarrass the witness. No |
| . . . | | | basis to strike under FRE |
| 14 | A. | It truly depends. | 611(a). |
| 15 | Q. | What does it depend on? | |
| 16 | A. | The type of moisturizer it is. | |
| 17 | Q. | Can you explain that a little | |
| 18 | | bit? | |
| 19 | A. | There are moisturizers that | |
| 20 | | have pigment in them. | |
| 21 | Q. | Are those considered skincare | |
| 22 | | products if they have pigment in them? | |
| 23 | A. | It truly depends. | |
| 24 | Q. | Does TCI sell any pigmented | |
| 25 | | moisturizer? | |
| **Page 34** | | | |
| 1 | A. | It really depends on an | |
| 2 | | individual's definition. | |
| 3 | Q. | Does TCI sell any pigmented | |
| 4 | | moisturizer? | |
| . . . | | | |
| 11 | A. | It truly depends on | |
| 12 | | a person's definition. | |
| . . . | | | |
| 14 | Q. | On the definition of what? | |
| 15 | A. | Moisturizer. | |
| 16 | Q. | Looking at the second page, third | |
| 17 | | page of Exhibit 11, there's a product called | |
| 18 | | Defying Gravity Transforming Moisturizer. | |
| 19 | | Do you see that? | |
| 20 | A. | Yes. | |

| 21 | Q. | Is that a moisturizer? | |
|----|----|----|---|
| 22 | A. | Yes. | |
| 23 | Q. | What makes it a moisturizer? | |
| 24 | A. | In simple terms, it | |
| 25 | | moisturizes the skin. | |
| Page 35 | | | |
| 1 | Q. | And to TCI that makes this a | |
| 2 | | moisturizer? | |
| 3 | A. | Not exclusively. | |
| 4 | Q. | I'm afraid I don't understand | |
| 5 | | what you mean by not exclusively. Can you | |
| 6 | | explain? | |
| 7 | A. | Our products do more than just | |
| 8 | | one thing. | |
| 9 | Q. | Does this product Defying Gravity | |
| 10 | | Transforming Moisturizer moisturize skin? | |
| 11 | A. | Yes. | |
| 12 | Q. | And so TCI considers it a | |
| 13 | | moisturizer? | |
| 14 | A. | Yes. | |

| Defendant's Counter-Designation of Karissa Bodnar (35:22-36:2): | | | |
|----|----|----|---|
| | | | |
| Page 35 | | | |
| 22 | Q. | Does TCI have any other products | |
| 23 | | that moisturize skin that do have pigment in | |
| 24 | | them? | |
| 25 | A. | All color cosmetics, all | |
| | | | |
| Page 36 | | | |
| 1 | | topical products do something to the skin, | |
| 2 | | but it depends on the consumer's skin. | |

| Plaintiff's Designation of K. Bodnar 30(b)(6) (36:3-37:10) | | | |
|----|----|----|---|
| | | | |
| Page 36 | | | |

8

| | | | |
|---|---|---|---|
| 3<br>4 | Q. | Is a cream considered a skincare<br>product? | |
| . . . | | | |
| 6 | A. | It depends. | |
| . . . | | | |
| 8 | Q. | Do you know what a cream is? | |
| 9<br>10 | A. | No because it can be defined<br>many different ways. | |
| 11<br>12 | Q. | So the term "cream" doesn't have<br>a specific definition? | |
| 13 | A. | No. | |
| 14<br>15 | Q. | Does lotion have a specific<br>definition? | |
| . . . | | | |
| 18 | A. | No. | |
| . . . | | | |
| 20<br>21 | Q. | Is a cleanser considered a<br>skincare product? | |
| 22<br>23 | A. | To the best of my knowledge,<br>yes. | |
| 24<br>25 | Q. | How about a balm? Is that<br>considered a skincare product? | |
| Page 37 | | | |
| 1 | A. | Not exclusively. | |
| 2<br>3 | Q. | Is it considered a skincare<br>product and considered something else as<br>well? | |
| 4 | A. | Yes. | |
| 5<br>6 | Q. | What else would a balm be<br>considered? | |
| 7<br>8<br>9<br>10 | A. | It could be considered -- to<br>the best of my knowledge, it could be<br>considered a hair care product, a color<br>cosmetic product. | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (37:24-38:19)<br><br>Page 37 | | | |

| 24 | Q. | Are there any specific |
|----|----|------------------------|
| 25 |    | characteristics that make up a balm? |

Page 38

. . .

| 3 | A. | I don't know. |

. . .

| 5 | Q. | Does TCI sell any balms? |
| 6 | A. | We have a product that is |
| 7 |    | named Liquid Balm. |
| 8 | Q. | Does TCI consider that to be a |
| 9 |    | balm? |
| 10 | A. | No. |
| 11 | Q. | Why not? |
| 12 | A. | It's a lip product by our |
| 13 |    | definition. |
| 14 | Q. | Yet, you called the product a |
| 15 |    | balm? |
| 16 | A. | That's a part of the name. |
| 17 | Q. | When did TCI first have the idea |
| 18 |    | that it may sell skincare products? |
| 19 | A. | I don't know. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (39:15-40:1)

Page 39

| 15 | Q. | When did TCI first begin planning |
| 16 |    | to sell skincare products? |

. . .

| 19 | A. | I don't recall the |
| 20 |    | specific time. |

. . .

| 22 | Q. | Do you recall if it was 2015? |
| 23 | A. | I don't recall. |
| 24 | Q. | Who decided TCI should sell |
| 25 |    | skincare products? |

Page 40

| 1 | A. | Me. |

10

<table>
<tr><td>

Defendant's Counter-Designation of Karissa Bodnar (40:2-4):

Page 40

| | | |
|---|---|---|
| 2 | Q. | Why did you reach that decision? |
| 3 | A. | Our customers requested that |
| 4 | | we create them. |

</td><td></td></tr>
<tr><td>

Plaintiff's Designation of K. Bodnar 30(b)(6) (42:1-43:1)

Page 42

| | | |
|---|---|---|
| 1 | Q. | What social media does TCI use? |
| 2 | A. | One example would be Facebook. |
| 3 | Q. | Does TCI use Instagram? |
| 4 | A. | Yes. |
| 5 | Q. | Is TCI on any other social media? |
| 6 | A. | Yes. |
| 7 | Q. | Which ones? |
| 8 | A. | TickTok. |
| 9 | Q. | Any others? |
| 10 | A. | Yes. To the best of my |
| 11 | | knowledge, Snapchat. |
| 12 | Q. | When was the decision made to go |
| 13 | | forward with expanding into skincare products? |
| 14 | A. | I don't recall the specific |
| 15 | | date. |
| 16 | Q. | Do you recall the approximate |
| 17 | | date? |
| 18 | A. | No. |
| . . . | | |
| 21 | Q. | At some point TCI did decide to |
| 22 | | expand into skincare products? |
| 23 | A. | Correct. Yes. |
| 24 | Q. | And TCI did start selling |
| 25 | | skincare products after that time? |

Page 43

| | | |
|---|---|---|
| 1 | A. | Yes. |

</td><td></td></tr>
</table>

11

<table>
<tr><td>

Defendant's Counter-Designation of Karissa Bodnar (43:2-5):

Page 43
2    Q.    What considerations went into the
3            decision to start selling skincare products?
4    A.    To serve our customers and
5            giving partners.

</td><td></td></tr>
<tr><td>

Plaintiff's Designation of K. Bodnar 30(b)(6) (43:9-14)

Page 43
9    Q.    Sure. Did TCI consider whether
10          it could make money selling skincare
              products?
11    A.    Yes.
12    Q.    Who was involved in those
13          considerations?
14    A.    Me.

</td><td></td></tr>
<tr><td>

Plaintiff's Designation of K. Bodnar 30(b)(6) (43:20-44:1)

Page 43
20    Q.    Who was involved in the decision
21          to expand into the skincare products?
22    A.    Me and our customers.
23    Q.    Anyone else from TCI?
24    A.    Ned Menninger.
25    Q.    Anyone else?
Page 44
1    A.    No.

</td><td></td></tr>
<tr><td>

Plaintiff's Designation of K. Bodnar 30(b)(6) (45:3-46:9)

Page 45
3    Q.    Who was involved in the process
4          of coming to the decision to sell skincare
5          products?

</td><td></td></tr>
</table>

| | | |
|---|---|---|
| 6 | A. | Our customers, me, Ned |
| 7 | | Menninger. |
| 8 | Q. | Anyone else? |
| 9 | A. | I don't know. I don't recall. |
| 10 | Q. | When did TCI actually start |
| 11 | | selling skincare products? |
| 12 | A. | To the best of my knowledge, |
| 13 | | 2018. |
| 14 | Q. | Do you know when in 2018? |
| 15 | A. | It was in the second half of |
| 16 | | 2018, to the best of my knowledge. |
| 17 | Q. | What skincare products did TCI |
| 18 | | first sell? |
| 19 | A. | Overnight Sensation. |
| 20 | Q. | Anything else? |
| 21 | A. | To the best of my knowledge, |
| 22 | | it was Overnight Sensation. |
| 23 | Q. | Has TCI expanded its skincare |
| 24 | | line since then? |
| 25 | A. | Yes. |

Page 46

| | | |
|---|---|---|
| 1 | Q. | What products were added o the |
| 2 | | skincare line? |
| 3 | A. | Defying Gravity Moisturizer. |
| 4 | Q. | When was that added? |
| 5 | A. | Could you be more specific |
| 6 | | about what you mean when you say "added"? |
| 7 | Q. | Sure. I mean, when the product |
| 8 | | was released to the public. |
| 9 | A. | 2020. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (47:5-49:2)

Page 47

| | | |
|---|---|---|
| 5 | Q. | In 2020, did TCI add any skincare |
| 6 | | products to its line? |
| 7 | A. | Yes. |
| 8 | Q. | Which products were those? |

13

| | | |
|---|---|---|
| 9 | A. | A few of them would be Defying |
| 10 | | Gravity Moisturizer, Defying Gravity Eye |
| 11 | | Cream, Bright Balance Cleanser. |
| 12 | Q. | A little bit ago we talked about |
| 13 | | a cream. Is there anything specific about |
| 14 | | Defying Gravity Eye Cream that made TCI call |
| 15 | | it a cream? |
| 16 | A. | In the market, eye products |
| 17 | | that perform like Defying Gravity Eye |
| 18 | | Cream are often called eye cream. |
| 19 | Q. | Is that a specific definition or |
| 20 | | just something TCI chose? |
| 21 | A. | In the beauty industry, |
| 22 | | there's not really a specific definition, |
| 23 | | I would say. |
| 24 | Q. | Has the skincare market been |
| 25 | | profitable for TCI? |
| Page 48 | | |
| 1 | A. | Yes. |
| 2 | Q. | Does TCI have plans to continue |
| 3 | | its skincare offering? |
| 4 | A. | Yes. |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (48:21-49:2) | | |
| | | |
| Page 48 | | |
| 21 | Q. | Has TCI continued to expand its |
| 22 | | skincare product line after the lawsuit being |
| 23 | | filed by Thrive Natural Care? |
| . . . | | |
| Page 49 | | |
| 1 | A. | To the best of my |
| 2 | | knowledge, yes. |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (49:10-50:10) | | |

Page 49
10      (Exhibit No. 12 marked for
11      identification.)
. . .
17      Q.      Ms. Bodnar, do you have
18              Exhibit 12 in front of you?
19      A.      Yes.
20      Q.      Do you recognize this exhibit?
21      A.      Yes.
22      Q.      What does it show?
23      A.      It shows Smart
24              Microdermabrasion 2-in-1 Instant Facial.
25      Q.      Is that a TCI skincare product?
Page 50
1       A.      Yes.
2       Q.      It has a launch date of
3               February 24th, 2021.
4               Do you see that?
5       A.      Yes.
6       Q.      Was that when this product was
7               released to the public?
8       A.      I believe so. It would have
9               been within weeks or months, if that's not
10              the exact date.

---

Defendant's Counter-Designation of Karissa Bodnar
(56:15-22):

Page 56
15      Q.      Do you have a main site?
16      A.      Yes, thrivecausemetics.com.
17      Q.      Has that always been TCI's main
18              site?
19      A.      Yes.
20      Q.      When did that site go live?
21      A.      To the best of my memory, it
22              was 2014.

<u>Plaintiff's Designation of K. Bodnar 30(b)(6) (57:19-58:1)</u>

<u>Page 57</u>

| | | |
|---|---|---|
| 19 | Q. | Before you started those efforts, |
| 20 | | did you do any kind of search to see if the |
| 21 | | Thrive Causemetics name was in use by any |
| 22 | | other entity? |
| 23 | A. | I don't remember. I don't |
| 24 | | recall. |
| 25 | Q. | You may have? |

<u>Page 58</u>

| | | |
|---|---|---|
| 1 | A. | I don't recall. |

<u>Plaintiff's Designation of K. Bodnar 30(b)(6) (58:14-59:11)</u>

<u>Page 58</u>

| | | |
|---|---|---|
| 14 | Q. | During those |
| 15 | | years, 2013 and 2014, did you ever do any kind |
| 16 | | of check to see if there were any other |
| 17 | | entities using Thrive or Causemetics in |
| 18 | | similar markets? |
| 19 | A. | From that time, I don't |
| 20 | | recall. |
| 21 | Q. | Do you know if you did a Google |
| 22 | | search for other companies with similar names? |
| 23 | A. | I don't recall. |
| 24 | Q. | Do you know if you checked the |
| 25 | | trademark database for companies with a |

<u>Page 59</u>

| | | |
|---|---|---|
| 1 | | similar name? |
| 2 | A. | Are you asking about 2013 or |
| 3 | | 2014? |
| 4 | Q. | Yes. |
| 5 | A. | I don't recall. |
| 6 | Q. | Did you ask anyone else to do |

16

| | | |
|---|---|---|
| 7 | | searches like that during the 2013-2014 time |
| 8 | | period? |
| 9 | A. | It would have been -- it would |
| 10 | | have been only me at the time, so no, to |
| 11 | | the best of my memory. |

| | Defendant's Objections: |
|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (78:15-79:4) | |
| | Page 78:15-79:4: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (long predates sale of skincare products) |
| Page 78 | |
| 15   Q.   In that 2014-2015 time period, | |
| 16         did you pitch retailers to carry Thrive | |
| 17         Causemetics products? | |
| 18   A.   I did, yes. | Plaintiff's Response: |
| 19   Q.   Who and what retailers did you | |
| 20         make pitches too? | Questions lay foundation |
| 21   A.   I am smiling because I was | for subsequent questions |
| 22         very unsuccessful in pitching those | and document |
| 23         retailers. I don't even know if I got | demonstrating Ms. Bodnar |
| 24         responses from my emails that I sent. | pitched products to Sephora |
| 25         But I was trying to get the | which referred to Defendant |
| Page 79 | as "Thrive" alone and |
| 1         brand carried. I had -- my dream at the | included planned expansion |
| 2         time was to have the products carried at | into skincare market in |
| 3         Nordstrom or Sephora, a retailer like | 2016, contrary to her |
| 4         that. I was unsuccessful in that, though. | statements made to |
| | Plaintiff's CEO around the |
| | same time. |

| | |
|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (82:21-83:10) | |
| Page 82 | |
| 21   Q.   Were there any other channels | |
| 22         through which TCI products were sold? | |
| 23   A.   Not intentionally, no. | |
| 24   Q.   What do you mean by not | |
| 25         intentionally? | |
| Page 83 | |

| | | |
|---|---|---|
| 1 | A. | People can purchase our |
| 2 | | products and then resell them on websites |
| 3 | | that we don't authorize. |
| 4 | Q. | Does that happen from time to |
| 5 | | time? |
| 6 | A. | Unfortunately, yes. And we -- |
| 7 | | an example would be, like, an Amazon. We |
| 8 | | don't authorize that our products are sold |
| 9 | | on Amazon and quite honestly can't even |
| 10 | | verify whether it's our product or not. |

Defendant's Counter-Designation of Karissa Bodnar (83:11-16):

Page 83

| | | |
|---|---|---|
| 11 | Q. | Does TCI sell products itself on |
| 12 | | Amazon? |
| 13 | A. | We do not, no. |
| 14 | Q. | Has it ever? |
| 15 | A. | To the best of my knowledge, |
| 16 | | no. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (86:13-87:1)

Page 86

| | | |
|---|---|---|
| 13 | | Exhibit No. 16 marked for |
| 14 | | identification.) |
| . . . | | |
| 16 | Q. | Ms. Bodnar, do you have |
| 17 | | Exhibit 16 in front of you? |
| 18 | A. | Let me just move my screen. |
| 19 | Q. | Sure. |
| 20 | A. | Yes. |
| 21 | Q. | Do you recognize this exhibit? |
| 22 | A. | If it looks like a product |
| 23 | | list. |
| 24 | Q. | Was this prepared for this case? |
| 25 | A. | At the top it says, Thrive |

18

| | |
|---|---|
| <u>Page 87</u><br>1         Causemetics, Inc., so I would believe so. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (87:7-89:22)</u><br><br><u>Page 87</u><br>7    Q.    I'm going to ask you about the<br>8          columns in the document first.<br>9          There's a column that says First<br>10        Sale.<br>11        Do you see that?<br>12    A.    Yes.<br>13    Q.    What does that mean on this<br>14        document?<br>15    A.    I believe, to the best of my<br>16        knowledge, it would mean the first time we<br>17        sold it on thrivecausemetics.com.<br>18    Q.    And the price, that's the price<br>19        of that first sale?<br>20    A.    Without reviewing all of<br>21        these, to the best of my knowledge, I<br>22        believe that yes, that would be first<br>23        price point.<br>24    Q.    And it looks -- I guess, can you<br>25        describe to me what the Channel column<br>           means,<br><u>Page 88</u><br>1        if you know?<br>2    A.    Yes. It's the channel in<br>3        which it's sold.<br>. . .<br>10    A.    But yes. The channel would<br>11        be -- it looks like they're all labeled as<br>12        our online store.<br>13    Q.    Each of these would be considered<br>14        a SKU that TCI has sold?<br>15    A.    Yes.<br><u>Page 88</u> | |

| | | |
|---|---|---|
| 20 | Q. | On the third page, there's a |
| 21 | | product called Buildable Blur CC Cream. Do |
| 22 | | you see a there's a number of listings for |
| 23 | | that? |

. . .

<u>Page 89</u>

| | | |
|---|---|---|
| 1 | Q. | Oh, yes, I do. |

. . .

| | | |
|---|---|---|
| 4 | Q. | What is Buildable Blur CC Cream? |
| 5 | A. | Buildable Blur CC Cream is |
| 6 | | defined as a CC cream, which is a product |
| 7 | | that -- I actually have it on today. It's |
| 8 | | on -- it's right here on my face. |
| 9 | Q. | What is a CC cream? |
| 10 | A. | A CC cream is a product that |
| 11 | | covers up imperfections, evens out your |
| 12 | | skin tone. |
| 13 | Q. | And does it moisturize the skin? |
| 14 | A. | Depending on the skin type, |
| 15 | | yes. |
| 16 | Q. | Is it advertised by TCI as a |
| 17 | | moisturizer? |
| 18 | A. | I don't recall. |
| 19 | Q. | And the product description is |
| 20 | | broad spectrum SPF 35. Is this product a |
| 21 | | sunscreen as well? |
| 22 | A. | It does have sunscreen in it. |

<u>Defendant's Counter-Designation of Karissa Bodnar</u>
<u>(92:23-93:2; 93:13-21)</u>:

<u>Page 92</u>

| | | |
|---|---|---|
| 23 | Q. | Would Buildable Blur be |
| 24 | | considered a skincare product? |
| 25 | A. | I personally think of |

<u>Page 93</u>

| | | |
|---|---|---|
| 1 | | Buildable Blur CC Cream as more of a |

| | | |
|---|---|---|
| 2 | | makeup product. | |
| 13 | Q. | Do you consider Buildable Blur a | |
| 14 | | makeup product? | |
| 15 | A. | Yes. | |
| 16 | Q. | Why is that? | |
| 17 | A. | Because of pigment that's in | |
| 18 | | it. It's shaded. So currently we have 18 | |
| 19 | | shades. And it really is helping to | |
| 20 | | improve the appearance of the skin from | |
| 21 | | a -- the same way makeup would. | |

| | |
|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (98:19-100:9) | Defendant's Objections: |
| | Page 99:3-100:9: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (long predates sale of skincare products) |
| Page 98 | |
| 19    (Exhibit No. 17 marked for | |
| 20    identification.) | |
| . . . | |
| Page 99 | |
| 3    Q.    Okay. Do you have Exhibit 17 in | Plaintiff's Response: |
| 4          front of you? | |
| 5    A.    Yes. | Ms. Bodnar emailed |
| 6    Q.    Starting with the first page, | Plaintiff in 2016 claiming |
| 7          it's an email from you to Jennifer Cohen at | her company only sold color |
| 8          Sephora. Do you see that? | cosmetics and would always |
| 9    A.    Yes. | use the term "Thrive" |
| 10   Q.    Do you recognize the document | together with the term |
| 11         that is Exhibit 17? | "Causemetics". This |
| 12   A.    I recognize that it's from my | document, from around the |
| 13         email to Jennifer Cohen. | same time as Ms. Bodnar's |
| 14   Q.    The following attachment is a | email, is relevant to |
| 15         slide show, do you recognize that slide | demonstrate: (1) date of |
| |          show? | Defendant's plans to expand |
| 16   A.    I am scrolling through it. | into skincare market and |
| 17   Q.    Okay. | Defendant's frequent use of |
| 18   A.    Yes. | the term "Thrive" alone to |
| 19   Q.    What is this document? | refer to its company, both of |
| 20   A.    This looks like a presentation | which contradict statements |

21

| | | | |
|---|---|---|---|
| 21 | | -- based on this email, it looks like a | made by Ms. Bodnar to |
| 22 | | presentation that we were trying to make | Plaintiff; (2) Ms. Bodnar |
| 23 | | to Sephora. | hid information concerning |
| 24 | Q. | And you mentioned that earlier in | expansion plans from |
| 25 | | the deposition, right, that you pitched to | Plaintiff in 2016 email, |
| Page 100 | | | supporting Plaintiff's |
| 1 | | Sephora? | opposition to laches |
| 2 | A. | Yes. | defense; and (3) |
| 3 | Q. | Did you create this presentation? | Defendant's long used the |
| 4 | A. | I don't recall. | term "Thrive" alone to refer |
| 5 | Q. | Do you know who else would have | to itself supports a finding |
| 6 | | been involved in creating this presentation? | of false designation of |
| 7 | A. | It was -- I am just looking at | origin or infringement based |
| 8 | | the email date. It would have been | on confusion as to the |
| 9 | | somebody at Thrive Causemetics. | affiliation of the parties, |
| | | | which have both been |
| | | | known by the name |
| | | | "Thrive" for years. |

| | |
|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (100:14-102:12) | Defendant's Objections: |
| | Page 100:14-101:14: |
| **Page 100** | Irrelevant, Fed. Evid. 401, |
| 14   Q.   Do you recall sending it to | 402; Prejudicial, Fed. R. |
| 15         someone at Sephora? | Evid. 403 (long predates |
| 16   A.   Other than the seeing the date | sale of skincare products) |
| 17         from July 27, 2016, I don't specifically | |
| 18         remember sending it, but I believe that I | Page 101:15-102:12: |
| 19         did. | Irrelevant, Fed. Evid. 401, |
| 20   Q.   Do you have any reason to doubt | 402; Prejudicial, Fed. R. |
| 21         the accuracy of this document? | Evid. 403 (relates solely to |
| 22   A.   No. | abandoned color cosmetics |
| 23   Q.   If you would turn -- I guess, can | claim) |
| 24         you tell me, do you know who Jennifer | |
| |         Cohen at | Plaintiff's Response: |
| 25         Sephora is? | |
| **Page 101** | Ms. Bodnar emailed |
| 1   A.   Yes. | Plaintiff in 2016 claiming |
| 2   Q.   Did you know Jennifer Cohen at | her company only sold color |

| | | | |
|---|---|---|---|
| 3 | | Sephora? | cosmetics and would always |
| 4 | A. | Yes, I met her. | use the term "Thrive" |
| 5 | Q. | And what was the purpose sending | together with the term |
| 6 | | this slide set to her? | "Causemetics". This |
| 7 | A. | To schedule a follow-up phone | document, from around the |
| 8 | | conversation. | same time as Ms. Bodnar's |
| 9 | Q. | To do what? | email, is relevant to |
| 10 | A. | To speak with her about Thrive | demonstrate: (1) date of |
| 11 | | Causemetics. | Defendant's plans to expand |
| 12 | Q. | Did you want Sephora to sell | into skincare market and |
| 13 | | Thrive Causemetics? | Defendant's frequent use of |
| 14 | A. | At the time, yes. | the term "Thrive" alone to |
| 15 | Q. | Can you turn to Bates number that | refer to its company, both of |
| 16 | | ends in 9125, please? | which contradict statements |
| 17 | A. | Yes. | made by Ms. Bodnar to |
| 18 | Q. | Can you read the title at the top | Plaintiff; (2) Ms. Bodnar |
| 19 | | of this page? | hid information concerning |
| 20 | A | .Thrive In the News. | expansion plans from |
| 21 | Q. | Are you referring to Thrive | Plaintiff in 2016 email, |
| 22 | | Causemetics? | supporting Plaintiff's |
| 23 | A. | Yes. The logo is on the | opposition to laches |
| 24 | | presentation, the Thrive Causemetics logo. | defense; and (3) |
| 25 | Q. | And in this title, you're just | Defendant's long used the |
| Page 102 | | | term "Thrive" alone to refer |
| 1 | | saying Thrive, right? | to itself supports a finding |
| 2 | A. | This title, yes. | of false designation of |
| 3 | Q. | Can you turn to Bates No. 9133, | origin or infringement based |
| 4 | | please? Just let me know when you're there. | on confusion as to the |
| 5 | A. | Yes. | affiliation of the parties, |
| 6 | Q. | Can you read the title at the top | which have both been |
| 7 | | of this page, please? | known by the name |
| 8 | A. | "Celebrity makeup artists use | "Thrive" for years. |
| 9 | | plus recommend Thrive." | |
| 10 | Q. | Is that referring to Thrive | |
| 11 | | Causemetics again? | |
| 12 | A. | Yes. | |

| | |
|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (103:6-14) | Defendant's Objections: |

| | | |
|---|---|---|
| <u>Page 103</u> | | Page 103:6-8, 11-14: |
| 6 | Q. This document quotes Melissa | Irrelevant, Fed. Evid. 401, |
| 7 | Schleicher. Can you read the quote from her, | 402; Prejudicial, Fed. R. |
| 8 | please? | Evid. 403 (relates solely to |
| . . . | | abandoned color cosmetics |
| 11 | Q. "When my clients | claim) |
| 12 | are hitting the red carpet, I immediately grab | |
| | | <u>Plaintiff's Response:</u> |
| 13 | for my Thrive products. I love everything | |
| 14 | else they make." | Relevant to demonstrate: (1) |
| | | Defendant's frequent use of |
| | | the term "Thrive" alone to |
| | | refer to its company, which |
| | | contradicts statements made |
| | | by Ms. Bodnar to Plaintiff; |
| | | and (2) Defendant's long |
| | | used the term "Thrive" |
| | | alone to refer to itself |
| | | supports a finding of false |
| | | designation of origin or |
| | | infringement based on |
| | | confusion as to the |
| | | affiliation of the parties, |
| | | which have both been |
| | | known by the name |
| | | "Thrive" for years. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (104:12-20)</u> | | <u>Defendant's Objections:</u> |
| | | Page 104:12-13, 16-20: |
| <u>Page 104</u> | | Irrelevant, Fed. Evid. 401, |
| 12 | Q. Can you read the next quote | 402; Prejudicial, Fed. R. |
| 13 | that's attributed to Jamie Greenberg, please? | Evid. 403 (relates solely to abandoned color cosmetics |
| . . . | | claim) |
| 16 | Q. "I can't get | |
| 17 | enough. If Thrive makes it, I use it on my | <u>Plaintiff's Response:</u> |
| 18 | clients because they are the most effective | |
| 19 | products I've ever used. The cause is near | |
| 20 | and dear to my heart." | |

|  | Relevant to demonstrate: (1) Defendant's frequent use of the term "Thrive" alone to refer to its company, which contradicts statements made by Ms. Bodnar to Plaintiff; and (2) Defendant's long used the term "Thrive" alone to refer to itself supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties, which have both been known by the name "Thrive" for years. |
|---|---|
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (105:2-106:2)</u><br><br><u>Page 105</u><br>2   Q.   It uses the word Thrive to refer<br>3          to Thrive Causemetics, doesn't it?<br>. . .<br>6   A.   Yes.<br>. . .<br>8   Q.   Can you read the third quote<br>9          attributed to Elena George?<br>. . .<br>12  A.   "Thrive has changed<br>13         the game and I am grateful to be a part of the<br>14         team. I use their products on all of my<br>15         celebrity clientele because they are safe,<br>16         effective and give back."<br>. . .<br>21  Q.   This's several instances just on | <u>Defendant's Objections:</u><br><br>Page 105:2-3, 6, 8-9, 12-16, 21-23, 106:2: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to abandoned color cosmetics claim)<br><br><u>Plaintiff's Response</u>:<br><br>Relevant to demonstrate: (1) Defendant's frequent use of the term "Thrive" alone to refer to its company, which contradict statements made by Ms. Bodnar to Plaintiff; and (2) Defendant's long used the term "Thrive" alone to refer to itself |

| | |
|---|---|
| 22      this page referring to Thrive Causemetics just<br>23      as Thrive, are there not?<br>. . .<br><u>Page 106</u><br>2   A.   Yes. | supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties, which have both been known by the name "Thrive" for years. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (107:5-9)</u><br><br><u>Page 107</u><br>5   Q.   But did you take any specific<br>6      steps so that -- to request that these people<br>7      always use the name Thrive Causemetics rather<br>8      than just Thrive?<br>9   A.   I don't recall. | <u>Defendant's Objections:</u><br><br>Page 107:5-9: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to abandoned color cosmetics claim)<br><br><u>Plaintiff's Response:</u><br><br>Ms. Bodnar contacted Plaintiff in 2016 claiming she would always use the term "Thrive" together with the term "Causemetics". This testimony indicates Ms. Bodnar made no such attempt to do what she claimed in her email to Plaintiff. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (109:3-9)</u><br><br><u>Page 109</u><br>3   Q.   Can you turn to page 9134 in<br>4      Exhibit 17, please?<br>5   A.   Yes. I am there.<br>6   Q.   Can you read the title at the top<br>7      of the page? | <u>Defendant's Objections:</u><br><br>Page 109:3-9: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (long predates sale of skincare products) |

| | | | |
|---|---|---|---|
| 8<br>9 | A. | Thrive at New York Fash- or<br>NYFW. | Plaintiff's Response:<br><br>Relevant to demonstrate: (1) Defendant's frequent use of the term "Thrive" alone to refer to its company, which contradict statements made by Ms. Bodnar to Plaintiff; and (2) Defendant's long used the term "Thrive" alone to refer to itself supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties, which have both been known by the name "Thrive" for years. |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (109:14-111:3) | | | Defendant's Objections: |
| | | | Page 109:14-110:15; 110:17-25; 111:3: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (long predates sale of skincare products) |
| Page 109 | | | |
| 14 | Q. | Can you turn to page 9155, | |
| 15 | | please. Let me know when you're there. This | |
| 16 | | page is titled, Product 2017, right? | Plaintiff's Response: |
| 17 | A. | Yes. | |
| 18 | Q. | Under the list for Q3, there is a | Ms. Bodnar emailed |
| 19 | | Hero Skincare SKU. | Plaintiff in 2016 claiming |
| 20 | | Do you see that? | her company only sold color |
| 21 | A. | I see that on this page, yes. | cosmetics and would always |
| 22 | Q. | What was meant by that? | use the term "Thrive" |
| 23 | A. | I don't recall. | together with the term |
| 24 | Q. | What is a hero to you? What does | "Causemetics". This |
| 25 | | that mean? | document, from around the |
| Page 110 | | | same time as Ms. Bodnar's |
| 1 | A. | At Sephora, they refer to hero | |
| 2 | | SKUs as -- they say hero SKU when talking | |

| | | | |
|---|---|---|---|
| 3 | | about products that are popular is really | email, is relevant to |
| 4 | | how they refer to it. | demonstrate: (1) date of |
| 5 | Q. | When this document was created, | Defendant's plans to expand |
| 6 | | what was the plan regarding a hero skincare | into skincare market and |
| 7 | | SKU in 2017? | Defendant's frequent use of |
| 8 | A. | I don't recall. | the term "Thrive" alone to |
| 9 | Q. | Did TCI plan to release a | refer to its company, both of |
| 10 | | skincare SKU in the third quarter of 2017? | which contradict statements |
| 11 | A. | I don't recall. | made by Ms. Bodnar to |
| 12 | Q. | Do you have any reason to doubt | Plaintiff; (2) Ms. Bodnar |
| 13 | | that at this time of these slides, TCI did | hid information concerning |
| 14 | | have plans to release the hero skincare SKU in | expansion plans from |
| 15 | | 2017? | Plaintiff in 2016 email, supporting Plaintiff's |
| . . . | | | opposition to laches |
| 17 | A. | I don't recall. | defense; and (3) |
| 18 | | But as a whole, this isn't representative of | Defendant's long used the |
| 19 | | what actually wound up happening from a | term "Thrive" alone to refer |
| 20 | | product launch perspective. | to itself supports a finding |
| . . . | | | of false designation of |
| 22 | Q. | I understand that. But it | origin or infringement based |
| 23 | | appears to indicate that TCI had a plan to | on confusion as to the |
| 24 | | release a skincare SKU in Q3, 2017; is that | affiliation of the parties, |
| 25 | | correct? | which have both been |
| Page 111 | | | known by the name |
| . . . | | | "Thrive" for years. |
| 3 | A. | I don't recall. | |

| | | | |
|---|---|---|---|
| Defendant's Counter-Designation of Karissa Bodnar (111:5-7; 9-18) [only if objections to preceding designation are overruled]: | | | |
| | | | |
| Page 111 | | | |
| 5 | Q. | Well, that's what it says here. | |
| 6 | | Do you have any reason to doubt what it says | |
| 7 | | here? | |
| | | | |
| 9 | A. | Yes. Yes, I do. | |

| | | | |
|---|---|---|---|
| . . . | | | |
| 11 | Q. | What is your reason to doubt? | |
| 12 | A. | The other inaccuracies on | |
| 13 | | here. Almost none of the things on the | |
| 14 | | slide are accurate from a timing and | |
| 15 | | actual -- for example, Q3, it says mascara | |
| 16 | | II. We never launched a second mascara. | |
| 17 | | Our mascara did not launch in Q1 of 2017. | |
| 18 | | So there's just a lot of inaccuracies. | |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (111:24-113:3) | | Defendant's Objections: |
| | | |
| | | Page 111:24-112:10; |
| Page 111 | | 112:14-16; 112:19-20; |
| 24  Q.  Below it says, Q4 skincare | | 112:22-24: Irrelevant, Fed. |
| 25      rollout five SKUs. | | Evid. 401, 402; Prejudicial, |
| Page 112 | | Fed. R. Evid. 403 (long |
| 1       Do you see that? | | predates sale of skincare |
| 2  A.   I do see that on this | | products) |
| 3       document. | | |
| 4  Q.   What is that referring to? | | Page 112:25-113:3: |
| 5  A.   I don't recall. | | Irrelevant, Fed. Evid. 401, |
| 6  Q.   What five SKUs were planned? | | 402; Prejudicial, Fed. R. |
| 7  A.   I don't recall. | | Evid. 403 (relates solely to |
| 8  Q.   Is it correct these five SKUs | | abandoned color cosmetics |
| 9       were planned to be released, according to your | | claim) |
| 10      plans, on July 2016? | | |
| . . . | | Plaintiff's Response: |
| 12  A.  I don't recall. | | |
| . . . | | Ms. Bodnar emailed |
| 14  Q.  Did you make any attempt to make | | Plaintiff in 2016 claiming |
| 15      sure you provided Sephora with correct | | her company only sold color |
| 16      information as to TCI's plans? | | cosmetics and would always |
| . . . | | use the term "Thrive" |
| 19  A.  Honestly, I just | | together with the term |
| 20      don't recall. | | "Causemetics". This |
| . . . | | document, from around the |
| | | same time as Ms. Bodnar's |
| 22  Q.  But you could have had plans to | | email, is relevant to |

29

| | | | |
|---|---|---|---|
| 23 | | release skincare SKUs as of July 2016? | demonstrate: (1) date of Defendant's plans to expand into skincare market and Defendant's frequent use of the term "Thrive" alone to refer to its company, both of which contradict statements made by Ms. Bodnar to Plaintiff; (2) Ms. Bodnar hid information concerning expansion plans from Plaintiff in 2016 email, supporting Plaintiff's opposition to laches defense; and (3) Defendant's long used the term "Thrive" alone to refer to itself supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties, which have both been known by the name "Thrive" for years. Also relevant to Defendant's arguments to the USPTO that the parties sold different products, when indeed Defendant already had plans to sell skincare in direct competition with Plaintiff. |
| 24 | A. | Perhaps. | |
| 25 | Q. | Turning to the next page, 9156. | |
| Page 113 | | | |
| 1 | | Can you read the title at the top of the page, | |
| 2 | | please? | |
| 3 | A. | "Thrive at Sephora." | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (113:10-13) | | | Defendant's Objections: |
| | | | |
| Page 113 | | | Page 113:10-13: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to |
| 10 | Q. | Can you read the last sentence, | |
| 11 | | the last quote attributed to a Kathy Lund? | |

| | | |
|---|---|---|
| 12  A.   "Excited to try more from<br>13          Thrive." | abandoned color cosmetics claim)<br><br>Plaintiff's Response:<br><br>Relevant to demonstrate: (1) Defendant's frequent use of the term "Thrive" alone to refer to its company, which contradicts statements made by Ms. Bodnar to Plaintiff; and (2) Defendant's long used the term "Thrive" alone to refer to itself supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties, which have both been known by the name "Thrive" for years. | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (113:24-114:1)<br><br>Page 113<br>24  Q.   Have you known customers of TCI<br>25        to refer to Thrive alone?<br>Page 114<br>1   A.   Yes. | Defendant's Objections:<br><br>Page 113:24-114:1: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to abandoned color cosmetics claim)<br><br>Plaintiff's Response:<br><br>Ms. Bodnar contacted Plaintiff in 2016 claiming she would always use the term "Thrive" together with the term "Causemetics". This testimony shows she | |

|  |  |
|---|---|
|  | knew that was untrue. Further, this testimony supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties, which are both known as "Thrive" and Ms. Bodnar's knowledge that moving into skincare under that name would be likely to cause confusion with Plaintiff. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (114:3-4)</u><br><br><u>Page 114</u><br>3    (Exhibit No. 18 marked for<br>4    identification.) |  |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (114:13-23)</u><br><br><u>Page 114</u><br>13  Q.   And this is your email to Jenni<br>14       Bodnar, dated January 8, 2016; is that<br>15       correct?<br>16  A.   Yes.<br>17  Q.   Who is Jenni Bodnar?<br>18  A.   My mother.<br>19  Q.   And what involvement did she have<br>20       with TCI at this time?<br>21  A.   She did order fulfillment.<br>22       She is my mom, so she did, you know,<br>23       whatever -- whatever I needed help with. |  |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (115:5-16)</u><br><br><u>Page 115</u> | <u>Defendant's Objections:</u> |

| | | | |
|---|---|---|---|
| 5 | Q. | Do you know who created these | Page 115:5-16: Irrelevant, |
| 6 | | slides? | Fed. Evid. 401, 402; |
| 7 | A. | I don't recall. | Prejudicial, Fed. R. Evid. |
| 8 | Q. | Could it have been you? | 403 (long predates sale of |
| 9 | A. | Yes, it could have been. | skincare products) |
| 10 | Q. | And you sent them to your mother | |
| 11 | | in January 2016? | Plaintiff's Response: |
| 12 | A. | I don't recall sending it, but | |
| 13 | | it looks like I did, based on this email. | Ms. Bodnar emailed |
| 14 | Q. | Do you have any reason to doubt | Plaintiff in 2016 claiming |
| 15 | | that you did? | her company only sold color |
| 16 | A. | No. | cosmetics and would always |
| | | | use the term "Thrive" |
| | | | together with the term |
| | | | "Causemetics". This |
| | | | document, which predates |
| | | | Ms. Bodnar's email to |
| | | | Plaintiff, is relevant to |
| | | | demonstrate: (1) date of |
| | | | Defendant's plans to expand |
| | | | into skincare market and |
| | | | Defendant's frequent use of |
| | | | the term "Thrive" alone to |
| | | | refer to its company, both of |
| | | | which contradict statements |
| | | | made by Ms. Bodnar to |
| | | | Plaintiff; (2) Ms. Bodnar |
| | | | hid information concerning |
| | | | expansion plans from |
| | | | Plaintiff in 2016 email, |
| | | | supporting Plaintiff's |
| | | | opposition to laches |
| | | | defense; and (3) |
| | | | Defendant's long used the |
| | | | term "Thrive" alone to refer |
| | | | to itself supports a finding |
| | | | of false designation of |
| | | | origin or infringement based |
| | | | on confusion as to the |

| | | | affiliation of the parties, which have both been known by the name "Thrive" for years. |
|---|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (116:11-117:4) | | | Defendant's Objections: |
| Page 116 | | | Page 116:11-117:1; 117:4: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to abandoned color cosmetics claim) |
| 11 | Q. | Could you turn to page 9099? Are | |
| 12 | | you with me? | |
| 13 | A. | Yes. | |
| 14 | Q. | Can you read the bold sentence | |
| 15 | | towards the top? | Plaintiff's Response: |
| 16 | A. | "Thrive is different in two | |
| 17 | | ways." | Ms. Bodnar contacted Plaintiff in 2016 claiming she would always use the term "Thrive" together with the term "Causemetics". This document, from around the same time of Ms. Bodnar's statements, demonstrates that statement is untrue and that she hid information in her email to Plaintiff in 2016. The information in this document is also relevant to show Defendant has long used the term "Thrive" alone to refer to itself, which supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties. |
| 18 | Q. | And the two sentences below that? | |
| 19 | A. | "Thrive is the only | |
| 20 | | cause-based beauty company. Thrive has | |
| 21 | | propriety product development." | |
| 22 | Q. | Are these referring to Thrive | |
| 23 | | Causemetics? | |
| 24 | A. | Yes. | |
| 25 | Q. | I don't see Causemetics anywhere | |
| Page 117 | | | |
| 1 | | on this page. Do you? | |
| . . . | | | |
| 4 | A. | No. | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (117:19-118:11) | | | Defendant's Objections: |

| | | | |
|---|---|---|---|
| Page 117 | | | Page 117:19-118:8; 118:11: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (long predates sale of skincare products) |
| 19 | Q. | Can you go to page 9101? | |
| 20 | A. | Yes. | |
| 21 | Q. | And states at the top: Product | |
| 22 | | Road Map 2017. | |
| 23 | | Do you see that? | |
| 24 | A. | Mm-hmm. I do, yes. | |
| 25 | Q. | What is meant by Product Road Map | |

Page 117:19-118:8; 118:11: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (long predates sale of skincare products)

Page 117

19 Q. Can you go to page 9101?
20 A. Yes.
21 Q. And states at the top: Product
22     Road Map 2017.
23     Do you see that?
24 A. Mm-hmm. I do, yes.
25 Q. What is meant by Product Road Map

Page 118

1     2017?
2 A. I don't recall.
3 Q. Do you know if this was accurate
4     as of January 2016?
5 A. I don't recall.
6 Q. Could this have been
7     representative of Thrive's plans as of
8     January 2016?
. . .
11 A. I don't recall.

Plaintiff's Response: Ms. Bodnar emailed Plaintiff in 2016 claiming her company only sold color cosmetics and would always use the term "Thrive" together with the term "Causemetics". This document, which predates Ms. Bodnar's email to Plaintiff, is relevant to demonstrate: (1) date of Defendant's plans to expand into skincare market and Defendant's frequent use of the term "Thrive" alone to refer to its company, both of which contradict statements made by Ms. Bodnar to Plaintiff; (2) Ms. Bodnar hid information concerning expansion plans from Plaintiff in 2016 email, supporting Plaintiff's opposition to laches defense; and (3) Defendant's long used the term "Thrive" alone to refer to itself supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties,

| | |
|---|---|
| | which have both been known by the name "Thrive" for years. |
| <u>Defendant's Counter-Designation of Karissa Bodnar (118:20-119:1) [only if objections to preceding designation are overruled]</u>:<br><br><u>Page 118</u><br>20  Q.   Sure. Do you recall any of TCI's<br>21         plans for future products as of January<br>            2016?<br>22  A.   I remember us working on<br>23         mascara that would ultimately become<br>24         Liquid Lash Extensions -- Liquid Lash<br>25         Extensions Mascara is what I recall from<br><u>Page 119</u><br>1         that time. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (119:2-121:5)</u><br><br><u>Page 119</u><br>2  Q.   This document states, "Skincare;<br>3         three SKUs." Do you see that?<br>4  A.   I see it on the document.<br>5  Q.   Was that accurate for TCI's plan<br>6         as of January 2016?<br>. . .<br>8  A.   I don't recall.<br>. . .<br>10  Q.   So it's possible that could have<br>11        been an accurate description of TCI's plans as<br>12        of January 2016?<br>13  A.   I don't recall.<br>14  Q.   Do you have any reason to doubt<br>15        the date of the email sending these slides?<br>16  A.   No.<br>17  Q.   It came from your account, right? | <u>Defendant's Objections</u>:<br><br>Page 119:2-119:6; 119:8; 119:10-24; 120:2, 4-6, 9, 11-14, 17, 19-21: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (long predates sale of skincare products)<br><br>Page 120:22-121:5: Hearsay, Fed. R. Evid. 802; No foundation, Fed. R. Evid. 602.<br><br><u>Plaintiff's Response</u>:<br><br>Ms. Bodnar emailed Plaintiff in 2016 claiming her company only sold color cosmetics and would always |

| | | | |
|---|---|---|---|
| 18 | A. | Yes. | use the term "Thrive" together with the term "Causemetics". This document, which predates Ms. Bodnar's email to Plaintiff, is relevant to demonstrate: (1) date of Defendant's plans to expand into skincare market and Defendant's frequent use of the term "Thrive" alone to refer to its company, both of which contradict statements made by Ms. Bodnar to Plaintiff; (2) Ms. Bodnar hid information concerning expansion plans from Plaintiff in 2016 email, supporting Plaintiff's opposition to laches defense; and (3) Defendant's long used the term "Thrive" alone to refer to itself supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties, which have both been known by the name "Thrive" for years. |
| 19 | Q. | So we could check your account to | |
| 20 | | make sure the date is accurate, right? | |
| 21 | A. | Yes. | |
| 22 | Q. | And this document states, | |
| 23 | | "Skincare; three SKUs." And it was sent | |
| 24 | | January 2016; is that right? | |

. . .

Page 120

. . .

| | | |
|---|---|---|
| 2 | A. | Yes. |

. . .

| | | |
|---|---|---|
| 4 | Q. | So is it reasonable to believe |
| 5 | | somebody within TCI planned skincare releases |
| 6 | | in 2017? |

. . .

| | | |
|---|---|---|
| 9 | A. | I don't know. |

. . .

| | | |
|---|---|---|
| 11 | Q. | Do you know where this |
| 12 | | information might have come from? |
| 13 | A. | I don't recall. |
| 14 | Q. | You could have written this? |

. . .

| | | |
|---|---|---|
| 17 | A. | I don't know. |

. . .

| | | |
|---|---|---|
| 19 | Q. | And you don't recall if anybody |
| 20 | | else might have written this? |
| 21 | A. | No. |
| 22 | Q. | Going onto the next page, 9102. |
| 23 | | Can you read the bullet point at the top, |
| 24 | | please? |
| 25 | A. | "89 percent of US |

Page 121

| | | |
|---|---|---|
| 1 | | customers" -- sorry. |
| 2 | | "89 percent of US consumers |
| 3 | | are likely to switch brands to one |
| 4 | | associated with a cause, given comparable |
| 5 | | price and quality." |

| | |
|---|---|
| <u>Defendant's Counter-Designation of Karissa Bodnar</u> <u>(121:6-12) [only if objections to preceding designation</u> <u>are overruled]</u>:<br><br><u>Page 121</u><br>6    Q.    Is that accurate?<br>7    A.    It's attributed to 2013 study<br>8          done by (inaudible) Communications.<br>9    Q.    Do you recall reviewing that<br>10       study?<br>11   A.    I don't recall reviewing the<br>12       study, no. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (121:13-16)</u><br><br><u>Page 121</u><br>13   Q.    Is there any reason to doubt the<br>14       accuracy of this information in this TCI<br>15       slide?<br>16   A.    No. | <u>Defendant's Objections:</u><br><br>Page 121:13-16: Hearsay, Fed. R. Evid. 802; No foundation, Fed. R. Evid. 602.<br><br><u>Plaintiff's Response:</u><br><br>Not hearsay, as it is an admission of a party opponent. FRE 802(d)(2). Witness demonstrated personal knowledge of document, permitting admission under FRE 602. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (122:23-124:6)</u><br><br><u>Page 122</u><br>23   Q.    Can you go to page 9105, please?<br>24   A.    I am there.<br>25   Q.    Can you read the title at the top | <u>Defendant's Objections:</u><br><br>Page 122:23-124:6: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to |

| Page 123 | | | | abandoned color cosmetics claim) |
|---|---|---|---|---|
| 1 | | | of the page? | |
| 2 | A. | | "Thrive in the news." | Plaintiff's Response: |
| 3 | Q. | | Is Causemetics on this page | |
| 4 | | | anywhere? | Relevant to demonstrate: (1) |
| 5 | A. | | No. | Defendant's frequent use of |
| 6 | Q. | | To your understanding, is the | the term "Thrive" alone to |
| 7 | | | term "Thrive" referring to Thrive | refer to its company, which |
| | | | Causemetics? | contradicts statements made |
| 8 | A. | | Yes. | by Ms. Bodnar to Plaintiff; |
| 9 | Q. | | Can you go the next page, 9106, | and (2) Defendant's long |
| 10 | | | please? Are you with me? | used the term "Thrive" |
| 11 | A. | | Yeah, I am. | alone to refer to itself |
| 12 | Q. | | Can you read the quote attributed | supports a finding of false |
| 13 | | | to Michelle Phan, please? | designation of origin or |
| 14 | A. | | "Thrive's products are | infringement based on |
| 15 | | | unprecedented because of Karissa's | confusion as to the |
| 16 | | | tenacious drive to develop the best | affiliation of the parties, |
| 17 | | | products out there." | which have both been |
| 18 | Q. | | And can you read the next quote | known by the name |
| 19 | | | attributed to Elena George, please? | "Thrive" for years. |
| 20 | A. | | "Thrive has changed the game | |
| 21 | | | and I am grateful to be a part of the | |
| 22 | | | team. I use their products on Robin | |
| 23 | | | Roberts, Michele Gayle King, Vivica A. Fox | |
| 24 | | | and more. Everyone at ABC uses Thrive. | |
| 25 | | | It's the unofficial beauty brand of ABC." | |
| Page 124 | | | | |
| 1 | Q. | | Does the word "Causemetics" | |
| 2 | | | appear in these quotes anywhere? | |
| 3 | A. | | No. | |
| 4 | Q. | | Did it appear on this page | |
| 5 | | | anywhere? | |
| 6 | A. | | No. | |

| Plaintiff's Designation of K. Bodnar 30(b)(6) (125:2-5) | Defendant's Objections: |
|---|---|
| Page 125 | |

| | | | |
|---|---|---|---|
| 2 | Q. | Did you ever tell these people to | Page 125:2-5: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to abandoned color cosmetics claim) |
| 3 | | refer to Thrive Causemetics by its full name, | |
| 4 | | not just Thrive? | |
| 5 | A. | I don't recall. | |
| | | | Plaintiff's Response: |
| | | | Ms. Bodnar contacted Plaintiff in 2016 claiming she would always use the term "Thrive" together with the term "Causemetics". This testimony shows she knew that was untrue. Further, this testimony supports a finding of false designation of origin or infringement based on confusion as to the affiliation of the parties, which are both known as "Thrive". |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (129:1-7) | | | Defendant's Objections: |
| | | | |
| Page 129 | | | Page 129:1-7: Irrelevant, Fed. Evid. 401, 402 |
| 1 | Q. | And who were those angel | |
| 2 | | investors? | Plaintiff's Response: |
| 3 | A. | I don't recall specifically | Relevant to witness bias that both of her parents are investors in Defendant. *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) ("Evidence is relevant . . . if it has a mere tendency to impeach a |
| 4 | | for this time frame. A few of our angel | |
| 5 | | investors include Jenni Bodnar, Steve | |
| 6 | | Bodnar, Blythe Jack is another angel | |
| 7 | | investor. | |

| | |
|---|---|
| | witness' credibility by a showing of bias"). In addition, Blythe Jack is referenced in an exhibit in which she contacted Ms. Bodnar concerning Plaintiff and potential confusion with Plaintiff's brand. This testimony lays foundation for identity of Ms. Jack. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (137:6-14)</u><br><br>Page 137<br>6   Q.   Ms. Bodnar, does TCI advertise<br>7        with online advertisement?<br>8   A.   We advertise on Facebook,<br>9        Instagram, TickTok, to name a few.<br>10  Q.   And do you advertise on Google?<br>11  A.   Yes, we do.<br>12  Q.   And do you purchase keywords for<br>13       advertising purposes?<br>14  A.   Yes. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (137:25-138:16)</u><br><br>Page 137<br>25  Q.   Is there a target audience for<br>Page 138<br>1       TCI advertisement?<br>2   A.   I mean, I would say women are<br>3       the target audience. However, we believe<br>4       in being inclusive, so we don't exclude<br>5       anybody from being able to use our<br>6       products, whether it's purchasing the<br>7       products or also the philanthropy that we<br>8       do.<br>9   Q.   Do men purchase TCI products?<br>10  A.   I am sure they do. | |

| | | |
|---|---|---|
| 11 | Q. | Do you track purchasers by |
| 12 | | gender? |
| 13 | A. | We do track, yes, we do. |
| 14 | Q. | And where is that data kept? |
| 15 | A. | The data is provided by |
| 16 | | Google, mostly, I would say. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (139:20-140:3)

Page 139

| | | |
|---|---|---|
| 20 | Q. | And how about within the |
| 21 | | demographic? Do you target any particular age |
| 22 | | of consumer? |
| 23 | A. | No. |
| 24 | Q. | Does TCI sell skincare products |
| 25 | | to men? |

Page 140
. . .

| | | |
|---|---|---|
| 3 | A. | I don't know. |

Defendant's Counter-Designation of Karissa Bodnar (140:12-21):

Page 140

| | | |
|---|---|---|
| 12 | Q. | Does TCI advertise to men? |
| 13 | A. | To my knowledge, our |
| 14 | | advertising efforts are targeted towards |
| 15 | | women. For Mother's Day, we may advertise |
| 16 | | to the men as a gift opportunity for the |
| 17 | | mothers in their lives, but the intention |
| 18 | | is that the products -- we really want the |
| 19 | | products to help women thrive. Again, we |
| 20 | | don't -- we don't exclude people, but |
| 21 | | women are... |

| | |
|---|---|
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (140:22-24)</u><br><br><u>Page 140</u><br>22  Q.     So at times TCI placed ads in<br>23          sources targeted at male customers?<br>24  A.     I don't know. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (148:19-21)</u><br><br><u>Page 148</u><br>19  Q.     Does TCI purchase keywords<br>20          relating to its competitors's names?<br>21  A.     I don't recall. | <u>Defendant's Objections:</u><br><br>Page 148:19-21: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403<br><br><u>Plaintiff's Response:</u><br><br>Relevant to Defendant's advertising practices. Also, the parties are competitors, and this could indicate purchase of keywords relating to Plaintiff. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (158:14-24)</u><br><br><u>Page 158</u><br>14  Q.     Do both TCI and Thrive Natural<br>15          Care sell moisturizer?<br>. . .<br>18  Q.     You can answer.<br>19  A.     I know Thrive Causemetics<br>20          does. I can't speak to what TCI is<br>21          currently doing today.<br>22  Q.     Do you know if TNC has ever sold<br>23          moisturizer?<br>24  A.     I don't know. | |

| | |
|---|---|
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (159:11-14)</u><br><br><u>Page 159</u><br>11  Q.    Is Thrive Natural Care's<br>12        moisturizer competing with TCI's<br>          moisturizer?<br>. . .<br>14  A.    I don't know. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (159:19-25)</u><br><br><u>Page 159</u><br>19  Q.    Has TCI ever bought a keyword for<br>20        Thrive alone?<br>21  A.    Yes, to the best of my<br>22        knowledge, yes.<br>23  Q.    On which platform?<br>24  A.    To the best of my knowledge,<br>25        Google. | <u>Defendant's Objections</u>:<br><br>Page 159:19-25: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403<br><br><u>Plaintiff's Response</u>:<br><br>Relevant to Defendant's advertising practices and purchase of keywords to place advertisements that use Plaintiff's registered trademark to advertise and sell Defendant's products, causing confusion and damage to Plaintiff. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (161:10-11)</u><br><br><u>Page 161</u><br>10  Q.    Why does TCI buy keywords?<br>11  A.    To reach customers. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (161:18-162:20)</u> | <u>Defendant's Objections</u>: |

| | | | |
|---|---|---|---|
| Page 161 | | | Page 162:11-20: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403; No foundation, Fed. R. Evid. 602 |
| 18 | Q. | How does buying a keyword help | |
| 19 | | someone see TCI? | |
| 20 | A. | I don't understand the | |
| 21 | | question. | |
| 22 | Q. | Well, you said that buying a | |
| 23 | | keyword may help them see us, right? | Plaintiff's Response: |
| 24 | A. | Yes. | |
| 25 | Q. | What do you mean by that? | Relevant to Defendant's |
| Page 162 | | | advertising practices and |
| 1 | A. | If you purchase a keyword, | purchase of keywords to |
| 2 | | like for example, eyelashes, depending on | place advertisements that |
| 3 | | the success of that and at any given | use Plaintiff's registered |
| 4 | | minute, as it's constantly changing, | trademark to advertise and |
| 5 | | someone may see our false eyelashes due to | sell Defendant's products, |
| 6 | | that purchase. | causing confusion and |
| 7 | Q. | If someone searches for false | damage to Plaintiff. Also |
| 8 | | eyelashes, does it then push your ad up to the | relevant to harm to Plaintiff in that it demonstrates |
| 9 | | top? | Defendant bidding on |
| 10 | A. | It may. | keywords drives up cost for |
| 11 | Q. | And if you buy the keyword | Plaintiff to bid on keywords |
| 12 | | "thrive" and someone searches thrive, it can | which consist of its own |
| 13 | | push your ad up to the top? | registered trademark. |
| 14 | A. | It may. | Witness demonstrated |
| 15 | Q. | Do you bid for keywords? | personal knowledge of |
| 16 | A. | Yes. | Defendant's advertising |
| 17 | Q. | So if you bid for a certain | practices, permitting |
| 18 | | amount, can someone else outbid you for a | admission under FRE 602. |
| 19 | | higher amount? | |
| 20 | A. | Yes. | |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (167:4-24) | | |
| | | |
| Page 167 | | |
| 4 | (Exhibit No. 26 marked for | |
| 5 | identification.) | |
| . . . | | |
| 7 | Q. | Showing you Exhibit 26. Do you |

45

| 8 | | recognize this spreadsheet? | |
|---|---|---|---|
| 9 | A. | Not this exact spreadsheet. | |
| 10 | Q. | Do you recognize the format of | |
| 11 | | this spreadsheet? | |
| 12 | A. | I recognize words on this. | |
| 13 | Q. | Do you know if this was prepared | |
| 14 | | by TCI? | |
| 15 | A. | It looks like it. | |
| 16 | Q. | And do you know where this data | |
| 17 | | came from? | |
| 18 | A. | From looking at this, it would | |
| 19 | | likely be Google Analytics. | |
| 20 | Q. | What does this spreadsheet show? | |
| . . . | | | |
| 23 | A. | Yeah. I mean, it's | |
| 24 | | a search keyword that has campaign. | |

| Plaintiff's Designation of K. Bodnar 30(b)(6) (174:5-14) | |
|---|---|
| Page 174 | |
| 5   Q.   Do you have knowledge of TCI | |
| 6       purchasing any of the keywords listed on this | |
| 7       document? | |
| 8   A.   Yes. | |
| 9   Q.   You have knowledge of TCI | |
| 10       purchasing Thrive Lip Balm keyword? | |
| 11  A.   I am sure we purchased | |
| 12       something in that vein. Again, throughout | |
| 13       the course of the business, we have | |
| 14       purchased thousands of keywords. | |

| Plaintiff's Designation of K. Bodnar 30(b)(6) (174:21-175:3) | |
|---|---|
| Page 174 | |
| 21  Q.   Do you have knowledge of TCI | |
| 22       purchasing numerous keywords that don't | |

| | | |
|---|---|---|
| 23 | | include the word Causemetics, but do include |
| 24 | | the word Thrive? |
| 25 | A. | Yes. |
| Page 175 | | |
| 1 | Q. | Is that still a practice of TCI's |
| 2 | | today? |
| 3 | A. | Yes. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (175:18-176:1)

Page 175

| | | |
|---|---|---|
| 18 | Q. | Does keyword-based advertising |
| 19 | | help TCI reach its customers? |
| 20 | A. | Yes. |
| 21 | Q. | Why do you say that? |
| 22 | A. | Because it does. |
| 23 | Q. | Has TCI used the phrase Thrive |
| 24 | | Tribe in its advertising in the past? |
| 25 | A. | In the past we have. We do |
| Page 176 | | |
| 1 | | not currently. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (176:18-24)

Page 176

| | | |
|---|---|---|
| 18 | Q. | Okay. We had just started |
| 19 | | talking about TCI's use of the phrase Thrive |
| 20 | | Tribe. You said you don't use that phrase |
| 21 | | anymore in advertisement? |
| 22 | A. | No. |
| 23 | Q. | When did TCI stop doing so? |
| 24 | A. | In 2020. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (177:19-21)

| | |
|---|---|
| <u>Page 177</u><br>19   Q.     Has TCI used the phrase Thrive<br>20          Lab in its advertisement?<br>21   A.     We have in the past, yeah. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (180:7-25)</u><br><br><u>Page 180</u><br>7    Q.     When did Thrive Causemetics first<br>8          become aware of Thrive Natural Care?<br>9    A.     I believe it was in 2016.<br>10   Q.     And how did it become aware?<br>11   A.     Based on my recollection, it<br>12         was the USPTO's office action.<br>13   Q.     And what office action was that?<br>14   A.     It was our application for<br>15         Thrive Causemetics, the trademark.<br>16   Q.     And did the trademark get<br>17         rejected?<br>18   A.     The first time we applied for<br>19         it, yes.<br>20   Q.     And was that because of the<br>21         Thrive Natural Care trademark registration?<br>. . .<br>24   Q.     You can answer.<br>25   A.     Partially. | |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (180:17-19)</u><br><br><u>Page 180</u><br>17   Q.     Did you believe Thrive Natural<br>18         Care didn't target women?<br>19   A.     Honestly, I don't know. | |
| <u>Defendant's Counter-Designation of Karissa Bodnar (181:21-182:3):</u><br><br><u>Page 181</u> | |

48

| | | |
|---|---|---|
| 21 | Q. | Did TCI consider changing its |
| 22 | | name? |
| 23 | A. | No. |
| 24 | Q. | Why not? |
| 25 | A. | We really -- we operate in |

Page 182
| | |
|---|---|
| 1 | separate spaces and really don't -- we see |
| 2 | our target markets as completely |
| 3 | different. |

Defendant's Counter-Designation of Karissa Bodnar
(183:4-12):

Page 183
| | | |
|---|---|---|
| 4 | Q. | Well, did anyone at TCI look up |
| 5 | | Thrive Natural Care after finding out about |
| 6 | | its trademark registration? |
| 7 | A. | Yeah. I looked at their |
| 8 | | website. |
| 9 | Q. | And did you look at what products |
| 10 | | they sold? |
| 11 | A. | To the best of my recollection |
| 12 | | it was men's shaving products. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (183:13-15)

Page 183
| | | |
|---|---|---|
| 13 | Q. | But you said you didn't know if |
| 14 | | they targeted women or not? |
| 15 | A. | No, I don't know. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (183:16-23)

Page 183
| | |
|---|---|
| 16 | (Exhibit No. 27 marked for |
| 17 | identification.) |

. . .

| | | |
|---|---|---|
| 19 | Q. | Okay. Showing you what has been |
| 20 | | marked as Exhibit 27. Do you recognize this |
| 21 | | document? |
| 22 | A. | I recognize it from |
| 23 | | preparation with counsel. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (187:6-16)

Page 187

| | | |
|---|---|---|
| 6 | Q. | Looking at Exhibit 27, it is a |
| 7 | | trademark search result showing Thrive Natural |
| 8 | | Care's trademark registration and application; |
| 9 | | is that correct? |
| 10 | A. | Yes. |
| 11 | Q. | And you agree that TCI had this |
| 12 | | knowledge as of August 2015? |
| 13 | A. | Yes. |
| 14 | Q. | Did TCI take any action based on |
| 15 | | having the knowledge in this report? |
| 16 | A. | I don't believe so. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (187:22-188:3)

Page 187

| | | |
|---|---|---|
| 22 | Q. | Has TCI knowledge of Thrive's |
| 23 | | ever affected TCI's business plans in any way? |
| 24 | A. | No. |
| 25 | Q. | Did that knowledge have any |

Page 188

| | | |
|---|---|---|
| 1 | | effect on TCI's decision to expand into |
| 2 | | skincare products? |
| 3 | A. | No. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (195:9-16)

Page 195

| | | |
|---|---|---|
| 9 | Q. | When was the first time TCI made |
| 10 | | contact with Thrive Natural Care? |
| 11 | A. | I believe it was towards the |
| 12 | | end of 2015 or early 2016. |
| 13 | Q. | And what sort of contact was |
| 14 | | that? |
| 15 | A. | I reached out to TNC's |
| 16 | | customer service email. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (196:9-197:13)

Page 196

| | | |
|---|---|---|
| 9 | | (Exhibit No. 30 marked for |
| 10 | | identification.) |
| . . . | | |
| 14 | Q. | Do you recognize what's been |
| 15 | | marked Exhibit 30? |
| 16 | A. | I recognize that it came from |
| 17 | | my email address. |
| 18 | Q. | This is an email chain that came |
| 19 | | from your email account? |
| 20 | A. | Yes. |
| 21 | Q. | Are the dates of the email |
| 22 | | exchange accurate? |
| 23 | A. | I believe so. |
| 24 | Q. | At the bottom, the bottom third |
| 25 | | of the document, it looks like there's an |

Page 197

| | | |
|---|---|---|
| 1 | | email you sent on April 22, 2016. Do you see |
| 2 | | that? |
| 3 | A. | Yes. |
| 4 | Q. | Is that the first contact |
| 5 | | you referred to a minute ago? |
| 6 | A. | I believe so. |
| 7 | Q. | Do you recall any prior contact |

| | | |
|---|---|---|
| 8 | | before this? |
| 9 | A. | I don't recall any prior |
| 10 | | contact. |
| 11 | Q. | Did you know of Thrive's |
| 12 | | trademark registration by this point? |
| 13 | A. | Yes. |

| Plaintiff's Designation of K. Bodnar 30(b)(6) (197:21-198:1) | Defendant's Objections: |
|---|---|
| Page 197 <br> 21  Q.   Why did TCI feel it needed <br> 22      Thrive's permission to use the word Thrive in <br> 23      its brand name? <br> . . . <br> Page 198 <br> 1   A.   I don't recall. | Page 197:21-23; 198:1: Argumentative and mischaracterizes document, Fed. R. Evid. 611(a) <br><br> Plaintiff's Response: <br><br> Question does not waste time or harass or unduly embarrass the witness. The referenced email from Ms. Bodnar specifically asks permission to use the word "thrive" in Defendant's brand name; document is not mischaracterized. No basis to strike under FRE 611(a). |

| Plaintiff's Designation of K. Bodnar 30(b)(6) (198:7-199:19) | |
|---|---|
| Page 198 <br> 7   Q.   And do you -- and you stated you <br> 8       wanted to discuss permission to use the word <br> 9       Thrive as part of our brand name? <br> 10  A.   Yes. <br> 11  Q.   Why did you want to discuss that <br> 12      issue? <br> . . . | |

52

| | | |
|---|---|---|
| 21 | A. | Yeah, I don't |
| 22 | | recall. |
| . . . | | |
| 24 | Q. | Were you worried about trademark |
| 25 | | infringement liability? |
| <u>Page 199</u> | | |
| . . . | | |
| 6 | A. | I don't recall. |
| . . . | | |
| 8 | Q. | You state below that: |
| 9 | | "We are a color cosmetics brand." |
| 10 | | Do you see that? |
| 11 | A. | Yes. |
| 12 | Q. | What did you mean by that? |
| 13 | A. | In April of 2016, we sold |
| 14 | | color cosmetics. |
| 15 | Q. | Didn't TCI have plans to expand |
| 16 | | into skincare at this time? |
| . . . | | |
| 19 | A. | I don't recall. |

| | |
|---|---|
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (200:4-9)</u> | <u>Defendant's Objections:</u> |
| | |
| <u>Page 200</u> | Page 200:4-6, 9: Asked and |
| 4   Q.   And so you don't recall if TCI | answered, Fed. R. Evid. |
| 5       had plans to expand into skincare when this | 611(a) |
| 6       email was sent? | |
| . . . | <u>Plaintiff's Response:</u> |
| 9   A.   I don't recall. | |
| | Question does not waste |
| | time or harass or unduly |
| | embarrass the witness. No |
| | basis to strike under FRE |
| | 611(a). |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (201:12-202:2)</u> | |
| | |
| <u>Page 201</u> | |
| 12   Q.   You state further in your email: | |

| | | |
|---|---|---|
| 13 | | "We only help women and I see |
| 14 | | that you are a men's line." |
| 15 | | Did you write that? |
| 16 | A. | It appears so in this email. |
| 17 | Q. | On what did you base the |
| 18 | | conclusion that Thrive Natural Care was a |
| 19 | | men's line? |
| 20 | A. | I don't recall specifically. |
| 21 | | I just -- from my recollection, Thrive |
| 22 | | Natural Care had men's shaving products. |
| 23 | | It was a different space than us. |
| 24 | Q. | Did TCI have any information on |
| 25 | | the demographics of Thrive Natural Care's |
| Page 202 | | |
| 1 | | customers? |
| 2 | A. | No. |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (203:11-204:18) | | |
| | | |
| Page 203 | | |
| 11 | Q. | Well, did you think that this |
| 12 | | gave you permission to use the Thrive name? |
| . . . | | |
| 14 | A. | I don't recall. |
| . . . | | |
| 16 | Q. | Is there anything in Mr. |
| 17 | | McIntosh's response that you would think gave |
| 18 | | you permission as you requested? |
| 19 | A. | I don't know. |
| 20 | Q. | Well, you sent a one word |
| 21 | | response to Mary Baker Anderson, Ugh, |
| 22 | | exclamation point. Do you see that? |
| 23 | A. | Yes. |
| 24 | Q. | Why did you say Ugh? |
| 25 | A. | I don't recall. |
| Page 204 | | |

54

| | | |
|---|---|---|
| 1 | Q. | Who is Mary Baker Anderson? |
| 2 | A. | She was a contract finance |
| 3 | | person that we worked for -- worked with |
| 4 | | for a short period of time. |
| 5 | Q. | Did TCI take any action as a |
| 6 | | result of this email exchange? |
| 7 | A. | I don't recall. |
| 8 | Q. | Did TCI stop using Thrive as part |
| 9 | | of its name? |
| 10 | A. | No. |
| 11 | Q. | Did TCI change the way it |
| 12 | | advertised? |
| 13 | A. | I don't understand the |
| 14 | | question. |
| 15 | Q. | Well, did this response from |
| 16 | | Thrive Natural Care have any effect at all on |
| 17 | | TCI's business practices? |
| 18 | A. | No. |

| | |
|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (205:8-16) | |
| | |
| Page 205 | |
| 8   (Exhibit No. 31 marked for | |
| 9   identification.) | |
| . . . | |
| 12 Q.   Showing you Exhibit 31. Do you | |
| 13       recognize this exhibit? | |
| 14 A.   I recall this document from | |
| 15       discussions with counsel in preparation | |
| 16       for this. | |

| | |
|---|---|
| Plaintiff's Designation of K. Bodnar 30(b)(6) (205:23-206:25) | |
| | |
| Page 205 | |
| 23 Q.   Do you have any reason to doubt | |
| 24       that you did receive the letter this | |
| 25       March 2017? | |

Page 206

| | | |
|---|---|---|
| 1 | A. | No. |
| 2 | Q. | And this letter states: "TCI |
| 3 | | must immediately cease all use of the term |
| 4 | | Thrive." |
| 5 | | Do you see that in the first |
| 6 | | paragraph? |
| 7 | A. | I see that in the first |
| 8 | | paragraph. |
| 9 | Q. | In response to this letter, did |
| 10 | | TCI stop using the term Thrive? |
| 11 | A. | No. |
| 12 | Q. | Did this letter have any effect |
| 13 | | on TCI's business practices at all? |
| 14 | A. | No. |
| 15 | Q. | Did it change the way TCI |
| 16 | | advertised at all? |
| 17 | A. | No. |
| 18 | Q. | At some point did TCI seek to |
| 19 | | reach out directly to Natural Care again? |
| 20 | A. | Yes. |
| 21 | Q. | When was that? |
| 22 | A. | I don't recall the specific -- |
| 23 | | I don't recall the specific date. |
| 24 | Q. | Would that have been in 2019? |
| 25 | A. | It could have been. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (210:3-5)

Page 210

| | | |
|---|---|---|
| 3 | Q. | So you were repeatedly trying to |
| 4 | | call Alex McIntosh; is that correct? |
| 5 | A. | Yes. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (210:9-20)

Page 210

| | | |
|---|---|---|
| 9 | Q. | Did you call him? |
| 10 | A. | My executive assistant did. |

| | | |
|---|---|---|
| 11 | Q. | Did you speak with him? |
| 12 | A. | Yes. |
| 13 | Q. | And what did you speak with Mr. |
| 14 | | McIntosh about? |
| 15 | A. | We spoke about a potential |
| 16 | | coexistence agreement, to the best of my |
| 17 | | recollection. |
| 18 | Q. | What about a coexistence |
| 19 | | agreement did you talk about? |
| 20 | A. | I honestly can't recall. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (210:24-211:2)

Page 210

| | | |
|---|---|---|
| 24 | Q. | What was Thrive Causemetics |
| 25 | | seeking in the coexistence agreement? |

Page 211
. . .

| | | |
|---|---|---|
| 2 | A. | I don't know. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (222:13-16)

Page 222

| | | |
|---|---|---|
| 13 | Q. | Did this call with Mr. McIntosh |
| 14 | | have any effect at all on the way TCI did |
| 15 | | business afterwards? |
| 16 | A. | No. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (222:22-223:7)

Page 222

| | | |
|---|---|---|
| 22 | Q. | After this call in |
| 23 | | June 2019, did TCI continue to release |
| 24 | | additional skincare products on the market? |
| 25 | A. | Yes. |

Page 223

| | | |
|---|---|---|
| 1 | Q. | Do you remember how many skincare |
| 2 | | products TCI released after this June 2019 |
| 3 | | call? |
| 4 | A. | I don't recall the specific |
| 5 | | number. |
| 6 | Q. | Was it more than five? |
| 7 | A. | Yes. |

Defendant's Counter-Designation of Karissa Bodnar
(226:5-227:1):

Page 226

| | | |
|---|---|---|
| 5 | Q. | Has TCI been able to register its |
| 6 | | trademark for the Thrive Causemetics |
| | | name? |
| 7 | A. | No. |
| 8 | Q. | Has it tried to? |
| 9 | A. | Yes. |
| 10 | Q. | What happened in the first |
| 11 | | instance? |
| 12 | A. | Based on my recollection, it |
| 13 | | was rejected on the basis of both Thrive |
| 14 | | and Causemetics, and then it was the same |
| 15 | | examiner, I believe, overturned their |
| 16 | | objection to that. |
| 17 | Q. | Yet that application didn't |
| 18 | | register, did it? |
| 19 | A. | No. |
| 20 | Q. | Why not? |
| 21 | A. | At the time, we were -- we |
| 22 | | didn't have enough money to continue |
| 23 | | paying the legal fees, specifically. |
| 24 | Q. | And did TCI -- sorry. Go ahead. |
| 25 | A. | The business was just getting |

Page 227

| | |
|---|---|
| 1 | started in that respect. |

Plaintiff's Designation of K. Bodnar 30(b)(6) (227:2-10)

| | |
|---|---|
| Page 227<br>2    Q.    Did TCI try again to register the<br>3            Thrive Causemetics?<br>4    A.    Yes.<br>5    Q.    What happened with that<br>6            application?<br>7    A.    It was rejected.<br>8    Q.    Did the rejection have to do with<br>9            Thrive Natural Care trademark registration?<br>10   A.    Yes. | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (228:1-2, 22-25)<br><br>Page 228<br>1    (Exhibit No. 34 marked for<br>2    identification.)<br>. . .<br>22   Q.    Ms. Bodnar, do you agree that you<br>23         had possession of Exhibit 34 as of<br>24         August 2015?<br>25   A.    Yes. | Defendant's Objections:<br><br>Page 228:1-2; 22-25:<br>Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br>Plaintiff's Response:<br><br>Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant and Ms. Bodnar knew that *both* portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to |

| | |
|---|---|
| | infringement and willfulness. |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (229:4-7)<br><br>Page 229<br>4   Q.   And do you agree that this<br>5           document reflects a trademark registration on<br>6           the first page for Causemetics?<br>7   A.   Yes. | Defendant's Objections:<br><br>Page 229:4-7: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br>Plaintiff's Response:<br><br>Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant and Ms. Bodnar knew that *both* portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (229:21-230:2)<br><br>Page 229<br>21   Q.   Did the knowledge of this<br>22           registration change as to Thrive's business<br>23           practices?<br>24   A.   No.<br>25   Q.   Did you stop using Causemetics as<br>Page 230 | Defendant's Objections:<br><br>Page 229:21-230:2: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br>Plaintiff's Response: |

| | | |
|---|---|---|
| 1 part of your name?<br>2 A. No. | Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant and Ms. Bodnar knew that *both* portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. | |
| Plaintiff's Designation of K. Bodnar 30(b)(6) (230:15-24)<br><br>Page 230<br>15 Q.  At some point did Thrive<br>16      Causemetics contact the owner of the<br>17      Causemetics registration?<br>18 A.  I believe our counsel did.<br>19 Q.  Did Thrive Causemetics take<br>20      action to attempt to cancel the Causemetics<br>21      trademark?<br>22 A.  I believe our counsel did.<br>23 Q.  Did you approve that action?<br>24 A.  I don't recall. | Defendant's Objections:<br><br>Page 230:15-24:Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br>Plaintiff's Response:<br><br>Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant and Ms. Bodnar knew that *both* portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant | |

61

| | continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
|---|---|
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (231:8-13)</u><br><br><u>Page 231</u><br>8    Q.    Did the party settle?<br>9    A.    Yes.<br>10   Q.    Did TCI pay to gain control over<br>11         the Causemetics registration?<br>12   A.    Yes.<br>13   Q.    How much did TCI pay to settle? | <u>Defendant's Objections:</u><br><br>Page 231:8-13: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br><u>Plaintiff's Response:</u><br><br>Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant and Ms. Bodnar knew that *both* portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
| <u>Plaintiff's Designation of K. Bodnar 30(b)(6) (232:1-11)</u><br><br><u>Page 232</u><br>1    A.    I believe it was<br>2          $125,000.<br>. . . | |

| | | |
|---|---|---|
| 4 | Q. | And do you know when that |
| 5 | | settlement occurred? |
| 6 | A. | I don't recall the specific |
| 7 | | date. |
| 8 | Q. | Do you recall the year? |
| 9 | A. | I believe it was 2019. It |
| 10 | | would have been somewhere in the time |
| 11 | | range of 2018 to 2020. |

| Plaintiff's Designation of K. Bodnar 30(b)(6) (234:6-18) | Defendant's Objections: |
|---|---|
| Page 234<br>6  (Exhibit No. 35 marked for<br>7  identification.)<br>. . .<br>9  Q.  Looking at document Bates number<br>10    ending in 426, it looks like a Thrive<br>11    Instagram post; is that correct?<br>12  A.  Yes.<br>13  Q.  And it has a hashtag Thrive<br>14    Tribe. Do you see that?<br>15  A.  Yes.<br>16  Q.  Is this a Thrive Causemetics<br>17    Instagram post?<br>18  A.  Yes. | Page 234:6-7, 9-18:<br>Irrelevant, Fed. Evid. 401,<br>402; Prejudicial, Fed. R.<br>Evid. 403 (relates solely to<br>abandoned color cosmetics<br>claim)<br><br>Plaintiff's Response:<br><br>Relevant to show Defendant<br>has long used the term<br>"Thrive" alone to refer to<br>itself, along with the term<br>"Thrive Tribe" which was<br>utilized by Plaintiff well<br>before Defendant, which<br>supports a finding of false<br>designation of origin or<br>infringement based on<br>confusion as to the<br>affiliation of the parties. |

***Plaintiff's Designation of Ned Menninger Rule 30(b)(6) Deposition***

| Plaintiff's Designation of N. Menninger 30(b)(6) (7:12-14) | |
|---|---|
| Page 7<br>12  Q.  Mr. Menninger, will you please state your | |

| | |
|---|---|
| 13          full name for the record.<br>14    A.    It is Ned Anthony Menninger. | |
| <u>Plaintiff's Designation of N. Menninger 30(b)(6) (35:22-36:3)</u><br><br><u>Page 35</u><br>22    Q.    What is your job title at Thrive<br>23         Causemetics?<br>24    A.    VP or vice president of finance.<br>25    Q.    And how long have you been at Thrive<br><u>Page 36</u><br>1          Causemetics?<br>2    A.    Two years as a full-time employee and<br>3          prior -- the two years prior I was a<br>          consultant. | |
| <u>Plaintiff's Designation of N. Menninger 30(b)(6) (36:10-12)</u><br><br><u>Page 36</u><br>10    Q.    And what are your job duties at Thrive<br>11         Causemetics?<br>12    A.    Financial reporting. | |
| <u>Plaintiff's Designation of N. Menninger 30(b)(6) (38:11-19)</u><br><br><u>Page 38</u><br>11      (EXHIBIT 2, remotely introduced<br>12      and provided electronically to<br>13      the court reporter.)<br>. . .<br>15    Q.    Do you recognize this document?<br>16    A.    I do.<br>17    Q.    And what is this document?<br>18    A.    It is the financial information that was<br>19          provided to plaintiff's counsel. | |

| Plaintiff's Designation of N. Menninger 30(b)(6) (38:23-25) | |
|---|---|
| **Page 38**<br>23  Q.   Did you create -- did you create this<br>24         document?<br>25  A.   Yes. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (39:8-25) | |
| **Page 39**<br>8   Q.   Okay. And I'm not going to go through every<br>9         single line item in this entire spreadsheet, by the<br>10        way. I'm just going to go through a few to see if we<br>11        can -- using representative examples -- understand what<br>12        is going on here.<br>13        Does that make sense?<br>14  A.   Yes.<br>15  Q.   So for Foundation Infinity Waterproof Lash<br>16        Adhesive, it says "Sum of Net Revenue, $40,672." Do<br>17        you see that?<br>18  A.   Yes.<br>19  Q.   Okay. And how did you determine this<br>20        number?<br>21  A.   It would be the number of units multiplied<br>22        by the MSRP or what we'd call our retail sales price.<br>23  Q.   What program did you use to create this<br>24        document?<br>25  A.   This was prepared in Excel. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (47:5-25) | Defendant's Objections: |

| | | | Page 47:5-6, 8, 10-14, 17-18: Irrelevant, Fed. R. Evid. 401, 402; No foundation, Fed. R. Evid. 602; Beyond Witness's Designated Rule 30(b)(6) Topics, Fed. R. Civ. P. 30(b)(6), Fed. R. Evid. 602 |
|---|---|---|---|
| Page 47 | | | |
| 5 | Q. | Mr. Menninger, does Thrive Causemetics | |
| 6 | | manufacture its own products? | |
| . . . | | | |
| 8 | A. | We do not. | |
| . . . | | | |
| 10 | Q. | Who manufactures the products for Thrive | |
| 11 | | Causemetics? | Plaintiff's Response: |
| 12 | A. | Various, depending on the product. | |
| 13 | Q. | Are they manufactured in the U.S. or outside | Manufacturing practices are relevant to asserted deductible costs, a noticed Rule 30(b)(6) topic. |
| 14 | | of the United States? | |
| . . . | | | |
| 17 | A. | Again, it varies depending on | |
| 18 | | the product. | |
| . . . | | | |
| 22 | Q. | The landed costs and cost of goods sold are | |
| 23 | | manufacturing costs from third parties; is that | |
| 24 | | correct? | |
| 25 | A. | Yes. | |
| **Plaintiff's Designation of N. Menninger 30(b)(6) (55:23-56:22)** | | | |
| Page 55 | | | |
| 23 | Q. | Okay. Sum of Other Overhead. | |
| 24 | A. | Other overhead would be every -- everything | |
| 25 | | else that hits our income statement. | |
| Page 56 | | | |
| 1 | Q. | Like what? | |
| 2 | A. | Like rent, salaries, what it costs to | |
| 3 | | operate the business -- | |
| 4 | Q. | Okay. | |
| 5 | A. | -- that isn't specifically included in these | |
| 6 | | other -- in the other categories. | |
| 7 | Q. | Okay. And you listed rent, salaries. What | |

| | | |
|---|---|---|
| 8 | | else appears in sum of other overhead? |
| 9 | A. | Well, if it were now, it would be legal |
| 10 | | fees, so anything related to -- that is not specific to |
| 11 | | COGS, ad spend, merchant fees, or Shopify. |
| 12 | Q. | Okay. So legal fees, salary, rent. What |
| 13 | | else? |
| 14 | A. | It would be office -- other office expenses. |
| 15 | | Generally we would call this general -- general -- G&A, |
| 16 | | general administrative costs. |
| 17 | Q. | Would charitable donations be on here? |
| 18 | A. | I -- yes, it would be included in there. |
| 19 | Q. | Okay. What else is included in here? |
| 20 | A. | Travel, entertainment. Again, it's all |
| 21 | | non -- it's any other cost that isn't included in the |
| 22 | | other four categories. |

Plaintiff's Designation of N. Menninger 30(b)(6) (57:1-58:7)

Page 57

| | | |
|---|---|---|
| 1 | Q. | So what else is included there? |
| 2 | A. | It's going to be -- there -- any sort of |
| 3 | | professional fees beyond legal, say tax return |
| 4 | | preparation, items like that. It would be insurance. |
| 5 | | Again, all salaries and benefits would be included in |
| 6 | | there. As you say, the charitable donations would be |
| 7 | | there. |
| 8 | Q. | Would taxes be in there? |
| 9 | A. | I'm sorry, say again? |
| 10 | Q. | Would taxes be in -- like taxes paid by the |
| 11 | | company? |
| 12 | A. | Yes. |

| 13 | Q. | So income tax is in there? |
|----|----|----|
| 14 | A. | Yes. |
| 15 | Q. | Okay. And how did you allocate $12,880 sum |
| 16 | | of other overhead to Foundation Infinity Waterproof |
| 17 | | Lash Adhesive? |
| 18 | A. | Similar to the other categories in that if I |
| 19 | | sold 500, divided by total sale of 20,000, so 5 percent |
| 20 | | of the total other overhead costs would be -- would |
| 21 | | have been allocated to the lash adhesive products. |
| 22 | Q. | So if one particular product is 5 percent of |
| 23 | | Thrive Causemetics' entire sales, then it would get a 5 |
| 24 | | percent proportion of ad spend and sum of Shopify and |
| 25 | | sum of other overhead costs; is that correct? |

Page 58

. . .

| 2 | A. | Yes. |
|----|----|----|

. . .

| 5 | Q. | Okay. And is that correct for every product |
|----|----|----|
| 6 | | on this spreadsheet, that same calculation correct? |
| 7 | A. | Yes. |

Plaintiff's Designation of N. Menninger 30(b)(6) (60:9-20)

Page 60

| 9 | Q. | Okay. For the year 2020, how much did |
|----|----|----|
| 10 | | Thrive Causemetics spend on advertising in total? |
| 11 | A. | Well, it's going to -- |

. . .

| 13 | A. | It's in the sheet that's |
|----|----|----|

68

| | | |
|---|---|---|
| 14 | | the -- it would be the second to last, I believe, or |
| 15 | | third to last sheet. Total ad spend incurred for 2020 |
| | | 16was 77 thousand, $26,159. |
| . . . | | |
| 18 | Q. | Do you mean $77,026,159? |
| 19 | A. | Correct. Yes. I misspoke. It was |
| 20 | | $77,026,159. |

| Plaintiff's Designation of N. Menninger 30(b)(6) (61:10-23) | | | Defendant's Objections: |
|---|---|---|---|
| | | | Page 61:10-12: No foundation, Fed. R. Evid. 602 |
| Page 61 | | | |
| 10 | Q. | And would Causemetics' advertising spend | |
| 11 | | successfully generate revenue? | Plaintiff's Response: |
| 12 | A. | Yes. | |
| Page 61 | | | Witness is Defendant's CFO who clearly |
| 17 | Q. | Okay. And if we just look at the 2020 | demonstrated personal |
| 18 | | period, is this a list of every single product that | knowledge regarding Defendant's advertising and |
| 19 | | Thrive Causemetics sold in 2020? | revenue generation. |
| 20 | A. | This is a listing of all color cosmetics. | |
| 21 | Q. | Okay. So what products are left off of this | |
| 22 | | list? | |
| 23 | A. | Skin care. | |

| Plaintiff's Designation of N. Menninger 30(b)(6) (62:12-63:1) | | | |
|---|---|---|---|
| Page 62 | | | |
| 12 | Q. | Okay. Do you differentiate between | |
| 13 | | marketing and promotional expenses and advertising | |
| 14 | | expenses? | |
| 15 | A. | Yes. The paid ads -- | |
| 16 | Q. | And how -- | |
| 17 | A. | Go ahead. | |
| 18 | Q. | No, no. Please. Go ahead. | |

| | | |
|---|---|---|
| 19 A. | To answer your question, paid ad spend is | |
| 20 | that amount which is paid to the social media and | |
| 21 | search engine platforms. For example, it's what's paid | |
| 22 | to Facebook, Instagram, Google, Microsoft and others to | |
| 23 | run the ads specifically to generate revenue. Other | |
| 24 | marketing expenses would be PR, other -- maybe branding | |
| 25 | other items that aren't included as -- in the paid ad | |
| Page 63 | | |
| 1 | spend calculation. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (65:7-66:5) | | Defendant's Objections: |
| | | Page 65:8-9, 11, 18-21; 66:5: Beyond Witness's Designated Rule 30(b)(6) Topics, Fed. R. Civ. P. 30(b)(6), Fed. R. Evid. 602 |
| Page 65 | | |
| 7 Q. | So -- so no Thrive Causemetics' skin care | |
| 8 | products are sold directly from your office building | Plaintiff's Response: |
| 9 | where you pay rent; right? | Rent paid for office space and use of such space is relevant to asserted deductible costs, a noticed Rule 30(b)(6) topic. |
| . . . | | |
| 11 A. | Correct. No – | |
| . . . | | |
| 18 A. | No authorized sales. | |
| 19 Q. | Okay. For this office space that you pay | |
| 20 | rent for, would you distribute products from this | |
| 21 | office space? | |
| . . . | | |
| Page 66 | | |
| . . . | | |
| 5 A. | The answer is no. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (67:12-22) | | |

| | |
|---|---|
| Page 67<br>12    (EXHIBIT 3, remotely introduced<br>13    and provided electronically to<br>14    the court reporter.)<br>. . .<br>16    Q.    Do you recognize this document?<br>17    A.    Yes.<br>18    Q.    Did you create this document?<br>19    A.    Yes.<br>20    Q.    When did you create this document?<br>21    A.    I believe it was in March of this year, of<br>22           2021. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (68:6-15)<br><br>Page 68<br>6    Q.    Was this document made in Excel?<br>7    A.    Yes.<br>8    Q.    And what resources did you consult in order<br>9           to gather the information necessary to put together the<br>10         numbers in this document?<br>. . .<br>13    A.    Similar to the spreadsheets<br>14         for color cosmetics. We utilize Shopify and our<br>15         financial statements. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (68:21-25)<br><br>Page 68<br>21    Q.    Okay. How did you determine which products<br>22         to include from this spreadsheet and which to exclude?<br>. . . | |

71

| | | |
|---|---|---|
| 24<br>25 | A. | These are the products that<br>are listed on our website categorized as skin<br>care. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (69:9-19)<br><br>Page 69<br>9<br>10<br><br>11<br><br>12<br><br>13<br>. . .<br>16<br>17<br><br>18<br><br>19 | <br><br><br>Q.<br><br><br><br><br><br><br>A. | <br><br><br>Let's examine the column entitled Net<br>Revenue. As an example, let's start with<br>Overnight<br>Sensation Brightening Sleeping Mask at the<br>very top.<br>It says, "Net Revenue, $1,023,597." How<br>was that<br>number determined?<br><br>As with the other<br>spreadsheets, it was determined based off of<br>-- from<br>using information provided by Shopify.<br>This is total<br>units times the retail price. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (70:7-11)<br><br>Page 70<br>7<br>8<br><br>9<br><br>10<br><br>11 | <br><br><br>Q.<br><br><br><br><br><br>A. | <br><br><br>And is that the same answer for every<br>product listed, the net revenue for Overnight<br>Sensation<br>Brightening Mask is determined and<br>calculated the same<br>way as for every -- every product on this<br>spreadsheet?<br>Yes. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (72:12-73:6) | | | |

Page 72

| 12 | Q. | So the way you determined that $210,505 was |
| 13 | | spent in advertising for the Overnight Sensation |
| 14 | | Brightening Sleep Mask is simply that you just added up |
| 15 | | the total net revenue from this product and then did a |
| 16 | | proportion of the total ad spend of the company for a |
| 17 | | year and attributed that much to this product; is that |
| 18 | | correct? |
| . . . | | |
| 21 | A. | That is correct how that |
| 22 | | number was determined -- |
| . . . | | |
| 24 | | -- but I would add that we do |
| 25 | | advertise for all of our products. |

Page 73

| . . . | | |
| 2 | Q. | Okay. When you say you advertise for all of |
| 3 | | your products, what do you mean exactly? |
| 4 | A. | Meaning all of our products are featured in |
| 5 | | one way or another in our paid ad -- in our paid |
| 6 | | advertisements. |

Plaintiff's Designation of N. Menninger 30(b)(6) (76:4-77:17)

Page 76

| 4 | Q. | Now let's move on to the Other Overhead |
| 5 | | column, and I'm asking about every product on here |
| 6 | | because you have said that everything is calculated the |

73

| | | |
|---|---|---|
| 7 | | same. |
| 8 | | So for this entire spreadsheet, what does |
| 9 | | other overhead mean? |
| . . . | | |
| 12 | A. | It is the same costs as I |
| 13 | | explained in -- for color cosmetics, which is salary, |
| 14 | | rents, professional fees, travel and entertainment. |
| 15 | | They are other general and administrative-type expenses |
| 16 | | and all that are non-COGS specific, ad spend, merchant |
| 17 | | fees and/or -- and including -- that does not include |
| 18 | | the Shopify fees. |
| . . . | | |
| 20 | Q. | Do the same answers that you gave to the |
| 21 | | color cosmetics other overhead questions apply to this |
| 22 | | spreadsheet as well? |
| 23 | A. | Yes. |
| 24 | Q. | So this would include legal fees and |
| 25 | | charitable donations, rent, salary; is that correct? |

Page 77

| | | |
|---|---|---|
| 1 | A. | Yes. |
| 2 | Q. | Would it include bonuses to managers, like, |
| 3 | | for example, a bonus paid to Karissa Bodnar at the end |
| 4 | | of the year? Would that appear here? |
| . . . | | |
| 7 | A. | It's going to include all |
| 8 | | salaries. It's all cost -- non -- that wouldn't be in |
| 9 | | those other categories. |
| . . . | | |
| 11 | Q. | What percentage of Thrive Causemetics' total |

| | | |
|---|---|---|
| 12 | | revenue for 2020 was just the skin care products? |
| . . . | | |
| 15 | A. | Well, it's -- the total -- our |
| 16 | | total revenue was roughly 168 million, and color |
| 17 | | cosmetics was roughly 20 million of that amount. |

| | | |
|---|---|---|
| Defendant's Counter-Designation of Ned Menninger (77:19-24): | | |
| | | |
| Page 77 | | |
| 19 | Q. | Do you mean color cosmetics is the larger |
| 20 | | number and skin care is the smaller number? |
| 21 | A. | I'm sorry.Yeah, color cosmetics is the |
| 22 | | larger number. Color cosmetics -- of the 168 million, |
| 23 | | approximately 20.7 million of that amount was skin |
| 24 | | care. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger 30(b)(6) (77:25-78:6) | | |
| | | |
| Page 77 | | |
| 25 | Q. | And when you're distinguishing between color |
| Page 78 | | |
| 1 | | cosmetics and skin care products, how do you understand |
| 2 | | color cosmetics to be different from skin care |
| 3 | | products? |
| 4 | A. | Again, this is -- the skin care are those |
| 5 | | items that are listed on our website and marketed as |
| 6 | | skin care in that product category. |

| | |
|---|---|
| <u>Plaintiff's Designation of N. Menninger 30(b)(6) (82:14-23)</u><br><br><u>Page 82</u><br>14   Q.   Do the Thrive Causemetics' legal fees from<br>15        the class action lawsuit that was filed against it<br>16        appear in the other overhead costs?<br>17   A.   Yes.<br>18   Q.   Does Thrive Causemetics have R&D, research<br>19        and development, costs?<br>20   A.   Yes.<br>21   Q.   And do those appear in the other overhead<br>22        column?<br>23   A.   Yes. | |
| <u>Plaintiff's Designation of N. Menninger 30(b)(6) (91:13-17)</u><br><br><u>Page 91</u><br>13.   Q.   Is it your<br>14        understanding that Thrive Causemetics paid Jody Weiss<br>15        $125,000 to purchase the Causemetics trademark from<br>16        her?<br>17   A.   Yes. | Defendant's Objections:<br><br>Page 91:13-17: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br><u>Plaintiff's Response:</u><br><br>Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant knew that both portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words |

76

| | |
|---|---|
| | in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
| Plaintiff's Designation of N. Menninger 30(b)(6) (97:6-14)<br><br>Page 97<br>6     (EXHIBIT 5, remotely introduced<br>7     and provided electronically to<br>8     the court reporter.)<br>. . .<br>10   Q.    Do you recognize this document?<br>11   A.    Yes.<br>12   Q.    What is this document?<br>13   A.    It's a settlement agreement with Jody Weiss<br>14        for Causemetics -- Cause-Metics. | Defendant's Objections:<br><br>Page 97:6-8, 10-14: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br>Plaintiff's Response:<br><br>Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant knew that both portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
| Plaintiff's Designation of N. Menninger 30(b)(6) (97:19-98:6)<br><br>Page 97<br>19   Q.    Why did Thrive Causemetics enter into this<br>20        particular settlement agreement with Jody<br>            Weiss? | Defendant's Objections:<br><br>Page 97:19-20, 23-24; 98:2, 5-6: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE) |

77

| | | | Plaintiff's Response: |
|---|---|---|---|
| . . . | | | |
| 23 | A. | We wanted sole ownership of | Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant knew that both portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
| 24 | | the Causemetics mark. | |
| Page 98 | | | |
| . . . | | | |
| 2 | Q. | And why did it pay $125,000 for it? | |
| . . . | | | |
| 5 | A. | That was agreed-upon | |
| 6 | | settlement amount. | |

| Plaintiff's Designation of N. Menninger 30(b)(6) (112:23-113:5) | | | |
|---|---|---|---|
| Page 112 | | | |
| 23 | Q. | The monies that Thrive Causemetics spends on | |
| 24 | | advertising, is it all online advertising, or does it | |
| 25 | | do advertising in other mediums as well? | |
| Page 113 | | | |
| . . . | | | |
| 2 | A. | The majority is online, but we | |
| 3 | | also do newsletters, mail order -- I guess mail order | |
| 4 | | postcards, and then we have begun some TV advertising | |
| 5 | | as well. | |

| | |
|---|---|
| Plaintiff's Designation of N. Menninger 30(b)(6) (113:15-114:1)<br><br>Page 113<br>15  Q.   When was the first time that Thrive<br>16         Causemetics incurred costs on advertising on<br>17         television?<br>18  A.   It would be when we first began advertising,<br>19         which I believe to be in the third quarter of 2020.<br>20  Q.   And when you say most -- I don't want to<br>21         misstate your testimony, but I believe you said<br>22         something along the lines of most of Causemetics'<br>23         advertising is done online, so could you clarify what<br>24         you mean as -- closer to like 99 percent, or what do<br>25         you mean by most of it?<br>Page 114<br>1  A.   I would say greater than 80 percent. | |
| Plaintiff's Designation of N. Menninger 30(b)(6) (114:8-23)<br><br>Page 114<br>8   Q.   Okay. In 2019 -- let's talk about 2019<br>9          alone. So we'll talk about pretelevision days.<br>10         In 2019, what percentage of Thrive<br>11         Causemetics' advertising revenue was spent on online<br>12         advertising?<br>13  A.   Wait. Did you say advertising revenue?<br>14  Q.   Sorry. Advertising expenditures, costs.<br>15  A.   Okay. I'm sorry. I just wanted to make<br>16         sure my hearing wasn't -- I would say above 95 percent. | |

| | | | |
|---|---|---|---|
| 17 | Q. | Okay. And was that above 95 percent for | |
| 18 | | every year before 2019, as well? | |
| 19 | A. | Yes. | |
| 20 | Q. | Okay. And is the only reason it's closer to | |
| 21 | | 85 percent now because of TV advertising? | |
| 22 | A. | TV and the -- the beginning of our -- of the | |
| 23 | | newsletters and the -- the direct mail. | |

### *Plaintiff's Designation of Karissa Bodnar Personal Deposition*

Plaintiff's Designation of K. Bodnar (4:10-12)

Page 4

| | | | |
|---|---|---|---|
| 10 | Q. | Good afternoon, Ms. Bodnar. Can you state your name | |
| 11 | | for the record, please? | |
| 12 | A. | Yes. My name is Karissa Elizabeth Bodnar. | |

Plaintiff's Designation of K. Bodnar (5:8-19)

Page 5

| | | | |
|---|---|---|---|
| 8 | Q. | Did you found Thrive Causemetics? | |
| 9 | A. | Yes. | |
| 10 | Q. | When? | |
| 11 | A. | I believe 2014. | |
| 12 | Q. | Do you have an ownership interest in Thrive | |
| 13 | | Causemetics today? | |
| 14 | A. | Yes. | |
| 15 | Q. | What percentage of TCI do you own? | |
| 16 | A. | I don't know specifically. | |
| 17 | Q. | Do you have an estimate as to what percentage you | |
| 18 | | own? | |
| 19 | A. | More than half. | |

Plaintiff's Designation of K. Bodnar (6:5-7)

Page 6

| | | |
|---|---|---|
| 5 | Q. | Ms. Bodnar, does Brendan Gardner-Young have an |
| 6 | | ownership interest in TCI today? |
| 7 | A. | Yes. |

| Plaintiff's Designation of K. Bodnar (6:24-7:3) | Defendant's Objections: |
|---|---|
| Page 6<br>24    Q.    Do either of your parents have an ownership interest<br>25          in TCI today?<br>Page 7<br>. . .<br>3      A.    Yes. | Page 6:24-25; 7:3:<br>Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403<br><br>Plaintiff's Response:<br><br>Relevant to witness bias that both parents also have ownership in Defendant. *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) ("Evidence is relevant . . . if it has a mere tendency to impeach a witness' credibility by a showing of bias"). |

| Plaintiff's Designation of K. Bodnar (10:16-23) | |
|---|---|
| Page 10<br>16    Q.    At the time you chose the name Thrive, did you<br>17          intend to sell skin care products?<br>18    A.    I don't remember.<br>19    Q.    You may have had that intent at the time you founded<br>20          the company?<br>. . .<br>22          You can answer again.<br>23    A.    I don't remember. | |

| Plaintiff's Designation of K. Bodnar (13:7-13) | Defendant's Objections: |
|---|---|
| Page 13<br>7    Q.    In 2014 had you considered selling Thrive<br>8          Causemetics branded skin care products?<br>9    A.    I don't remember.<br>10   Q.    Before you started selling Thrive<br>            Causemetics'<br>11          branded products, did you do any kind of<br>            search to see if<br>12          the Thrive Causemetics name was being<br>            used?<br>13   A.    I don't remember. | Page 13:10-13: Asked and answered (30(b)(6) transcript page 15), Fed. R. Evid. 611(a)<br><br>Plaintiff's Response:<br><br>Question does not waste time or harass or unduly embarrass the witness. No basis to strike under FRE 611(a). |
| Plaintiff's Designation of K. Bodnar (13:24-14:4) | Defendant's Objections: |
| Page 13<br>24   Q.    Ms. Bodnar, so we're clear as to time, before<br>            you<br>25          started using the Thrive Causemetics name<br>            on products<br>Page 14<br>1          that you were selling, did you ask anyone<br>            else to do a<br>2          search to see if the Thrive Causemetics<br>            name was being<br>3          used?<br>4    A.    I don't remember. | Page 13:24-14:4: Asked and answered (individual transcript page 13 and 30(b)(6) transcript page 57-58), Fed. R. Evid. 611(a)<br><br>Plaintiff's Response:<br>Question does not waste time or harass or unduly embarrass the witness. No basis to strike under FRE 611(a). |
| Plaintiff's Designation of K. Bodnar (14:20-15:5) | Defendant's Objections: |
| Page 14<br>20   Q.    At some later time did you become aware of<br>            someone<br>21          using the trademark Cause-Metics spelled<br>            C-A-U-S-E,<br>22          hyphen, M-E-T-I-C-S?<br>23   A.    Yes.<br>24   Q.    When did you learn about that? | Page 14:20-15:5: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br>Plaintiff's Response: |

| | | | |
|---|---|---|---|
| 25 | A. | I don't remember. | Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant and Ms. Bodnar knew that both portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
| Page 15 | | | |
| 1 | Q. | Do you know how you first learned that information? | |
| 2 | A. | I don't remember. | |
| 3 | Q. | Do you know if you received that information in a | |
| 4 | | trademark search? | |
| 5 | A. | I don't remember. | |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of K. Bodnar (16:2-13) | | | Defendant's Objections: |
| | | | |
| Page 16 | | | Page 16:2-13: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE) |
| 2 | Q. | Did you take any steps to contact the owner of the | |
| 3 | | Cause-Metics mark? | |
| 4 | A. | I honestly don't remember. | |
| 5 | Q. | Did you ask the owner of the Cause-Metics mark for | Plaintiff's Response: |
| 6 | | permission to use the mark in your brand? | Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant and Ms. Bodnar knew that both portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant |
| 7 | A. | I don't remember. | |
| 8 | Q. | Did you ever communicate with the owner of the | |
| 9 | | Cause-Metics mark? | |
| 10 | A. | I don't remember. | |
| 11 | Q. | As a result of learning of the Cause-Metics mark, | |
| 12 | | did you make any changes to TCI's name? | |
| 13 | A. | No. | |

| | |
|---|---|
| | continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
| <u>Plaintiff's Designation of K. Bodnar (20:5-13)</u><br><br><u>Page 20</u><br>5   Q.   Do you know who owns the Cause-Metics mark now?<br>6   A.   Thrive Causemetics owns the trademark Causemetics.<br>7   Q.   And how did Thrive Causemetics come to own that<br>8          trademark?<br>9   A.    I believe we purchased it.<br>10   Q.   From whom?<br>11   A.   I believe it was Jody R. Weiss.<br>12   Q.   When? When was that purchase completed?<br>13   A.   I don't remember. | <u>Defendant's Objections:</u><br><br>Page 20:5-13: Irrelevant, Fed. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (unrelated to THRIVE)<br><br><u>Plaintiff's Response:</u><br><br>Testimony and evidence is admissible under FRE 404(b)(2) to show motive, plan, or knowledge or FRE 406 to show routine practice of Defendant. Defendant and Ms. Bodnar knew that both portions of the brand name "thrive" and "causemetics" were registered trademarks of third parties. Yet Defendant continued to use both words in complete disregard of third-party trademark rights. These facts are relevant to infringement and willfulness. |
| <u>Plaintiff's Designation of K. Bodnar (23:5-13)</u><br><br><u>Page 23</u><br>5   Q.   When did TCI start selling filtered effects<br>6          blurring primer? | |

84

| | | |
|---|---|---|
| 7 | A. | It was 2020 I believe. It could have been 2019, but |
| 8 | | it's somewhere in that range. |
| 9 | Q. | Does TCI advertise filtered effects blurring primer |
| 10 | | as a skin care product? |
| . . . | | |
| 13 | A. | I don't know. |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar (24:6-8) | | |
| | | |
| Page 24 | | |
| 6 | Q. | Have you ever seen the contents for filtered effects |
| 7 | | blurring primer on TCI's website? |
| 8 | A. | Honestly, I don't know. |

| | | |
|---|---|---|
| Plaintiff's Designation of K. Bodnar (24:23-25:19) | | |
| | | |
| Page 24 | | |
| 23 | Q. | Do you know if TCI has ever advertised filter |
| 24 | | effects blurring primer as a makeup plus skin care |
| 25 | | hybrid? |
| Page 25 | | |
| . . . | | |
| 2 | A. | I don't know specifically. |
| 3 | Q. | Are you familiar with the content of TCI's website? |
| . . . | | |
| 5 | A. | What content? |
| 6 | Q. | The content regarding filtered effects blurring |
| 7 | | primer. |
| . . . | | |
| 9 | A. | I am not -- I don't know. I don't know. |
| 10 | Q. | Do you have any reason to doubt the contents in this |

| | | |
|---|---|---|
| 11 | | exhibit appeared on TCI's website? |
| . . . | | |
| 14 | A. | I don't know. |
| 15 | Q. | Does TCI sell any products that it refers to as |
| 16 | | makeup plus skin care hybrid? |
| . . . | | |
| 19 | A. | I don't know. |

| | |
|---|---|
| <u>Plaintiff's Designation of K. Bodnar (35:6-9)</u><br><br><u>Page 35</u><br>6   Q.   Do you know what the first thing you learned about<br>7        Thrive Natural Care was?<br>8   A.   I don't remember the first thing that I learned<br>9        about them, no. | |

| | |
|---|---|
| <u>Plaintiff's Designation of K. Bodnar (35:18-22)</u><br><br><u>Page 35</u><br>18   Q.   Do you recall if you asked Thrive Natural Care for<br>19        permission to use the Thrive name in TCI's name?<br>. . .<br>22   A.   I don't know. | <u>Defendant's Objections:</u><br><br>Page 35:18-19, 22: Asked and answered (30(b)(6) transcript), Fed. R. Evid. 611(a)<br><br><u>Plaintiff's Response:</u><br><br>Question does not waste time or harass or unduly embarrass the witness. No basis to strike under FRE 611(a). Ms. Bodnar is a key witness and Plaintiff should be permitted to admit testimony demonstrating she does not recall important issues in this case. |

| Plaintiff's Designation of K. Bodnar (36:23-37:10) | Defendant's Objections: |
|---|---|
| Page 36<br>23    Q.    Do you recall reaching out to Thrive Natural Care<br>24          asking for permission to use the word Thrive as part of<br>25          our brand name?<br>Page 37<br>1    A.    No, I don't.<br>2    Q.    Do you know why you would have reached out to Thrive<br>3          Natural Care asking for permission to use the word Thrive<br>4          as part of your brand name?<br>. . .<br>7    A.    I don't recall.<br>8    Q.    By this time, were you aware of Thrive Natural<br>9          Care's trademark registration?<br>10    A.    I don't remember. | Page 36:23-37:4; 37:7-10: Asked and answered (30(b)(6) transcript page 197-198), Fed. R. Evid. 611(a)<br><br>Plaintiff's Response:<br><br>Question does not waste time or harass or unduly embarrass the witness. No basis to strike under FRE 611(a). Ms. Bodnar is a key witness and Plaintiff should be permitted to admit testimony demonstrating she does not recall important issues in this case. |
| Plaintiff's Designation of K. Bodnar (37:20-39:12) | Defendant's Objections: |
| Page 37<br>20    Q.    Do you recall reaching out to Thrive Natural Care at<br>21          any time after this email exchange in this exhibit?<br>22    A.    Again, I don't want to speculate on timing, but I do<br>23          recall reaching out to Thrive Natural Care.<br>24    Q.    And did you make contact with anyone there?<br>25    A.    Yes.<br>Page 38<br>1    Q.    Who?<br>2    A.    Alex McIntosh.<br>. . . | Page 37:20-38:2; 38:10-12, 14-16, 18-23; 39:1-3, 5-10, 12: Asked and answered (30(b)(6) transcript pages 206, 210, 217, 218), Fed. R. Evid. 611(a)<br><br>Plaintiff's Response:<br><br>Question does not waste time or harass or unduly embarrass the witness. No basis to strike under FRE 611(a). Ms. Bodnar is a key witness and Plaintiff should |

| | | | |
|---|---|---|---|
| 10 | Q. | Did you speak to Mr. McIntosh? | be permitted to admit testimony demonstrating she does not recall important issues in this case. |
| 11 | A. | Yes. | |
| 12 | Q. | Why did you call him again? | |
| . . . | | | |
| 14 | A. | I don't know. | |
| 15 | Q. | Did you have any specific purpose in mind in | |
| 16 | | contacting him? | |
| . . . | | | |
| 18 | A. | I don't know. | |
| 19 | Q. | Did you ask him again for permission to use the | |
| 20 | | Thrive name? | |
| 21 | A. | I don't remember. | |
| 22 | Q. | Did you discuss with him any terms relating to using | |
| 23 | | the Thrive name? | |
| . . . | | | |
| Page 39 | | | |
| 1 | A. | I don't remember. | |
| 2 | Q. | When you contacted and spoke with Alex McIntosh at | |
| 3 | | that time, was TCI selling skin care products? | |
| . . . | | | |
| 5 | A. | I don't know. | |
| 6 | Q. | Do you recall telling Alex McIntosh that TCI was | |
| 7 | | selling skin care products? | |
| 8 | A. | I don't recall. | |
| 9 | Q. | Did you ask for permission to use the Thrive name on | |
| 10 | | skin care products? | |
| . . . | | | |
| 12 | A. | I don't remember. | |

| |
|---|
| ***Plaintiff's Designation of Ned Menninger Personal Deposition*** |
| Plaintiff's Designation of N. Menninger (5:4-6) |

<table>
<tr><td>

Page 5<br>
4     Q.     Mr. Menninger, will you please state your<br>
5             full name for the record?<br>
6     A.     It is Ned Anthony Menninger.

</td><td></td></tr>
<tr><td>

<u>Defendant's Counter-Designation of Ned Menninger (8:9-12)</u>:

Page 8<br>
9     Q.     You understand that today you're here in your<br>
10          personal capacity and not answering as a<br>
11          representative of Thrive Causemetics, Inc.; correct?<br>
12    A.     Yes.

</td><td></td></tr>
<tr><td>

<u>Plaintiff's Designation of N. Menninger (11:19-21)</u>

Page 11<br>
19    Q.     And when did you begin working with Thrive<br>
20          Causemetics in any capacity?<br>
21    A.     July of 2017. As a contract CFO.

</td><td></td></tr>
<tr><td>

<u>Plaintiff's Designation of N. Menninger (11:25-12:2)</u>

Page 11<br>
25    Q.     Did you have any experience in the makeup or<br>
Page 12<br>
1            skin care industries?<br>
2     A.     No.

</td><td></td></tr>
<tr><td>

<u>Plaintiff's Designation of N. Menninger (12:11-15)</u>

Page 12<br>
11    Q.     After your contract CFO, what was your next

</td><td></td></tr>
</table>

| | | |
|---|---|---|
| 12 | | role at Thrive Causemetics? |
| 13 | A. | I was an employee CFO. |
| 14 | Q. | And when -- what month did that occur? |
| 15 | A. | Approximately July of 2019. |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of N. Menninger (14:6-11) | | | |
| | | | |
| Page 14 | | | |
| 6 | Q. | Were you involved in the -- in Thrive | |
| 7 | | Causemetics's decision to begin selling skin care | |
| 8 | | products? | |
| 9 | A. | No. | |
| 10 | Q. | Do you know who made that decision? | |
| 11 | A. | I do not. | |

| | | |
|---|---|---|
| Defendant's Counter-Designation of Ned Menninger (14:12-13): | | |
| | | |
| Page 14 | | |
| 12 | | I could only speculate. I don't have all the |
| 13 | | information in front of me at this time. |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of N. Menninger (17:6-20) | | | Defendant's Objections: |
| | | | |
| Page 17 | | | Page 17:6-8, 11, 13-16, 19- |
| 6 | Q. | Do you know why Ms. Bodnar would have | 20:No foundation, Fed. R. |
| 7 | | testified at her deposition that you were involved in | Evid. 602; Argumentative, Fed. R. Evid. 611(a) |
| 8 | | the decision to expand into skin care products? | |
| . . . | | | Plaintiff's Response: |
| 11 | A. | I don't. | |
| . . . | | | Relevant to truthfulness of |
| 13 | Q. | If Ms. Bodnar said that you and her were the | Ms. Bodnar's testimony that directly contracts testimony |
| 14 | | only people involved in the decision to expand into | by Mr. Menninger. |

| | | |
|---|---|---|
| 15 | | skin care products, you don't know what she was |
| 16 | | referring to? |
| . . . | | |
| 19 | A. | I was informed about the |
| 20 | | decision. But the ultimate decision was hers to make. |

Plaintiff's Designation of N. Menninger (18:9-12)

Page 18

| | | |
|---|---|---|
| 9 | Q. | Is TCI's skin care line profitable? |
| 10 | A. | Based on the information provided to you or |
| 11 | | to -- in this matter that would show that, yes, it is |
| 12 | | profitable. |

Defendant's Counter-Designation of Ned Menninger (18:13-24):

Page 18

| | | |
|---|---|---|
| 13 | Q. | Not based on the information that you showed |
| 14 | | to me, just asking you, on your numbers and your |
| 15 | | understanding of the company, is the skin care line |
| 16 | | profitable? |
| 17 | A. | The information I provided to you are one and |
| 18 | | the same. That is the -- that is our information that |
| 19 | | ties to our reported financial statements. |
| 20 | Q. | How do you know that the information provided |
| 21 | | to Thrive Natural Care in this case regarding the |
| 22 | | revenue profitability at TCI is completely accurate? |

| | | |
|---|---|---|
| 23 | A. | Because I ensured that all of that |
| 24 | | information tied to our reported financial statements. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger (18:25-19:6) | | |
| | | |
| Page 18 | | |
| 25 | Q. | Are skin care products a major source of |
| Page 19 | | |
| 1 | | TCI's revenue? |
| 2 | A. | Could you clarify "major," please? |
| 3 | Q. | What do you understand the major source of |
| 4 | | revenue to be? |
| 5 | A. | They represent approximately 20 percent of |
| 6 | | our revenue. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger (19:13-14) | | |
| | | |
| Page 19 | | |
| 13 | Q. | What is your job title today? |
| 14 | A. | VP of finance. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger (22:7-11) | | |
| | | |
| Page 22 | | |
| 7 | | (Exhibit No. 37 marked for identification.) |
| . . . | | |
| 9 | Q. | Mr. Menninger, I'm going to direct you to |
| 10 | | Exhibit 37, which is TCI 00030182 through 184. It is |
| 11 | | a three-page exhibit. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger (23:1-14) | | |
| | | |
| Page 23 | | |
| 1 | Q. | Mr. Menninger, did you create this document? |
| 2 | A. | Yes. |
| 3 | Q. | When did you create this document? |

| | | |
|---|---|---|
| 4 | A. | In the last couple weeks for this matter. |
| 5 | Q. | How would you create this document? |
| 6 | A. | As I mentioned before, it's utilizing |
| 7 | | information from Shopify, our e-commerce platform, for |
| 8 | | the revenue for every product and our financial |
| 9 | | statements which tie to our general ledger in |
| 10 | | QuickBooks. |
| 11 | Q. | Shopify gives you the revenue and the total |
| 12 | | units, and then QuickBooks gives you the cost and |
| 13 | | advertising spent; is that correct? |
| 14 | A. | Yes. All of the costs are displayed here. |

Plaintiff's Designation of N. Menninger (24:4-12)

Page 24

| | | |
|---|---|---|
| 4 | Q. | What program did you use or software did you |
| 5 | | use to make this document? |
| 6 | A. | Excel. |
| 7 | Q. | Each of the amounts in this document, each of |
| 8 | | the numbers -- are those manually entered by you, or |
| 9 | | are they automatically generated? |
| 10 | A. | Everything in the sheet as presented was |
| 11 | | manually input. But the information all ties to |
| 12 | | either Shopify and our general ledger. |

Plaintiff's Designation of N. Menninger (31:9)

Page 31

| | |
|---|---|
| 9 | (ExhibitNo. 38 marked for identification.) |

Plaintiff's Designation of N. Menninger (33:12-25)

Page 33

| 12 | Q. | It's your testimony under oath that all of |
|----|----|--------------------------------------------|
| 13 | | these numbers here are 100 percent accurate and |
| 14 | | correct? |
| 15 | A. | Are you referring to the CC Cream or all -- |
| 16 | | when you say all -- |
| 17 | Q. | 30183. I'm referring to this page. |
| 18 | A. | I'm on the wrong page. Excuse me. |
| 19 | | As I mentioned before, the revenue is exact |
| 20 | | because that ties to Shopify, and the costs are |
| 21 | | allocated. We don't report it broken out by product |
| 22 | | in this manner for our purposes, but the sum total of |
| 23 | | the cost, all of them, tie to our financial |
| 24 | | statements. And so I would say, yes, these numbers |
| 25 | | are accurate to that extent. |

Defendant's Counter-Designation of Ned Menninger (34:1-8):

Page 34

| 1 | Q. | Do they tie -- do the costs tie to the |
|---|----|-----------------------------------------|
| 2 | | product as shown? You said they tie to your financial |
| 3 | | statements. |
| 4 | A. | I -- excuse me. Yes. So the sum total of |
| 5 | | net income, for instance, for all these products and |
| 6 | | every other product -- the sum total ties to our |
| 7 | | financial statements as does the revenue in each of |
| 8 | | these items. |

Plaintiff's Designation of N. Menninger (534:9-35:2)

94

| | |
|---|---|
| Page 34<br>9    Q.    Putting your financial statements aside,<br>10          under penalty of perjury, are these costs in all these<br>11          columns 100 percent accurate with how they track with<br>12          each SKU number as represented in this document?<br>13    A.    They track with each SKU number based on how<br>14          they have been allocated as a proportion of total<br>15          units sold. We don't, as a matter of practice,<br>16          allocate all these costs on a product basis, on a unit<br>17          by unit basis. This was prepared for this matter, for<br>18          this discussion.<br>. . .<br>23    Q.    Why don't you allocate these costs on a unit<br>24          by unit basis?<br>25    A.    We haven't found it meaningful necessarily,<br>Page 35<br>1          and we don't have the bandwidth to do that. There's<br>2          only two people in finance. | |
| Plaintiff's Designation of N. Menninger (35:16-21)<br><br>Page 35<br>16    Q.    Is TCI's profit margin greater at the retail<br>17          level or at the e-commerce level?<br>18    A.    We are primarily e-commerce. We did a small<br>19          portion through -- we call it wholesale with Ulta at<br>20          the end of 2019 and early 2020. It was as much a test | Defendant's Objections:<br><br>Page 35:16-19: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to abandoned color cosmetics claim)<br><br>Plaintiff's Response: |

| | |
|---|---|
| 21      operation…. | That Defendant is primarily an e-commerce company is relevant to *Sleekcraft* factors and whether the parties' marketing channels overlap on the internet. While sales at Ulta were only color cosmetics, the testimony from Mr. Menninger regarding Defendant being primarily e-commerce is not limited to color cosmetics. |
| Defendant's Counter-Designation of Ned Menninger (35:23) [only if objections to preceding designation are overruled]:<br><br>Page 35<br>23   A.   We sold a limited number of products to Ulta. | |
| Defendant's Counter-Designation of Ned Menninger (36:1-9) [only if objections to preceding designation are overruled]:<br><br>Page 36<br>1      BY MR. MCARTHUR:<br>2   Q.   Is the profit margin for the sales of your<br>3         products -- is that higher at the wholesale level, or<br>4         is it higher at the --<br>5   A.   I don't believe we sold any of the skin care<br>6         products to Ulta. I don't have that information<br>7         completely in front of me at this time, what was<br>8         included. It was a limited number of products for a<br>9         very limited period of time. | |

| | |
|---|---|
| <u>Plaintiff's Designation of N. Menninger (36:10-11)</u><br><br><u>Page 36</u><br>10   Q.   Is TCI an e-commerce company?<br>11   A.   Yes. | |
| <u>Plaintiff's Designation of N. Menninger (40:10-18)</u><br><br><u>Page 40</u><br>10   Q.   Are the TCI's revenue and profit projections<br>11        for 2021 higher than they were for 2020?<br>12   A.   Yes.<br>13   Q.   Why is that?<br>14   A.   The overall growth of the business and our<br>15        increased advertising spend.<br>16   Q.   Has TCI been increasing advertising spend<br>17        every year?<br>18   A.   Yes. | |
| <u>Plaintiff's Designation of N. Menninger (41:3-12)</u><br><br><u>Page 41</u><br>3   Q.   What percentage of TCI's revenue do you spend<br>4        on advertising?<br>. . .<br>6   A.   If you look right here in<br>7        roughly -- it's going to be consistent. It's going to<br>8        be between -- overall, it's going to be 50 to 52<br>9        percent.<br>. . .<br>11   Q.   30183?<br>12   A.   Yes. | |
| <u>Plaintiff's Designation of N. Menninger (42:5-13)</u> | |

| | |
|---|---|
| <u>Page 42</u><br>5    Q.    Are you saying that 50 percent of all of<br>6           TCI's revenue is spent on advertising?<br>. . .<br>9    A.    A significant amount of our<br>10         revenue, yes, is spent on advertising.<br>. . .<br>12   Q.    Is it about 50 percent?<br>13   A.    Thereabouts, yes. Probably up to 52 percent. | |
| <u>Plaintiff's Designation of N. Menninger (5:4-6)</u><br><br><u>Page 42</u><br>18   (Exhibit No. 39 marked for identification.)<br>. . .<br>24   Q.    Do you recognize this document,<br>25         Mr. Menninger?<br><u>Page 43</u><br>1    A.    Yes.<br>2    Q.    What is this document?<br>3    A.    It is the summary of revenue and COGS for<br>4         each of our skin care products by SKU from inception<br>5         in 2018 through May 31st of 2021. | |
| <u>Plaintiff's Designation of N. Menninger (48:17-50:23)</u><br><br><u>Page 48</u><br>17   Q.    Okay. So for Moisture-Enriched Hand<br>18         Sanitizer, the total revenue is $168,066 for 2020 is<br>19         that correct?<br>20   A.    Yes.<br>. . .<br>23   Q.    You claim that TCI spent $836,621 to<br>24         advertise this product; is that correct?<br>. . .<br><u>Page 49</u><br>4    A.    What I said before is that's | <u>Defendant's Objections:</u><br><br>Page 49: 11-14, 17: No foundation, Fed. R. Evid. 602<br><br>Page 49:19-50:10; 50:13-23: Asked and answered (30(b)(6) transcript pages 55-57), Fed. R. Evid. 611(a)<br><br><u>Plaintiff's Response:</u> |

| | | | |
|---|---|---|---|
| 5 | | the allocated cost based on the number of units sold. | Question is answered in much more detail here than in prior testimony. Question does not waste time or harass or unduly embarrass the witness. No basis to strike under FRE 611(a). |
| . . . | | | |
| 7 | Q. | So ad spend is allocated based on the number | |
| 8 | | of units sold and not based off of revenue; is that | |
| 9 | | correct? | |
| 10 | A. | Correct. | |
| 11 | Q. | Under those calculations, if something has a | |
| 12 | | lot of units sold but low revenue, would that have a | |
| 13 | | disproportionate amount of ad spend allocated to it in | |
| 14 | | that circumstance? | |
| . . . | | | |
| 17 | A. | In mass format, yes. | |
| . . . | | | |
| 19 | Q. | Is other overhead calculated the same way? | |
| 20 | A. | It's calculated as -- based on the number of | |
| 21 | | units sold as a percentage of total units sold for | |
| 22 | | each product. | |
| 23 | Q. | So for the other overhead column on this | |
| 24 | | page, what is included in other overhead? | |
| 25 | A. | It's all costs -- not specifically identified | |
| Page 50 | | | |
| 1 | | in the other columns, all costs to operate the | |
| 2 | | business. | |
| 3 | Q. | Please give me examples of what those costs | |
| 4 | | are. | |
| 5 | A. | It could be rent, travel, the employee costs, | |
| 6 | | public relations, donations. | |
| 7 | Q. | What else? | |
| 8 | A. | It could be -- it would be -- if we had some | |
| 9 | | bank fees or other consulting, other resources, | |

99

| 10 | | customer support vendors, legal -- things like that. |  |
| . . . | | | |
| 13 | Q. | Taxes? | |
| 14 | A. | Yes, it could. | |
| 15 | Q. | So every single cost in any context incurred | |
| 16 | | by Thrive Causemetics that's not already allocated to | |
| 17 | | one of these other columns is other overhead; is that | |
| 18 | | correct? | |
| 19 | A. | Yes. | |
| 20 | Q. | And that is true for all of the spread sheets | |
| 21 | | we've seen today; is that correct? | |
| 22 | A. | The explanation that it includes all the -- | |
| 23 | | yes, it does. | |

| Plaintiff's Designation of N. Menninger (59:5-25) | | | Defendant's Objections: |
| --- | --- | --- | --- |
| <u>Page 59</u> | | | Page 59:5-25: No foundation, Fed. R. Evid. 602 |
| 5 | Q. | What are color cosmetics? | |
| 6 | A. | It's -- I'm not sure I understand the -- as | |
| 7 | | it relates to Thrive or in general? | Plaintiff's Response: |
| 8 | Q. | In general. | |
| 9 | A. | It would be makeup related products that have | Witness has been CFO for Defendant for several years and demonstrated knowledge regarding its products and product categories. |
| 10 | | either color shades and/or other pigments that would | |
| 11 | | be used to enhance or what you would use for what we | |
| 12 | | call makeup to help the individuals on a presentation | |
| 13 | | basis or help their appearance. | |
| 14 | Q. | Are color cosmetics distinct from skin care | |
| 15 | | products? | |
| 16 | A. | As I understand it, yes. | |
| 17 | Q. | How so? | |
| 18 | A. | As I understand it, it would be -- skin care | |

| | | |
|---|---|---|
| 19 | | would be like a lotion that I use that I put on my |
| 20 | | hand for instance because I have a cut, but that's not |
| 21 | | altering the appearance at all of said cut. In |
| 22 | | cosmetics, we would have colors and other associated |
| 23 | | features that would be very distinct from that of a -- |
| 24 | | what I would call skin care/lotion in the case of what |
| 25 | | I use. |

Plaintiff's Designation of N. Menninger (60:12-14)

Page 60

| | | |
|---|---|---|
| 12 | Q. | Do you know what the demographic target |
| 13 | | audience is for TCI's products? |
| 14 | A. | Women 15 to 80. |

Defendant's Counter-Designation of Ned Menninger (61:2-4):

Page 61

| | | |
|---|---|---|
| 2 | Q. | So are all of TCI's products sold in either |
| 3 | | the United States or in Canada? Is that correct? |
| 4 | A. | Correct. |

Plaintiff's Designation of N. Menninger (61:5-10)

Page 61

| | | |
|---|---|---|
| 5 | Q. | And it would be accurate to say that the |
| 6 | | overwhelming majority are sold in the United States? |
| 7 | A. | Closer to 97 percent in the U.S. |
| 8 | Q. | About 97 percent of TCI's products are sold |
| 9 | | in the United States; is that correct? |
| 10 | A. | Yes. |

| | |
|---|---|
| <u>Plaintiff's Designation of N. Menninger (61:14-23)</u><br><br><u>Page 61</u><br>14   Q.   Is there a particular income bracket that TCI<br>15         advertises to?<br>16   A.   No.<br>17   Q.   Is there a particular race that TCI<br>18         advertises to?<br>19   A.   No.<br>20   Q.   Is TCI's target demographic women in the<br>21         United States age 15 to 80 of any income, of<br>            any race?<br>22         Is that correct?<br>23   A.   Yes. | |
| <u>Defendant's Counter-Designation of Ned Menninger (62:2-8)</u>:<br><br><u>Page 62</u><br>2    Q.   Why 15 and not younger than 15?<br>3    A.   You said why 15?<br>4    Q.   Is there a particular reason why the age<br>5         starts at 15?<br>6    A.   We've had customers even earlier, but it's a<br>7         general -- we feel there is no age limit on our<br>8         products. | |
| <u>Plaintiff's Designation of N. Menninger (69:20-70:6)</u><br><br><u>Page 69</u><br>20   Q.   So allocated COGS being sold is the cost that<br>21         the manufacturer charges you for a<br>           particular product;<br>22         right?<br>. . .<br>25   A.   No. | |

<u>Page 70</u>

. . .

| 2 | Q. | Okay. Is it shipping and freight? |
| 3 | A. | Yes. |
| 4 | Q. | Is landed COGS being sold the cost that the |
| 5 | | manufacturer charges you for a particular product? |
| 6 | A. | Yes. |

<u>Plaintiff's Designation of N. Menninger (73:6-25)</u>

<u>Page 73</u>

| 6 | Q. | Merchant fees is a similar allocation from |
| 7 | | all of TCI's product sold; right? |
| 8 | A. | Yes. |
| 9 | Q. | Shopify column is also an allocation from all |
| 10 | | of TCI's products sold; right? |
| 11 | A. | Yes. |
| 12 | Q. | When we say TCI products sold, this is not |
| 13 | | limited to just skin care, is it? All of TCI's |
| 14 | | products; right? |
| 15 | A. | Yes. |
| 16 | Q. | The ad spend column is also an allocation for |
| 17 | | all of TCI's products; right? |
| 18 | A. | Yes. |
| 19 | Q. | The other overhead column is also an |
| 20 | | allocation of all TCI's products; right? |
| 21 | A. | Yes. |
| 22 | Q. | It's allocated not based off of percent of |
| 23 | | revenue but based off of the total number of units |
| 24 | | sold; right? |
| 25 | A. | Yes. |

<u>Plaintiff's Designation of N. Menninger (74:4-6)</u>

<u>Page 74</u>

| | | |
|---|---|---|
| 4 | Q. | How did you calculate the final column of net |
| 5 | | income? |
| 6 | A. | Revenue minus total costs. |

| Plaintiff's Designation of N. Menninger (75:12-76:2) | Defendant's Objections: |
|---|---|
| Page 75 | Page 75:12–76:2: Irrelevant, Fed. R. Evid. 401, 402; No foundation, Fed. R. Evid. 602 |
| 12 Q. I'll ask about this $222,000 loss. | |
| 13    If this lip balm treatment was not profitable | |
| 14    in 2020, why did TCI continue selling this in 2021? | |
| 15 A. This view -- we don't -- this view is solely | Plaintiff's Response: |
| 16    for purposes of this matter, of this litigation. They | |
| 17    don't view it this way. We look at numbers on an all | Relevant to Defendant's claimed deductible costs, as it demonstrates the cost data produced by Defendant in made-for-litigation documents are not tied to the manufacture of any particular product rather are being treated differently for purposes of litigation than Defendant's standard practice. |
| 18    up basis because we don't allocate costs as we run our | |
| 19    business this way. | |
| 20 Q. Just because this spread sheet shows the | |
| 21    Liquid Lip Balm Treatment at a $222,000 loss, it | |
| 22    doesn't mean that TCI treated that product as a loss; | |
| 23    is that correct? | |
| 24 A. Not necessarily, yes. | |
| 25 Q. Is it possible that product was treated as a | |
| Page 76 | |
| 1    profit product for TCI? | |
| 2 A. It's possible. | |

| Plaintiff's Designation of N. Menninger (77:11-19) | Defendant's Objections: |
|---|---|
| Page 77 | Page 77:11-13, 16-19: No foundation, Fed. R. Evid. 602; Asked and answered (30(b)(6) transcript page 17), Fed. R. Evid. 611(a) |
| 11 Q. To the best of your knowledge, was the | |
| 12    decision to enter into the skin care business in 2019, | |

| | | | |
|---|---|---|---|
| 13 | | 2020 a decision made solely by Karissa Bodnar? | Plaintiff's Response: |
| . . . | | | |
| 16 | A. | As I stated, the decision was | Witness testified to basis for |
| 17 | | ultimately hers, but we had some discussions about it | knowledge and question does not waste time or |
| 18 | | at least on an informed basis, but that decision was | harass or unduly embarrass the witness. No basis to |
| 19 | | made by Karissa Bodnar. | strike under FRE 611(a). |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of N. Menninger (78:2-23) | | | Defendant's Objections: |
| | | | |
| Page 78 | | | Page 78:2-6, 9-10, 14: No |
| 2 | Q. | While other employees at Thrive Causemetics, | foundation, Fed. R. Evid. 602 |
| 3 | | such as yourself, may get input into Ms. Bodnar, are | Page 78:16-23: Irrelevant, |
| 4 | | major company decisions, like whether or not to enter | Fed. R. Evid. 401, 402; No foundation, Fed. R. Evid. |
| 5 | | into the skin care product line, ultimately 100 | 602 |
| 6 | | percent Ms. Bodnar's decision? | Plaintiff's Response: |
| . . . | | | |
| 14 | A. | The answer is yes. | Relevant to scope of Ms. |
| . . . | | | Bodnar's knowledge and |
| 16 | | About how many employees does TCI have | authority within company, |
| 17 | | full-time? | and in particular her |
| 18 | A. | As of today? | involvement in the critical |
| 19 | Q. | Yes. | decision to expand into the |
| 20 | A. | Approximately 110. | skincare market in |
| 21 | Q. | And how many part-time employees does TCI | competition with Plaintiff. |
| 22 | | have? | |
| 23 | A. | One. | |

| |
|---|
| ***Plaintiff's Designation of Brendan Gardner-Young Personal Deposition*** |

| | |
|---|---|
| Plaintiff's Designation of B. Gardner-Young (6:15-7:1) | Defendant's Objections: |

| | |
|---|---|
| Page 6<br>15    Q.    Do you know Karissa Bodnar?<br>16    A.    Yes.<br>17    Q.    And how do you know Ms. Bodnar?<br>18    A.    I work with her.<br>19    Q.    Do you have any other relationship with<br>20          Ms. Bodnar?<br>21    A.    Yes.<br>22    Q.    What is that?<br>23    A.    She's my girlfriend.<br>24    Q.    Okay. And how long have you been in a<br>25          romantic relationship with Ms. Bodnar?<br>Page 7<br>1     A.    Ten years. | Page 6:15-7:1, 6-7:<br>Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403<br><br>Plaintiff's Response:<br><br>Mr. Gardner-Young's long-time romantic relationship with Defendant's CEO is obviously relevant to witness bias. *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) ("Evidence is relevant . . . if it has a mere tendency to impeach a witness' credibility by a showing of bias"). |
| Plaintiff's Designation of B. Gardner-Young (8:6-7)<br><br>Page 8<br>6     Q.    Do you live with Ms. Bodnar?<br>7     A.    Yes. | Defendant's Objections:<br><br>Page 8:6-7: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403<br><br>Plaintiff's Response:<br><br>Relevant to witness bias. *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) ("Evidence is relevant . . . if it has a mere tendency to impeach a witness' credibility by a showing of bias"). |
| Plaintiff's Designation of B. Gardner-Young (18:13-16)<br><br>Page 18 | Defendant's Objections: |

106

| | | |
|---|---|---|
| 13 | Q. | Do you have any ownership interest in | Page 18:13-14: Irrelevant, Fed. R. Evid. 401, 402 |
| 14 | | Thrive Causemetics? | |
| . . . | | | <u>Plaintiff's Response:</u> |
| 16 | A. | I do. | Relevant to witness bias. *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) ("Evidence is relevant . . . if it has a mere tendency to impeach a witness' credibility by a showing of bias"). |

| | | |
|---|---|---|
| <u>Plaintiff's Designation of B. Gardner-Young (18:23-25)</u> | | |
| <u>Page 18</u> | | |
| 23 | Q. | What percentage of Thrive Causemetics' shares |
| 24 | | do you own? |
| 25 | A. | I'm not sure of the exact percentage. |

| | | |
|---|---|---|
| <u>Plaintiff's Designation of B. Gardner-Young (31:16-24)</u> | | |
| <u>Page 31</u> | | |
| 16 | Q. | Did you ever do any searching in those days to |
| 17 | | see if Thrive Causemetics' name was being used by |
| 18 | | anybody else? |
| 19 | A. | Did I ever do searching? No. |
| 20 | Q. | Are you aware of anybody else doing searching? |
| 21 | A. | I'm not aware. |
| 22 | Q. | Do you know if anybody did a trademark search |
| 23 | | for Thrive for cosmetics? |
| 24 | A. | I -- I'm not aware of that either. |

| | |
|---|---|
| <u>Plaintiff's Designation of B. Gardner-Young (56:3-6)</u> | |

| | |
|---|---|
| <u>Page 56</u><br>3   Q.   Did you post ads on Facebook?<br>4   A.   No.<br>5   Q.   Did somebody do that for Thrive<br>          Causemetics?<br>6   A.   I believe so. | |
| <u>Plaintiff's Designation of B. Gardner-Young (56:18-20)</u><br><br><u>Page 56</u><br>18  Q.   And what kind of advertising did TCI do on<br>19       Google?<br>20  A.   Well, I believe it's AdWords. | |
| <u>Plaintiff's Designation of B. Gardner-Young (76:8-23)</u><br><br><u>Page 76</u><br>8   Q.   What does "impressions" mean?<br>9   A.   It depends on the platform, but it's the<br>10       number of times it was shown to a potential<br>          customer.<br>11  Q.   That -- the number of times a particular ad<br>12       was shown to a customer?<br>13  A.   Correct.<br>14  Q.   How about "clicks" next to that, what does<br>15       that mean?<br>16  A.   The amount of times it was clicked by that<br>17       customer that had the impression.<br>18  Q.   And how about "CTR" next to that, what does<br>19       that mean?<br>20  A.   It's the percentage of clicks divided by<br>21       impressions.<br>22  Q.   What's a CTR, actually?<br>23  A.   Clickthrough rate. | |
| <u>Plaintiff's Designation of B. Gardner-Young (77:15-21)</u> | |

| | | |
|---|---|---|
| <u>Page 77</u> | | |
| 15 | Q. | How about "CVR," do you know what that means? |
| 16 | A. | Conversion rate. |
| 17 | Q. | And "revenue," do you know what that means? |
| 18 | A. | Yes. |
| 19 | Q. | What? |
| 20 | A. | The amount of revenue that TCI got from those |
| 21 | | served ads. |

| Plaintiff's Designation of B. Gardner-Young (88:8-15) | Defendant's Objections: |
|---|---|
| <u>Page 88</u><br>8  Q.  Does Thrive Causemetics sell<br>9       skin care products today?<br>10  A.  Yes.<br>11  Q.  What does the term "skin care products" mean<br>12       to you?<br>13  A.  Skin care, I don't know. It's products that<br>14       you would use to -- on your skin to help repair and kind<br>15       of preventative. | Page 88:11-15: Irrelevant, Fed. R. Evid. 401, 402; Foundation, Fed. R. Evid. 602<br><br><u>Plaintiff's Response:</u><br><br>Parties have disputed whether certain products meet definition of "skincare products" and this testimony is relevant to that dispute. Witness has been involved with Defendant's products since its inception and demonstrated knowledge of the subject matter. |

| | |
|---|---|
| Plaintiff's Designation of B. Gardner-Young (91:12-92:9)<br><br><u>Page 91</u><br>12   (Exhibit No. 44 marked.)<br>. . . | |

| | | |
|---|---|---|
| 21 | Q. | So when I'm saying -- do you recognize what's |
| 22 | | shown in Exhibit 44? |
| 23 | A. | I do. |
| 24 | Q. | This is a screenshot of Thrive Causemetics' |
| 25 | | skin care webpage; is that correct? |
| Page 92 | | |
| 1 | A. | Yeah. I would call it skin care navigation, |
| 2 | | but yes. |
| 3 | Q. | This would be the skin care navigation page? |
| 4 | A. | Well, you've got the navigation open and |
| 5 | | you're on a collection page here, so it's two different |
| 6 | | things. |
| 7 | Q. | The page that shows the skin care products, |
| 8 | | would that be the skin care collection page? |
| 9 | A. | Yes. |

| | |
|---|---|
| Plaintiff's Designation of B. Gardner-Young (95:5-10) | Defendant's Objections: |
| Page 95<br>5  Q.  Does TCI sell products to men?<br>6  A.  Yes.<br>7  Q.  Does TCI target men with any advertisements?<br>8  A.  I do not know.<br>9  Q.  Does TCI sell skin care products to men?<br>10  A.  Yes. | Page 95:5-10: Foundation, Fed. R. Evid. 602<br><br>Plaintiff's Response: Witness has been involved with Defendant since its inception and demonstrated knowledge of the subject matter of advertising. |
| Defendant's Counter-Designation of Brendan Gardner-Young (95:11-18) [only if objections to preceding designation are overruled]:<br><br>Page 95<br>11  Q.  How do you know?<br>12  A.  Because we sell to everyone.<br>13  Q.  Do you receive some information that indicates | |

| | | |
|---|---|---|
| 14 | | a purchaser is male? |
| 15 | A. | No. |
| 16 | Q. | Do you know what percentage of purchasers of |
| 17 | | products are men? |
| 18 | A. | No. |

| Plaintiff's Designation of B. Gardner-Young (95:19-20) | Defendant's Objections: |
|---|---|
| Page 95 | Page 95:19-20: No foundation, Fed. R. Evid. 602 |
| 19  Q.  Has TCI ever advertised on Amazon? | |
| 20  A.  I believe so. | |
| | Plaintiff's Response: Witness has been involved with Defendant since its inception and demonstrated knowledge of the subject matter of advertising. |

| Plaintiff's Designation of B. Gardner-Young (96:14-97:19) | |
|---|---|
| Page 96 | |
| 14  Q.  Do you know if TCI bids on ad words? | |
| 15  A.  I believe we do. | |
| 16  Q.  And can someone else outbid you for a certain | |
| 17       ad word? | |
| 18  A.  With my knowledge of the Google ad network, | |
| 19       yes. | |
| 20  Q.  Do you know if TCI has ever bid on the ad | |
| 21       word "Thrive"? | |
| 22  A.  I do not know. | |
| 23  Q.  Do you know if TCI has ever bid on -- | |
| 24       actually, strike that. | |
| 25       Do you know if you can bid on multiple words | |
| Page 97 | |

| | | |
|---|---|---|
| 1 | | as a Google ad word? |
| 2 | A. | I believe you can. |
| 3 | Q. | Do you know if TCI has ever bid on the ad word |
| 4 | | "Thrive Natural Care"? |
| 5 | A. | To my knowledge, we have not bid on that. |
| 6 | Q. | How do you know? |
| 7 | A. | Based on the report generation for this case. |
| 8 | Q. | Did you generate a report for this case? |
| 9 | A. | I did. |
| 10 | Q. | Where did you generate that report from? |
| 11 | A. | Google Ads. |
| 12 | Q. | Do you know -- strike that. |
| 13 | | What did the report you generated -- what data |
| 14 | | did it contain? |
| 15 | A. | It contained our Google ad words reporting or |
| 16 | | history. |
| 17 | Q. | That would be a history of ad words purchased |
| 18 | | by TCI? |
| 19 | A. | Yes. |

Plaintiff's Designation of B. Gardner-Young (97:20)

Page 97

    20(Exhibit No. 45 marked.)

Plaintiff's Designation of B. Gardner-Young (98:10-22)

Page 98

| | | |
|---|---|---|
| 10 | Q. | Brendan, just looking at the |
| 11 | | first page, do you have the exhibit in front of you? |
| 12 | A. | I do. |
| 13 | Q. | Is this page from the report that you referred |
| 14 | | to? |
| 15 | A. | Yes, I believe so. |

| | | |
|---|---|---|
| 16 | Q. | All right. Is the format consistent with the |
| 17 | | report that you ran from Google Ads? |
| 18 | A. | From my recollection, yes. |
| 19 | Q. | And to your understanding, do these pages show |
| 20 | | Google ad words purchased by TCI? |
| 21 | A. | I guess I would clarify it to be keywords, but |
| 22 | | yes. |

Plaintiff's Designation of B. Gardner-Young (99:2-7)

Page 99

| | | |
|---|---|---|
| 2 | Q. | So these are Google search keywords; is that |
| 3 | | correct? |
| 4 | A. | That's my understanding, yes. |
| 5 | Q. | And these are keywords purchased by TCI for |
| 6 | | advertising on Google? |
| 7 | A. | Correct. |

Plaintiff's Designation of B. Gardner-Young (100:12-23)

Page 100

| | | |
|---|---|---|
| 12 | Q. | And the column stating "clicks," is that the |
| 13 | | number of people that clicked on an ad? |
| 14 | A. | From my understanding, yes, during this |
| 15 | | timeframe. I don't see a timeframe, but yes. |
| 16 | Q. | That was actually one of my questions. |
| 17 | | What is the timeframe for this report? |
| 18 | A. | Are we talking about the report that I |
| 19 | | generated for this? |
| 20 | Q. | Yes. |
| 21 | A. | It was all time. |
| 22 | Q. | All of TCI's keywords over all time? |
| 23 | A. | Yup. |

113

<u>Plaintiff's Designation of B. Gardner-Young (103:25-104:7)</u>

<u>Page 103</u>
| | | |
|---|---|---|
| 25 | Q. | Why would an entry have been made on this |

<u>Page 104</u>
| | | |
|---|---|---|
| 1 | | report for a certain keyword? |
| 2 | A. | Because it was put into a bidding strategy. |
| 3 | Q. | What does that mean? |
| 4 | A. | That means that keyword showed up and was part |
| 5 | | of our overall -- or a overall Google strategy. |
| 6 | Q. | To bid on keywords? |
| 7 | A. | To bid on keywords. |

<u>Plaintiff's Designation of B. Gardner-Young (105:17-24)</u>

<u>Page 105</u>
| | | |
|---|---|---|
| 17 | Q. | Turning to the second page, Bates number ends |
| 18 | | in 110. Towards the bottom, there's an entry, a search |
| 19 | | keyword "Thrive cleanser." |
| 20 | | Do you see that? |
| 21 | A. | Yes. |
| 22 | Q. | Does that mean that at some time |
| 23 | | Thrive Causemetics bid on the keyword "Thrive cleanser"? |
| 24 | A. | Yes. |

<u>Plaintiff's Designation of B. Gardner-Young (106:15-21)</u>

<u>Page 106</u>
| | | |
|---|---|---|
| 15 | Q. | Moving over in the same |
| 16 | | column, under Thrive cleanser -- or row, sorry. Under |
| 17 | | the column "clicks" there's a number, 107. |
| 18 | | Do you see that? |

114

| | | | |
|---|---|---|---|
| 19 | A. | Yes. | |
| 20 | Q. | What does that mean? | |
| 21 | A. | The number of clicks that keyword resulted in. | |

Plaintiff's Designation of B. Gardner-Young (108:6-12)

Page 108

| | | |
|---|---|---|
| 6 | Q. | But it indicates that an ad with the keyword |
| 7 | | "Thrive cleanser" was placed on Google; is that correct? |
| 8 | A. | Yes. |
| 9 | Q. | And the impressions column next to it says |
| 10 | | 516. What does that mean? |
| 11 | A. | The number of times it showed up on a Google |
| 12 | | property. |

Plaintiff's Designation of B. Gardner-Young (108:25-109:3)

Page 108

| | | |
|---|---|---|
| 25 | Q. | Conversion next to it says 17.68. |

Page 109

| | | |
|---|---|---|
| 1 | | What does that mean? |
| 2 | A. | Conversions on the way to find in Google, so |
| 3 | | it was the number of conversions from that keyword. |

Plaintiff's Designation of B. Gardner-Young (109:8-110:22)

Page 109

| | | | |
|---|---|---|---|
| 8 | Q. | Would that mean somebody who made a purchase | **Defendant's Objections:** |
| 9 | | from Thrive Causemetics? | Page 109:8-110:19: No foundation, Fed. R. Evid. 602 |
| 10 | A. | That's the most traditional meaning, but | Page 109:20-110:22: |
| 11 | | there's others as well. | Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. |

115

| | | | |
|---|---|---|---|
| 12 | Q. | Do you know of any other meaning applicable to | R. Evid. 403 (relates solely to abandoned color cosmetics claim) |
| 13 | | this report? | |
| 14 | A. | No, because I don't know the meaning of | |
| 15 | | conversion in this report necessarily. | Plaintiff's Response: |
| 16 | Q. | But the most traditional meaning would be | Witness has been involved with Defendant since its |
| 17 | | somebody who clicked on an ad and then went to your site | inception and demonstrated knowledge of the subject |
| 18 | | and bought a product; is that correct? | matter of advertising and use of advertising |
| 19 | A. | Correct. | keywords. Further, |
| 20 | Q. | Going to the next page, Bates number ends in | testimony is relevant to Defendant's advertising |
| 21 | | 095. | practices and purchase of keywords to place |
| 22 | | Are you with me? | advertisements that use |
| 23 | A. | Yes. | Plaintiff's registered |
| 24 | Q. | At the very bottom, there's an entry for | trademark to advertise and sell Defendant's products, |
| 25 | | "Thrive." | causing confusion and damage to Plaintiff. Also |
| Page 110 | | | relevant to harm to Plaintiff |
| 1 | | Do you see that? | in that it demonstrates |
| 2 | A. | Yes. | Defendant bidding on |
| 3 | Q. | And does that mean that Thrive Causemetics bid | keywords drives up cost for Plaintiff to bid on keywords |
| 4 | | on the keyword "Thrive"? | which consist of its own |
| 5 | A. | Again, I don't know what the phrase search | registered trademark. |
| 6 | | keyword match is, so I can't say how -- that we did. | |
| 7 | Q. | But it appears in this report showing keywords | |
| 8 | | that Thrive Causemetics bid on; correct? | |
| 9 | A. | Yes. | |
| 10 | Q. | And if you move over to impressions, it states | |
| 11 | | 252,561. | |
| 12 | | Do you see that? | |
| 13 | A. | Yes. | |
| 14 | Q. | Does that indicate that an ad was placed using | |
| 15 | | this keyword "Thrive"? | |
| 16 | A. | Yes. | |

116

| | | | |
|---|---|---|---|
| 17 | Q. | And that it was seen 252,561 times? | |
| 18 | A. | No, not necessarily seen that many times. | |
| 19 | Q. | That it appeared on the consumers' computer | |
| 20 | | that many times? | |
| 21 | A. | It appeared on the page somewhere that many | |
| 22 | | times. | |

| Plaintiff's Designation of B. Gardner-Young (111:7-13) | Defendant's Objections: |
|---|---|
| Page 111 | Page 111:7-13: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 (relates solely to abandoned color cosmetics claim) |
| 7   Q.   Under clicks, it states 817,265. | |
| 9        Do you see that? | |
| 10   A.   Yes. | |
| 11   Q.   So am I correct that means that ad with the | Plaintiff's Response: |
| 12        keyword "Thrive" was clicked on over 17,000 times? | |
| 13   A.   Yes. | Witness has been involved with Defendant since its inception and demonstrated knowledge of the subject matter of advertising and use of advertising keywords. Further, testimony is relevant to Defendant's advertising practices and purchase of keywords to place advertisements that use Plaintiff's registered trademark to advertise and sell Defendant's products, causing confusion and damage to Plaintiff. |
| Plaintiff's Designation of B. Gardner-Young (112:8-23) | |

Page 112

| | | |
|---|---|---|
| 8 | Q. | Below that three rows, there's an entry for |
| 9 | | Thrive moisturizer. |
| 10 | | Do you see that? |
| 11 | A. | Yes. |
| 12 | Q. | And would that indicate TCI bid on the keyword |
| 13 | | "Thrive moisturizer"? |
| 14 | A. | Yes. But, again, I don't know the keyword |
| 15 | | match type there and if that impacts things. |
| 16 | Q. | But it states there were 791 impressions. |
| 17 | | Do you see that? |
| 18 | A. | I do see that. |
| 19 | Q. | And that indicates that an ad was placed using |
| 20 | | the keywords "Thrive moisturizer;" correct? |
| 21 | A. | Yes. |
| 22 | Q. | And it was clicked on 161 times? |
| 23 | A. | Correct. |

Plaintiff's Designation of B. Gardner-Young (124:17-24)

Page 124

| | | |
|---|---|---|
| 17 | Q. | Has TCI used the phrase "Thrive tribe" in any |
| 18 | | context? |
| 19 | A. | Yes. |
| 20 | Q. | What context? |
| 21 | A. | I have seen it on social media. |
| 22 | Q. | How have you seen it on social media? |
| 23 | A. | I remember a few posts where that was called |
| 24 | | out. |

Plaintiff's Designation of B. Gardner-Young (125:8-12)

Page 125

| | | |
|---|---|---|
| 8 | Q. | Is TCI still using the phrase "Thrive tribe" |
| 9 | | in any context? |

| | | |
|---|---|---|
| 10    A.    No.<br>11    Q.    Do you know when that stopped?<br>12    A.    Middle to early last year. | |
| <u>Plaintiff's Designation of B. Gardner-Young (125:24-126:1)</u><br><br><u>Page 125</u><br>24    Q.    Has TCI used the phrase "Thrive lab" in any<br>25          context?<br><u>Page 126</u><br>1    A.    Yes. | |
| <u>Plaintiff's Designation of B. Gardner-Young (126:23-127:3)</u><br><br><u>Page 126</u><br>23    Q.    In your view, is the word "Thrive" important<br>24          to TCI's brand?<br>25    A.    It's part of our name; so...<br><u>Page 127</u><br>1    Q.    Does that mean it's important to the TCI<br>2          brand?<br>3    A.    Yes. | <u>Defendant's Objections:</u><br><br>Page 126:23-127:3: No foundation, Fed. R. Evid. 602<br><br><u>Plaintiff's Response</u>:<br>Witness has been involved with Defendant since its inception and demonstrated understanding of Defendant's branding practices. |
| <u>Plaintiff's Designation of B. Gardner-Young (129:19-21)</u><br><br><u>Page 129</u><br>19    Q.    At some point, did TCI have a relationship<br>20          with Goldman Sachs?<br>21    A.    Yes. | <u>Defendant's Objections:</u><br><br>Page 129:19-21: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403<br><br><u>Plaintiff's Response</u>:<br>Relevant to lay foundation for following questions relating to potential expansion or acquisition of Defendant by a much larger |

| | |
|---|---|
| | company, which is directly relevant to expansion of product lines factor of *Sleekcraft* test. |
| <u>Plaintiff's Designation of B. Gardner-Young (130:1-6)</u> <br><br> Page 130 <br> 1   Q.   Were -- what kind of business did TCI do with <br> 2          Goldman Sachs? <br> 3   A.   It was more exploration; not necessarily <br> 4          business with them. <br> 5   Q.   Were you involved in those discussions? <br> 6   A.   I was. | <u>Defendant's Objections:</u> <br><br> Page 130:1-6: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 <br><br> <u>Plaintiff's Response:</u> <br> Relevant to lay foundation for following questions relating to potential expansion or acquisition of Defendant by a much larger company, which is directly relevant to expansion of product lines factor of *Sleekcraft* test. |
| <u>Plaintiff's Designation of B. Gardner-Young (130:19-131:12)</u> <br><br> Page 130 <br> 19   Q.   Was there discussion of TCI, as a company, <br> 20          being acquired by any other entity? <br> 21   A.   There was exploration of that. <br> 22   Q.   Were any acquirers discussed in particular? <br> 23   A.   Potential ones? <br> 24   Q.   Correct. <br> 25   A.   Yes. <br> Page 131 <br> 1   Q.   Who? <br> 2   A.   Large beauty conglomerates. <br> 3   Q.   Were names discussed? <br> 4   A.   Yeah, the market was explored. <br> 5   Q.   What conglomerates were explored as <br> 6          potentially acquiring TCI? | <u>Defendant's Objections:</u> <br><br> Page 130:19-25–131:1-12: Irrelevant, Fed. R. Evid. 401, 402; Prejudicial, Fed. R. Evid. 403 <br><br> <u>Plaintiff's Response:</u> <br> Relevant to Defendant's plans for expansion or acquisition of Defendant by a much larger company, which is directly relevant to expansion of product lines factor of *Sleekcraft* test. |

| | | |
|---|---|---|
| 7 | A. | L'Oreal, as an example. |
| 8 | Q. | Who else? |
| 9 | A. | Estée Lauder is another big example from the |
| 10 | | beauty industry. |
| 11 | Q. | Who else? |
| 12 | A. | The other beauty ones, Unilever. |