Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2:20-CV-9091-PA-AS <br><br> **PLAINTIFF THRIVE NATURAL CARE, INC.'S PROFFER OF EXPERT OPINIONS OF ROB WALLACE** <br><br> Hon. Percy Anderson <br><br> **Judge:** Hon. Percy Anderson <br> **Trial Date**: November 9, 2021 <br> **Final Pretrial Conf.:** October 22, 2021 <br> **Courtroom:** 9A |

# INDEX OF EXHIBITS

**Exhibit**

1. Rob Wallace Curriculum Vitae
2. Opening Expert Report of Rob Wallace
3. Rebuttal Report of Rob Wallace
4. Consumer Survey Questions and Screenshots
5. Consumer Survey Data Tabulation and Analysis Files
6. Itamar Simonson, "The Effect Of Survey Method On Likelihood Of Confusion Estimates: Conceptual Analysis And Empirical Test," The Trademark Reporter, 83 TMR 364 (1993)
7. TCI_00014426
8. TCI_00026950 (product history)
9. TNC01154-59
10. TNC01128
11. TNC01160-61

Pursuant to the Court's Order dated October 8, 2021 (Dkt. 115), Plaintiff Thrive Natural Care, Inc. ("Thrive" or "Plaintiff") hereby provides the following written proffer of the opinions of Rob Wallace, which Thrive will seek to offer in its case-in-chief at trial against Defendant Thrive Causemetics, Inc. ("TCI" or "Defendant"). The exhibits listed above have been provided to the Court and opposing counsel separately in accordance with the Court's Order.

## Proffer of Opinions

**Opinion 1:** The results of two consumer surveys show there is significant actual confusion between Plaintiff's "Thrive" brand of skincare products and Defendant's "Thrive Causemetics" brand of skincare products. Specifically, Mr. Wallace conducted two surveys to examine whether or not consumers or potential consumers of skincare products who purchase such items on the internet would be confused between the parties' skincare products. The surveys tested "Thrive" branded skincare products from Plaintiff (both older and newer package designs) and "Thrive Causemetics" branded skincare products from Defendant, together with two skincare products from third parties, which were used as controls. The findings of the old package survey showed a net confusion rate of 56.6% between Plaintiff's "Thrive" skincare product and Defendant's "Thrive Causemetics" skincare product, after being corrected for the average level of confusion observed between the Plaintiff's products and the two control brands. The findings of the new package survey showed a degree of net confusion of 54.5% between Plaintiff's "Thrive" skincare product and Defendant's "Thrive Causemetics" skincare product, after being corrected for the average level of confusion observed between Plaintiff's products and the two control brands. *See* Ex. 2 at 2-4, 29-37.

<u>Why Testimony is Relevant:</u> Consumer survey evidence is relevant to the "actual confusion" *Sleekcraft* factor. *See Playboy Enters., Inc. v. Netscape Comm. Corp.*, 354 F.3d 1020, 1026 n.28 (9th Cir. 2004) (courts regularly accept the results of consumer surveys as surrogate evidence of actual confusion). The rates of

confusion in Thrive's surveys are "persuasive evidence" of likely confusion. 6 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 32:188 (confusion levels over 50 percent are "persuasive evidence" of likely confusion)); *Warner Bros. Ent. v. Glob. Asylum, Inc.*, No. CV 12-9547 PSG, 2012 WL 6951315, at *10 (C.D. Cal. Dec. 10, 2012) ("Generally, confusion levels of 25 to 50 percent provide 'solid support' for a finding of likelihood of confusion, while confusion rates below 20 percent support a finding of confusion only in connection with other corroborating evidence.").

Documents Relied On:

- Ex. 4 – Consumer survey questions and pages prepared by Mr. Wallace, relied on June 23, 2021, for Opening Report.
- Ex. 5 – Raw data and tables for responses to Wallace surveys, including the following documents prepared by Mr. Wallace: (a) Thrive New Image Final Data 6-4-21.xlsx; (b) Thrive New Image Compare Tabs 6-4-21.xlsx; (c) Thrive New Image Final Freqs 6-4-21.xlsx; (d) Thrive Old Image Final Data 6-4-21.xlsx; (e) Thrive Old Image Compare Tabs 6-4-21.xlsx; and (f) Thrive Old Image Final Freqs 6-4-21.xlsx, relied on June 23, 2021, for Opening Report.

**Opinion 2:** Consumer survey responses indicate that Defendant's use of the term "Thrive Tribe," which had been used by Plaintiff for years previously, also created confusion between the parties' brands. Specifically, Mr. Wallace's surveys tested consumer confusion caused by each of Plaintiff and Defendant using the hash tag #THRIVETRIBE together with an image of a skincare product in its Instagram posts. The results of this survey question indicated that 80.2% of respondents in the old package survey and 78.3% of respondents in the new package survey believed this action caused further confusion between the parties' skincare products. *See* Ex. 2 at 37-38.

Why Testimony is Relevant: Thrive Natural Care used the term "Thrive Tribe" and related hash tag to advertise its products since 2014. Thrive Causemetics used the same term to advertise its products from 2017 to mid-2020. This survey evidence further supports the "actual confusion" *Sleekcraft* factor as noted above.

Documents Relied On:

- Ex. 4 – Consumer survey questions and pages prepared by Mr. Wallace, specifically page 53 of each survey, relied on June 23, 2021, for Opening Report.
- Ex. 5 – Raw data and tables for responses to Wallace surveys, including the following documents prepared by Mr. Wallace: (a) Thrive New Image Final Data 6-4-21.xlsx; (b) Thrive New Image Compare Tabs 6-4-21.xlsx; (c) Thrive New Image Final Freqs 6-4-21.xlsx; (d) Thrive Old Image Final Data 6-4-21.xlsx; (e) Thrive Old Image Compare Tabs 6-4-21.xlsx; and (f) Thrive Old Image Final Freqs 6-4-21.xlsx, relied on June 23, 2021, for Opening Report.
- Ex. 7 – TCI_00014426 (document produced by Defendant), relied on June 23, 2021, for Opening Report.

**Opinion 3:** The *Squirt*-type format for the consumer surveys used by Mr. Wallace is the proper methodology to use in this case, where the parties' products frequently appear together and side-by-side on the same screen in advertising and online marketplaces. *See* Ex. 2 at 8 ¶ 23; Ex. 3 at 3-4, 6-13.

Why Testimony is Relevant: The Ninth Circuit has held that surveys in identical formats to that used by Mr. Wallace are admissible and probative of actual confusion. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037 (9th Cir. 2010); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902-03 (9th Cir. 2002).

Documents Relied On:

- Ex. 2 at 9 – Screenshot of eBay marketplace taken by Mr. Wallace, relied on June 23, 2021, for Opening Report.
- Ex. 3 – attached Exhibits A-C (screenshots of search results) taken by Mr. Wallace, Alex McIntosh, and Plaintiff's counsel, relied on August 25, 2021, for Rebuttal Report.
- Ex. 6 – Itamar Simonson, "The Effect Of Survey Method On Likelihood Of Confusion Estimates: Conceptual Analysis And Empirical Test," The Trademark Reporter, 83 TMR 364 (1993), relied on August 25, 2021, for Rebuttal Report.
- Testimony by Dr. Simonson in Defendant's Rebuttal Expert Report.

**Opinion 4:** Consumers are likely to seek out Plaintiff's products via an online search for terms like "Thrive skincare" and "Thrive Natural Care". This is backed by empirical evidence indicating that 85% of all product shopping starts on Google or Amazon. Far from being a low probability that a consumer would ever go to Google or Amazon and perform a search for "thrive skincare" or something similar, it is actually the most common method a consumer would use to begin the process of purchasing Plaintiff's or Defendant's skincare products. *See* Ex. 3 at 12 28; *see also* Dkt. 58 ¶¶ 8-13.

Why Testimony is Relevant: The "parties' simultaneous use of the Web as a marketing channel" is highly supportive of finding a likelihood of confusion. *See Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1173-74 (9th Cir. 2007). This testimony further supports that consumers are likely to see the parties' products together on the same screen, which is relevant to initial interest confusion. *See Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1130 (C.D. Cal. 2001) ("the use of another's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement.").

Documents Relied On:

- Ex. 3 – attached Exhibits A-C (screenshots of search results) taken by Mr. Wallace, Alex McIntosh, and Plaintiff's counsel, relied on August 25, 2021, for Rebuttal Report.

- Ex. 3 – attached Exhibit D, Kyle Cavaness, "Google Shopping Statistics: 21 Reasons to Get Started," Klientboost.com (last visited August 20, 2021), obtained by Mr. Wallace and relied on August 25, 2021, for Rebuttal Report.

- Personal experience in working with consumer skincare brands such as Jergen's, Dove, St. Ives, Suave, Burt's Bees, and others, including conducting market research regarding consumer purchase decisions in the skincare category and understanding consumer brand awareness and purchase behavior. This included providing strategic direction on their brand messaging that was then used to integrate advertising, social media, promotion, and all other brand messaging, as well as developing, fielding, and/or analyzing over one thousand consumer surveys and research projects. *See* Ex. 2 at 42 ¶¶ 13, 91; *see also* Dkt. 42 ¶ 5 (Wallace Declaration).

**Opinion 5:** Consumer searching on the major search engines for Plaintiff's "Thrive" skincare products would almost certainly be presented with images of both parties' skincare products and links to both parties' websites and purchase portals. Even a consumer who conducted a more targeted search for Plaintiff's company name and men's products from Plaintiff would be likely to be presented with images of Defendant's products together with Plaintiff's. Moreover, in the product descriptions provided in online search results, Defendant's primary product name only shows "Thrive [product name]", e.g., "Thrive Skincare Set" and does not include the word "Causemetics". In many cases, "Causemetics" is not even fully spelled out in the product description. The focus is clearly on the word

"Thrive" for both Plaintiff's and Defendant's products. When Defendant's products, also referred to as "Thrive" products are shown together, side-by-side, and intermingled with Plaintiff's products in the search results, it is likely a consumer could be confused and click on links to Defendant's products believing them to originate from or be affiliated with Plaintiff. *See* Ex. 3 at 12 ¶ 29; *see also* Dkt. 58 ¶¶ 8-13.

Why Testimony is Relevant: This testimony supports a finding of initial interest confusion. *See Electropix*, 178 F. Supp. 2d at 1130.

Documents Relied On:
- Ex. 3 – attached Exhibits A-C (screenshots of search results) taken by Mr. Wallace, Alex McIntosh, and Plaintiff's counsel, relied on August 25, 2021, for Rebuttal Report.
- Ex. 3 – attached Exhibit D, Kyle Cavaness, "Google Shopping Statistics: 21 Reasons to Get Started," Klientboost.com (last visited August 20, 2021), obtained by Mr. Wallace and relied on August 25, 2021 for Rebuttal Report.
- Personal experience in working with consumer skincare brands identified *supra* for Opinion 4. *See* Ex. 2 at 42 ¶¶ 13, 91; *see also* Dkt. 42 ¶ 5.

**Opinion 6:** The standard of consumer care for the skincare products in question would be relatively low. The products in question are relatively inexpensive, and the skincare category is often driven by impulse purchasing, rather than a highly educated and well-considered purchase process. This lower degree of care driving which products to purchase results in a higher degree of the consumer unintentionally purchasing a potentially confusing product assuming it to be the product they intended to buy. *See* Ex. 2 at 42 ¶ 91.

Why Testimony is Relevant: The "degree of care" of ordinary consumers is a relevant *Sleekcraft* factor, and this testimony establishes that consumers in this

market are likely to have a lower degree of care in selecting products. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127 (9th Cir. 2014).

<u>Documents Relied On:</u>

- Ex. 8 – TCI_00026950 (document produced by Defendant), relied on June 23, 2021, for Opening Report.
- Ex. 9 – TNC01154-59 (screenshot of Defendant's skincare navigation page with pricing taken by Plaintiff's counsel), relied on June 23, 2021, for Opening Report.
- Ex. 10 – TNC01128 (screenshot of Defendant's skincare product page with pricing taken by Plaintiff's counsel), relied on June 23, 2021, for Opening Report.
- Ex. 11 – TNC01160-61 (screenshot of Plaintiff's website with pricing taken by Alex McIntosh), relied on June 23, 2021, for Opening Report.
- Personal experience in working with consumer skincare brands identified *supra* for Opinion 4. *See* Ex. 2 at 42 ¶¶ 13, 91; *see also* Dkt. 42 ¶ 5.

Thrive reserves the right to call Mr. Wallace in rebuttal to any testimony offered by Defendant TCI.

DATED: October 15, 2021

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Stephen McArthur*
Stephen McArthur
Thomas Dietrich

*Attorneys for Plaintiff Thrive Natural Care*

# CERTIFICATE OF SERVICE

Case Name: *Thrive Natural Care, Inc. v. Thrive Causemetics, Inc.*
Case No.: 2:20-cv-9091-PA-AS

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

    I have caused service of the following documents, described as:

**PLAINTIFF THRIVE NATURAL CARE, INC.'S PROFFER OF EXPERT OPINIONS OF ROB WALLACE**

on the following parties by electronically filing the foregoing on October 15, 2021, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rollin Ransom (SBN 196126)      *Attorneys for Defendant*
rransom@sidley.com
Ryan Stasell (SBN 307431)
rstasell@sidley.com
Paula Salazar (SBN 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth St., Ste. 4000
Los Angeles, CA 90013

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 10/15/2021      By: */s/ Thomas Dietrich*
                                          Thomas Dietrich