Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:20-cv-9091-PA-AS |
| Plaintiff, | Hon. Percy Anderson |
| v. | **DEFENDANT THRIVE CAUSEMETICS, INC.'S PROFFER FOR EXPERT DR. ITAMAR SIMONSON** |
| THRIVE CAUSEMETICS, INC., | |
| Defendant. | Trial Date: November 9, 2021<br>Time: 9:00 a.m.<br>Place: Courtroom 9A |

Pursuant to the Court's October 7, 2021 Minute Order (ECF No. 115), Defendant Thrive Causemetics, Inc. ("TCI") respectfully submits the following proffer regarding its designated expert witness Dr. Itamar Simonson. Dr. Simonson will offer the following opinions at trial:

**Opinion No. 1:**

The surveys conducted by Plaintiff Thrive Natural Care, Inc.'s ("Plaintiff's") putative expert Rob Wallace (the "Wallace Surveys") are neither reliable nor relevant with respect to the issue of likelihood of confusion. Rebuttal Expert Report of Dr. Itamar Simonson ("Report") ¶¶ 14-17, 23-49, 75-76.

a. The Wallace Surveys failed to use the proper survey methodology – namely, an "*Eveready*" survey – given the marketplace reality at issue, in which consumers rarely encounter the parties' respective products for purchase together. *See Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976). Instead, the Wallace Surveys relied on a variant of the survey methodology from *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980), which is biased and leading given the marketplace conditions in this case. Report ¶¶ 15, 23-27, 35-36, 38-42, 76.

b. Mr. Wallace attempted to justify use of the *Squirt* methodology on the ground that it is conceivable that a consumer would have two web browsers open simultaneously, with each browser showing one of the two marks at issue. However, Mr. Wallace's scenario is highly unlikely and speculative, as he presented no evidence that such a scenario has ever occurred (much less that it occurs with appreciable frequency). Report ¶¶ 38-40, 43.

c. In his deposition (which was conducted after my report was served) and in his response to my report, Mr. Wallace defended his survey format by claiming that links to both parties' websites appear "adjacent" to each

|   |   |
|---|---|
|   | other in Google search results for specific search terms. Even if true, after clicking on a search result, a consumer would be directed to the parties' respective websites to actually purchase any products, where the other party's product would not appear. Moreover, Mr. Wallace has presented no evidence as to the frequency with which such online searches occur or result in consumers connecting to either party's website (or that either event occurs with appreciable frequency), and he still fails to account for the fact that the locations in which the parties actually sell their respective products are completely distinct. |
| d. | The Wallace Surveys relied on leading and suggestive questions that suffered from severe "demand effects." Demand effects relate to the phenomenon whereby survey respondents use cues provided by the survey procedure and questions to ascertain what they believe to be the "correct" answers to the questions they are asked, and then provide that "correct" answer. Demand effects can (and here, did) dramatically pollute the results of a survey. Report ¶¶ 16, 31-34, 41-42, 44. |
| e. | The Wallace Surveys lacked any real control, which made the results unreliable because failure to include a proper control will inflate the resulting net estimate of confusion. The controls used by Mr. Wallace were completely dissimilar from TCI's mark, and thus were not real controls. Report ¶¶ 17, 28-30, 46. |
| f. | The Wallace Surveys were further removed from the marketplace reality because they created 100% awareness of both marks. For reverse confusion to occur in reality, a consumer must at least be aware of TCI's mark (a consumer who has never seen or heard of TCI's mark cannot confuse the Plaintiff's mark with TCI), but the Wallace Surveys avoided this condition by artificially creating awareness of *both* parties marks, and then depicting them side-by-side. Report ¶¶ 47-48. |

      g.      Mr. Wallace supplemented the Wallace Surveys with an exercise in which the surveys' respondents were told to assume that they saw two Instagram posts with the same hashtag one after the other and asked if the two posts came from the same company. Mr. Wallace failed to even attempt to replicate any such event (instead attempting to describe it to respondents), and in any event presented no evidence that such an event has ever happened to any consumer (or that it happens with any appreciable frequency). As a result, this contrived exercise offers no relevant information. Report ¶¶ 18, 45.

      h.      Each of the above flaws, by itself, makes the Wallace Surveys unreliable; the combination of these flaws establishes that the Wallace Surveys provide no relevant information about marketplace likelihood of confusion. The Wallace Surveys merely show that the survey respondents are capable of recognizing that two names share a common word, for which no survey was necessary. Report ¶¶ 19, 42, 49, 76.

**Relevance of Opinion No. 1:**

The foregoing testimony is relevant to Plaintiff's claim of federal trademark infringement (on which all of Plaintiff's other claims rely). Among other things, Plaintiff's federal trademark infringement claim requires Plaintiff to prove by a preponderance of the evidence that there exists a likelihood of confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. 15 U.S.C. § 1114; *see also* 15 U.S.C. § 1125(a). To evaluate likelihood of confusion, courts in the Ninth Circuit consider the factors in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*"), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003), one of which – "evidence of actual confusion" – considers the existence and extent of evidence that the parties' marks have led to confusion. *Id.*; *see also Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *12 (C.D. Cal. June 8, 2015). In connection

with this factor, Plaintiff intends to offer the results of the Wallace Surveys, which purport to show a net confusion rates of 54.5% and 56.6%. Dr. Simonson's testimony establishes that Mr. Wallace's surveys are unreliable and irrelevant, including as a result of their improper use of *Squirt* format, failure to include a proper control, and use of leading and suggestive questions.

**Support Relied Upon for Opinion No. 1:**

Dr. Simonson will rely upon the following documents, which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link:

| DROPBOX LINK NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Simonson 1 | Expert Report of Rob Wallace | Rob Wallace | 06/23/21 | N/A |
| Simonson 2 | Rebuttal Report of Rob Wallace | Rob Wallace | 08/25/21 | N/A |
| Simonson 3 | 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition at §32:163. | J. Thomas McCarthy | N/A | N/A |
| Simonson 4 | "Demand Effects in Likelihood of Confusion Surveys," *Trademark and Deceptive Advertising Surveys*, Chapter 11, Shari Diamond and Jerre Swann, Eds., American Bar Association. | Itamar Simonson, Ran Kivetz | 2012 | N/A |
| Simonson 5 | Reference Guide on Survey Research, Reference Manual on Scientific Evidence, 399 (Fed. Jud. Ctr. 3d ed. 2011) | Shari Seidman Diamond | 2011 | N/A |

**Opinion No. 2:**

Mr. Wallace's opinions concerning the ultimate issue of likelihood of confusion and various *Sleekcraft* factors are neither reliable nor scientific. Report ¶¶ 20, 23, 50-55, 77.

a. Mr. Wallace's personal opinions that go to the "ultimate question" of likelihood of confusion are based on his personal and subjective, non-scientific assessment of the *Sleekcraft* factors; Mr. Wallace has not studied or ever published a scientific, peer-reviewed article about consumer psychology, consumer decision making, or the psychological factors that underlie consumer confusion. Report ¶¶ 50, 55, 77.

b. Mr. Wallace's opinion that Plaintiff's mark is strong because the Plaintiff has sent cease-and-desist letters to third parties that also have the term "thrive" in their names has no academic basis from either a marketing or branding perspective. Report ¶ 51.

c. The term "thrive" is conceptually weak as a brand name and from a marketing perspective. It can be and is associated with numerous different domains, products, and services, including the names of a wide range of products offered by different companies and organizations. As a commonly used word with multiple dictionary definitions, it would require wide recognition and substantial marketplace success in order to be distinctive, which Plaintiff has apparently not been able to achieve. Finally, Plaintiff apparently intends for its products to help consumers "thrive" within the meaning of the term's ordinary dictionary definition. All of this suggests that the mark THRIVE is conceptually weak, assuming it is protectable at all. Report ¶¶ 52-53.

d. Mr. Wallace also opined, without citing any evidence, that the purchase of skincare products involves a low degree of care and consumers will purchase such products without thinking about the choices they make. However, consistent with principles of consumer decision making, a number of courts (for example, the court in *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 1001 (C.D. Cal. 2002)) have specifically

pointed out that purchasers of skin care products tend to exercise a high degree of care. Report ¶ 54.

**Relevance of Opinion No. 2:**

As noted above, courts in the Ninth Circuit consider the factors in *Sleekcraft* to evaluate likelihood of confusion. The foregoing testimony is relevant to rebut Mr. Wallace's improper efforts to opine on the ultimate question of likelihood of confusion (which he has no training, expertise, or any other basis to do), as well as Mr. Wallace's unsubstantiated and groundless "opinions" regarding certain *Sleekcraft* factors.

**Support Relied Upon for Opinion No. 2:**

Dr. Simonson will rely upon the following documents, which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link:

| DROPBOX NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Simonson 1 | Expert Report of Rob Wallace | Rob Wallace | 06/23/21 | N/A |
| Simonson 2 | Rebuttal Report of Rob Wallace | Rob Wallace | 08/25/21 | N/A |
| Simonson 6 | "Measuring Consumer Involvement Profiles," *Journal of Marketing Research*, 21, 41-53 | G. Laurent J. Kapferer | 1985 | N/A |
| Simonson 7 | Definition of "Thrive," Oxford English Dictionary (available at https://www.oed.com/view/Entry/201292?isAdvanced=false&result=2&rskey=ldzmdJ&&print) | Oxford English Dictionary | 10/11/21 (accessed) | N/A |
| Simonson 8 | Definition of "Thrive," Dictionary.com (available at https://www.dictionary.com/browse/thrive) | Dictionary.com | 10/11/21 (accessed) | N/A |

| DROPBOX NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Simonson 9 | Definition of "Thrive," Merriam Webster (available at https://www.merriam-webster.com/dictionary/thrive#learn-more) | Merriam Webster | 10/11/21 (accessed) | N/A |
| Simonson 10 | Definition of "Thrive," Collins English Dictionary (available at https://www.collinsdictionary.com/us/dictionary/english/thrive) | Collins English Dictionary | 8/20/21 (accessed) | 351 |
| Simonson 11 | Definition of "Thrive," Cambridge English Dictionary (https://dictionary.cambridge.org/us/dictionary/english/thrive) | Cambridge English Dictionary | 10/11/21 (accessed) | 188 |
| Simonson 12 | Definition of "Thrive," Macmillan Dictionary (available at https://www.macmillandictionary.com/us/dictionary/american/thrive) | Macmillan Dictionary | 10/11/21 (accessed) | 189 |
| Simonson 13 | Definition of "Thrive," Vocabulary.com (available at https://www.vocabulary.com/dictionary/thrive) | Vocabulary.com | 10/11/21 (accessed) | N/A |
| Simonson 14 | USPTO Query Results for the Term "thrive*" (ECF No. 63-28) | USPTO | 8/22/21 (accessed) | 364 |
| Simonson 15 | Amazon Webpage for Third Party Ashford Point LLC's Thrive Therapeutic Cold Therapy Packs, Therapeutic Hot Therapy Packs, and First Aid Kits (ECF No. 63-30) | Ashford Point | 8/23/21 (accessed) | 365 |

| DROPBOX NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Simonson 16 | Third Party Naked + Thriving LLC's Home Webpage (ECF No. 63-31) | Naked + Thriving | 8/23/21 (accessed) | 366 |
| Simonson 17 | Third Party I25X, LLC's ithriveX Performance Collection's Webpage (ECF No. 63-32) | ithriveX | 8/23/21 (accessed) | 367 |
| Simonson 18 | Third Party Surthrival LLC's Home Webpage (ECF No. 63-33) | Surthrival | 8/23/21 (accessed) | 368 |
| Simonson 19 | Third Party Le-Vel Brands, LLC's Skin Products Webpage (ECF No. 63-35) | Le-Vel | 8/23/21 (accessed) | 370 |
| Simonson 20 | Third Party Simplythrive, LLC's Home Webpage (ECF No. 63-36) | Simplythrive LLC | 8/23/21 (accessed) | 371 |
| Simonson 22 | EAT. DRINK. THRIVE, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 424 |
| Simonson 23 | ITHRIVEX, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 425 |
| Simonson 24 | NAKED+THRIVING, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 426 |
| Simonson 25 | SUBSCRIBE & THRIVE, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 427 |

| DROPBOX NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Simonson 26 | SURTHRIVAL, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 428 |
| Simonson 27 | THRIVE EVERY DAY, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 429 |
| Simonson 28 | THRIVE HEALTH CENTER, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 430 |
| Simonson 29 | THRIVE WEIGH LESS. LIVE LONGER, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 431 |
| Simonson 30 | THRIVEXIN, United States Patent and Trademark Office Trademark Electronic Search System | USPTO | 10/14/21 (accessed) | 432 |
| Simonson 33 | Third Party The Wakaya Group Products Webpage (ECF No. 63-29) | The Wakaya Group | 8/23/21 (accessed) | 435 |
| Simonson 34 | ITHRIVEX, Home webpage | ithriveX | 10/14/21 (accessed) | 436 |
| Simonson 35 | ITHRIVEX, Products webpage | ithriveX | 10/14/21 (accessed) | 437 |
| Simonson 36 | NAKED and THRIVING, Home webpage | Naked + Thriving | 10/14/21 (accessed) | 438 |
| Simonson 37 | NAKED and THRIVING, Products webpage | Naked + Thriving | 10/14/21 (accessed) | 439 |

DEFENDANT THRIVE CAUSEMETICS, INC.'S PROFFER FOR EXPERT DR. ITAMAR SIMONSON

| DROPBOX NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Simonson 38 | NaturesSunshine.com, Home webpage | NaturesSunshine.com | 10/14/21 (accessed) | 440 |
| Simonson 39 | NaturesSunshine.com, SUBSCRIBE AND THRIVE subscription webpage | NaturesSunshine.com | 10/14/21 (accessed) | 441 |
| Simonson 40 | SURTHRIVAL, Home webpage | Surthrival | 10/14/21 (accessed) | 442 |
| Simonson 41 | SURTHRIVAL, Products webpage | Surthrival | 10/14/21 (accessed) | 443 |
| Simonson 42 | The Vitamin Shoppe, Home webpage | The Vitamin Shoppe | 10/14/21 (accessed) | 444 |
| Simonson 43 | The Vitamin Shoppe, Thrive Every Day Products webpage | The Vitamin Shoppe | 10/14/21 (accessed) | 445 |
| Simonson 44 | THRIVE HEALTH CENTERS, Home webpage | Thrive Health Centers | 10/14/21 (accessed) | 446 |
| Simonson 45 | THRIVE HEALTH CENTERS, Products webpage | Thrive Health Centers | 10/14/21 (accessed) | 447 |
| Simonson 46 | THRIVE WEIGH LESS LIVE LONGER, Home webpage | Thrive…Weigh Less Live Longer | 10/14/21 (accessed) | 448 |
| Simonson 47 | THRIVE WEIGH LESS LIVE LONGER, Products webpage | Thrive…Weigh Less Live Longer | 10/14/21 (accessed) | 449 |
| Simonson 48 | THRIVEXIN, Home webpage | ThriveXin | 10/14/21 (accessed) | 450 |
| Simonson 49 | THRIVEXIN, Products webpage | ThriveXin | 10/14/21 (accessed) | 451 |

DEFENDANT THRIVE CAUSEMETICS, INC.'S PROFFER FOR EXPERT DR. ITAMAR SIMONSON

**Opinion No. 3:**

A properly designed survey demonstrates that there is no confusion regarding the source, affiliation, or approval of Plaintiff's products. Report ¶¶ 21-22, 56-74.

a. A properly designed likelihood of confusion survey in this case would (1) take into account the pertinent marketplace conditions; (2) focus on reverse confusion; and (3) employ the "gold standard" *Eveready* methodology. Report ¶¶ 24-27, 56-58.

b. Reverse confusion is the proper focus here given TCI's greater commercial success and Plaintiff's allegation that TCI has "flood[ed] the market with advertising," leading consumers to believe Plaintiff is related to TCI. Report ¶ 25.

c. Using the *Eveready* methodology, respondents are shown the senior mark and are asked about its source and its possible business affiliation and approval. Report ¶ 26.

d. The *Eveready* survey format is also the appropriate methodology when the two products at issue are not actually sold side-by-side in the great majority of real-world situations, as is the case here, where TCI and Plaintiff do not offer their respective products for sale on the same websites or at the same retail locations. Report ¶ 27.

e. A properly-designed likelihood of confusion survey in this action demonstrated that there is no meaningful confusion between Plaintiff and TCI. Report ¶ 56-58, 70-74, 78-79.

**Relevance of Opinion No. 3:**

The foregoing testimony is relevant to the issue of likelihood of confusion, which as noted above, is at the core of Plaintiff's claims. More specifically, Dr. Simonson's survey and testimony is directly relevant to Plaintiff's theory of reverse confusion. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F. 3d 625, 630 (9th Cir. 2005) ("[R]everse confusion occurs when consumers dealing with the senior mark

holder believe that they are doing business with the junior one."). The thrust of Plaintiff's case is that "TCI's multi-million dollar per year growth has enabled it to flood the market with advertising for its own skincare products such that consumers have now come to believe that plaintiff Thrive is related to or affiliated with defendant TCI and that Thrive's goods originate from TCI." ECF No. 28 ¶ 4; *see also id.* ¶ 75 ("TCI's use of confusingly similar imitations of Thrive's THRIVE Marks on the Infringing Skincare Products, in conjunction with significantly larger size and advertising scope and social media following, are likely to cause and have caused reverse confusion, deception, and mistake by creating the false and misleading impression that Thrive's goods are manufactured or distributed by TCI"). Dr. Simonson's testimony and survey establish that there is no likelihood of reverse confusion – the only plausible theory in this action.

**Support Relied Upon for Opinion No. 3:**

Dr. Simonson will rely upon the following documents, which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link:

| DROPBOX LINK NO. | TITLE | AUTHOR | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Simonson 50 | "The Universe," in *Trademark and False Advertising Surveys* (Shari Diamond & Jerre Swann eds., 2012) | William Barber | 2012 | N/A |
| Simonson 51 | Rebuttal Expert Report of Dr. Itamar Simonson, Ex. D: Skin Care Survey Specs, Screener, Main Questionnaire | Dr. Itamar Simonson | 6/16/21 | N/A |
| Simonson 52 | Rebuttal Expert Report of Dr. Itamar Simonson, Ex. E: Skin Care Survey Screen Shots | Dr. Itamar Simonson | 6/16/21 | 453 |

| DROPBOX LINK NO. | TITLE | AUTHOR | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Simonson 53 | Rebuttal Expert Report of Dr. Itamar Simonson, Ex. F: Skin Care Survey Data | Dr. Itamar Simonson | 6/16/21 | N/A |
| Simonson 54 | Rebuttal Expert Report of Dr. Itamar Simonson, Ex. G: Skin Care Survey Data | Dr. Itamar Simonson | 6/16/21 | N/A |
| Simonson 55 | Rebuttal Expert Report of Dr. Itamar Simonson, Ex. H: Skin Care Survey Data | Dr. Itamar Simonson | 6/16/21 | N/A |
| Simonson 56 | Rebuttal Expert Report of Dr. Itamar Simonson, Ex. I: Skin Care Survey Final Codes | Dr. Itamar Simonson | 7/8/21 | N/A |

**Additional Material Requested by the Court**

Pursuant to the Court's October 7, 2021 Minute Order (ECF No. 115), TCI is submitting the following documents electronically to the Court's chambers CM/ECF address via Dropbox link.

| DROPBOX LINK NO. | TITLE |
|---|---|
| Simonson 57 | CV of Dr. Itamar Simonson |
| Simonson 58 | Designation and Rebuttal Expert Report of Dr. Itamar Simonson (July 26, 2021) |

DEFENDANT THRIVE CAUSEMETICS, INC.'S PROFFER FOR EXPERT DR. ITAMAR SIMONSON

| | | |
|---|---|---|
| 1 | DATED: October 15, 2021 | SIDLEY AUSTIN LLP |
| 2 | | |
| 3 | | By: */s/ Rollin A. Ransom*<br>     Rollin A. Ransom |
| 4 | | *Attorneys for Defendant*<br>*Thrive Causemetics, Inc.* |

-14-
DEFENDANT THRIVE CAUSEMETICS, INC.'S PROFFER FOR EXPERT DR. ITAMAR SIMONSON