1 | Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
2 | Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
3 | Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
4 | SIDLEY AUSTIN LLP
555 West Fifth Street
5 | Los Angeles, CA 90013
Telephone: (213) 896-6000
6 | Facsimile: (213) 896-6600

7 | *Attorneys for Defendant Thrive Causemetics, Inc.*

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   THRIVE NATURAL CARE, INC., | Case No. 2:20-cv-9091-PA-AS |
| 12            Plaintiff, | Hon. Percy Anderson |
| 13       v. | **DEFENDANT THRIVE CAUSEMETICS, INC.'S PROFFER FOR EXPERT KARL J. SCHULZE** |
| 14   THRIVE CAUSEMETICS, INC., | |
| 15            Defendant. | Trial Date: November 9, 2021
Time:      9:00 a.m.
Place:     Courtroom 9A |

Pursuant to the Court's October 7, 2021 Minute Order (ECF No. 115), Defendant Thrive Causemetics, Inc. ("TCI") respectfully submits the following proffer regarding its designated expert witness Karl J. Schulze. Mr. Schulze will offer the following opinions at trial:

**Opinion No. 1:**

To the extent the Court concludes that Buildable Blur CC Cream and/or Filtered Effects Blurring Primer are not skincare products, the calculations of Plaintiff Thrive Natural Care, Inc.'s ("Plaintiff's") expert David Drews of "Total Defendant's Profits" allegedly attributable to infringement are overstated and must be adjusted to exclude such revenues. Rebuttal Expert Report of Karl J. Schulze ("Report") at 5-6.

    a.    Mr. Drews included revenues attributable to TCI products known as Buildable Blur CC Cream and Filtered Effects Blurring Primer in his "Supplemental Damages Analysis." Report at 5.

    b.    Even if Plaintiff otherwise establishes its claim of infringement as to TCI's skincare products, there is a dispute as to whether Buildable Blur CC Cream and Filtered Effects Blurring Primer constitute skincare products that are infringing. Report at 5-6.

    c.    If those products are determined to be non-infringing products, then they should be excluded from the "Total Defendant's Profits" calculation relating to Plaintiff's claim for disgorgement. Report at 6.

**Relevance of Opinion No. 1:**

In its First Amended Complaint, Plaintiff abandoned its infringement claims directed at TCI's color cosmetics products, which are therefore not at issue in this action. *See* ECF No. 28 ¶ 62. Plaintiff's claims are thus premised solely on TCI's skincare products. *See id.* The foregoing testimony is relevant to limit the revenues underlying Plaintiff's claim for disgorgement of TCI's profits solely to those associated with skincare products, and to confirm a proper calculation of such revenues depending upon the details and scope of the Court's liability determination.

**Support Relied Upon for Opinion No. 1:**

    a.    At trial, Mr. Schulze will rely on the testimony that TCI's founder and Chief Executive Officer, Karissa Bodnar, will offer regarding the Buildable Blur CC Cream and Filtered Effects Blurring Primer products. Specifically, Ms. Bodnar will testify that she considers both of those products to be makeup products, including because of the immediate effect that use has on the appearance of the user's skin – Buildable Blur CC Cream is offered in a range of shades for different skin tones and improves the appearance of the skin in the way that makeup would, and Filtered Effects Blurring Primer acts like a traditional primer, creating a smooth "canvas" that enhances and prolongs additional makeup wear. Ms. Bodnar will also testify that both Buildable Blur CC Cream and Filtered Effects Blurring Primer are included in the "Makeup" section of TCI's website, and not in the "Skincare" section of its website.

    b.    Mr. Schulze will also rely on the anticipated trial testimony of Plaintiff's CEO, Alex McIntosh, who testified at deposition that Plaintiff does not have any plans to sell makeup, and is unaware of any plan by Plaintiff to sell products "that change the color of a person's skin, or the appearance of the color of a person's skin."

    c.    Mr. Schulze will also rely upon the following documents, which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link:

| DROPBOX EX. NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Schulze 1 | Supplemental Schedule of Damages | David Drews | 08/05/21 | 240 |
| Schulze 2 | Thrive Causemetics, Inc. (full website capture) | TCI | N/A | 422 |

**Opinion No. 2:**

TCI's overhead costs are deductible in calculating TCI's profits associated with the allegedly infringing products. Report at 6.

    a. From an accounting perspective, overhead costs are an element of cost that is subtracted from revenue in determining net income, or profit. Report at 6.

    b. Similarly, for purposes of calculating profits under the Lanham Act, and in light of evidence that TCI's overhead costs were of actual assistance in the production, distribution and/or sales of TCI's skincare products and then proportionally allocated based on the number of units of skincare products sold in a given period, overhead costs are properly deducted from revenue in determining profits associated with allegedly infringing product sales. Report at 6.

**Relevance of Opinion No. 2:**

In connection with Plaintiff's claim for disgorgement of TCI's profits, Plaintiff "is required to prove defendant's sales only; defendant must prove all elements of cost," 15 U.S.C. § 1117(a), which includes overhead that is of assistance in the production, distribution, and/or sale of the allegedly infringing products, *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984). The foregoing testimony is relevant to proof and deduction of costs from the revenue figures relied upon by Plaintiff's expert David Drews.

**Support Relied Upon for Opinion No. 2:**

    a. At trial, Mr. Schulze will rely on the testimony that TCI's Chief Financial Officer, Ned Menninger, will offer at trial regarding the expenses encompassed in TCI's overhead costs and how such expenses are of actual assistance in the production, distribution, or sale of TCI's skincare products. Specifically, Mr. Menninger will testify that TCI's employee salaries and benefits expenses allow it to employ a workforce of nearly

one hundred employees, who are necessary for the development, advertising, marketing, and sale of all of TCI's products, including skincare. Mr. Menninger will also testify that TCI's charitable donations are a core part of its mission and business model, and a key driver of product sales, including sales of TCI's skincare products. He will further testify that TCI's rent expenses enable it to maintain its two office locations (one in Bellevue, Washington and another in Los Angeles, California) for use in the production, distribution, and sale of all of TCI's products, including those related to skincare. Mr. Menninger will testify that TCI incurs expenses related to travel, entertainment, and public relations for the purpose of marketing and promoting TCI's products, including its skincare products. He will also testify that TCI is required by law to pay income taxes, which are calculated from TCI's revenues from the sale of its products, including skincare, and the payment of which is necessary to permit the continued production, distribution, and sale of those products. Mr. Menninger will further testify that TCI engages legal counsel for a variety of issues, including regulatory compliance, related to its skincare and other products, and that those legal fees are necessary to, and thus of actual assistance in, the production, distribution, and sale of those products. Finally, Mr. Menninger will also testify that TCI engages a variety of non-legal professional services necessary to the company's ongoing business operations, such as tax preparation and banking, the retention and payment of which are necessary for the continued production, distribution, and sale of TCI's skincare products.

b. Mr. Schulze will also rely upon the following documents, which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link:

-4-

| DROPBOX EX. NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Schulze 1 | Supplemental Schedule of Damages | David Drews | 08/05/21 | 240 |
| Schulze 3 | TCI's Revenue Information for Color Cosmetics (2016 – 2021) TCI_00022753-TCI_00022767 (CONFIDENTIAL – ATTORNEYS EYES ONLY) | Ned Menninger | N/A | 2 |
| Schulze 4 | TCI's Revenue Information for Skincare (2018 – Feb. 2021) TCI_00014424 (CONFIDENTIAL – ATTORNEYS EYES ONLY) | Ned Menninger | N/A | 3 |
| Schulze 5 | TCI Revenue Information, TCI_00031132, TCI_00030183-TCI_00030184 (CONFIDENTIAL – ATTORNEYS EYES ONLY) | Ned Menninger | N/A | 38 |
| Schulze 6 | Filtered Effects Blurring Primer Financial Information, TCI_00031365 (CONFIDENTIAL – ATTORNEYS EYES ONLY) | Ned Menninger | N/A | 452 |

**Opinion No. 3:**

    A substantial portion of TCI's revenues (and thus profits) associated with TCI's skincare products is attributable to factors other than the "thrive" element of the THRIVE CAUSEMETICS mark. Report at 8.

    a.    There is no indication that any sales made by TCI represent a misappropriation of any "goodwill" associated with TNC's "THRIVE" mark; on the contrary, TNC's extremely modest net revenues ($302,591, $487,223 and $700,910 for 2018, 2019 and 2020, respectively), and the fact that it incurred a net loss for each period from 2013 through 2020, suggest that the "THRIVE" name is not, of itself, a significant driver of sales. Report at 8.

      b.      While not capable of precise or scientific calculation, there is evidence that other factors *are* a significant driver of TCI's revenues and profits with respect to its skincare products, including a highly loyal customer base; a defined mission aligned with supporting women's causes; strong ties to early success with color cosmetics products; and high quality products, such that the portion of profits attributable to alleged infringement is relatively minimal.  Report at 8.

**Relevance of Opinion No. 3:**

In connection with Plaintiff's claim for disgorgement of TCI's profits, Plaintiff "is required to prove defendant's sales only; defendant must prove all elements of… deduction claimed." 15 U.S.C. § 1117(a).  The foregoing testimony is relevant to TCI's burden of proving elements of revenue and profit that are attributable to factors other than the alleged infringement.

**Support Relied Upon for Opinion No. 3:**

      a.      At trial, Mr. Schulze will rely on the testimony that TCI's founder and Chief Executive Officer, Karissa Bodnar, will offer regarding the factors that drive sales of TCI's skincare products.  She will testify that, while the "Thrive" element of the "Thrive Causemetics" name is an important part of TCI's overall brand identity in which TCI has significantly invested in the years since TCI's formation, multiple other factors contribute substantially to TCI's financial success and to the revenues attributable to the sale of TCI's skincare products.  These factors include TCI's highly loyal, largely female customers, with whom Ms. Bodnar regularly interacts and who were the primary impetus behind TCI's sale of skincare products; TCI's well-established and well-known commitment to and support of charitable causes dedicated to the well-being of women; and TCI's high quality products, including the reputation that TCI originally established with respect to color cosmetics

products.

b. Mr. Schulze will also rely upon the following documents, which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link:

| DROPBOX EX. NO. | TITLE | AUTHOR(S) | DATE | TRIAL EX. NO. |
|---|---|---|---|---|
| Schulze 7 | Thrive Natural Care Summary Financial Statements, TNC01282 – TNC01299 | Thrive Natural Care | N/A | 69 |
| Schulze 8 | Thrive Natural Care Summary Financial Statements | Thrive Natural Care | N/A | 70 |
| Schulze 9 | Email Chain Between P. Segal and A. McIntosh, TNC00835-TNC00837 | Phil Segal, Alex McIntosh | 08/12/19 | 380 |
| Schulze 10 | "The Next Beauty Industry Unicorn?," Interview with Karissa Bodnar (https://www.beautyindependent.com/thrive-causemetics-major-dtc-beauty-business/) | | 04/02/19 | 142 |

**Additional Material Requested by the Court**

Pursuant to the Court's October 7, 2021 Minute Order (ECF No. 115), TCI is submitting the following documents electronically to the Court's chambers CM/ECF address via Dropbox link.

| DROPBOX LINK NO. | TITLE |
|---|---|
| Schulze 11 | CV of Karl J. Schulze |
| Schulze 12 | Designation and Rebuttal Expert Report of Karl J. Schulze (July 26, 2021) |

DATED: October 15, 2021

SIDLEY AUSTIN LLP

By: */s/ Rollin A. Ransom*
    Rollin A. Ransom

*Attorneys for Defendant*
*Thrive Causemetics, Inc.*