Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2:20-cv-9091-PA-AS <br><br> Hon. Percy Anderson <br><br> **DEFENDANT THRIVE CAUSEMETICS' OFFER OF PROOF REGARDING ITS AFFIRMATIVE DEFENSES** <br><br> Trial Date: November 9, 2021 <br> Time: 9:00 a.m. <br> Place: Courtroom 9A |

Pursuant to the Court's October 7, 2021 Minute Order (ECF No. 115), Defendant Thrive Causemetics, Inc. ("Thrive Causemetics") respectfully submits the following Offer of Proof regarding its affirmative defenses of abandonment and laches.

## I. ABANDONMENT

In support of its affirmative defense of abandonment, Thrive Causemetics intends to offer testimony from Plaintiff Thrive Natural Care, Inc.'s ("Thrive Natural Care") co-founder and Chief Executive Officer Alex McIntosh, and the supporting documents identified below.

### A. Testimony At Trial

Thrive Causemetics anticipates that it will obtain the following testimony from Mr. McIntosh (*see* excerpts of Dep. Tr. of Ecomundi Ventures, LLC (July 30, 2021) at 5:24-8:20, 18:8-14, 19:3-25:4, 40:10-52:5, 52:7-55:20, which is being submitted electronically to the Court's chambers CM/ECF address via Dropbox link and labeled as Exhibit A):

Mr. McIntosh is the co-founder and Chief Executive Officer of Thrive Natural Care, Inc., and that he is also the founder and managing member of Ecomundi Ventures, LLC ("Ecomundi").

On September 11, 2012, Ecomundi filed with the United States Trademark and Patent Office ("USPTO") an intent-to-use trademark application, Application Serial No. 85726058, for the mark THRIVE in connection with "Personal care products for cosmetic use, namely, hair shampoos and conditioners, hair styling preparations; body and hand washes, soaps and gels; non-medicated skin care preparations, namely, body lotions; cosmetic sun care preparations and sunscreens; lip creams and balms; antiperspirants and deodorants for personal use; shaving creams and gels; non-medicated baby care products, namely, baby lotions, creams,

body cleansers, shampoos, gels and washes, diaper rash creams and ointments" (the "'058 Application").

Mr. McIntosh signed the '058 Application on behalf of Ecomundi, and in the '058 Application, Ecomundi claimed that it had a bona fide intent to use the THRIVE mark in commerce in connection with the above-listed goods.

Although Ecomundi undertook certain activities related to the THRIVE mark, including researching and developing skincare products, releasing a request for proposal regarding branding and advertising for the products, interviewing potential manufacturers and sales representatives, and registering the thrivenaturalcare.com website and e-mail domains, Ecomundi has never sold any product bearing the THRIVE mark, and Mr. McIntosh is not aware that Ecomundi or its agents ever showed material bearing the THRIVE mark (including product packaging or marketing materials) to consumers or retailers prior to May 23, 2013.

On September 27, 2013, Ecomundi entered into an agreement with Thrive Natural Care, effective May 23, 2013, to assign all right, title, interest, and goodwill in the '058 Application to Thrive Natural Care, and that Ecomundi has made no use of the THRIVE mark since at least May 23, 2013 (which Thrive Natural Care has admitted in the [Proposed] Final Pretrial Conference Order, *see* ECF No. 106-1, at 2:16-17).

On January 14, 2014, the '058 Application matured into U.S. Registration No. 4,467,942 (the "'942 Registration"), which is registered in the name of Thrive Natural Care.

B.   **Relevancy of the Testimony**

To prove its affirmative defense of abandonment, Thrive Causemetics must demonstrate by a preponderance of the evidence that Ecomundi is the true owner of the '058 Application, and consequently, the '942 Registration, and that Ecomundi discontinued use of the THRIVE mark in the ordinary course of trade,

intending not to resume using it.  *See* 15 U.S.C. §§ 1115(b)(2), 1127; *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969); J. Thomas McCarthy, Trademarks and Unfair Competition §§ 2:15, 2:16 (5th ed. 2021).  With respect to the first requirement, Thrive Causemetics must demonstrate that Ecomundi's assignment of the '058 Application to Thrive Natural Care was invalid because there was no goodwill in the THRIVE mark, and thus, Thrive Natural Care did not succeed to any rights in the '058 Application.  *See* 15 U.S.C. § 1060(a)(1); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992); *Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 2:19-cv-02702-CAP-JEMx, 2020 WL 8514835, at *7 (C.D. Cal. Sept. 3, 2020); *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 5910817, at *9 ("[N]o goodwill is created when a mark is seen by the consuming public only in very limited quantity.") (N.D. Cal. Oct. 11, 2016) (internal quotations and citation omitted); *Kleven v. Hereford*, No. CV 13-02783-AB (AGRx), 2015 WL 4977185, at *22-23 (C.D. Cal. Aug. 21, 2015); *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1107-08 (C.D. Cal. 2003) ("A 'naked' or 'in gross' transfer of a mark, i.e., without the associated goodwill, is invalid.") (citations omitted); *interState Net Bank v. NetB@nk Inc.*, 348 F. Supp. 2d 340, 349 (D.N.J. 2004).

Mr. McIntosh's testimony is relevant to TCI's abandonment defense because it is probative of (1) how Thrive Natural Care came to purportedly own rights in the THRIVE mark through a putative assignment from Ecomundi; (2) the nature and limited extent of Ecomundi's purported use of the THRIVE mark prior to the putative assignment to Thrive Natural Care; (3) Ecomundi's cessation of all use of the THRIVE mark after the putative assignment; and (4) the maturation of the '058 Application into the '942 Registration, one of the trademark registrations that Thrive Natural Care claims Thrive Causemetics infringed in this action.  The above-referenced testimony is relevant to establish that the assignment from

Ecomundi was invalid because there was no goodwill in the THRIVE mark at the time of the putative assignment, that Ecomundi therefore remained the true owner of the '058 Application and later the '942 Registration, and that Ecomundi subsequently abandoned the THRIVE mark through non-use.

### C.     Supporting Documents

Thrive Causemetics will rely upon the following documents, which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link, to support the above-described testimony from Mr. McIntosh:

| Title | Author(s) | Date | Trial Ex. No. |
|---|---|---|---|
| Plaintiff Thrive Natural Care, Inc.'s Supplemental Responses and Objections to Defendant Thrive Causemetics, Inc.'s First Set of Interrogatories | Thrive Natural Care | June 28, 2021 | 55 |
| Trademark/Service Mark Statement of Use for Application Serial No. 85726058 | Thrive Natural Care | October 4, 2013 | 92 |
| Trademark/Service Mark Application, Principal Register for "THRIVE" Mark, Application Serial No. 85726058 | Thrive Natural Care | September 11, 2012 | 95 |
| Nunc Pro Tunc Trademark Assignment | Thrive Natural Care | September 27, 2013 | 96 |
| Thrive Natural Care, Inc., Restricted Stock Purchase Agreement | Thrive Natural Care | May 23, 2013 | 97 |

| Certified Copy of U.S. Trademark Registration No. 4,467,942 | United States Patent & Trademark Office | January 14, 2014 | 305[1] |
| --- | --- | --- | --- |
| Notice of Divisional Request Completed | United States Patent & Trademark Office | November 5, 2013 | 350 |
| Trademark/Service Mark Request to Divide for Application Serial No. 85726058 | Thrive Natural Care | October 3, 2013 | 352 |
| Thrive Natural Care's Response's to TCI's First Set of Requests for Admission | Thrive Natural Care | July 29, 2021 | 394 |
| Plaintiff Thrive Natural Care, Inc.'s Responses and Objections to Defendant Thrive Causemetics, Inc.'s Second Set of Interrogatories | Thrive Natural Care | August 5, 2021 | 420 |

## II. LACHES

In support of its affirmative defense of laches, TCI intends to offer the testimony of Thrive Causemetics' founder and Chief Executive Officer Karissa Bodnar, Thrive Causemetics' Chief Financial Officer Ned Menninger, and Thrive Natural Care's co-founder and Chief Executive Officer Alex McIntosh, and the supporting documents identified below.

### A. Witness Karissa Bodnar

#### 1. Testimony At Trial

Ms. Bodnar will testify that she is the founder and Chief Executive Officer of Thrive Causemetics.

---

[1] Trial Exhibit No. 305 is a physical exhibit, and thus is not included in the materials being submitted electronically to the Court's chambers CM/ECF address via Dropbox link.

She will further testify regarding the parties' communications related to Thrive Natural Care's claim that Thrive Causemetics' use of the THRIVE CAUSEMETICS name infringed Thrive Natural Care's purported rights in the mark THRIVE. Specifically, Ms. Bodnar will testify that in April of 2016, she sent an e-mail to Alex McIntosh respecting use of the term "thrive" as part of Thrive Causemetics' name. She will further testify that at the time she sent this e-mail, it was her understanding that Thrive Natural Care sold men's shaving products and was in a different market that Thrive Causemetics. Ms. Bodnar will testify that in his response to her e-mail, Mr. McIntosh declined her request and stated that Thrive Natural Care already sells "female cosmetic products." Ms. Bodnar will further testify that notwithstanding Mr. McIntosh's claim regarding the scope of Thrive Natural Care's products and putative trademark rights, Mr. McIntosh did not demand that Thrive Causemetics cease using the term "thrive," whether as part of Thrive Causemetics' name or otherwise, and did not commence any legal action regarding that use.

Ms. Bodnar will also testify that on or around March 3, 2017, Thrive Causemetics received a cease-and-desist letter from Thrive Natural Care claiming that Thrive Causemetics was infringing Thrive Natural Care's trademark rights with respect to the mark THRIVE. She will further testify that on or around April 12, 2017, counsel for Thrive Causemetics sent a response to Thrive Natural Care's March 3, 2017 letter, which disputed Thrive Natural Care's claim and stated that Thrive Causemetics would not agree to cease use of the THRIVE CAUSEMETICS brand name. Ms. Bodnar will also testify that Thrive Natural Care never responded to Thrive Causemetics' letter, and that Thrive Natural Care did not take any legal action against Thrive Causemetics following its April 2017 letter.

Ms. Bodnar will further testify that in or around June 2019, she reached out to Mr. McIntosh to discuss the parties' respective marks and the prospect of

documenting the parties' existing and ongoing coexistence by way of a coexistence agreement between the companies. She will testify that Mr. McIntosh did not agree to a coexistence agreement and instead wanted a "mechanism" that acknowledged Thrive Natural Care's claimed interest in the THRIVE mark, to which Ms. Bodnar would not agree. Ms. Bodnar will also testify that the parties' conversation ended without them reaching any type of agreement, that after June 2019, she did not have any further discussions with Mr. McIntosh or anyone representing Thrive Natural Care, and Thrive Natural Care took no action with respect to Thrive Causemetics until the filing of this lawsuit in October 2020.

      Furthermore, Ms. Bodnar will testify that from the period of April 2016 through October 2020, Thrive Causemetics continued to build a valuable business around its THRIVE CAUSEMETICS brand name, including by investing significant time and resources in promoting its mark and corresponding brand identity. Specifically, Ms. Bodnar will testify that during this period, Thrive Causemetics substantially increased its investment in marketing and advertising its THRIVE CAUSEMETICS brand name and products, and developed and launched over three dozen color cosmetics and skincare products. Ms. Bodnar will further testify regarding the success of Thrive Causemetics' substantial investment in the promotion of its products and brand during this period. Specifically, Ms. Bodnar will testify that Thrive Causemetics' efforts have (1) led to significant exposure from major media outlets such as Forbes, Cosmopolitan, Allure, Good Morning America, TODAY Show, and People Magazine; (2) created a sizeable social media presence that currently includes over 623,000 followers on Facebook and over 538,000 followers on Instagram; (3) generated significant revenues from 2016 through 2020; and (4) developed a loyal and engaged customer base that supports Thrive Causemetics' charitable giving mission, suggests new product ideas, and provides ideas to improve product formulations.

### 2. Relevancy of the Testimony

To establish the affirmative defense of laches, Thrive Causemetics must demonstrate by a preponderance of the evidence that Thrive Natural Care unreasonably delayed in bringing this lawsuit and that Thrive Causemetics suffered prejudice. *See, e.g.*, *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836, 838 (9th Cir. 2002). To meet the "prejudice" requirement for laches, Thrive Causemetics can demonstrate that it suffered economic prejudice, meaning the investment of time and resources in promoting a mark and corresponding brand identity. *See, e.g.*, *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1105 (9th Cir. 2004) (holding that "a defendant can make the required showing of prejudice by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights"); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1194 (N.D. Cal. 2015); *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 753 (S.D.N.Y. 1997).

The testimony that Thrive Causemetics will offer from Ms. Bodnar regarding the parties' communications in 2016, 2017, and 2019 is relevant to the first element of Thrive Causemetics' laches defense – unreasonable delay by Thrive Natural Care. Ms. Bodnar's testimony will demonstrate that Thrive Natural Care first learned of Thrive Causemetics and its use of the THRIVE CAUSEMETICS brand name, and that Thrive Natural Care believed that it had a colorable claim of infringement against Thrive Causemetics as least as early as April 2016. Even though Thrive Natural Care has since abandoned its infringement claim as to color cosmetics, such a claim was included in Thrive Natural Care's complaint as originally filed, and the relevant consideration for laches purposes is that as early as April 2016, Mr. McIntosh held and expressed the

view that Thrive Causemetics' use of the THRIVE CAUSEMETICS brand name was infringing, ostensibly because the parties' sold overlapping products, specifically, "female cosmetic products."

The testimony that Thrive Causemetics will offer from Ms. Bodnar regarding Thrive Causemetics' efforts to build a valuable business around its THRIVE CAUSEMETICS brand name from 2016 through 2020 is relevant to the second element of Thrive Causemetics' laches defense – prejudice. Ms. Bodnar's testimony is probative of the substantial time and financial resources that Thrive Causemetics invested in building its business and brand, and of the commercial success Thrive Causemetics has achieved in gaining market recognition of its brand among consumers. This testimony is relevant to establishing that Thrive Causemetics suffered economic prejudice during the four and one-half years that Thrive Natural Care delayed in enforcing its purported rights in the THRIVE mark.

### 3. Supporting Documents

Thrive Causemetics will rely upon the following documents, which which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link, to support the above-described testimony from Ms. Bodnar:

| Title | Author(s) | Date | Trial Ex. No. |
|---|---|---|---|
| Thrive Causemetics' Product List Spreadsheet | Thrive Causemetics | March 2021 | 4 |
| Email Chain Between K. Bodnar and A. McIntosh | Karissa Bodnar; Alex McIntosh | April 22-23, 2016 | 30 |
| Letter From T. Manfredi to K. Bodnar | Travis Manfredi | March 3, 2017 | 31 |
| Notes re: Call with A. McIntosh | Nicole Benjamin | June 27, 2019 | 33 |
| Letter from S. McChesney to T. Manfredi | Sean McChesney | April 12, 2017 | 381 |

DEFENDANT THRIVE CAUSEMETICS, INC.'S
OFFER OF PROOF REGARDING ITS AFFIRMATIVE DEFENSES

**B. Witness Ned Menninger**

1. Testimony At Trial

Mr. Menninger will testify that he is the Chief Financial Officer of Thrive Causemetics.

Mr. Menninger will testify regarding Thrive Causemetics' marketing expenses and sales revenues between 2016 and 2020, as reflected in financial reports that Mr. Menninger generated. Mr. Menninger will testify that Thrive Causemetics increased its advertising spending from approximately $400,000 in the last few months of 2016 to more than ten times that amount in 2017, and another tenfold increase in advertising spending by 2019, and will further testify as to the revenues that Thrive Causemetics has achieved as reflected in the financial reports that he generated.

2. Relevancy of the Testimony

As explained, to establish the affirmative defense of laches, Thrive Causemetics must demonstrate by a preponderance of the evidence that Thrive Natural Care unreasonably delayed in bringing the instant lawsuit and that Thrive Causemetics suffered prejudice. *See, e.g.*, *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006); *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1105 (9th Cir. 2004) (holding that "a defendant can make the required showing of prejudice by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights"); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836, 838 (9th Cir. 2002); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1194 (N.D. Cal. 2015).

Mr. Menninger's testimony is relevant to the second element of Thrive Causemetics' laches defense – prejudice. Mr. Menninger's testimony is probative of the substantial financial investment that Thrive Causemetics made in the

THRIVE CAUSEMETICS brand and products bearing the THRIVE CAUSEMETICS mark, and of the substantial revenues that Thrive Causemetics has achieved as a result, reflective of significant market recognition of the THRIVE CAUSEMETICS brand among consumers.

### 3. Supporting Documents

Thrive Causemetics will rely upon the following documents, which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link, to support the above-described testimony from Ms. Bodnar:

| Title | Author(s) | Date | Trial Ex. No. |
|---|---|---|---|
| TCI's Revenue Information for Color Cosmetics (2016 – 2021) | Thrive Causemetics | March 2021 | 2 |
| TCI's Revenue Information for Skincare (2018 – Feb. 2021) | Thrive Causemetics | March 2021 | 3 |
| TCI Revenue Information | Thrive Causemetics | June 2021 | 38 |

### C. Witness Alex McIntosh

#### 1. Testimony At Trial

Thrive Causemetics anticipates that it will obtain the following testimony from Mr. McIntosh:

Mr. McIntosh will testify at trial regarding the parties' communications related to Thrive Natural Care's claim that Thrive Causemetics' use of the THRIVE CAUSEMETICS brand name infringed Thrive Natural Care's purported rights in the mark THRIVE. Specifically, Mr. McIntosh will testify regarding the substance of and circumstances surrounding (1) the parties' April 2016 e-mail exchange (including his stated belief at the time that the parties' products overlapped, including with respect to "female cosmetic products"); (2) Thrive

Natural Care's March 3, 2017 cease-and-desist letter to Thrive Causemetics; (3) Thrive Causemetics' April 12, 2017 response to Thrive Natural Care's cease-and-desist letter; and (4) the parties' June 27, 2019 telephone call.

Mr. McIntosh will also testify regarding the substance of and circumstances surrounding his e-mail communications from 2017 through 2019 with employees at Thrive Natural Care and third parties regarding his belief that Thrive Causemetics' use of the THRIVE CAUSEMETICS brand name was infringing.

Mr. McIntosh will further testify regarding the reasons Thrive Natural Care did not take legal action against Thrive Causemetics until October 2, 2020, including that Thrive Natural Care did not want to spend money on a lawsuit.  He will also testify regarding his understanding of the consequences of failing to promptly enforce Thrive Natural Care's purported rights in the THRIVE mark against potential infringers, including that a third-party's common use of the THRIVE mark over time could allow the third party to continue using the mark.

2.      Relevancy of the Testimony

As explained, to establish the affirmative defense of laches, Thrive Causemetics must demonstrate by a preponderance of the evidence that Thrive Natural Care unreasonably delayed in bringing the instant lawsuit and that Thrive Causemetics suffered prejudice.  *See, e.g.*, *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836, 838 (9th Cir. 2002); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1194 (N.D. Cal. 2015).

Mr. McIntosh's testimony regarding the parties' 2016, 2017, and 2019 communications is probative of the first element of Thrive Causemetics' laches defense – unreasonable delay by Thrive Natural Care.  His testimony will demonstrate that Thrive Natural Care first learned of Thrive Causemetics and its use of the THRIVE CAUSEMETICS brand name and believed that it had a

colorable claim of infringement against Thrive Causemetics as early as April 2016. This testimony is relevant to establishing that the laches period began to run no later than April 2016, when Thrive Natural Care expressed its belief that Thrive Causemetics' use of the THRIVE CAUSEMETICS brand name was infringing.

Mr. McIntosh's testimony will also demonstrate Thrive Natural Care's ongoing belief from 2017 through 2019 that Thrive Causemetics' use of the THRIVE CAUSEMETICS brand name on its products was infringing, including as reflected in its March 2017 cease-and-desist letter to Thrive Causemetics and in Mr. McIntosh's 2017, 2018, and 2019 e-mail communications to various individuals. This testimony is relevant because it will demonstrate Thrive Natural Care's knowledge of and persistent belief that Thrive Causemetics was infringing the THRIVE mark, but that it took no legal action to enforce its purported trademark rights against Thrive Causemetics for over four and one-half years.

Finally, Mr. McIntosh's testimony is probative of the reason Thrive Natural Care delayed in pursuing legal action against Thrive Causemetics—that Thrive Natural Care did not want to invest money to enforce its purported trademark rights. This testimony and the supporting documents will refute Thrive Natural Care's assertions that it took no action because it believed that Thrive Causemetics had ceased use of the THRIVE CAUSEMETICS brand name after the parties' April 2016 e-mail exchange. Such testimony is relevant to demonstrate that Thrive Natural Care's four and one-half year delay in pursuing legal action was unreasonable.

        3.      <u>Supporting Documents</u>

Thrive Causemetics will rely upon the following documents, which which are being submitted electronically to the Court's chambers CM/ECF address via Dropbox link, to support the above described testimony from Mr. McIntosh:

| Title | Author(s) | Date | Trial Ex. No. |
|---|---|---|---|
| Letter From T. Manfredi to K. Bodnar | Travis Manfredi | March 3, 2017 | 31 |
| Email Chain Between A. McIntosh and K. Bodnar | Karissa Bodnar, Alex McIntosh | April 22-23, 2016 | 72 |
| Email Chain Between A. McIntosh and E. Bruss | Alex McIntosh, Ellen Bruss | May 3, 2017 | 88 |
| Email Chain Between A. McIntosh and B. Boothe | Alex McIntosh; Brandon Boothe | November 20, 2017 | 89 |
| Email Chain Between C. Kelley and A. McIntosh | Alex McIntosh; Chris Kelley | May 24, 2018 | 90 |
| Email Chain Between P. Segal and A. McIntosh | Alex McIntosh; Phil Segal | September 17, 2019 | 91 |
| Letter from S. McChesney to T. Manfredi | Sean McChesney | April 12, 2017 | 381 |

DATED:  October 15, 2021            SIDLEY AUSTIN LLP

By:  */s/ Rollin A. Ransom*
Rollin A. Ransom

*Attorneys for Defendant Thrive Causemetics, Inc.*