Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff*
*Thrive Natural Care, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2:20-CV-9091-PA-AS <br><br> **PLAINTIFF THRIVE NATURAL CARE, INC.'S JOINT MOTION IN LIMINE NO. 1 TO PRECLUDE DEFENDANT FROM OFFERING EVIDENCE OF ALLEGED THIRD-PARTY USES OF "THRIVE" MARK** <br><br> **Judge:** Hon. Percy Anderson <br> **Trial Date**: Nov. 9, 2021 <br> **Hearing Date:** Nov. 1, 2021, 1:30 p.m. <br> **Courtroom:** 9A |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. PLAINTIFF THRIVE'S ARGUMENT ........................................................... 1

    A. Printouts of Third-Party Trademark Filings and Webpages Purporting to Show Use Have Frequently Been Excluded ................... 2

    B. TCI's Purported Evidence of Third-Party Use Lacks Any Probative Value and Should be Excluded .............................................. 4

III. DEFENDANT TCI'S OPPOSITION ............................................................. 7

    A. Courts Routinely Permit Evidence of the Sort Offered by TCI to Demonstrate that a Mark Exists in a "Crowded Field." ....................... 8

    B. Plaintiff's Claim of Prejudice Is Moot. ................................................. 12

IV. PLAINTIFF THRIVE'S REPLY ................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 255 F. Supp. 3d 1012 (S.D. Cal. 2017) ..................................................................................................... 12

*Boldface Licensing + Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178 (C.D. Cal. 2013) ............................................................................................. 2, 5, 6, 15

*Buzzballz, L.L.C. v. Buzzbox Beverages, Inc.*, No. ED14-CV-01725-VAP-DTBX, 2016 WL 7496769 (C.D. Cal. April 12, 2016) ............................................. 3, 6, 7

*Charles Schwab & Co., Inc. v. Hibernia Bank*, 665 F. Supp. 800 (N.D. Cal. 1987) . 6

*Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114 (9th Cir. 1990) ........ 4, 5, 13

*Franklin Resources, Inc. v. Franklin Credit Mgmt. Corp.*, 988 F.Supp. 322 (S.D.N.Y. 1997) ............................................................................................... 10

*Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962 (C.D. Cal. 2002) .............. 10, 11, 16

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100 (6th Cir. 1991) ........................................................................................................... 11, 14

*Icon Enters. Int'l, Inc. v. Am. Prod. Co.*, No. CV 04-1240 SVW PLAX, 2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) ................................................................. 3, 4, 6, 8

*JaM Cellars, Inc. v. Vintage Wine Ests., Inc.*, No. 17-01133-CRB, 2017 WL 2535864 (N.D. Cal. June 12, 2017) ................................................................... 6

*JL Beverage Co. v. Jim Beam Brands Co.*, 815 F. Appx. 110 (9th Cir. 2020) ........ 15

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-CV-04853-PSG, 2015 WL 9266497 (N.D. Cal. Dec. 18, 2015) ................................................ 14

*Ocean Bio-Chem, Inc. v. Turner Network Television*, Inc., 741 F. Supp. 1546 (S.D. Fla. 1990) ........................................................................................................... 12

*Palm Bay Imports v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369  (Fed. Cir. 2005) ..................................................................................... 3, 8

*Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88 (4th Cir. 1997) ................................................................................................................... 11

*Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167 (2d Cir. 1976) ............... 3

S*un Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311 (5th Cir. 1981) ........................................................................................................................... 11

*United Country Real Estate, LLC v. United Realty Group*, No. 16-CV-60154, 2017 WL 1293618 (S.D. Fla. Feb. 27, 2017) .................................................... 4, 5, 7, 8

**Treatises**

J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, § 11:88 (5th ed. 2021) .................................................................................................. 5, 11

I.     **INTRODUCTION**

The subject matter which Plaintiff Thrive Natural Care, Inc. ("Thrive" or "TNC") seeks to exclude in its Motion is: Exhibit Nos. 364, 365, 366, 367, 368, 370, 371, 428, 429, 430, 431, 435, 442, 443, 444, 445, 446, 447, 448, 449, relating to alleged third-party use of the "Thrive" mark.[1]

Alleged prejudice if evidence is not excluded: The jury may erroneously conclude that there are a thousand more businesses using the "Thrive" mark on skincare products than there truly are, causing them to mistakenly believe that the "Thrive" marks are weak or stand within a crowded field when in fact the evidence is not admissible for that purpose under Ninth Circuit and this District's case law.

II.    **PLAINTIFF THRIVE'S ARGUMENT**

Defendant Thrive Causemetics, Inc. ("TCI") intends to offer evidence of alleged third-party use of the word "thrive" to argue Plaintiff Thrive's "Thrive" trademark is weak or exists within a crowded field. That evidence includes items like a printout from the USPTO trademark database of every single trademark application or registration currently existing in the U.S. for a mark containing any iteration of the word "thrive," regardless of what class it is in, whether the trademark is actually registered, whether it is simply an "intent-to-use" application, and, perhaps most importantly, whether the products or services described actually bear any relationship to skincare products. (See Exhibit 364). TCI's evidence also includes screenshots from seven different websites, most of which do not include a single skincare product or any product related to skincare products. (Exhibits 365-371). These eight exhibits are irrelevant and prejudicial because they (1) are not limited to the relevant field of skincare products, (2) fail to show the *extent* of usage of the third party marks so that the jury can determine whether the third-party trademarks have actually weakened Thrive Natural Care's trademark, and (3) fail to

---

[1] Defendant added Exhibit Nos. 428-431, 435, and 442-449 to its exhibit list the day before this motion was filed and after the joint briefing had already been exchanged. Those exhibits are therefore not specifically discussed herein. However, the reasons for exclusion are identical.

exclude intent-to-use trademark applications that should have no bearing whatsoever on the jury's analysis.

Applicable case law establishes that printouts of USPTO search results and website pages fail to satisfy the requirement that a defendant must demonstrate the extent of third-party mark usage. Accordingly, TNC now moves to exclude Thrive Causemetics' third-party use, exhibits 364 through 371, 428-431, 435, and 442-449, under Rules 402 and 403 of the Federal Rules of Evidence. This issue should be decided before trial so that both parties can plan their opening statements and trial presentations knowing whether TCI's contentions regarding third-party usage will be permitted at trial.

**A. Printouts of Third-Party Trademark Filings and Webpages Purporting to Show Use Have Frequently Been Excluded**

It is established in this District that "third-party registrations are not probative of conceptual weakness without evidence that the marks were actually used in commerce and viewed by consumers." *Boldface Licensing + Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1191 (C.D. Cal. 2013) (citing 2 J. Thomas McCarthy, McCarthy On Trademarks & Unfair Competition § 11:89 (4th ed. 2013) ("The mere citation of third party registrations is not proof of third party uses for the purpose of showing a crowded field and relative weakness" because "[t]hird party registrations are not evidence of use 'so as to have conditioned the mind of prospective purchasers.'")). In *Boldface*, the court found irrelevant dozens of third-party trademark registrations and applications for similar marks to plaintiff's even when they were in the *same class*, cosmetics and beauty products. After carefully reviewing the applicable law and commentary, the court held that "[b]ecause [defendant] has offered no evidence to show that any of the marks reflected in the registrations and applications were in fact used in commerce, this evidence does not show that [plaintiff's] mark is weakened because it is used in a 'crowded field' of similar marks on similar goods." 940 F. Supp. 2d at 1191.

Similarly, the court in *Icon Enters. Int'l, Inc. v. Am. Prod. Co.*, No. CV 04-1240 SVW PLAX, 2004 WL 5644805 (C.D. Cal. Oct. 7, 2004), granted plaintiff's motion to exclude trademark search reports and printout from the USPTO website because "Defendants have made no showing that the marks were actually used . . . ." *Id*. at *31 (citing 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 11:88 (4th ed. 2001) ("[I]t is well settled that a trademark search report does not constitute evidence of either the existence of the registration or of the use of a mark.")).

With regard to other purported evidence of third-party use of a mark, "[t]he probative value of third-party trademarks depends entirely upon their usage" and "where the record includes no evidence of the *extent of third party uses* the probative value of this evidence is minimal." *Palm Bay Imports v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005); *see also Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976) ("The significance of third-party trademarks depends wholly upon their usage. Defendant introduced no evidence that these trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers."). On these grounds, in *Buzzballz, L.L.C. v. Buzzbox Beverages, Inc.*, No. ED14-CV-01725-VAP-DTBX, 2016 WL 7496769 (C.D. Cal. April 12, 2016), the court in this District granted plaintiff's motion in limine and excluded 10 alleged third-party trademark uses because they were not for the same goods covered by the plaintiff's trademark. *Id*. at *2; *see also Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990) (finding no error in excluding evidence of use of mark for goods in unrelated field, because "[e]vidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law."). The *Buzzballz* court then excluded the remaining 14 alleged third-party trademark uses because the defendant "has presented no evidence showing actual use." 2016 WL 7496769 at *3. According to *Buzzballz*, "Defendants

must submit more than the homepage of a company's website and lay a foundation for it to show each Mark is actually used in commerce." *Id*.

Similarly, in *United Country Real Estate, LLC v. United Realty Group*, No. 16-CV-60154, 2017 WL 1293618 at *5 (S.D. Fla. Feb. 27, 2017), the court excluded expert testimony regarding third-party usage of 66 similar trademarks. That testimony rested upon "a picture of a storefront advertising the trademark at issue to the public, [and] a printout of a publicly accessible webpage bearing the mark." *Id*. What was missing, the court held, was "any information or data regarding the *extent* to which the 66 third-party marks have been used." *Id*. Such evidence might include "the length of time the brand had been in use; any advertising performed by the brand; any sales completed by the brand; the quality of the brand's products or services; the extent of consumer exposure to the brand; or the particular services offered by the brand." *Id*. Thus, again, evidence of the *extent* of use of third-party trademarks was indispensable to the admissibility of evidence of alleged third-party uses.

**B.     TCI's Purported Evidence of Third-Party Use Lacks Any Probative Value and Should be Excluded**

Here, TCI is seeking to use at trial a list of USPTO search results for the term "thrive*"[2] which shows 1,074 applications and registrations, not a single one of which has any demonstrated relationship to skincare products. (See Exhibit 364). These search results are significantly broader than those deemed irrelevant in *Boldface*, because here the listings are not limited to Class 003, not limited to skincare products, and do not exclude "intent-to-use" applications, but instead broadly cover any use of any iteration of "thrive" in any context for any goods or

---

[2] The asterisk is a wildcard in the search, so TCI's results include not just registrations and applications with the word "thrive" but also any marks that have "thrive" as a root to a longer word or variants of that word. This broad search function includes uses of thrive as a suffix, prefix, or in the middle of a much longer phrase or design logo. The search captures many irrelevant results such as "WETHRIVV COMFORT" (Exhibit 364, #67), "3IVELABS" (Id., #398), and even "SHUNXIN" (Id., #s 515-517), none of which describe skincare products.

services. TCI's failure to limit the field to skincare products is one reason to exclude the search results. *See Eclipse*, 894 F.2d at 1119; *Buzzballz*, 2016 WL 7496769, at *2. A second reason is that TCI has provided *zero* evidence that the marks on the list "were actually used in commerce and viewed by consumers" or that any use was significant enough to have "conditioned the mind of prospective purchasers." *Boldface*, 940 F. Supp. 2d at 1191; McCarthy § 11:89 (4th ed. 2013); *see also JaM Cellars, Inc. v. Vintage Wine Ests., Inc.*, No. 17-01133-CRB, 2017 WL 2535864, at *5 (N.D. Cal. June 12, 2017) (rejecting list of trademark registrations containing the word BUTTER because "[t]hat a mark is registered does not establish how widely used it is; for example, who is to say that consumers ever actually encounter BUTTERKISSED wine?"); *Charles Schwab & Co., Inc. v. Hibernia Bank*, 665 F. Supp. 800, 806 (N.D. Cal. 1987) (rejecting trademark search that disclosed over 40 current or past registrations as "not proof of third party *uses*.") Indeed, like the list in *Boldface*, TCI's USPTO search results also include intent-to-use applications, which by definition "cannot be proof that those marks are used in the marketplace and viewed by consumers." *Boldface*, 940 F. Supp. 2d at 1191 n.13. Because of complete lack of evidence of use in the relevant field of skincare products, this list of USPTO search results is irrelevant and prejudicial and should be excluded. *See Boldface*, 940 F. Supp. 2d at 1191; *Buzzballs*, 2016 WL 7496769 at *3; *Icon Enters.*, 2004 WL 5644805, at *31.

As a closer examination of just how irrelevant the search results of Exhibit 364 are, the first three search results on page one of the exhibit are described below. The very first result is Serial Number 90502924, which is an application (not a registration), for a <u>service mark</u> "ThrivePage" in services Class 41 for "self-improvement coaching services" and in Class 42 for "business and self-improvement coaching software-as-a-service". The second result is application number 90498830 for "THRLVEART" in class 16 for "art pictures on canvas". This application does not even include the word "thrive" or any iteration of it, much

less does it have anything to do with skincare products. The third application on the list, number 90445305, is a <u>service mark</u> for "OVERCOME BURNOUT AND THRIVE" in Class 41 for educational workshops "in the field of preventing physical or mental collapse caused by overwork or stress." Again, this is simply an application and it has nothing to do with the brand "Thrive" for Skincare Products. These applications for services not in the same universe as skincare products are not relevant to the issues the jury is going to decide, and it is put forward as a blatant attempt to simply confuse the jury into thinking there are "1074" records of Thrive used for relevant products, which is not true.

     None of TCI's other exhibits are any more probative of the extent of third-party use of any trademarks. Several of the exhibits have no relationship at all to skincare products and should be excluded on that basis. Specifically: Exhibit 365 is for a first aid kit and ice packs; Exhibit 368 is for a website called "Surthrival" that sells dietary supplements and "superfoods such as elk antler velvet; and Exhibit 371 is for a "wellness kitchen" that offers a meal delivery service for cancer patients . These exhibits are not related to the relevant field of skincare products and are thus irrelevant and prejudicial and should be excluded. *See Eclipse*, 894 F.2d at 1119; *Buzzballz*, 2016 WL 7496769, at *2.

     With regard to the remaining exhibits, 366, 367, 369, 370, all are images of webpages with nothing more—exactly the type of evidence excluded in *Buzzballz*, 2016 WL 7496769 at *3, and *United Country*, 2017 WL 1293618 at *5. "[E]vidence of third-party use is not admissible unless the proponent can provide 'evidence that [the] trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers." *Icon Enters*., 2004 WL 5644805, at *30 (quoting *Scarves by Vera*, 544 F.2d at 1173). With its webpage evidence, TCI has failed to show "how extensive these uses are and how long they have continued." *Id*. There is no information about "the length of time the brand had been in use; any advertising performed by the brand; any sales completed by

the brand; the quality of the brand's products or services; [or] the extent of consumer exposure to the brand." *United Country*, 2017 WL 1293618 at *5. Moreover, several of these exhibits depict products with alternate names such as "Naked & Thriving" and "ithriveX," and TCI has not offered any evidence that such use would have "conditioned the mind of prospective purchasers" to recognize "Thrive" alone as a widely-used mark for skincare products. For these reasons, the evidence of purported third-party use is irrelevant and prejudicial, as TCI has failed to offer any evidence of the critical factor—the *extent* of third-party usage of a similar mark in the same field. *See Palm Bay*, 396 F.3d at 1373; *Icon Enters.*, 2004 WL 5644805, at *30.

While Exhibits 369 and 370 are already objectionable and should be excluded for being screenshots of mere websites with nothing more, additional reasons to exclude them are provided below. Exhibit 369 is a screenshot of a website named "Thrive Market" purportedly offering for sale skincare products with *different* brand names on them other than "thrive". For example, on the first page is "Hero Cosmetics". On the second page is "Mad Hippie", "Ursa Major", "MyChelle", and "Acure" branded skincare products. There is no evidence that the word "Thrive" appears on the packaging of even a single one of these products.

Exhibit 370 is a screenshot from Le-Vel that shows a skincare product branded as "Thrive Skin". Notably, this is the first and only exhibit offered by TCI that actually purports to show a skincare product branded as "Thrive". However, TCI failed to show any actual sales *or* a registered trademark from Le-Vel. The extent of TCI's Exhibit 370 evidence is a single digital image of one product, with no context as to whether the product has a single sale in the U.S. Since TCI has no evidence that this product has ever been sold in the U.S., much less the extent of those sales, this Exhibit should also be excluded.

### III. DEFENDANT TCI'S OPPOSITION

Plaintiff Thrive Natural Care, Inc. ("Plaintiff") seeks to exclude evidence

proffered by Defendant Thrive Causemetics, Inc. ("TCI") relating to third-party use of variations on the mark "Thrive". These exhibits include a list of third-party trademarks from the United States Patent and Trademark Office ("USPTO") incorporating the term "Thrive" or close variants, as well as the webpages of several companies reflecting use of such marks.

Plaintiff's arguments for exclusion are flawed. Courts, both in this district and elsewhere, have routinely admitted evidence of third-party trademark filings to demonstrate that a mark exists in a "crowded field" and is weak, and in all events, Plaintiff's challenges to both the USPTO records and the third-party webpages relate at most to weight, rather than admissibility. Finally, because this action will now be a bench trial rather than a jury trial (as the only relief sought by Plaintiff is equitable, in light of the Court's recent summary judgment order), there is no risk of juror confusion, and the Court can readily determine the weight to be given the challenged evidence. Plaintiff's motion should be denied.

**A. Courts Routinely Permit Evidence of the Sort Offered by TCI to Demonstrate that a Mark Exists in a "Crowded Field."**

Plaintiff first challenges TCI's Exhibit 364, a printout from the USPTO online database showing 1,074 active trademark registrations or applications containing the word "Thrive" or variations thereof. In support, Plaintiff asserts that it is ostensibly "established in this District" that third-party registrations are not probative of a mark's weakness without evidence of the nature and extent of the third-party's use of the marks. *See supra* at 2:9-11. Not so. On the contrary, while the practice is not uniform, courts both in this District and elsewhere have routinely admitted evidence of third party registrations, without detailed evidence respecting use, as probative of a conclusion that a mark is weak. *See, e.g., Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 991 (C.D. Cal. 2002) (citing cases).

In *Glow Industries*, for example, the court relied in part on the large number of third-party trademark registrations in support of its finding that the plaintiff's

mark "Glow" competed in a "crowded field" of products that likewise used the term "glow." *Id.* at 973-74. The court then cited to a series of cases which found similar lists to be competent evidence of the weakness of a party's trademark. For example, in *Franklin Resources, Inc. v. Franklin Credit Mgmt. Corp.*, 988 F.Supp. 322 (S.D.N.Y. 1997), the court found a list of sixty-five business names from the New York Yellow Pages probative of a trademark's relative weakness within a crowded field. *Id.* at 328 ("It is well settled that third-party registration and use dilutes the strength of a trademark . . . [t]hat dissolution is significant in the case at bar."). Likewise, *Glow* cited *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503 (2d Cir. 1997), in which the court held that the use of the trademark *Lauder* was not wholly original, including based on the number of third-party registrations and applications for renewal using the term: "The . . . finding is amply supported by the trial evidence that . . . there were more than 70 trademark registrations, pending applications for registration or renewal, or publications-for-opposition that incorporated the term." *Id.* at 1511.

Nor do these cases and courts stand alone. For instance, analyzing this precise issue, the Fourth Circuit stated as follows:

> [Plaintiff] argues . . . that evidence of third-party registrations alone is insufficient to conclude that a mark is weak. [Plaintiff] maintains that only proof that third parties actually use the term . . . would be relevant. We disagree. The frequency with which a term is used in other trademark registrations is indeed relevant to the distinctiveness inquiry under the first likelihood of confusion factor. . . This is especially true when the number of third-party registrations is great.

*Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 93 (4th Cir. 1997) (citations omitted). Numerous other courts have reached the same conclusion. *See, e.g.*, *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1108 (6th Cir. 1991) (finding "[Defendant's] proffered evidence [of third-party marks, though it lacked detail as to the nature and extent of the third-party use] is relevant to the strength of [Plaintiff's] mark(s) and should have been considered for this purpose."); S*un Banks of Fla., Inc. v. Sun Fed. Sav. & Loan*

*Ass'n*, 651 F.2d 311, 316 (5th Cir. 1981) (finding the fact that over 4400 business had registered with the Florida Secretary of State using the word "Sun" in their names "impressive evidence that there would be no likelihood of confusion"). *See also Ocean Bio-Chem, Inc. v. Turner Network Television*, Inc., 741 F. Supp. 1546, 1556 (S.D. Fla. 1990) ("These extensive third party registrations are entitled to considerable weight in determining the strength of [Plaintiff's] mark."). In short, ample authority supports the admission of evidence of third-party marks as reflected in "live" USPTO records, independent of evidence of the extent of the third-party's use of the mark.

Relatedly, Plaintiff takes aim at Exhibits 366, 367, 369, and 370, asserting that evidence of live web pages is insufficient evidence of "actual[] use[]." Here, the exhibits clearly include all of the required indicia of actual use, including the "distinctive characteristics" of the websites, the webpage URLs, and the dates printed. *See 21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 255 F. Supp. 3d 1012, 1020 (S.D. Cal. 2017). Moreover, as to at least of two of these marks (as shown in 369 and 370), Plaintiff *itself* has admitted actual use by the third-party, stating in interrogatory responses that Plaintiff's counsel has sent demand letters to Thrive Market (369) and that Plaintiff has filed suit against Le-Vel Brands, LLC (370), both based on the alleged infringing use of "Thrive"-related marks in commerce. *See* Decl. of Lauren M. De Lilly in Support of Thrive Causemetics, Inc.'s Opp. to Pl.'s Joint Mots. in Limine, Ex. B (Pl.'s Resp. to Def's. Interrog. No. 5).[3] Plaintiff's claim that TCI must make some further showing of the nature and extent of third-party use of the marks identified in Exhibit 364 and the remaining exhibits that are the subject of Plaintiff's motion should therefore be rejected.[4]

---

[3] Notwithstanding this fact, as to Exhibit 369, TCI acknowledges Plaintiff's position that Plaintiff does not contend that the skincare products depicted in that exhibit, which are sold on thrivemarket.com with "*different* brand names on them other than 'thrive,'" infringe any rights held by Plaintiff.

[4] To the extent the Court disagrees, TCI requests that the Court adopt the approach taken in the two cases cited by Plaintiff in which a court in this district excluded evidence of third-party marks at the motion in limine stage, and permit TCI to supplement its exhibit list with publicly-

Plaintiff separately challenges Exhibit 364, together with Exhibits 365, 368, and 371, on the ground that certain of the referenced marks are not in the same "class" as skincare products. In support, Plaintiff cites *Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990), for the proposition that "[e]vidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law." In *Eclipse* the Ninth Circuit affirmed a district court's decision to exclude the deposition transcripts of five third-party users of a mark who operated in separate industries from the litigants, concluding that evidence of five uses of the same mark in other industries "is irrelevant to the case at bar and was correctly excluded." *Id.*

Notably, however, *McCarthy on Trademarks* cautions against reading *Eclipse*—in which the court's entire treatment of the subject is limited to the final two sentences of its order—in the overly-broad manner advanced by Plaintiff: "This ruling cannot be over-generalized, because some evidence of unrelated use is relevant where the alleged mark is in common and widespread use in many fields, such as ACME, NATIONAL or PREMIUM." J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, § 11:88 (5th ed. 2021). The treatise continues: "In such cases, evidence of extensive third party use on a wide range of goods and services *does* tend to weaken strength and narrow the scope of protection to some extent." *Id.* (emphasis added). This is likewise the case here, where—as TCI's list of **1,074** active marks from the USPTO demonstrates—there is unquestionably "extensive" third party activity with respect to the term "Thrive" and close

---

available evidence relating to the nature and use of the marks that are the subject of the challenged exhibits. *See Icon Enters. Int'l, Inc. v. Am. Prod. Co.*, No. CV 04-1240-SVW (PLAx), 2004 WL 5644805, at * 30 (C.D. Cal. Oct. 7, 2004); *BuzzBallz, L.L.C. v. BuzzBox Beverages, Inc.*, No. ED14CV01725VAP (DTBx), 2016 WL 7496769, at *3 (C.D. Cal. Apr. 12, 2016). This evidence includes the relevant companies' public social media profiles, which provide ready indicia of the extent of their public recognition through the numbers of their followers. The verified Instagram page for Le-Vel Brands, LLC, for example, illustrates both the character and frequency of that company's use of the term "Thrive," throughout its 1,579 Instagram posts, as well as one measure of the reach of that usage via its over 207,000 followers. *See* Le-Vel Brands (@le_velofficial), Instagram, *https://www.instagram.com/le_velofficial* (last visited Oct. 8, 2021).

variations. Moreover, as noted by one court in denying a plaintiff's motion to exclude evidence concerning third party registrations of marks, the question of whether such marks are in an unrelated field can be readily addressed through cross-examination at trial. *See Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-CV-04853-PSG, 2015 WL 9266497, at *5 (N.D. Cal. Dec. 18, 2015) ("Third-party use of similar marks may bear on the strength of [Plaintiff]'s marks. [Plaintiff] can cross-examine the relevant witnesses about how similar those marks are to [Plaintiff]'s and about the extent to which those marks are used in related fields.").

In light of the foregoing authority, Plaintiff's challenges go at most to the weight to be afforded TCI's evidence respecting third-party uses of "Thrive"-related marks, not its admissibility. *See Homeowners Grp.,* 931 F.2d at 1108 (6th Cir. 1991) (with respect to a report listing numerous third-party trademark registrations, noting that "[w]hile more detailed information regarding the nature and extent of use by third-party users . . . may be *more* persuasive than the information provided, the evidence offered . . . was certainly probative of the fact that marks consisting of or containing [plaintiff's mark] are used in the marketplace by others.") (emphasis added). Plaintiff's motion should be denied, and the exhibits should be admitted.

### B. Plaintiff's Claim of Prejudice Is Moot.

Plaintiff's only claim of alleged prejudice is that a "jury" may "erroneously believe" or "mistakenly conclude" information relating to third party "Thrive"-related marks. This claim of prejudice is now moot. In its order dated October 6, 2021, this Court granted TCI's motion for summary judgment as to Plaintiff's claim for corrective advertising and reasonable royalty damages, leaving Plaintiff's claim for disgorgement of TCI's profits as the only monetary relief sought. Because there is no right to a jury trial in a trademark infringement action seeking disgorgement of profits, *see, e.g., JL Beverage Co. v. Jim Beam Brands Co.*, 815 F. Appx. 110

(9th Cir. 2020), this will be a bench trial. The Court is more than capable of understanding the evidence presented and affording it the appropriate weight, without risk of confusion. The absence of any potential prejudice to Plaintiff likewise militates strongly against granting its motion in limine.

## IV. PLAINTIFF THRIVE'S REPLY

TCI has not offered any reason the Court should disregard the holding of *Boldface,* as supported by McCarthy, that "[t]he mere citation of third party registrations is not proof of third party uses for the purpose of showing a crowded field and relative weakness." 940 F. Supp. 2d at 1191. TCI's list from the PTO contains applications for marks that do not even include the word "thrive"; are for any services and goods including art prints, life-coaching services, honey, and real estate development; and many are intent-to-use applications. *See* Declaration of Stephen McArthur filed herewith ¶ 5. TCI's argument is that Thrive can address this evidence in cross-examination, but cross-examination on ***over one thousand*** irrelevant marks with no relation to skincare products is the definition of a waste of time. And the witness would solely be able to testify as to the authenticity of the document since it is simply a printout from an online website. The PTO list should thus be excluded under Rules 402 and 403 as a waste of time that has no relevance to the issues. The same is true for the other PTO printouts (Exs. 428-431), which show nothing about how, or even if, the claimed mark is used.

The other webpages offered by TCI do not, as TCI essentially admits, show that third parties have made extensive use of a "Thrive" mark in relation to skincare products. As the court in *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962 (C.D. Cal. 2002), stated, "[t]he key question in such a case is whether consumers who encounter [plaintiff's] products will believe that they are associated with defendants' [product] line." *Id*. at 991. Thus, evidence regarding third-party use is only relevant where it is for the same types of products and shows use of the same word as a trademark. *Id*. TCI's webpage exhibits have nothing to do with skincare

products and are thus irrelevant and would waste time. None of the printouts demonstrate that a third party has used a "Thrive" mark in commerce in a way that consumers might believe Thrive's "THRIVE" skincare products are associated with a third party instead of TCI's "THRIVE causemetics" skincare products. These exhibits should therefore be excluded under Rules 402 and 403.

Dated: October 15, 2021

Respectfully submitted,

**THE MCARTHUR LAW FIRM, PC**

By */s/ Stephen McArthur*

Stephen C. McArthur
Thomas E. Dietrich

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

Dated: October 15, 2021

Respectfully submitted,

**SIDLEY AUSTIN LLP**

By */s/ Rollin Ransom (with permission)*

Rollin Ransom

*Attorneys for Defendant Thrive Causemetics, Inc.*

**ATTESTATION UNDER LOCAL RULE 5-4.3.4**

I, Thomas Dietrich, am the ECF User whose ID and password are being used to file this Stipulation. In compliance with Local Rule 5-4.3.4(a)(2), I hereby attest that Rollin Ransom has concurred in this filing.

Dated: October 15, 2021

*/s/ Thomas Dietrich*
Thomas Dietrich

# CERTIFICATE OF SERVICE

Case Name: *Thrive Natural Care, Inc. v. Thrive Causemetics, Inc.*
Case No.: 2:20-cv-9091-PA-AS

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFF THRIVE NATURAL CARE, INC.'S JOINT MOTION IN LIMINE NO. 1 TO PRECLUDE DEFENDANT FROM OFFERING EVIDENCE OF ALLEGED THIRD-PARTY USES OF "THRIVE" MARK**

on the following parties by electronically filing the foregoing on October 15, 2021, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rollin Ransom (SBN 196126)  *Attorneys for Defendant*
rransom@sidley.com
Ryan Stasell (SBN 307431)
rstasell@sidley.com
Paula Salazar (SBN 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth St., Ste. 4000
Los Angeles, CA 90013

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 10/15/2021    By: */s/ Thomas Dietrich*
                        Thomas Dietrich