Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff*
*Thrive Natural Care, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2:20-CV-9091-PA-AS <br><br> **PLAINTIFF THRIVE NATURAL CARE, INC.'S JOINT MOTION IN LIMINE NO. 2 TO PRECLUDE DEFENDANT FROM OFFERING ARGUMENT REGARDING ITS "OTHER OVERHEAD"** <br><br> **Judge:** Hon. Percy Anderson <br> **Trial Date:** Nov. 9, 2021 <br> **Hearing Date:** Nov. 1, 2021, 1:30 p.m. <br> **Courtroom:** 9A |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   PLAINTIFF THRIVE'S ARGUMENT ..................................................... 1

III.  DEFENDANT TCI'S OPPOSITION ......................................................... 6

     A.   **Plaintiff's Motion Improperly Seeks a Summary Judgment Ruling on the Sufficiency of TCI's Calculations of Its Overhead Expenses.** ........................................................... 6

     B.   **Plaintiff's Motion Seeks to Exclude Evidence It Did Not Solicit.** ........................................................................................ 7

     C.   **Karl Schulze's Opinions Constitute Appropriate Rebuttal Expert Testimony.** ............................................................... 9

CONCLUSION .................................................................................................. 10

IV.   PLAINTIFF THRIVE'S REPLY ............................................................ 10

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>Cases</u>

3

*Folkens v. Wyland*, No. C-01-1241 EDL, 2002 WL 1677708 (N.D. Cal. July 22, 2002)...................................................................................................................5, 6

4

5

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985)..5, 8

6

*Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326 (9th Cir. 1984) ............4, 5, 6

*Linares v. Crown Equip. Corp.*, No. ED-CV-16-1637-JGB-KKX, 2017 WL 10403454 (C.D. Cal. Sept. 13, 2017)...........................................................11, 12

7

*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993) ..........................4, 5

8

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2017 WL 1174756 (S.D. Cal. Mar. 29, 2017) ...............................................................................................10

9

*Stonefire Grill, Inc. v. FGF Brands, Inc.*, 2013 WL 12126773 (C.D. Cal. June 27, 2013 .................................................................................................................9

10

11

## <u>Statutes</u>

12

15 U.S.C. § 1117(a) ...................................................................................................4

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      **INTRODUCTION**

The subject matter which Plaintiff Thrive Natural Care, Inc. ("Thrive") seeks to exclude in its Motion is: its category of "Other Overhead" costs that Plaintiff understands will be offered by Karl Schulze and Ned Menninger, and as presented in its and various revenue documents, including Trial Exhibit 2, 3, and 38[1].

Alleged prejudice if evidence is not excluded: Thrive asserts the cited exhibits and argument could confuse and mislead the jury and lead to a clearly erroneous finding regarding Defendant's costs and profits with regards to damages.

II.     **PLAINTIFF THRIVE'S ARGUMENT**

TCI' expert witness Karl Schulze and TCI's CFO Menninger both freely admitted in their depositions: (1) that the costs in the "Sum of Other Overhead" column of TCI's revenue spreadsheets is merely *every* single cost Thrive Causemetics Inc. incurred in any context whatsoever that is not included elsewhere in TCI's revenue document as an identified and deductible cost, and (2) that numerous categories of traditionally non-deductible costs are indiscriminately lumped into "Other Overhead", including, but not limited to: income taxes, all other taxes paid by TCI, charitable donations, travel, entertainment, legal fees for this very lawsuit, legal fees for defending against a previous class action lawsuit, "general administrative costs", "office expenses", public relations, all of the company' salaries and benefits, research and development costs (R&D), and rent.

Furthermore, TCI has never provided an exhaustive list of every cost included in "Other Overhead" nor, for the costs it has identified, provided evidence for what percentage of Other Overhead any given cost is. So, if a single type of cost was inappropriately included in "Other Overhead", it would be impossible to know if that cost was ninety-nine percent of the sum of Other Overhead or one-percent. If

---

[1] Plaintiff is not requesting that these exhibits be excluded in their entirety, but instead that simply the columns and data related to "Other Overhead" be excluded: namely the Columns entitled "Sum of Other Overhead" and any columns ("Sum of total Costs" and "Sum of net Income") that rely on the improper "Sum of Other Overhead" data.

1  a single one of those items is not a proper deductible cost, then the entire category

2  of "Other Overhead" must be excluded since TCI has never met its burden of

3  presenting evidence as to the amount of percentage of any particular item included

4  in Other Overhead.

5       Menninger testified in both his personal deposition and in his 30(b)(6)

6  capacity as TCI's CFO, that the "Other Overhead" category of TCI's cost include a

7  variety of non-deductible costs, and widely encompasses *every single cost incurred*

8  *by TCI*, that was not already listed elsewhere in TCI's Revenue Docs. Below are all

9  excerpts from Menninger's two depositions regarding "Other Overhead":

10 Q.   So for the other overhead column on this page, what is included in other overhead?
11 A.   It's all costs -- not specifically identified in the other columns, all costs to operate the
   business.
12 Q.   Please give me examples of what those costs are.
   A.   It could be rent, travel, the employee costs, public relations, donations.
13 Q.   What else?
14 A.   It could be -- it would be -- if we had some bank fees or other consulting, other resources,
   customer support vendors, legal -- things like that.
15 Q.   Taxes?
   A.   Yes, it could.
16 Q.   So every single cost in any context incurred by Thrive Causemetics that's not already
   allocated to one of these other columns is other overhead; is that correct?
17 A.   Yes.
   (Menninger Depo, July 13, 2021, at 49:24-50:19)
18
19 Q.   Okay.  Sum of Other Overhead.
   A.   Other overhead would be every – everything else that hits our income statement.
20 Q.   Like what?
   A.   Like rent, salaries, what it costs to operate the business --
21 Q.   Okay.
   A.   -- that isn't specifically included in these other -- in the other categories.
22 Q.   Okay.  And you listed rent, salaries.  What else appears in sum of other overhead?
   A.   Well, if it were now, it would be legal fees, so anything related to -- that is not specific to
23 COGS, ad spend, merchant fees, or Shopify.
   Q.   Okay.  So legal fees, salary, rent.  What else?
24 A.   It would be office -- other office expenses. Generally we would call this general -- general --
25 G&A, general administrative costs.
   Q.   Would charitable donations be on here?
26 A.   I -- yes, it would be included in there.
   Q.   Okay.  What else is included in here?
27 A.   Travel, entertainment.  Again, it's all non -- it's any other cost that isn't included in the other
   four categories.
28

1   Q.   I'm just trying to figure out exactly what those are.
    A.   Okay.
2   Q.   So what else is included there?
3   A.   It's going to be -- there -- any sort of professional fees beyond legal, say tax return
    preparation, items like that.   It would be insurance. Again, all salaries and benefits would be
4   included in there.   As you say, the charitable donations would be there.
    Q.   Would taxes be in there?
5   A.   I'm sorry, say again?
    Q.   Would taxes be in -- like taxes paid by the company?
6   A.   Yes.
    Q.   So income tax is in there?
7   A.   Yes.
8   (30(b)(6) Deposition of TCI's CFO Ned Menninger, May 27, 2021, 55:23 – 57:14)

9   Q. So for this entire spreadsheet, what does other overhead mean?
    MS. DE LILLY:   Objection.   Calls for a narrative.
10  THE WITNESS:   It is the same costs as I explained in -- for color cosmetics, which is salary,
    rents, professional fees, travel and entertainment. They are other general and administrative-type
11  expenses and all that are non-COGS specific, ad spend, merchant fees and/or -- and including --
    that does not include the Shopify fees.
12  (Id. 76:8-76:18)
13
    Q.   Do the Thrive Causemetics' legal fees from the class action lawsuit that was filed against it
14  appear in the other overhead costs?
    A.   Yes.
15  Q.   Does Thrive Causemetics have R&D, research and development, costs?
    A.   Yes.
16  Q.   And do those appear in the other overhead column?
    A.   Yes.
17  (Id. 82:14-23)
18
    Q.   Okay.   And did you donate over $500,000 to these COVID-impacted charitable
19  organizations in 2020?
    MS. DE LILLY:   Objection.   Beyond the scope of the witness's designated topics, and any
20  answers given are not those of the corporation.   And asked and answered.
    THE WITNESS:   I don't have the specific amounts in front of me; no, I do not.
21  BY MR. McARTHUR:
    Q.   But whatever those amounts were, they would appear in other overhead; is that correct?
22  A.   Yes.
23  (Id. 83:23 -84:9)

24         Likewise, TCI's expert, Karl Schulze, offered no expert opinion or

25  methodology of his own regarding "Other Overhead". Instead, his opinion simply

26  parrots what TCI's CFO Ned Menninger asserts. There is no independent analysis

27  from Mr. Schulze that would constitute an expert opinion with regards to "Other

28

Overhead", and thus his opinion must be excluded. Mr. Schulze's discussion of Other Overhead in his Report is copied, in full, below:

> "I also note that, while Mr. Drews utilized the cost data as provided in the TCI-produced revenue and expense sheets, he eliminated the category called "Other Overhead" from the costs considered. This category would include allocated costs such as supervisory personnel, managerial oversight, office and facility costs, among others, without which the product sales process could not take place. As testified to by Ned A. Menninger, on behalf of TCI, this category of cost includes items such as salary, rents, office expenses and other administrative costs that are outside of direct cost of goods sold, but that nonetheless contributed to the sales of the allegedly infringing products. Mr. Menninger noted in his deposition testimony that these expenses, as other categories, are allocated to specific products based on the proportion of units sold of each product during a given period.  Thus, the allocation of such costs is reasonably tied to the sale of the allegedly infringing products; it is my opinion that such costs must be included in the determination of net profit on the allegedly infringing product sales."
> (Schulze Report, p. 6).

This paragraph is the entirety of Schulze's expert testimony with regards to Other Overhead. Schulze performs no independent analysis and applies no scientific methodology. Instead, he simply asserts and concludes that the broad category of "Other Overhead", that includes nebulous costs, are deductible because TCI's CFO said they are. That is not a proper expert opinion.

The law is clear that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). "Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity" and "[t]he defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993). In the Ninth Circuit, a defendant may only deduct costs if it proves such costs were "of actual assistance" in the production, distribution, or sale of the infringing product. *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984). A "pure allocation" of overhead costs based on percentage of

1   revenue is not permissible and indeed has been "specifically rejected" by the Ninth

2   Circuit. *See Folkens v. Wyland*, No. C-01-1241 EDL, 2002 WL 1677708, at *5

3   (N.D. Cal. July 22, 2002) (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer,*

4   *Inc*., 772 F.2d 505, 516 (9th Cir. 1985) (holding defendants had not met the burden

5   of proving deductible costs "when they introduced evidence of their total overhead

6   costs allocated on a reasonable basis" because "[t]hat is not the law of this

7   circuit.")). If the defendant fails to adequately prove such costs, the trademark

8   owner is entitled to all gross profits. *Lindy Pen*, 982 F.2d at 1408.

9       Here, there is no dispute as to gross revenues TCI earned through May 2021

10   on sales of Infringing Skincare Products or direct expenses, including cost of goods

11   sold, relating to those products. The only dispute is to the broad category of "Other

12   Costs" that TCI improperly attempts to shoehorn into its profits analysis to make its

13   profits appear non-existent.

14       Rather than calculating actual overhead expenses attributable to each

15   product, TCI has merely allocated a percentage of its total expenses to a product

16   based on the percentage of revenue that product produced. That is exactly the type

17   of "pure allocation" rejected in *Folkens* and *Frank*. *Folkens*, 2002 WL 1677708, at

18   *5; *Frank*, 772 F.2d at 516 (explaining "defendants offered no evidence of what

19   costs were included in general categories such as 'general and administrative

20   expenses,' nor did they offer any evidence concerning how these costs contributed

21   to the [infringing product]."). TCI has completely failed to prove its indirect costs

22   were "of actual assistance" in the production, distribution, or sale of the Infringing

23   Skincare Products. *See Kamar*, 752 F.2d at 1332. Indeed, TCI testified that grouped

24   in the "Other Costs" category were clearly non-deductible costs such as TCI's

25   charitable donations, litigation expenses for a class action lawsuit, and all taxes it

26   has ever paid.

27       TCI has not provided *any* evidence that claimed overhead expenses such as

28   charitable donations, taxes, entertainment, etc. were "of *actual assistance*" in the

1   production, distribution, or sale of the Infringing Skincare Products, as opposed to

2   the variety of other, non-infringing products TCI sells. *See Kamar Int'l, Inc. v. Russ*

3   *Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984). TCI dumped 100% of its entire

4   company's remaining costs of any type, with zero exceptions, into a bucket it calls

5   "Other Overhead," without disclosing precisely what appears in that bucket other

6   than giving vague examples, and without even a hint as to how much to allocate to

7   each item. That is fundamentally an improper "pure allocation" of costs, which

8   should be excluded. *See Folkens v. Wyland*, No. C-01-1241 EDL, 2002 WL

9   1677708, at *5 (N.D. Cal. July 22, 2002).

10      Therefore, this category of "Other Costs", and all analysis regarding it,

11   including TCI's "Total Costs" and "Profits" numbers directly derived from its

12   "Other Costs" data, must all be excluded in their entirety.

## III.   DEFENDANT TCI'S OPPOSITION

14      Plaintiff's motion to exclude all evidence and analysis of TCI's "Other

15   Overhead" costs should be denied for at least three reasons.  First, Plaintiff's

16   motion is actually an improper summary judgment motion disguised as a motion in

17   limine and should be denied on that basis alone.  Second, Plaintiff attempts to

18   exclude evidence that it never solicited, and in any event, all of Plaintiff's

19   complaints regarding evidence of TCI's "Other Costs" go to weight, not

20   admissibility.  Third, the opinions of TCI's rebuttal expert Karl Schulze are well

21   within the purview of appropriate rebuttal expert testimony and thus there is no

22   basis for exclusion.

**ARGUMENT**

**A.    Plaintiff's Motion Improperly Seeks a Summary Judgment Ruling
        on the Sufficiency of TCI's Calculations of Its Overhead Expenses.**

26      Plaintiff's motion seeks a determination that TCI's calculations of its

27   overhead expenses are insufficient as a matter of law.  Indeed, Plaintiff already

28   attempted similar arguments at summary judgment.  In its motion for partial

summary judgment, Plaintiff argued that it was entitled to summary judgment on its claim for disgorgement of profits because, *inter alia*, TCI had failed to adequately prove any deductions from its gross revenues that actually contributed to the production, distribution, or sale of TCI's skincare products.  *See* ECF No. 96 at 22-23.  The Court recently determined that triable issues of material fact existed as to Plaintiff's claim for disgorgement of profits and denied Plaintiff's request.  ECF No. 114 at 11.   The instant motion in limine is simply a renewed version of the same arguments Plaintiff advanced at summary judgment, and is therefore improper.  In its Civil Trial Scheduling Order, this Court specifically states that "[m]otions in limine are not to be used as disguised motions for summary judgement," and that "summary judgement motions disguised as motions in limine will not be heard."  ECF No. 19 at 2, 8.  The Court should summarily deny Plaintiff's motion on this basis alone.

## B.   Plaintiff's Motion Seeks to Exclude Evidence It Did Not Solicit.

Plaintiff seeks to exclude evidence related to TCI's "Other Overhead" costs based on its meritless assertion that TCI's descriptions of its overhead allocations are insufficient and would be prejudicial in front of a jury.[2]  This argument fails for at least two reasons.  First, Plaintiff's argument rests entirely on the assumption that TCI's Chief Financial Officer ("CFO")Mr. Ned Menninger has no knowledge of how TCI's overhead expenses are connected to the production, distribution, or sale of its skincare products.  Plaintiff has no basis for such an assumption, as Plaintiff

_____

[2] The sole prejudice Plaintiff claims is that "the cited exhibits and argument could confuse and mislead the jury and lead to a clearly erroneous finding regarding Defendant's costs and profits with regards to damages."  Pl.'s Joint Mot. in Limine at 1.  But even at the time Plaintiff drafted its portion of the motion in limine, Plaintiff had already conceded that its claim for disgorgement of profits would be tried to the Court, not to a jury.  *See* ECF No. 106-1, at 1:28-2:4 ("Thrive Natural Care's claim for…disgorgement of profits…[is] equitable and should be tried to the Court."); *see also* ECF No. 107 at 1 n.1 (same).   Moreover, in light of the Court's Order granting in part TCI's motion for summary judgment (ECF No. 114), the parties agree that the *entire* case should be tried to the Court.  *See* ECF No. 116.  The Court will not be misled or confused by TCI's exhibits and argument regarding proper deductions for overhead expenses.

never sought to solicit any such evidence from Mr. Menninger during his deposition. Plaintiff had two opportunities to depose Mr. Menninger regarding TCI's "Other Overhead" expenses, but did not ask Mr. Menninger how certain categories of costs included in the company's overhead expended are related to the production, distribution, or sale of its products. *See supra* at 2:10 – 3:23. Instead, Plaintiff only asked Mr. Menninger to identify the types of costs included in TCI's overhead expenses, which he did. Furthermore, in his Declaration in Support of TCI's Opposition to Plaintiff's Motion for Partial Summary Judgment, Mr. Menninger provided summary testimony as to how each category of TCI's expenses actually assists in the production, distribution, or sale of TCI's skincare products, and he can and will provide this and further testimony respecting these issues at trial. ECF No. 60-03 at 3-4. Accordingly, there is no basis for Plaintiff's motion to exclude testimony by Mr. Menninger on this topic.

None of the cases cited by Plaintiffs stand for the proposition that evidence of overhead costs can be excluded on the basis of mere insufficiency, as Plaintiff requests here. An argument of insufficiency goes to the *weight* of the evidence, not its *admissibility*. Equally baseless is Plaintiff's assertion that "TCI has never met its burden of presenting evidence as to the amount of percentage of any particular item included in Other Overhead." *See supra* at 2:2-4. As an initial matter, TCI does not need to "prove [its] overhead expenses and their relationship to the infringing [product] in minute detail," it only must explain "at least in general terms, how claimed overhead actually contributed to the production of the infringing [product]." *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985). In any event, TCI has never been required to "[meet] its burden" in this regard – that is what the trial is for. TCI has previously proffered certain evidence this regard, and will in all events provide sufficient evidence at trial tying each category of its overhead costs to the production, distribution, or sale of its skincare products. There is simply no basis to preclude it from doing so.

**C.**    **<u>Karl Schulze's Opinions Constitute Appropriate Rebuttal Expert</u>**
**<u>Testimony.</u>**

Plaintiff seeks to exclude the testimony and opinions of TCI's damages expert Karl Schulze on the unfounded basis that Mr. Schulze "simply parrots" Mr. Menninger's testimony. *See supra* at 3:26-27. Plaintiff's argument misapprehends the role of a rebuttal expert witness and ignores the sufficient and reliable bases for all of Mr. Schulze's opinions. Mr. Schulze was designated as a rebuttal expert witness to Plaintiff's putative damages expert David Drews. One purpose of a rebuttal witness is to point out flaws in the methodology of Plaintiff's damages expert's analysis and to undermine the testimony and opinion of Plaintiff's expert. Mr. Schulze's opinion was entirely within that realm. *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 2013 WL 12126773, *3 (C.D. Cal. June 27, 2013).

Furthermore and in any event, Mr. Schulze's opinions satisfy the requirements for admissibility of expert testimony under Federal Rule of Evidence 702. Mr. Schulze has specialized knowledge regarding complex business disputes, economic damages and lost profits claims, and intellectual property infringement that will help the trier of fact understand the calculation and analysis of damages in this case; his testimony is based upon all of the financial information produced by the parties in this action and evidence from relevant witnesses, as well as guidance from the controlling legal authorities concerning damages in a Lanham Act case; his testimony is the product of reliable principles and methods in that Mr. Schulze applied his experience and knowledge of complex business disputes, economic damages and lost profits claims, intellectual property infringement, lender and professional liability, employment, personal injury, merger and acquisition matters, governance, alter ego, fraud and forensic reconstruction, and real estate and construction disputes, among others; he has reliably applied those principles and methods in his analysis of Plaintiff's damages expert' opinions and conclusions. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2017 WL 1174756,

*2 (S.D. Cal. Mar. 29, 2017); *see also* ECF No. 60-04, Ex. A (Schulze report).

Moreover, contrary to Plaintiff's suggestion that Mr. Schulze is simply "parroting" information, Mr. Schulze testified at length in deposition regarding the types of costs that Mr. Menninger identified as within TCI's overhead expenses, and whether, as a damages expert, such costs could be tied to the production, distribution, and/or sale of products. *See, e.g.,* Decl. of Lauren M. De Lilly in support of TCI's Opps. to Pl.'s Mots. in Limine, Ex. C at 31:14-32:16, 44:15-45:2 (charitable contributions), 57:7-18 (taxes). Plaintiff may not *like* Mr. Schulze's testimony, and it may *disagree* with that testimony (and it will presumably cross-examine him respecting his opinions), but that is no basis to exclude the testimony.

## CONCLUSION

Plaintiff's request is a summary judgment motion in in limine clothing; seeks to exclude testimony that Plaintiff did not even attempt to solicit during discovery; goes to the *weight* appropriately afforded to the evidence, not its *admissibility*; baselessly challenges TCI's expert; and in all events, relies on prejudice (*i.e.*, jury confusion) that is not even possible. For any and all of these reasons, it should be denied.

## IV.   **PLAINTIFF THRIVE'S REPLY**

Thrive's motion is not seeking summary judgment on any issue; it is seeking to exclude argument and evidence concerning a category of TCI's purported deductible expenses that is irrelevant and would waste time and confuse the issues. As quoted above, Mr. Menninger admitted in deposition that every item in TCI's claimed "Other Overhead" expense column was a pure allocation based on the percentage of revenue earned by that product as compared to all of TCI's products as a whole. He testified these costs included an open list of items, some of which obviously cannot be tied directly to the production, distribution, or sale of TCI's skincare products, including charitable donations for COVID relief, income taxes, bank fees, and unspecified "travel and entertainment." Mr. Menninger testified

PLAINTIFF'S MTN. IN LIMINE NO. 4
CASE NO. 2:20-CV-09091-PA-AS

1   those costs also included legal fees TCI paid to defend a class action lawsuit which

2   was filed in August 2018, before TCI has stated it released its first skincare product.

3   *See* Declaration of Stephen McArthur filed herewith, Ex. A. Simply, TCI cannot

4   show these costs were "of actual assistance" in the production, distribution, or sale

5   of the infringing products, as required by the Ninth Circuit. *See Kamar*, 752 F.2d at

6   1332. And neither Mr. Menninger nor Mr. Schulze has ever attempted to draw any

7   connection between these claimed costs and the actual products at issue. TCI should

8   not be permitted to offer evidence as to costs that it cannot possibly prove are

9   properly deductible.

10       With regard to Mr. Schulze, "[a]n expert may not present testimony that

11   merely 'parrots' the opinions of others; however, an expert may appropriately rely

12   on the opinions of others so long as other evidence supports his opinion, and the

13   record demonstrates that the expert conducted an independent evaluation of that

14   evidence." *Linares v. Crown Equip. Corp.*, No. ED-CV-16-1637-JGB-KKX, 2017

15   WL 10403454, at *12 (C.D. Cal. Sept. 13, 2017). The facts show that Mr. Schulze's

16   testimony is not the product of any "reliable principles and methods" but merely the

17   product of taking what Mr. Menninger said as true without any confirmation. Mr.

18   Schulze testified to that repeatedly in his deposition:

19

20

21

22

23

24

25

26

27

       10· · · · Q.· ·So have you reviewed a spreadsheet made by
       11· · Mr. Menninger that lists the costs and revenues and
       12· · profits of Thrive Causemetics?
       13· · · · A.· ·On product, yes, I -- I have seen them.
       14· · · · Q.· ·But you have not reviewed the financial
       15· · statements or other documents he used to create that
       16· · spreadsheet; is that correct?
       17· · · · A.· ·That's correct.· ***I have not gone back to the***
       18· ***source material for those numbers***.· I am relying on
       19· · their accuracy.
       20· · · · Q.· ·Have you reviewed any receipts or invoices that
       21· · would show that these costs were incurred?
       22· · · · A.· ·No.·

28

Schulze Depo. at 21:10-22 (emphasis added).

> 21· · · · Q.· ·So putting aside Mr. Menninger's opinion on
> 22· · what costs are directly and indirectly related, do you
> 23· · have any independent opinion of your own whether these
> 24· · costs are directly or indirectly related to the sale and
> 25· · production of skin care products?
> ·2· · · · · · ·THE WITNESS:· *I can't express an opinion on my*
> *·3· · own on these particular costs.*

Schulze Depo. at 35:21-36:3 (emphasis added).

> 25· · · · A.· ·I think you -- you -- I think you asked am I
> ·1· · relying on Mr. Menninger. Yes, I am relying on
> ·2· · Mr. Menninger's characterization of these expenses.
> ·3· · · · Q.· ·What support did Mr. Menninger give that these
> ·4· · expenses are directly related to the sale and production
> ·5· · of skin care products?
> ·6· · · · A.· *·Other than the fact that they are allocated to*
> *·7· · each product based on that product's relative volume, I*
> *·8· · didn't see anything beyond that.* But, again, I did see
> ·9· · from the spreadsheet that they are allocated
> 10· · proportionately.

Schulze Depo. at 45:25-46:10 (emphasis added).

In other words, Mr. Schulze did *nothing* to draw his own opinion as to whether "Over Overhead" costs were "of actual assistance" in the production, distribution, or sale of the infringing skincare products. He just repeated what Mr. Menninger said. That is not "specialized knowledge"—it is parroting without *any* independent evaluation and without any other supporting evidence, and it is thus inadmissible. *See Linares*, 2017 WL 10403454, at *12. Because Mr. Schulze has failed to offer admissible testimony regarding TCI's purported "Other Overhead" costs, and TCI failed to tie those costs to production or sale of its skincare products, the Court should preclude TCI from presenting exhibits or argument regarding

1    "Other Overhead" costs allegedly being deductible from TCI's gross profits.

2

3    Dated: October 15, 2021          Respectfully submitted,

4                                     **THE MCARTHUR LAW FIRM, PC**

5
                                      By */s/ Stephen McArthur*
6
                                      Stephen C. McArthur
7                                     Thomas E. Dietrich

8                                     *Attorneys for Plaintiff Thrive Natural Care,*
                                      *Inc.*
9

10

11   Dated: October 15, 2021          Respectfully submitted,

12                                    **SIDLEY AUSTIN LLP**

13
                                      By */s/ Rollin Ransom*
14
                                      Rollin Ransom
15
                                      *Attorneys for Defendant Thrive Causemetics,*
16                                    *Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION UNDER LOCAL RULE 5-4.3.4

I, Thomas Dietrich, am the ECF User whose ID and password are being used to file this Stipulation. In compliance with Local Rule 5-4.3.4(a)(2), I hereby attest that Rollin Ransom has concurred in this filing.

Dated: October 15, 2021

*/s/ Thomas Dietrich*
Thomas Dietrich

## CERTIFICATE OF SERVICE

Case Name: *Thrive Natural Care, Inc. v. Thrive Causemetics, Inc.*
Case No.: 2:20-cv-9091-PA-AS

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

      I have caused service of the following documents, described as:

**PLAINTIFF THRIVE NATURAL CARE, INC.'S JOINT MOTION IN LIMINE NO. 2**

on the following parties by electronically filing the foregoing on October 15, 2021, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rollin Ransom (SBN 196126)        *Attorneys for Defendant*
rransom@sidley.com
Ryan Stasell (SBN 307431)
rstasell@sidley.com
Paula Salazar (SBN 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth St., Ste. 4000
Los Angeles, CA 90013

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Date:   10/15/2021       By:  */s/ Thomas Dietrich*
                               Thomas Dietrich