1 Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
2 Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
3 THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
4 Beverly Hills, CA 90212
Telephone: (323) 639-4455
5
*Attorneys for Plaintiff Thrive*
6 *Natural Care, Inc.*

Rollin A. Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula C. Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive*
*Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2:20-cv-9091-PA-AS <br><br> Hon. Percy Anderson <br><br> **DEFENDANT'S JOINT MOTION IN LIMINE NO. 1** <br><br> Hearing Date: November 1, 2021 <br> Time: 1:30 p.m. <br><br> Trial Date: November 9, 2021 <br> Time: 9:00 a.m. <br> Place: Courtroom 9A |

# **TABLE OF CONTENTS**

**PAGE**

I. DEFENDANT'S MOTION IN LIMINE NO. 1 .................................................... 1

INTRODUCTION AND BACKGROUND ................................................................ 1

ARGUMENT .............................................................................................................. 2

    A. Legal Standard .................................................................................... 2

    B. Plaintiff Is Unable to Provide Non-Speculative Evidence Regarding Harm to the Value of the THRIVE Trademark. ........................................... 3

    C. Drews' Corrective Advertising Methodology is Arbitrary and the Resulting Speculative Analysis Should Be Excluded ................................. 4

II. PLAINTIFF'S RESPONSE TO TCI'S MOTION IN LIMINE NO. 2 ................. 6

    A. TCI's Motion is a Dispositive Motion in Disguise .................................. 6

    B. Corrective Advertising Damages No Longer Directly At Issue ............... 6

    C. Testimony Relevant to Disgorgement Should Be Permitted .................... 7

III. DEFENDANT'S REPLY ...................................................................................... 7

    A. Plaintiff Cannot Offer Evidence of An Undisclosed Damages Theory ..... 7

    B. Plaintiff's Purported Evidence of Actual Harm Is Purely Speculative ..... 9

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Adray v. Adry-Mart, Inc.*,
 76 F.3d 984 (9th Cir. 1995) ............................................................................... 4

*Bennion & Deville Fine Homes Inc. v. Windermere Real Est. Servs. Co.*,
 2018 WL 4802011 (C.D. Cal. July 17, 2018) ................................................ 8, 9

*Binder v. Disability Group*,
 772 F. Supp. 2d 1172 (C.D. Cal. 2011) .............................................................. 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993) .................................................................................. 1, 3, 4

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
 778 F.3d 1059 (9th Cir. 2015) ............................................................................ 7

*FiTeq INC v. Venture Corp.*,
 2016 WL 693256 (N.D. Cal. Feb. 22, 2016) ...................................................... 3

*Int'l Oddities v. Record*,
 2013 WL 3864050 (C.D. Cal. July 22, 2013) .................................................... 5

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
 No. CV 11-3397 JGB (RZX), 2015 WL 12696109 (C.D. Cal. Nov. 5,
 2015) .................................................................................................................. 6

*Ketab Corp. v. Mesriani Law Grp.*,
 2016 WL 5921767 (C.D. Cal. Mar. 18, 2016) ................................................... 8

*Marketquest Group, Inc. v. BIC Corp.*,
 316 F.Supp.3d 1234 (S.D. Cal. 2018) ................................................................ 5

*Spin Master, Ltd. v. Zobmondo Entertainment, LLC*,
 2011 WL 13127349 (C.D. Cal. Sept, 15, 2011) ............................................ 4, 5

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
 2011 WL 11709387 (N.D. Cal. Aug. 19, 2011) ................................................ 2

*United States v. Figeroa-Lopez*,
 125 F.3d 1241, 1246 (9th Cir. 1997) .................................................................. 2

*Vinotemp Int'l Corp. v. Wine Master Cellars LLLP*,
   2013 WL 5366405 (C.D. Cal. Feb. 5, 2013) ........................................................ 8

*Wallach v. Longevity Network, Ltd.*,
   2006 WL 5106208 (C.D. Cal. Apr. 26, 2006) ...................................................... 3

**Statutes**

15 U.S.C. § 1117 ............................................................................................... 7, 8

**Other Authorities**

Fed. R. Civ. P. 26 ..................................................................................................... 8

Fed. R. Civ. P. 30 ............................................................................................. 3, 10

Fed. R. Evid. 602 ..................................................................................................... 1

Fed. R. Evid. 701 ................................................................................................. 1, 2

Fed. R. Evid. 702 ............................................................................................. 1, 2, 3

## I. DEFENDANT'S MOTION IN LIMINE NO. 1

Pursuant to Federal Rules of Evidence 602, 701, 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendant Thrive Causemetics, Inc. ("TCI") moves to preclude Plaintiff Thrive Natural Care, Inc. ("Plaintiff") from offering at trial: 1) any evidence or argument regarding alleged harm to the value of the THRIVE trademark; and 2) the corrective advertising analysis and related opinion from Plaintiff's purported damages expert David Drews.

### INTRODUCTION AND BACKGROUND

Plaintiff claims that TCI infringed Plaintiff's purported rights in the trademark THRIVE. *See generally* ECF No. 28. To support its damages claim, Plaintiff has advised that it intends to present testimony from its Co-Founder and Chief Executive Officer, Alex McIntosh, regarding alleged harm to the value of the THRIVE and relatedly, that it intends to present testimony from its damages expert David Drews regarding an award of prospective corrective advertising damages. All such evidence, and any related argument, should be excluded.

With respect to alleged harm to the value of the THRIVE mark, any testimony would be wholly without foundation and factual support. Appearing as a 30(b)(6) witness on behalf of Plaintiff, Mr. McIntosh testified that Plaintiff had never conducted any study of the value of the THRIVE mark:

> Q: Has Thrive Natural Care ever undertaken an analysis of the value of the Thrive -- of the Thrive trademark?
>
> A: I don't know how to answer that question. We, as part of this matter, have hired experts that provided, I think, testimony to you, Mr. Ransom. I can't recall. I think maybe one of those experts had something material, but I'm not sure. You would probably be a better judge of that than I.
>
> Q: Beyond the -- any expert report provided in this case, has Thrive Natural Care ever conducted or had conducted a study or evaluation of the value of the Thrive trademark?
>
> A: Outside of the -- the expert for this matter, who -- again, I don't recall the exact nature of his work I reviewed, but I can't remember the exact focus. I do not believe so.

Declaration of Lauren M. De Lilly in support of Def.'s Joint Mot. in Limine No. 1 ("De Lilly Decl."), Ex. A [McIntosh 30(b)(6)] at 194:14-195:5. Although Mr. McIntosh suggested that Plaintiff's damages expert might have performed such an analysis, Mr. Drews readily acknowledged that he had not:

> Q: And with respect to the Thrive mark in particular, I apologize if I -- if I missed this, in evaluating the circumstances of this case, did you come to an opinion as to the value of the Thrive trademark at any point in time?
>
> A: No, that was not one of the calculations that I performed.

De Lilly Decl. Ex. B [Drews] at 15:21-16:2.

With respect to Mr. Drews' corrective advertising calculation, Mr. Drews simply applied 25% to TCI's advertising expenditures, ostensibly based on guidelines from the Federal Trade Commission ("FTC"). However, he admitted that he had made no effort to ascertain what amount would, in fact, be required for a corrective advertising campaign to redress any alleged infringement. De Lilly Decl. Ex. B [Drews] at 148:22-25 ("Q: Have you attempted to price out what an advertising campaign to correct the misimpressions would cost? A: Not in this instance."); *see also id.* at 151:14-152:10.

# ARGUMENT

**A. LEGAL STANDARD**

"Lay witness testimony is governed by Rule 701, which limits opinions to those 'rationally based on the perception of the witness.' Rule 702, on the other hand, governs admission of expert opinion testimony concerning 'specialized knowledge.'" United States v. Figeroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997) (citing Fed. R. Evid. 701). Rule 701 "expressly excludes lay opinion testimony 'based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" Synthes USA, LLC v. Spinal Kinetics, Inc., 2011 WL 11709387, at *10 (N.D. Cal. Aug. 19, 2011) (citing Fed. R. Evid. 701(c)).

A witness qualified as an expert may testify in the form of opinion or otherwise if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993).

### B. Plaintiff Is Unable to Provide Non-Speculative Evidence Regarding Harm to the Value of the THRIVE Trademark.

The Court should preclude Plaintiff from offering any evidence or argument regarding alleged harm to the value of the THRIVE mark. As an initial matter, trademark valuation requires specialized knowledge that comes from "education, training, [] research," or some other "form of actual, specific experience." *See Wallach v. Longevity Network, Ltd.*, 2006 WL 5106208, at *4 (C.D. Cal. Apr. 26, 2006). Plaintiff has submitted no evidence that Mr. McIntosh has any specialized knowledge or experience that would qualify him to provide an opinion as to either trademark valuation or any harm to trademark value. But even if he had such theoretical knowledge or experience, Plaintiff has disclaimed any reliance on it here: as noted above, Mr. McIntosh admitted in his Rule 30(b)(6) deposition that Plaintiff had never undertaken *any* analysis of the value of the THRIVE trademark. Given that testimony, Mr. McIntosh must be precluded from offering evidence or argument at trial that the value of the mark has been harmed. *See FiTeq INC v. Venture Corp.*, 2016 WL 693256, at *6 (N.D. Cal. Feb. 22, 2016) (excluding CEO testimony regarding company valuation where witness previously testified company had not been valued).

Nor can Mr. Drews be permitted to fill that gap. As likewise noted above, Mr. Drews also admitted that he had performed *no* calculations as to the value of the THRIVE mark at any time. Given Mr. Drews' deposition admissions, any testimony

-3-

DEFENDANT'S JOINT MOTION IN LIMINE NO. 1

by Mr. Drews on this issue at trial would not remotely satisfy the *Daubert* standard. All evidence and argument regarding any claimed valuation of the THRIVE mark or alleged harm to that value as a result of the alleged infringement should therefore be excluded.

### C. DREWS' CORRECTIVE ADVERTISING METHODOLOGY IS ARBITRARY AND THE RESULTING SPECULATIVE ANALYSIS SHOULD BE EXCLUDED.

Mr. Drews' failure to conduct any analysis of actual harm to the value of the THRIVE mark also dooms his corrective advertising opinion. Without accounting for any alleged harm to the value of the THRIVE mark, any lost sales (which he concedes would be "speculative," *see* De Lilly Decl. Ex. B [Drews] at 14:18-24), or any costs associated with *actual* corrective advertising, Mr. Drews simply applied an arbitrary 25% (which Mr. Drews attributes to FTC guidelines applicable to enforcement actions) to TCI's advertising expenditures, and asserted that it was an adequate method of estimating a prospective corrective advertising award. This purported "methodology" is no methodology at all – it is simply an arbitrary number divorced from consideration of what amount is *actually* required to compensate Plaintiff.

In the Ninth Circuit, "an award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995). It does so by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark lost and to "counteract the public confusion resulting from a defendant's wrongful conduct." *Spin Master, Ltd. v. Zobmondo Entertainment, LLC*, 2011 WL 13127349, at *10 (C.D. Cal. Sept, 15, 2011) (citation omitted). Where a plaintiff has not yet undertaken any corrective advertising efforts and instead requests an award of *prospective* corrective advertising, *Adray* cautions against a "danger of overcompensation" and states that prospective awards should be limited "only to the extent that the amount of money needed for corrective advertising does not exceed the damage done to the value of [plaintiff's] mark." *Adray*, 76 F.3d at 989.

      Perhaps not surprisingly, therefore, courts have routinely criticized corrective advertising awards that are based on arbitrary percentages of defendant's advertising expenditures, including the FTC 25% guideline.  In *Spin Master*, for example, the court excluded the plaintiff's corrective advertising calculation (based on the same FTC percentage as here), concluding that there was no basis for finding that an award of 25% of the defendant's marketing expenditures was necessary to make the plaintiff "whole" (or that the basis for a corrective advertising award could be inferred just from the defendant's marketing expenditures at all).  *Spin Master*, 2011 WL 13127349 at *10; *see also Binder v. Disability Group*, 772 F. Supp. 2d 1172, 1180 (C.D. Cal. 2011) (rejecting a request of 25% of defendant's advertising expenditures for prospective corrective advertising and explaining "[a]ny award based on an arbitrary percentage of [d]efendant's advertising budget is not sufficiently tethered to correcting the nature of the harm suffered").  The court in *Int'l Oddities v. Record*, 2013 WL 3864050 (C.D. Cal. July 22, 2013), clarified that while some courts have looked at the FTC guideline to determine the reasonable cost of corrective advertising, "*in all such circumstances*, an award of compensatory damages based on potential 'corrective advertising' costs must be tied to 'non-speculative' evidence that the goodwill associated with the plaintiff's mark has actually been diminished by the defendant's conduct." *Id.* at *14 (emphasis added).  Here, Mr. Drews has not shown that a proper award of corrective advertising could be inferred from TCI's marketing expenditures alone, nor has he put forth any calculations demonstrating how 25% of TCI's advertising expenditures is a reasonably certain measure of the amount necessary to render Plaintiff whole.

      Plaintiff may point to *Marketquest Group, Inc. v. BIC Corp.*, 316 F.Supp.3d 1234 (S.D. Cal. 2018), where Mr. Drews similarly opined that 25% of the defendant's advertising expenditures was an appropriate award of prospective corrective advertising and where the court determined that his opinion was sufficient to put forth before the jury for determination.  However, in *Marketquest*, Mr. Drews actually

DEFENDANT'S JOINT MOTION IN LIMINE NO. 1

analyzed harm done to the plaintiff's mark by comparing the plaintiff's historical sales and profits before and after the infringement and calculating the lost profits that could be attributable to the confusion. *Id.* at 1301. Here, he made no such calculations. His testimony as to corrective advertising damages should therefore be excluded.

## II. PLAINTIFF'S RESPONSE TO TCI'S MOTION IN LIMINE NO. 2

The substance of this motion has been significantly affected by the Court's summary judgment order, Dkt. 114, which issued after the opening portion of this motion was served. Some, but not all, of the motion has been mooted. Plaintiff Thrive Natural Care, Inc. ("Thrive") responds accordingly.

### A. TCI's Motion is a Dispositive Motion in Disguise

As an initial point, this a summary judgment motion in disguise. It seeks to do what TCI in fact did on summary judgment—eliminate Thrive's corrective advertising damages claim. A motion in limine should not "be used as a substitute for a motion for summary judgment" or "be used to resolve factual disputes or weigh evidence." *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZX), 2015 WL 12696109, at *11 (C.D. Cal. Nov. 5, 2015). The court in *Kaneka* rejected the plaintiff's motion to bar the defendant from introducing testimony at trial relating to a counterclaim made on grounds the defendant had "failed to provide sufficient evidence for its claim . . . ." *Id*. The court noted the plaintiff "has not demonstrated that any evidence [defendant] purports to introduce at trial regarding its Lanham Act claim is inadmissible or prejudicial" but instead contended the defendant "has not met its burden." *Id*. The court found "[a] motion in limine is not the proper vehicle for this argument." *Id*.

Here TCI has not pointed to any specific evidence Thrive may offer that is inadmissible or prejudicial. Its argument is rather that Thrive should be blocked entirely from testifying as to its claim for corrective advertising damages. That is improper.

### B. Corrective Advertising Damages No Longer Directly At Issue

Given the Court's summary judgment order, corrective advertising damages are no longer directly recoverable for Thrive. On that basis, this motion is generally moot.

### C. TESTIMONY RELEVANT TO DISGORGEMENT SHOULD BE PERMITTED

One point may require clarification, however. In its summary judgment order, the Court noted that Thrive cited "evidence that Defendant's advertising has (1) caused the parties' products to appear together in internet searches, (2) caused the price of advertising to rise, and (3) harmed Plaintiff through the loss of cross-selling opportunities." [Dkt. 114 at 10] To be clear, there should be no prohibition to Thrive offering testimony of this sort at trial in support of its claim that disgorgement of TCI's profits is equitable. *See* 15 U.S.C. § 1117(a); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073 (9th Cir. 2015) ("profits must be granted in light of equitable considerations."). While Thrive acknowledges that Mr. McIntosh did not conduct a valuation to the THRIVE mark—and would thus not testify that he did—he should not be barred from testifying as to damage caused to Thrive as a company from TCI's actions. Such testimony is appropriate and relevant. The same is true for David Drews. While he will not be offering testimony to support a request for a corrective advertising damages, he should not be barred from offering any testimony that is relevant to the amount of disgorgement damages Thrive is entitled to under § 1117(a) or that is necessary to rebut TCI's arguments regarding the amount of disgorgement damages.

### III. DEFENDANT'S REPLY

Plaintiff's opposition reveals that it seeks to offer evidence at trial concerning a new damages theory that it never previously disclosed and as to which it has adduced no evidence. The Court should bar Plaintiff from doing so.

### A. Plaintiff Cannot Offer Evidence of An Undisclosed Damages Theory.

The Court granted TCI's motion for summary judgment on Plaintiff's claims for a reasonable royalty and corrective advertising damages. ECF No. 114 at 9-10. Now that Plaintiff has lost both of its actual damages theories, Plaintiff seeks to convert its claim for disgorgement of profits into a claim for actual damages based on speculative assertions of harm. This is improper.

Plaintiff asserts that it should be permitted to offer evidence "as to damage caused to [Plaintiff] from TCI's actions." *See supra* at 7:12-13. Plaintiff cannot offer evidence at trial regarding alleged actual damages that it never disclosed during discovery. *See, e.g.*, *Bennion & Deville Fine Homes Inc. v. Windermere Real Est. Servs. Co.*, 2018 WL 4802011, at *6-7 (C.D. Cal. July 17, 2018) (granting motion in limine to exclude plaintiff's damages theory not disclosed in plaintiff's Rule 26(a) initial disclosures). Nowhere in its initial disclosures did Plaintiff state that it would seek actual damages beyond its now-stricken reasonable royalty and corrective advertising claims. De Lilly Decl. Ex. C. Plaintiff's failure to do so violates Rule 26(a)'s requirement to provide a "computation of each category of damages claimed" and to "make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiff also never supplemented its disclosures to include any computation of actual harm (*e.g.*, associated with Plaintiff's claims, referenced above, that infringement caused "the price of advertising to rise" or "the loss of cross-selling opportunities"), *see* Fed. R. Civ. P. 26(e); De Lilly Decl. ¶ 4, and has made no showing of justification for its failure to do so. *See Vinotemp Int'l Corp. v. Wine Master Cellars LLLP* [sic], 2013 WL 5366405, *2 (C.D. Cal. Feb. 5, 2013) (failure to disclose damages theory was not harmless as it may require re-opening discovery and moving trial date).

Plaintiff's suggestion that actual damages are simply part of its claim for disgorgement of profits is wrong, and in all events does not relieve Plaintiff of its obligation to comply with Rule 26(a). The Lanham Act authorizes damages in the form of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C, § 1117(a). Disgorgement of profits and actual damages are separately recoverable under the statute, and thus Plaintiff was required to disclose any claim that it had suffered actual damages and provide a computation of such damages. Plaintiff utterly failed to do so. *See, e.g.*, *Ketab Corp. v. Mesriani Law Grp.*, 2016 WL 5921767, *2 (C.D. Cal. Mar. 18, 2016) (initial disclosures deficient where plaintiff

sought "actual damages" based on "lost profits," but failed to identify its computation of expenses and lost profits or any underlying documents to support losses claimed). Plaintiff should not be permitted to sandbag TCI with a new damages theory on the eve of trial, particularly one as to which it has not produced any discovery. *See, e.g.*, *Bennion*, 2018 WL 4802011, at *6-7. The Court should thus preclude any evidence of Plaintiff's alleged actual damages.

### B. Plaintiff's Purported Evidence of Actual Harm Is Purely Speculative.

Plaintiff should be precluded from offering any evidence of actual harm for the additional reason that it would be speculative. In addition to producing no evidence of any lost profits, diverted sales, or other actual damages during discovery, Plaintiff has *never* undertaken any analysis supporting a claim of actual harm.

Plaintiff's putative damages expert Mr. Drews did not perform any calculations regarding actual harm to Plaintiff's business, conceding it would be "speculative":

> Q: Do you attempt to calculate whether Thrive Natural Care had lost any sales as a result of the alleged infringement?
>
> A: I – I think that would be speculative in this instance. There is not a good way of isolating that particular impact from other factors that may be brought to bear here.

De Lilly Decl., Ex. B at 14:18-24, 15:17-20. Testimony from Mr. Drews regarding *any* purported assessment or calculation of actual harm would thus be pure conjecture. Moreover, Mr. Drews testified under oath that he was not offering any opinions other than those included in his report, De Lilly Decl., Ex. B at 11:16-20, and the opinions in that report include no analysis of actual damages beyond his unavailing corrective advertising and reasonable royalty calculations, ECF No. 96-7 at 15, 35-36.

Notwithstanding the foregoing, in its Court-ordered proffer of Mr. Drews' testimony on October 15, TNC disclosed that it intends to offer Mr. Drews' discredited "reasonable royalty" testimony in support of its disgorgement theory, on the ostensible ground that a reasonable royalty can be used as a "baseline" for disgorgement of profits. *See* ECF No. 135 at 3:27-4:21. This Court has *already* ruled that "there is no legitimate

-9-

DEFENDANT'S JOINT MOTION IN LIMINE NO. 1

basis on which to calculate a royalty award" and that Mr. Drews' "opinion [on a reasonable royalty] is based only on speculation." ECF No. 114 at 8, 9. "Opinion 3" in TNC's proffer of Mr. Drews' testimony should be excluded.

Likewise, Mr. McIntosh cannot testify as to actual harm. Mr. McIntosh testified during Plaintiff's Rule 30(b)(6) deposition that Plaintiff's financial statements did not include any calculation of the value of Plaintiff's intellectual property and that he did not know if the financial statements included a calculation of Plaintiff's goodwill, or, as discussed *supra* at 1:20-28, the amount of harm to the THRIVE mark. *See* De Lilly Decl., Ex. A at 195:13-196:1. As Mr. McIntosh has already revealed that he has no knowledge of the baseline value of Plaintiff's mark, he cannot now testify regarding any actual harm to Plaintiff or its mark resulting from the alleged infringement. Allowing Mr. McIntosh to do so would result in mere guesswork rather than admissible evidence; particularly given that Plaintiff failed to disclose any such actual damages theory or calculation, TCI would be significantly prejudiced by any such testimony.

| | |
|---|---|
| DATED: October 15, 2021 | SIDLEY AUSTIN LLP |
| | By: */s/ Rollin A. Ransom* <br> Rollin A. Ransom (State Bar No. 196126) <br> rransom@sidley.com <br> Lauren M. De Lilly (State Bar No. 301503) <br> ldelilly@sidley.com <br> Paula C. Salazar (State Bar No. 327349) <br> psalazar@sidley.com <br> SIDLEY AUSTIN LLP <br> 555 West Fifth Street <br> Los Angeles, CA 90013 <br> Telephone: (213) 896-6000 <br> Facsimile: (213) 896-6600 <br><br> *Attorneys for Defendant Thrive Causemetics, Inc.* |
| Dated: October 15, 2021 | THE MCARTHUR LAW FIRM, PC |

By: */s/ Stephen C. McArthur*
STEPHEN C. MCARTHUR
Stephen McArthur
stephen@smcarthurlaw.com
Thomas Dietrich
tom@smcarthurlaw.com
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

## SIGNATURE ATTESTATION

I am the CM/ECF filer whose identification and password are being used to file the foregoing Defendant's Joint Motion in Limine No. 1. In compliance with Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that every signatory has concurred in this filing.

DATED: October 15, 2021

By: */s/ Rollin A. Ransom*
Rollin A. Ransom