Rollin Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
Paula Salazar (State Bar No. 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite-4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC.<br><br>Plaintiff,<br><br>v.<br><br>THRIVE CAUSEMETICS, INC.,<br><br>Defendant. | Case No. 2:20-cv-9091-PA-AS<br><br>**TRIAL DECLARATION OF EXPERT WITNESS KARL J. SCHULZE**<br><br>Trial Date:  November 9, 2021<br>Time:       9:00 a.m.<br>Place:      Courtroom 9A |

## TRIAL DECLARATION OF KARL J. SCHULZE

I, Karl J. Schulze, declare and state as follows:

1. I am an expert witness designated by Thrive Causemetics, Inc. ("Thrive Causemetics") in the above-captioned action. This declaration sets forth my direct trial testimony in support of Thrive Causemetics' case-in-chief. I have personal knowledge of the facts stated in this declaration and I would and could testify as to them if called as a witness in this action.

2. I am a Certified Public Accountant (CPA), holding active licensee status in both California and Florida, a Certified Fraud Examiner (CFE), Certified Valuation Analyst (CVA) and hold the Certified in Financial Forensics credential (CFF) from the American Institute of CPAs. I received my Bachelor of Business Administration in Accounting from the University of Miami in 1974. I have over 45 years of financial, executive management, entrepreneurial and advisory experience across a broad base of industries, including serving as a financial executive for both public and privately owned companies.

3. I am also experienced and certified in corporate governance and directorship. I hold a Certificate in Corporate Governance from Tulane University School of Law, as well as a Certificate in Corporate Directorship from UCLA. I am certified in corporate directorship by Institutional Shareholder Services (ISS).

4. I have consulted and testified on many matters in complex business disputes, economic damages and lost profits claims, and intellectual property infringement, among others, and have served as an expert on matters related to a variety of businesses and industries. I have been designated as an expert in over 600 matters, and have testified over 200 times at trials, depositions, and arbitration proceedings, having been qualified as an expert in numerous courts.

5. I average over 60 hours annually in continuing education courses related to accounting and auditing, business valuation, fraud, litigation issues, technology, and business reorganization. I have published articles in several trade publications

and I give seminar presentations on varied topics, including advice on identifying and fixing a business crisis, and the effective use of experts in business litigation.

6.      I am an active member of the American Institute of Certified Public Accountants, the California Society of Certified Public Accountants (and am a Charter Member of the Litigation Consulting and Dispute Resolution Section and a Member of the Economic Damages and Business Valuation Committees), the National Association of Certified Valuation Analysts, and the Association of Certified Fraud Examiners.  I also serve the community as a board member and/or strategic and financial advisor to various non-profit and public benefit organizations, including the Los Angeles Business Council, Alzheimer's Greater Los Angeles, the Los Angeles County Public Library System, the Los Angeles Economic Development Corporation, and the Los Angeles Regional Food Bank.   A true and correct copy of my CV is attached hereto as **Exhibit A**.

7.      I was asked by counsel for Thrive Causemetics to provide an opinion regarding damages claimed in this matter by Plaintiff, including without limitation in light of and in response to the report of David Drews, CLP dated July 5, 2021 ("Drews Report"), and Mr. Drews' Supplemental Damages Analysis, dated August 5, 2021, which updated the calculations set forth in the Drews Report.

8.      I reviewed the Drews Report and set forth the results of my evaluation as well as my own analysis in a rebuttal report.  My opinions are based on my analysis and review as described herein, calculations and preparation of analyses as needed, independent research as deemed appropriate, as well as my over 45 years' experience as a Certified Public Accountant, financial forensics expert, business and financial executive, entrepreneur, consultant and analyst.

9.      In the Drews Report and the Supplemental Damages Analysis, Mr. Drews, using sales and cost data provided by Thrive Causemetics regarding the allegedly infringing products, calculated what he variously characterized as "total

incremental profits" and "Total Defendant's Profits" on the allegedly infringing products over the relevant period.

10. Included in Mr. Drews' calculations of "Total Defendant's Profits" are revenues from Thrive Causemetics' Buildable Blur CC Cream and its Filtered Effects Blurring Primer. I understand that there is a dispute as to whether Buildable Blur CC Cream and Filtered Effects Blurring Primer constitute skincare products that are infringing. In particular, Karissa Bodnar, Thrive Causemetics' founder and Chief Executive Officer ("CEO") explains in her Trial Declaration that both Buildable Blur CC Cream and Filtered Effects Blurring Primer are makeup products, including because of the immediate effect that use has on the appearance of the user's skin. I further understand that Plaintiff's CEO, Alex McIntosh, has testified that Plaintiff does not have any plans to sell makeup, and that he is unaware of any plan by Plaintiff to sell products that "change the color of a person's skin, or the appearance of the color of a person's skin." To the extent the Court concludes that Buildable Blur CC Cream and/or Filtered Effects Blurring Primer are non-infringing products, Mr. Drews' calculations of "Total Defendant's Profits" allegedly attributable to infringement are overstated.

11. In addition, notwithstanding Mr. Drews' characterization of his calculations as "profits," his calculations exclude all overhead costs. From an accounting perspective, overhead costs are subtracted from revenue in determining net income, or profit. Likewise, it is my understanding that under the Lanham Act, a defendant's overhead costs may properly be deducted from revenue in determining profits associated with allegedly infringing product sales, if the overhead costs were of actual assistance in the production, distribution or sale of the allegedly infringing products, and if the defendant uses a reasonable method of allocating the overhead costs to the allegedly infringing products.

12. It is my opinion that Thrive Causemetics' overhead costs, as calculated and reflected in Trial Exhibits 2, 3, 38, and 452, should be deducted in calculating

Thrive Causemetics' profits associated with the allegedly infringing products. Ned Menninger, Thrive Causemetics' Vice President ("VP") of Finance, identifies in his Trial Declaration each of the categories of expenses encompassed in Thrive Causemetics' overhead costs and explains how such expenses are related to the production, distribution, and/or sale of Thrive Causemetics' skincare products. Mr. Menninger also explains the basis on which he allocated those overhead costs to Thrive Causemetics' skincare products. Based upon Mr. Menninger's testimony, my understanding of the operations of Thrive Causemetics' business, my expertise and experience as a CPA and in financial forensics and corporate governance, and my prior extensive work as a damages expert, it is my opinion that the overhead costs described by Mr. Menninger were of actual assistance in the production, distribution or sale of the allegedly infringing products, and Thrive Causemetics used a reasonable method of allocating the overhead costs to the allegedly infringing products.

13. Mr. Drews calculates Thrive Causemetics' "Total Defendant's Profits" (including skincare products and the Buildable Blur CC Cream and Filtered Effects Blurring Primer products discussed above) as $21,524,380; overhead costs allocated to these sales total $7,476,586, resulting in a revised profit calculation – before other deductions, discussed below – of $14,047,794. Mr. Drews calculates Thrive Causemetic's "Defendant's Profits – Skincare Products" (*i.e.*, excluding the Buildable Blur CC Cream and Filtered Effects Blurring Primer products discussed above) as $11,698,497; overhead costs allocated to these sales total $4,540,124, resulting in a revised profit calculation – again, before other deductions, discussed below – of $7,158,373.

14. Finally, it is my opinion that a substantial portion of Thrive Causemetics' profits associated with Thrive Causemetics' skincare products (as calculated in the preceding paragraph) is attributable to factors other than the "thrive" element of the THRIVE CAUSEMETICS mark. Ms. Bodnar explains in her Trial Declaration that there are several other factors that drive sales of Thrive Causemetics' product other

than the "thrive" element of the THRIVE CAUSEMETICS mark, including the company's high-performing products, the company's charitable mission, and the company's robust direct-to-consumer engagement. While such factors do not lend themselves to precise or scientific calculation, there is evidence that these other factors are a significant driver of Thrive Causemetics' revenue and profits with respect to its skincare products, and that the portion of profits attributable to the allegedly infringing "thrive" element of the THRIVE CAUSEMETICS mark is relatively minimal.

15. In this regard, in addition to reviewing the Drews Report and Supplemental Damages Analysis, I reviewed Mr. Drews' deposition testimony in preparation for my trial testimony. Mr. Drews states in the Drews Report that Thrive Causemetics' profits "to some extent is a proxy for Plaintiff's lost sales, profits and expansion opportunities."

16. In my opinion, there is no basis for Mr. Drews' statement, and I disagree with it. Mr. Drews admitted under oath that he made no attempt to calculate whether Plaintiff lost any sales as a result of the alleged infringement, and further acknowledged that making any such lost sales calculations "would be speculative in this instance" because "[t]here is not a good way of isolating that particular impact from other factors that may be brought to bear here." Further, Mr. Drews readily admitted that he had no opinion as to the value of the Thrive trademark at any point in time because "that was not one of the calculations [he] performed." Attached hereto as **Exhibit B** is a true and correct copy of relevant excerpts of Mr. Drews' deposition transcript. Without a baseline valuation of the Thrive trademark or any effort to measure any alleged lost sales or other actual harm, there is no basis to posit that Thrive Causemetics' profits are, to *any* extent, a "proxy" for Plaintiff's unproven and speculative "lost sales."

17. Moreover, there is no indication that any sales made by Thrive Causemetics represent a misappropriation of any "goodwill" associated with

Plaintiff's "THRIVE" mark; on the contrary, Plaintiff's extremely modest net revenues throughout its history, and the fact that it incurred a net loss for each period from 2013 through 2020, suggest that the "THRIVE" name is not, of itself, a significant driver of sales. Moreover, the fact that Thrive Causemetics achieved robust financial success with the THRIVE CAUSEMETICS name long before the alleged infringement commenced strongly indicates that that success is not tied to alleged infringement, or that it is in any manner a "proxy" for a financial outcome that Plaintiff has been persistently unable to achieve.

    I declare under penalty of perjury under the laws of the United States that the above facts are true and correct, and that this declaration was executed this 26th day of October 2021, in Los Angeles, California.

*/s/ Karl J. Schulze*

Karl J. Schulze