Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff Thrive
Natural Care, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., | Case No. 2:20-CV-9091-PA-AS |
| Plaintiff, | **PLAINTIFF THRIVE NATURAL CARE, INC.'S DESIGNATIONS FROM PERSONAL DEPOSITION OF NED MENNINGER IN LIEU OF DIRECT EXAMINATION TRIAL DECLARATION** |
| v. | |
| THRIVE CAUSEMETICS, INC., | |
| Defendant. | Hon. Percy Anderson<br>United States District Court Judge<br>**Trial Date**: November 9, 2021<br>**Time**: 9:00 a.m.<br>**Courtroom**: 9A, 350 W. 1st Street, 9th Floor, Los Angeles, California 90012 |
| | <u>**PUBLIC REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**</u> |

For its direct testimony in the bench trial scheduled in this matter, Plaintiff Thrive Natural Care, Inc. ("Thrive") submits the following designations from the Personal Deposition of Ned Menninger, the CFO of Defendant Thrive Causemetics, Inc. ("TCI"), in lieu of a trial declaration for TCI's witness. The designations also include the referenced Trial Exhibits, TCI's counter-designations, and TCI's objections together with Thrive's responses.

Dated: October 26, 2021               Respectfully submitted,

**THE MCARTHUR LAW FIRM, PC**

By */s/ Stephen McArthur*

Stephen C. McArthur
Thomas E. Dietrich

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

PERSONAL DEPOSITION OF NED MENNINGER

| Deposition Designation | Objection & Response |
|---|---|
| *Plaintiff's Designation of Ned Menninger Personal Deposition* | |
| Plaintiff's Designation of N. Menninger (5:4-6)<br><br>Page 5<br>4   Q.   Mr. Menninger, will you please state your<br>5        full name for the record?<br>6   A.   It is Ned Anthony Menninger. | |
| Defendant's Counter-Designation of Ned Menninger (8:9-12):<br><br>Page 8<br>9   Q.   You understand that today you're here in your<br>10      personal capacity and not answering as a<br>11      representative of Thrive Causemetics, Inc.; correct?<br>12  A.   Yes. | |
| Plaintiff's Designation of N. Menninger (11:19-21)<br><br>Page 11<br>19  Q.   And when did you begin working with Thrive<br>20      Causemetics in any capacity?<br>21  A.   July of 2017. As a contract CFO. | |
| Plaintiff's Designation of N. Menninger (11:25-12:2)<br><br>Page 11<br>25  Q.   Did you have any experience in the makeup or<br>Page 12 | |

| | |
|---|---|
| 1       skin care industries?<br>2    A.     No. | |
| <u>Plaintiff's Designation of N. Menninger (12:11-15)</u><br><br><u>Page 12</u><br>11    Q.     After your contract CFO, what was your next<br>12       role at Thrive Causemetics?<br>13    A.     I was an employee CFO.<br>14    Q.     And when -- what month did that occur?<br>15    A.     Approximately July of 2019. | |
| <u>Plaintiff's Designation of N. Menninger (14:6-11)</u><br><br><u>Page 14</u><br>6    Q.     Were you involved in the -- in Thrive<br>7       Causemetics's decision to begin selling skin care<br>8       products?<br>9    A.     No.<br>10    Q.     Do you know who made that decision?<br>11    A.     I do not. | |
| <u>Defendant's Counter-Designation of Ned Menninger (14:12-13):</u><br><br><u>Page 14</u><br>12       I could only speculate. I don't have all the<br>13       information in front of me at this time. | |
| <u>Plaintiff's Designation of N. Menninger (17:6-20)</u><br><br><u>Page 17</u><br>6    Q.     Do you know why Ms. Bodnar would have<br>7       testified at her deposition that you were involved in<br>8       the decision to expand into skin care products? | <u>Defendant's Objections:</u><br><br>Page 17:6-8, 11, 13-16, 19-20:No foundation, Fed. R. Evid. 602; Argumentative, Fed. R. Evid. 611(a)<br><br><u>Plaintiff's Response:</u> |

| | | | |
|---|---|---|---|
| . . . | | | Relevant to truthfulness of Ms. Bodnar's testimony that directly contracts testimony by Mr. Menninger. |
| 11 | A. | I don't. | |
| . . . | | | |
| 13 | Q. | If Ms. Bodnar said that you and her were the | |
| 14 | | only people involved in the decision to expand into | |
| 15 | | skin care products, you don't know what she was | |
| 16 | | referring to? | |
| . . . | | | |
| 19 | A. | I was informed about the | |
| 20 | | decision. But the ultimate decision was hers to make. | |

| | | | |
|---|---|---|---|
| <u>Plaintiff's Designation of N. Menninger (18:9-12)</u> | | | |
| | | | |
| <u>Page 18</u> | | | |
| 9 | Q. | Is TCI's skin care line profitable? | |
| 10 | A. | Based on the information provided to you or | |
| 11 | | to -- in this matter that would show that, yes, it is | |
| 12 | | profitable. | |

| | | | |
|---|---|---|---|
| <u>Defendant's Counter-Designation of Ned Menninger (18:13-24)</u>: | | | |
| | | | |
| <u>Page 18</u> | | | |
| 13 | Q. | Not based on the information that you showed | |
| 14 | | to me, just asking you, on your numbers and your | |
| 15 | | understanding of the company, is the skin care line | |
| 16 | | profitable? | |
| 17 | A. | The information I provided to you are one and | |
| 18 | | the same. That is the -- that is our information that | |

| | | |
|---|---|---|
| 19 | | ties to our reported financial statements. | |
| 20 | Q. | How do you know that the information provided | |
| 21 | | to Thrive Natural Care in this case regarding the | |
| 22 | | revenue profitability at TCI is completely accurate? | |
| 23 | A. | Because I ensured that all of that | |
| 24 | | information tied to our reported financial statements. | |

| | |
|---|---|
| Plaintiff's Designation of N. Menninger (18:25-19:6) | |
| | |
| <u>Page 18</u> | |
| 25  Q.  Are skin care products a major source of | |
| <u>Page 19</u> | |
| 1  TCI's revenue? | |
| 2  A.  Could you clarify "major," please? | |
| 3  Q.  What do you understand the major source of | |
| 4  revenue to be? | |
| 5  A.  They represent approximately 20 percent of | |
| 6  our revenue. | |

| | |
|---|---|
| Plaintiff's Designation of N. Menninger (19:13-14) | |
| | |
| <u>Page 19</u> | |
| 13  Q.  What is your job title today? | |
| 14  A.  VP of finance. | |

| | |
|---|---|
| Plaintiff's Designation of N. Menninger (22:7-11) | |
| | |
| <u>Page 22</u> | |
| 7  (Exhibit No. 37 marked for identification.) | |
| . . . | |
| 9  Q.  Mr. Menninger, I'm going to direct you to | |
| 10  Exhibit 37, which is TCI 00030182 through 184. It is | |
| 11  a three-page exhibit. | |

4

| | | |
|---|---|---|
| <u>Plaintiff's Designation of N. Menninger (23:1-14)</u><br><br><u>Page 23</u><br>1   Q.   Mr. Menninger, did you create this document?<br>2   A.   Yes.<br>3   Q.   When did you create this document?<br>4   A.   In the last couple weeks for this matter.<br>5   Q.   How would you create this document?<br>6   A.   As I mentioned before, it's utilizing<br>7         information from Shopify, our e-commerce platform, for<br>8         the revenue for every product and our financial<br>9         statements which tie to our general ledger in<br>10        QuickBooks.<br>11  Q.   Shopify gives you the revenue and the total<br>12        units, and then QuickBooks gives you the cost and<br>13        advertising spent; is that correct?<br>14  A.   Yes. All of the costs are displayed here. | |
| <u>Plaintiff's Designation of N. Menninger (24:4-12)</u><br><br><u>Page 24</u><br>4   Q.   What program did you use or software did you<br>5        use to make this document?<br>6   A.   Excel.<br>7   Q.   Each of the amounts in this document, each of<br>8        the numbers -- are those manually entered by you, or<br>9        are they automatically generated?<br>10  A.   Everything in the sheet as presented was<br>11        manually input. But the information all ties to<br>12        either Shopify and our general ledger. | |

| | |
|---|---|
| <u>Plaintiff's Designation of N. Menninger (31:9)</u><br><br><u>Page 31</u><br>9    (ExhibitNo. 38 marked for identification.) | |
| <u>Plaintiff's Designation of N. Menninger (33:12-25)</u><br><br><u>Page 33</u><br>12  Q.   It's your testimony under oath that all of<br>13        these numbers here are 100 percent accurate and<br>14        correct?<br>15  A.   Are you referring to the CC Cream or all --<br>16        when you say all --<br>17  Q.   30183. I'm referring to this page.<br>18  A.   I'm on the wrong page. Excuse me.<br>19        As I mentioned before, the revenue is exact<br>20        because that ties to Shopify, and the costs are<br>21        allocated. We don't report it broken out by product<br>22        in this manner for our purposes, but the sum total of<br>23        the cost, all of them, tie to our financial<br>24        statements. And so I would say, yes, these numbers<br>25        are accurate to that extent. | |
| <u>Defendant's Counter-Designation of Ned Menninger (34:1-8)</u>:<br><br><u>Page 34</u><br>1  Q.   Do they tie -- do the costs tie to the<br>2        product as shown? You said they tie to your financial<br>3        statements.<br>4  A.   I -- excuse me. Yes. So the sum total of<br>5        net income, for instance, for all these products and | |

6

| | | |
|---|---|---|
| 6 | every other product -- the sum total ties to our | |
| 7 | financial statements as does the revenue in each of | |
| 8 | these items. | |
| <u>Plaintiff's Designation of N. Menninger (534:9-35:2)</u><br><br><u>Page 34</u> | | |
| 9  Q. | Putting your financial statements aside, | |
| 10 | under penalty of perjury, are these costs in all these | |
| 11 | columns 100 percent accurate with how they track with | |
| 12 | each SKU number as represented in this document? | |
| 13  A. | They track with each SKU number based on how | |
| 14 | they have been allocated as a proportion of total | |
| 15 | units sold. We don't, as a matter of practice, | |
| 16 | allocate all these costs on a product basis, on a unit | |
| 17 | by unit basis. This was prepared for this matter, for | |
| 18 | this discussion. | |
| . . . | | |
| 23  Q. | Why don't you allocate these costs on a unit | |
| 24 | by unit basis? | |
| 25  A. | We haven't found it meaningful necessarily, | |
| <u>Page 35</u> | | |
| 1 | and we don't have the bandwidth to do that. There's | |
| 2 | only two people in finance. | |
| <u>Plaintiff's Designation of N. Menninger (35:16-21)</u><br><br><u>Page 35</u> | | Defendant's Objections: |
| 16  Q. | Is TCI's profit margin greater at the retail | Page 35:16-19: Irrelevant, Fed. R. Evid. 401, 402; |

| | | | |
|---|---|---|---|
| 17 | | level or at the e-commerce level? | Prejudicial, Fed. R. Evid. 403 (relates solely to abandoned color cosmetics claim) |
| 18 | A. | We are primarily e-commerce. We did a small | |
| 19 | | portion through -- we call it wholesale with Ulta at | |
| 20 | | the end of 2019 and early 2020. It was as much a test | Plaintiff's Response: |
| 21 | | operation…. | That Defendant is primarily an e-commerce company is relevant to *Sleekcraft* factors and whether the parties' marketing channels overlap on the internet. While sales at Ulta were only color cosmetics, the testimony from Mr. Menninger regarding Defendant being primarily e-commerce is not limited to color cosmetics. |

| | |
|---|---|
| Defendant's Counter-Designation of Ned Menninger (35:23) [only if objections to preceding designation are overruled]:<br><br>Page 35<br>23   A.   We sold a limited number of products to Ulta. | |

| | |
|---|---|
| Defendant's Counter-Designation of Ned Menninger (36:1-9) [only if objections to preceding designation are overruled]:<br><br>Page 36<br>1   BY MR. MCARTHUR:<br>2   Q.   Is the profit margin for the sales of your<br>3       products -- is that higher at the wholesale level, or<br>4       is it higher at the --<br>5   A.   I don't believe we sold any of the skin care | |

| | | |
|---|---|---|
| 6 | | products to Ulta. I don't have that information |
| 7 | | completely in front of me at this time, what was |
| 8 | | included. It was a limited number of products for a |
| 9 | | very limited period of time. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger (36:10-11) | | |
| Page 36 | | |
| 10 | Q. | Is TCI an e-commerce company? |
| 11 | A. | Yes. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger (40:10-18) | | |
| Page 40 | | |
| 10 | Q. | Are the TCI's revenue and profit projections |
| 11 | | for 2021 higher than they were for 2020? |
| 12 | A. | Yes. |
| 13 | Q. | Why is that? |
| 14 | A. | The overall growth of the business and our |
| 15 | | increased advertising spend. |
| 16 | Q. | Has TCI been increasing advertising spend |
| 17 | | every year? |
| 18 | A. | Yes. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger (41:3-12) | | |
| Page 41 | | |
| 3 | Q. | What percentage of TCI's revenue do you spend |
| 4 | | on advertising? |
| . . . | | |
| 6 | A. | If you look right here in |
| 7 | | roughly -- it's going to be consistent. It's going to |
| 8 | | be between -- overall, it's going to be 50 to 52 |

9

| | | |
|---|---|---|
| 9          percent.<br>. . .<br>11     Q.     30183?<br>12     A.     Yes. | |
| <u>Plaintiff's Designation of N. Menninger (42:5-13)</u><br><br><u>Page 42</u><br>5      Q.     Are you saying that 50 percent of all of<br>6             TCI's revenue is spent on advertising?<br>. . .<br>9      A.     A significant amount of our<br>10            revenue, yes, is spent on advertising.<br>. . .<br>12     Q.     Is it about 50 percent?<br>13     A.     Thereabouts, yes. Probably up to 52 percent. | |
| <u>Plaintiff's Designation of N. Menninger (5:4-6)</u><br><br><u>Page 42</u><br>18     (Exhibit No. 39 marked for identification.)<br>. . .<br>24     Q.     Do you recognize this document,<br>25            Mr. Menninger?<br><u>Page 43</u><br>1      A.     Yes.<br>2      Q.     What is this document?<br>3      A.     It is the summary of revenue and COGS for<br>4             each of our skin care products by SKU from<br>              inception<br>5             in 2018 through May 31st of 2021. | |
| <u>Plaintiff's Designation of N. Menninger (48:17-50:23)</u><br><br><u>Page 48</u><br>17     Q.     Okay. So for Moisture-Enriched Hand<br>18            Sanitizer, the total revenue is $168,066 for<br>              2020 is<br>19            that correct? | <u>Defendant's Objections:</u><br><br>Page 49: 11-14, 17: No<br>foundation, Fed. R. Evid.<br>602 |

| | | | |
|---|---|---|---|
| 20 | A. | Yes. | Page 49:19-50:10; 50:13- |
| . . . | | | 23: Asked and answered |
| 23 | Q. | You claim that TCI spent $836,621 to | (30(b)(6) transcript pages |
| 24 | | advertise this product; is that correct? | 55-57), Fed. R. Evid. 611(a) |
| . . . | | | |
| Page 49 | | | Plaintiff's Response: |
| 4 | A. | What I said before is that's | |
| 5 | | the allocated cost based on the number of units sold. | Question is answered in much more detail here than |
| . . . | | | in prior testimony. Question |
| 7 | Q. | So ad spend is allocated based on the number | does not waste time or harass or unduly embarrass |
| 8 | | of units sold and not based off of revenue; is that | the witness. No basis to strike under FRE 611(a). |
| 9 | | correct? | |
| 10 | A. | Correct. | |
| 11 | Q. | Under those calculations, if something has a | |
| 12 | | lot of units sold but low revenue, would that have a | |
| 13 | | disproportionate amount of ad spend allocated to it in | |
| 14 | | that circumstance? | |
| . . . | | | |
| 17 | A. | In mass format, yes. | |
| . . . | | | |
| 19 | Q. | Is other overhead calculated the same way? | |
| 20 | A. | It's calculated as -- based on the number of | |
| 21 | | units sold as a percentage of total units sold for | |
| 22 | | each product. | |
| 23 | Q. | So for the other overhead column on this | |
| 24 | | page, what is included in other overhead? | |
| 25 | A. | It's all costs -- not specifically identified | |
| Page 50 | | | |
| 1 | | in the other columns, all costs to operate the | |
| 2 | | business. | |
| 3 | Q. | Please give me examples of what those costs | |
| 4 | | are. | |

| | | |
|---|---|---|
| 5 | A. | It could be rent, travel, the employee costs, |
| 6 | | public relations, donations. |
| 7 | Q. | What else? |
| 8 | A. | It could be -- it would be -- if we had some |
| 9 | | bank fees or other consulting, other resources, |
| 10 | | customer support vendors, legal -- things like that. |
| . . . | | |
| 13 | Q. | Taxes? |
| 14 | A. | Yes, it could. |
| 15 | Q. | So every single cost in any context incurred |
| 16 | | by Thrive Causemetics that's not already allocated to |
| 17 | | one of these other columns is other overhead; is that |
| 18 | | correct? |
| 19 | A. | Yes. |
| 20 | Q. | And that is true for all of the spread sheets |
| 21 | | we've seen today; is that correct? |
| 22 | A. | The explanation that it includes all the -- |
| 23 | | yes, it does. |

| Plaintiff's Designation of N. Menninger (59:5-25) | Defendant's Objections: |
|---|---|
| Page 59 | Page 59:5-25: No foundation, Fed. R. Evid. 602 |
| 5    Q.    What are color cosmetics? | |
| 6    A.    It's -- I'm not sure I understand the -- as | |
| 7           it relates to Thrive or in general? | Plaintiff's Response: |
| 8    Q.    In general. | |
| 9    A.    It would be makeup related products that have | Witness has been CFO for Defendant for several years |
| 10          either color shades and/or other pigments that would | and demonstrated knowledge regarding its |
| 11          be used to enhance or what you would use for what we | products and product categories. |
| 12          call makeup to help the individuals on a presentation | |
| 13          basis or help their appearance. | |

| | | |
|---|---|---|
| 14 | Q. | Are color cosmetics distinct from skin care |
| 15 | | products? |
| 16 | A. | As I understand it, yes. |
| 17 | Q. | How so? |
| 18 | A. | As I understand it, it would be -- skin care |
| 19 | | would be like a lotion that I use that I put on my |
| 20 | | hand for instance because I have a cut, but that's not |
| 21 | | altering the appearance at all of said cut. In |
| 22 | | cosmetics, we would have colors and other associated |
| 23 | | features that would be very distinct from that of a -- |
| 24 | | what I would call skin care/lotion in the case of what |
| 25 | | I use. |

Plaintiff's Designation of N. Menninger (60:12-14)

Page 60

| | | |
|---|---|---|
| 12 | Q. | Do you know what the demographic target |
| 13 | | audience is for TCI's products? |
| 14 | A. | Women 15 to 80. |

Defendant's Counter-Designation of Ned Menninger (61:2-4):

Page 61

| | | |
|---|---|---|
| 2 | Q. | So are all of TCI's products sold in either |
| 3 | | the United States or in Canada? Is that correct? |
| 4 | A. | Correct. |

Plaintiff's Designation of N. Menninger (61:5-10)

Page 61

| | | |
|---|---|---|
| 5 | Q. | And it would be accurate to say that the |

| | | |
|---|---|---|
| 6 | | overwhelming majority are sold in the United States? |
| 7 | A. | Closer to 97 percent in the U.S. |
| 8 | Q. | About 97 percent of TCI's products are sold |
| 9 | | in the United States; is that correct? |
| 10 | A. | Yes. |

| | | |
|---|---|---|
| Plaintiff's Designation of N. Menninger (61:14-23) | | |
| | | |
| Page 61 | | |
| 14 | Q. | Is there a particular income bracket that TCI |
| 15 | | advertises to? |
| 16 | A. | No. |
| 17 | Q. | Is there a particular race that TCI |
| 18 | | advertises to? |
| 19 | A. | No. |
| 20 | Q. | Is TCI's target demographic women in the |
| 21 | | United States age 15 to 80 of any income, of any race? |
| 22 | | Is that correct? |
| 23 | A. | Yes. |

| | | |
|---|---|---|
| Defendant's Counter-Designation of Ned Menninger (62:2-8): | | |
| | | |
| Page 62 | | |
| 2 | Q. | Why 15 and not younger than 15? |
| 3 | A. | You said why 15? |
| 4 | Q. | Is there a particular reason why the age |
| 5 | | starts at 15? |
| 6 | A. | We've had customers even earlier, but it's a |
| 7 | | general -- we feel there is no age limit on our |
| 8 | | products. |

| | |
|---|---|
| Plaintiff's Designation of N. Menninger (69:20-70:6) | |
| | |
| Page 69 | |

| 20 | Q. | So allocated COGS being sold is the cost that |
|----|----|----|
| 21 |    | the manufacturer charges you for a particular product; |
| 22 |    | right? |
| . . . | | |
| 25 | A. | No. |

Page 70

| . . . | | |
|----|----|----|
| 2 | Q. | Okay. Is it shipping and freight? |
| 3 | A. | Yes. |
| 4 | Q. | Is landed COGS being sold the cost that the |
| 5 |    | manufacturer charges you for a particular product? |
| 6 | A. | Yes. |

Plaintiff's Designation of N. Menninger (73:6-25)

Page 73

| 6 | Q. | Merchant fees is a similar allocation from |
|----|----|----|
| 7 |    | all of TCI's product sold; right? |
| 8 | A. | Yes. |
| 9 | Q. | Shopify column is also an allocation from all |
| 10 |    | of TCI's products sold; right? |
| 11 | A. | Yes. |
| 12 | Q. | When we say TCI products sold, this is not |
| 13 |    | limited to just skin care, is it? All of TCI's |
| 14 |    | products; right? |
| 15 | A. | Yes. |
| 16 | Q. | The ad spend column is also an allocation for |
| 17 |    | all of TCI's products; right? |
| 18 | A. | Yes. |
| 19 | Q. | The other overhead column is also an |
| 20 |    | allocation of all TCI's products; right? |
| 21 | A. | Yes. |
| 22 | Q. | It's allocated not based off of percent of |

15

| | | |
|---|---|---|
| 23 | | revenue but based off of the total number of units |
| 24 | | sold; right? |
| 25 | A. | Yes. |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of N. Menninger (74:4-6) | | | |
| | | | |
| Page 74 | | | |
| 4 | Q. | How did you calculate the final column of net | |
| 5 | | income? | |
| 6 | A. | Revenue minus total costs. | |

| | | | |
|---|---|---|---|
| Plaintiff's Designation of N. Menninger (75:12-76:2) | | | Defendant's Objections: |
| | | | |
| Page 75 | | | Page 75:12–76:2: Irrelevant, |
| 12 | Q. | I'll ask about this $222,000 loss. | Fed. R. Evid. 401, 402; No |
| 13 | | If this lip balm treatment was not profitable | foundation, Fed. R. Evid. |
| 14 | | in 2020, why did TCI continue selling this in 2021? | 602 |
| 15 | A. | This view -- we don't -- this view is solely | |
| 16 | | for purposes of this matter, of this litigation. They | Plaintiff's Response: |
| 17 | | don't view it this way. We look at numbers on an all | Relevant to Defendant's |
| 18 | | up basis because we don't allocate costs as we run our | claimed deductible costs, as it demonstrates the cost data |
| 19 | | business this way. | produced by Defendant in |
| 20 | Q. | Just because this spread sheet shows the | made-for-litigation |
| 21 | | Liquid Lip Balm Treatment at a $222,000 loss, it | documents are not tied to the manufacture of any |
| 22 | | doesn't mean that TCI treated that product as a loss; | particular product rather are being treated differently for |
| 23 | | is that correct? | purposes of litigation than |
| 24 | A. | Not necessarily, yes. | Defendant's standard |
| 25 | Q. | Is it possible that product was treated as a | practice. |
| Page 76 | | | |
| 1 | | profit product for TCI? | |
| 2 | A. | It's possible. | |

16

| | |
|---|---|
| Plaintiff's Designation of N. Menninger (77:11-19) | Defendant's Objections: |
| **Page 77**<br>11   Q.   To the best of your knowledge, was the<br>12        decision to enter into the skin care business in 2019,<br>13        2020 a decision made solely by Karissa Bodnar?<br>. . .<br>16   A.   As I stated, the decision was<br>17        ultimately hers, but we had some discussions about it<br>18        at least on an informed basis, but that decision was<br>19        made by Karissa Bodnar. | Page 77:11-13, 16-19: No foundation, Fed. R. Evid. 602; Asked and answered (30(b)(6) transcript page 17), Fed. R. Evid. 611(a)<br><br>Plaintiff's Response:<br><br>Witness testified to basis for knowledge and question does not waste time or harass or unduly embarrass the witness. No basis to strike under FRE 611(a). |
| Plaintiff's Designation of N. Menninger (78:2-23) | Defendant's Objections: |
| **Page 78**<br>2   Q.   While other employees at Thrive Causemetics,<br>3        such as yourself, may get input into Ms. Bodnar, are<br>4        major company decisions, like whether or not to enter<br>5        into the skin care product line, ultimately 100<br>6        percent Ms. Bodnar's decision?<br>. . .<br>14   A.   The answer is yes.<br>. . .<br>16        About how many employees does TCI have<br>17        full-time?<br>18   A.   As of today?<br>19   Q.   Yes.<br>20   A.   Approximately 110.<br>21   Q.   And how many part-time employees does TCI | Page 78:2-6, 9-10, 14: No foundation, Fed. R. Evid. 602<br><br>Page 78:16-23: Irrelevant, Fed. R. Evid. 401, 402; No foundation, Fed. R. Evid. 602<br><br>Plaintiff's Response:<br><br>Relevant to scope of Ms. Bodnar's knowledge and authority within company, and in particular her involvement in the critical decision to expand into the skincare market in competition with Plaintiff. |

17

| | | |
|---|---|---|
| 22 | | have? |
| 23 | A. | One. |

18

# TRIAL EXHIBIT NO. 38



CONFIDENTIAL – ATTORNEYS EYES ONLY



CONFIDENTIAL – ATTORNEYS EYES ONLY



CONFIDENTIAL – ATTORNEYS EYES ONLY

# TRIAL EXHIBIT NO. 39



CONFIDENTIAL – ATTORNEYS EYES ONLY