Rollin Ransom (State Bar No. 196126)
rransom@sidley.com
Lauren M. De Lilly (State Bar No. 301503)
ldelilly@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant Thrive Causemetics, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC. <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2.20-cv-9091-PA-AS <br><br> Hon. Percy Anderson <br><br> **DECLARATION OF KARISSA BODNAR IN SUPPORT OF DEFENDANT THRIVE CAUSEMETICS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT, OR IN THE ALTERNATIVE, FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT** <br><br> Date: November 7, 2022 <br> Time: 1:30 p.m. <br> Place: Courtroom 9A |

**DECLARATION OF KARISSA BODNAR**

I, Karissa Bodnar, declare and state as follows:

1. I am the Founder and Chief Executive Officer of Thrive Causemetics, Inc. ("TCI"), the Defendant in the above-captioned action. I make this declaration in support of TCI's Opposition to the Motion for Contempt, or in the Alternative, for an Order to Show Cause re: Civil Contempt (ECF No. 212) ("Motion") filed by Plaintiff Thrive Natural Care, Inc. ("Plaintiff"). I have personal knowledge of the facts stated in this declaration, and I would and could testify as to them if called as a witness in this action.

2. On November 15, 2022, the parties submitted the essential terms of their settlement in this matter to the Court ("Essential Terms"). The Essential Terms state, in part, that "TCI will change the name of its skincare products to remove the 'thrive' element (or any confusingly similar variation of 'thrive') on all packaging, marketing or other communications respecting such skincare products (including the purchase of keywords that connects the term 'thrive' with any skincare-related term or product), provided that the re-named skincare products may continue to be sold on thrivecausemetics.com" (emphasis added). I understood that the Essential Terms would require TCI to change the name of its skincare products to take out the word "thrive" and would restrict TCI from purchasing keywords that connect the term "thrive" with any skincare-related term or product. However, beyond changing the product name and restricting keyword purchases, the Essential Terms did not require TCI to eliminate all references to "thrive" from skincare-related marketing (*e.g.*, on TCI's website or in social media posts), nor would I have agreed to any such provision.

3. Indeed, because thrivecausemetics.com is TCI's only official and authorized online channel through which it sells all of its products, TCI's ability to sell its re-named skincare products through its existing website (which includes various references to "thrive" or "Thrive Causemetics") was a material inducement for

-2-

1  TCI to settle, without which I would not have agreed to any settlement.  Critically, the
2  parties never negotiated or agreed that TCI would redesign the structure or content of
3  its existing website, except to reflect TCI's re-named skincare products, nor would I
4  have agreed to any such requirement.
5      4.    On January 19, 2022, the Court entered a Judgment ("Judgment")
6  memorializing the Essential Terms.  Paragraph 2 of the Judgment states, in part, that
7  "Defendant shall change the name of its skincare products to remove the 'thrive'
8  element (or any confusingly similar variation of 'thrive') on all packaging, marketing
9  or other communications respecting such skincare products (including the purchase of
10 keywords that connects the term 'thrive' with any skincare-related term or product),
11 provided that the re-named skincare products may continue to be sold on
12 thrivecausemetics.com[.]"
13     5.    Consistent with the Essential Terms and the Judgment, TCI changed the
14 name of its skincare products to Bigger Than Beauty Skincare™ (including in
15 depictions and textual descriptions of those products on its website) within six months
16 of the Judgment, and likewise changed its consumer-facing marketing and other
17 communications regarding the skincare products to reflect this new name.
18     6.    Changing the name of TCI's skincare products was undertaken at a
19 tremendous cost to TCI.  Beyond TCI's substantial settlement payment to Plaintiff,
20 significant time and financial resources were required to implement the name change
21 throughout every facet of TCI's business.
22     7.    I founded TCI with a vision of establishing a luxury beauty company that
23 also makes a difference.  While originally inspired to make charitable donations in
24 support of issues important to women, such as fighting breast cancer, surviving
25 domestic abuse, transitioning out of homelessness, and adjusting to life outside of
26 military service, TCI's charitable giving mission has since grown to include causes
27 / / /
28 / / /

important to all communities, such as supporting education, racial and social justice, and underserved, marginalized youth. TCI's mission statement—"For every product you purchase, we donate to help communities thrive"—is thus a reflection of TCI's and my own, commitment to charitable giving. It is core to TCI's identity, brand, and reputation. Accordingly, for several years (including long before this lawsuit was filed), TCI has displayed its charitable giving mission statement (or a close variation) on the product webpages of the thrivecausemetics.com website, including the webpages selling skincare products, as an indispensable reflection of TCI's business and identity. As noted above, it was critical to me that TCI be able to sell its re-named skincare products and to promote its charitable giving mission on the thrivecausemetics.com website, and for the foregoing reasons, I did not agree and would not have agreed to remove TCI's charitable giving mission statement from the webpages on which those products are sold.

8. I also understand that Plaintiff's Motion requests that TCI cease selling the product Sunproof 3-in-1 Invisible Priming Sunscreen on the basis that TCI began selling the product after the Judgment. Although TCI began selling Sunproof 3-in-1 Invisible Priming Sunscreen in March 2022, I am informed and believe that TCI began manufacturing the product at issue on or before November 8, 2021, and completed that production by November 11, 2021.

I declare under penalty of perjury under the laws of the United States that the above facts are true and correct, and that this declaration was executed this 17th day of October, 2022, in Bellevue, Washington.

*/s/ Karissa Bodnar*
Karissa Bodnar

-4-
DECLARATION OF KARISSA BODNAR IN SUPPORT OF DEF.'S OPPOSITION TO PL.'S MOTION FOR CONTEMPT, OR IN THE ALTERNATIVE, FOR AN ORDER TO SHOW CAUSE RE: CONTEMPT