Stephen McArthur (SBN 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (SBN 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVE NATURAL CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THRIVE CAUSEMETICS, INC., <br><br> Defendant. | Case No. 2:20-CV-9091-PA-AS <br><br> **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR CONTEMPT OR, IN THE ALTERNATIVE, FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT** <br><br> Hon. Percy Anderson <br><br> **Hearing Date**: November 7, 2022 <br> **Time:** 1:30 p.m. <br> **Courtroom:** 9A |

Plaintiff Thrive Natural Care, Inc. ("TNC") respectfully submits this reply brief in support of its motion for contempt or, in the alternative, for an order to show cause re: civil contempt ("Motion") as to Defendant Thrive Causemetics, Inc. ("Defendant").

### A. Defendant Provided No Evidence That Its Late-Released Sunscreen Product Was Manufactured Before the Judgment

On entry of the Judgment, Defendant was ordered to stop using the "Thrive" mark on skincare products, with the sole exception of Paragraph 4 that allows an 18-month sell-off period for "previously manufactured products." (ECF No. 204 ¶ 4). Defendant argues that its "Thrive Causemetics Sunproof" product ("Sunproof"), first announced *after* the Judgment in March 2022, can take advantage of the 18-month sell-off period because it was secretly "manufactured before the parties reached an agreement and before the Court entered judgment." (ECF No. 222 at 3). However, there is no evidence to support Defendant's purported manufacture date.

If the manufacture date of the Sunproof product were truly November 2021, then it would have been simple for Defendant to have produced records showing that date. Defendant cannot manufacture thousands of physical products without a paper trail. Instead, Defendant submitted a single affidavit from its CEO, Karissa Bodnar, stating that its newly announced Sunproof sunscreen was manufactured in November 2021, *on information and belief*. (Bodnar Decl. ¶ 8) ("I am informed and believe that TCI began manufacturing the product at issue" in November 2021.). Declarations made on information and belief are "entitled to no weight because the declarant did not have personal knowledge." *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995); *Certain Underwriters at Lloyd's of London v. Am. Safety Ins. Servs., Inc.*, 702 F. Supp. 2d 1169, 1172 (C.D. Cal. 2010) (same).

Defendant submitted no exhibits, documents, or records to verify the purported manufacturing date. Defendant chose not to submit an affidavit under the penalty of perjury from someone with firsthand knowledge of the manufacturing

date. Defendant does not dispute that the product is a skincare product. Furthermore, the affiant did not even provide the source of the information or the facts on which her second-hand belief was founded. Since the information is not from her firsthand personal knowledge, but only from information and belief, and there is no explanation as to why Ms. Bodnar believes it to be true, and there are no documents to support the purported manufacturing date, the declaration should be given no weight at all. *See Pahlavi*, 58 F.3d at 1412.

There is no evidence that the Sunproof product was manufactured before this Court's Judgment in TNC's favor in January 2022. Thus, the product cannot take advantage of the Judgment's sell-off period, which was intended only to allow Defendant to sell-off its previously existing inventory of Thrive-branded skincare products. The sell-off period could not have applied to unreleased products that TNC and the Court were unaware of, and which were not even manufactured yet. Accordingly, Defendant does not get to avail itself of the 18-month sell-off period for its "Thrive Causemetics Sunproof" product, and its continued sales and shipment to consumers violates the Judgment. TNC respectfully requests that the Court order Defendant to immediately confiscate and destroy all Sunproof product packaging and bottles that use the brand name "Thrive Causemetics".

**B.     Judgment Language Requiring Removal of "Thrive" From Its Skincare Marketing Communications is Specific and Definite, and Defendant Has Failed to Fully Comply**

The Judgment requires that Defendant remove the "Thrive" term from its skincare product names, packaging, and marketing communications. Defendant argues instead an extremely narrow reading of the Judgment that would require it to remove 'Thrive" only from the literal name of the product, but allow Defendant to otherwise use "Thrive" on the product packaging and marketing communications, including: (1) as a trademark for skincare products in its slogan: "*For every product you purchase, we donate to help communities thrive*."; and (2) associated directly

1  with the "Thrive Causemetics" name and logo branding at the skincare product
2  point-of-sale on its website. These two types of uses are not allowed by the
3  Judgment and could be easily removed by the Defendant with simple updates to its
4  website.[1]

5      TNC directs the Court to a screenshot of one of Defendant's skincare product
6  pages shown in Exhibit C to the initial McArthur Declaration (ECF No. 221-2).
7  While TNC did agree to allow Defendant to sell skincare products from its website,
8  that allowance does not allow "marketing communications" using the term Thrive,
9  including the uses of "Thrive" outlined in red in Exhibit C, which consist of six
10 uses of the brand name "Thrive Causemetics" and three appearances of Defendant's
11 slogan: "*for every product you purchase, we donate to help communities thrive*."
12 TNC is simply asking that Defendant remove these trademark uses of the term
13 "Thrive" on its skincare product pages where it sells skincare products, which is
14 consistent with the Judgment. This would only require a relatively simple website
15 update that Defendant has already had over eight months to accomplish.

16     Defendant's extremely narrow interpretation of the Judgment to only require
17 changing of the product name would nullify nearly all of paragraphs 2 and 3, which
18 require Defendant to take much more detailed action to remove "thrive" wherever it
19 appears in relation to skincare products. Defendant's view is contrary to well-
20 settled contract law. The Court's Judgment incorporates the terms of the parties'
21 short-form settlement agreement. "Under California law, 'the meaning of a contract
22 must be derived from reading the whole of the contract, with individual provisions
23 interpreted together, in order to give effect to all provisions and to avoid rendering
24 some meaningless.'" *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1253 (N.D.

---

[1] In its Motion, TNC also requested that Defendant change the metadata to remove "thrive" from the metadata <title> field of all of its skincare products. Defendant refused to do this until *after* TNC filed the instant Motion, whereupon Defendant removed the offending metadata titles within days. TNC agrees with Defendant that the specific metadata <title> issue raised by TNC in its brief is now mooted since Defendant has made the requested changes. However, TNC notes that Defendant only made these changes after TNC brought the issue to the Court's attention.

Cal. 2019), aff'd, 823 F. App'x 535 (9th Cir. 2020) (quoting *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011)). "Contract terms must be interpreted as a whole and in context, rather than in isolation." *Adams*, 414 F. Supp. 3d at 1253. "When interpreting a contract, courts strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable." *Id*. (quoting *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013)); *see also Flexpand, LLC v. CREAM, Inc.*, No. C 19-0878 SBA, 2020 WL 13504974, at *3 (N.D. Cal. Aug. 31, 2020) ("Thus, to conclude that Martinez was acting solely in his personal capacity when executing the Franchise Agreement, as Defendants urge, would render the Personal Guaranty a nullity, which is contrary to the rules of contract interpretation.").

Here, to allow Defendant to continue to use "Thrive" as a trademark with its rebranded skincare products would make swathes of the Judgment superfluous, considering the purpose of a trademark settlement agreement and the abundance of language in the Judgment about Defendant changing its skincare products to remove "Thrive" from the name, packaging, *and* marketing communications. Surely, the Court did not intend to allow Defendant to use "thrive" as a trademark in a *slogan* for its skincare products so long as the term was not used directly in the name of the product. Nor could it be the case that the Judgment would continue to allow Defendant to use the "Thrive Causemetics" logo and branding multiple times directly at the point of sale of its rebranded skincare products. Rather, the Judgment is specific and definite in its requirements that Defendant remove "Thrive" from its skincare product names, packaging, and marketing communications. Defendant's narrow interpretation cannot be adopted, because that would render much of the language of the Judgment—and a key purpose of the Judgment in favor of TNC—superfluous.

The effort it would take for Defendant to edit its website to remedy these issues is incredibly low compared to the effort it has taken the parties, attorneys,

and this Court to address the issue.[2] Defendant can sell rebranded skincare products through its thrivecausemetics.com website without using "thrive" six times per page on its skincare product pages. Defendant can continue to use its slogan and logo on its general pages elsewhere on its website, just not on its skincare pages. TNC thus requests that the Court should order Defendant to comply with the requirements of the Judgement and remove uses of "thrive" from Defendant's skincare product webpages and packaging, including removing "thrive" from Defendant's slogan and removing "Thrive Causemetics" logo and branding from the point of sale of its skincare products.

### C. Defendant Refused to Begin Complying With Its Obligations to Remove Its Social Media Posts Until After TNC Filed Its Motion, and Has Still Failed to Fully Comply

Defendant incorrectly claims that it has mooted TNC's Motion with regard to social media posts by purportedly removing the posts at issue. "Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *Id*. To clear itself of contempt, Defendant has the burden "to demonstrate why they were unable to comply." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002). First, Defendant failed to take reasonable steps within its power to comply with the Judgment *before* TNC filed this Motion, and it cannot demonstrate why it was unable to comply before TNC was forced to bring this issue to the Court. *See id*. Second, as of the date of this

---

[2] Defendant's baseless assertion that the trademark "Thrive" *cannot* be removed from the skincare portion of its website cannot be taken seriously. Websites are simply code that can be rewritten at any time. (*See* ECF 221-3 ¶ 16). That it may take a little extra work for Defendant to rewrite the code to allow the "Thrive" trademark to appear only on some portions of its website but not others is exactly why it had a six-month rebranding period to do so.

1 filing, Defendant still has not deleted many of the social media posts at issue.

2     The specific language of the Judgment required Defendant to change "all
3 consumer-facing advertising, promotional, and marketing materials (e.g.,
4 Defendant's . . . <u>social media</u> . . .) to reflect the new name of Defendant's skincare
5 products within six months[.]" (ECF No. 204 ¶ 3) (emphasis added). The *only*
6 materials where the Thrive Causemetics name could remain in use on its social
7 media were in previously existing videos, "so long as all text overlays, graphics,
8 and/or titles in the video replace the word 'thrive' with the new name of the
9 product . . . ." (*Id*.). As the exhibits filed with TNC's Motion show, Defendant
10 failed to comply with these specific, direct terms with regard to its social media
11 posts. (*See, e.g.*, ECF No. 221 at 12; McArthur Decl. Exs. M, N). Even after two
12 months of regular meet-and-confers preceding the Motion, Defendant refused to
13 remedy the issue.

14     Defendant now claims that, only as of the day it filed its Opposition, it has
15 finally removed the social media posts with images depicting prior Thrive
16 Causemetics labeling. Defendant thus forced TNC to bring another issue to the
17 Court's attention that Defendant could easily have remedied earlier. Because
18 Defendant clearly *could* have remedied its non-compliance before bringing this
19 motion, it cannot demonstrate why it was "unable to comply" with the Judgment as
20 required to clear itself of contempt. *See Bennett*, 298 F.3d at 1069. Rather,
21 Defendant's post-Motion activities prove it had previously failed to take all
22 reasonable steps within its power to comply, supporting a finding of contempt. *See*
23 *In re Dual-Deck*, 10 F.3d at 695.

24     Of more concern, however, is that Defendant's claim to have removed all
25 offending social media posts is not true. Even after its six-month deadline, another
26 two months of meet-and-confers, and after telling this Court that it had complied in
27 its Opposition, Defendant *still has not* made a reasonable effort to comply. There
28 remain over three dozen of instances of plainly visible photographs of "Thrive"

branded skincare products littering Defendant's social media. *See* Reply Declaration of Stephen McArthur filed herewith ("McArthur Reply Decl."), Ex. A. Because each of these social media posts remain online, unedited, and publicly viewable to anyone who visits Defendant's official social media pages, Defendant is still in blatant violation of the Judgment.

Each of these social media posts is yet another instance where Defendant is continuing to link the "Thrive" mark to its skincare products in violation of the judgment. TNC thus requests that the Court order Defendant to: (a) delete all social media posts that relate to skincare products and contain static "Thrive" elements that cannot be removed; (b) if the elements can be removed, to remove all "Thrive" usage from each of its social media postings that relate to skincare products, and (c) refrain from adding new social media posts for skincare products on social media that contain any uses of the word "Thrive".

### D. Defendant Brought Itself into Compliance Regarding Advertising Keywords Only *After* TNC Filed Its Motion

Finally, Defendant acknowledges that it failed to comply with the Judgment's prohibition on keyword purchasing until after TNC filed its Motion. Before TNC filed its Motion, it met and conferred numerous times with Defendant over the course of approximately two months as to why Defendant's skincare products continued to improperly show up in keyword advertisement purchases for the word "thrive". During that period, Defendant failed to remedy the issue or to provide to TNC a declaration from Defendant attesting that Defendant was no longer buying "thrive" keywords that were connected with skincare products. Defendant declined to remedy the issue or to provide that declaration until it filed its Opposition. Thus, while Defendant could have, at minimum, reduced the number of the issues brought before the Court, Defendant chose not to.

Defendant acknowledges that it only took "all reasonable steps" within its power to comply with the Judgment after TNC filed its Motion. Specifically, in its

Opposition, Defendant does not give the date when it first took steps to implement negative search terms for "thrive" plus skincare terms. However, in the Ferrante Declaration (ECF No. 222-5), she states that it was not until October 14, 2022—a week *after* TNC filed the Motion—that Defendant attempted to confirm with Google that the negative search terms were implemented. While Defendant claims it was going above and beyond in implementing negative search terms, that was plainly a reasonable step that was in Defendant's power to undertake in order to ensure it properly complied with the prohibition on Google keyword advertising. As Defendant itself states, "recent Google searches reflect the impact [this change] had in mooting any basis for Plaintiff's claims here[.]" (ECF No. 222 at 5). In other words, the step Defendant finally took on October 14, 2022, brought it into compliance, but it failed to take that step until far later than was necessary.

To clear itself of contempt, Defendant has the burden "to demonstrate why they were unable to comply." *Bennett*, 298 F.3d at 1069. On the keyword issue, Defendant has failed to meet that burden because its compliance only came after the Motion was filed. Through eight months (the six-month compliance deadline followed by two months of meet-and-confers), Defendant knew it could stop keyword advertising and to implement negative keywords to address the issue raised by TNC, yet Defendant never did so and forced TNC to file the Motion instead. Not until Defendant was pushed by TNC's Motion did Defendant actually take action on that step and bring itself into compliance with the Judgment. Not until it filed its Opposition to TNC's Motion did Defendant ever provide an affidavit that it had ceased buying the offending keywords and had implemented negative search terms. Until then, Defendant was content to reap the benefit of continuing to connect the "Thrive" mark with its skincare products.

## Conclusion

For the foregoing reasons, TNC respectfully asks the Court to enforce the Judgment and order that Defendant finally and fully remove "Thrive" from its

skincare products and all skincare marketing and other communications, cease improper keyword purchases, and immediately cease the improper sell-off of its late-released Sunproof sunscreen product, as it was required to do in the January 2022 Judgment, and any other relief that the Court deems proper.

DATED: October 24, 2022

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Stephen McArthur*
Stephen McArthur
Thomas Dietrich

*Attorneys for Plaintiff Thrive Natural Care, Inc.*

# CERTIFICATE OF SERVICE

Case Name: *Thrive Natural Care, Inc. v. Thrive Causemetics, Inc.*
Case No.: 2:20-cv-9091-PA-AS

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR CONTEMPT OR, IN THE ALTERNATIVE, FOR AN ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT**

on the following parties by electronically filing the documents on the below-appearing date with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rollin Ransom (SBN 196126)  *Attorneys for Defendant*
rransom@sidley.com
Ryan Stasell (SBN 307431)
rstasell@sidley.com
Paula Salazar (SBN 327349)
psalazar@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth St., Ste. 4000
Los Angeles, CA 90013

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 10/24/2022     By: */s/ Thomas Dietrich*
                                    Thomas Dietrich